## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

|  |  |
|---|---|
| ELI LILLY AND COMPANY,<br><br><br>Plaintiff,<br><br><br>v.<br><br><br>DRUGPLACE, INC. (FL); DRUGPLACE, INC. (TN); COMMUNITY HEALTH INITIATIVE, INC.; NAKORN WHOLESALERS, LLC; GALAXY MED, LLC d/b/a GALAXY PHARMACY; BRIGHTLINE WHOLESALE LLC; PAUL LEIGHT; KEVIN SINGER; READUS SMITH; JERRY MAYNARD SR.; JERRY MAYNARD JR.; MISHA MAYNARD; EDGAR ENRIQUEZ; LANE MAZEI; DANIELLE GISCOMBE,<br><br><br>Defendants. | Case No.: 1:26-cv-23516-FAM (EFD) |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTIONS FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, EXPEDITED DISCOVERY ORDER, AND HIPAA PROTECTIVE AND CONFIDENTIALITY ORDER**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................................1

ARGUMENT..........................................................................................................................2

I.      THE COURT SHOULD GRANT LILLY'S MOTIONS FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION ...................................2

          A.      There Is No Genuine Dispute that Lilly Will Succeed on the Merits of Its Claims ..................................................................................................................2

          B.      Lilly Is Suffering Irreparable Harm.................................................................3

                1.      Injunctive Relief Is Warranted Even if Defendants Claim to Have Stopped their Fraudulent Scheme ............................................................3

                2.      Defendants Do Not Genuinely Dispute That Lilly's Losses Are Irreparable or That They Are Dissipating Assets.......................................6

                3.      Lilly's Reputation and Goodwill Are Being Irreparably Harmed ..............7

                4.      The Balance of the Equities Is in Lilly's Favor .......................................7

II.     EXPEDITED DISCOVERY IS NECESSARY AND APPROPRIATE...........................7

          A.      The Discovery Lilly Seeks Is Reasonable and Necessary.....................................7

          B.      Expedited Discovery Is Necessary to Mitigate Further Harm................................9

          C.      Lilly Should Receive Expedited Discovery to Prepare for the Preliminary Injunction Hearing ......................................................................................10

III.    LILLY'S UNOPPOSED MOTION FOR ENTRY OF ITS PROPOSED HIPAA PROTECTIVE AND CONFIDENTIALITY ORDER SHOULD BE GRANTED..........10

CONCLUSION.....................................................................................................................10

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*2002 Irrevocable Trust for Hvizdak v. Huntington Nat'l Bank*,
   2008 WL 11338400 (M.D. Fla. July 18, 2008) ........................................................5

*Dentsply Sirona Inc. v. L I K Supply, Corp.*,
   2016 WL 3920241 (N.D.N.Y. July 15, 2016) ................................................... 8, 10

*Fair Housing Ctr. of the Greater Palm Beaches, Inc. v. High Point of Delray
   Beach Condo. Ass'n, Section 1, Inc.*, 2006 WL 8066685 (S.D. Fla. 2006) .............................8

*Fender Musical Instruments Corp. v. Individuals, Corps., LLCs, P'ships, &
   Unincorporated Ass'ns Identified on Schedule A*, 2025 WL 2266848
   (S.D. Fl. Mar. 19, 2025) ............................................................................... 8, 9, 10

*Fresh Wholesale Corp. v. Amir Produce, Inc.*, 2018 WL 1876735
   (S.D. Fla. Mar. 29, 2018), *R&R adopted*, 2018 WL 3730230
   (S.D. Fla. May 4, 2018) ..........................................................................................6

*FTC v. Campbell Cap. LLC*, 2018 WL 5781458
   (W.D.N.Y. Oct. 24, 2018), *R&R adopted*, 2018 WL 5776354
   (W.D.N.Y. Oct. 25, 2018) ........................................................................................9

*Gilead Scis., Inc. v. Meritain Health, Inc.*,
   2025 WL 1745669 (D. Md. June 24, 2025)...............................................................5

*Heralds of Gospel Found., Inc. v. Varela*, 2017 WL 3868421
   (S.D. Fla. June 23, 2017)........................................................................................5

*Jager v. Douglas County Sch. Dist.*,
   862 F.2d 824 (11th Cir.1989) ..................................................................................4

