## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

ELI LILLY AND COMPANY,

        Plaintiff,

v.

DRUGPLACE, INC. (FL); DRUGPLACE, INC.
(TN); COMMUNITY HEALTH INITIATIVE,
INC.; NAKORN WHOLESALERS, LLC;
GALAXY MED, LLC D/B/A GALAXY
PHARMACY; BRIGHTLINE WHOLESALE
LLC; PAUL LEIGHT; KEVIN SINGER;
READUS SMITH; JERRY MAYNARD SR.;
JERRY MAYNARD JR.; MISHA MAYNARD;
EDGAR ENRIQUEZ; LANE MAZEI; and
DANIELLE GISCOMBE,

        Defendants.

Case No. 1:26-CV-23516-FAM

## MOTION FOR PROTECTIVE ORDER AND STAY OF THIRD-PARTY DISCOVERY

Defendants DrugPlace, Inc. (FL), DrugPlace, Inc. (TN), Community Health Initiative, Inc., Nakorn Wholesalers LLC, Galaxy Med, LLC d/b/a Galaxy Pharmacy, Brightline Wholesale LLC, Kevin Singer, Paul Leight, Readus Smith, Jerry Maynard Sr., Jerry Maynard Jr., Edgar Enriquez, Lane Mazei, and Danielle Giscombe (collectively, "Movants") move this Court under Federal Rule of Civil Procedure ("Rule") 26(c) to seek an Order protecting Movants' protectable, private financial information and staying Plaintiff Eli Lilly and Company's ("Lilly") national campaign of over 1,000 subpoenas seeking Movants' financial information, along with other targeted relief.

## PRELIMINARY STATEMENT

Lilly used the Stipulated Injunction not to conduct targeted, expedited discovery, but to launch a secret, nationwide subpoena campaign. Without notice to Movants or any apparent basis to believe a particular bank had relevant information, Lilly issued 1,006 subpoenas to financial institutions between June 12 and July 2, 2026, and then served additional financial subpoenas from July 8 through July 24. Movants learned the staggering scope of Lilly's campaign only after this Court ordered Lilly to provide copies of the subpoenas (the "Clarification Order"). ECF No. 83.

The subpoenas are virtually identical and demand complete financial histories of Movants and numerous non-parties dating back to January 1, 2019. Lilly also swept in non-parties to harass

---

**MOTION FOR PROTECTIVE ORDER**          **PAGE 1**

and exert undue leverage over Movants. For example, Movant Danielle Giscombe's mother received a letter from a bank regarding Lilly's subpoena given she jointly held an account with Danielle. She is not the only non-party completely unrelated to Lilly's allegations that has been swept into Lilly's nationwide, untargeted subpoena campaign. Lilly is indiscriminately seeking far-reaching financial records of Movants and non-parties that are beyond the scope of permissible discovery, and more problematically seeks confidential and constitutionally protected private financial information with no cognizable justification. A listing of the subpoenas that Movants believe Lilly issued seeking financial information is attached as Exhibit A.

Lilly's improper conduct does not end there. It did not provide completed proofs of service, so Movants cannot determine the actual service date or minimum return date. Lilly also failed to provide complete subpoena materials even after the Clarification Order. At minimum, the omissions confirm that post-service notice has not protected Movants, and Lilly's handling of this process requires Court supervision. Lilly has also admitted that the waiver of preservice notice of subpoenas was intended to avoid party objections. And after Movants filed a Rule 45 motion to quash in the Southern District of New York ("Motion to Quash"), Lilly refused to give certain Movants the same 21-day interrogatory extension it had given others unless they withdrew or delayed that motion. Lilly claimed it had an urgent need for the responses because it intended to use them in its response to support the subpoenas already served. This confirms the problem: Lilly served over 1,000 bank subpoenas and is now trying to justify them after the fact. That is the paradigm of an impermissible fishing expedition.

