# Exhibit B -
# June 9, 2026 Status Conference Transcript

1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**CASE NUMBER 26-23516-CV-MORENO**

**ELI LILLY AND COMPANY,**

        Plaintiff,                           **Courtroom 12-2**

  vs.                                 **Miami, Florida**

**DRUGPLACE, INC. (FL);**                 **June 9, 2026**
**DRUGPLACE, INC. (TN); COMMUNITY**
**HEALTH INITIATION, INC., et al.,**

        Defendants.

=====================================================

**STATUS CONFERENCE**
**BEFORE THE HONORABLE FEDERICO A. MORENO**
**SENIOR UNITED STATES DISTRICT JUDGE**

=====================================================

**APPEARANCES:**

**FOR THE PLAINTIFF:**      **GEOFFREY POTTER, ESQ.**
                         **JOSHUA KIPNEES, ESQ.**
                         **ARON FISCHER, ESQ.**
                         Patterson Belknap Webb & Tyler, LLP
                         1133 Avenue of the Americas
                         New York, New York 10036
                                    212-336-2838
                         **JAY B. SHAPIRO, ESQ.**
                         **VERONICA DE ZAYAS, ESQ.**
                         Stearns Weaver Miller Weissler
                         Alhadeff & Sitterson, P.A.
                         150 West Flagler Street
                         Suite 2200
                         Miami, Florida 33130
                                    305-789-3200

**FOR THE DEFENDANTS:**    **ANDREW ENNIS, ESQ.**
                         Polsinelli PC
                         900 W. 48th Place
                         Suite 900
                         Kansas City, Missouri 64112
                                    816-374-0567

**ADRIENNE FRAZIOR, ESQ.**
Polsinelli PC
4020 Maple Avenue
Suite 300
Dallas, Texas 75219

214-661-5596

**HENRY H. BOLZ, IV, ESQ.**
Polsinelli PC
315 S. Biscayne Boulevard
Suite 400
Miami, Florida 33131

305-921-1811

**ALSO PRESENT:**                    **JUSTIN PRESANT, ESQ.**
Assistant General Counsel - Eli Lilly

**REPORTED STENOGRAPHICALLY
BY:**                    **GILDA PASTOR-HERNANDEZ, RPR, FPR, FPR-C**
Official United States Court Reporter
Wilkie D. Ferguson Jr. US Courthouse
400 North Miami Avenue - Suite 12-2
Miami, Florida  33128   305.523.5118
gphofficialreporter@gmail.com

3

## TABLE OF CONTENTS

Page

Reporter's Certificate ..................................... 42

## EXHIBITS

| Exhibits | Marked for Identification | | Received in Evidence | |
|---|---|---|---|---|
| Description | Page | Line | Page | Line |

(None)

4

(The following proceedings were held at 10:05 a.m.:)

THE COURT:  Good morning, everybody.

MR. SHAPIRO:  Good morning.

MR. ENNIS:  Good morning.

THE COURT:  I was watching the opening statements in the Pino trial that's on TV, but they're not starting yet. Typical, right, we never start on time in courts.

All right.  26-23516-Civil, Eli Lilly and Company versus DrugPlace and a bunch of other individuals.  On behalf of the plaintiff, who do we have?

MR. SHAPIRO:  Good morning, Your Honor.  Jay Shapiro and Veronica de Zayas from the Stearns Weaver firm on behalf of Eli Lilly.  I'd also like to introduce you to my immediate left is Mr. Geoffrey Potter from the Patterson Belknap firm.

MR. POTTER:  Good morning.

MR. SHAPIRO:  And to my right we have Aron Fischer and Josh Kipnees also from the Patterson Belknap firm.  They've been admitted pro hac vice, and also at counsel table is Mr. Justin Presant.  He is in-house counsel for Eli Lilly.

THE COURT:  My goodness.  You guys have more than a basketball team, and the pro hac vice, I think I granted that yesterday, didn't I?

MR. SHAPIRO:  You granted the pro hacs for the Patterson Belknap firm I think a week or two ago, Your Honor.

THE COURT:  Okay.  And I granted some yesterday, too, I

thought.

MR. SHAPIRO:  That's for our friends on the other side.

THE COURT:  Oh, for the other side.

MR. HOLZ:  That was on our side, Your Honor, yes.

THE COURT:  Everybody's a foreigner.

On behalf of the defendants, and which defendants?

MR. ENNIS:  Good morning, Your Honor.  Andrew Ennis and Adrienne Frazior and Henry Bolz from Polsinelli on behalf of all defendants other than Misha Maynard for purposes of this hearing and the preliminary injunction proceedings.

THE COURT:  When you say -- you added that part.  So you're just dating, you're not married.

MR. ENNIS:  We have a group of defendants that we will continue to represent throughout the duration of the case, and then a handful of the individual defendants intend to retain separate counsel, Your Honor.

THE COURT:  Okay.  Well, that's why I wanted to have a status hearing with you all.  You can all sit down unless you're addressing the Court so the court reporter will hear you.

I did see that there's a motion stipulation for the preliminary injunction.  What I normally do with preliminary injunctions, you know, I always schedule a status hearing to see if I can under Rule 65 consolidate the preliminary injunction with a permanent injunction so you all don't have to do everything twice.  That's been my practice, and most of the time

we've been able to do it quickly.  There's no point doing things twice, you know, and that's why I've done it that way.

You know, I grabbed the wrong stack.  There's another stack sitting on my desk.  You put something else on this.  Let me see.  There were things that I had written down.  You put this on top, but there are some other things.  Here it is.

Okay.  I'm sorry.  See, there's a stack there with my notes.

(There was a brief discussion off the record.)

THE COURT:  So, obviously, if you all agree on a temporary restraining order, it seems logical to grant it, but I have a couple of issues.  And when I saw the proposed order that I can't find now -- it was sitting on my desk.  See?  It was on my desk.  Yeah, I needed that.

(There was a brief discussion off the record.)

THE COURT:  -- it said defendants stipulate to the preliminary injunction, but reserve the right to challenge jurisdiction, and then I'm a little uncomfortable.  You're going to have to help me out.  Don't I have to have jurisdiction before I issue an order?  And how do we handle that?  I know you're talking.  I assume you're talking about personal jurisdiction and not subject matter jurisdiction.  I'm looking at the defendants.  They're the ones who are reserving that.

Help me out.  Use the lectern to help Gilda, my court reporter.

How do I do that?  So you're saying, you don't have jurisdiction, but go ahead and restrain us.  You know, the easiest thing for me to do, sign it, good-bye, let me keep watching that case, but I don't know if I can do that.  How do I do that?

MR. ENNIS:  I appreciate that, Your Honor.  It is a challenge that we're trying to navigate because of the aforementioned issue where we have a temporary arrangement with some of these out-of-state defendants and individual defendants that may have personal jurisdiction defenses, but we did not want to --

THE COURT:  Why don't you get a permanent arrangement and then you can file a motion to dismiss?  Because the other issue I have with you all is you want to wait 60 days to file an answer or some responsive pleading.  I suspect that the responsive pleading would be a motion to dismiss.  For two months nothing happens.  That's what you all want, and you would say, so what do you care, Judge?  Move on to some other cases, but I do care.  Why 60 days?

MR. ENNIS:  So, again, the 60-day concept -- well, it came about in two ways.  One, I think we originally offered to waive service, which would have --

THE COURT:  60 days anyway.

MR. ENNIS:  60 days anyway.

THE COURT:  Okay.

8

MR. ENNIS:  But then the Lilly defendants or the Lilly bunch went ahead and personally served --

THE COURT:  The Lilly plaintiff.

MR. ENNIS:  Plaintiff.  I misspoke, Your Honor.

THE COURT:  Yeah, sometimes they're defendants, too.  I have to get everything right.

MR. ENNIS:  They went ahead and personally served everyone, which was fine, but in their proposed stipulation --

THE COURT:  They did that because they knew I wasn't going to sign a temporary restraining order without notice because I can't remember in 40 years when I've done that even as a State judge.  I just don't think you should do that unless the building is being destroyed, the plane is leaving, or the defendant is being executed.  Those things we've got to stop before, but this, we've got people, we've got lawyers.  But what jurisdictional issue do we have?  We just don't know.

MR. ENNIS:  Well, yes.  So the group that we will continue to represent we don't believe will have those defenses. We're not --

THE COURT:  So tell me who those are and you're not reserving anything.

MR. ENNIS:  So I can tell you that the group that we will not represent going forward --

THE COURT:  Okay.  You don't want to tell me who you do represent.

9

MR. ENNIS:  Well, I'll tell you who we do represent: DrugPlace, Inc. Florida; Drugplace, Inc. Tennessee; Community Health Initiative, Inc.

THE COURT:  Hold on.  Hold on.

MR. ENNIS:  Sorry.

THE COURT:  Okay.  What else?

MR. ENNIS:  Nakorn Wholesalers LLC.

THE COURT:  All right.

MR. ENNIS:  Galaxy Med, LLC.

THE COURT:  All right.

MR. ENNIS:  Brightline Wholesale LLC.

THE COURT:  All right.

MR. ENNIS:  And Mr. Singer.

THE COURT:  Hold on.  Let me find him.  Kevin Singer. All right.

MR. ENNIS:  And Paul Leight or Leight.

THE COURT:  Okay.  Now I got it.  The other individuals you're temporarily representing:  Readus Smith, Jerry Maynard, Sr., Jerry Maynard, Jr., Misha Maynard or not?

MR. ENNIS:  Not Ms. Maynard, not Misha Maynard, Your Honor.

THE COURT:  Misha is the Maynard that you're not even temporarily representing.

MR. ENNIS:  Correct.

THE COURT:  Okay.  Edgar Enriquez, Lane Mazei and

Danielle Giscombe, right?

MR. ENNIS: Correct, Your Honor.

THE COURT: Okay. Now, when you temporarily represent someone, then what's going to happen? They're going to get separate lawyers.

MR. ENNIS: They're going to get separate counsel. So we were trying to --

THE COURT: When do you think that would happen?

MR. ENNIS: Well, that was part of the reason for the 60 days, Your Honor, was to give those folks time to retain their counsel and be able to meet that 60-day deadline, and then we thought it would be simpler perhaps to have everybody on the same schedule for a responsive pleading rather than having serial motions or serial --

THE COURT: Maybe. That makes sense. That's why we have a status hearing, so you can tell me why you want something and why you don't.

Now, what happens if they don't get counsel?

MR. ENNIS: Well, I don't know, Your Honor. We haven't gotten to that issue.

THE COURT: They represent themselves. They're individuals. They can do that.

MR. ENNIS: They could. They could. I assume they will all obtain counsel, but if not, they can appear in their individual capacity, of course.

THE COURT:  And the reason you picked 60 days is because the waiver of service is the equivalent.

MR. ENNIS:  And the timing, just to allow this process to play out where these folks need to go retain independent counsel or separate counsel.

THE COURT:  But you're in for good on the ones you've just announced.

MR. ENNIS:  Correct.

THE COURT:  All right.  Any jurisdiction issues with those?

MR. ENNIS:  I don't believe --

THE COURT:  Go ahead, talk to your -- you can talk. You come here, you get shot at, but you can have a lifeline.

You don't have jurisdiction issues, right?

MR. SHAPIRO:  We don't think so, Your Honor.

THE COURT:  Well, I figured.  Most plaintiffs don't think so.  If not, they wouldn't be here.

MR. SHAPIRO:  Just so your records are clear, Misha Maynard, who they don't represent --

THE COURT:  I'm going to talk about her in a little bit.

MR. SHAPIRO:  She's already waived jurisdiction and stipulated to the injunction.

THE COURT:  That's why I'm going to talk about that in a little bit, to see how we do it.

