# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DRUGPLACE, INC. (FL); DRUGPLACE, INC. (TN); COMMUNITY HEALTH INITIATIVE, INC.; NAKORN WHOLESALERS, LLC; GALAXY MED, LLC D/B/A GALAXY PHARMACY; BRIGHTLINE WHOLESALE LLC; PAUL LEIGHT; KEVIN SINGER; READUS SMITH; JERRY MAYNARD SR.; JERRY MAYNARD JR.; EDGAR ENRIQUEZ; LANE MAZEI; and DANIELLE GISCOMBE,<br><br>Movants,<br><br>v.<br><br>ELI LILLY AND COMPANY,<br><br>Respondent. | Case No.: 1:26-mc-00362<br><br>Underlying Action: *Eli Lilly and Company v. DrugPlace, Inc. et al,* (No. 1:26-cv-23516-FAM) (EFD) (S.D. Fla.) |

**RESPONDENT'S OPPOSITION TO MOVANTS' MOTION TO QUASH**

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT ....................................................................................1

BACKGROUND .............................................................................................................4

A. Lilly Seeks a Preliminary Injunction and Expedited Discovery of Movants' Financial Information ....................................................4

B. Movants Do Not Contest Lilly's Allegations of Massive Fraud .................5

C. The Parties Stipulate to a Preliminary Injunction and Expedited Third-Party Discovery ....................................................................7

D. Lilly Expressly Discloses To Movants and the Court that It Intends to Subpoena Movants' Banks ....................................................7

E. Lilly's Bank Subpoenas ......................................................................8

1. The Status of the Subpoenas ...................................................8

2. The Subpoenas Seek Basic Account Information...........................9

3. The Identifying Information Sent to Banks Is Necessary and Protected.........................................................................9

F. Lilly Complies with the Expedited Discovery Order ...............................10

G. Movants Receive Notice of the Bank Subpoenas ....................................11

H. Movants Ignore the Subpoenas for Nine Days and Then Bring This Motion Without Meeting and Conferring With Lilly ...............................12

ARGUMENT ...............................................................................................................12

I. Movants' Motion is Procedurally Defective........................................................12

A. Movants' Motion is Untimely and Largely Moot.....................................12

B. Movants Lack Standing to Challenge Subpoenas to Banks at Which They Have No Accounts ..........................................................14

C. Movants Lack Standing to Assert Alleged Undue Burden or Improper Place of Compliance on Behalf of the Banks ...........................15

D. Movants Failed to Meet and Confer .......................................................16

II. Lilly Has a Compelling Need for the Bank Records, Which Illuminate the Scope of Movants' Massive Fraud ....................................................................17

A. Financial Records Are Highly Relevant to Lilly's Claims .......................18

B. Movants' Privacy Concerns Do Not Warrant Quashing the Subpoenas ........................................................................................20

C. It Is Not Practical or Appropriate to Limit the Subpoenas to Particular Transactions....21

D. The Bank Statements Are Not Available from Another Source....22

CONCLUSION....23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Campinas Found. v. Simoni*,
No. 02CIV3965BSJKNF, 2004 WL 253303 (S.D.N.Y. Feb. 10, 2004) ....................19

*City of Almaty, Kazakhstan v. Ablyazov*,
No. 115CV05345KHPAJN, 2017 WL 11699074 (S.D.N.Y. May 5, 2017)....................17

*City of Almaty, Kazakhstan v. Sater*,
No. 19CV2645AJNKHP, 2020 WL 2765084 (S.D.N.Y. May 28, 2020)....................13

*City of N.Y. v. Golden Feather Smoke Shop, Inc.*,
No. 08-CV-3966 (CBA), 2009 WL 10705762 (E.D.N.Y. Dec. 21, 2009) ....................12

*Conopco, Inc. v. Wein*,
No. 05–CV–9899, 2007 WL 2119507 (S.D.N.Y. July 23, 2007)....................17, 18

*Eastman Kodak Co. v. Camarata*,
238 F.R.D. 372 (W.D.N.Y. 2006)....................18

*Est. of Tillman by Tillman v. City of N.Y.*,
345 F.R.D. 379 (E.D.N.Y. 2024) ....................12

*Feiner v. SEC*,
914 F. Supp. 2d 474 (S.D.N.Y. 2012)....................19

*Flybar Inc. v. Express Trade Cap., Inc.*,
No. 25 CIV. 618 (VSB) (GS), 2026 WL 1453579 (S.D.N.Y. May 22, 2026) ....................15, 19

*In re Gorsoan Ltd.*,
No. 18 MC 431 (RA) (KNF), 2020 WL 3264159, at *1 (S.D.N.Y. June 17, 2020) ....................16

*Jam Indus. USA, LLC v. Gibson Brands, Inc.*,
No. 19 MC 508 (LTS), 2020 WL 4003280 (S.D.N.Y. July 15, 2020) ....................16

*Malibu Media, LLC v. Doe*,
No. 15–cv–3147, 2016 WL 5478433 (S.D.N.Y. Sept. 29, 2016) ....................15, 16

*Merida Cap. Partners III LP v. Fernane*,
No. 25 Civ. 1235 (JAV), 2025 WL 1541072 (S.D.N.Y. May 30, 2025)....................14, 15

*Persaud v. SEC*,
No. 24-MC-0505 (JHR) (RWL), 2025 WL 831115 (S.D.N.Y. Mar. 17, 2025)....................12, 15

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**


*In re Rule 45 Subpoena Issued To JP Morgan Chase Bank, N.A.*,
319 F.R.D. 132 (S.D.N.Y. 2016) ....................16

*Sali v. Zwanger & Pesiri Radiology Grp., LLP*,
No. 19-CV-00275, 2022 WL 1085508 (E.D.N.Y. Jan. 10, 2022) ....................14

*Shojaee v. Anibal J. Duarte-Viera, P.A.*,
365 So. 3d 1190 (Fla. 3d DCA 2023) ....................21

*Somaxan Pharma., Inc. v. Actavis Elizabeth LLC*,
No. 22 Misc. 162 (KPF), 2022 WL 3577904 (S.D.N.Y. Aug. 18, 2022) ....................14

