**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

ELI LILLY AND COMPANY,

       Plaintiff,

v.

DRUGPLACE, INC. (FL); DRUGPLACE, INC.
(TN); COMMUNITY HEALTH INITIATIVE,
INC.; NAKORN WHOLESALERS, LLC;
GALAXY MED, LLC D/B/A GALAXY
PHARMACY; BRIGHTLINE WHOLESALE
LLC; PAUL LEIGHT; KEVIN SINGER;
READUS SMITH; JERRY MAYNARD SR.;
JERRY MAYNARD JR.; MISHA MAYNARD;
EDGAR ENRIQUEZ; LANE MAZEI; and
DANIELLE GISCOMBE,

       Defendants.

Case No. 1:26-CV-23516-FAM

**DEFENDANT EDGAR ENRIQUEZ'S MOTION TO DISMISS**
**<u>PLAINTIFF'S COMPLAINT</u>**

## **TABLE OF CONTENTS**

A.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................................... 1

B.    RELEVANT ALLEGATIONS............................................................................................3

    I.  The Claims Against Mr. Enriquez and ELC's Allegations ................................... 3

C.    Memorandum of Law ........................................................................................................ 6

    I.  ELC Has Failed to Establish Personal Jurisdiction Over Mr. Enriquez. ............................ 6

        A.  ELC Fails to Allege Conduct Subject to Florida's Long-Arm Statute. ........................... 7

        B.  The Exercise of Personal Jurisdiction over Mr. Enriquez Would Violate the Due Process Clause ................................................................................................. 10

    II.  ELC Fails to Plead a Conspiracy to Commit Fraud............................................................. 11

        A.  ELC fails to Meet its Pleading Standard under Rule 9(b) and 12(b)(6). ........................ 11

        B.  The Intracorporate Conspiracy Doctrine Bars ELC's Claim. ......................................... 15

    III.  ELC's Remaining Claims Must Also be Dismissed. ........................................................... 17

        A.  ELC Has Not Alleged Direct Benefit or an Inadequate Remedy at Law to Support its Unjust Enrichment and Money-Had-And-Received Claims. ......................................... 17

    IV.  ELC's Complaint is a Shotgun Pleading Subject to Dismissal. ........................................ 19

D.    Conclusion ........................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Dental Ass'n v. Cigna Corp.*,
    605 F.3d 1283 (11th Cir. 2010) ...................................................................................12, 15

*American United Life Ins. Co. v. Martinez*,
    480 F. 3d 1043 (11th Cir. 2007) ...............................................................................2, 11, 13

*Apex Toxicology, LLC v. United HealthCare Svcs., Inc.*,
    No. 17-61840-CIV, 2020 WL 13551299 (S.D. Fla. July 7, 2020) ................................. *passim*

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
    116 F.3d 1364 (11th Cir. 1997) ...............................................................................2, 11, 19

*Condor, S.A. v. Plurinational State of Bolivia*,
    352 So. 3d 921 (Fla. 3d DCA 2022) ....................................................................................9

*Denney v. City of Albany*,
    247 F. 3d 1172 (11th Cir. 2001) ..............................................................................3, 15, 16

*DeRossett v. Southeast Toyota Dist. Inc.*,
    No. 17-CV-60415, 2017 WL 7344406 (S.D. Fla. Aug. 18, 2017) ........................................7, 8

*Doe v. Ibanera, LLC*,
    No. 1:25-cv-24118, 2026 WL 2089224 (S.D. Fla. May 21, 2026)...........................3, 8, 10, 12

*ECB USA, Inc. v. Savencia Cheese USA, LLC*,
    148 F.4th 1332 (11th Cir. 2025) .........................................................................................12, 14

*Estes v. Rodin*,
    259 So. 3d 183 (Fla. 3d DCA 2018) ...................................................................................11

*Extraordinary Title Services, LLC v. Florida Power & Light Co.*,
    1 So. 3d 400 (Fla. 3d DCA 2009) ....................................................................................17, 19

*Feng v. Walsh*,
    No. 19-24138-CIV, 2021 WL 8055449 (S.D. Fla. Dec. 21, 2021).............................12, 13, 15

*Graham v. Cypress Capital Group Inc.*,
    No. 10-81269-CIV, 2011 WL 13227744 (S.D. Fla. July 12, 2011) .................................16, 17

*Guerrero v. Target Corp.*,
    889 F. Supp. 2d 1348 (S.D. Fla. 2012) ..............................................................................18

*GVB MD v. Aetna Health Inc.*,
No. 19-22357-CIV, 2019 WL 6130825 (S.D. Fla. Nov. 19, 2019) ........................................19

*Hard Candy, LLC v. Hard Candy Fitness, LLC*,
106 F. Supp. 3d 1231 (S.D. Fla. 2015) ................................................................................7, 8

*Headley v. Rosenblatt*,
No. 24-24613, 2025 WL 2623834 (S.D. Fla. Sept. 10, 2025) .............................................2, 6

*Hinkle v. Continental Motors, Inc.*,
268 F. Supp. 3d 1312 (M.D. Fla. 2017) ..............................................................................8, 10

*Keegan v. Minahan*,
No. 23-60501-Civ, 2023 WL 3884962 (S.D. Fla. June 7, 2023) ............................................13

*Kelly v. Palmer, Reifler, & Assoc., P.A.*,
681 F. Supp. 2d 1356 (S.D. Fla. 2010) ................................................................................3, 17

*Louis Vuitton Malletier, S.A. v. Mosseri*,
736 F.3d 1339 (11th Cir. 2013) ...............................................................................................6

*Magluta v. Samples*,
256 F.3d 1282 (11th Cir. 2001) .............................................................................................3, 20

*Marrache v. Bacardi U.S.A., Inc.*,
17 F.4th 1084 (11th Cir. 2021) .....................................................................................3, 18, 19

*Mirage Yacht, Inc. v. A 2013 Marquis Yachts Recreational Vessel*,
No. 24-21095-CIV, 2025 WL 1047148 (S.D. Fla. Feb. 12, 2025) .........................................12

*Oueiss v. Saud*,
No. 1:20-cv-25022, 2022 WL 1311114 (S.D. Fla. Mar. 29, 2022) ..........................................9

*Oviedo v. Ramirez*,
No. 21-cv-23750, 2022 WL 1641865 (S.D. Fla. May 23, 2022)................................... *passim*

*Posner v. Essex Ins. Co., Ltd.*,
178 F.3d 1209 (11th Cir. 1999) .............................................................................8, 9, 10, 12

*Prohias v. Pfizer, Inc.*,
490 F. Supp. 2d 1228 (S.D. Fla. 2007) ...................................................................................18

*PVC Windoors, Inc. v. Babbitbay Beach Const., N.V
.*, 598 F.3d 802 (11th Cir. 2010) ...........................................................................................11

*Rensin v. State*,
18 So. 3d 572 (Fla. Dist. Ct. App. 2009) ..................................................................................9

*Sevi v. Israel Disc. Bank of New York*,
No. 13-21922-CIV, 2014 WL 12861833 (S.D. Fla. Nov. 24, 2014) ......................................12

*State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*,
278 F. Supp. 3d 1307 (S.D. Fla. 2017) ................................................................................13

*Steel Media Grp. v. Lewis*,
No. 22-cv-21780, 2023 WL 1413043, at *9 (S.D. Fla. Jan. 6, 2023), *R. & R. adopted*, No. 22-cv-21780, 2023 WL 1332832 (S.D. Fla. Jan. 31, 2023)...................17, 18, 19

*United Technologies Corp. v. Mazer*,
556 F.3d 1260 (11th Cir. 2009) ..........................................................................................10