*McGraw-Hill Global Educ. Hldgs., LLC v. Khan*,
   323 F. Supp. 3d 488 (S.D.N.Y. 2018)................................................................ 8, 10

*N. Am. Prods. Corp. v. Moore*,
   196 F. Supp. 2d 1217 (M.D. Fla. 2002) ...................................................................7

*Roche Diagnostics Corp. v. Priority Healthcare Corp.*,
   2019 WL 5810312 (N.D. Ala. Nov. 7, 2019) ............................................................5

*Se. Mech. Servs., Inc. v. Brody*,
   2008 WL 4613046 (M.D. Fla. Oct. 15, 2008) ..........................................................7

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*SEC v. MCC Int'l Corp.*,
  2022 WL 2341216 (S.D. Fla. Apr. 26, 2022) ........................................................9, 10

*Sheely v. MRI Radiology Network, P.A.*,
  505 F.3d 1173 (11th Cir. 2007)..................................................................................4

*Swisher Int'l, Inc. v. U.S. Food & Drug Administration*,
  2022 WL 320889 (11th Cir. Feb. 3, 2022) ...............................................................4

*Thomas v. Bryant*,
  614 F.3d 1288 (11th Cir. 2010)..................................................................................5

*TracFone Wireless, Inc. v. Adams*,
  304 F.R.D. 672 (S.D. Fla. 2015)................................................................................9

*United States v. Askins & Miller Orthopaedics, P.A.*,
  924 F.3d 1348 (11th Cir. 2019)..................................................................................3

*In re Vital Pharm.*,
  2023 WL 3689540 (Bankr. S.D. Fla. May 26, 2023)..................................................5

*Wilkins v. Arthur J. Gallagher & Co.*,
  2010 WL 11652139 (W.D. Tex. Apr. 20, 2010)..................................................8, 10

*Yorktown Sys. Grp. Inc. v. Threat Tec LLC*,
  108 F.4th 1287 (11th Cir. 2024) ................................................................................7

## INTRODUCTION

Defendants' opposition to Lilly's motion is remarkable for what it does *not* include. It does not contain a denial that Defendants perpetuated a $200 million fraudulent rebate scheme, nor does it deny that they are unable to pay a judgment for this amount, or deny that they dissipated their assets since learning of Lilly's allegations. To the contrary, the response to Lilly's lawsuit from Defendants and the religious organizations they purport to serve indicates that Lilly's allegations are true and uncontested.

As Lilly pointed out in its motion, after Lilly filed its complaint in this action, the Church of God in Christ (the "Church") publicly stated it had "*no knowledge*" of Defendants' fraudulent activities and "will fully cooperate with Eli Lilly, as well as any appropriate authorities, in connection with this case."[1] In opposition, Defendant Kevin Singer *admits* that Defendant Community Health Initiative, Inc. purported to serve the Church's members, Singer Decl. ¶ 4, but fails to respond to the Church's statement or otherwise deny Lilly's allegations.

As Lilly also pointed out in its motion, a different religious organization, the National Hispanic Christian Leadership Conference ("NHCLC"), whose members Defendant Galaxy Med, LLC ("Galaxy") purported to serve, has stated that it has no relationship with Galaxy and that business records purporting to show such a relationship are "*shocking and a complete fraud*."[2] But the declaration from Defendant Lane Mazei, who admits to being the owner of Galaxy, does not even acknowledge the existence of NHCLC much less respond to these allegations of fraud.

The Singer and Mazei declarations are seemingly crafted to avoid perjury and cannot deny Lilly's allegations. They do not deny that DrugPlace and Galaxy resold Trulicity on the secondary market or claim that they dispensed it to patients, nor that the rebate claims submitted on their behalf were based on fabricated data. And they do not deny that the purported "prescription cost share programs" through which they operated were shams. This silence is damning. Lilly has presented compelling evidence of fraud. Defendants' failure to contest that evidence effectively concedes Lilly's likelihood of success on the merits.