Lilly is not entitled to unfettered discovery merely because it alleges fraud. That is untenable. The parties did not agree to such nor did the Court allow for that discovery without any opportunity for appropriate objection. Neither the Stipulated Injunction, the Federal Rules, nor the Florida Constitution condone Lilly's discovery antics. Accordingly, Movants respectfully submit that the Court enter a protective order that stays Lilly's third-party discovery of Movants' confidential financial information and protects such information.[1]

---

[1] On May 19, 2026, Lilly sought an expedited discovery order that bears upon the relief sought herein. ECF No. 15. On June 9, 2026, this Court denied as moot Lilly's expedited discovery request in light of the Stipulation and Joint Motion for Preliminary Injunction as to DrugPlace Defendants (the "Stipulation"). ECF No. 72-73. In the Stipulation, Movants expressly reserved their rights to existing jurisdictional defenses. ECF No. 72 at 2. Movants continue to expressly reserve their rights to challenge personal jurisdiction in their respective forthcoming responsive pleadings.

---

**MOTION FOR PROTECTIVE ORDER**          **PAGE 2**

**FACTUAL BACKGROUND**

When Movants agreed to a truncated return schedule and waived advance notice of third-party discovery, they never could have imagined Lilly would engage in a secret nationwide campaign of more than 1,000 overly broad and irrelevant subpoenas. When explaining to this Court the subpoenas Lilly intended to serve, Lilly stated that "[s]ome [of the banks] are local, some are national." Ex. B at 32:3. Serving over 1,000 banks is not just "some" banks and doing so without any discernable tether to the allegations to see "who else was involved" is an abuse of the discovery process. *Id.* at 21:1-2. Then, Lilly told this Court that the purpose of waiving Rule 45(a)(4) was to "avoid party objections" and that the waiver "served no other purpose." ECF. No. 91 at 2. Lilly has taken the absurd position that simply because it *alleged* fraud, it has *carte blanche* to seek expedited discovery from third parties. Ex. C.[2] The Stipulated Injunction, the Federal Rules of Civil Procedure, and this Court's Local Rules do not condone Lilly's position and abuse of the discovery process.

**A.    The Bank Subpoenas**

On the evening of July 7, 2026, Lilly produced copies of certain subpoenas, in the form of a 4,020-page PDF. This revealed 1,006 subpoenas served nationwide to financial institutions between June 12 and July 2, 2026. Ex. D.[3] Lilly represented that each subpoena was essentially identical and sought the same documents through a common Schedule A. Exs. E; F.[4] The subpoenas did not include a completed proof of service either. *E.g.*, Ex. D at 3. Movants therefore cannot confirm the actual service dates or minimum five-day return dates for many of the subpoenas. Lilly then issued ten more bank subpoenas from July 8 to July 24, 2026, including those that targeted 25 non-parties. Ex. D at 28-37. These subpoenas suffer from the same defects

---

[2] Exhibit C is a true and correct copy of Lilly's email correspondence. Specifically, counsel for Lilly represented that it sought waiver of Rule 45(a)(4) because Defendants "engaged in an intentional fraudulent scheme." Ex. C at 2.

[3] To minimize burden on the Court, this Exhibit D is a representative example of seven Bank Subpoenas. Should the Court request to review all Bank Subpoenas, Movants can provide them.

[4] For confidentiality reasons, Movants redacted the dates of birth, social security numbers, and employer identification numbers from Exhibits F and G.

---

as those issued prior. All subpoenas issued to banks are collectively referred to as the "Bank Subpoenas."

Schedule A to the Bank Subpoenas reveals that Lilly disclosed dates of birth, addresses, Social Security numbers, and Employer Identification Numbers of each of the Movants in each of the Bank Subpoenas. Lilly thus circulated highly sensitive personal and corporate identifiers to financial institutions nationwide, without first even determining whether Movants had any account or transaction history with those institutions.

This disclosure of confidential information was only the first layer of Lilly's overreach: the Bank Subpoenas themselves compounded it by demanding sweeping financial and account information of Movants and 25 non-parties. All the financial institution subpoenas seek the same information: every account, every statement, every transaction, every wire transfer, every ACH detail, front and back images of every check, account-opening and closing documents, signature cards, current balances, telephone numbers, email addresses, IP-login data, unique device IDs, and phone-access logs. They even seek information about accounts held by unknown individuals or entities simply because that individual or entity's account was accessed by the same IP address, device, or telephone number as Movants. *See* Ex. F, Ex. D at 32-34. Unless the Court intervenes, Lilly will continue to invade Movants' rights, before any meaningful, limiting protocol is imposed.