And she's not here, I take it?

MR. SHAPIRO:  Correct, Your Honor.

MR. ENNIS:  My only hesitation in answering your question, Your Honor, is we do have a couple of out-of-state corporate defendants that we will continue to represent and we have not yet fully evaluated --

THE COURT:  Who are not these individuals.

MR. ENNIS:  They're not these individuals.

THE COURT:  Or these entities I meant to say.

MR. ENNIS:  They are these entities, but --

THE COURT:  So you still want to reserve that, and it takes you 60 days to figure out whether I have jurisdiction for those.

MR. ENNIS:  No, I don't think it would take us 60 days for us to figure that out.

THE COURT:  Give me how long it would take you to do that.

MR. ENNIS:  In terms of how long we would like to be able to get ready to file a motion to dismiss?

THE COURT:  Yeah, that's one way of --

MR. ENNIS:  30 days.

THE COURT:  Why 30 days?  Is it personal?  It's not subject matter jurisdiction, I take it.

MR. ENNIS:  I don't believe so, Your Honor, no.

THE COURT:  It's personal jurisdiction because there's

no diversity.

MR. ENNIS:  Yeah, personal jurisdiction because they don't have minimum contacts here.

THE COURT:  With Florida.  In this day and age, they have nothing to do with Florida.  I thought everybody had something to do with Florida.

MR. ENNIS:  This is what we need to evaluate, Your Honor, and we may or may not.  We may or may not bring a motion to dismiss for those folks.

THE COURT:  Okay.  And you think you can do that in 30 days.

MR. ENNIS:  I do.

THE COURT:  All right.  And I think the other individuals could find a lawyer within 30 days, too, right? Don't you think?

MR. ENNIS:  Not my place to say, but I mean, there are lots of lawyers and --

THE COURT:  Do you help them all get lawyers?  How do you do that?

MR. ENNIS:  I'm sorry?

THE COURT:  Do you help them all get lawyers?

MR. ENNIS:  Yes, we will.  And I assume their employers may be involved in the conversations in different --

THE COURT:  And say, you know, this judge, he hates 60 days.  He loves 30 days.  So you might as well fish and cut

14

bait.  It's good for the lawyers, good for the clients and good for the plaintiffs and good for me, and then we can do this at a normal pace, but I like the beginning to start.  Otherwise, everybody just sits back.

MR. ENNIS:  And just for the record, Your Honor, I will note --

THE COURT:  Everything is for the record.  All that does is the court reporter writes "for the record."

MR. ENNIS:  I will note that in the proposed stipulation, the joint motion and stipulation that we submitted, we did agree that discovery could begin immediately upon entry.

THE COURT:  I was going to mention that in a little bit.

MR. ENNIS:  Okay.

THE COURT:  But see, one of the issues that you all agreed to, I don't know how that can work in the sense that it had to do with a third party.  You said, okay, five days.  You don't have the seven days.  A couple of the rules are waived, and then I was thinking, gosh, if I were a third party, I would say I didn't waive anything.  So I don't know how that works.  You know what I mean?  Third-party deposition, you serve something on a third party.

Who's going to speak for the plaintiffs on that?  The third party would say, hey, I need time to get these records.  I need time.

You have two lecterns.  You don't even have to share.  See?  I'm the only judge with that.  I don't know why after all these years.  I guess they like one, but I like two.

How are we going to do that?  How does a third party waive anything?

MR. POTTER:  Third party isn't waiving anything and third parties have all the objections that they're entitled to under --

THE COURT:  So who waives?

MR. POTTER:  -- under the federal rules, but expedited discovery is regularly granted in Federal Court.

We're here today as victims of a very large and serious fraud.

THE COURT:  I understand.  That's going to take awhile, but I'm just worried about, what does this mean about third-party discovery and expedited discovery --

MR. POTTER:  The discovery --

THE COURT:  See, I have this thing.  Whenever we interrupt each other -- (Judge rings bell.)  It's from India and it makes us all a little more relaxed.  Now it's over.

MR. POTTER:  It's a beautiful sound.

THE COURT:  It is a beautiful sound, isn't it?  It only cost me a dollar.  So you almost feel guilty when you buy things there.

Okay.  I know you want -- every plaintiff wants

expedited discovery.  Every defendant objects to expedited discovery, but you've convinced these individuals to agree to expedited discovery.  Is that right?

MR. ENNIS:  We've agreed to the specific stipulations in the proposal that we submitted to Your Honor.

THE COURT:  I know, but see, I want to know exactly what that means.  When I read it, I didn't know what it meant.

MR. ENNIS:  So the parties would still -- my impression of what we agreed to, we would still have to have a Rule 26 conference between the parties and all those things.

THE COURT:  I don't care about that.  You guys do what you want with that.

MR. ENNIS:  The plaintiff indicated --

THE COURT:  Because I don't participate in that.

MR. ENNIS:  Sure.  They gave us or they submitted a motion seeking a very extensive group of relaxed rules around discovery, calling it expedited discovery with two or three-day turnaround times and pretty onerous --

THE COURT:  Slow down a little bit.

MR. ENNIS:  Sorry.  So we proposed to avoid that challenge by stipulating to the preliminary injunction and avoiding the need for expedited discovery related to the preliminary injunction.

THE COURT:  But see, what I tell you that I do is I would combine the two.  If you all hadn't agreed to that, we

would be scheduling a permanent injunction.  I would tell you who you're going to call on both sides.  You take the discovery and we would have a hearing within a couple of months.  That's how I normally do things.  I know it's a complicated case, but you brought it.  We are going to simplify it and do it.

Are there equitable counts and there are also at law counts, right?

MR. POTTER:  Correct, Your Honor.

THE COURT:  The at law I can't push it because they're entitled to a jury trial; but the equitable, it's just the two sides and the judge and I would accommodate your schedules.  I wouldn't go crazy, in my view, and I would listen to you and I would be reasonable because it's a complicated case, but that's my mindset of how I do things.  I'm not going to -- I appreciate that you agreed to this because I figured you said, hey, we've agreed to that, we don't even need to see the judge.  Why are we coming in?  There's nothing to do, but there is something to do because later on you're going to ask for time to do things. You're going to file motions to dismiss.  We're going to have other defendants who are going to say something and then it keeps on getting delayed and it may be appropriate to get delayed, but I wanted you to know how I'm thinking so you can react to it.

So tell me how you're thinking now that you know how I'm thinking.  How should we do this?  What did you think the

Status Conference

18

expedited discovery is?

MR. ENNIS: My understanding of the expedited discovery, Your Honor, is that they could upon entry of the stipulated preliminary injunction --

THE COURT: Okay. Which I'm going to grant.

MR. ENNIS: -- they could immediately serve request for production, written discovery, or deposition notices and seek to start those processes.

THE COURT: Of the defendants, no problems, right?

MR. ENNIS: Right.

THE COURT: Because you're going to give everything up.

MR. ENNIS: I don't know what you mean by that, Your Honor.

THE COURT: Well, when people ask discovery, there are things like work product, attorney-client privilege, beyond the scope, it takes too much time and information. I mean, things like that.

MR. ENNIS: Sure.

THE COURT: You've never seen that?

MR. ENNIS: No, I have. I'm sorry, I just didn't understand your question.

THE COURT: That's why I've explained it.

MR. ENNIS: Yeah. We've made no commitments in terms of how discovery is going to proceed, in terms of how quickly we will resolve objections to what they seek or anything like that.

THE COURT:  What do you think -- well, when you all mentioned expedited, what did you think by expedited?

MR. ENNIS:  To be clear, the defendants are not interested in expedited discovery.

THE COURT:  Now I understand.  Now the plaintiff:  So it doesn't really mean anything.

MR. POTTER:  Well, it does, Your Honor, and allow me to just explain what our thinking is.

THE COURT:  Of course.

MR. POTTER:  We've done a lot of these fraud cases and the way it always has played out -- I can't guarantee it will play out here, but the way it's always played out is the defendants assert their Fifth Amendment privilege.

THE COURT:  Oh, my goodness.

MR. POTTER:  And then we have the entities.  The entities can't assert a Fifth Amendment privilege, so they just default.  So we've now -- all the discovery in this case to prove our damages is done through the nonparties, and that's why we're anxious to move ahead with the nonparty discovery to understand the metes and bounds of this fraud.

The reason we moved for a TRO and a preliminary injunction is because this fraud kept pivoting.  It began one way.  We caught them.  We thought we had shut it down.  We had cut off DrugPlace and then they pivoted for doing it by submitting through third parties.  Then when that was under

pressure and being looked at, they opened up again in Texas.

This is a case where we make very serious allegations of a huge fraud, and the fraud used unfortunately two large national churches, the National Hispanic Christian Leadership Conference --

THE COURT:  I read that.

MR. POTTER:  -- and the Church of God.  Both of those churches have come out and said, we don't have healthcare plans.  These healthcare plans don't exist.  The patients don't exist.  It is a shocking --

THE COURT:  But the injunction then tells them, stop it from now on.

MR. POTTER:  Correct.

THE COURT:  And then, of course, you have a right to review any further claims made for reimbursements or whatever it is, right?

MR. POTTER:  Right.  When we started that --

THE COURT:  And you think that would be done how soon?

MR. POTTER:  The --

THE COURT:  They're stopping now.  They said, look, you have the injunction.  Let us figure out what we're going to do and then you're going to serve -- who are the third parties?

MR. POTTER:  The third parties are the pharmacists who worked supposedly in these pharmacies.  The third parties are the people whom they submitted to.  The third parties are the

supposed doctors.  The third parties are the banks, so we can see where the money went and who else was involved in it.

THE COURT:  But you have said that this -- you've had other cases with this.

MR. POTTER:  Yes.  We've done -- we have, in fact, sued some of these defendants before, and that's listed in our papers on behalf of Abbott, but we've done cases like this for Roche, we've done cases like this for Gilead, not against these specific defendants, but against people who had similar healthcare fraud.  The pattern that we've always seen is the people who perpetuated the fraud see us as a cost of doing business.  We want to shut them down, but their real concern is the people across the street with the guns and badges.  They assert the Fifth in this case, you know, and to figure out the fraud, to figure out who's involved, what we need to do is take extensive nonparty discovery.  When we take nonparty discovery, it's in many ways often like --

THE COURT:  That's not expedited.  That's definitely not expedited.

MR. POTTER:  Well, the reason we wanted a shorter turnaround is so that if we say to people, you have 20 days, 30 days to respond, they come back to us at the end of that period of time and say, we need another two weeks.  When they do that after a five-day turnaround, we can get these documents in a reasonable period of time to find out the metes and bounds of

22

this fraud, who else is involved --

THE COURT:  Oh, they're going to ask for an extension no matter how many days.

MR. POTTER:  Right.  So we'd rather start with a short number of days because it allows us to have some influence on them.  A lot of these nonparties receive large numbers of subpoenas.  They don't fight them, but they process them and it allows us in a case like this to get quicker retention.

THE COURT:  What do you mean quicker retention?

MR. POTTER:  Well, with the bank, for example, if it's a five-day turnaround, they get back to you within four days and then we can hear from --

THE COURT:  Really?

MR. POTTER:  Yes.  Yes, they do, typically.

THE COURT:  Oh, wow.

MR. POTTER:  And we don't necessarily get documents, but they ask for an extension.

THE COURT:  That I've seen.

MR. POTTER:  And then what we do is we can negotiate a period of time that they can be responsive.  So maybe it's two weeks, three weeks from when we first did it.  If we do it under normal discovery, it pushes everything out an additional at least 30 days.

THE COURT:  Maybe the solution is to have a real date and no extensions.

MR. POTTER:  Well --

THE COURT:  You don't like that.