*Soudani v. Soudani*,
No. 23-CV-09905 (PMH), 2024 WL 3236911 (S.D.N.Y. June 28, 2024) ....................14

*State Farm Mut. Auto. Ins. Co. v. Fayda*,
No. 14 Civ. 9792 (WHP) (JCF), 2015 WL 7871037 (S.D.N.Y. Dec. 3, 2015),
*aff'd*, 2016 WL 4530890 (S.D.N.Y. Mar. 24, 2016) ....................17

*United States v. Miller*,
425 U.S. 435 (1976) ....................21

*US Bank Nat'l Ass'n v. PHL Variable Ins. Co.*,
No. 12 Civ. 6811(CM)(JCF), 2012 WL 5395249 (S.D.N.Y. Nov. 5, 2012) ....................14

*Valdez v. Town of Brookhaven*,
No. CV 05-4323(JS)(ARL), 2007 WL 1988792 (E.D.N.Y. July 5, 2007) ....................16

Respondent Eli Lilly and Company ("Lilly") respectfully submits this opposition to Movants DrugPlace, Inc. (FL), DrugPlace, Inc. (TN) (together "DrugPlace"), Community Health Initiative, Inc., Nakorn Wholesalers, LLC, Galaxy Med, LLC d/b/a Galaxy Pharmacy, Brightline Wholesale LLC, Paul Leight, Kevin Singer, Edgar Enriquez, Lane Mazei, Danielle Giscombe, Readus Smith, Jerry Maynard Sr., and Jerry Maynard Jr.'s ("Movants") motion to quash.

## PRELIMINARY STATEMENT

Movants are the perpetrators of an enormous prescription drug fraud scheme. As detailed in the complaint filed in the Southern District of Florida ("District Court") on May 15, 2026, they have submitted over $200 million worth of false rebate claims to Lilly for one medicine alone, Trulicity®. Discovery to date has revealed that Movants were also defrauding numerous other pharmaceutical companies and that their scheme involved more than ***four billion dollars'*** worth of prescription medication. The brazenness of Movants' fraud cannot be overstated. They claimed to have filled hundreds of thousands of Trulicity prescriptions through church-sponsored prescription drug programs, but these prescriptions did not exist. In turn, Movants received and retain hundreds of millions of dollars' worth of rebates received from Lilly.

The evidence of the Movants' fraud is overwhelming and has been confirmed since Lilly filed its detailed complaint. Shortly after Lilly filed suit, the National Hispanic Christian Leadership Conference ("NHCLC"), one of the church organizations Movants purported to partner with, submitted a sworn declaration attesting that it was "shocked" to hear of Movants' assertions, as it has no prescription drug program and no relationship with Movants. *See* Declaration of Geoffrey Potter ("Potter Decl."), Ex. 1 (NHCLC Declaration) ¶¶ 7–8. NHCLC reviewed documents provided by Movants purporting to establish such a relationship and pronounced them "fabricated" and "fraudulent." *Id.* ¶¶ 11–15. Subsequently, the pharmacist-in-chief of Movant DrugPlace, the pharmacy controlled by Movants which submitted rebate claims for ***hundreds of***

***thousands*** of Trulicity prescriptions, testified under oath [redacted] *See* Potter Decl., Ex. 2 (Supko Tr. at 40:19-22; 63:20-22; 65:1-9). The rest of the purported prescriptions are nonexistent.

Movants, for their part, have done nothing to defend themselves over two months of litigation other than to retreat and resist discovery into their wrongdoing. Upon learning of Lilly's allegations prior to the commencement of the lawsuit, they abruptly closed their businesses in anticipation of Lilly's claims. After Lilly filed its lawsuit along with a motion for a preliminary injunction, Movants filed opposition papers in which they asserted no merits defense to Lilly's fraud claims. Potter Decl., Ex. 3 (Defs.' PI Opp.). Movants ultimately stipulated to a preliminary injunction, and to an expedited discovery order that they belatedly challenge in this motion. Potter Decl., Ex. 4 (Stipulated Order).

Pursuant to that expedited discovery order, Lilly subpoenaed Movants' banks in order to trace the proceeds of their massive fraud. Movants' motion to quash these subpoenas is misleading, defective, and meritless. Movants accuse Lilly of "gamesmanship" for "intentionally failing to notify Movants of the subpoenas" (Mot. to Quash at 1), but they fail to quote the parties' so-ordered stipulation that "any party may serve non-party subpoenas immediately, ***without need to comply with Rule 45(a)(4)***." Potter Decl., Ex. 4 (Stipulated Order) ¶ 7. Rule 45(a)(4) is the only provision of the Federal Rules requiring notice to parties of document subpoenas. Movants also hide the fact that Lilly's counsel stated on the record of a June 9, 2026 court conference that Lilly would be issuing subpoenas to Movants' "banks, so we can see where the money went and who else was involved in [the fraud]." Mot. to Quash, Ex. I at 21:1-2.[1] Once they received the

[1] Movants acknowledge this in a footnote on page 14 of their brief, after arguing in the body of their motion that they were blindsided by the fact that Lilly subpoenaed their banks.

subpoenas, Movants failed to download them for ten days, after which they rushed to this Court to file the present motion without any attempt to meet and confer with Lilly. *Infra* at 12-13.

The end result of Movants' questionable approach is a motion riddled with procedural and substantive deficiencies. First, Movants' motion is untimely, and largely moot, as it was filed weeks after the time for compliance had passed, weeks after Movants received notice of the subpoenas, and in most cases, weeks after the banks in question had already ***responded*** to the subpoenas. *See* Appendix A (setting forth the status of the challenged subpoenas). Movants cannot reasonably complain about this timing as they stipulated to an expedited discovery order providing for five-day response times for third-party subpoenas (and waiving the notice requirements of Rule 45(a)(4)), an order that was discussed extensively on the record of the June 9, 2026 court conference. Potter Decl., Ex. 4 (Stipulated Order); Mot. to Quash, Ex. I.