*Virgilio v. Ryland Group, Inc.*,
No. 608-CV-815, 2009 WL 320857 (M.D. Fla. Feb. 9, 2009) ...............................................17

*W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*,
287 F. App'x 81 (11th Cir. 2008)........................................................................................19

*Weiland v. Palm Beach County Sheriff's Office*,
792 F.3d 1313 (11th Cir. 2015) .................................................................................3, 19, 20

*Weisman v. Southern Wine & Spirits of America, Inc.*,
297 So.3d 646 (Fla. 4th DCA 2020)................................................................................13, 15

*Ziemba v. Cascade International, Inc.*,
256 F.3d 1194 (11th Cir. 2001) ..........................................................................................11

**Statutes**

Fla. Stat. § 48.193(1)(a) ......................................................................................................8

Fla. Stat. § 48.193(1)(a)(2) ..................................................................................................7

**Other Authorities**

Fed. R. Civ. Proc. 9(b) .............................................................................................. *passim*

Fed. R. Civ. Proc. 12(b)(2) ..................................................................................................1

Fed. R. Civ. Proc. 12(b)(6) ........................................................................................ *passim*

Tenn. Comp. R. & Regs. 1140-01-.08 .................................................................................15

U.S. Const. amend. XIV, § 1 ............................................................................................6, 10

Plaintiff Eli Lilly and Company ("ELC") seeks to drag Defendant Edgar Enriquez ("Mr. Enriquez"), a Tennessee citizen, into a sprawling, multi-year alleged commercial fraud conspiracy that purportedly occurred in Tennessee while Mr. Enriquez was employed as a warehouse manager for a Tennessee corporate defendant and pharmaceutical wholesaler, Nakorn Wholesalers, LLC ("Nakorn"). Mr. Enriquez moves to dismiss the Complaint filed by ELC under Federal Rules of Civil Procedure 12(b)(2), 9(b), and 12(b)(6), and under the Eleventh Circuit's shotgun-pleading doctrine. ELC's allegations against Mr. Enriquez are sparse, conclusory, and insufficient to support ELC's claims against Mr. Enriquez for: (i) civil conspiracy to commit fraud (Count II); (ii) unjust enrichment (Count IV); and (iii) money-had-and-received (Count V).

ELC adds a handful of conclusory allegations that Mr. Enriquez "supervised," "participated in," "conspired," and "benefited," in the purported conspiracy and then incorporated more than two hundred paragraphs into each claim for relief. Not only does ELC improperly incorporate paragraphs, it also lumps all defendants together as a singular "Defendant", obfuscating any particular allegations against Mr. Enriquez individually. This is not enough to hale a Tennessee resident into a Florida court, and it is not enough to state a claim against him individually.

The fraud-based conspiracy allegations should be dismissed under Rule 9(b) because ELC does not plead with particularity the who, what, when, where, and how of any fraud by Mr. Enriquez. Further, the fraud-based conspiracy fails based on Florida's intracorporate conspiracy doctrine. The claims also fail under Rule 12(b)(6) because the Complaint pleads conclusions rather than facts showing Mr. Enriquez's individual liability. Moreover, the unjust enrichment claim fails because ELC has not alleged any direct benefit to Mr. Enriquez or an adequate remedy at law. Similarly, the money had and received claim fails for the same reason because Florida law views money had and received as synonymous to unjust enrichment.

Finally, the Complaint is an impermissible shotgun pleading because each count incorporates every preceding paragraph, and the pleading repeatedly groups all Defendants together without identifying what Mr. Enriquez himself allegedly did.

### A.      INTRODUCTION AND SUMMARY OF ARGUMENT

This action is based on an alleged rebate-fraud scheme involving DrugPlace, Inc. ("DrugPlace"), Galaxy Med, LLC ("Galaxy"), Community Health Initiative Inc. ("Community Health"), Brightline Wholesales LLC ("Brightline"), Nakorn, and several alleged owners and principals (the "Rebate Claim"). As to Mr. Enriquez, however, the Complaint alleges very little.

The Complaint identifies Mr. Enriquez as a Tennessee resident and the General Manager of Nakorn. Compl. ¶ 35. It alleges that Nakorn is organized under Tennessee law and principally located in Nashville, Tennessee. Compl. ¶ 20. It alleges that Mr. Enriquez signed Tennessee inspection reports (completely lawful activity for any pharmaceutical wholesaler) and was listed as a contact for certain entities. Compl. ¶¶ 21, 35. Importantly, it does not allege any conduct by Mr. Enriquez in, or directed at, Florida. Even for Nakorn, the only specific purported "fraud" conduct referenced is wholly limited to conduct in Tennessee and Kentucky. Compl. ¶¶ 155-163. The Complaint then adds the conclusory assertion that Mr. Enriquez "supervised, participated in, conspired to participate in, and benefited from" the alleged scheme. Compl. ¶ 35.

That pleading structure cannot support personal jurisdiction in Florida. The Court must conduct a two-step inquiry, first determining whether Florida's long-arm statute is satisfied and then whether exercising jurisdiction comports with due process. *Headley v. Rosenblatt*, No. 24-24613, 2025 WL 2623834, at *2 (S.D. Fla. Sept. 10, 2025) (J. Moreno). The plaintiff bears the initial burden of alleging sufficient facts to make out a prima facie case of jurisdiction. *Id.* at *1 (citing *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013)). The Complaint does not carry that burden because it pleads no Florida conduct by Mr. Enriquez, no Florida-directed activity by him, and no facts showing that he purposefully availed himself of the privilege of conducting activities in Florida. *See Oviedo v. Ramirez*, No. 21-cv-23750, 2022 WL 1641865, at *6-7 (S.D. Fla. May 23, 2022) (holding plaintiff failed to allege personal jurisdiction arising out of defendants' conduct in Florida).

The Complaint fares no better on the merits. Rule 9(b) requires fraud-based claims to allege the precise statements, the time and place of the statements, the person responsible for making them, the manner in which they misled the plaintiff, and what the defendants obtained as a consequence. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997). Those requirements apply with equal force where a plaintiff pleads a conspiracy to commit fraud. *American United Life Ins. Co. v. Martinez*, 480 F. 3d 1043, 1067 (11th Cir. 2007) ("where a conspiracy claim alleges that two or more parties agreed to commit fraud, the plaintiffs must plead this act with specificity."). ELC has not identified any statement by Mr. Enriquez, any instruction by him to submit false rebate data, any specific resale transaction he handled, or any payment he received. Neither does the conspiratorial nature of ELC's claims save its pleading deficiencies. ELC does not allege any facts that raise a plausible inference that Mr. Enriquez even

2

knew of the Rebate Claim, let alone agreed to participate in it. Indeed, the only specific conduct ELC alleges is between *Nakorn and other purported conspirators* – not Mr. Enriquez. Compl. ¶ 163-170; *See Denney v. City of Albany*, 247 F. 3d 1172, 1190-91 (11th Cir. 2001) ("under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves.") (citation omitted).

Nor does the Complaint state a plausible claim under Rule 12(b)(6). Although the Court must accept well-pleaded factual allegations as true, it need not accept conclusory allegations, unwarranted deductions of fact, or legal conclusions masquerading as facts. *See Doe v. Ibanera, LLC*, No. 1:25-cv-24118, 2026 WL 2089224, at *5 (S.D. Fla. May 21, 2026). The claims against Mr. Enriquez rest on labels, collective references, and group pleading. That is insufficient under Eleventh Circuit precedent. Similarly, the unjust enrichment and money had and received claims fail because ELC does not allege an inadequate remedy at law or any direct benefit to Mr. Enriquez. *See Kelly v. Palmer, Reifler, & Assoc., P.A.*, 681 F. Supp. 2d 1356, 1384 (S.D. Fla. 2010) (J. Moreno) (holding under Florida law that unjust enrichment and money had and received claims require the same elements); *see also Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1102 (11th Cir. 2021).