In addition to failing to contest the merits, Defendants do not seriously contest Lilly's allegations that it has suffered irreparable harm or that Defendants are dissipating their assets. In its Motion, Lilly contended that "it is highly unlikely that Lilly will be able to obtain and execute

---

[1] *See* Potter Decl., Ex. 6 (Dkt. No. 32-6).
[2] *See id.*, Exs. 7–8 (Dkt. Nos. 32-7-8).

a money judgment that provides full compensation" for its losses. Mot. at 2–3, 14. Lilly further contended that in response to this lawsuit, Defendants have begun to liquidate and otherwise dissipate assets. *Id.* at 2, 8. Defendants could have easily contested these arguments if they were not true. But the Singer and Mazei declarations do not address these issues. The existence of irreparable harm and the dissipation of assets are therefore not genuinely disputed.

Instead, Defendants argue that because the accused corporate entities are "no longer operating," there is no risk of irreparable harm. This argument ignores controlling law. The Eleventh Circuit has made clear that a defendant's voluntary cessation of unlawful conduct does not moot a request for injunctive relief, where—as here—the cessation was timed to anticipate suit, the conduct was deliberate and sustained rather than isolated, and the defendant has not acknowledged liability. Defendants shut down certain elements of their years-long fraudulent operation in response to Lilly's pre-suit investigation. That is no defense to injunctive relief particularly where, as here, Defendants have a documented history of reconstructing their fraudulent operation after being discovered. Mot. at 10–13.

Finally, Defendants' contention that expedited discovery is unwarranted because Lilly already possesses "ample" evidence borders on absurd. Through extraordinary pre-litigation efforts, Lilly did indeed amass ample significant evidence of Defendants' fraud. But this does not mean it is not entitled to discovery of the information in the hands of Defendants and third parties that will confirm that fraud, define its scope (for example, identify additional conspirators and the details of the scheme's operation), and identify any efforts by Defendants to perpetuate the fraud or dissipate assets. The discovery Lilly seeks is narrowly tailored, proportionate, and necessary, both to prepare for any preliminary injunction hearing and to mitigate further irreparable harm. Courts routinely grant expedited discovery under precisely these circumstances.

## ARGUMENT

**I.   THE COURT SHOULD GRANT LILLY'S MOTIONS FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**A.   There Is No Genuine Dispute that Lilly Will Succeed on the Merits of Its Claims**

As Defendants acknowledge, Lilly's opening motion contains "ample" evidence that Defendants are responsible for a fraudulent scheme exceeding $200 million. Opp. at 1, 8, 10. In response, Defendants do not deny that their scheme is, in fact, a fraud. They do not contest that DrugPlace and Galaxy resold Trulicity on the secondary market rather than dispensing it to

2

patients. They do not contest that their rebate claims were based on fabricated prescription data. They do not offer any evidence to establish that Trulicity was actually dispensed to patients as represented in their hundreds of thousands of rebate submissions. The two declarations they do submit—from Singer (owner of DrugPlace, Community Health, and Nakorn) and Mazei (owner of Galaxy and Brightline)—speak only on the narrow and self-serving assertion that the entities have closed and that their licenses have been deactivated. *See* Dkt. Nos. 64-2; 64-3.

Since Lilly filed its Complaint, third parties have confirmed its allegations. NHCLC has confirmed that it was never affiliated with, nor had ever endorsed, sponsored, or authorized, the prescription benefits programs that Defendants purported to operate on behalf of their members. *See* Dkt. No. 44-1. And the Church similarly has no "knowledge" of Defendants' fraudulent activities and will "cooperate" in any investigation of them. *See* Dkt. No. 32-6.

Individual Defendants Bishop Maynard, Maynard II, Misha Maynard, Enriquez, and Giscombe do not contest that they were involved in Defendants' fraudulent scheme. Lilly's opening papers detailed the connection these individuals had to the ongoing scheme. If anything, Defendants' contention that Lilly does not provide sufficient detail about the roles these individuals played in their scheme underscores the need for expedited discovery.

### B. Lilly Is Suffering Irreparable Harm

Defendants' opposition rests almost entirely on the argument that injunctive relief is unwarranted because the DrugPlace entities are no longer operating and have "deactivated their pharmacy licenses." Opp. at 1, 4–5. This argument fails.