### B.      Clearing House Subpoenas

Lilly also served two subpoenas on The Clearing House Payments Company LLC (the "Clearing House Subpoenas") that request all "payment messages" or "CHIPS payment messages" involving any Defendant from January 1, 2019 thereafter without any subject-matter limitation. Ex. G at 7, 16. On their face, these requests sweep in personal wires, mortgage payments, tax payments, payroll, vendor payments, attorney payments, and business payments completely unrelated to Lilly's Complaint. The Clearing House Subpoenas also disclose the social security numbers, dates of birth, and employer identification numbers of Movants.

### C.      Lilly's Incomplete Disclosures and Alleged Use of Interrogatory Responses

The need for protection extends beyond the scope of the subpoenas, as Lilly's handling of the subpoenas confirms that Court supervision is necessary. Lilly admits its subpoena productions were incomplete. On July 24, 2026, Lilly stated that the "reissued subpoena to Bessemer Trust Company of Florida" and the "complete Wells Fargo subpoena" had been "inadvertently omitted" from Lilly's July 7 and July 14 productions, respectively. Ex. H. Setting this inadvertence aside,

---

**MOTION FOR PROTECTIVE ORDER**                                               **PAGE 4**

Lilly's omissions show that after-the-fact notice is inadequate, particularly where subpoenas are returnable in five business days and productions may occur before Movants can act. Further, Lilly tried to leverage Movants DrugPlace (FL), DrugPlace (TN), Nakorn Wholesalers, Community Health Initiative, Paul Leight, and Kevin Singer's request for a brief extension of time to prepare and serve interrogatory responses to justify the over 1,000 subpoenas that Lilly had already served. Despite giving other Movants the same 21-day extension, Lilly refused unless Movants withdrew or delayed the Motion to Quash. Lilly claimed that it had an "urgent need" for the responses because it "intend[s] to rely on those responses as evidence of the fraud, which supports the subpoenas and our opposition." Ex. I at 2.

## STANDARD

This Court is "given wide discretion in setting the limits of discovery." *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547-48 (11th Cir. 1985). Rule 26(c) authorizes a party to move for a protective order in "the court where the action is pending." Fed. R. Civ. P. 26(c)(1). For good cause, the Court may issue an order protecting a party or person from "annoyance, embarrassment, oppression, or undue burden or expense," including by forbidding discovery, specifying terms for discovery, prescribing a different discovery method, or limiting the scope of discovery. *Id*. Rule 26(b)(2)(C) also permits the Court to limit the extent of discovery if it is outside the scope permitted by Rule 26(b)(1), which only allows discovery of nonprivileged matters "relevant to any party's claim or defense and proportional to the needs of the case…." Fed. R. Civ. P. 26(b)(1), (b)(2)(C).

## ARGUMENT

### A.  Lilly Engaged in Secret Discovery to Avoid Objections

Lilly's own words speak for themselves. Lilly told Defendants that it would not provide copies of outstanding subpoenas because that would enable Defendants to "interfere" with discovery. Ex. C at 2. Then, after this Court granted Defendants' Motion to Clarify, Lilly told this Court that the purpose of waiving Rule 45(a)(4) was to "avoid party objections." ECF. No. 91 at 2. Moreover, at the June 9, 2026 in-person status hearing, Counsel for Lilly told the Court, in response to the Court's questions regarding anticipated third-party discovery, that "the third parties are the banks, so we can see where the money went and who else was involved in it." Ex. B at 21:1-2. Counsel also represented that "[s]ome [of the banks] are local, some are national." *Id.* at 31:23–32:3. Serving over 1,000 banks is not just "some" banks and doing so without any

discernable tether to any of the Defendants to look for "who else was involved" is a fishing expedition. This discovery seeks irrelevant information not proportional to the needs of the case, contrary to Rule 26(b)(1). And, it is meant to bully and harass Movants. Many individuals or businesses completely unconnected to Lilly's allegations are contacting Movants regarding the subpoenas they or their financial institutions have received seeking their information. This is not an appropriate use of third-party discovery and the Court's subpoena power.