MR. POTTER:  You know, we can do that, but they just don't meet it and we can't keep coming to Your Honor with --

THE COURT:  Oh, I'm here for life until death apparently.

MR. POTTER:  It allows us to move more quickly.  It also would allow us for these pharmacists and other nonparties to take their depositions more quickly and to move forward at a swifter pace.

We, of course, would be happy to have a quick preliminary injunction hearing.

You were the first judge I've been before who has ever put forward that that is something that he or she is willing to do.  That would obviously -- we'd love to have a permanent injunction hearing in 60 days and do expedited discovery.  We want to move forward quickly, and putting aside the complexity of the case, we're willing to put the time and attention into it to be able to put on a case at a schedule that Your Honor, you know, sets.

THE COURT:  All right.  You want to say anything else? I just want -- when I sign an order that's proposed, I've got to know what I'm signing.  I mean, I've always been that way, and when I see expedited, I want to know what it is -- and I see five days and third parties and things like that -- because if

people don't obey my order, I get kind of -- not upset, but I bring you in and say, what's going on?  Let's do it.  If you've all reached an agreement, I'll hold you to it, but I've got to know what the agreement is.  Now I understand that it's not really -- the expedited discovery is that the defendants won't object.  The defendants here are willing to cooperate, but they still reserve everything to respond to, and now you're saying that in your practice, people just default.

MR. POTTER:  Well, I would --

THE COURT:  So the cases get closed.  The cases that you've handled have been closed in what period of time?

MR. POTTER:  It has varied, Your Honor.

THE COURT:  Give me the longest and the shortest.

MR. POTTER:  The shortest that I can think of is 90 days and the longest I can think of is five years.

THE COURT:  Okay.  That's what I figured.  I wanted to make sure it's closer to the 90.

MR. POTTER:  I would much prefer and I know my client would much prefer that we move as quickly as possible.

THE COURT:  But that means that you also have to cooperate --

MR. POTTER:  Yes.

THE COURT:  -- with them.

What happens if I sign this preliminary injunction?  It's there, so the alleged fraud is stopped, right?

Status Conference

25

MR. POTTER:  Um-hum.

THE COURT:  So that's the important thing.

MR. POTTER:  Yes.

THE COURT:  And then you still want to take depositions.  You, as the plaintiff.

MR. POTTER:  Yes.

THE COURT:  That means you've got to pick and choose. You can't depose everybody and their brother because it would be the five-year case.

MR. POTTER:  The cases are not delayed by a large number of --

THE COURT:  Depositions.

MR. POTTER:  -- depositions being taken.  The delay is there are some judges that don't have dockets as up-to-date as Your Honor.

THE COURT:  Fair enough.

MR. POTTER:  We've had summary judgment motions sit for years.  Good judges, not difficult cases, but, you know, some courts they will tell you are just overburdened and have shortages and the way the judges work are different than Your Honor.

THE COURT:  Fair enough.

MR. POTTER:  The delay is not us scheduling depositions or taking discovery.  That's all been done within a year.

THE COURT:  Okay.  See, I got you, as you all say, on

26

the record for that without you criticizing any district.

We are very proud -- it's not me, it's our district -- very proud of it. They even send statistics saying we're number one. We're not number one in trials anymore, but we're number one in disposing of motions. That doesn't mean I don't give the defendants time, but I set status hearings so you can tell me what's going on. I don't want to make you -- and you all came from where, from different places, right?

MR. POTTER: Myself and my partners practice in New York City.

THE COURT: New York City. So you stayed up last night.

MR. POTTER: Oh, yes.

THE COURT: So did I.

MR. POTTER: And hoping and hoping.

THE COURT: Well, sometimes you win, sometimes you lose, even in court. Okay?

I still remember being in the middle of important trials when the Heat would play the Knicks right here. I was in the middle of an injunction hearing involving the owners of the Heat and the cruise lines, and I had two New York law clerks. They convinced me -- not in front of a jury because we had bifurcated the issues -- to come out with New York Knicks shirts and I allowed that, and the owner of the Heat was laughing. Okay? So we can have fun, but move quickly. Gosh almighty,

that was when Nick and John Mastando were the law clerks and John Mastando is now a bankruptcy judge in New York and Nick Bourtin is a partner at Sullivan & Cromwell.  So that was probably 30 years ago, I think.  So that's how we have done things before and that's how we'll do the things now.

So if you're going to -- you're going to default on this?

MR. ENNIS:  It's not our --

THE COURT:  You're going to invoke The Fifth Amendment on this?  You want to think about it, right?

MR. ENNIS:  Yeah, we'll have to react to, you know, conditions on the ground at the time, Your Honor.

THE COURT:  Fair enough.  That's a big thing to do.

MR. ENNIS:  Yeah.

THE COURT:  But your clients have done that before or other clients have done that before in these type of cases?

MR. ENNIS:  Certainly I've represented clients in cases in the past that have asserted their Fifth Amendment rights in different situations, not these clients.

THE COURT:  Well, but in these type of cases, fraud with companies and individuals?

MR. ENNIS:  Yeah, I mean, it happens.

THE COURT:  Nothing wrong with that.  That's a smart thing to do many times, but it doesn't take a long time to do it.  In fact, the sooner it's done, the better off the client

Status Conference

28

is, I suspect, right?

MR. ENNIS:  It's hard to say, Your Honor.

THE COURT:  I mean, in law it's certainly easier. There's no point saying something and then invoking the Fifth.

MR. ENNIS:  Right.

THE COURT:  Because you kind of messed up.  It's a hybrid that doesn't work, I think, but this could be the exception.

So in your view, just sign the order and react to whatever happens afterwards?

MR. ENNIS:  Yes.

THE COURT:  That's what you want me to do.

MR. ENNIS:  Yes.  We are comfortable with the preliminary injunction proposal that would stay in place for the duration of the litigation, which in my mind would have pushed any discussion of a permanent injunction until the conclusion, you know, to a trial or to some kind of agreement to resolve the case.

THE COURT:  When would that be, the trial, then?  So it's kind of like a super temporary preliminary injunction because it's not permanent, because nothing is permanent in life, but it could be five years.

MR. ENNIS:  The preliminary injunction could be five years.

THE COURT:  Okay.

MR. ENNIS:  I mean, you've done this a lot longer than I've done this, Your Honor, but in my experience you have a TRO that's very temporary --

THE COURT:  Is that flattery that I've done it longer?

MR. ENNIS:  It was intended to be, you have more experience than I have, Your Honor, but TRO is temporary --

THE COURT:  Not necessarily.

MR. ENNIS:  TRO is temporary.  Preliminary lasts for the duration of the case and then permanent is sort of a remedy that you would seek at the conclusion of the case at a trial on the merits.  So that is the sort of bifurcation of those three things in my head, and that is what we were trying to accomplish with the preliminary injunction.

THE COURT:  All right.

MR. ENNIS:  But we are sensitive to the personal jurisdiction issue that Your Honor raised at the outset of the case certainly for the defendants that we will not continue to represent.

We don't want to be in a position of having taken a step that impairs some right for them, and that's why the parties agreed to create a scenario where Your Honor could enter something that would allow those folks to still assert those objections, but if we need to structure it in a different way to protect that right, I'm happy to think that through.

THE COURT:  No, I think we can work this out.  I mean,

work this preliminary thing out.

The defendants whom you only represent temporarily have been served, true?

MR. ENNIS:  True.

MR. POTTER:  Yes.

THE COURT:  Okay.  So they would have to respond traditionally within the 20 days, but maybe a little bit more if you all agree, right?

MR. ENNIS:  Um-hum.

THE COURT:  Okay.  So that would be done.  And if you have waived service, it would be the 60 days.  So the 60 days seems reasonable as long as there's no extensions.  Agreed?

MR. ENNIS:  Agreed.

THE COURT:  Agreed?

MR. POTTER:  Agreed.

THE COURT:  Okay.  Now, you're going to issue -- this five days, normally it's seven days.  So what difference does it make?  Two days is nothing, even for me.

MR. POTTER:  It says five business days.  So seven is the same thing.

THE COURT:  Oh, five business days.  Look at that.

MR. POTTER:  So it's exactly the same.

THE COURT:  Okay.  So it doesn't really matter.  So tell me how it's going to work out because -- no, you all have more experience than I have because I'm still a generalist.  I

assume you all don't do all the little things that federal judges do, which is why some calendars are clogged up because those good federal judges are doing -- they're issuing temporary restraining orders on the President of the United States.  So I haven't done that and I've been here 36 years and they're busy doing that usually in the Northeast.  Okay?  And then when another president is there, they usually do that in Texas.  So don't get me going into that thing.  So I just do whatever is here.

What is your experience on how the discovery is going to work?  So who are you going to serve, these third parties?  How does that work?

MR. POTTER:  We're immediately going to be serving, for example, financial institutions.  We're going to be serving people who were employed at the supposed pharmacies and wholesalers.

THE COURT:  My experience -- pardon the interruption -- with me is whenever you serve a bank, they get it, then they go to the big shot law firms like yours, and of course, they go through all the hierarchy of the big law firm and nothing gets done in a few days.  That's been my experience.  Yours has been different.

MR. POTTER:  Completely different, Your Honor, because the sort of discovery that I'm taking isn't about the bank's activities, but rather it's for account information to show who

was involved.

THE COURT:  They are local banks, New York banks?

MR. POTTER:  Some are local, some are national.  But what the banks have done is they've outsourced this process to third parties that do it for a profit.  You have to pay them a fee.  It's a fair fee for their time and effort to do it, and you know, they receive the subpoena.  Many of them will then contact you for a date to return it.  We will say, well, we have it in five days?  How soon can you get it?  Maybe we'll get it in 10 days, maybe we'll get it closer to then, that period of time.  The bank will send us the documents.  Typically in order to unlock the documents, you need a credit card to make your $115 payment or $80 payment to the bank, whatever it may be.  Then you have that information and you can then look at it and understand because at the end of the day this is a crime.  This is a scheme about money.

THE COURT:  I know.  Whenever you tell people that --

MR. POTTER:  What?

THE COURT:  Whenever you tell people that, they kind of call lawyers immediately.  Whenever a lawyer comes in, they say, time-out, we have to think about everything, which is fine.

I want you to understand.  I don't like to get involved in discovery, but I don't refer generally the discovery to magistrate judges.  I'd rather not.  I'd rather have you all work all that out.  So I don't want you to think that inviting

all these issues -- no, I want good lawyers to resolve those issues.  To me, if it's 7 days or 10 days or 15 days -- We don't even have mail time anymore and all of that.  Everything is done this way and it's fine with me.  You all work out all the gigabytes and everything you want.  I don't like to get involved.  I like the outcome of the case.  I work backwards.  All right?

You all do it however you want, but then I want an end that's reasonable I think for both sides.  I'm not going to force someone to go to trial without being ready, especially when you're getting the preliminary injunction through your own efforts.  You know, why am I going to mess with it?  And I suspect even my colleagues here would have said, just sign it and see them in a few months.  We wait for the six-month report and all these things that we have.  I don't know why we compete that way when we get paid the same, but it's kind of interesting, right?  We have to compete somehow, right?  We're not the Knicks or San Antonio.  I want to disclose that my daughter is from Austin.  So her husband is a big fan of San Antonio.

MR. POTTER:  We are not moving to disqualify.

THE COURT:  If you do, those are the motions I kind of grant quickly.

MR. POTTER:  No, you're not getting out that easy.

THE COURT:  I mean, I have enough cases.  I'll take

34

someone else, huh?  But I do like to chat with you at the beginning so you know what I'm thinking, right?  I know you can Google and you have great local counsel.  Some of them know me better than others because at least one of them has worked for me.  I want to say it's one or two years ago, but I think it's more than that; but since she's a young lady, I don't want to divulge her age and all of that.  But it's up to you.