Second, although Movants purport to challenge approximately 1,000 bank subpoenas, they hold no accounts at most of these banks and therefore lack standing to challenge most of those subpoenas, none of which are being contested by the banks themselves. To be clear, Movants are well aware that only a limited number of bank subpoenas are properly at issue in this motion, because they know which banks they use. If Movants had any doubt on this point, they could have attempted to narrow the issues presented on this motion by meeting and conferring with Lilly prior to filing it. Instead, Movants chose to burden the Court with an overbroad motion to quash. As set forth in Appendix A, there are only nine subpoenas still outstanding to banks in which Movants have accounts.

Third, and most fundamentally, Movants' bank records are highly relevant to Lilly's claims, which assert—based on overwhelming evidence—that Movants siphoned more than $200 million in falsely obtained Trulicity rebates through a complex web of fraudulent companies. As

Lilly informed Movants and the Southern District of Florida District Court, such subpoenas are necessary "so we can see where the money went and who else was involved in [the fraud]." Mot. to Quash, Ex. I at 21:1-2. The case law supports the discoverability of bank records for these purposes. Indeed, it recognizes that where, as here, the defendants are engaged in complicated financial fraud involving multiple entities, there is no reasonable alternative to following the money by taking discovery of defendants' finances. That is particularly true as Movants have proven themselves unwilling to provide relevant information through party discovery and do not even contend that they are prepared to produce their financials. Any privacy rights that Movants assert in the bank records are protected by a robust protective order that has been entered by the District Court, which retains jurisdiction to address any modifications to that order that Movants may seek. There is no basis to quash the subpoenas. This Court should not block Lilly's efforts to trace the evidence of Movants' brazen fraud.

## BACKGROUND

### A. Lilly Seeks a Preliminary Injunction and Expedited Discovery of Movants' Financial Information

On May 22, 2026, Lilly filed a motion for a temporary restraining order, preliminary injunction, and expedited discovery, in support of which it submitted numerous declarations and documentary evidence substantiating its allegations that Movants engaged in a massive fraudulent scheme. Potter Decl., Ex. 6 (Pl.'s PI Mot.). As Lilly detailed in the complaint and in its motion, Movants carried out their fraud through an intricate web of complex financial transactions, involving multiple corporate entities controlled by Movants as well as multiple third-party intermediaries. A diagram of Movants' scheme is presented below:




Given that Movants' fraud was characterized by a series of complicated financial transactions, Lilly recognized that discovery into Movants' finances was critical to the case. Lilly therefore included with its preliminary injunction motion a proposed order to show cause that would, among other things, require Defendants to produce five categories of documents relevant to their rebate submissions, including their financial records. Potter Decl., Ex. 7 (Proposed TRO & OSC). In particular, Lilly's May 22 proposed order sought: "Since January 1, 2020, ***all bank, investment, brokerage, cryptocurrency, and other financial accounts that any Movant has held, has controlled, is or was a beneficiary of, or has had signatory authority for***, as well as the current balances thereof." *Id.* (emphasis added).

**B. Movants Do Not Contest Lilly's Allegations of Massive Fraud**

In response to Lilly's motion, Movants submitted opposition papers that did not even ***attempt*** to refute Lilly's allegations of fraud. Potter Decl., Ex. 3 (Defs.' PI Opp.). Instead, Movants opposed the motion on the ground that they had recently closed their businesses and that therefore Lilly was supposedly not at risk of irreparable harm or in need of expedited discovery. *Id.* Movants supported their motion with terse declarations that did not deny Lilly's allegations or

provide any explanation for why the businesses had closed. Potter Decl., Exs. 8–9 (Singer and Mazei Declarations).

Subsequently, Lilly took the deposition of the pharmacist-in-chief of Movant DrugPlace, the pharmacy controlled by Movants, which submitted rebate claims for hundreds of thousands of Trulicity prescriptions. Contrary to DrugPlace's representations that it filled hundreds of thousands of Trulicity prescriptions, the pharmacist-chief testified under oath [redacted] *See* Potter Decl., Ex. 2 (Supko Tr. at 40:19-22; 63:20-22; 65:1-9). [redacted] *Id*. at 40:13-18. Yet bank records have shown that DrugPlace has engaged in billions of dollars' worth of transactions with PBMs and other healthcare payer representatives. *See, e.g.,* Potter Decl., Exs. 12, 15 (bank statements).[2]

The DrugPlace pharmacist confirmed under oath that [redacted] *See* Potter Decl., Ex. 2 (Supko Tr. at 65:21-24). This signifies that the hundreds of thousands of Trulicity prescriptions Movants claimed to have dispensed were made up of whole cloth. Further, despite DrugPlace's representations it had dispensed each one of those Trulicity prescriptions to church members participating in Community Health Initiative's prescription cost share program, the pharmacist testified that [redacted] *Id*. at 93:4-14; 94:12–

[2] In the interest of limiting the number of exhibits submitted in connection with its Opposition Brief, Lilly has attached a sample of bank statements reflecting such transactions. Exhibits 12 and 15 to the Potter Declaration show over [redacted] transferred into DrugPlace accounts through just two transactions over only two months. Over the course of six years, these transactions totaled billions of dollars. Lilly would be glad to provide a full set of statements at the Court's request

95:4. And she flatly refuted [redacted] *Id.* at 141:1-7.

### C. The Parties Stipulate to a Preliminary Injunction and Expedited Third-Party Discovery

In advance of the hearing on Lilly's preliminary injunction motion, the parties negotiated a proposed Stipulated Order in which Movants agreed to be enjoined from submitting further rebate claims. Potter Decl., Ex. 4 (Stipulated Order). The stipulation also included a compromise agreement with respect to Lilly's motion for expedited discovery. In the stipulation, Lilly agreed to withdraw its request for expedited discovery from ***Movants***, including its request for expedited disclosure of their financial statements. In exchange, Movants agreed that Lilly could pursue discovery on an expedited basis from ***third parties*** without notifying Movants of document subpoenas. Specifically, the parties' June 9, 2026 Stipulated Order provided:

> The Parties agree that any party may serve non-party subpoenas immediately, ***without need to comply with Rule 45(a)(4)*** or Local Rule 26.1(h), and that such subpoenas may be made ***returnable within five (5) days***.