Finally, the Complaint is a textbook shotgun pleading. The Eleventh Circuit has repeatedly condemned complaints that incorporate all preceding paragraphs into each count and complaints that assert claims against multiple defendants without specifying which defendant did what. *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015); *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001). For these reasons, the Complaint should be dismissed as to Mr. Enriquez.

## B.      RELEVANT ALLEGATIONS

### I. The Claims Against Mr. Enriquez and ELC's Allegations

ELC advances five claims in its Complaint: common-law fraud, civil conspiracy to commit fraud, negligent misrepresentation, unjust enrichment, and money-had-and-received. Compl. ¶¶ 205–234. Mr. Enriquez is not named as a defendant in the common-law fraud claim (because he did not engage in fraud). Compl. ¶¶ 205–211. He is not named as a defendant in the negligent misrepresentation claim (because he made no representations to ELC). Compl. ¶¶ 218–224. Instead, the only claims against Mr. Enriquez are Count II for civil conspiracy to commit fraud, Count IV for unjust enrichment, and Count V for money had and received. Compl. ¶¶ 212–217,

225–234. Throughout ELC's 64-page Complaint with 234 paragraphs, Mr. Enriquez's name appears ***nine times*** inclusive of the case caption.

The allegations against Mr. Enriquez are reproduced below, many of which only include Mr. Enriquez' name for purposes of defining group defendants:

| Para. | Allegation |
|---|---|
| ¶21 | "**Defendant Edgar Enriquez** is the General Manager of Nakorn and listed as the contact on Nakorn's Tennessee Department of Health facility license." |
| ¶35 | "**Defendant Edgar Enriquez** is a Tennessee citizen residing in Brentwood, Tennessee. He is the General Manager of Nakorn, and in that capacity, signed inspection reports conducted by the Tennessee Department of Health Board of Pharmacy. He is also listed as a contact for Community Health and other entities that share DrugPlace's mailing address, and is affiliated with Leight, Singer, and Smith. In these roles, **Enriquez** supervised, participated in, conspired to participate in, and benefited from the fraudulent scheme described below." |
| ¶38 | "Defendants Leight, Singer, Smith, Jerry Maynard Sr., Jerry Maynard Jr., Misha Maynard, **Enriquez**, Mazei, and Giscombe are **referred to herein collectively** as the "DrugPlace Officers," and together with the DrugPlace Entities, as the "DrugPlace Conspiracy."" |
| ¶42 | "All Defendants, including Community Health, Tennessee residents Jerry Maynard Sr., Jerry Maynard Jr., Misha Maynard, and **Enriquez**, and Texas resident Giscombe, personally participate in and conspire in the fraudulent activities at issue in Florida and through businesses operating in Florida." |
| ¶179 | "The DrugPlace Officers—Leight, Singer, Smith, **Enriquez**, Jerry Maynard Sr., Jerry Maynard Jr., Misha Maynard, Mazei, and Giscombe—as the owners and officers of DrugPlace, Nakorn, and Community Health, direct and control the DrugPlace Entities, including devising, implementing, and enforcing policies and business practices that enable the other Defendants to carry out the fraud. The proceeds of Defendants' fraud flow to Leight, Singer, Smith, **Enriquez**, Jerry Maynard Sr., Jerry Maynard Jr., Misha Maynard, Mazei, Giscombe and others." |
| ¶215 | "Defendants' scheme depended upon the participation of all Defendants, including, among other things, (a) Community Health and individual Defendants Smith, Jerry Maynard Sr., Jerry Maynard Jr., and Misha Maynard willingly creating and perpetuating a sham health plan front to which fraudulent rebates could be attributed; (b) Nakorn, Brightline, and individual Defendants **Enriquez** and Giscombe knowingly diverting Lilly's medications that DrugPlace and Galaxy purported to dispense to patients to the secondary market for re-sale; and (c) DrugPlace, Galaxy, and individual Defendants Leight, Singer, and Mazei knowingly submitting or causing to be submitted, through intermediaries, and receiving payment in connection with, fraudulent rebate claims to Lilly for medications that were not actually dispensed to and utilized by DrugPlace or Galaxy to patients." |

4

As demonstrated above, the Complaint's individualized allegations about Mr. Enriquez are limited and insufficient. The Complaint merely alleges that Mr. Enriquez is a Tennessee citizen residing in Tennessee. Compl. ¶ 35. It alleges that Mr. Enriquez is the General Manager of Nakorn and, in that capacity, signed inspection reports conducted by the Tennessee Department of Health Board of Pharmacy. Compl. ¶ 35. It alleges that he is listed as a "contact" for Community Health and other entities that share DrugPlace's mailing address, and that he is "affiliated with" Paul Leight, Kevin Singer, and Readus Smith. Compl. ¶ 35. It then alleges, without supporting facts, that "[i]n these roles, Enriquez supervised, participated in, conspired to participate in, and benefited from the fraudulent scheme" and that he "personally participate[d] in and conspire[d] in the fraudulent activities at issue in Florida and through businesses operating in Florida. Compl. ¶¶ 35, 42. The Complaint also alleges the "DrugPlace Officers", inclusive of Mr. Enriquez – and without any facts supporting Mr. Enriquez's involvement – "direct and control the DrugPlace Entities, including devising, implementing, and enforcing policies and business practices that enable the other Defendants to carry out the fraud." Compl. ¶ 179.

The Complaint's jurisdictional allegations are similarly conclusory as to Mr. Enriquez. ELC alleges that the Court has personal jurisdiction over all Defendants because certain other individuals are Florida residents, certain entities allegedly are headquartered in Florida, and "All Defendants, including . . . Enriquez, . . . personally participate in and conspire in the fraudulent activities at issue in Florida and through businesses operating in Florida." Compl. ¶ 42. That paragraph identifies no act by Mr. Enriquez in Florida, no communication by him into Florida, no Florida recipient of any statement by him, and no Florida transaction involving him personally.

The Complaint's theory as to Nakorn is that DrugPlace allegedly transferred medications to Nakorn and that Nakorn allegedly resold products on the secondary market. Compl. ¶¶ 163–169, 176–177. But when the Complaint describes a specific alleged Trulicity transaction involving Nakorn, it does not allege that Mr. Enriquez participated in it, knew about it, approved it, signed any document related to it, or received any proceeds from it. Compl. ¶¶ 163–170. The Complaint instead attributes the conduct to DrugPlace and Nakorn as entities. Compl. ¶¶ 163–170.

The civil conspiracy count likewise relies on collective allegations. ELC alleges that "Defendants" agreed to defraud Lilly and that "Defendants" committed overt acts. Compl. ¶¶ 213–214. It then alleges that "Nakorn, Brightline, and individual Defendants Enriquez and Giscombe" knowingly diverted medications to the secondary market. Compl. ¶ 215. But it does not identify

5

any agreement Mr. Enriquez joined, when he supposedly joined it, where he joined it, with whom he communicated, what he said, what he did, what transaction he handled, what false statement he caused, or what benefit he received. Compl. ¶¶ 212–217. The conspiracy allegations are centered on *Nakorn's* activities, not Mr. Enriquez as an employee of Nakorn. *Id.* Neither does ELC allege Mr. Enriquez has a "personal stake" in the conspiracy. *Id.*

The unjust enrichment and money-had-and-received counts are even more generalized. They are asserted against "All Defendants" and allege that Defendants wrongfully obtained a monetary benefit and profits. Compl. ¶¶ 225–234. The Complaint does not allege that ELC paid any money to Mr. Enriquez, that any rebate payment was routed to him, that he received any identifiable funds, or that ELC conferred any direct benefit on Mr. Enriquez. Compl. ¶¶ 225–234. All of these are fatal pleading flaws that require dismissal of the claims against Mr. Enriquez.