### 1. Injunctive Relief Is Warranted Even if Defendants Claim to Have Stopped their Fraudulent Scheme

Defendants say they have stopped engaging in their fraudulent scheme. Even if that were true, which there is every reason to doubt, this would not preclude an injunction. The Eleventh Circuit looks at three factors when determining if an entity's closure moots a claim for injunctive relief: "(1) whether the challenged conduct was isolated or unintentional, as opposed to a continuing and deliberate practice; (2) whether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit; and (3) whether, in ceasing the conduct, the defendant has acknowledged liability." *United States v. Askins & Miller Orthopaedics, P.A.*, 924 F.3d 1348, 1355–56 (11th Cir. 2019) (internal citations and quotations omitted). Parties asserting mootness on this basis bear a "heavy" and "formidable" burden, which

requires "more than a private party's assertion that its challenged conduct will not recur." *Id.*

All three of these factors weigh against a finding of mootness. First, Defendants' conduct was not isolated or unintentional; it was a multi-year, multi-entity, deliberately concealed fraud scheme spanning more than a decade. *See id.* at 1355–56 (case for injunctive relief not mooted by voluntary closure of tax-delinquent business where defendants' failure to pay taxes was "'a continuing and deliberate practice' for a better part of a decade"). Second, Defendants' cessation was plainly timed to anticipate suit: according to the Singer and Mazei Declarations, DrugPlace, Community Health, Nakorn, Galaxy, and Brightline all allegedly shut down between January and March 2026, all in the wake of Lilly's investigation. *See Jager v. Douglas County Sch. Dist.*, 862 F.2d 824, 833–34 (11th Cir.1989) (case not moot where cessation came only "[u]nder the imminent threat of the [plaintiffs'] lawsuit"). Defendants offer no explanation for the timing of these closures, and the only one that exists is that they knew they had been discovered. Lilly caught them. Third, although Defendants do not contest the merits, they have not acknowledged any wrongdoing. *See Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1187 (11th Cir. 2007) ("a defendant's failure to acknowledge wrongdoing similarly suggests that cessation is motivated merely by a desire to avoid liability, and furthermore ensures that a live dispute between the parties remains"). Indeed, their opposition carefully avoids any admission regarding the fraudulent nature of their conduct.

The unpublished decision on which Defendants heavily rely, *Swisher Int'l, Inc. v. U.S. Food & Drug Administration*, 2022 WL 320889 (11th Cir. Feb. 3, 2022), is completely inapposite. In *Swisher*, the plaintiff sought to prevent a potential future enforcement action by a government agency—an action that the agency had taken no affirmative steps toward carrying out. The court found that mere "possibility" of future harm was speculative. Here, in contrast, the harm Defendants have visited on Lilly is far from speculative and is uncontested.  Defendants do not deny that some have a historical association with prior fraudulent schemes, or that they have already inflicted over $200 million in concrete harm on Lilly, or that they have a decade-long track record of pivoting to new fraudulent schemes when detected, or that they shut down their entities only after learning that Lilly had discovered their fraud. In these circumstances, cases such as *Askins & Miller* control and *Swisher* is not on point.

Moreover, Defendants' history of past misconduct gives rise to a strong inference that future harm is not speculative but imminent. Courts in this Circuit have recognized that a

4

defendant's history of prior wrongdoing is itself probative of future injury, particularly where—as here—the defendant has engaged in a pattern of chronic, deceptive conduct. *See Roche Diagnostics Corp. v. Priority Healthcare Corp.*, 2019 WL 5810312, at *3 (N.D. Ala. Nov. 7, 2019) (finding "a high likelihood" of future misconduct given defendants' prior "pattern of chronic, deceptive conduct" and noting that "past behavior often provides the best indicator of future behavior"); *Thomas v. Bryant*, 614 F.3d 1288, 1318–19 (11th Cir. 2010) (plaintiff demonstrated irreparable harm even after transfer to a different facility because return to the prior facility was possible and that facility's prior treatment gave rise to an inference of future irreparable injury).[3]

Defendants have operated a multi-year, multi-entity scheme; they have a history of pivoting to new schemes when detected; and they have already formed new entities even as they wind down the ones that have been exposed. Mot. at 4–5, 8. On these facts, the inference that Defendants will continue their fraudulent conduct is not speculative, it is overwhelming.[4]