Put differently, Lilly treated the Stipulated Injunction as a mechanism to evade objections and obtain sensitive and irrelevant financial information. Movants negotiated the Stipulated Injunction in good faith. Lilly's actions show it did not. Because Lilly continues to treat that order as permission to disregard federal and local rules, Court intervention is warranted.

### B.      The Subpoenas' Overbreadth Confirms That Protection is Necessary

The subpoenas also prove why protection is necessary. They disclose highly sensitive personal and corporate identifiers to financial institutions nationwide, without first even determining whether Movants had any account or transaction history with those institutions. In addition to blatant discovery misconduct, this also constitutes a significant invasion and disclosure of Movants' privacy interests. The subpoenas also do not merely seek bank records tied to Lilly, Trulicity, rebate claims for Trulicity, Health Delegates, the unnamed pharmacy benefit managers' ("PBM") alleged rebate proceeds for Trulicity, or alleged resale proceeds of Trulicity. They require financial institutions to identify every account that Movants or any of the 25 identified non-parties own, hold, control, benefit from, is a beneficiary of, or has signatory authority over, and then produce complete account and transaction information for each one across an over six-year time period. That includes all statements, all transactions, all wire transfers, all ACH details, front and back images of all checks, account-opening and closing documents, current balances, telephone numbers, and email addresses. For every transaction, Lilly seeks the amount, date, originator, recipient, account numbers, and bank contact information. For online and phone access, Lilly seeks IP-login data, unique device IDs, phone-access logs, and information about other accounts accessed by the same IP address, device, or telephone number.

The overbreadth is undeniable. If, for example, Mr. Leight sent $100 to a family member for a birthday present, that transaction is responsive and Lilly seeks that family member's account number. If Mr. Singer is merely a beneficiary of a relative's account, Lilly demands extensive records for that relative's account too. And if an unrelated person accessed an account from the

---

**MOTION FOR PROTECTIVE ORDER**                                                          **PAGE 6**

same public IP address, device, or telephone number as a Defendant, Lilly seeks that person's name, address, and account number.  Even worse, Lilly seeks surveillance. The subpoenas demand account access metadata like IP logins (*i.e.* IP addresses) and other accounts accessed by the same IP address, device, or phone number. That is an attempt to map out Defendants' and non-parties' entire financial lives and their locations when accessing bank accounts, which does not relate to any of Lilly's allegations.

The Clearing House subpoenas have the same defect. They seek all payment messages or CHIPS payment messages involving any Defendant from January 1, 2019 to present, regardless of whether the Defendant originated or received the payment. They also seek payment messages translated, converted, or mapped from SWIFT, Fedwire, or any other electronic funds transfer messaging system. Those requests have no subject-matter limitation and sweep in ordinary personal, business, family, tax, payroll, vendor, attorney, and unrelated business payments.

## C.       The Rule 26(c) Balance Favors a Protective Order

Rule 26(c) permits this Court, for good cause, to protect a party or person from "annoyance, embarrassment, oppression, or undue burden or expense," including by forbidding discovery, limiting its scope, specifying terms, or requiring a different method of discovery. Fed. R. Civ. P. 26(c)(1). Good cause requires a "sound basis or legitimate need" for protection, and courts consider the severity and likelihood of harm, the precision of the requested order, the availability of less onerous alternatives, the duration of the order, and the balance between the requesting party's need for discovery and the harm imposed. *In re Alexander Grant & Co. Litig*., 820 F.2d 352, 356-57 (11th Cir. 1987); *Farnsworth v. Procter & Gamble Co*., 758 F.2d 1545, 1547-48 (11th Cir. 1985).

That balance favors Movants. Lilly has shown no legitimate need for seeking complete financial histories from more than 1,000 financial institutions and obtaining those histories from the banks that have information, contrary to Rule 26(b)(1). Lilly's Complaint contains no allegations that warrant such overreaching discovery.  Proper discovery can be limited to accounts and transactions involving Lilly, Trulicity, rebate claims for Trulicity, Health Delegates, the unnamed PBMs' alleged rebate proceeds for Trulicity, or alleged resale proceeds of Trulicity. Lilly instead demanded complete account and transactional histories, among other detailed information as discussed in Section B above. The breadth and volume of the subpoenas also support that the purpose of issuing them was meant to harass Movants.