I really want to help both sides get the case over and done with because I don't care one way or another, but I don't want to just let something like that -- so I like to see what the problems are, and if there's a third party, then I may do that by phone if it's only a third party and the defendant doesn't really care about that at that point, though you might want to listen in.  I'll do that for you.  I won't want to bring you in from New York or where else?

MR. ENNIS:  I am from Kansas City, Your Honor; and my colleague, Adrienne Frazior, is from Dallas and Mr. Bolz is from here in Miami.

THE COURT:  Dallas.  I don't know.  They probably aren't even San Antonio fans either.  So I don't know.  Okay, but you've got to pick a second team.  I'm a Notre Dame/Miami fan, so you can imagine all the conflicts that we have, but I'm more of a football fan than a basketball fan.

So what else can I help you with?  The jurisdiction, if I wait 60 days, that's it, but I won't extend responses.  So if

35

there's a motion to dismiss, it's got to be filed back then even if you convince your opponent; no, we give you more time.  I won't give you more time because I'm telling you ahead of time.  So you tell the new lawyers, hey, listen --

MR. ENNIS:  Yeah.

THE COURT:  And I think you have -- some of my colleagues disagree, but I think you have the First Amendment right privately to say, I don't know, this judge is crazy.  Look him up and he just likes to move super fast.  So he's not going to give you more time.  I think you have the right to do that.  He's not going to sit back and do the Maduro trial in New York City, though I hope to be around at 93, okay, and do that trial, but I don't know.

My wife says I'm crazy for keeping on working, but I still like it.  I think you can tell, and that you'll find out from both plaintiffs and defendants.  But I'll give you time, but don't just sit back and think, hey, we don't have to worry about it.

MR. ENNIS:  Understood, Your Honor.

THE COURT:  Because I'll move fast to get an outcome.  It won't be a perfect trial.  No trial is perfect, right?

What else can I help you with?  And you don't even think there's going to be a trial, right?

MR. POTTER:  Not typically.  The only issue that we think could possibly be remaining might be of damages, but we

don't see that at this point. We don't think there will be a trial. These cases --

THE COURT: But there is a trial on damages.

MR. POTTER: There could be a trial on damages. That's what we have sometimes seen in these types of cases.

THE COURT: I haven't been very good on damages lately, I will confess and it's a public thing.

So, you know, I've only set aside two verdicts on damages. One is up on appeal and one my good friends, Judge Jordan, and two other judges sent it back, but he told me it wasn't a reversal. It was something I've never heard of. The appellate court has discretion to order a new trial without anyone asking for it. I looked it up. I mean, he's right. He's smarter than I am, obviously. I said, I'll be darned. So I said, don't worry, you know, it doesn't count like one of those gavels on the computer. So I said, I've got to try a case again where I set aside a $300 million verdict -- and this is all public knowledge, but not interesting public knowledge, but it helps me vent until my 11:00 hearing -- and then we just retried it and it was a $40 million verdict. So I don't know what's going to happen, and then the other one is up on appeal. So I won't talk about it until they rule on the first Helms-Burton case.

So damages sometimes get even more complicated than fault and liability, in my experience. You've got experts or

sometimes you don't.  But I'm not going to sit back on that either.  Okay?

MR. POTTER:  I'm not suggesting that.

THE COURT:  So whatever it is, we're moving on a train.  It's not necessarily a speed train in Europe or Japan, but it's not going to be a slow train either.

So we'll do it however you want.  Put it kind of on the top of your list or kind of upper middle, so you know that I like things done and I don't care how you do it because I don't have a dog in this fight.  All right?

What else can I help you with, from the defendants?

MR. ENNIS:  Nothing that I can think of from the defendants, Your Honor.

THE COURT:  So --

MR. POTTER:  Your Honor, there's one housekeeping matter that's incorporated in both stipulations, and that's the entering of a protective HIPAA order.

THE COURT:  Well, that I would sign.

MR. POTTER:  That happens automatically.  That's fine.  It's just a HIPAA order is necessary to move forward in this type of case.

THE COURT:  I would sign that.  If that were the only issue I had, I would have signed it already.

And HIPAA stands for what?  See?

MR. POTTER:  Health Insurance Portability Program -- I

Status Conference

38

don't know.

THE COURT:  See, one of my pet peeves -- I'm kind of a pain with these little things -- is I hate acronyms except the FBI.  I think like the average guy.  People know what the FBI is.

You'd be surprised how many lawyers don't even know what FDUTPA is.  Okay?  You know what FDUTPA is?  The Florida lawyers know what it is, but sometimes I ask them, what does FDUTPA stand for?  And then they kind of -- you know, it's FDUTPA.  Okay?  So I'm just telling you ahead of time some of my pet peeves, so when you come back, I won't be a pain in the neck for you.  Okay?

What else?  So I'll sign the injunction with the understanding that whenever you mention expedited discovery, I don't have to put it in there because we have a record.  That's what you all meant by it and what I meant by it.  I don't have to write that in and have you retype it and do that because we have it on the record.  So it's that way and I don't -- when will I see you again?  That was an old song, When Will I See You Again, but you guys aren't old enough to remember that.  Do you remember it?  Do you remember the group?

MR. SHAPIRO:  It was, When Will I See You -- it's not Dionne Warwick.  Who was it?

THE COURT:  See, you hired Shapiro for a reason.  He doesn't even know the songs.  The Three Degrees.

39

MR. SHAPIRO:  The Three Degrees, yes.

THE COURT:  Of course you're going to say yes.  If the judge says it, even if he's wrong, you're going to say yes.  The Three Degrees in 1973.

MR. SHAPIRO:  Right about the same time as Band of Gold by Freda Payne.

THE COURT:  Yeah, so now you know.

Okay.  So I'll sign it.  We'll enter it.  You know you've got to abide by what you sign and I probably won't see you unless there's third-party problems.  Then if there are and they get a little complicated, then I'll bring you in and say I told you so.  If not, you can say, I told the judge so.  See?  This is how we do it, and then that should take care of it.  Okay?

I won't bother you anymore so you can go back and watch the game tomorrow.  You probably have ringside seats.

MR. POTTER:  Oh, no, no.  I wish I did.

THE COURT:  You have the seats up there --

MR. POTTER:  Can we add that to the order?

THE COURT:  -- like the president and the owners and all of that.  I have pretty good seats when the Heat plays, but that's thanks to another former law clerk.  See?  I pick my law clerks well.

Okay.  That takes care of it.  I'll sign it.  It will be uploaded.  So I don't need to see you, and what's best for me

40

is I keep a calendar and in 60 days, what happens?  If there's no motion to dismiss or answer, I'm going to enter a default because you kind of -- the show cause has been issued 60 days before.

MR. ENNIS:  Understood, Your Honor.

THE COURT:  Okay?

MR. POTTER:  Thank you, Your Honor.

THE COURT:  And the same thing.

Anything else I can help you with?

MR. SHAPIRO:  Your Honor, one quick question.  Are you going to enter your own scheduling order for the case, or do you want the parties to submit one?

THE COURT:  Well, the way I've been told by your co-counsel is, you don't have to worry about it.  There's not going to be any issues.  We're not going to have a trial, but I can't enter an order until there's an answer.  Even I cannot do that, right?  It's kind of weird to enter it.

So I've got to wait the 60 days you agreed with.  As soon as that 60 days is done, maybe there will be one or two motions to dismiss.  You won't ask for an extension to respond because it's embarrassing for the plaintiff to ask for that. You're going to respond immediately and then you're going to reply immediately and then I'll rule not immediately.  It depends on what else I'm doing, but quickly.

After I rule, if I grant the motion to dismiss, it's

over until you go to the wiser judges in Atlanta.  If I don't grant it, then I'll issue an order for trial and then we'll see whether people take the Fifth, issue defaults, or do whatever they do.  I mean, so you don't even have to do anything.  See, I'm making life easier for you.

You have to talk with each other, but you don't have to do anything informal, but that means I'm not going to give you more time unless there's something.  You always have that exception.  I never say 100 percent like the young people always say in coaching.  100 percent, 100 percent.  I always say 99 percent in case there's the 1 percent.  All right?

I think I've got the people from my hearing.  See?  So it did take an hour, as I suspected, but we'll see you if you want to be seen.  If you don't want to be seen, we won't see you.  But if there's a default, I won't see you.  If there's an agreement, I won't see you.

If there's a trial only on the damages, for sure I'll see you, and that will be even quicker because you'll have all the discovery, and you're kind of forewarned of what is going to happen, right?

MR. POTTER:  Yes, Your Honor.

THE COURT:  Okay.  And I think that takes care of it. Thank you.  Sorry I made you come, but I think it's helpful.  I hope it was for you.

MR. ENNIS:  Very much so.  Thank you, Your Honor.

MR. POTTER:  Thank you.

THE COURT:  Okay.  Have a good day.  Safe trip wherever you're going.

MR. SHAPIRO:  Thank you, Your Honor.

THE COURT:  All right.

(The hearing concluded at 10:55 a.m.:)


C E R T I F I C A T E

I hereby certify that the foregoing is an accurate transcription of proceedings in the above-entitled matter.

___06-16-26____          _____
     DATE                GILDA PASTOR-HERNANDEZ, RPR, FPR, FPR-C
                         Official United States Court Reporter
                         Wilkie D. Ferguson Jr. U.S. Courthouse
                         400 North Miami Avenue, Suite 12-2
                         Miami, Florida  33128     305.523.5118
                         gphofficialreporter@gmail.com

**A**

**Abbott** 21:7
**abide** 39:9
**able** 6:1 10:11 12:19 23:19
**about** 6:21 7:21 11:20,24 15:15
15:15 16:11 27:10 31:24
32:16,21 34:13 35:18 36:22
39:5 40:14
**above-entitled** 42:10
**accommodate** 17:11
**accomplish** 29:12
**account** 31:25
**accurate** 42:9
**acronyms** 38:3
**across** 21:13
**activities** 31:25
**add** 39:19
**added** 5:11
**additional** 22:22
**addressing** 5:19
**admitted** 4:18
**Adrienne** 2:1 5:8 34:17
**aforementioned** 7:8
**after** 15:2 21:24 40:25
**afterwards** 28:10
**again** 7:20 20:1 36:17 38:19,20
**against** 21:8,9
**age** 13:4 34:7
**ago** 4:24 27:4 34:5
**agree** 6:10 14:11 16:2 30:8
**agreed** 14:16 16:4,9,25 17:15,16
29:21 30:12,13,14,15 40:18
**agreement** 24:3,4 28:17 41:16
**ahead** 7:2 8:2,7 11:12 19:19 35:3
38:10
**al** 1:8
**Alhadeff** 1:19
**allegations** 20:2
**alleged** 24:25
**allow** 11:3 19:7 23:8 29:22
**allowed** 26:24
**allows** 22:5,8 23:7
**almighty** 26:25
**almost** 15:23
**already** 11:22 37:23
**always** 5:22 19:11,12 21:10
23:23 41:8,9,10
**Amendment** 19:13,16 27:9,18
35:7
**Americas** 1:16
**Andrew** 1:22 5:7
**announced** 11:7
**another** 6:3 21:23 31:7 34:9
39:22
**answer** 7:15 40:2,16
**answering** 12:3
**Antonio** 33:18,20 34:20
**anxious** 19:19
**anymore** 26:4 33:3 39:15
**anyone** 36:13
**anything** 8:21 14:20 15:5,6
18:25 19:6 23:21 40:9 41:4,7
**anyway** 7:23,24
**apparently** 23:6
**appeal** 36:9,21
**appear** 10:24
**APPEARANCES** 1:13
**appellate** 36:12
**appreciate** 7:6 17:14
**appropriate** 17:21
**Aron** 1:15 4:16
**around** 16:16 35:12
**arrangement** 7:8,12
**aside** 23:17 36:8,17
**asking** 36:13
**assert** 19:13,16 21:14 29:22
**asserted** 27:18
**Assistant** 2:8
**assume** 6:21 10:23 13:22 31:1