Potter Decl., Ex. 4 (Stipulated Order) ¶ 7.

### D. Lilly Expressly Discloses To Movants and the Court that It Intends to Subpoena Movants' Banks

The Stipulated Order was entered following a hearing before Judge Moreno of the Southern District of Florida, during which the exact discovery at issue in this motion was discussed. At the hearing, counsel for Lilly explained at length that Lilly intended to subpoena Movants' banks pursuant to the Stipulated Order. Counsel stated that Lilly would subpoena both "local" and "national banks" for "***account information to show who was involved***," "***so we can see where the money went and who else was involved in [the fraud]***." Mot. to Quash, Ex. I at 21:1-2; 31:25–32:1; 32:23–33:16. As counsel further explained, after the banks provide Movants' records, "you

can then look at it and understand because at the end of the day this is a crime. ***This is a scheme about money.***" *Id.* at 32:11-16. Counsel further explained that they had followed this exact bank subpoena process in similar cases involving healthcare fraud schemes, including ones involving some of the exact Movants who bring this motion in this case, noting that "we have, in fact, sued some of these Movants before." *Id.* at 21:5-10. During the conference, the District Court confirmed with Movants' counsel repeatedly that they understood the proposed Stipulated Order and were willing to abide by it. *Id.* at 28:9-18; 30:6-21.

**E. Lilly's Bank Subpoenas**

**1. The Status of the Subpoenas**

Pursuant to the June 9 Stipulated Order, and consistent with its representations to Movants and the Court, Lilly served subpoenas on a number of local and national banks and financial institutions in an effort to discover the proceeds of Movants' massive fraud. The majority of those banks disclosed that they did not have responsive documents. Another group of banks did not respond to the subpoenas but were not identified in the documents of any of the banks that did respond. Lilly is not pursuing its subpoenas against these two groups of banks and those subpoenas are not properly at issue in this motion.[3]

The remaining banks and financial institutions – those with responsive documents – are identified in Appendix A to this memorandum. *See* Appendix A (listing financial institutions that have produced responsive documents or indicated that they possess responsive documents). This list includes identified 55 financial institutions. *Id.* Forty-six of them have already produced

[3] For avoidance of doubt, Lilly is not pursuing, and if necessary would be willing to withdraw, subpoenas issued to banks not listed in Appendix A to this motion (without prejudice to serving future subpoenas in light of future evidence). Lilly would have done so prior to this motion had Movants met and conferred with Lilly prior to filing it.

documents, meaning that there are only nine subpoenas still outstanding. *Id.* Movants offer no explanation why they did not narrow their motion to focus on just the outstanding subpoenas.

**2. The Subpoenas Seek Basic Account Information**

As is common for bank subpoenas, the document requests sent to each subpoenaed bank sought information sufficient to identify all accounts owned, controlled, or benefitting any Movant, and information about transactions to or from such accounts. Additionally, Lilly requested information sufficient to show who accessed Movants' accounts online or by phone, as this information shows who actually controls the accounts. As stated on the record of the June 9 hearing, Lilly needs this information to locate the proceeds of Movants' fraud, uncover evidence of Movants' laundering or dissipation of such proceeds, and identify additional players in Movants' fraudulent scheme.

With respect to The Clearing House Payments Company (CHIPS), Lilly requested all CHIPS payment messages to be able to identify Movants' large value domestic and international transactions. Lilly has legitimate concerns that Movants have or will move assets abroad, particularly given their abrupt closing of their businesses after learning of Lilly's allegations. As the largest private sector USD clearing and settlement network in the world, The Clearing House Payments Company's CHIPS payment messages would reveal whether such dissipation has occurred, including the amount of any transaction and the sending and receiving banks of the funds.

**3. The Identifying Information Sent to Banks Is Necessary and Protected**

Lilly included personal identifiers to ensure that its requests were narrowly tailored to obtain only Movants' account information. Account holders can have, and some of Movants do have, common names, and without limiting information such as tax identification numbers, the

subpoenas would have been a risk of accessing an unintended non-party's account information. For example, it is not practical to seek Movant Kevin Singer's financial information without providing identifying information beyond Mr. Singer's name, as there are many other Kevin Singers in the United States.

Prior to the service of the subpoenas, the District Court approved a HIPAA Confidentiality and Protective Order. A copy of the Protective Order was provided to each bank so that they could produce responsive documents under the appropriate designation. In addition to the protections afforded by the order, financial institutions have independent privacy obligations, consistent with the fact that they routinely possess similar identifying information for their account holders. Banks with responsive documents sent their productions via secured means including password protected or encrypted documents and file-sharing sites.

**F. Lilly Complies with the Expedited Discovery Order**

Movants' motion states that they agreed to waive "***certain*** Rule 45 notice requirements" in the Stipulated Order, but asserts that they did not waive the right to receive notice of document subpoenas altogether. Mot. to Quash at 4 (emphasis added). That is inaccurate. The parties stipulated that there was no "need to comply with Rule 45(a)(4)," which is the ***only*** party notice requirement in the Federal Rules. Potter Decl., Ex. 4 (Stipulated Order) ¶ 7. Movants cannot identify any other purported notice requirement that Lilly failed to comply with, because none exists. As Lilly informed the District Court, the Stipulated Order reflected a compromise under which Lilly agreed to forego expedited discovery from Movants in exchange for the ability to pursue expedited third-party discovery without interference from Movants. Potter Decl., Ex. 10 (Pl.'s Resp. to Mot. for Clarification). Indeed, that was the only purpose of removing the requirements of Rule 45(a)(4).