## C.     MEMORANDUM OF LAW

### I. ELC Has Failed to Establish Personal Jurisdiction Over Mr. Enriquez.

"A plaintiff seeking to establish personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (cleaned up). "On a motion to dismiss for lack of personal jurisdiction, where the district court does not conduct an evidentiary hearing, 'the plaintiff must establish a prima facie case of personal jurisdiction over the nonresident defendant.'" *Headley*, 2025 WL 2623834, at * 1 (citing *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990)).

"When a defendant challenges personal jurisdiction by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Headley*, 2025 WL 2623834, at * 1. "If the defendant makes a sufficient showing of the inapplicability of the long-arm statute, the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof and not merely reiterate the factual allegations in the complaint." *Oviedo*, 2022 WL 1641865, at *3 (citation omitted). Applying these principles, the court must engage in a two-part analysis. First, "the court must determine whether the applicable state statute governing personal jurisdiction is satisfied." *Oviedo*, 2022 WL 1641865, at *4. Second, if "the requirements of the long-arm statute are satisfied, under either general jurisdiction or specific jurisdiction, then the court must also consider the federal Due Process Clause." *Id.*

6

A.      **ELC Fails to Allege Conduct Subject to Florida's Long-Arm Statute.**

ELC has failed to establish personal jurisdiction as to Mr. Enriquez under Florida's long-arm statute for several reasons. First, ELC fails to allege any individual conduct of Mr. Enriquez as opposed to Nakorn's conduct. Second, ELC has not alleged it sustained any injuries *within* Florida. Third, Mr. Enriquez's attached Declaration underscores the reason why ELC has not alleged any conduct by Mr. Enriquez in Florida: because there is none. Lastly, ELC's attempt to invoke personal jurisdiction based on conspiracy fails for the reasons discussed in Section C.I.A, below.

Florida's long-arm statute provides "nine statutorily enumerated categories" which "confers jurisdiction over a non-resident defendant if the claim asserted against the defendant arises from the defendant's forum-related contacts."[1] *Hard Candy, LLC v. Hard Candy Fitness, LLC*, 106 F. Supp. 3d 1231, 1239 (S.D. Fla. 2015). As relevant here, specific jurisdiction may exist if a "non-resident defendant commits a tortious act within Florida ***so long as the act causes injury within Florida***– even if the defendant committed the act outside the state." *Id.* (emphasis added); *see also* Fla. Stat. § 48.193(1)(a)(2).

*First*, ELC grounds its personal jurisdiction allegations against Mr. Enriquez based on the "tortious act" category of Florida's long-arm statute. Compl. ¶ 42 ("All Defendants, including Community Health, Tennessee residents Jerry Maynard Sr., Jerry Maynard Jr., Misha Maynard, and Enriquez, and Texas resident Giscombe, personally participate in and conspire in the fraudulent activities at issue in Florida and through business operating in Florida."). But ELC alleges no facts as to Mr. Enriquez's conduct in the Rebate Claim, much less conduct in, or directed at, Florida. The only specific conduct ELC alleges is between *Nakorn and other purported conspirators* – not actions by Mr. Enriquez individually. Compl. ¶ 163-170; *see also DeRossett v. Southeast Toyota Dist. Inc.*, No. 17-CV-60415, 2017 WL 7344406, at *3 (S.D. Fla. Aug. 18, 2017) ("**Unless the agents transact business on their own account and not on behalf of the corporation, the agents are not engaged in business so as to sustain an application of the long-statute to them as individuals.**") (citation omitted) (emphasis added).

---

[1] ELC does not allege general jurisdiction exists as to Mr. Enriquez. Federal courts "must adhere to the statutory constructions offered by the Florida Supreme Court and Florida's District Court of Appeals" when evaluating the reach of "Florida's long-arm statute". *Oviedo*, 2022 WL 1641865, at *4 (citing *Louis Vuitton*, 736 F.3d at 1352).

*Second*, ELC has not alleged any injury *in Florida* as a result of the Rebate Claim. *See Hard Candy, LLC*, 106 F. Supp. 3d at 1239. ELC alleges between "2020 and 2024, DrugPlace and the Galaxy Operation together caused [ELC] to pay **over $200 million** in rebates, corresponding to purported prescriptions for hundreds of thousands of boxes of Trulicity." Compl. ¶ 191 (emphasis in original). ELC's purported injury was not suffered in Florida but rather in Indiana – where ELC has alleged it is incorporated and principally operates. Compl. ¶ 12; *see also Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1219 (11th Cir. 1999) (affirming dismissal of claims based on lack of personal jurisdiction where plaintiff alleged injury to business incorporated in Bermuda with its principle place of business in Bermuda or Pennsylvania and where plaintiff did not allege injury to business interest in Florida); *Hinkle v. Continental Motors, Inc.*, 268 F. Supp. 3d 1312, 1322-1323 (M.D. Fla. 2017) ("It is a well-established principle that [under Section 48.193(1)(a), Florida Statute] the phrase 'arising from' **requires that the place of injury be within Florida**.") (emphasis added) (citation omitted); *DeRossett*, 2017 WL 7344406, at *3 n. 5 (noting the "committing tortious act" subsection did not apply because "Plaintiff was a resident of Georgia at all relevant times, and therefore, and injury to Plaintiff occurred in Georgia.").

*Third*, even though ELC has failed to carry its *prima facie* pleading burden on personal jurisdiction as to Mr. Enriquez, Mr. Enriquez nevertheless submits a Declaration detailing the fact that he has not lived in Florida during the relevant period, has not conducted any business on behalf of Nakorn or individually in Florida related to the Rebate Claim, and has only traveled to Florida approximately one time per year to visit his mother for her birthday. *See* **Exhibit 1** at ¶¶ 3-6; *see also Oviedo*, 2022 WL 1641865, at *3 ("If the defendant makes a sufficient showing of the inapplicability of the long-arm statute, the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint."). Mr. Enriquez's Declaration highlights precisely why ELC has not, and cannot, allege Mr. Enriquez's own conduct in the purported Rebate Claim directed at, or in, Florida. Accordingly, the claims against Mr. Enriquez should be dismissed with prejudice. *Id.* at *10.

*Fourth*, ELC's attempt to establish personal jurisdiction over Mr. Enriquez under a co-conspirator theory fails. *See Ibanera LLC*, 2026 WL 2089224, at *12 (citing *N. Am. Sugar Indus., Inc. v. Xinjiang Goldwind Sci. & Tech. Co.*, 124 F.4th 1322, 1339 (11th Cir. 2025) (holding that Florida's long-arm statute confers personal jurisdiction over nonresident alleged conspirators even

8

if none of them personally acted in Florida, so long as any co-conspirator committed an act in Florida in furtherance of the conspiracy)).

The Eleventh Circuit has noted that:

> At least one court in Florida has adopted the following five-part test governing personal jurisdiction over a non-resident conspirator: (1) the existence of an actionable conspiracy; (2) the defendant's membership in the conspiracy; (3) the occurrence of a substantial act or substantial effect in furtherance of the conspiracy in the forum state; (4) the defendant's actual or constructive knowledge of the act in the forum state or that the act outside the state would have an effect in the state; and (5) the conspiracy conduct's direct or foreseeable cause of the act or effect.