Finally, Defendants' carefully worded declarations do not commit to refraining from future fraud. Singer denies having "formed any entities for the purpose of operating as a pharmacy or pharmaceutical wholesaler." Singer Decl. ¶ 6. But he does not state that he has no plans for resurrecting his fraudulent business model, and has in fact opened several new entities in the last year, any of which could be used for future fraudulent purposes. Mot. at 8. To the contrary,

---

[3] *See also In re Vital Pharm.*, 2023 WL 3689540, at *6 (Bankr. S.D. Fla. May 26, 2023) ("[I]rreparable harm 'may be satisfied by demonstrating a history of past misconduct, which gives rise to an inference that future injury is imminent.'" (quoting *Thomas*, 614 F.3d at 1318)); *Heralds of Gospel Found., Inc. v. Varela*, 2017 WL 3868421, at *6 (S.D. Fla. June 23, 2017) (noting that evidence about "past loss indicates that future loss (which is required for a showing of the irreparable harm needed for injunctive relief) is not mere speculation").

[4] Defendants contend in a footnote that Lilly's "delay" in seeking relief undermines its claim of irreparable harm. Opp. at 6 n.3. But Lilly cannot be faulted for the time it took to fully uncover Defendants' fraud and gather enough evidence to plead it with particularity. As described in the Complaint and TRO motion, Lilly conducted an extensive investigation, including conducting data analysis, commissioning a third-party audit (BlackPoint), obtaining program documentation, conducting surveillance, and making secondary-market purchases to uncover and confirm the fraudulent scheme. Given the seriousness of the allegations here, Lilly's decision to fully vet its case before coming to Court should be rewarded, not punished. *See, e.g.*, *2002 Irrevocable Trust for Hvizdak v. Huntington Nat'l Bank*, 2008 WL 11338400, at *2 (M.D. Fla. July 18, 2008) (granting TRO where plaintiffs brought suit around a year after discovering the alleged fraud because "the threatened injury to Plaintiffs, if this request is not granted, outweighs the damage this relief would cause to Defendants"); *see also Gilead Scis., Inc. v. Meritain Health, Inc.*, 2025 WL 1745669, at *24–25 (D. Md. June 24, 2025) (finding delay of 10 months to investigate did not militate against a finding of irreparable harm).

Defendants seek to engage in the activities sought to be enjoined, asserting that if "DrugPlace is enjoined . . . it will experience significant disruption to its wind-up and dissolution process." Opp. at 8. That is precisely why Defendants *should* be enjoined: they cannot be trusted to refrain from engaging in fraudulent transactions.  Lilly's requested equitable relief will "staunch the flow of ongoing *future* losses." *Askins & Miller Orthopaedics*, 924 F.3d at 1359–60.

### 2.   Defendants Do Not Genuinely Dispute That Lilly's Losses Are Irreparable or That They Are Dissipating Assets

An injunction is also necessary because Defendants do not meaningfully contest that Lilly has suffered irreparable harm or that they are dissipating their assets. Lilly contended that "it is highly unlikely that Lilly will be able to obtain and execute a money judgment that provides full compensation" for its losses. Mot. at 2–3, 14. Lilly further contended that Defendants have already begun to liquidate and otherwise dissipate assets. *Id.* at 2, 8. Rather than respond to these arguments, Defendants make conclusory claims that any harm can be addressed with monetary damages.  Opp. at 8. But that assertion is incorrect on its face.

Injunctive relief is entirely appropriate where, as here, Defendants are dissipating assets and it is highly unlikely Defendants will be able to satisfy a money judgment of the magnitude Lilly seeks. Lilly's ability to collect a "future money judgment to redress future harms is relevant in determining whether legal remedies are 'adequate' such that they preclude injunctive relief . . . ." *Askins & Miller Orthopaedics*, 924 F.3d at 1359 ("Equity courts have long recognized 'extraordinary circumstances,' including the likelihood that a defendant will never pay, as one way to 'give rise to the irreparable harm necessary for a preliminary injunction.'" (citation omitted)); *So Fresh Wholesale Corp. v. Amir Produce, Inc.*, 2018 WL 1876735, at *3 (S.D. Fla. Mar. 29, 2018), *R&R adopted*, 2018 WL 3730230 (S.D. Fla. May 4, 2018) (finding irreparable injury based on evidence of dissipation of assets).