The harm is substantial. Florida law recognizes strong privacy protection for personal financial information. Section 23 of Article I of the Florida Constitution protects the privacy rights of natural persons, and Florida recognizes an individual's legitimate expectation of privacy in financial institution records. *Winfield v. Div. of Pari-Mutuel Wagering*, 477 So. 2d 544, 548 (Fla. 1985). Financial records may be discovered when relevant, but relevance must be established by the pleadings or evidence, and broad personal financial discovery is improper absent that showing. *Friedman v. Heart Inst. of Port St. Lucie, Inc.*, 863 So. 2d 189, 194-95 (Fla. 2003); *Shojaee v. Anibal J. Duarte-Viera, P.A.*, 365 So. 3d 1184, 1188-90 (Fla. 3d DCA 2023).  The Southern District of Florida courts also recognize that corporate entities have "personal rights or privilege in bank statements." *Palm Ave. Hialeah Tr. v. Eisenberg*, No. 24-CV-23586, 2025 WL 1311127, at *4 (S.D. Fla. May 6, 2025). Thus, Lilly is not entitled to irrelevant, confidential financial information that infringes upon Movants' rights, which is precisely what the Bank Subpoenas and Clearing House Subpoenas seek. *See id.* at *5 (partially granting motion for protective order because plaintiffs issued overly broad subpoenas to banks seeking discovery into irrelevant financial transactions and prohibiting the bank from producing such information); *Continuum on S. Beach Condo. v. QBE Ins. Corp.*, 338 F.R.D. 668, 671 (S.D. Fla. 2021) (entering protective order because third-party subpoenas were irrelevant, overbroad, and disproportionate to the needs of the case, among other reasons, and only allowing narrowly tailored subpoenas focuses on relevant issues); *Meide v. Pulse Evolution Corp.*, No. 3:18-CV-1037-J-34MCR, 2019 WL 1518959, at *5 (M.D. Fla. Apr. 8, 2019) ("The scope of discovery, though, is not without limits.").

The existing HIPAA Protective and Confidentiality Order does not cure the harm. ECF No. 70. It does not authorize irrelevant or disproportionate financial discovery. Nor does it address a problem Movants did not reasonably anticipate: a bank may produce Movants' financial records without any confidentiality designation even though Movants—not the bank—hold the privacy and confidentiality interests at stake. The current order does not provide a mechanism for Movants to properly designate third-party documents before Lilly uses, discloses, or files them publicly.

The relief Movants seek is precise and less onerous than blanket preclusion. Defendants do not ask the Court to bar all financial discovery. They ask the Court to stay the more than 1,000 subpoenas seeking financial information, sequester records already received for individual Movants and prohibit their use, require Lilly to comply with Rule 45 preservice notice, and ask the Court to modify the current HIPAA Protective and Confidentiality order to ensure that the

financial records are properly treated as confidential, for example. That is exactly the balanced relief Rule 26(c) authorizes. *Id.* (entering a protective order prohibiting the plaintiff from "obtaining, disclosing, and utilizing" third-party discovery that seeks information that has "no bearing on any of the issues pled in this case"); *see also Cannata v. Wyndham Worldwide Corp.*, No. 2:10-CV-00068-PMP, 2011 WL 3794254, at *5 (D. Nev. Aug. 25, 2011) (quashing 22 third-party subpoenas that defendant issued to plaintiff's employers, ordering defendants' counsel to destroy any documents received and inform plaintiff's counsel which third parties produced information, and requiring defendants' counsel to certify compliance with the court's order).