**Atlanta** 41:1
**attention** 23:18
**attorney-client** 18:15
**Austin** 33:19
**automatically** 37:19
**Avenue** 1:16 2:2,11 42:14
**average** 38:4
**avoid** 16:20
**avoiding** 16:22
**awhile** 15:14
**a.m** 4:1 42:6

**B**

**B** 1:18
**back** 14:4 21:22 22:11 35:1,11
35:17 36:10 37:1 38:11 39:15
**backwards** 33:6
**badges** 21:13
**bait** 14:1
**Band** 39:5
**bank** 22:10 31:18 32:11,13
**bankruptcy** 27:2
**banks** 21:1 32:2,2,4
**bank's** 31:24
**basketball** 4:21 34:23
**beautiful** 15:21,22
**before** 1:11 6:20 8:15 21:6 23:13
27:5,15,16 40:4
**began** 19:22
**begin** 14:11
**beginning** 14:3 34:2
**behalf** 4:9,12 5:6,8 21:7
**being** 8:13,14 20:1 25:13 26:18
33:10
**believe** 8:18 11:11 12:24
**Belknap** 1:16 4:14,17,24
**bell** 15:19
**best** 39:25
**better** 27:25 34:4
**between** 16:10
**beyond** 18:15
**bifurcated** 26:23
**bifurcation** 29:11
**big** 27:13 31:19,20 33:19
**Biscayne** 2:5
**bit** 11:21,25 14:13 16:19 30:7
**Bolz** 2:4 5:8 34:17
**both** 17:2 20:7 33:9 34:8 35:16
37:16
**bother** 39:15
**Boulevard** 2:5
**bounds** 19:20 21:25
**Bourtin** 27:3
**brief** 6:9,15
**Brightline** 9:11
**bring** 13:8 24:2 34:14 39:11
**brother** 25:8
**brought** 17:5
**building** 8:13
**bunch** 4:9 8:2
**business** 21:12 30:19,21
**busy** 31:5
**buy** 15:23

**C**

**C** 42:8,8
**calendar** 40:1
**calendars** 31:2
**call** 17:2 32:20
**calling** 16:17
**came** 7:21 26:7
**capacity** 10:25
**card** 32:12
**care** 7:18,19 16:11 34:9,13 37:9
39:13,24 41:22
**case** 1:3 5:14 7:4 17:4,13 19:17
20:2 21:14 22:8 23:18,19 25:9
28:18 29:9,10,17 33:6 34:8
36:16,23 37:21 40:11 41:11

**cases** 7:18 19:10 21:4,7,8 24:10
24:10 25:10,18 27:16,17,20
33:25 36:2,5
**caught** 19:23
**cause** 40:3
**certainly** 27:17 28:3 29:17
**Certificate** 3:4
**certify** 42:9
**challenge** 6:17 7:7 16:21
**chat** 34:1
**choose** 25:7
**Christian** 20:4
**Church** 20:7
**churches** 20:4,8
**City** 1:24 26:10,11 34:16 35:12
**claims** 20:15
**clear** 11:18 19:3
**clerk** 39:22
**clerks** 26:21 27:1 39:23
**client** 24:18 27:25
**clients** 14:1 27:15,16,17,19
**clogged** 31:2
**closed** 24:10,11
**closer** 24:17 32:10
**coaching** 41:10
**colleague** 34:17
**colleagues** 33:13 35:7
**combine** 16:25
**come** 11:13 20:8 21:22 26:23
38:11 41:23
**comes** 32:20
**comfortable** 28:13
**coming** 17:17 23:4
**commitments** 18:23
**Community** 1:8 9:2
**companies** 27:21
**Company** 1:4 4:8
**compete** 33:15,17
**Completely** 31:23
**complexity** 23:17
**complicated** 17:4,13 36:24
39:11
**computer** 36:16
**concept** 7:20
**concern** 21:12
**concluded** 42:6
**conclusion** 28:16 29:10
**conditions** 27:12
**conference** 1:11 16:10 20:5
**confess** 36:7
**conflicts** 34:22
**consolidate** 5:23
**contact** 32:8
**contacts** 13:3
**CONTENTS** 3:1
**continue** 5:14 8:18 12:5 29:17
**conversations** 13:23
**convince** 35:2
**convinced** 16:2 26:22
**cooperate** 24:6,21
**corporate** 12:5
**Correct** 9:24 10:2 11:8 12:2 17:8
20:13
**cost** 15:23 21:11
**counsel** 2:8 4:18,19 5:16 10:6,11
10:18,24 11:5,5 34:3
**count** 36:15
**counts** 17:6,7
**couple** 6:12 12:4 14:18 17:3
**course** 10:25 19:9 20:14 23:11
31:19 39:2
**court** 1:1 2:10 4:2,5,20,25 5:3,5
5:11,17,19,19 6 6:10,16,24 7:12
7:23,25 8:3,5,9,20,24 9:4,6,8
9:10,12,14,17,22,2 5 10:3,8,15
10:21 11:1,6,9,12,16,20,24
12:7,9,11,16,20,22,2 5 13:4,10
13:13,18,21,24 14:7,8,12,15
15:9,11,14,18,2 2 16:6,11,14

16:19,24 17:9 18:5,9,11,14,19
18:22 19:1,5,9,14 20:6,11,14
20:18,20 21:3,18 22:2,9,13,15
22:18,24 23:2,5,2 1 24:10,13
24:16,20,2 3 25:2,4,7,12,16,22
25:25 26:11,14,16,1 7 27:9,13
27:15,20,2 3 28:3,6,12,19,25
29:4,7,14,2 5 30:6,10,14,16,21
30:23 31:17 32:2,17,19 33:22
33:25 34:19 35:6,20 36:3,6,12
37:4,14,18,2 2 38:2,24 39:2,7
39:18,20 40:6,8,13 41:22 42:2
42:5,13
**Courthouse** 2:11 42:13
**Courtroom** 1:5
**courts** 4:7 25:19
**co-counsel** 40:14
**crazy** 17:12 35:8,14
**create** 29:21
**credit** 32:12
**crime** 32:15
**criticizing** 26:1
**Cromwell** 27:3
**cruise** 26:21
**cut** 13:25 19:24

**D**

**D** 2:11 42:13
**Dallas** 2:3 34:17,19
**damages** 19:18 35:25 36:3,4,6,9
36:24 41:17
**Dame/Miami** 34:21
**Danielle** 10:1
**darned** 36:14
**date** 22:24 32:8 42:12
**dating** 5:12
**daughter** 33:19
**day** 13:4 32:15 42:2
**days** 7:14,19,23,2 4 10:10 11:1
12:12,14,21,2 2 13:11,14,25,25
14:17,18 21:21,22 22:3,5,11
22:23 23:16,25 24:15 30:7,11
30:11,17,17,18,19,2 1 31:21
32:9,10 33:2,2,2 2 34:25 40:1,3
40:18,19
**de** 1:18 4:12
**deadline** 10:11
**death** 23:5
**default** 19:17 24:8 27:6 40:2
41:15
**defaults** 41:3
**defendant** 8:14 16:1 34:12
**defendants** 1:9,22 5:6,6,9,13,15
6:16,23 7:9,9 8:1,5 12:5 17:20
18:9 19:3,13 21:6,9 24:5,6
26:6 29:17 30:2 35:16 37:11
37:13
**defenses** 7:10 8:18
**definitely** 21:18
**Degrees** 38:25 39:1,4
**delay** 25:13,23
**delayed** 17:21,22 25:10
**depends** 40:24
**depose** 25:8
**deposition** 14:21 18:7
**depositions** 23:9 25:5,12,13,23
**Description** 3:11
**desk** 6:4,13,14
**destroyed** 8:13
**difference** 30:17
**different** 13:23 25:20 26:8 27:19
29:23 31:22,23
**difficult** 25:18
**Dionne** 38:23
**disagree** 35:7
**disclose** 33:18
**discovery** 14:11 15:11,16,16,17
16:1,2,3,17,17,2 2 17:2 18:1,3
18:7,14,2 4 19:4,17,19 21:16

21:16 22:22 23:16 24:5 25:24 31:10,24 32:23,23 38:14 41:19
**discretion** 36:12
**discussion** 6:9,15 28:16
**dismiss** 7:13,16 12:19 13:9 17:19 35:1 40:2,20,25
**disposing** 26:5
**disqualify** 33:21
**district** 1:1,1,12 26:1,2
**diversity** 13:1
**DIVISION** 1:2
**divulge** 34:7
**dockets** 25:14
**doctors** 21:1
**documents** 21:24 22:16 32:11,12
**dog** 37:10
**doing** 6:1 19:24 21:11 31:3,6 40:24
**dollar** 15:23
**done** 6:2 8:11 19:10,18 20:18 21:5,7,8 25:24 27:4,15,16,25 29:1,2,4 30:10 31:5,21 32:4 33:3 34:9 37:9 40:19
**down** 5:18 6:5 16:19 19:23 21:12
**DrugPlace** 1:7,8 4:9 9:2,2 19:24
**duration** 5:14 28:15 29:9

**E**

**E** 42:8,8
**each** 15:19 41:6
**easier** 28:3 41:5
**easiest** 7:3
**easy** 33:24
**Edgar** 9:25
**effort** 32:6
**efforts** 33:12
**either** 34:20 37:2,6
**Eli** 1:4 2:8 4:8,13,19
**embarrassing** 40:21
**employed** 31:15
**employers** 13:22
**end** 21:22 32:15 33:8
**Ennis** 1:22 4:4 5:7,7,13 7:6,20 7:24 8:1,4,7,17,22 9:1,5,7,9 9:11,13,16,20,24 10:2,6,9,19 10:23 11:3,8,11 12:3,8,10,14 12:18,21,24 13:2,7,12,16,20 13:22 14:5,9,14 16:4,8,13,15 16:20 18:2,6,10,12,18,20,23 19:3 27:8,11,14,17,22 28:2,5 28:11,13,23 29:1,5,8,15 30:4 30:9,13 34:16 35:5,19 37:12 40:5 41:25
**enough** 25:16,22 27:13 33:25 38:20
**Enriquez** 9:25
**enter** 29:21 39:8 40:2,11,16,17
**entering** 37:17
**entities** 12:9,10 19:15,16
**entitled** 15:7 17:10
**entry** 14:11 18:3
**equitable** 17:6,10
**equivalent** 11:2
**especially** 33:10
**ESQ** 1:14,15,15,18,18,2 2 2:1,4,8
**et** 1:8
**Europe** 37:5
**evaluate** 13:7
**evaluated** 12:6
**even** 8:11 9:22 15:1 17:16 26:3 26:17 30:18 33:3,13 34:20 35:1,22 36:24 38:6,25 39:3 40:16 41:4,18
**ever** 23:13
**every** 15:25 16:1
**everybody** 4:2 10:12 13:5 14:4 25:8

**Everybody's** 5:5
**everyone** 8:8
**everything** 5:25 8:6 14:7 18:11 22:22 24:7 32:21 33:3,5
**Evidence** 3:10
**exactly** 16:6 30:22
**example** 22:10 31:14
**except** 38:3
**exception** 28:8 41:9
**executed** 8:14
**Exhibits** 3:8,9
**exist** 20:9,9
**expedited** 15:10,16 16:1,1,3,17 16:22 18:1,2 19:2,2,4 21:18 21:19 23:16,24 24:5 38:14
**experience** 29:2,6 30:25 31:10 31:17,21 36:25
**experts** 36:25
**explain** 19:8
**explained** 18:22
**extend** 34:25
**extension** 22:2,17 40:20
**extensions** 22:25 30:12
**extensive** 16:16 21:16