### G. Movants Receive Notice of the Bank Subpoenas

Consistent with the widespread policy of notifying account holders of civil subpoenas, multiple banks notified Movants, beginning no later than June 17, 2026, of Lilly's subpoenas. Mot. to Quash at 4; Potter Decl., Ex. 19 (June 17, 2026 correspondence). Movants complained to Lilly that Lilly had not provided notice. Potter Decl., Ex. 19 (June 17, 2026 correspondence). Lilly promptly responded that it would provide documents produced pursuant to subpoenas but that consistent with the Stipulated Order, it had not and would not comply with the notice requirement of Rule 45(a)(4).

Over two weeks later, on July 3, 2026, Movants moved to "clarify" that notice was required one business day after the service of subpoenas. On July 7, prior to receiving a response from Lilly, the District Court issued an order clarifying that Lilly was to provide Movants notice of document subpoenas within one business day of service. *See* Potter Decl., Ex. 9 (July 7, 2026 Order). That same day, Lilly produced all of the non-party subpoenas it had served to date via a secure transfer link.[4] Contrary to Movants' assertion, that production included an unredacted copy of Schedule A, providing Movants with complete notice of the scope of Lilly's requests and the information provided to facilitate the respondents' search for responsive documents. Since the July 7 Order, Lilly has consistently produced non-party subpoenas to Movants within one business day of service.

On July 17, Lilly submitted a response to Movants' motion for clarification, explaining that although it did not seek reconsideration of the District Court's July 7 Order, its actions prior

[4] This production inadvertently omitted a reissued version of one subpoena, served on Bessemer Trust Company of Florida. The original subpoena issued to the parent bank, the Bessemer Trust Company, was included in the production. Lilly produced to Movants the reissued subpoena to the subsidiary Bessmer Trust Company of Florida as soon as it received notice of the unintentional omission. Bessemer Trust Company of Florida has not yet responded to Lilly's subpoena.

to July 7 were in full compliance with the Stipulated Order. Potter Decl., Ex. 10 (Pl.'s Resp. to Mot. for Clarification). Movants have not responded to Lilly's submission or sought further clarification or relief from the District Court.

### H. Movants Ignore the Subpoenas for Nine Days and Then Bring This Motion Without Meeting and Conferring With Lilly

Despite receiving notice of the vast majority of Lilly's bank subpoenas on or before July 7, Movants did not attempt to access the subpoenas until July 16, at which point they followed up with a single attorney representing Lilly who was on vacation. Potter Decl., Ex. 11 (July 17, 2026 correspondence requesting access to the documents sent on July 7). After Movants followed up with a larger list on July 17, Lilly sent them the subpoenas for a second time that same day. *Id.* Two business days later, without providing any notice to Lilly or otherwise making any attempt to meet and confer, Movants brought this motion.

## ARGUMENT

### I. Movants' Motion is Procedurally Defective

### A. Movants' Motion is Untimely and Largely Moot

The Federal Rules of Civil Procedure require a motion to quash a subpoena to be made "promptly ... at or before the time specified in the subpoena for compliance therewith." *City of N.Y. v. Golden Feather Smoke Shop, Inc.*, No. 08-CV-3966 (CBA), 2009 WL 10705762, at *2 (E.D.N.Y. Dec. 21, 2009) (citing Fed. R. Civ. P. 45(b)). "It is well settled in the Second Circuit that for a motion to quash a subpoena to be 'timely', it must be made prior to the return date of the subpoena." *Est. of Tillman by Tillman v. City of N.Y.*, 345 F.R.D. 379, 385 (E.D.N.Y. 2024) (internal quotation marks and citation omitted); *see also Persaud v. SEC*, No. 24-MC-0505 (JHR) (RWL), 2025 WL 831115, at *4–5 (S.D.N.Y. Mar. 17, 2025) (denying motion to quash because it was untimely).

Movants' motion is untimely as to all the challenged subpoenas, and should be rejected on that basis. *See* Appendix A (setting forth the return dates for the challenged subpoenas). Movants do not dispute that they brought their motion weeks after the time for compliance had passed. Although Movants complain that "Lilly's tactics in issuing the Bank Subpoenas without any notice to Movants have also already prejudiced Movants by stripping them of their ability to move to quash or take other action to protect their rights before compliance with the five-day return period," Mot. to Quash at 8, this is precisely what they agreed to in the Stipulated Order. Potter Decl., Ex. 4 (Stipulated Order) ¶ 7. Lilly did not engage in any "tactics." To the contrary, Lilly straightforwardly complied with the Stipulated Order it negotiated with Movants: Lilly served third party subpoenas, returnable in five days, without complying with the notice requirements of Rule 45(a)(4), just as the Movants agreed Lilly could do. *Id.*

Furthermore, Movants' delay in bringing this motion is not limited to the period in which they lacked notice of the subpoenas. Despite agreeing to the five-day expedited return period, Movants did not file their motion until more than a month after they first received notice of certain subpoenas (Potter Decl., Ex. 19) (June 17, 2026 correspondence), and fourteen days after they received copies of all subpoenas from Lilly. *Supra* at 12-13. Movants' failure to review the subpoenas in a timely manner after receiving them is hardly an excuse for their untimeliness, particularly after they stipulated to an order expressly permitting the expedited procedure of which they now complain.

Given the untimeliness of Movants' motion, the majority of the subpoenaed banks have already provided their responses at this point, as Movants acknowledge. Mot. to Quash at 8. The motion is therefore moot as to those banks. *See City of Almaty, Kazakhstan v. Sater*, No. 19CV2645AJNKHP, 2020 WL 2765084, at *3 (S.D.N.Y. May 28, 2020) (holding motion to quash

moot where subpoenaed party "has responded to the document subpoena"); *Sali v. Zwanger & Pesiri Radiology Grp., LLP*, No. 19-CV-00275, 2022 WL 1085508, at *16 (E.D.N.Y. Jan. 10, 2022) (same); *Soudani v. Soudani*, No. 23-CV-09905 (PMH), 2024 WL 3236911, at *2 (S.D.N.Y. June 28, 2024) (same). As described in Appendix A, there are only nine outstanding subpoenas that are even potentially subject to this motion. But the return dates for those nine subpoenas have long since passed. Appendix A. Movants' motion should be denied in its entirety on timeliness grounds.