*Posner*, 178 F.3d at 1217. But in order to establish co-conspirator personal jurisdiction there must be "clear, positive, and specific allegations" of the non-resident defendant's "participation in the conspiracy." *Condor, S.A. v. Plurinational State of Bolivia*, 352 So. 3d 921, 927 (Fla. 3d DCA 2022) ("Because Bolivia's amended complaint failed to sufficiently allege Condor's participation in the conspiracy, the trial court erred in extending the long-arm statute to Condor under the co-conspirator theory.").

The Complaint does not satisfy any of these elements. The Complaint does not allege: (i) a specific agreement joined by Mr. Enriquez related to the Rebate Claim; (ii) any conduct by Mr. Enriquez directed at Florida regarding the Rebate Claim; (iii) any substantial act or effect in furtherance of the alleged conspiracy in Florida; (iv) any conduct by Mr. Enriquez that directly or foreseeably caused an act or effect in Florida; and (v) any actual or constructive knowledge by Mr. Enriquez of the Rebate Claim, let alone that it would have a foreseeable effect in Florida.[2] *See Oueiss v. Saud*, No. 1:20-cv-25022, 2022 WL 1311114, at *18 (S.D. Fla. Mar. 29, 2022) (granting motion to dismiss for lack of personal jurisdiction in civil conspiracy against non-resident defendant where there was no indication that defendant "was aware of any act in furtherance of the Conspiracy that took place or would take place in Florida."); *see also Rensin v. State*, 18 So. 3d 572 (Fla. Dist. Ct. App. 2009) (holding under the corporate shield doctrine that "acts of [a] corporate employee performed in [his] corporate capacity do not form the basis for jurisdiction over [the] corporate employee in his individual capacity.") (citation omitted).

---

[2] ELC implicitly admits it cannot allege adequate facts at the pleading stage to support its fraud claims against Defendants, let alone Mr. Enriquez. *See* [ECF No. 65 at 3] ("Defendants' contention that Lilly does not provide sufficient detail about the roles these individuals played in their scheme underscores the need for expedited discovery.").

Instead, it relies on the same formulaic assertion that Mr. Enriquez "supervised, participated in, conspired to participate in, and benefited from" the alleged scheme. Compl. ¶ 35. The Eleventh Circuit requires more than conclusory allegations that a defendant was part of a conspiracy. *See United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1281–82 (11th Cir. 2009) ("UTC has alleged nothing that clearly connected APM to a conspiracy made or carried out in Florida…any conspiracy-based exercise of personal jurisdiction must be founded on conduct committed in Florda by others that can be attributed to APM as a co-conspirator."); *see also Ibanera LLC*, 2026 WL 2089224, at *12 ("Whether the Court may exercise personal jurisdiction over Snorrason under a conspiracy theory turns largely on whether Plaintiff, in fact, states a claim for conspiracy under the TVPRA. She does not, as detailed below. Thus, the Court lacks personal jurisdiction over Snorrason under a conspiracy theory as well."); *Posner*, 178 F.3d at 1217 (dismissing claim based on personal jurisdiction because plaintiff failed to plead actionable conspiracy against non-resident conspirator).

**B.      The Exercise of Personal Jurisdiction over Mr. Enriquez Would Violate the Due Process Clause**

Because ELC has failed to establish jurisdiction under Florida's long-arm statute, the Court need not reach the due process inquiry. *See Oviedo*, 2022 WL 1641865, at *10; *Hinkle*, 268 F. Supp. 3d at 1327. But even if the Court were to find ELC has established jurisdiction under Florida's long-arm statute, the Court's exercise of personal jurisdiction would violate the 14th Amendment's Due Process Clause. In order to subject Mr. Enriquez to personal jurisdiction, this Court must find that Mr. Enriquez had sufficient "minimum contacts" in Florida and that exercising jurisdiction would not "offend traditional notions of fair play and substantial justice." *Posner*, 178 F.3d at 1220.

The minimum contacts analysis follows a three-part test: (i) the contacts must be related to plaintiff's cause of action; (ii) the contacts must involve some act by which the defendant purposefully avails himself to the privileges of conducting activities within the forum; and (iii) the defendant's contacts with the forum must be such that the defendant should reasonably anticipate being haled into court there. *Id.* The "fair play and substantial justice" prong considers: (i) the burden of the defendant defending suit in Florida; (ii) Florida's interest in adjudicating the suit; (iii) plaintiff's interest in obtaining effective relief; (iv) the interests of the interstate judicial system; and (v) the interests of the states in furthering shared substantive policies. *Id.* at 1221.

Exercising personal jurisdiction against Mr. Enriquez would run afoul of both the minimum contacts and fair play inquiry. First, ELC has not alleged any conduct by Mr. Enriquez in Florida. In fact, ELC has not alleged any conduct by Mr. Enriquez at all that can plausibly support ELC's claims. ELC's only factual allegation against Mr. Enriquez is that as Nakorn's general manager, he "signed inspection reports conducted by the Tennessee Department of Health Board of Pharmacy." Compl. ¶¶ 21, 35. ELC does not allege that signing "inspection reports" by Nakorn's Tennessee regulator was in any way a part of the Rebate Claim theory it advances. Likewise, ELC's allegation against Mr. Enriquez is strictly limited to *Tennessee*, not Florida. *Id.* Because Mr. Enriquez's alleged conduct was wholly disconnected from Florida, he could not "reasonably anticipate" being haled into a Florida court. *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 812 (11th Cir. 2010) (finding no "purposeful availment" even where plaintiff alleged negotiations took place "in part in Florida.").

For these same reasons, Florida has no interest in adjudicating this suit and there is no substantive Florida policy involved. Undoubtedly, ELC's claims are more appropriately connected to Tennessee, not Florida. Lastly, Mr. Enriquez is a Tennessee citizen, *see* Compl. ¶ 35, and defending this suit in Florida based on non-Florida conduct would be an undue burden that undermines "fair play and substantial justice." *See Estes v. Rodin*, 259 So. 3d 183, 198 (Fla. 3d DCA 2018) ("While Florida may have a strong interest in affording its residents a forum to obtain relief from intentional torts and it would be more convenient for Appellants to litigate in Florida, the burden on Appellees to litigate in Florida outweighs these factors.").

## II. ELC Fails to Plead a Conspiracy to Commit Fraud.

### A.    ELC fails to Meet its Pleading Standard under Rule 9(b) and 12(b)(6).

**Rule 9(b)** requires a plaintiff to plead the details of the allegedly fraudulent acts, including the precise statements, the time and place of the statements, the person responsible for them, the manner in which they misled the plaintiff, and what the defendants obtained as a consequence. *Brooks*, 116 F.3d at 1371. Rule 9(b) serves the important function of alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior. *Ziemba v. Cascade International, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001). Conclusory allegations of conspiracy to commit fraud do not satisfy Rule 9(b). *American United Life Ins. Co.*, 480 F. 3d at 1067.

11

**Rule 12(b)(6)** "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action, allegations must rise beyond a speculative level to state a claim to relief that is plausible on its face." *ECB USA, Inc. v. Savencia Cheese USA, LLC*, 148 F.4th 1332, 1347-48 (11th Cir. 2025) (citation omitted). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (cleaned up). Importantly, "courts may infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *American Dental Ass'n v. Cigna Corp*., 605 F.3d 1283, 1290 (11th Cir. 2010). Here, ELC's conspiracy to commit fraud claim fails both Rule 9(b) and Rule 12(b)(6).