Defendants claim that Lilly "contradicts itself" by quantifying damages while claiming they are "impossible" to determine. Opp. at 8. But Lilly has never claimed that it cannot quantify the amount of fraudulent rebates it has paid to date. Nevertheless, Lilly cannot be made whole through a money judgment because (a) Defendants are (undisputedly) unable to satisfy a money judgment for the full extent of Lilly's losses; (b) the *full* scope of Defendants' fraud remains unknown; and (c) the non-monetary harms to Lilly's reputation and business relationships with PBMs cannot be remedied through damages at all.

### 3.     Lilly's Reputation and Goodwill Are Being Irreparably Harmed

Defendants dismiss Lilly's goodwill evidence as "vague." Opp. at 8. But the harm to Lilly's goodwill is both concrete and well-documented. As explained by Angela Wadsworth, who works directly with Lilly's commercial counterparties, Defendants' fraud has already forced Lilly to refuse to honor recent rebate claims submitted by PBMs on behalf of DrugPlace and Galaxy. Wadsworth Decl. ¶¶ 63-65. Withholding payment for these claims has created friction with the PBMs, disrupting Lilly's relationships with important business counterparties, and distracting from Lilly's business operations. If Defendants are not enjoined, Lilly may be required to take similar action against the same or additional PBMs in the future, compounding the harm to these critical business relationships. The need for heightened vigilance and self-help measures jeopardize Lilly's relationships with important business partners. *See Se. Mech. Servs., Inc. v. Brody*, 2008 WL 4613046, at *15 (M.D. Fla. Oct. 15, 2008) ("the focus of preliminary injunctive relief is on maintaining long standing relationships and preserving the goodwill of a company built up over the course of years of doing business" (citing *N. Am. Prods. Corp. v. Moore*, 196 F. Supp. 2d 1217, 1230–31 (M.D. Fla. 2002))); *see also Yorktown Sys. Grp. Inc. v. Threat Tec LLC*, 108 F.4th 1287, 1296–97 (11th Cir. 2024) (evidence of potential damage to business reputation supported finding of irreparable harm).

### 4.     The Balance of the Equities Is in Lilly's Favor

Defendants contend that the balance of equities weighs in their favor because an injunction would cause "significant disruption to [DrugPlace's] wind-up and dissolution process." Opp. at 8. This constitutes an admission that, unless enjoined, Defendants intend to continue engaging in the challenged conduct in the guise of their dissolution process. Furthermore, the "hardship" Defendants invoke—interference with their ability to liquidate assets and shut down operations— is precisely the conduct that Lilly's proposed injunction is designed to restrain, because it is through that very process that Defendants can dissipate assets, destroy evidence, and position themselves to launch a new iteration of their scheme. Far from weighing against an injunction, Defendants' desire for an unmonitored wind-down underscores the need for one.

## II.     EXPEDITED DISCOVERY IS NECESSARY AND APPROPRIATE

### A.     The Discovery Lilly Seeks Is Reasonable and Necessary

The TRO and Order to Show Cause for a PI now before the Court (Dkt. No. 31-1) contains proposed provisions authorizing expedited discovery. Defendants describe the proposed discovery

as "tremendously overbroad" but cannot explain why any specific category of discovery is irrelevant to the issues before the Court. On the contrary, the scope of this discovery is narrow and limited to documents necessary to create the factual record for the anticipated hearing. Moreover, Defendants fail to substantiate their assertions of burden.[5]

For example, discovery identifying affiliated entities and potential co-conspirators is necessary given that Leight and Singer have formed at least seven new companies since February 2025. Sprague Decl. ¶ 26. Financial account information is necessary to trace the flow of funds and locate ill-gotten proceeds, given that Defendants are actively liquidating assets, and so Lilly can further prove Defendants' participation in the scheme. Expedited discovery of this kind is frequently authorized in cases like this. *See, e.g.*, *Dentsply Sirona Inc. v. LIK Supply, Corp.*, 2016 WL 3920241, at *9–10 (N.D.N.Y. July 15, 2016) (authorizing expedited discovery of the identities of the sources and purchasers of the counterfeit products, and any participants in the unlawful conduct); *Fender Musical Instruments Corp. v. Individuals, Corps., LLCs, P'ships, & Unincorporated Ass'ns Identified on Schedule A*, 2025 WL 2266848 at *3 (S.D. Fl. Mar. 19, 2025) (permitting expedited discovery to enable plaintiff to identify defendants' bank accounts).[6]