## CONCLUSION AND REQUESTED RELIEF

For these reasons, Movants respectfully request the Court to enter a protective order that:

1. For all subpoenas that Lilly has served or for which service is pending that seek financial information of Movants and any other third party: (a) stays compliance with such subpoenas; (b) requires Lilly, within 24 hours of the Court's entry of the protective order, to notify each subpoena recipient that compliance is stayed pending further order of this Court; and (c) requires Lilly to identify every subpoena and submit a list of the subpoenas to Movants within two business days of the Court's order that includes the subpoena recipient, date of service, return date, place of compliance, whether the recipient has produced documents, and the date Lilly provided a copy of the subpoena to Movants;

2. Stays further discovery of financial information of Movants and any other third party that does not relate to Lilly, Trulicity, rebate claims for Trulicity, Health Delegates, the unnamed PBMs' alleged rebate proceeds for Trulicity, or alleged resale proceeds of Trulicity;

3. Amends Section 1(b) of the HIPAA Protective and Confidentiality Order (ECF No. 70) to add that:

> Financial information obtained from any third party regarding Defendants and their employees, affiliates, and agents is presumed to be designated 'Highly Confidential – Attorneys' Eyes Only,' until the person or entity whose financial information is contained in the document rescinds or changes this designation or the Court orders a different designation. Any party must apply the required markings under Section 2 to these documents (to the extent they have not already been so marked) before or when producing the documents to other parties or otherwise disclosing those documents as permitted by the Order.

Lilly does not object to the second sentence of this request for relief.

4. Amends Section 7 of the Stipulated Injunction (ECF No. 72) to require preservice notice of any third-party subpoenas in accordance with Rule 45(a)(4).

---

5.   Requires Lilly to sequester all financial records received in response to any subpoena that involve Paul Leight, Kevin Singer, Readus Smith, Jerry Maynard Sr., Jerry Maynard Jr., Edgar Enriquez, Lane Mazei, and Danielle Giscombe and prohibits Lilly from reviewing, using, summarizing, analyzing, disseminating, or relying on those materials pending further order, regardless of the permitted uses and disclosures provided by the HIPAA Protective and Confidentiality Order, as amended; and,

6.   Grants such other relief in favor of Movants as the Court deems just and proper.

While Movants seek the broader relief specified in number three above, if the Court denies that relief, Movants alternatively request that Section 1(b) of the HIPAA Protective and Confidentiality Order (ECF No. 70) be amended to add that:

> Financial records, such as bank statements, produced by any bank or other financial institution for the accounts of Defendants and their employees, affiliates, and agents are presumed to be designated 'Highly Confidential – Attorneys' Eyes Only,' until the person or entity whose financial information is contained in the document rescinds or changes this designation or the Court orders a different designation. Any party must apply the required markings under Section 2 to these documents (to the extent they have not already been so marked) before or when producing the documents to other parties or otherwise disclosing those documents as permitted by the Order.

Lilly does not object to this alternative request.

## LOCAL RULE 7.1 CERTIFICATION

At least one of undersigned counsel who represents each Movant conferred with Lilly's counsel in good faith regarding the relief requested in this motion. The parties were unable to resolve the issues except as follows: (i) for paragraph number one in the request for relief, Lilly agreed to stay compliance with certain subpoenas while Movants' Motion to Quash is pending, which Movants understand are: American Express; American Express National Bank; American Express Travel Related Services Company, Inc.; The Bank of New York Mellon; Bessemer Trust Company of Florida; Coinbase, Inc; The Clearing House Payments Company; Merril Lynch, Pierce, Fenner & Smith Incorporated; and MetLife, Inc.; and (ii) Lilly does not object to the second sentence in paragraph number three and the alternative relief sought for paragraph number three above.  Lilly opposes the remaining requested relief.

Respectfully submitted,

By:   */s/ Henry H. Bolz, IV*
     **Henry H. Bolz, IV**

---

**MOTION FOR PROTECTIVE ORDER**                                                      **PAGE 10**

Florida Bar No. 43350
315 S. Biscayne Blvd., Suite 400
Miami, Florida 33131
Telephone: (305) 921-1811
hbolz@polsinelli.com
FLdocketing@polsinelli.com

**Adrienne Frazior** (*pro hac vice*)
Texas Bar No. 24059546
4020 Maple Ave., Suite 300
Dallas, Texas 75219
Telephone: (214) 661-5596
afrazior@polsinelli.com