**F**

**F** 42:8
**fact** 21:5 27:25
**fair** 25:16,22 27:13 32:6
**fan** 33:19 34:22,23,23
**fans** 34:20
**fast** 35:9,20
**fault** 36:25
**FBI** 38:4,4
**FDUTPA** 38:7,7,9,10
**federal** 15:10,11 31:1,3
**FEDERICO** 1:11
**fee** 32:6,6
**feel** 15:23
**Ferguson** 2:11 42:13
**few** 31:21 33:14
**Fifth** 19:13,16 21:14 27:9,18 28:4 41:3
**fight** 22:7 37:10
**figure** 12:12,15 20:21 21:14,15
**figured** 11:16 17:15 24:16
**file** 7:13,14 12:19 17:19
**filed** 35:1
**financial** 31:14
**find** 6:13 9:14 13:14 21:25 35:15
**fine** 8:8 32:21 33:4 37:19
**firm** 4:12,14,17,2 4 31:20
**firms** 31:19
**first** 22:21 23:13 35:7 36:22
**Fischer** 1:15 4:16
**fish** 13:25
**five** 14:17 23:25 24:15 28:22,23 30:17,19,2 1 32:9
**five-day** 21:24 22:11
**five-year** 25:9
**FL** 1:7
**Flagler** 1:20
**flattery** 29:4
**Florida** 1:1,6,21 2:6,12 9:2 13:4 13:5,6 38:7 42:14
**folks** 10:10 11:4 13:9 29:22
**following** 4:1
**football** 34:23
**force** 33:10
**foregoing** 42:9
**foreigner** 5:5
**forewarned** 41:19
**former** 39:22
**forward** 8:23 23:9,14,17 37:20
**four** 22:11
**FPR** 2:10 42:12
**FPR-C** 2:10 42:12
**fraud** 15:13 19:10,20,2 2 20:3,3 21:10,11,1 5 22:1 24:25 27:20

**Frazior** 2:1 5:8 34:17
**Freda** 39:6
**friends** 5:2 36:9
**from** 4:12,14,1 7 5:8 15:19 20:12 22:12,21 26:8,8 33:19 34:15 34:16,17,1 7 35:16 37:11,12 41:12
**front** 26:22
**fully** 12:6
**fun** 26:25
**further** 20:15

**G**

**Galaxy** 9:9
**game** 39:16
**gave** 16:15
**gavels** 36:16
**General** 2:8
**generalist** 30:25
**generally** 32:23
**Geoffrey** 1:14 4:14
**gets** 31:20
**getting** 17:21 33:11,24
**gigabytes** 33:5
**Gilda** 2:10 6:24 42:12
**Gilead** 21:8
**Giscombe** 10:1
**give** 10:10 12:16 18:11 24:13 26:5 35:2,3,10,16 41:7
**go** 7:2 11:4,12 17:12 31:18,19 33:10 39:15 41:1
**God** 20:7
**going** 6:18 8:10,23 10:4,4,6 11:20,24 14:12,23 15:4,14 17:2,5,14,18,19,19,2 0 18:5,11 18:24 20:21,22 22:2 24:2 26:7 27:6,6,9 30:16,24 31:8,10,11 31:13,14 33:9,12 35:9,11,23 36:21 37:1,6 39:2,3 40:2,11 40:15,15,22,2 2 41:7,19 42:3
**Gold** 39:5
**good** 4:2,3,4,11,1 5 5:7 11:6 14:1 14:1,1,2 25:18 31:3 33:1 36:6 36:9 39:21 42:2
**goodness** 4:20 19:14
**good-bye** 7:3
**Google** 34:3
**gosh** 14:19 26:25
**gotten** 10:20
**gphofficialreporter@gmail.com** 2:12 42:15
**grabbed** 6:3
**grant** 6:11 18:5 33:23 40:25 41:2
**granted** 4:21,23,25 15:11
**great** 34:3
**ground** 27:12
**group** 5:13 8:17,22 16:16 38:21
**guarantee** 19:11
**guess** 15:3
**guilty** 15:23
**guns** 21:13
**guy** 38:4
**guys** 4:20 16:11 38:20

**H**

**H** 2:4
**hac** 4:18,21
**hacs** 4:23
**handful** 5:15
**handle** 6:20
**handled** 24:11
**happen** 10:4,8 36:21 41:20
**happens** 7:17 10:18 24:24 27:22 28:10 37:19 40:1
**happy** 23:11 29:24
**hard** 28:2
**hate** 38:3
**hates** 13:24

**having** 10:13 29:19
**head** 29:12
**Health** 1:8 9:3 37:25
**healthcare** 20:8,9 21:10
**hear** 5:19 22:12
**heard** 36:11
**hearing** 5:9,18,22 10:16 17:3 23:12,16 26:20 36:19 41:12 42:6
**hearings** 26:6
**Heat** 26:19,21,2 4 39:21
**held** 4:1
**Helms-Burton** 36:23
**help** 6:19,24,2 4 13:18,21 34:8,24 35:22 37:11 40:9
**helpful** 41:23
**helps** 36:19
**Henry** 2:4 5:8
**her** 11:20 33:19 34:7
**hesitation** 12:3
**hey** 14:24 17:15 35:4,17
**hierarchy** 31:20
**him** 9:14 35:9
**HIPAA** 37:17,20,24
**hired** 38:24
**Hispanic** 20:4
**hold** 9:4,4,1 4 24:3
**HOLZ** 5:4
**Honor** 4:11,24 5:4,7,16 7:6 8:4 9:21 10:2,10,19 11:15 12:2,4 12:24 13:8 14:5 16:5 17:8 18:3,13 19:7 23:4,19 24:12 25:15,21 27:12 28:2 29:2,6,16 29:21 31:23 34:16 35:19 37:13,15 40:5,7,10 41:21,25 42:4
**HONORABLE** 1:11
**hope** 35:12 41:24
**hoping** 26:15,15
**hour** 41:13
**housekeeping** 37:15
**huge** 20:3
**huh** 34:1
**husband** 33:19
**hybrid** 28:7

**I**

**Identification** 3:10
**imagine** 34:22
**immediate** 4:13
**immediately** 14:11 18:6 31:13 32:20 40:22,23,23
**impairs** 29:20
**important** 25:2 26:18
**impression** 16:8
**Inc** 1:7,8,8 9:2,2,3
**incorporated** 37:16
**independent** 11:4
**India** 15:19
**indicated** 16:13
**individual** 5:15 7:9 10:25
**individuals** 4:9 9:17 10:22 12:7 12:8 13:14 16:2 27:21
**influence** 22:5
**informal** 41:7
**information** 18:16 31:25 32:14
**INITIATION** 1:8
**Initiative** 9:3
**injunction** 5:10,21,23,2 4 6:17 11:23 16:21,23 17:1 18:4 19:22 20:11,21 23:12,16 24:24 26:20 28:14,16,20,23 29:13 33:11 38:13
**injunctions** 5:22
**institutions** 31:14
**Insurance** 37:25
**intend** 5:15
**intended** 29:5
**interested** 19:4

**interesting** 33:17 36:18
**interrupt** 15:19
**interruption** 31:17
**introduce** 4:13
**inviting** 32:25
**invoke** 27:9
**invoking** 28:4
**involved** 13:23 21:2,15 22:1 32:1,22 33:6
**involving** 26:20
**in-house** 4:19
**issue** 6:20 7:8,14 8:16 10:20 29:16 30:16 35:24 37:23 41:2 41:3
**issued** 40:3
**issues** 6:12 11:9,14 14:15 26:23 33:1,2 40:15
**issuing** 31:3
**IV** 2:4

**J**

**Japan** 37:5
**Jay** 1:18 4:11
**Jerry** 9:18,19
**John** 27:1,2
**joint** 14:10
**Jordan** 36:10
**Josh** 4:17
**JOSHUA** 1:15
**Jr** 2:11 9:19 42:13
**judge** 1:12 7:18 8:12 13:24 15:2 15:19 17:11,16 23:13 27:2 35:8 36:9 39:3,12
**judges** 25:14,18,2 0 31:2,3 32:24 36:10 41:1
**judgment** 25:17
**June** 1:7
**jurisdiction** 6:18,19,22,2 2 7:2 7:10 11:9,14,2 2 12:12,23,25 13:2 29:16 34:24
**jurisdictional** 8:16
**jury** 17:10 26:22
**just** 5:12 8:12,16 11:3,7,18 14:4 14:5 15:15 17:10 18:20 19:8 19:16 23:3,22 24:8 25:19 28:9 31:8 33:13 34:10 35:9,17 36:19 37:20 38:10
**Justin** 2:8 4:18

**K**

**Kansas** 1:24 34:16
**keep** 7:3 23:4 40:1
**keeping** 35:14
**keeps** 17:21
**kept** 19:22
**Kevin** 9:14
**kind** 24:1 28:6,17,2 0 32:19 33:16,22 37:7,8 38:2,9 40:3 40:17 41:19
**Kipnees** 1:15 4:17
**knew** 8:9
**Knicks** 26:19,23 33:18
**know** 5:22 6:2,3,2 0 7:2,4 8:16 10:19 13:24 14:16,20,21 15:2 15:25 16:6,6,7 17:4,22,24 18:12 21:14 23:3,20,23,24 24:4,18 25:18 27:11 28:17 32:7,17 33:12,15 34:2,2,3,19 34:20 35:8,13 36:8,15,20 37:8 38:1,4,6,7,8,9,2 5 39:7,8
**knowledge** 36:18,18

**L**

**lady** 34:6
**Lane** 9:25
**large** 15:12 20:3 22:6 25:10
**last** 26:11
**lasts** 29:8

**lately** 36:6
**later** 17:18
**laughing** 26:24
**law** 17:6,9 26:21 27:1 28:3 31:19 31:20 39:22,22
**lawyer** 13:14 32:20
**lawyers** 8:15 10:5 13:17,18,21 14:1 32:20 33:1 35:4 38:6,8
**Leadership** 20:4
**least** 22:23 34:4
**leaving** 8:13
**lectern** 6:24
**lecterns** 15:1
**left** 4:13
**Leight** 9:16,16
**let** 6:4 7:3 9:14 20:21 34:10
**Let's** 24:2
**liability** 36:25
**life** 23:5 28:22 41:5
**lifeline** 11:13
**like** 4:13 12:18 14:3 15:3,3 18:15 18:17,25 21:7,8,17 22:8 23:2 23:25 28:20 31:19 32:22 33:5 33:6 34:1,10,1 0 35:15 36:15 37:9 38:4 39:20 41:9
**likes** 35:9
**Lilly** 1:4 2:8 4:8,13,19 8:1,1,3
**Line** 3:11,11
**lines** 26:21
**list** 37:8
**listed** 21:6
**listen** 17:12 34:14 35:4
**litigation** 28:15
**little** 6:18 11:20,25 14:12 15:20 16:19 30:7 31:1 38:3 39:11
**LLC** 9:7,9,11
**LLP** 1:16
**local** 32:2,3 34:3
**logical** 6:11
**long** 12:16,18 27:24 30:12
**longer** 29:1,4
**longest** 24:13,15
**look** 20:20 30:21 32:14 35:8
**looked** 20:1 36:13
**looking** 6:22
**lose** 26:17
**lot** 19:10 22:6 29:1
**lots** 13:17
**love** 23:15
**loves** 13:25