### B. Movants Lack Standing to Challenge Subpoenas to Banks at Which They Have No Accounts

In addition, Movants lack standing with respect to most of the subpoenas challenged in their motion. "[A] party generally lacks standing to challenge a third-party subpoena, unless the party is seeking to protect a personal right or privilege in the subpoenaed documents." *Somaxan Pharma., Inc. v. Actavis Elizabeth LLC*, No. 22 Misc. 162 (KPF), 2022 WL 3577904, at *2 (S.D.N.Y. Aug. 18, 2022) (internal citations and quotations omitted). Even where a party seeks to protect a personal right in a subpoenaed document, it "do[es] not have standing to challenge the Subpoenas on the independent grounds of undue burden or relevance." *Merida Cap. Partners III LP v. Fernane*, No. 25 Civ. 1235 (JAV), 2025 WL 1541072, at *5 (S.D.N.Y. May 30, 2025) (internal citations and quotations omitted). The burden is on the movant to establish standing. *See US Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, No. 12 Civ. 6811(CM)(JCF), 2012 WL 5395249, at *2 (S.D.N.Y. Nov. 5, 2012).

Even assuming arguendo that Movants have personal rights in their bank records that would confer standing, Movants clearly lack standing to challenge subpoenas to banks that do ***not*** possess Movants' bank records. As set forth in Appendix A, there are fifty-five subpoena recipients that have responsive documents; the remainder of the subpoena recipients have either

responded that they have no responsive documents, or have not responded, and Lilly is not pursuing those subpoenas. *See supra* at 9 n.3; Appendix A. Movants lack standing to challenge the subpoenas not identified in Appendix A, and the motion to quash those subpoenas is furthermore moot. *See Persaud*, 2025 WL 831115, at *4 ("[The] motion to quash the TD Subpoena is moot because TD did not have responsive documents in its possession, custody, or control."). The motion to quash should be denied on these grounds as to the subpoenas not listed in Appendix A.

### C. Movants Lack Standing to Assert Alleged Undue Burden or Improper Place of Compliance on Behalf of the Banks

Movants also lack standing to challenge **any** of the subpoenas based on alleged undue burden to banks or on the basis that the subpoenas seek compliance, by electronic means, in New York. Even if Movants have a personal right in the subpoenaed documents, they are not recipients of the subpoenas and therefore do not have standing to "challenge the subpoenas on the independent grounds of undue burden or relevance." *Merida*, 2025 WL 1541072, at *5; *Malibu Media, LLC v. Doe*, No. 15–cv–3147, 2016 WL 5478433, at *3 (S.D.N.Y. Sept. 29, 2016) ("Courts have consistently rejected the position that a party who is not the recipient of a subpoena can nonetheless challenge that subpoena because it creates an undue burden."). Movants therefore cannot argue that the subpoenas place an undue burden of the banks by requiring electronic production in New York.

It is the non-party banks, not Movants, "who will bear the burden of producing the relevant bank records." *Flybar Inc. v. Express Trade Cap., Inc.,* No. 25 CIV. 618 (VSB) (GS), 2026 WL 1453579, at *5 (S.D.N.Y. May 22, 2026). In point of fact, Lilly has compensated the banks for these burdens, as banks process and charge fees for complying with subpoenas as part of their ordinary business operations. Potter Decl., Ex. 20 (Bank receipts).

Not one of the financial institutions subpoenaed by Lilly refused to produce responsive documents because of the place of compliance or any other alleged burden. This is not surprising, since no financial institution was required to physically appear to produce documents in response to the subpoenas. Rather, the financial institutions produced responsive documents by electronic means. It imposed no additional burden on the banks to send responsive documents in New York. Movants lack standing to assert a nonexistent undue burden based on place of compliance, or to assert any other purported undue burden, as the location of production and burden of complying does not affect them. *See In re Rule 45 Subpoena Issued To JP Morgan Chase Bank, N.A.*, 319 F.R.D. 132, 135 (S.D.N.Y. 2016) ("The burden of literal compliance with [the] subpoena falls to a third-party.") (quoting *Malibu Media*, 2016 WL 5478433, at *3).

**D. Movants Failed to Meet and Confer**

Once they downloaded copies of the subpoenas ten days after receiving them, Movants rushed to file their motion to quash without attempting to confer with Lilly. This provides another independent reason to deny their motion. *See e.g. Valdez v. Town of Brookhaven*, No. CV 05-4323(JS)(ARL), 2007 WL 1988792, at *3 (E.D.N.Y. July 5, 2007) (requiring meet and confer for motion to quash subpoenas); *In re Gorsoan Ltd.,* No. 18 MC 431 (RA) (KNF), 2020 WL 3264159, at *1 (S.D.N.Y. June 17, 2020) (denying motion to quash subpoena and directing the parties to "meet and confer regarding how to modify the subpoenas' scope"); *Jam Indus. USA, LLC v. Gibson Brands, Inc*., No. 19 MC 508 (LTS), 2020 WL 4003280, at *1 (S.D.N.Y. July 15, 2020) (same). Had Movants conferred with Lilly in good faith, the issues presented to the Court would have been narrowed if not eliminated; for example, Lilly would have clarified that the subpoenas to banks in which Movants hold no accounts are not at issue. Instead, Movants decided to burden the Court with a vague and overbroad motion that failed to present a clear picture of the current state of play. The Court should deny the motion on this basis alone. To the extent the Court

considers any limitations or additional privacy protections to be appropriate – although as discussed below modifying the subpoenas would be impractical – Movants should be required to pursue this relief in cooperation with Lilly, under the auspices of the Florida District Court, and not pursuant to this improper motion. Movants should not be rewarded for their failure to work in good faith to narrow the issues for the Court. The motion should be denied for failure to meet and confer.