        1.      ELC's Common Law Fraud Claim Fails

"Under Florida law, an actionable conspiracy requires an actionable underlying tort or wrong." *Posner*, 178 F.3d at 1217; *Ibanera LLC*, 2026 WL 2089224, at *12. Here, ELC's conspiracy claim against Mr. Enriquez is predicated on common law fraud. *See* Compl. ¶¶ 212-216. To state a claim for common law fraud under Florida law, a plaintiff must set forth the following: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Mirage Yacht, Inc. v. A 2013 Marquis Yachts Recreational Vessel*, No. 24-21095-CIV, 2025 WL 1047148, at *15 (S.D. Fla. Feb. 12, 2025).

As an initial matter, Mr. Enriquez joins and incorporates by reference DrugPlace's arguments as to why ELC's common law fraud claims fail.[3] Crucially, ELC has not alleged that it relied on *any defendant's* representation. Rather, ELC alleges some **unidentified representation** was made by **some unidentified Defendant** to an **unidentified "third-party aggregator"** who then made its own representation to an **unidentified "third-party PBM"** *who only then* made a representation to ELC. Compl. ¶ 216.[4] *See Feng v. Walsh*, No. 19-24138-CIV, 2021 WL 8055449, at *10 (S.D. Fla. Dec. 21, 2021) ("[F]irst-party reliance is an element of a common-law fraud claim."); *Sevi v. Israel Disc. Bank of New York*, No. 13-21922-CIV, 2014 WL 12861833, at *12 (S.D. Fla. Nov. 24, 2014) ("Plaintiff cites no authority for the proposition that a Florida common law fraud claim can rest on (1) a defendant's alleged misrepresentation to a third party and/or (2)

---

[3] ELC does not advance common law fraud claims against Mr. Enriquez individually.

[4] The issues surrounding ELC's group pleading is further discussed in Section IV below.

a third party's reliance on a defendant's alleged misrepresentation. Accordingly, Count V is dismissed with prejudice.").

Likewise, ELC's common law fraud allegations fail to satisfy the Rule 9(b) pleading standard because they do not delineate which of the Defendants, if any, actually made any representations to the "third-party aggregators" and "third-party PBMs". *See Keegan v. Minahan*, No. 23-60501-Civ, 2023 WL 3884962, at *4 (S.D. Fla. June 7, 2023) (dismissing the plaintiff's common law fraud claim because plaintiff "vaguely attribute[d] the alleged fraudulent statements and omissions to all three of the defendants simultaneously"); *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1322 (S.D. Fla. 2017) (dismissing a common law fraud claim against the individual defendants because there were no allegations that they "involved themselves in the scheme in any way other than through their ownership interests in the entity defendants").

### 1. ELC's Conspiracy to Commit Common Law Fraud Claim Fails

Not only does ELC fail to allege the underlying common law fraud claim, ELC also fails to allege the fraudulent conspiracy under Rules 9(b) and 12(b)(6). *See American United Life Ins. Co.*, 480 F. 3d at 1067 ("where a conspiracy claim alleges that two or more parties agreed to commit fraud, the plaintiffs must plead this act with specificity.").

"Under Florida law, the elements of a civil conspiracy claim are: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Feng*, 2021 WL 8055449, at *11 (citation omitted). Under Florida law, a conspiracy requires "a meeting of two independent minds intent on one purpose." *Weisman v. Southern Wine & Spirits of America, Inc.*, 297 So.3d 646, 652 (Fla. 4th DCA 2020).

"**Moreover, mere evidence of knowledge of the crime or association with conspirators is insufficient.**" *Feng*, 2021 WL 8055449, at * 11 (citation omitted) (emphasis added). "**The Conspirator need only know of the scheme and assist in it in some way to be held responsible for all of the acts of his coconspirators. However, allegations that the co-conspirators were engaged in the same 'scheme,' alone, are insufficient to state a claim for civil conspiracy**." *See Apex Toxicology, LLC v. United HealthCare Svcs., Inc.*, No. 17-61840-CIV, 2020 WL 13551299, at *2 (S.D. Fla. July 7, 2020) (emphasis added) (citation omitted).

13

The Eleventh Circuit's decision in *ECB USA, Inc. v. Savencia Cheese USA, LLC* is on all fours here. 148 F.4th 1332, 1347-48 (11th Cir. 2025). In *ECB USA, Inc.*, Appellant ECB USA alleged Appellee Savencia Cheese participated in a fraud conspiracy. 148 F.4th at 1347. ECB USA's conspiracy allegations against Savencia Cheese consisted of:

- "each of the [sellers] and Savencia Cheese acted in *furtherance of* the conspiracy;

- "[t]he [sellers'] Conspiracy also required the participation of Savencia Cheese to undermine valuable rights to discounts provided to [the buyers] in the Stock Purchase Agreement";

- and "[i]n the months before June 30, 2014, the [sellers] and their co-conspirators *agreed* to implement the [sellers'] Conspiracy."

*Id.* The Eleventh Circuit held these allegations were merely recitations of Florida's conspiracy elements and that the allegations contained no facts evidencing how Savencia Cheese participated. *Id.* As in *ECB USA, Inc.*, ELC here merely recites the elements of conspiracy as to Mr. Enriquez without any facts evidencing how Mr. Enriquez individually participated or agreed to participate in the Rebate Claim.  *See* Compl. ¶ 35 ("Enriquez supervised, participated in, conspired to participate in, and benefited from the fraudulent scheme described below."); Compl. ¶ 42 ("Enriquez…personally participate in and conspire in the fraudulent activities at issue in Florida and through businesses operating in Florida."); Compl. ¶ 179 ("Enriquez, Jerry Maynard Sr., Jerry Maynard Jr., Misha Maynard, Mazei, and Giscombe—as the owners and officers of DrugPlace, Nakorn, and Community Health, direct and control the DrugPlace Entities, including devising, implementing, and enforcing policies and business practices that enable the other Defendants to carry out the fraud."); Compl. ¶ 215 ("Nakorn, Brightline, and individual Defendants Enriquez and Giscombe knowingly diverting Lilly's medications that DrugPlace and Galaxy purported to dispense to patients to the secondary market for re-sale.").

As in *ECB USA, Inc.*, ELC's conspiracy claim against Mr. Enriquez must be dismissed based on these conclusory and formulaic allegations devoid of any factual support detailing *how* Mr. Enriquez knew of, and individually assisted in, the Rebate Claim. *ECB USA, Inc.*, 148 F.4th at 1347; *Apex Toxicology, LLC*, 2020 WL 13551299, at *5 ("United's use of the word 'conspired' alone does not satisfy the specificity requirement of Rule 9(b).").

To be sure, the only *factual conduct* ELC alleges on the part of Mr. Enriquez is that he was "listed as a contact for Community Health and other entities" and that as Nakorn's general

14

manager, he "signed inspection reports conducted by the Tennessee Department of Health Board of Pharmacy." Compl. ¶¶ 21, 35. Both of these allegations fail to raise a plausible inference that Mr. Enriquez knew of or assisted in the alleged conspiracy. First, mere association with defendants involved in a conspiracy is insufficient to meet the heightened pleading standard under Rule 9(b). *Feng*, 2021 WL 8055449, at * 11 ("**Moreover, mere evidence of knowledge of the crime or association with conspirators is insufficient.**") (emphasis added).