While Lilly did marshal ample evidence of Defendants' fraud prior to filing suit, that hardly means it is not entitled to other specific evidence relevant to proving the fraud, to preserve evidence from destruction, and to identify assets that are being dissipated. The expedited discovery sought here will allow Lilly to uncover such information and further prepare for a PI hearing. Critically, third-party discovery is essential because Lilly cannot rely on Defendants, who have been caught perpetrating a massive fraud and who have demonstrated a pattern of deception, concealment, and obstruction, to be forthcoming in producing evidence of their own wrongdoing.[7] Third-party

---

[5] *Cf. Fair Housing Ctr. of the Greater Palm Beaches, Inc. v. High Point of Delray Beach Condo. Ass'n, Section 1, Inc.*, 2006 WL 8066685, at *2 n.2 (S.D. Fla. 2006) ("A party objecting to discovery on the basis of undue burden or overbreadth must generally support the assertion with affidavits or other evidence.").

[6] *See also McGraw-Hill Global Educ. Hldgs., LLC v. Khan*, 323 F. Supp. 3d 488, 493 (S.D.N.Y. 2018) (discussing court's preliminary injunction order directing defendants to locate all accounts connected to defendants' websites); *Wilkins v. Arthur J. Gallagher & Co.*, 2010 WL 11652139, at *2 (W.D. Tex. Apr. 20, 2010) (granting requests for written discovery and production of documents prior to preliminary injunction hearing).

[7] Defendants assert that "[a]llegations of prior 'suspicious' conduct . . . are insufficient to demonstrate a risk of spoliation." Opp. at 9. Defendants conduct is more than suspicious. They

sources, including PBMs, rebate aggregators, wholesalers, and financial institutions, are therefore indispensable to developing the evidentiary record needed to support Lilly's claims on the merits and to ensure that the Court has a complete and reliable factual record before it.

### B.  Expedited Discovery Is Necessary to Mitigate Further Harm

Expedited discovery is also necessary for Lilly to mitigate further irreparable harm. *See TracFone Wireless, Inc. v. Adams*, 304 F.R.D. 672, 673 (S.D. Fla. 2015) (expedited discovery is warranted where it may mitigate additional irreparable harm caused by an ongoing scheme). To successfully bring an end to Defendants' fraudulent schemes, Lilly must ascertain their full scope, the players and principals involved, the extent to which Defendants have exploited Lilly's rebate agreements with third-party PBMs, and how Defendants have disposed of the proceeds of their schemes. If Lilly can quickly discover these facts, it can use them to identify and block Defendants and their associates and affiliates from submitting further fraudulent rebate claims and hiding or dissipating their assets, thereby mitigating further irreparable harm.

Based on available evidence, it appears Defendants are already pursuing new schemes and dissipating their assets. Again, Leight and Singer have formed at least seven new corporate entities together since February 2025. Defendants have also begun liquidating their assets, *e.g.*, Sprague Decl. ¶ 9 & Ex. 4, raising serious concerns that they will hide and destroy evidence of their past fraud, which further supports expedited discovery. *See, e.g.*, *FTC v. Campbell Cap. LLC*, 2018 WL 5781458 at *4 (W.D.N.Y. Oct. 24, 2018) (finding good cause for expedited discovery where "Defendants might otherwise destroy evidence and dissipate assets"), *R&R adopted*, 2018 WL 5776354 (W.D.N.Y. Oct. 25, 2018); *Fender Musical Instruments Corp.*, 2025 WL 2266848, at *3 (finding good cause for expedited discovery where defendants were "likely to fraudulently transfer financial assets [overseas]" and to enable plaintiff to identify defendants' bank accounts); *SEC v. MCC Int'l Corp.*, 2022 WL 2341216, at *6 (S.D. Fla. Apr. 26, 2022) (finding good cause for expedited discovery in alleged fraud case where evidence suggested at least one defendant was

---

have already liquidated warehouse equipment, shut down entities, and surrendered licenses to cover the trail. The very declarations Defendants submitted state that the entities no longer operate—meaning that, absent immediate discovery, there is a serious risk that whatever documents remain will be destroyed or lost. Lilly takes absolutely no comfort in Defendants assertion that "DrugPlace is already on notice of its duty to preserve potentially relevant information." Nor should the Court given the scale of the fraudulent scheme and Defendants' histories. A Court order, not Defendants' word, is required in these circumstances.

winding down assets and to prevent defendants from destroying records).