**Andrew J. Ennis** (*pro hac vice*)
Kansas Bar No. 22445, MO Bar No. 57713
900 W. 48th Place, Suite 900
Kansas City, Missouri 64112
Telephone: (816) 374-0567
aennis@polsinelli.com

**Dayna Staron** (*pro hac vice*)
Illinois Bar No. 6317971
150 N. Riverside Plaza, Suite 3000
Chicago, Illinois 60606
Telephone: (312) 463-6348
dstaron@polsinelli.com

*Attorneys for Movants DrugPlace, Inc. (FL); DrugPlace Inc. (TN); Community Health Initiative, Inc.; Nakorn Wholesalers, LLC; Paul Leight; and Kevin Singer*

By: */s/ David S. Shankman*
**David S. Shankman**
Florida Bar No. 940186
Dinsmore & Shohl
201 N. Franklin Street
Suite 3050
Tampa, FL 33602
813-543-9848
Fax: 813-543-9849
Email: david.shankman@dinsmore.com

**Carrington M. Giammittorio** (*pro hac vice)*

Texas Bar No. 24137224
Haynes and Boone, LLP
2801 N. Harwood St., Ste. 2300
Dallas, TX 75201
(214) 651-5256
Email: carrington.giammittorio@haynesboone.com

**J. Nicholas Bunch** (*pro hac vice*)
Texas Bar No. 24050352
Haynes and Boone, LLP
2801 N. Harwood St., Ste. 2300
Dallas, TX 75201
(214) 651-5537
Email: nick.bunch@haynesboone.com

**Samara Taper** (*pro hac vice*)
Texas Bar No. 24137224
Haynes and Boone, LLP
2801 N. Harwood St., Ste. 2300
Dallas, TX 75201
(214) 651-5112
Email: samara.taper@haynesboone.com
*PRO HAC VICE*

*Attorneys for Defendants Galaxy Med, LLC,
Brightline Wholesale, LLC Readus Smith, Lane
Mazei, Danielle Giscombe*

By: */s/ Wifredo Antonia Ferrer*

**Wifredo Antonio Ferrer**
Florida Bar No. 0887005
Holland & Knight LLP
701 Brickell Ave Ste 3000
Miami, FL 33131
305-789-7780
Fax: 305-789-7799
Email: wifredo.ferrer@hklaw.com

**Andrew Solinger**
Maryland Bar No. 1412180172, DC Bar No.
036943, TN Bar No. 036943
Holland & Knight, LLC
Symphony Place
150 Third Avenue South, Suite 2800
Nashville, TN 37201
615-850-8062

---

Email: Andrew.solinger@hklaw.com
*PRO HAC VICE*

**Henry Leventis**
SC Bar No 71618, TN Bar No. 038306, DC Bar No. 9003529
Holland & Knight, LLC
150 Third Avenue S, Ste. 2800
Nashville, TN 37201
615-850-6110
Email: henry.leventis@hklaw.com
*PRO HAC VICE*

**Ross Hildabrand**
TN Bar No. 040269
Holland & Knight, LLC
150 Third Avenue S, Ste. 2800
Nashville, TN 37201
615-850-6069
Email: ross.hildabrand@hklaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

*Attorneys for Defendant Jerry Maynard Sr. and Jerry Maynard Jr.*

By: */s/ Jessica Sievert*

**Jessica Sievert**
Fla. Bar No. 55839
Holland & Knight LLP
50 N Laura Street, Suite 3900
Jacksonville, FL 32202
904-353-2000
Email: jessica.sievert@hklaw.com

**Henry Alexander Moreno**
Fla. Bar No. 1031432
Holland and Knight LLP
777 South Flagler Drive
Suite 1900, West Tower
West Palm Beach, FL 33401
(561) 650-8332
Fax: (561) 650-8399
Email: henry.moreno@hklaw.com

*Attorneys for Defendant Edgar Enriquez*

---

**MOTION FOR PROTECTIVE ORDER**                                        **PAGE 13**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document was filed with the clerk of court and has been served upon all counsel of record on July 31, 2026 via the Court's CM/ECF system.

*/s/ Henry H. Bolz, IV*
Henry H. Bolz, IV