**M**

**made** 18:23 20:15 41:23
**Maduro** 35:11
**magistrate** 32:24
**mail** 33:3
**make** 20:2 24:17 26:7 30:18 32:12
**makes** 10:15 15:20
**making** 41:5
**many** 21:17 22:3 27:24 32:7 38:6
**Maple** 2:2
**Marked** 3:9
**married** 5:12
**Mastando** 27:1,2
**matter** 6:22 12:23 22:3 30:23 37:16 42:10
**may** 7:10 13:8,8,8,8,2 3 17:21 32:13 34:11
**maybe** 10:15 22:20,24 30:7 32:9 32:10 40:19
**Maynard** 5:9 9:18,19,19,20,20 9:22 11:19
**Mazei** 9:25
**mean** 13:16 14:21 15:15 18:12 18:16 19:6 22:9 23:23 26:5 27:22 28:3 29:1,25 33:25 36:13 41:4

**means** 16:7 24:20 25:7 41:7
**meant** 12:9 16:7 38:16,16
**Med** 9:9
**meet** 10:11 23:4
**mention** 14:12 38:14
**mentioned** 19:2
**merits** 29:11
**mess** 33:12
**messed** 28:6
**metes** 19:20 21:25
**Miami** 1:2,6,21 2:6,11,12 34:18 42:14,14
**middle** 26:18,20 37:8
**might** 13:25 34:13 35:25
**Miller** 1:19
**million** 36:17,20
**mind** 28:15
**mindset** 17:14
**minimum** 13:3
**Misha** 5:9 9:19,20,2 2 11:18
**Missouri** 1:24
**misspoke** 8:4
**money** 21:2 32:16
**months** 7:17 17:3 33:14
**more** 4:20 15:20 23:7,9 29:5 30:7,25 34:6,23 35:2,3,10 36:24 41:8
**MORENO** 1:11
**morning** 4:2,3,4,11,1 5 5:7
**most** 5:25 11:16
**motion** 5:20 7:13,16 12:19 13:8 14:10 16:16 35:1 40:2,25
**motions** 10:14 17:19 25:17 26:5 33:22 40:20
**move** 7:18 19:19 23:7,9,17 24:19 26:25 35:9,20 37:20
**moved** 19:21
**moving** 33:21 37:4
**much** 18:16 24:18,19 41:25
**Myself** 26:9

**N**

**Nakorn** 9:7
**national** 20:4,4 32:3
**navigate** 7:7
**necessarily** 22:16 29:7 37:5
**necessary** 37:20
**neck** 38:11
**need** 11:4 13:7 14:24,25 16:22 17:16 21:15,23 29:23 32:12 39:25
**needed** 6:14
**negotiate** 22:19
**never** 4:7 18:19 36:11 41:9
**new** 1:17,17 26:9,11,21,2 3 27:2 32:2 34:15 35:4,11 36:12
**Nick** 27:1,2
**night** 26:12
**None** 3:12
**nonparties** 19:18 22:6 23:8
**nonparty** 19:19 21:16,16
**normal** 14:3 22:22
**normally** 5:21 17:4 30:17
**North** 2:11 42:14
**Northeast** 31:6
**note** 14:6,9
**notes** 6:8
**nothing** 7:17 13:5 17:17 27:23 28:21 30:18 31:20 37:12
**notice** 8:10
**notices** 18:7
**Notre** 34:21
**number** 1:3 22:5 25:11 26:3,4,4
**numbers** 22:6

**O**

**obey** 24:1
**object** 24:6
**objections** 15:7 18:25 29:23

**objects** 16:1
**obtain** 10:24
**obviously** 6:10 23:15 36:14
**off** 6:9,15 19:24 27:25
**offered** 7:21
**Official** 2:10 42:13
**often** 21:17
**Oh** 5:3 19:14 22:2,15 23:5 26:13 30:21 39:17
**okay** 4:25 5:17 6:7 7:25 8:24 9:6 9:17,25 10:3 13:10 14:14,17 15:25 18:5 24:16 25:25 26:17 26:25 28:25 30:6,10,16,23 31:6 34:20 35:12 37:2 38:7,10 38:12 39:8,14,24 40:6 41:22 42:2
**old** 38:19,20
**one** 7:21 12:20 14:15 15:3 19:22 26:4,4,5 34:4,5,9 36:9,9,15,21 37:15 38:2 40:10,12,19
**onerous** 16:18
**ones** 6:23 11:6
**only** 12:3 15:2,22 30:2 34:12 35:24 36:8 37:22 41:17
**opened** 20:1
**opening** 4:5
**opponent** 35:2
**order** 6:11,12,2 0 8:10 23:22 24:1 28:9 32:11 36:12 37:17 37:20 39:19 40:11,16 41:2
**orders** 31:4
**originally** 7:21
**other** 4:9 5:2,3,9 6:6 7:13,18 9:17 13:13 15:19 17:20 21:4 23:8 27:16 36:10,21 41:6
**others** 34:4
**Otherwise** 14:3
**out** 6:19,24 11:4 12:12,15 19:11 19:12,12 20:8,21 21:14,15,25 22:22 26:23 29:25 30:1,24 32:25 33:4,24 35:15
**outcome** 33:6 35:20
**outset** 29:16
**outsourced** 32:4
**out-of-state** 7:9 12:4
**over** 15:20 34:8 41:1
**overburdened** 25:19
**own** 33:11 40:11
**owner** 26:24
**owners** 26:20 39:20

**P**

**pace** 14:3 23:10
**Page** 3:2,11,11
**paid** 33:16
**pain** 38:3,11
**papers** 21:6
**pardon** 31:17
**part** 5:11 10:9
**participate** 16:14
**parties** 15:7 16:8,10 19:25 20:22 20:23,24,2 5 21:1 23:25 29:21 31:11 32:5 40:12
**partner** 27:3
**partners** 26:9
**party** 14:17,19,22,2 4 15:4,6 34:11,12
**past** 27:18
**PASTOR-HERNANDEZ** 2:10 42:12
**patients** 20:9
**pattern** 21:10
**Patterson** 1:16 4:14,17,24
**Paul** 9:16
**pay** 32:5
**payment** 32:13,13
**Payne** 39:6
**PC** 1:23 2:1,5
**peeves** 38:2,11

people 8:15 18:14 20:25 21:9,11 21:13,21 24:1,8 31:15 32:17 32:19 38:4 41:3,9,12
percent 41:9,10,10,11,11
perfect 35:21,21
perhaps 10:12
period 21:22,25 22:20 24:11 32:10
permanent 5:24 7:12 17:1 23:15 28:16,21,21 29:9
perpetuated 21:11
personal 6:21 7:10 12:22,25 13:2 29:15
personally 8:2,7
pet 38:2,11
pharmacies 20:24 31:15
pharmacists 20:23 23:8
phone 34:12
pick 25:7 34:21 39:22
picked 11:1
Pino 4:6
pivoted 19:24
pivoting 19:22
place 1:23 13:16 28:14
places 26:8
plaintiff 1:5,14 4:10 8:3,4 15:25 16:13 19:5 25:5 40:21
plaintiffs 11:16 14:2,23 35:16
plane 8:13
plans 20:8,9
play 11:4 19:12 26:19
played 19:11,12
plays 39:21
pleading 7:15,16 10:13
point 6:1 28:4 34:13 36:1
Polsinelli 1:23 2:1,5 5:8
Portability 37:25
position 29:19
possible 24:19
possibly 35:25
Potter 1:14 4:14,15 15:6,10,17 15:21 17:8 19:7,10,15 20:7,13 20:17,19,23 21:5,20 22:4,10 22:14,16,19 23:1,3,7 24:9,12 24:14,18,22 25:1,3,6,10,13,17 25:23 26:9,13,15 30:5,15,19 30:22 31:13,23 32:3,18 33:21 33:24 35:24 36:4 37:3,15,19 37:25 39:17,19 40:7 41:21 42:1
practice 5:25 24:8 26:9
prefer 24:18,19
preliminary 5:10,21,21,23 6:17 16:21,23 18:4 19:21 23:12 24:24 28:14,20,23 29:8,13 30:1 33:11
Presant 2:8 4:19
PRESENT 2:8
president 31:4,7 39:20
pressure 20:1
pretty 16:18 39:21
privately 35:8
privilege 18:15 19:13,16
pro 4:18,21,23
probably 27:4 34:19 39:9,16
problems 18:9 34:11 39:10
proceed 18:24
proceedings 4:1 5:10 42:10
process 11:3 22:7 32:4
processes 18:8
product 18:15
production 18:7
profit 32:5
Program 37:25
proposal 16:5 28:14
proposed 6:12 8:8 14:9 16:20 23:22
protect 29:24
protective 37:17

proud 26:2,3
prove 19:18
public 36:7,18,18
purposes 5:9
push 17:9
pushed 28:15
pushes 22:22
put 6:4,5 23:14,18,19 37:7 38:15
putting 23:17
P.A 1:19

Q
question 12:4 18:21 40:10
quick 23:11 40:10
quicker 22:8,9 41:18
quickly 6:1 18:24 23:7,9,17 24:19 26:25 33:23 40:24

R
R 42:8
raised 29:16
rather 10:13 22:4 31:25 32:24 32:24
reached 24:3
react 17:23 27:11 28:9
read 16:7 20:6
Readus 9:18
ready 12:19 33:10
real 21:12 22:24
really 19:6 22:13 24:5 30:23 34:8,13
reason 10:9 11:1 19:21 21:20 38:24
reasonable 17:13 21:25 30:12 33:9
receive 22:6 32:7
Received 3:9
record 6:9,15 14:5,7,8 26:1 38:15,18
records 11:18 14:24
refer 32:23
regularly 15:11
reimbursements 20:15
related 16:22
relaxed 15:20 16:16
remaining 35:25
remedy 29:9
remember 8:11 26:18 38:20,21 38:21
reply 40:23
report 33:14
REPORTED 2:9
reporter 2:10 5:19 6:25 14:8 42:13
Reporter's 3:4
represent 5:14 8:18,23,25 9:1 10:3,21 11:19 12:5 29:18 30:2
represented 27:17
representing 9:18,23
request 18:6
reserve 6:17 12:11 24:7
reserving 6:23 8:21
resolve 18:25 28:17 33:1
respond 21:22 24:7 30:6 40:20 40:22
responses 34:25
responsive 7:15,16 10:13 22:20
restrain 7:2
restraining 6:11 8:10 31:4
retain 5:15 10:10 11:4
retention 22:8,9
retried 36:20
return 32:8
retype 38:17
reversal 36:11
review 20:15
right 4:7,8,16 6:17 8:6 9:8,10,12 9:15 10:1 11:9,14 13:13,14 16:3 17:7 18:9,10 20:14,16,17

22:4 23:21 24:25 26:8,19 27:10 28:1,5 29:14,20,24 30:8 33:7,17,17 34:2 35:8,10,21,23 36:13 37:10 39:5 40:17 41:11 41:20 42:5
rights 27:18
rings 15:19
ringside 39:16
Roche 21:7
RPR 2:10 42:12
rule 5:23 16:9 36:22 40:23,25
rules 14:18 15:10 16:16