## II. Lilly Has a Compelling Need for the Bank Records, Which Illuminate the Scope of Movants' Massive Fraud

Once Movants' moot and irrelevant arguments are dispensed with, their lone remaining argument is that their privacy interests in their financial information trumps the probative value of a subset of responsive bank records. But it is clear that Lilly has a compelling need for the information sought by the subpoenas. Despite the personal right recognized in financial records, "a court will order [] sensitive financial information produced where it is relevant to the action and there is a compelling need for the documents because the information is not otherwise readily available." *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14 Civ. 9792 (WHP) (JCF), 2015 WL 7871037, at *4 (S.D.N.Y. Dec. 3, 2015), *aff'd*, 2016 WL 4530890 (S.D.N.Y. Mar. 24, 2016). Indeed, courts routinely allow discovery of financial and banking records in fraud cases like this one. *See, e.g., Conopco, Inc. v. Wein*, No. 05–CV–9899, 2007 WL 2119507, at *2 (S.D.N.Y. July 23, 2007) ("[E]ven the confidentiality of personal financial matters must yield to the Federal Rules of Civil Procedure, which govern the discovery of information relevant to the claims and defenses in a federal court action."); *Fayda,* 2015 WL 7871037 at *3 (granting motion to compel the Movants' bank account records based in part on the plaintiff's assertion that it had "uncovered evidence of complex financial transactions that may have been used 'to conceal assets or income,'" which could in turn demonstrate intent to defraud); *City of Almaty, Kazakhstan v. Ablyazov*, No.

115CV05345KHPAJN, 2017 WL 11699074, at *2 (S.D.N.Y. May 5, 2017) (denying motion to quash financial records where records "may shed light on the Petelins' source of wealth, which addresses whether the Petelins were financially able to fund Triadou's investments and/or whether their source of wealth came from the stolen funds."); *Eastman Kodak Co. v. Camarata*, 238 F.R.D. 372, 377 (W.D.N.Y. 2006) (permitting broad discovery of bank account information where plaintiffs asserted that they had been defrauded by Movants of "substantial sums of money over a very substantial period of time.").

**A. Financial Records Are Highly Relevant to Lilly's Claims**

There is no question that Movants' financial records are relevant to this fraud action, as Lilly explained to Movants and the District Court at the June 9 conference, and prior thereto in its memorandum in support of its Motion for Preliminary Injunction. Mot. to Quash, Ex. I; Potter Decl., Ex. 5 (Pl.'s Mot. for TRO) at 16–19. Although Lilly has already amassed significant evidence that Movants engaged in fraud, bank records are necessary to provide insight into the full extent of the fraud, who was involved, where the proceeds of the fraud have been transferred, and where they are now located. Indeed, as set forth above and in Lilly's preliminary injunction motion to which Movants ultimately stipulated, the heart of Movants' fraudulent scheme is an extraordinarily complicated web of financial transactions that are structured to hide the fraud. *Supra* at 6–7 & Potter Decl., Ex. 6 (Proposed TRO & OSC). Discovery of the financial documents recording those transactions is essential to this case.

In recognition of this point, courts routinely require the production of financial information and banking records where such documents are relevant to uncovering evidence of complex financial conspiracies. *See, e.g., Conopco, Inc.* 2007 WL 2119507, at *2 (denying motion to quash where "money [Defendant] either invests in or receives from the alleged [ ] conspiracy may be evidence of how the enterprise operates, and of the role [Defendant] plays in the enterprise);

*Feiner v. SEC*, 914 F. Supp. 2d 474, 478–79 (S.D.N.Y. 2012) (same where "the Commission needs to investigate all of Movant's accounts to trace any money that might have been fraudulently obtained from, or at the expense of, [the Company's] clients . . . [a]nd the Court is unaware how the SEC could determine which of these accounts, if any, have been used to disguise or disburse [the Company's] funds, without access to the requested records in the first place."); *Campinas Found. v. Simoni*, No. 02CIV3965BSJKNF, 2004 WL 253303, at *1 (S.D.N.Y. Feb. 10, 2004); (same where "[t]he information sought may enable the plaintiff to establish its claim that funds were allegedly obtained from it for one purpose and then diverted improperly to other endeavors."); *Flybar Inc.* 2026 WL 1453579, at *4 (same where "[p]laintiff . . . seeks records showing inflows to Graubard's IOLA account related to Movants' Surf 9 transaction ***and records tracing where those funds were distributed, to whom, and over what time periods. Such discovery is clearly relevant to Plaintiff's claims***.") (emphasis added).

Indeed, the bank records produced to date have already been highly relevant, beginning to illuminate the pathways through which money flowed among the Movants, and identifying numerous additional entities that received millions of dollars in proceeds that originated from DrugPlace's bank accounts. For example, the bank records show that each month, tens or hundreds of millions of dollars flowed into DrugPlace and Nakorns' bank accounts. These sums were then quickly swept out to other various accounts, identified only by the last four digits of an account number, and then again cycled to yet other accounts. *See* Potter Decl., Ex. 12 (12/2024 Statement for DrugPlace Acct 2297 [redacted] Ex. 13 (12/2024 and 1/2025 Statements for Kevin Singer Acct 4262 [redacted]; Ex. 14 (12/2024 and 1/2025 Statements for Kevin Singer Acct 1683 [redacted]

[redacted] *See also* Potter Decl., Ex. 15 (4/2023 Statement for DrugPlace Acct 2297 [redacted] Ex. 16 (4/2023 Statement for Paul Leight Acct 4199 [redacted] Ex. 17 (5/2023 Statement for Paul Leight Acct 6699 [redacted] The transfers accelerated at the end of 2024. In a single month, over [redacted] flowed in and promptly out of just one of DrugPlace Inc.'s many bank accounts. *See* Potter Decl., Ex. 13 (12/2024 Statement for DrugPlace Acct 2297). These layered transactions highlight the complexity of Movants' fraud and underscore the need for a full financial accounting so that Lilly can understand where its money is currently located and whose hands it has traveled through.

**B. Movants' Privacy Concerns Do Not Warrant Quashing the Subpoenas**

Although Movants assert privacy concerns, "any remaining privacy concerns" Movants have "can be substantially addressed through a confidentiality order." *Rule 45 Subpoena Issued To JP Morgan Chase Bank,* 319 F.R.D at 134. Here, Movants' confidential information is adequately protected by the negotiated protective order in the Florida action, and Movants offer no reason why this is not adequate protection. Potter Decl., Ex. 21 (Protective Order). In fact, every subpoenaed financial institution was provided a copy of the protective order and the opportunity to designate materials pursuant to it. And the Florida District Court retains jurisdiction to hear any further request for relief by Movants with respect to confidentiality or privacy.