Second, the obvious alternative explanation for Mr. Enriquez signing inspection reports on behalf of Nakorn militates against an inference that Mr. Enriquez participated in a conspiracy. *See American Dental Ass'n*, 605 F.3d at 1290. Namely, Tennessee law required *Nakorn* to undergo such inspection under its regulatory framework for pharmaceutical wholesalers – wholesalers that ELC itself alleges it lawfully uses "throughout the country" to distribute its products. Compl. ¶ 97 ("Lilly sells its medicines to a limited number of wholesalers, who distribute a variety of pharmaceuticals sources from multiple manufacturers to pharmacies throughout the country."); *see also* Tenn. Comp. R. & Regs. 1140-01-.08 ("No pharmacy practice site, manufacturer, outsourcing facility, oxygen supplier or wholesaler/distributor may open within the state of Tennessee until a license has been obtained; and such license will not be issued until an inspection by an authorized representative of the board has been made.").

The obvious alternative explanation of lawful business activity is even more compelling here where ELC fails to explain how Mr. Enriquez's alleged conduct of signing required inspection reports under Tennessee law contributed to or is in any way connected to the Rebate Claim conspiracy. Accordingly, ELC's conspiracy claim against Mr. Enriquez must be dismissed. *American Dental Ass'n*, 605 F.3d at 1290 ("The alternative inferences that could be drawn from the facts—namely, that the arrests were likely lawful and justified by a nondiscriminatory intent to detain aliens who were illegally present in the United States and who had potential connections to those who committed terrorist acts—were at least equally compelling. Accordingly, the Court ruled that Iqbal's complaint must be dismissed.").

## B.     The Intracorporate Conspiracy Doctrine Bars ELC's Claim.

"The intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy." *Denney*, 247 F.3d at 1190 (citation omitted); *see also Weisman*, 297 So. 3d at 652 ("Where corporate agents are acting within the scope of their employment, their actions are

15

attributed to the corporation itself…") (citation omitted). The intracorporate conspiracy doctrine extends to parent companies and their subsidiaries and affiliates. *See Apex Toxicology, LLC*, 2020 WL 13551299, at *8 ("to the extent United's civil conspiracy claim is based on Apex and its owners and affiliates' scheme to defraud commercial insurers, the claim fails by application of the intracorporate conspiracy doctrine and must be dismissed.").

Here, ELC alleges no factual conduct as to Mr. Enriquez that is outside of his scope of employment. Rather, ELC alleges that Mr. Enriquez, as *Nakorn*'s general manager, "signed inspection reports conducted by the Tennessee Department of Health Board of Pharmacy." Compl. ¶¶ 21, 35. ELC's allegation regarding Mr. Enriquez's conduct as Nakorn's employee is insufficient and requires dismissal with prejudice. *See Graham v. Cypress Capital Group Inc.*, No. 10-81269-CIV, 2011 WL 13227744, at *6 (S.D. Fla. July 12, 2011) ("the conspiracy claim is subject to dismissal with prejudice as against the individual Defendants Hoyt and O'Brien since as agents and officers of CCG and the Trust Company they cannot conspire with CCG and the Trust Company in the absence of allegations of a personal stake in the activities that are separate and distinct from the corporation's interest. As such, Hoyt and O'Brien are dismissed with prejudice from this count."). To be sure, the only factual conduct ELC alleges is between *Nakorn and other purported conspirators* – not Mr. Enriquez. Compl. ¶ 163-170; *See Denney*, 247 F. 3d at 1190 ("under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves.") (citation omitted).

The allegation that *Nakorn* purportedly conspired with other named defendants does not save ELC's conspiracy claim against Mr. Enriquez because ELC alleges these other named defendants were "agents" and/or "affiliates" of the "DrugPlace Entities." Compl. ¶ 42 (alleging conduct was "on behalf of and as agents of the DrugPlace Entities (DrugPlace, Community Health, Nakorn, Galaxy, and Brightline)."); Compl. ¶ 172 ("The DrugPlace Entities act together under common ownership and officers…"); Compl. ¶ 64 ("DrugPlace and its affiliates and business partners have, over the course of years, knowingly caused submission of hundreds of thousands of fraudulent rebate claims…"); Compl. ¶ 150 ("Further investigation confirmed that Galaxy is affiliated with DrugPlace and its owners and principals."); Compl. ¶ 152 ("Like DrugPlace, Galaxy is closely affiliated with…Defendant Brightline."); Compl. ¶ 179 ("The DrugPlace Officers— Leight, Singer, Smith, Enriquez, Jerry Maynard Sr., Jerry Maynard Jr., Misha Maynard, Mazei,

16

and Giscombe—as the owners and officers of DrugPlace, Nakorn, and Community Health, direct and control the DrugPlace Entities…").

Because ELC alleges the "DrugPlace Entities" were affiliates and agents of each other in various capacities, including Mr. Enriquez's role as general manager of Nakorn, the conspiracy claim against Mr. Enriquez individually must be dismissed with prejudice. *See Graham*, 2011 WL 13227744, at *6; *see also Apex Toxicology, LLC*, 2020 WL 13551299, at *8.

## III. <u>ELC's Remaining Claims Must Also be Dismissed.</u>

### A. **ELC Has Not Alleged Direct Benefit or an Inadequate Remedy at Law to Support its Unjust Enrichment and Money-Had-And-Received Claims.**

ELC's Counts IV and V for unjust enrichment and money-had-and-received also require dismissal. As an initial matter, Florida law views unjust enrichment and money-had-and-received claims as the same theory of recovery with the same elements. *See Kelly v. Palmer, Reifler, & Assoc., P.A.*, 681 F. Supp. 2d 1356, 1384 (S.D. Fla. 2010) (J. Moreno) (holding under Florida law that unjust enrichment and money had and received claims require the same elements).[5] Because the money-had-and-received claim is duplicative of unjust enrichment, it should be dismissed with prejudice. *See Virgilio v. Ryland Group, Inc*., No. 608-CV-815, 2009 WL 320857, at * (M.D. Fla. Feb. 9, 2009) (dismissing with prejudice money-had-and-received claim based on redundant unjust enrichment claim).

To state a claim for unjust enrichment under Florida law, a plaintiff must allege that it: (i) conferred a benefit on the defendant, who has knowledge thereof; (ii) the defendant voluntarily accepts and retains the conferred benefit; and (iii) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff. *See Extraordinary Title Services, LLC v. Florida Power & Light Co.*, 1 So. 3d 400, 404 (Fla. 3d DCA 2009) (affirming dismissal of unjust enrichment claim against parent company where plaintiff only paid, and only received benefits from, affiliate company and thus had not conferred a direct benefit to parent company).

---

[5] When unjust enrichment claims arise out of alleged fraudulent conduct, the unjust enrichment claim is subject to Rule 9(b)'s heightened pleading standard. *See See Steel Media Grp. v. Lewis*, No. 22-cv-21780, 2023 WL 1413043, at *9 (S.D. Fla. Jan. 6, 2023), *R. & R. adopted*, No. 22-cv-21780, 2023 WL 1332832 (S.D. Fla. Jan. 31, 2023) ("the unjust enrichment claim arises out of Defendants' alleged fraudulent conduct and is, therefore, subject to Rule 9(b)'s heightened pleading requirement."). Count IV-V independently fail for the reasons in Section II.A., above.

17

It is also "well settled in Florida that unjust enrichment is an equitable remedy and is, therefore, not available where there is an adequate legal remedy. Thus, to properly state a claim for unjust enrichment, a party must allege that no adequate legal remedy exists." *Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1236-37 (S.D. Fla. 2007) (citation omitted).