### C. Lilly Should Receive Expedited Discovery to Prepare for the Preliminary Injunction Hearing

Expedited discovery is also necessary to create a factual record that will assist the court in deciding Lilly's motion for a preliminary injunction. *See MCC Int'l Corp.*, 2022 WL 2341216, at *6 (permitting expedited discovery in anticipation of preliminary injunction hearing in case alleging fraud). Lilly seeks: (1) discovery to identify additional conspiring entities and individuals; (2) specific information regarding Defendants' rebate claims relating to Lilly medicine, the payment Defendants received in connection with such medicine, and acquisition, transfer, and sale thereof;  (3) documents sufficient to identify relevant bank and financial accounts to assist Lilly in tracing the flow of funds that Defendants obtained through their fraudulent scheme; and (4) an order permitting Lilly to serve document requests on and take the depositions of Defendants and nonparties on an expedited basis. The scope of this discovery is narrow, not excessively burdensome, and limited to documents necessary to create the factual record for the anticipated hearing. *See, e.g.*, *Dentsply Sirona*, 2016 WL 3920241, at *9–10; *McGraw-Hill Global Educ. Hldgs.,* 323 F. Supp. 3d at 493; *Wilkins*, 2010 WL 11652139, at *2; *Fender Musical Instruments Corp.*, 2025 WL 2266848, at *3.

### III. LILLY'S UNOPPOSED MOTION FOR ENTRY OF ITS PROPOSED HIPAA PROTECTIVE AND CONFIDENTIALITY ORDER SHOULD BE GRANTED

Finally, the Court should grant Lilly's motion for a HIPAA Protective and Confidentiality Order, which is needed to allow the production in discovery of protected health information without violating the privacy rights of the individuals caught up in Defendants' schemes. Lilly filed that motion on May 22, 2026, and to date, no Defendant has objected to its entry. Therefore, for the reasons set forth in that motion, Lilly's requested order should be granted.

**CONCLUSION**

For the foregoing reasons and those set forth in Lilly's opening brief, the Court should grant Lilly's requested TRO and PI order (including that order's expedited discovery provisions) and its requested HIPAA protective order and confidentiality order.

10

DATED:    Miami, Florida       Respectfully submitted,
           June 7, 2026

STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON

*/s/ Jay B. Shapiro*
Jay B. Shapiro (FBN 776361)
jshapiro@stearnsweaver.com
Veronica L. de Zayas, Esq. (FBN 91284)
vdezayas@stearnsweaver.com
Ryan M. Wolis, Esq. (FBN 1019034)
rwolis@stearnsweaver.com
Museum Tower
150 W. Flagler Street, Suite 2200
Miami, FL 33130
Tel: (305) 789-3229
Fax: (305) 789-3395

PATTERSON BELKNAP WEBB & TYLER
LLP

*/s/ Geoffrey Potter*
Geoffrey Potter (Admitted PHV)
Aron Fischer (Admitted PHV)
Joshua Kipnees (Admitted PHV)
gpotter@pbwt.com
afischer@pbwt.com
jkipnees@pbwt.com
1133 Avenue of the Americas
New York, NY 10036
Tel: 212-336-2000
Fax: 212-336-2222

*Attorneys for Plaintiff Eli Lilly and Company*

11

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the above and foregoing was filed electronically via CM/ECF on June 7, 2026 and that the document is being served via transmission of Notice of Electronic Filing generated by the CM/ECF system on all counsel and parties registered to receive notices via CM/ECF.  I further certify Defendant Misha Maynard is being served via email, through her counsel Jason Holleman Esq., at Jason@hollemangroup.com.

/s/ Jay B. Shapiro
Jay B. Shapiro

12