S
S 2:5
Safe 42:2
same 10:13 30:20,22 33:16 39:5 40:8
San 33:18,19 34:20
saw 6:12
saying 7:1 24:7 26:3 28:4
says 30:19 35:14 39:3
scenario 29:21
schedule 5:22 10:13 23:19
schedules 17:11
scheduling 17:1 25:23 40:11
scheme 32:16
scope 18:16
seats 39:16,18,21
second 34:21
see 5:20,22 6:5,7,13 11:25 14:15 15:2,18 16:6,24 17:16 21:2,11 23:24,24 25:25 33:14 34:10 36:1 37:24 38:2,19,19,22,24 39:9,12,22,25 41:2,4,12,13,14 41:15,16,18
seek 18:7,25 29:10
seeking 16:16
seems 6:11 30:12
seen 18:19 21:10 22:18 36:5 41:14,14
send 26:3 32:11
SENIOR 1:12
sense 10:15 14:16
sensitive 29:15
sent 36:10
separate 5:16 10:5,6 11:5
serial 10:14,14
serious 15:12 20:2
serve 14:21 18:6 20:22 31:11,18
served 8:2,7 30:3
service 7:22 11:2 30:11
serving 31:13,14
set 26:6 36:8,17
sets 23:20
seven 14:18 30:17,19
Shapiro 1:18 4:3,11,11,16,23 5:2 11:15,18,22 12:2 38:22,24 39:1,5 40:10 42:4
share 15:1
shirts 26:23
shocking 20:10
short 22:4
shortages 25:20
shorter 21:20
shortest 24:13,14
shot 11:13 31:19
show 31:25 40:3
shut 19:23 21:12
side 5:2,3,4
sides 17:2,11 33:9 34:8
sign 7:3 8:10 23:22 24:24 28:9 33:13 37:18,22 38:13 39:8,9 39:24
signed 37:23
signing 23:23
similar 21:9
simpler 10:12
simplify 17:5

since 34:6
Singer 9:13,14
sit 5:18 25:17 35:11,17 37:1
sits 14:4
Sitterson 1:19
sitting 6:4,13
situations 27:19
six-month 33:14
slow 16:19 37:6
smart 27:23
smarter 36:14
Smith 9:18
solution 22:24
some 4:25 6:6 7:9,15,18 21:6 22:5 25:14,18 28:17 29:20 31:2 32:3,3 34:3 35:6 38:10
somehow 33:17
someone 10:4 33:10 34:1
something 6:4 10:16 13:6 14:22 17:17,20 23:14 28:4 29:22 34:10 36:11 41:8
sometimes 8:5 26:16,16 36:5,24 37:1 38:8
song 38:19
songs 38:25
soon 20:18 32:9 40:19
sooner 27:25
sorry 6:7 9:5 13:20 16:20 18:20 41:23
sort 29:9,11 31:24
sound 15:21,22
SOUTHERN 1:1
speak 14:23
specific 16:4 21:9
speed 37:5
Sr 9:19
stack 6:3,4,7
stand 38:9
stands 37:24
start 4:7 14:3 18:8 22:4
started 20:17
starting 4:6
State 8:12
statements 4:5
States 1:1,12 2:10 31:4 42:13
statistics 26:3
status 1:11 5:18,22 10:16 26:6
stay 28:14
stayed 26:11
Stearns 1:19 4:12
STENOGRAPHICALLY 2:9
step 29:20
still 12:11 16:8,9 24:7 25:4 26:18 29:22 30:25 35:15
stipulate 6:16
stipulated 11:23 18:4
stipulating 16:21
stipulation 5:20 8:8 14:10,10
stipulations 16:4 37:16
stop 8:14 20:11
stopped 24:25
stopping 20:20
street 1:20 21:13
structure 29:23
subject 6:22 12:23
submit 40:12
submitted 14:10 16:5,15 20:25
submitting 19:25
subpoena 32:7
subpoenas 22:7
sued 21:5
suggesting 37:3
Suite 1:20,24 2:2,6,11 42:14
Sullivan 27:3
summary 25:17
super 28:20 35:9
supposed 21:1 31:15
supposedly 20:24
sure 16:15 18:18 24:17 41:17

surprised 38:6
suspect 7:15 28:1 33:13
suspected 41:13
swifter 23:10

**T**
T 42:8,8
table 3:1 4:18
take 12:1,14,16,2 3 15:14 17:2 21:15,16 23:9 25:4 27:24 33:25 39:13 41:3,13
taken 25:13 29:19
takes 12:12 18:16 39:24 41:22
taking 25:24 31:24
talk 11:12,12,20,2 4 36:22 41:6
talking 6:21,21
team 4:21 34:21
tell 8:20,22,2 4 9:1 10:16 16:24 17:1,24 25:19 26:6 30:24 32:17,19 35:4,15
telling 35:3 38:10
tells 20:11
temporarily 9:18,23 10:3 30:2
temporary 6:11 7:8 8:10 28:20 29:3,6,8 31:3
Tennessee 9:2
terms 12:18 18:23,24
Texas 2:3 20:1 31:7
Thank 40:7 41:23,25 42:1,4
thanks 39:22
their 8:8 10:11,24 13:22 19:13 21:12 23:9 25:8 27:18 32:6
themselves 10:21
thing 7:3 15:18 25:2 27:13,24 30:1,20 31:8 36:7 40:8
things 6:1,5,6 8:14 15:23 16:10 17:4,14,1 8 18:15,16 23:25 27:5,5 29:12 31:1 33:15 37:9 38:3
think 4:21,24 7:21 8:12 10:8 11:15,17 12:14 13:10,13,15 17:25 19:1,2 20:18 24:14,15 27:4,10 28:7 29:24,25 32:21 32:25 33:9 34:5 35:6,7,10,15 35:17,23,2 5 36:1 37:12 38:4 41:12,22,23
thinking 14:19 17:22,24,2 5 19:8 34:2
third 14:17,19,22,2 4 15:4,6,7 19:25 20:22,23,24,2 5 21:1 23:25 31:11 32:5 34:11,12
third-party 14:21 15:16 39:10
though 34:13 35:12
thought 5:1 10:12 13:5 19:23
three 22:21 29:11 38:25 39:1,4
three-day 16:17
through 19:18,25 29:24 31:20 33:11
throughout 5:14
time 4:7 5:25 10:10 14:24,25 17:18 18:16 21:23,25 22:20 23:18 24:11 26:6 27:12,24 32:6,11 33:3 35:2,3,3,10,16 38:10 39:5 41:8
times 16:18 27:24
time-out 32:21
timing 11:3
TN 1:8
today 15:12
told 36:10 39:12,12 40:13
tomorrow 39:16
top 6:6 37:8
traditionally 30:7
train 37:4,5,6
transcription 42:10
trial 4:6 17:10 28:17,19 29:10 33:10 35:11,12,21,21,23 36:2 36:3,4,12 40:15 41:2,17
trials 26:4,19

trip 42:2
TRO 19:21 29:2,6,8
true 30:3,4
try 36:16
trying 7:7 10:7 29:12
turnaround 16:18 21:21,24 22:11
TV 4:6
twice 5:25 6:2
two 4:24 7:16,21 15:1,3 16:17,25 17:10 20:3 21:23 22:20 26:21 30:18 34:5 36:8,10 40:19
Tyler 1:16
type 27:16,20 37:21
types 36:5
Typical 4:7
typically 22:14 32:11 35:24

**U**
Um-hum 25:1 30:9
uncomfortable 6:18
under 5:23 15:8,10 19:25 22:21
understand 15:14 18:21 19:5,20 24:4 32:15,22
understanding 18:2 38:14
Understood 35:19 40:5
unfortunately 20:3
United 1:1,12 2:10 31:4 42:13
unless 5:18 8:12 39:10 41:8
unlock 32:12
until 23:5 28:16 36:19,22 40:16 41:1
uploaded 39:25
upper 37:8
upset 24:1
up-to-date 25:14
Use 6:24
used 20:3
usually 31:6,7
U.S 42:13

**V**
varied 24:12
vent 36:19
verdict 36:17,20
verdicts 36:8
Veronica 1:18 4:12
versus 4:9
very 15:12 16:16 20:2 26:2,3 29:3 36:6 41:25
vice 4:18,21
victims 15:12
view 17:12 28:9
vs 1:6

**W**
W 1:23
wait 7:14 33:14 34:25 40:18
waive 7:22 14:20 15:5
waived 11:22 14:18 30:11
waiver 11:2
waives 15:9
waiving 15:6
want 7:11,14,1 7 8:24 10:16 12:11 15:25 16:6,12 21:12 23:17,21,22,2 4 25:4 26:7 27:10 28:12 29:19 32:22,25 33:1,5,8,8,1 8 34:5,6,8,10,14 34:14 37:7 40:12 41:14,14
wanted 5:17 17:22 21:20 24:16
wants 15:25
Warwick 38:23
wasn't 8:9 36:11
watch 39:15
watching 4:5 7:4
way 6:2 12:20 19:11,12,2 3 23:23 25:20 29:23 33:4,16 34:9 38:18 40:13

ways 7:21 21:17
Weaver 1:19 4:12
Webb 1:16
week 4:24
weeks 21:23 22:21,21
weird 40:17
Weissler 1:19
well 5:17 7:20 8:17 9:1 10:9,19 11:16 13:25 18:14 19:1,7 21:20 22:10 23:1 24:9 26:16 27:20 32:8 37:18 39:23 40:13
went 8:2,7 21:2
were 4:1 6:5 10:7 14:19 23:13 27:1 29:12 31:15 37:22
West 1:20
we'll 27:5,11 32:9,10 37:7 39:8 41:2,13
we're 7:7 8:19 15:12 17:19 19:19 20:21 23:18 26:3,4,4 31:13,14 33:17 37:4 40:15
we've 6:1 8:14,15,1 5 16:4 17:15 18:23 19:10,17 21:5,7,8,10 25:17
Wholesale 9:11
wholesalers 9:7 31:16
wife 35:14
Wilkie 2:11 42:13
willing 23:14,18 24:6
win 26:16
wiser 41:1
wish 39:17
work 14:16 18:15 25:20 28:7 29:25 30:1,24 31:11,12 32:25 33:4,6
worked 20:24 34:4
working 35:14
works 14:20
worried 15:15
worry 35:17 36:15 40:14
wouldn't 11:17 17:12
wow 22:15
write 38:17
writes 14:8
written 6:5 18:7
wrong 6:3 27:23 39:3

**Y**
Yeah 6:14 8:5 12:20 13:2 18:23 27:11,14,2 2 35:5 39:7
year 25:24
years 8:11 15:3 24:15 25:18 27:4 28:22,24 31:5 34:5
yesterday 4:22,25
York 1:17,17 26:10,11,21,23 27:2 32:2 34:15 35:11
young 34:6 41:9

**Z**
Zayas 1:18 4:12

**$**
$115 32:13
$300 36:17
$40 36:20
$80 32:13

**1**
1 41:11
10 32:10 33:2
10:05 4:1
10:55 42:6
100 41:9,10,10
10036 1:17
11:00 36:19
1133 1:16
12-2 1:5 2:11 42:14
15 33:2
150 1:20

**1973** 39:4

**2**
20 21:21 30:7
2026 1:7
212-336-2838 1:17
214-661-5596 2:3
2200 1:20
26 16:9
26-23516-Civil 4:8
26-23516-CV-MORENO 1:3

**3**
30 12:21,22 13:10,14,2 5 21:21 22:23 27:4
300 2:2
305-789-3200 1:21
305-921-1811 2:7
305.523.5118 2:12 42:14
315 2:5
33128 2:12 42:14
33130 1:21
33131 2:6
36 31:5

**4**
40 8:11
400 2:6,11 42:14
4020 2:2
42 3:4
48th 1:23

**6**
60 7:14,19,23,2 4 10:10 11:1 12:12,14 13:24 23:16 30:11 30:11 34:25 40:1,3,18,19
60-day 7:20 10:11
64112 1:24
65 5:23

**7**
7 33:2
75219 2:3

**8**
816-374-0567 1:25

**9**
9 1:7
90 24:14,17
900 1:23,24
93 35:12
99 41:10