Contrary to Movants' argument, the fact that the Florida Constitution protects financial information where there is no countervailing "relevant or compelling reason to compel disclosure" does not mean Movants have a legitimate expectation of privacy in their bank records that requires

quashing the challenged subpoenas. *See* Mot. to Quash (citing *Shojaee v. Anibal J. Duarte-Viera, P.A.*, 365 So. 3d 1190, 1193 (Fla. 3d DCA 2023)). On the contrary, the United States Supreme Court has determined that bank customers have ***no reasonable expectation of privacy*** in the financial records kept by their banks. *See United States v. Miller*, 425 U.S. 435, 440–41 (1976) (emphasis added). In any event, there is a strong countervailing reason to compel disclosure here: these bank records demonstrate the flow of the proceeds from the fraud, and Movants identify no alternative source from which Plaintiffs could obtain this information.

### C. It Is Not Practical or Appropriate to Limit the Subpoenas to Particular Transactions

Movants also contend that "Lilly has not tailored its requests to the alleged transactions implicated in the Underlying Action." Mot. to Quash at 15. But it is far less burdensome for financial institutions to provide financial statements for Movants as they are maintained in the ordinary course of business than to conduct an independent review to isolate specific transactions, which in any event cannot be identified in advance. Indeed, it would be prohibitively burdensome to expect banks, who routinely comply with subpoenas for account information without hiring counsel, to conduct a tailored review of bank statements before producing them. Any privacy concerns in these statements can be addressed through the protective order, as discussed above. They do not warrant modifying the subpoenas to ***increase*** the burden upon the banks.

Furthermore, because the essence of Movants' scheme is to conceal the true nature of their fraud in the guise of legitimate transactions, there is no practical way to identify in advance which specific transactions are relevant to the fraud. As Lilly explained in its complaint, the fraud spanned at least five years, and a prior version of the scheme began 15 years ago. The conspirators and other linked individuals and entities number in the dozens, and each is likely to have multiple, if not many, accounts, and will have distributed funds to still further accounts. In such a wide-

ranging conspiracy, there is no way to further tailor the categories of information sought. For example, the rebate payments Movants received do not explicitly reference Lilly or Trulicity. Indeed, as discussed above, the records produced to date reveal that Movants have moved the initial rebate payments through numerous accounts that Lilly had no knowledge of before serving the subpoenas. Potter Decl., Exs. 12-17. There is no reasonable way to trace Movants' fraudulent proceeds through targeted document requests identified in advance. The money can only be followed by analyzing Movants' entire bank statements.

**D. The Bank Statements Are Not Available from Another Source**

Finally, Lilly cannot obtain these records from another source. As discussed above, Movants have already refused to provide their financial information to Lilly as part of the stipulated preliminary injunction process. Indeed, Movants do not even attempt to argue in their motion that they stand ready to provide this information to Lilly now, nor does Lilly ever expect to receive straightforward answers from Movants. For example, one day prior to Lilly's filing this response, Movants served their responses and objections to Lilly's interrogatories, in which they categorically refused to provide ***any*** of the requested information and lodged the same baseless objections to every request. *See* Potter Decl., Ex. 18 (Defs.' Interrog. Resps.). As a last resort, the individual Movants are likely to invoke their Fifth Amendment privilege against self-incrimination in a final effort to avoid voluntarily providing evidence of their fraud. Mot. to Quash, Ex. I at 27:9-28:11 (indicating that Movants may invoke their Fifth Amendment privilege).

The Stipulated Order agreed to by the parties recognizes this reality. Under that Stipulated Order, Lilly was entitled to seek information—including information regarding Movants' financial accounts and transactions—from third parties rather than from Movants. Having agreed to that order, Movants cannot oppose third-party discovery on the grounds that it is available from the parties. Again, Movants have not even made this argument, because they have no intention of

providing complete responsive financial information to Lilly, and even if they did, the information would still fail to identify all financial information relevant to the conspiracy.

## CONCLUSION

As explained above and in Lilly's uncontested submissions to the Florida District Court, Movants are responsible for an enormous financial fraud of great complexity. Pursuant to an express, stipulated agreement of the parties, Lilly has appropriately pursued expedited discovery of that fraud by subpoenaing the banks and other financial institutions that are in possession of Movants' financial records. As set forth in Appendix A and explained above, the vast majority of those subpoenas have already been complied with, consistent with the stipulated expedited discovery order, rendering this motion moot. Movants' motion to quash is overbroad, untimely, and meritless, and should be denied.

DATED: New York, New York
July 28, 2026

Respectfully submitted,

PATTERSON BELKNAP WEBB & TYLER LLP

*/s/ Geoffrey Potter*

Geoffrey Potter
Aron Fischer
Joshua Kipnees
gpotter@pbwt.com
afischer@pbwt.com
jkipnees@pbwt.com
1133 Avenue of the Americas
New York, NY 10036
Tel: 212-336-2000
Fax: 212-336-2222

*Attorneys for Respondent Eli Lilly and Company*

**CERTIFICATE OF COMPLIANCE WITH WORD-COUNT LIMITATIONS**

I, Geoffrey Potter, hereby certify that the foregoing Memorandum of Law complies with the word-count limitations and formatting requirements applicable in the United States District Court for the Southern District of New York. Using the Microsoft Word word-count feature, the Memorandum of Law contains 7,162 words, excluding the caption, signature blocks, and certificates, but including the material contained in the footnotes, consistent with Local Rule 7.1(c).

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the above and foregoing was filed electronically via CM/ECF on July 28, 2026 and that the document is being served via transmission of Notice of Electronic Filing generated by the CM/ECF system on all counsel and parties registered to receive notices via CM/ECF.

*/s/ Geoffrey Potter*

# APPENDIX A

*FILED UNDER SEAL*