First, ELC fails to plead it lacks an adequate legal remedy—which is required to state an equitable unjust enrichment claim. *See Steel Media Grp. v. Lewis*, No. 22-cv-21780, 2023 WL 1413043, at *9–11 (S.D. Fla. Jan. 6, 2023), *R. & R. adopted*, No. 22-cv-21780, 2023 WL 1332832 (S.D. Fla. Jan. 31, 2023). Here, ELC alleges that its harm is "ongoing, practically impossible to stop without a court-ordered injunction, and impossible to adequately remedy by money damages." Compl ¶ 196. However, ELC also alleges that Nakorn and other Defendants are no longer in business. Compl. ¶ 21 ("Like DrugPlace, Nakorn submitted a request to close its facility with the Tennessee Department of Health and to surrender its wholesaler license with the Kentucky Board of Pharmacy in January 2026."). And ELC's unjust enrichment claim seeks "disgorgement and restitution in the amount by which Defendants were unjustly enriched…". Compl. ¶ 230. ELC pleads two other legal remedies in Counts I and III – seeking the same money damages as in Counts IV and V – but fails to plead that those remedies are inadequate. *Steel Media Grp.*, 2023 WL 1413043, at *10 ("Plaintiff fails to allege, either in connection with its unjust enrichment claim or anywhere in the Complaint, that no adequate remedy at law is available."). As such, dismissal of Counts IV and V is warranted. *Id.* at 10–11; *Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1356–57 (S.D. Fla. 2012) (dismissing unjust enrichment claim pled in the alternative because plaintiff sought "recovery for the exact same wrongful conduct as in her FDUTPA claim.").

Counts IV and V also require dismissal with prejudice because ELC has failed to allege that it rendered a direct benefit to Mr. Enriquez. *See Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1102 (11th Cir. 2021) ("Marrache failed to allege that he and the other class members conferred a direct benefit to Bacardi…At most, Marrache has alleged that he and the other class members conferred an indirect benefit to Bacardi [through purchases from Winn-Dixie] and, as such, cannot satisfy the first element of an unjust enrichment claim against Bacardi.").

As in *Marrache*, ELC alleges it paid rebates to third-party PBMs based on rebate claims submitted through intermediary third-party rebate aggregators. Compl. ¶¶ 56–63, 100–104, 193–194. ELC does not allege that it paid Mr. Enriquez – or even Nakorn for that matter – anything directly. ELC does not even allege that any third-party paid Mr. Enriquez or Nakorn. In short, ELC

18

does not identify any specific benefit conferred on Mr. Enriquez by ELC directly. The conclusory assertion that proceeds of the alleged fraud "flowed" to all of the Defendants, including Mr. Enriquez, through a series of third-parties and intermediaries does not satisfy Rule 9(b)'s pleading requirement. Compl. ¶ 179; *see also Marrache*, 17 F.4th at 1102; *GVB MD v. Aetna Health Inc.*, No. 19-22357-CIV, 2019 WL 6130825, at *6 (S.D. Fla. Nov. 19, 2019) (J. Moreno) ("Importantly, the Florida Supreme Court has ruled the plaintiff must directly confer the benefit to the defendant.") (citation omitted); *Steel Media Grp.*, 2023 WL 1413043, at *9 ("the unjust enrichment claim arises out of Defendants' alleged fraudulent conduct and is, therefore, subject to Rule 9(b)'s heightened pleading requirement."). Because ELC has not alleged Mr. Enriquez's knowledge[6] of any conferred *direct* benefit and has not alleged an inadequate remedy at law (as demonstrated by its alternative claims), ELC's unjust enrichment and money-had-and-received claims must be dismissed with prejudice.

## IV.  **ELC's Complaint is a Shotgun Pleading Subject to Dismissal.**

Finally, ELC's Complaint must be dismissed because it is a quintessential "shotgun pleading" that violates two of the four categories of pleadings condemned by the Eleventh Circuit. *See Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015). First, ELC's Complaint contains "multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.*; *see also* Compl. at Counts I-V (incorporating each preceding count's paragraphs into successive counts).

Second, ELC asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions" (referred to herein as the "Group Pleading"). *Weiland*, 792 F.3d at 1323. The Group Pleading issue is part and parcel of ELC's failure to meet Rule 9(b)'s heightened pleading standard discussed in Section II.A, above. *See Brooks*, 116 F.3d at 1381 ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'") (citation omitted); *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008) ("[G]eneralized allegations 'lumping' multiple defendants together are insufficient."); *Apex Toxicology, LLC*, 2020

---

[6] ELC's fails to allege any facts pertaining to Mr. Enriquez's knowledge of the Rebate Claim. *See* Section II.A, above; *see also Extraordinary Title Services, LLC*, 1 So. 3d at 404 (describing knowledge of conferred benefit as element of unjust enrichment claim).

19

WL 13551299, at *3-4 ("in a case involving multiple defendants the complaint must not lump together all the defendants because the complaint should inform each defendant of the nature of his alleged participation in the fraud.").

ELC's 64-page Complaint repeatedly lumps all fifteen, geographically dispersed defendants together without distinguishing their alleged conduct over an alleged multi-year conspiracy. *See* Compl. ¶¶ 2–10, 64, 94, 154, 160, 162, 171–72, 178–80, 190–97, 201–204; *Magluta*, 256 F.3d at 1284 ("The complaint is replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged, through geographical and temporal realities…).

ELC repeatedly relies on collective labels—"Defendants," "DrugPlace Entities," "DrugPlace Officers," "DrugPlace Conspiracy," and "Fraud Defendants"—instead of pleading each individual defendant's alleged role or conduct. *See, e.g.*, Compl. ¶¶ 2–10, 42, 64, 154, 160, 162, 178–80, 190-197, 201-204, 206–11, 213–17, 219–24, 226–30, 232–34. Worse, those labels are internally inconsistent: the Complaint defines DrugPlace, Community Health, Nakorn, Galaxy, and Brightline as the "DrugPlace Entities," Leight, Singer, Smith, Bishop Maynard Sr., Maynard II, Misha Maynard, Mr. Enriquez, Mazei and Giscombe as the "DrugPlace Officers," and both groups as the "DrugPlace Conspiracy," *see id.* ¶¶ 26, 38, but then abandons those labels in the claims against Mr. Enriquez. Compl. ¶¶ 212-217 (conspiracy claim against "All Defendants"); Compl ¶¶ 225-230 (unjust enrichment claim against "All Defendants"); Compl ¶¶ 231-234 (money-had-and-received against "All Defendants").

ELC's Group Pleading is purposefully designed to obfuscate Mr. Enriquez's individual conduct precisely because ELC lacks any factual support for its claims against him. This Court should reject ELC's attempt to circumvent its pleading requirement under clearly condemned pleading practices in this Circuit and dismiss ELC's Complaint. *See Weiland*, 792 F.3d at 1323.

### D.     CONCLUSION

ELC has failed to establish this Court's jurisdiction over Mr. Enriquez. ELC has also failed to plead common law fraud and conspiracy under Rules 12(b)(6) and 9(b)'s heightened pleading standard. The Complaint is also an impermissible shotgun pleading and is barred by the intracorporate conspiracy doctrine. ELC has not alleged a direct benefit or inadequate remedy at law for its equitable claims. Accordingly, the Court should dismiss ELC's claims against Mr. Enriquez with prejudice.

Dated: August 7, 2026.                      Respectfully submitted,


By: /s/ *Henry A. Moreno*
Jessica R. Sievert (Fla. Bar No. 55839)
Jessica.Sievert@hklaw.com
Holland & Knight LLP
50 North Laura Street, Suite 3900
Jacksonville, FL 32202
Telephone: 904-353-2000

Henry A. Moreno (Fla. Bar No. 1031432)
Henry.Moreno@hklaw.com
Holland & Knight LLP
777 South Flagler Drive
Suite 1900—West Tower
West Palm Beach, FL 33401
Telephone: 561-650-8332

*Attorneys for Defendant Edgar Enriquez*

21