## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

ELI LILLY AND COMPANY,

    Plaintiff,

v.

DRUGPLACE, INC. (FL); DRUGPLACE, INC.
(TN); COMMUNITY HEALTH INITIATIVE,
INC.; NAKORN WHOLESALERS, LLC;
GALAXY MED, LLC D/B/A GALAXY
PHARMACY; BRIGHTLINE WHOLESALE
LLC; PAUL LEIGHT; KEVIN SINGER;
READUS SMITH; JERRY MAYNARD SR.;
JERRY MAYNARD JR.; MISHA MAYNARD;
EDGAR ENRIQUEZ; LANE MAZEI; and
DANIELLE GISCOMBE,

    Defendants.

Case No. 1:26-CV-23516-FAM

**DEFENDANTS DRUGPLACE, INC. (FL), DRUGPLACE, INC. (TN), COMMUNITY
HEALTH INITIATIVE, INC., NAKORN WHOLESALERS, LLC, KEVIN SINGER, AND
PAUL LEIGHT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................ 1

II. ALLEGED FACTUAL BACKGROUND ........................................................... 3

III. LEGAL STANDARDS ...................................................................................... 4

    **A.** Rule 12(b)(6)............................................................................................ 4

    **B.** Rules 8 and 10......................................................................................... 5

    **C.** Rule 9(b) ................................................................................................. 5

    **D.** Rule 12(b)(7) and Rule 19 ...................................................................... 5

IV. ARGUMENT...................................................................................................... 6

    **A.** The Complaint is an Impermissible Shotgun Pleading............................. 6

        1. The Complaint Improperly Incorporates All Preceding Allegations .......... 7

        2. The Complaint Engages in Group Pleading................................................. 7

    **B.** Lilly Fails to Plead Common Law Fraud (Count I) and Negligent
    Misrepresentation (Count III) Against the Rebate Defendants............................. 9

        1. Lilly's Fraud and Negligent Misrepresentation Claims Fail
        Because They Do Not Sufficiently Plead Reliance under Rule
        12(b)(6) ........................................................................................................ 9

        2. Lilly's Claims for Common Law Fraud and Negligent
        Misrepresentation Also Fail to Satisfy Rules 9(b) and 12(b)(6)............... 11

    **C.** Lilly Fails to Plead Civil Conspiracy Against Movants (Count II) ..................... 13

        1. The Intracorporate Conspiracy Doctrine Bars the Civil Conspiracy
        Claim............................................................................................................ 13

        2. Lilly Fails to Plead Any Factual Allegations of an Agreement ................ 15

        3. Lilly Fails to Allege that Defendants Leight, Singer, Nakorn, or
        Community Health Knowingly Joined or Assisted the Purported
        Conspiracy ................................................................................................... 17

    **D.** Lilly Fails to Plead Unjust Enrichment and Money Had and Received
    (Counts IV and V)............................................................................................... 18

        1. Lilly Pleads No Direct Benefit to Movants............................................... 18

        2. Rule 9(b) Independently Requires Dismissal Because Counts IV
        and V Sound in Fraud ................................................................................ 20

**E.**     Lilly's Claims for Unjust Enrichment and Money Had and Received Should Also Be Dismissed Under Rule 12(b)(7) Because the Rebate Aggregator and the PBMs Are Required Parties (Counts IV and V) ................... 21

V.     REQUEST FOR HEARING.......................................................................................... 22

VI.    CONCLUSION............................................................................................................. 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ADT LLC v. Skyline Sec. Mgmt., Inc.*,
  No. 24-CV-20758, 2026 WL 575122 (S.D. Fla. Mar. 2, 2026)..............................................20

*Alhassid v. Bank of Am., N.A.*,
  60 F. Supp. 3d 1302 (S.D. Fla. 2014) .................................................................................16

*Am. Dental Ass'n v. Cigna Corp.*,
  605 F.3d 1283 (11th Cir. 2010) ...........................................................................................5

*Am. United Life Ins. Co. v. Martinez*,
  480 F.3d 1043 (11th Cir. 2007) ....................................................................................15, 16

*Ambrosia Coal & Constr. Co. v. Pages Morales*,
  482 F.3d 1309 (11th Cir. 2007) ...........................................................................................5

*Apex Toxicology, LLC v. United HealthCare Services*
  No. 17-61840-CIV, 2020 WL 13551299 (S.D. Fla. July 7, 2020) ....................7, 8, 13, 14, 15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................................................4

*Banc of Am. Sec. LLC v. Stott*,
  No. 04-81086-CIV, 2005 WL 8156027 (S.D. Fla. Aug. 30, 2005) ........................................13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................................4, 5

*Biscayne Park, LLC v. Madison Realty Cap., L.P.*,
  No. 13-20336-CIV, 2013 WL 2243975 (S.D. Fla. May 21, 2013).........................................22

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
  116 F.3d 1364 (11th Cir. 1997) ...........................................................................................13

*Campos v. I.N.S.*,
  32 F. Supp. 2d 1337 (S.D. Fla. 1998) ...................................................................................4

*CFLB P'ship, LLC v. Diamond Blue Int'l, Inc.*,
  352 So. 3d 357 (Fla. Dist. Ct. App. 2022) .............................................................................20

*City of Miami v. Eli Lilly & Co.*,
  No. 21-22636-CIV, 2022 WL 198028 (S.D. Fla. Jan. 21, 2022)......................................18, 19

*Eagletech Communications, Inc. v. Bryn Mawr Investment Group, Inc.*,
    79 So. 3d 855 (Fla. 4th DCA 2012) ................................................................................17

*ECB USA, Inc. v. Savencia Cheese USA, LLC*,
    148 F.4th 1332 (11th Cir. 2025) ................................................................................13, 16, 17

*Feng v. Walsh*,
    No. 19-24138-CIV, 2021 WL 8055449 (S.D. Fla. Dec. 21, 2021)............................................9

*Fireman v. Travelers Cas. & Sur. Co. of Am.*,
    No. 10-81564-CIV, 2011 WL 743069 (S.D. Fla. Feb. 24, 2011) ............................................22

*Fla. Wildlife Fed'n Inc. v. U.S. Army Corps of Eng'rs*,
    859 F.3d 1306 (11th Cir. 2017) ................................................................................6

*Focus on the Fam. v. Pinellas Suncoast Transit Auth.*,
    344 F.3d 1263 (11th Cir. 2003) ................................................................................6

*Frayman v. Douglas Elliman Realty, LLC*,
    515 F. Supp. 3d 1262 (S.D. Fla. 2021) ................................................................................18

*Graham v. Cypress Cap. Grp., Inc.*,
    No. 10-81269-CIV, 2011 WL 13227744 (S.D. Fla. July 12, 2011) ...................................14, 15

*GVB MD v. Aetna Health Inc.*,
    No. 19-22357-CIV, 2019 WL 6130825 (S.D. Fla. Nov. 19, 2019) ...................................18, 19

*Herbst v. Am. Orthodontics Corp.*,
    No. 23-61262-CV, 2023 WL 7108633 (S.D. Fla. Oct. 10, 2023)........................................6, 7

*Honig v. Kornfeld*,
    339 F. Supp. 3d 1323 (S.D. Fla. 2018) ...........................................................................13, 16

*Johnson v. Catamaran Health Sols., LLC*
    687 F. App'x 825, 830 (11th Cir. 2017) ................................................................................20

*Keegan v. Minahan*,
    No. 23-60501-CIV, 2023 WL 3884962 (S.D. Fla. June 7, 2023)............................................12

*Keith v. DeKalb Cnty.*,
    749 F.3d 1034 (11th Cir. 2014) ................................................................................7

*Lamm v. State St. Bank & Tr.*,
    749 F.3d 938 (11th Cir. 2014) ................................................................................5

*In re Lichtman*,
    388 B.R. 396 (Bankr. M.D. Fla. 2008) ................................................................................9

*Magluta v. Samples*,
256 F.3d 1282 (11th Cir. 2001) ..................................................................6, 7, 8

*Magnum Constr. Mgmt., LLC v. WSP USA Solutions, Inc.*,
522 F. Supp. 3d 1202 (S.D. Fla. 2021) ..............................................................7, 8

*Mancinelli v. Davis*,
217 So. 3d 1034 (Fla. Dist. Ct. App. 2017) ....................................................14, 15

*McElrath v. ABN AMRO Mortg. Grp., Inc.*,
No. 11-62216-CIV, 2012 WL 463893 (S.D. Fla. Feb. 13, 2012) ............................17

*Microsoft Corp. v. Big Boy Distrib. LLC*,
589 F. Supp. 2d 1308 (S.D. Fla. 2008) ..............................................................14

*Mirage Yacht, Inc. v. A 2013 Marquis Yachts Recreational Vessel*,
No. 24-21095-CIV, 2025 WL 1047148 (S.D. Fla. Feb. 12, 2025) ............................9

*Omnipol, A.S. v. Multinational Def. Servs., LLC*,
32 F.4th 1298 (11th Cir. 2022) ..............................................................5, 20, 21

*Paylor v. Hartford Fire Ins. Co.*,
748 F.3d 1117 (11th Cir. 2014) ..............................................................6, 7

*Pop v. LuliFama.com LLC*,
145 F.4th 1285 (11th Cir. 2025) ..............................................................5, 11, 21

*Principal Life Ins. Co. v. Mosberg*,
No. 09-22341-CIV, 2010 WL 473042 (S.D. Fla. Feb. 5, 2010) ............................17

*Sevi v. Israel Disc. Bank of N.Y.*,
No. 13-21922-CIV, 2014 WL 12861833 (S.D. Fla. Nov. 24, 2014) ........................9

*State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*,
278 F. Supp. 3d 1307 (S.D. Fla. 2017) ..............................................................12

*Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC*,
904 F.3d 1197 (11th Cir. 2018) ..............................................................14, 15

*Tick v. Cohen*,
787 F.2d 1490 (11th Cir. 1986) ..............................................................22

*Tippens v. Round Island Plantation, LLC*,
No. 09-CV-14036, 2009 WL 2365347 (S.D. Fla. July 31, 2009)........................17, 18

*Town of Indian River Shores v. City of Vero Beach*,
622 F. Supp. 3d 1265 (S.D. Fla. 2022) ..............................................................6

*Ultimate Motors, Inc. v. Lionheart Motorcars, LLC*,
   No. 19-60917-CIV, 2019 WL 9786489 (S.D. Fla. July 23, 2019) ..........................................18

*Veltmann v. Walpole Pharmacy, Inc.*,
   928 F. Supp. 1161 (M.D. Fla. 1996) .......................................................................................5

*Vibe Micro, Inc. v. Shabanets*,
   878 F.3d 1291 (11th Cir. 2018) ...........................................................................................6, 7

*Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*,
   746 F.3d 1008 (11th Cir. 2014) ..............................................................................................6

**Other Authorities**

Fed. R. Civ. P. 8...............................................................................................5, 6, 7, 8, 23

Fed. R. Civ. P. 9 ...................................................1, 2, 5, 7, 8, 9, 11, 12, 13, 15, 16, 19, 20, 21, 23

Fed. R. Civ. P. 10............................................................................................................5

Fed. R. Civ. P. 12 ......................................................................2, 4, 5, 7, 8, 9, 11, 13, 21, 22, 23

Fed. R. Civ. P. 19 .............................................................................................2, 5, 6, 21, 22, 23

Defendants DrugPlace, Inc. (FL), DrugPlace, Inc. (TN) (together with DrugPlace, Inc. (FL), "DrugPlace"), Community Health Initiative, Inc. ("Community Health"), Kevin Singer ("Singer"), Paul Leight ("Leight") (DrugPlace, Community Health, and Individual Defendants are collectively referred to as "Rebate Defendants"), and Nakorn Wholesalers LLC ("Nakorn," and together with "Rebate Defendants," "Movants") respectfully move to dismiss Plaintiff Eli Lilly and Company's ("Lilly" or "Plaintiff") Complaint (the "Complaint") under Federal Rules of Civil Procedure ("Rules") 8, 9(b), 10, 12(b)(6), 12(b)(7), and 19.

## I.      <u>INTRODUCTION</u>

Lilly's Complaint is misdirected and fundamentally flawed.  Lilly seeks to recover rebate payments that it made to two unnamed pharmacy benefit managers ("PBMs"), which Movants suspect are Emisar Pharma Services, LLC ("Emisar") and Optum Rx ("Optum"),[1] in reliance on submissions made by those PBMs after their review and validation of the rebate claims. But Lilly did not sue either PBM. Nor did it sue Health Delegates, LLC ("Health Delegates"), the rebate aggregator that submitted the claims to the PBMs, which the PBMs then reviewed and submitted to Lilly. Instead, Lilly concealed the PBMs' identities throughout the Complaint, likely given its ongoing business and contractual relationship with them, and brought this action only against entities and individuals several steps removed from Lilly's alleged payment decisions. That pleading choice is fatal. Lilly cannot simply plead around the parties that directly received its payments, controlled the rebate-submission process, and owed Lilly contractual duties to review and validate each claim as eligible for rebate before submission. Lilly tries to pretend these parties did not exist so that it can ask this Court to impose fraud liability on downstream parties.

But Lilly's claims against the downstream parties—namely Movants along with the other defendants (collectively, "Defendants")—necessarily fail because Lilly cannot successfully allege that it relied on representations that Defendants made where Lilly never received any representations from Defendants. Lilly alleges the Rebate Defendants submitted data for rebate claims to Health Delegates; Health Delegates then submitted claims to the PBMs under contracts

---

[1] Lilly intentionally avoids naming the PBMs involved in the rebate submissions process at issue in this case despite acknowledging in the Complaint that it has contracts with these PBMs and thereby knowing their identity. Movants believe – but do not definitively know – that references to "PBM-1" in the Complaint may be Emisar and "PBM-2" may be Optum.  Lilly's concealment of the PBMs' identities by itself violates Rule 9(b)'s particularity requirement because it adds uncertainty, rather than specificity, to Lilly's claims against Movants.

1

between those parties; and only then did the PBMs submit rebate claims to Lilly after reviewing and validating the claims pursuant to their contracts with Lilly. Lilly makes *no* allegations about what Health Delegates did with the information allegedly provided by the Rebate Defendants or what representations Health Delegates made to the PBMs, nor what either PBM did with the claims before submitting them to Lilly. In fact, Lilly never alleges what representations the Rebate Defendants specifically made to Health Delegates. It only alleges what information it received from PBMs. Lilly therefore cannot plausibly allege that it relied on Defendants, and its failure to adequately plead reliance renders its claims for common law fraud, civil conspiracy to commit common law fraud, and negligent misrepresentation deficient from the outset under Rule 12(b)(6).

All of Lilly's claims also independently fail because they are built on group pleading in violation of Rule 9(b)'s heightened pleading standard and otherwise lack the details necessary under Rule 9(b). Lilly repeatedly lumps together all fifteen "Defendants" or shifts among other selected groups through labels such as "DrugPlace Entities," "DrugPlace Conspiracy," "DrugPlace Officers," and "Fraud Defendants." This does not plead with particularity the who, what, when, where, and how for each Defendant. Nor does it plead what each Defendant gained from the alleged fraud. Rule 9(b) requires more.

Lilly's equitable claims for unjust enrichment and money had and received fail for the same reasons and more. These counts seek restitution, disgorgement, and a constructive trust from Movants based on rebates Lilly acknowledges it paid to the non-party PBMs. Florida law does not allow Lilly to leap from payments to non-parties to the conclusion that every Movant was unjustly enriched. Lilly must plead a direct benefit conferred on each Movant. Lilly pleads the opposite: it paid PBMs, the PBMs operated under separate contracts, and Lilly lacks visibility into whether or how any rebate funds were shared downstream. Those allegations defeat, rather than support, unjust enrichment and money had and received claims. And, because these counts seek restitution of funds, Rule 19 requires joinder of Health Delegates and the PBMs. Lilly asks this Court to decide who received, retained, and should restore rebate funds that allegedly moved through Health Delegates and the PBMs. But those entities are absent and, in the case of the PBMs, not even identified in the Complaint. Third-party discovery into these entities cannot bind them to this litigation, adjudicate their rights to the funds, or require them to return money they retained. Lilly's efforts to seek equitable relief from Movants without including, and in some instances, even

2

naming, necessary parties therefore fail as a matter of law. These defects require dismissal of the Complaint in its entirety in favor of Movants.

## II.    ALLEGED FACTUAL BACKGROUND

Lilly's claims arise from its prescription drug rebate program for Trulicity, which Lilly manufactures. According to the Complaint, the purpose of this rebate program is for Lilly to pay PBMs to place Trulicity in a "specified position" on the drug formulary that PBMs manage for health plans in order to "increase[e] patient access" –*i.e.*, increase sales. ECF No. 1, Compl. ¶¶ 54, 193.  Lilly contracts with PBMs, including those it avoids naming in its Complaint, which submit rebate claims to Lilly after a prescription drug like Trulicity is allegedly dispensed to a covered member patient. *Id.* ¶¶ 51–53. These PBMs may also submit rebate claims through "layers of intermediaries," such as other PBMs or entities known as rebate aggregators, which in turn contract with a PBM to submit rebate claims to the manufacturer. *Id.* ¶¶ 56–57. According to Lilly, PBMs control the claims-processing infrastructure, possess the underlying eligibility and utilization data, and warrant the accuracy and completeness of submitted claims. *Id*. ¶¶ 60–61. Lilly acknowledges that it relies on PBMs and rebate aggregators to review and validate rebate data before claims are submitted to Lilly. *Id*. ¶¶ 58–61. After receiving a rebate claim, Lilly pays the rebate to the submitting PBM. *Id*. ¶¶ 53, 58. PBMs may choose to share rebates downstream with their payer or health plan clients or may have contracts with a rebate aggregator that dictate terms of payments made to the aggregator. *Id*. ¶¶ 55, 57. Rebate aggregators, in turn, have contracts with their clients specifying payment terms. *Id.* ¶ 57. Lilly alleges that those downstream arrangements are governed by separate PBM-client and aggregator-client contracts, and that manufacturers like Lilly generally do not have visibility into whether, how, or in what amount any rebate payments are shared. *Id*. ¶¶ 55, 57.

Although Lilly previously had a direct rebate agreement with DrugPlace from 2011 to 2015, Lilly did not renew that agreement, and the claims brought in the Complaint are based on entirely separate alleged rebate payments from 2020 to 2024. *Id.* ¶¶ 65–67, 99–104, 191. The rebate payments at issue here, like most rebate submission processes, were made by the manufacturer, Lilly, directly to the unidentified submitting PBMs, who are non-parties in this case. *See, e.g.*, *id.* ¶¶ 53, 58, 207, 226. DrugPlace allegedly submitted rebate claims data to Health Delegates, a non-party rebate aggregator for Trulicity; Health Delegates then submitted the rebate claims to one of two PBMs; these PBMs then submitted the rebate claims to Lilly for payment.

3

*See id*. ¶ 100. After approving the rebate claim, Lilly sent the rebate payment to these PBMs. *Id.* ¶¶ 207, 226. Lilly alleges that the use of Health Delegates obscured DrugPlace as the source of the claims because the claims were attributed to Health Delegates, not to Health Delegates' underlying clients. *Id.* ¶ 101. At the same time, Lilly also alleges that the rebate files it received from the PBMs contained claim-level data that identified DrugPlace. *Id.* ¶¶ 102–04. Lilly ultimately claims that DrugPlace did not dispense the Trulicity to patients and instead transferred it to Defendant wholesalers like Nakorn and Brightline for re-sale. *Id.* ¶ 154.

In 2025, Lilly engaged a third-party auditor to conduct an audit of PBM-2. *Id.* ¶ 105. Lilly concedes the scope of the audit was limited to analyzing the data submitted by Health Delegates to the PBM and did not include DrugPlace. *Id.* ¶ 106. Nonetheless, Lilly brought suit against only Defendants, alleging that they alone caused Lilly to pay more than $200 million in rebates to the PBMs. *Id.* ¶¶ 7, 53, 58, 191, 226. The Complaint includes five counts, each brought against a collection of some or all Defendants. *Id.* ¶¶ 205–234. As it pertains to Movants, Lilly brought claims of common law fraud (Count I) and negligent misrepresentation (Count III) against Rebate Defendants and civil conspiracy to commit fraud (Count II), unjust enrichment (Count IV), and money had and received (Count V) against Movants. *Id.* ¶¶ 205–234. Thus, Lilly does not bring claims for, nor make any allegations regarding, common law fraud or negligent misrepresentation against Nakorn. Rebate Defendants seek dismissal of Counts I and III, and Movants seek dismissal of Counts II, IV, and V, on the grounds that Lilly has failed to state a claim, plead fraud with particularity, or join an indispensable party.

III.   **LEGAL STANDARDS**

A.     **Rule 12(b)(6)**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible only where the plaintiff pleads facts allowing the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Although a court must liberally construe and accept as true well-pled factual allegations, it need not accept "claims that are internally inconsistent, facts which run counter to facts of which the court can take judicial notice, conclusory allegations, unwarranted deductions, or mere legal conclusions asserted by a party." *Campos v. I.N.S.*, 32 F. Supp. 2d 1337, 1343 (S.D. Fla. 1998). Allegations that are merely

4

consistent with liability are not enough; the complaint must plead facts that raise the right to relief above the speculative level. *Twombly*, 550 U.S. at 555–57.

### B.    Rules 8 and 10

A complaint must also comply with Federal Rules of Civil Procedure 8 and 10. Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief," and Rule 10 requires claims to be stated in numbered paragraphs and separate counts. Fed. R. Civ. P. 8(a)(2), 10(b). These rules require a complaint to give each defendant fair notice of the claims against it and the grounds on which those claims rest. *Twombly*, 550 U.S. at 555; *see generally Veltmann v. Walpole Pharmacy, Inc.*, 928 F. Supp. 1161, 1163–64 (M.D. Fla. 1996).

### C.    Rule 9(b)

Claims sounding in fraud, which include all Counts in the Complaint, must also satisfy Federal Rule of Civil Procedure 9(b). That rule requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Rule 9(b) applies not only to claims labeled "fraud," such as Counts I and II, but also to claims that sound in fraud based on the factual allegations supporting them. *Pop v. LuliFama.com LLC*, 145 F.4th 1285, 1293 (11th Cir. 2025); *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1307 n.11 (11th Cir. 2022). That includes unjust enrichment claims grounded in fraud, such as Counts IV and V. *Omnipol*, 32 F.4th at 1307 n.11. It also includes negligent misrepresentation claims under Florida law, like Count III. *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 951 (11th Cir. 2014).

To satisfy Rule 9(b), a plaintiff must plead the "who, what, when, where, and how" of the alleged fraud. *Pop*, 145 F.4th at 1297; *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010). More specifically, the complaint must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [p]laintiff[]; and (4) what the defendants gained by the alleged fraud." *Am. Dental*, 605 F.3d at 1291. And where a complaint names multiple defendants, it must inform each defendant of the nature of his or its alleged participation in the fraud. *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007).

### D.    Rule 12(b)(7) and Rule 19

Federal Rule of Civil Procedure 12(b)(7) permits dismissal for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). Rule 19 requires a two-step inquiry. First, the Court must

determine whether the absent party is "required" under Rule 19(a). *Town of Indian River Shores v. City of Vero Beach*, 622 F. Supp. 3d 1265, 1271 (S.D. Fla. 2022) (citing *Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1279 (11th Cir. 2003)). This is a practical inquiry, and "pragmatic concerns, especially the effect on the parties and the litigation, control" the analysis. *Fla. Wildlife Fed'n Inc. v. U.S. Army Corps of Eng'rs*, 859 F.3d 1306, 1316 (11th Cir. 2017). If the party is required and joinder is feasible, "the court must order that the person be made a party." Fed. R. Civ. P. 19(a)(2). If joinder is not feasible, the Court then determines under Rule 19(b) whether the case may proceed "in equity and good conscience" or must be dismissed. Fed. R. Civ. P. 19(b); *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1039 (11th Cir. 2014).

## IV. <u>ARGUMENT</u>

For the reasons set forth below, the Court should dismiss each of Lilly's claims against Movants for failure to comply with the applicable pleading requirements.

### A. The Complaint is an Impermissible Shotgun Pleading

A complaint must provide a short and plain statement of its claim showing it is entitled to relief. Fed. R. Civ. P. 8. Shotgun pleadings violate this requirement. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294 (11th Cir. 2018). Although courts recognize that multiple forms of impermissible pleading tactics can constitute a "shotgun pleading," each boasts the same central failure to provide defendants with adequate notice of the claims against them. *Id.* at 1295; *Herbst v. Am. Orthodontics Corp.*, No. 23-61262-CV, 2023 WL 7108633, at \*1 (S.D. Fla. Oct. 10, 2023), *aff'd,* No. 23-13423, 2024 WL 3358520 (11th Cir. July 10, 2024). Here, Lilly's Complaint is an improper shotgun pleading because it (1) contains multiple counts adopting and incorporating the allegations of all preceding counts, and (2) asserts multiple claims against multiple defendants without specifying which defendant is responsible for which acts or omissions giving rise to the claims. *See Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1126 (11th Cir. 2014) (concluding the complaint is a shotgun pleading "where each count adopts the allegations of all preceding counts.") (internal quotations omitted); *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (referring to a complaint as a "quintessential shotgun pleading" where it, in part, was "replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged."). Thus, the Court should dismiss Lilly's Complaint. *See Paylor*, 748

F.3d at 1126 ("A defendant served with a shotgun complaint should move the district court to dismiss the complaint pursuant to Rule 12(b)(6)[.]").

### 1. The Complaint Improperly Incorporates All Preceding Allegations

Incorporating all preceding allegations and counts into successive claims is the "quintessential" shotgun pleading that courts have condemned for decades. *Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1045 n.39 (11th Cir. 2014). Indeed, in the Eleventh Circuit's words, the pleading practice is a "mortal sin" for which this Circuit has "little tolerance." *See Herbst*, 2023 WL 7108633, at *1; *Vibe Micro*, 878 F.3d at 1295. By compounding counts atop each other—when each count already contains interwoven allegations—a complaint wastes judicial resources, stretches the scope of discovery, and wreaks havoc on a later appellate court's docket, among other "unacceptable consequences." *Vibe Micro*, 878 F.3d at 1295. As such, district courts possess the inherent authority to dismiss complaints on shotgun pleading grounds. *Id.* The Court should do so in the present case.

As written, Lilly's Complaint is a "quintessential" shotgun pleading. *See Keith*, 749 F.3d at 1045 n.39. Each count "repeats and realleges the allegations" contained in all prior paragraphs. Compl. ¶¶ 205, 212, 218, 225, 231. In doing so, the Complaint violates Rule 8 and should be dismissed. *See Herbst*, 2023 WL 7108633, at *2.

### 2. The Complaint Engages in Group Pleading

A complaint is also a shotgun pleading when it fails to distinguish between multiple defendants or specifically identify the conduct attributable to each defendant. *See Magluta*, 256 F.3d at 1284. This pleading deficiency is further exacerbated when the complaint contains allegations of fraud, which are subject to Rule 9(b)'s particularity requirement. *See Magnum Constr. Mgmt., LLC v. WSP USA Solutions, Inc.*, 522 F. Supp. 3d 1202, 1209 (S.D. Fla. 2021) (dismissing shotgun pleading that groups defendants together as failing to meet Rule 9(b)). In *Apex Toxicology, LLC v. United HealthCare Services*, the court dismissed a counterclaimant's civil conspiracy claim for shotgun pleading in violation of Rule 9(b) because counterclaimant "lump[ed] Defendants together." No. 17-61840-CIV, 2020 WL 13551299, at *3–5 (S.D. Fla. July 7, 2020). The complaint repeatedly referred to the defendants as "Rehabilitation Center Defendants," "Facilitator Defendants," or "Conspiring Defendants," making it "murky" to determine each defendant's role. *Id.* at *3–4. The court was "unable to assess the nature of each defendant's alleged participation in the scheme, and by extension [could not] determine whether

7

the civil conspiracy claim [could] be sustained against each of [the defendants]." *Id.* at \*4. The pleading issues that plagued the counterclaimant's complaint in *Apex* are even more prevalent in Lilly's Complaint.

Throughout its sixty-six pages and 234 paragraphs of allegations, the Complaint repeatedly groups all fifteen Defendants together and fails to distinguish between their actions. Compl. ¶¶ 2–10, 64, 94, 154, 160, 162, 171–72, 178–80, 190–97, 202–204; *Magluta*, 256 F.3d at 1284. This group pleading does not even satisfy Rule 8 or the plausibility standard under Rule 12(b)(6), let alone Rule 9(b)'s strict particularity requirement. *Cf. Magluta*, 256 F.3d at 1284; *Magnum*, 522 F. Supp. 3d at 1209. Indeed, just like in *Apex*, Lilly repeatedly uses collective terms such as "Defendants," "DrugPlace Entities," "DrugPlace Officers," "DrugPlace Conspiracy," and "Fraud Defendants" throughout its pleading. 2020 WL 13551299, at \*3–4; *see* Compl. ¶¶ 2–11, 42, 64, 76, 94, 154, 160–62, 164, 168, 170–72, 177–81, 190, 192, 195, 201–04, 206–11, 213–17, 219–24, 226–30, 232–34. To make matters worse, those collective terms are used inconsistently throughout the allegations. For example, the Complaint groups together Defendants DrugPlace, Community Health, Nakorn, Galaxy, and Brightline as the "DrugPlace Entities;" Defendants Leight, Singer, Smith, Bishop Maynard Sr., Maynard II, Misha Maynard, Enriquez, Mazei and Giscombe as the "DrugPlace Officers;" and then both groups as the "DrugPlace Conspiracy." *See id.* ¶¶ 26, 38. Those terms, however, are not used in the paragraphs expressly set forth under each count. *See id.* ¶¶ 206–11, 213–17, 219–24, 226–30, 232–34. Instead, those groups are then reorganized under an entirely new title of "Fraud Defendants" for Counts I and III, which includes only *some* of the defendants from varying groupings (DrugPlace, Community Health, Leight, Singer, Smith, and Mazei), *see id.* ¶¶ 206–11, 219–24, and groups all Defendants together for Counts II, IV, and V, *see id.* ¶¶ 213–17, 226–30, 232–34. Lilly's pleading is not just procedurally improper, it is illogical and unworkable.

Grouping together these parties—which are different entities with different locations and operations in conjunction with different individuals working for different entities under different roles—is a haphazard pleading that fails to plead fraud with the plausibility and particularity required under Rules 12(b)(6) and 9(b). *See Magluta*, 256 F.3d at 1284 (concluding the shotgun complaint makes "no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of"); *Apex*, 2020 WL 13551299, at \*5 (dismissing a claim for failure to inform each

defendant of the nature of its alleged participation in the fraud and for shotgun pleading). Here, the Complaint is subject to heightened requirements for which shotgun pleadings cannot meet, is plainly insufficient, and should be dismissed.

### B. Lilly Fails to Plead Common Law Fraud (Count I) and Negligent Misrepresentation (Count III) Against the Rebate Defendants

Lilly's claims for common law fraud and negligent misrepresentation against the Rebate Defendants also fail because they do not state a claim under Rule 12(b)(6) and are not pled with the particularity required under Rule 9(b).

#### 1. Lilly's Fraud and Negligent Misrepresentation Claims Fail Because They Do Not Sufficiently Plead Reliance under Rule 12(b)(6)

To state a claim for common law fraud under Florida law, a plaintiff must set forth the following: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Mirage Yacht, Inc. v. A 2013 Marquis Yachts Recreational Vessel*, No. 24-21095-CIV, 2025 WL 1047148, at *15 (S.D. Fla. Feb. 12, 2025), report and recommendation adopted, No. 24-21095-CV, 2025 WL 798360 (S.D. Fla. Mar. 13, 2025); *see also Feng v. Walsh*, No. 19-24138-CIV, 2021 WL 8055449, at *10 (S.D. Fla. Dec. 21, 2021), report and recommendation adopted, No. 1:19-CV-24138, 2022 WL 669198 (S.D. Fla. Mar. 7, 2022). "Common law fraud and negligent misrepresentation involve more or less the same elements of proof." *In re Lichtman*, 388 B.R. 396, 409 (Bankr. M.D. Fla. 2008). The minor difference between the two is that, for negligent misrepresentation, the plaintiff must plead that "the defendant failed to ascertain the truth or falsity of his or her representation." *Id.* Both claims, however, require reliance by Lilly on the defendant's own representation.

This reliance element requires Lilly to allege first-party reliance on a representation made by Rebate Defendants. *See generally, e.g.*, *Feng*, 2021 WL 8055449, at *10 ("[F]irst-party reliance is an element of a common-law fraud claim."); *Sevi v. Israel Disc. Bank of N.Y.*, No. 13-21922-CIV, 2014 WL 12861833, at *12 (S.D. Fla. Nov. 24, 2014) (noting that Florida does not recognize the doctrine of third-party reliance with respect to common law fraud claims). That rule is fatal here because Lilly does not allege that it received, much less relied on, any representation from any Rebate Defendant nor that such a representation was one the Rebate Defendants knew to be false or failed to ascertain the truth or falsity thereof.

Lilly's allegations show the opposite. The alleged rebate submission chain had several independent steps: DrugPlace submitted data to Health Delegates; Health Delegates worked with the data to submit claims to either PBM, depending on the date of the claim; and the PBMs reviewed, validated, and submitted the rebate claims to Lilly for payment. *See, e.g.*, Compl. ¶ 56–60, 100–01, 104, 106. As such, Lilly also repeatedly alleges that it relied on the PBMs, not any of the Rebate Defendants, when it made rebate payments to the PBMs. *See, e.g.*, Compl. ¶¶ 209, 216, 223 (Lilly "relied on the PBMs to review and validate pharmacy claim-level information when determining whether to pay the rebate claims."); *id.* ¶ 60 ("Lilly relies on the claims data submitted by PBMs and rebate aggregators, which are the primary custodians of the underlying eligibility, utilization, and adjudication data that determine rebate eligibility."); *id.* ¶ 61 ("[W]hen entering rebate agreements, it is Lilly's reasonable commercial practice…to place responsibility for the review and accuracy of the data squarely on the parties that process and submit the data."); *id.* at ¶ 61 (It is the PBMs' responsibility to "ensur[e] that rebate claims meet eligibility criteria specified in the contracts between manufacturers and PBMs," and "Lilly compensates PBMs to administer the rebate-claims processing infrastructure, use the various sources of data to verify that claims meet the specified eligibility requirements, and submit only eligible claims."); *id.* ¶ 61 ("PBMs warrant the accuracy and completeness of submitted claims."); *id.* ¶ 96 ("[I]t is Lilly's commercial practice to allocate responsibility for the review and accuracy of rebate data to the parties that submit and process it, in particular PBMs."). Thus, not only does Lilly fail to allege that it relied on specific statements made by each Rebate Defendant, but it affirmatively asserts that it relied directly on the PBMs' representations that the claims were eligible for rebate.

Lilly tries to bridge that gap by alleging that the Rebate Defendants' statements to Health Delegates ultimately caused claims to reach Lilly through the PBMs. *See id.* ¶¶ 209, 223. But, under Lilly's theory, Health Delegates and the PBMs were not passive conduits—they were intervening actors that processed, aggregated, reviewed, independently validated, and submitted claims pursuant to their own contracts and responsibilities. Even accepting as true for sake of argument that the eligibility of the claims for rebate was misrepresented, the PBMs made that misrepresentation to Lilly. If Lilly's consequent injury was the payment of rebates for ineligible claims, those payments were made, according to Lilly, to the PBMs because the PBMs verified them. Lilly's theory against the Rebate Defendants requires collapsing several independent

10

commercial relationships to connect an alleged statement by DrugPlace to an action by Lilly. That is not first-party reliance on any Rebate Defendant.

Nor does Lilly plead facts that any representation by a Rebate Defendant ever reached Lilly unchanged. Lilly only pleads what information it received from PBMs. For instance, Lilly allegedly engaged a third-party auditor to evaluate PBM-2's records, but the scope of this audit was limited to analyzing the data that Health Delegates submitted to PBM-2. *Id.* ¶¶ 105–106. Lilly cannot plausibly attribute specific statements to Rebate Defendants while simultaneously acknowledging it does not know what DrugPlace submitted to Health Delegates. Lilly has also not alleged anything about what Health Delegates did with the data DrugPlace purportedly provided or whether Health Delegates made its own representations about the data when it submitted the claims to the PBMs. Nor has Lilly made any allegations about how the PBMs used the information to prepare the claims for submission to Lilly. By the time any representation allegedly reached Lilly, it had gone through multiple levels in the claims process, and each of Health Delegates and the PBMs owed its own contractual duty to review, validate, and submit claims in the manner agreed upon between the submitting and receiving parties. Lilly's apparent desire to avoid litigation against Health Delegates and the PBMs does not make its fraud claims against Rebate Defendants any more viable. Lilly therefore has not plausibly alleged reliance on any representation by any Rebate Defendant, and Counts I and III should be dismissed under Rule 12(b)(6).

### 2. Lilly's Claims for Common Law Fraud and Negligent Misrepresentation Also Fail to Satisfy Rules 9(b) and 12(b)(6)

Rule 9(b)'s heightened pleading standard applies to Lilly's common law fraud and negligent misrepresentation claims. *See* Section III.C. In addition to Lilly's failure to specifically identify any statements DrugPlace made to Health Delegates that made their way to Lilly without intervention or validation from Health Delegates or the PBMs, Lilly also fails to identify in any way which Rebate Defendants made which statements, what statements each Rebate Defendant made, where and when these statements were made, or how each of the Rebate Defendants were allegedly involved in fraudulent activity. Rule 9(b) requires these allegations which are missing from the Complaint. *Pop*, 145 F.4th at 1297 (explaining Rule 9(b) requires pleading the "who, what, when, where, and how" of the alleged fraud).

11

Specifically, Lilly has not made any attempt to distinguish which Rebate Defendants engaged in which allegedly fraudulent acts. Instead, Counts I and III routinely refer to "Fraud Defendants" and attribute every alleged false statement and resulting injury to that group as a whole.  A complaint that does not allege which defendants were responsible for which statements fails to satisfy Rule 9(b)'s pleading requirements. *See Keegan v. Minahan*, No. 23-60501-CIV, 2023 WL 3884962, at *4–5 (S.D. Fla. June 7, 2023) (dismissing the plaintiff's common law fraud claim because plaintiff "vaguely attribute[d] the alleged fraudulent statements and omissions to all three of the defendants simultaneously"). While the Complaint attempts to allege that DrugPlace made false statements in data underlying the rebate claims, it never alleges these statements remained unchanged from any submission to Health Delegates to then the PBMs to then Lilly such that Lilly relied on any alleged false statements from DrugPlace.  *See id.* ¶¶ 64, 92, 95, 102-04, 193-94. Lilly never once identifies any representative false claim that it received containing purported false statements from DrugPlace. Lilly does not sufficiently plead it suffered an injury by relying on any alleged statement by DrugPlace.

Lilly's pleading failures are even more pronounced for Community Health, Leight, and Singer. Despite alleging clear differences between what DrugPlace and Community Health do, Lilly routinely makes no distinction between representations they allegedly made. *See generally* Compl. ¶¶ 14–19; *see id.* ¶¶ 206-211, 219-24. There are simply no allegations that specify any false statement that Community Health made in a rebate claim upon which Lilly relied. Lilly's allegations regarding documents that provide information on Community Health's prescription cost share program do not remedy this pleading deficiency—the Complaint never alleges Community Health made these documents let alone with intent to induce reliance, and Lilly acknowledges it did not rely on these documents because they were procured by Lilly in connection with an audit in 2025 while Lilly alleges it paid rebate claims from 2020 to 2024. *Id.* ¶¶ 120, 135. Nor does Lilly distinguish between representations made by Leight and Singer. *See* Compl. ¶ 208. Rather, Lilly seeks to tie them (and other individual Defendants) to the fraud claims by making conclusory allegations that they were personally involved in "the fraudulent scheme" or because they were "owners, officers, and/or employees" of DrugPlace and Community Health. *See id.* ¶¶ 29, 208. That is insufficient to plead common law fraud and negligent misrepresentation. *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1322 (S.D. Fla. 2017) (dismissing a common law fraud claim against the individual

12

defendants because there were no allegations that they "involved themselves in the scheme in any way other than through their ownership interests in the entity defendants"). There are no specific allegations about what false statements Leight and Singer made in the 2020 to 2024 timeframe when Lilly allegedly paid the rebate claims at issue, when and where Leight or Singer made the false statements, or how they made the false statements. There are no specific allegations of whether Lilly even relied on any misrepresentation by Leight and Singer or that they intended to induce reliance. The only allegations regarding what Singer said to Lilly relate to an irrelevant audit of DrugPlace in 2015 that is unconnected to the rebate claims at issue. Compl. ¶¶ 78, 81. Lilly has not pled the who, what, when, where, or how for Community Health, Leight, and Singer that Rule 9(b) requires or plausibly pled all elements of common law fraud and negligent misrepresentation under Rule 12(b)(6).

### C. Lilly Fails to Plead Civil Conspiracy Against Movants (Count II)

To plead civil conspiracy under Florida law, Lilly must allege (1) an agreement between two or more parties, (2) to do an unlawful act, (3) an overt act to further that conspiracy, and (4) damage to Lilly. *ECB USA, Inc. v. Savencia Cheese USA, LLC*, 148 F.4th 1332, 1347 (11th Cir. 2025); *Apex*, 2020 WL 13551299, at *2. Rule 9(b)'s heightened pleading standard also applies to claims alleging a conspiracy to defraud. *Banc of Am. Sec. LLC v. Stott*, No. 04-81086-CIV, 2005 WL 8156027, at *5 (S.D. Fla. Aug. 30, 2005) (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)). Conspiracy also is not an independent cause of action and must be accompanied by a viable underlying claim. *Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1345 (S.D. Fla. 2018). Although Count II for conspiracy to commit fraud necessarily fails along with Lilly's common law fraud claim, Lilly inadequately pleads civil conspiracy for the separate reasons that (1) the intracorporate conspiracy doctrine bars Lilly from pleading conspiracy amongst Movants; (2) Lilly pleads only conclusory allegations of an agreement; and (3) as to Community Health, Nakorn, Leight and Singer in particular, Lilly pleads no facts showing that each knowingly joined or assisted in the alleged rebate conspiracy starting in 2020.

### 1. The Intracorporate Conspiracy Doctrine Bars the Civil Conspiracy Claim

Under the intracorporate conspiracy doctrine, acts of agents acting for the corporation are attributed to the corporation itself and, thus, a single legal entity and its agents cannot conspire with itself. *Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1213 (11th Cir. 2018). This extends beyond direct employment or agency relationships of

individuals to company affiliates as well. *See Apex*, 2020 WL 13551299, at *8 (dismissing with prejudice plaintiff's civil conspiracy claim because the intracorporate conspiracy doctrine precluded plaintiff from alleging a company, its owners, and affiliated entities conspired); *Graham v. Cypress Cap. Grp., Inc.*, No. 10-81269-CIV, 2011 WL 13227744, at *6 (S.D. Fla. July 12, 2011) (concluding the conspiracy claim fails against two entities where one is "repeatedly alleged throughout the Complaint to be an affiliated corporation and 'sub-adviser' or agent to" the other). While Florida courts recognize the "personal stake" exception to this doctrine, where an agent who "acted 'in their personal interests, wholly and separately from the corporation'" may be liable for civil conspiracy, the Complaint fails to plead this. *Mancinelli v. Davis*, 217 So. 3d 1034, 1037 (Fla. Dist. Ct. App. 2017) (quoting *Microsoft Corp. v. Big Boy Distrib. LLC*, 589 F. Supp. 2d 1308, 1323 (S.D. Fla. 2008)). Lilly's civil conspiracy claim falls squarely within the intracorporate conspiracy doctrine.

Throughout the Complaint, Lilly repeatedly alleged agency among Defendants. *E.g.*, Compl. ¶¶ 2, 64, 179. As to DrugPlace, Lilly asserts that: Leight is the co-owner and President; Singer is co-owner, Vice President, Secretary, and Director; Jerry Maynard Jr. is "an agent for DrugPlace;" and DrugPlace Inc. (FL) and DrugPlace Inc. (TN) "operate as one company." *Id.* ¶ 16, 27–28, 33. Regarding Nakorn, Lilly alleges that Singer is the sole member and submitted applications for Nakorn's licenses, and Edgar Enriquez is the General Manager. *Id.* ¶¶ 28, 35. For Galaxy, Lilly alleges that Leight and Singer are investors, Lane Mazei is the Manager, and Danielle Giscombe is a pharmacy technician. *Id.* ¶¶ 27–28, 36, 150. As to Community Health, Lilly asserts that Readus C. Smith III is the CEO, Jerry Maynard Jr. was the Chairman of its board, and Misha Maynard was Vice President of Operations. *Id.* ¶ 30, 32–34. Lilly also asserts Community Health "is the owner of registered trademarks for 'DrugPlace'," *id.* ¶ 19, 30. Regarding Brightline, Lilly alleges that Lane Mazei is its Manager and Organizer and Danielle Giscombe is its Pharmaceutical Wholesale Manager. *Id.* ¶ 36–37.

Lilly also repeatedly alleges a variety of affiliations among Defendants, including that: Defendant Enriquez "is affiliated with Defendants Leight, Singer, and Smith," *id.* ¶ 35; "DrugPlace Inc. (FL) and DrugPlace Inc. (TN) operate as one company," *id.* ¶ 16; Galaxy is affiliated with DrugPlace and its owners and principals," *i.e.* Leight and Singer, *id.* ¶ 150; "DrugPlace, in conjunction with affiliates including Nakorn and Brightline," *id.* ¶ 95; "Galaxy is closely affiliated with secondary wholesaler, Defendant Brightline," *id.* ¶ 152; "The DrugPlace Entities act together

14

under common ownership and officers," *id.* ¶ 172; DrugPlace and Nakorn together and Galaxy and Brightline together are "commonly owned" companies, *id.* ¶ 177; "Defendants are a group of interrelated entities ….[and] these entities share overlapping ownership, control, and addresses," *id.* ¶ 2; "Each individual Defendant is or has been an officer, supervisor, or employee at one or more DrugPlace Entities," *id.* ¶ 178, and "The DrugPlace Officers—Leight, Singer, Smith, Enriquez, Jerry Maynard Sr., Jerry Maynard Jr., Misha Maynard, Mazei, and Giscombe—as the owners and officers of DrugPlace, Nakorn, and Community Health, direct and control the DrugPlace Entities," *id.* ¶ 179.

Taken as a whole, the intracorporate conspiracy doctrine bars Lilly from pleading that Movants conspired together. Lilly's repeated allegations of Leight and Singer's ownership and agency for corporate Defendants bars any civil conspiracy claim that those individuals conspired with the corporate Defendant to which they are an agent or owner. And, the allegations of each corporate Defendant being affiliates or a group of interrelated entities bars Lilly from pleading civil conspiracy amongst those companies as well.  There are no well-pled facts that invoke the personal-stake exception either—missing are any allegations that Singer or Leight acted outside of their capacity as owners or agents of, or acted wholly and separately from, any corporate Defendants, such that they had a "personal stake" in any purported conspiracy different from that of corporate Defendants.  *Mancinelli*, 217 So. 3d at 1037. The Court should dismiss Count II for these reasons alone. *E.g.*, *Sun Life*, 904 F.3d at 1213 (dismissing plaintiff's fraud conspiracy claim for failure to plausibly allege defendants are independent entities and individuals); *Apex*, 2020 WL 13551299, at *7; *Graham*, 2011 WL 13227744, at *6.

### 2.    Lilly Fails to Plead Any Factual Allegations of an Agreement

Beyond the intracorporate conspiracy doctrine, Lilly's conspiracy claim fails because it does not plead an agreement to commit fraud, much less one with the specificity Rule 9(b) requires. *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1067–68 (11th Cir. 2007) (upholding dismissal of civil conspiracy claim where plaintiff did not plead an agreement to commit fraud with specificity). Allegations that defendants "were engaged in the same 'scheme'" are insufficient to state a claim for civil conspiracy or meet Rule 9(b). *Apex*, 2020 WL 13551299, at *2. Nor do allegations of parallel conduct or conclusory or speculative allegations of an agreement at some unspecified point in time. *Honig*, 339 F. Supp. 3d at 1345. Here, Lilly alleges nothing more and its conspiracy claim must be dismissed. *Am. United Life Ins. Co.*, 480 F.3d at 1068.

The Eleventh Circuit's decision in *ECB USA, Inc.* is controlling. There, the plaintiff alleged that the defendants "agreed" to and "acted in furtherance" of the conspiracy and was "required" for the conspiracy to succeed. 148 F.4th at 1347. In upholding the district court's dismissal, the Eleventh Circuit concluded those allegations simply restated the elements of a conspiracy claim. *Id.* at 1347–48. The plaintiff's allegation that the conspiracy required a defendant's participation did not remedy the pleading failures, as the court explained such "assumes that the necessity of one party to a conspiracy's success proves that party's participation," which would transform civil conspiracy claims into strict liability offenses. *Id.* at 1347.

Lilly likewise offers only conclusory allegations of an agreement, which are materially indistinguishable from the types of conclusions the Eleventh Circuit rejected in *ECB USA, Inc.* Namely, the complaint alleges: (i) "Each individual Defendant is or has been an officer, supervisory, or employee at one or more DrugPlace Entities. As such, they were personally involved in running the DrugPlace Conspiracy, and they agreed to participate in and engaged in overt acts in pursuit of its objectives," Compl. ¶ 178; (ii) "Defendants unlawfully, knowingly, and willfully combined, conspired, confederated and agreed together to defraud Lilly. All Defendants adopted the goal of furthering and facilitating this conspiracy," *id.* ¶ 213; and (iii) "Each Defendant is indispensable to the DrugPlace Conspiracy's fraudulent rebate scheme," or the "scheme depended upon the participation of all Defendants," *id.* ¶ 171, 215. The Complaint never identifies the who, what, where, when, and how of an agreement as required under Rule 9(b). *See Am. United Life Ins. Co.*, 480 F.3d at 1067–68 ("[W]here a conspiracy claim alleges that two or more parties agreed to commit fraud, the plaintiffs must plead this act with specificity.") Lilly's conclusory pleading of conspiracy has time and again been rejected by courts. *See, e.g.*, *ECB USA, Inc.*, 148 F.4th at 1347–48; *Am. United Life Ins. Co.*, 480 F.3d at 1068 (upholding dismissal of the civil conspiracy claims because the complaint "provided only conclusory statements" of an agreement to commit fraud); *Honig*, 339 F. Supp. 3d at 1345 (dismissing plaintiffs' civil conspiracy claim because Plaintiffs alleged merely conclusory allegations that defendants "reached and entered into an express or tacit agreement" or "agreed to join in an participated in the … civil conspiracy"); *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1319–20 (S.D. Fla. 2014) ("Certainly to satisfy the heightened pleading standard for conspiracy claims based in fraud, Plaintiffs must at least show some evidence of agreement between the defendants." (internal quotation omitted)). Because Lilly

16

fails to sufficiently plead any agreement among each, or any, of the Movants, its civil conspiracy claim must be dismissed.

### 3. Lilly Fails to Allege that Defendants Leight, Singer, Nakorn, or Community Health Knowingly Joined or Assisted the Purported Conspiracy

Although an alleged conspirator need not personally commit the overt act that directly injured the plaintiff, Lilly must plead facts that each Defendant plausibly knew of and assisted the alleged scheme. *Tippens v. Round Island Plantation, LLC*, No. 09-CV-14036, 2009 WL 2365347, at *5 (S.D. Fla. July 31, 2009) (dismissing conspiracy claim where plaintiff failed to plead facts that the defendants joined the conspiracy and knew of and assisted the alleged conspiracy); *Principal Life Ins. Co. v. Mosberg*, No. 09-22341-CIV, 2010 WL 473042, at *6 (S.D. Fla. Feb. 5, 2010) (same); *see also Eagletech Communications, Inc. v. Bryn Mawr Investment Group, Inc.*, 79 So. 3d 855, 863 (Fla. 4th DCA 2012) (affirming dismissal where the complaint supplied no details of the alleged agreement and merely speculated that defendants participated because they ultimately received benefits). Lilly pleads no such facts for Leight, Singer, Nakorn, and Community Health.

As to Leight or Singer, the Complaint only identifies their corporate positions, ownership interests, and Singer's participation in a 2015 audit with Lilly unrelated to the alleged rebate scheme at issue in the Complaint, to then allege that they "supervised," "actively participat[ed] in," "orchestrated," "approved," "substantially assisted," "were personally involved in" and "engaged in overt acts in pursuit of" the conspiracy, or "conduct fraudulent activities" in Florida. Compl. ¶¶ 27–29, 42, 69, 75, 77, 150, 178–80, 208, 215(c). These unsupported conclusions do not sufficiently allege Leight and Singer engaged in an overt act or knew of and assisted in the alleged scheme. *See ECB*, 148 F.4th at 1347–48 (conclusory allegations that a party "acted in furtherance" of a conspiracy does not plead conspiracy with particularity); *McElrath v. ABN AMRO Mortg. Grp., Inc.*, No. 11-62216-CIV, 2012 WL 463893, at *6 (S.D. Fla. Feb. 13, 2012) (conclusory allegations without any factual support that defendants had "full knowledge and notice" of the fraud and "worked together to cover up the fraud" do not sufficiently allege conspiracy).

As to Community Health and Nakorn, there are no conclusory allegations of an overt act or knowledge and assistance, let alone ones supported by factual allegations. The vast majority of allegations referencing Community Health relate to the irrelevant 2015 audit. The only other

17

allegation which attributes any action to Community Health asserts "there is no credible reason why DrugPlace and Community Health would limit their formulary in this way."  Compl. ¶ 112. The rest of the allegations simply speculate how DrugPlace failed to provide credible reasons that Community Health's prescription cost share program could cover the Trulicity prescriptions and take issue with "the Community Health/DrugPlace formularies".  *Id.* ¶¶ 119-27, 135-39. That does not plead an overt act in furtherance of the alleged rebate fraud claims nor knowledge and assistance by Community Health.  The same is true of Nakorn.  Lilly only alleges that DrugPlace transfers Trulicity to Nakorn.  *Id.* ¶ 154, 165.  But it never alleges any involvement by Nakorn in any rebate submission let alone knowledge and assistance with such.

Missing are allegations that plausibly support knowledge for Community Health, Nakorn, Leight, and Singer along with particular allegations of how, when, where, and what each did to assist the alleged rebate submissions.  *Tippens*, 2009 WL 2365347, at *5.

### D.       Lilly Fails to Plead Unjust Enrichment and Money Had and Received (Counts IV and V)

Lilly's unjust enrichment and money had and received theories fail for the same fundamental reasons. Both require allegations that Lilly conferred a benefit on Movants, Movants knew of the benefit, Movants voluntarily accepted and retained it, and it would be inequitable for Movants to retain the benefit without paying Lilly for it. *GVB MD v. Aetna Health Inc.*, No. 19-22357-CIV, 2019 WL 6130825, at *6 (S.D. Fla. Nov. 19, 2019) (Moreno, J.); *see Frayman v. Douglas Elliman Realty, LLC*, 515 F. Supp. 3d 1262, 1287 (S.D. Fla. 2021) (analyzing unjust enrichment and money had and received claims similarly). Courts also dismiss money had and received claims that are asserted along with unjust enrichment claims as duplicative. *Ultimate Motors, Inc. v. Lionheart Motorcars, LLC*, No. 19-60917-CIV, 2019 WL 9786489, at *5 (S.D. Fla. July 23, 2019). So too should the Court here. Further, in order to plead the first element of a benefit, "a direct benefit must be conferred on the defendant." GVB MD, 2019 WL 6130825, at *6 (emphasis in original); see *City of Miami v. Eli Lilly & Co.*, No. 21-22636-CIV, 2022 WL 198028, at *9 (S.D. Fla. Jan. 21, 2022) (dismissing complaint for failure to allege plaintiff "directly conferred a benefit" on Defendant Eli Lilly and Company). Here, Lilly fails to plead such direct benefit for Movants and fails to plead all elements with the particularity required by Rule 9(b).

### 1.       Lilly Pleads No Direct Benefit to Movants

Counts IV and V fail because Lilly does not plead facts that it directly conferred a benefit on any particular Movant. Again, Lilly repeatedly alleges that it (or drug manufacturers generally)

paid rebates – the supposed benefit – to PBMs, not any Movant. Compl. ¶¶ 53, 58, 61–62, 226. Lilly further alleges that PBMs may or may not share the rebate payments they received from manufacturers downstream with their health plan or rebate aggregator clients, each PBM has separate contracts governing whether and how any rebate payment sharing occurs with their clients, each rebate aggregator also has separate contracts with its downstream clients specifying any payments the aggregator makes to them, and that manufacturers lack visibility into those arrangements. *Id.* ¶¶ 55, 57.  Lilly also alleges that the "DrugPlace and Galaxy Operation together *caused* Lilly to pay over $200 million in rebates," but never once alleges that Lilly paid any Movant that rebate money.   *Id.* ¶ 191 (emphasis added). Lilly's unjust enrichment count further acknowledges this, by alleging Lilly paid the PBMs and simply concludes "defendants wrongfully obtained a monetary benefit." *Id.* ¶ 226. Lilly's money had and received count is even more attenuated, alleging "all Defendants have profited directly and indirectly" without specifying any allegations to support such direct or indirect profits. *Id.* ¶ 232. These allegations are insufficient to plead direct benefit under Florida law for each Movant. *GVB MD*, 2019 WL 6130825, at *6; *City of Miami*, 2022 WL 198028, at *9.

Lilly's present theory cannot be reconciled with the position it successfully advanced in this District. In *City of Miami v. Eli Lilly & Co.*, Lilly joined with other drug manufacturers in arguing that Florida law does not permit liability for unjust enrichment or money had and received where the alleged benefit did not come directly from the plaintiff; specifically, they argued that the City's claims failed because the manufacturers received no payments from the City and the City had no direct relationship with the manufacturers. Defs.' Mot. to Dismiss 22–23, ECF No. 60, *City of Miami v. Eli Lilly & Co.*, No. 1:21-cv-22636-RNS (S.D. Fla. Sept. 27, 2021). Judge Scola accepted that position and dismissed both equitable claims against Lilly and the other manufacturer defendants because the City had not "directly conferred a benefit" on them. *City of Miami*, 2022 WL 198028, at *8–9. The court focused on the City's allegations "that it contracted with insurance companies and the PBM Defendants, which then had separate relationships with the Manufacturer Defendants." *Id.* at *9. Precisely the same reasoning applies here—Lilly never alleged Movants received payments from Lilly nor had a direct relationship with Lilly for the rebate claims at issue, as discussed throughout this motion. *See* Compl. ¶¶ 54-60. This Court should follow this District's prior ruling and dismiss Lilly's unjust enrichment claims against Movants for failure to allege Lilly conferred a direct benefit to them.

19

Florida law also does not treat every downstream economic benefit as a benefit directly conferred by the plaintiff. Although a benefit may pass through an intermediary and remain direct in certain limited circumstances, the complaint must allege that the plaintiff's benefit actually flowed through the intermediary to the defendant, rather than reaching the defendant through a separate third-party transaction. *ADT LLC v. Skyline Sec. Mgmt., Inc.*, No. 24-CV-20758, 2026 WL 575122, at \*27–29 (S.D. Fla. Mar. 2, 2026). After surveying caselaw, the Court in *ADT* concluded that "[b]enefits that pass between 'corporate entities that . . . are considered distinct from the persons (or . . .companies) that comprise them' – even in the case of 'related entities'— are too far removed to be considered direct."  *Id.* at \*28 (quoting *CFLB P'ship, LLC v. Diamond Blue Int'l, Inc.*, 352 So. 3d 357, 360 (Fla. Dist. Ct. App. 2022)) (collecting cases). That is precisely what Lilly has alleged here – rebate payments that it paid to PBMs that PBMs may have paid to Health Delegates, all of which are distinct corporate entities from Movants.

The Eleventh Circuit law agrees.  In *Johnson v. Catamaran Health Sols., LLC*, plaintiffs paid membership fees to an insurance broker, which allegedly used those payments to pay premiums to an insurance company. 687 F. App'x 825, 830 (11th Cir. 2017). Even assuming the insurance company retained part of the plaintiffs' payments, the Eleventh Circuit held the benefit was "at best" indirect and affirmed dismissal of the unjust enrichment claim against the insurance company. *Id.* Again, the same is true here. Lilly alleges it paid PBMs, not Movants, and Movants somehow benefited downstream through Health Delegates. That is the same posture that the *Johnson* court rejected. Because Counts IV and V do not plead a direct benefit conferred by Lilly to any Movant, both counts should be dismissed.

### 2.	Rule 9(b) Independently Requires Dismissal Because Counts IV and V Sound in Fraud

Counts IV and V also violate Rule 9(b), which applies to unjust enrichment claims grounded in fraud. *Omnipol, A.S. v. Multinational Defense Servs., LLC*, 32 F.4th 1298, 1307 n.11 (11th Cir. 2022). Both of these counts sound in fraud. Count IV alleges that Defendants "misrepresented," "caused to be misrepresented," or "conspired to misrepresent" that Lilly's products were dispensed to patients, and that those misrepresentations caused Lilly to pay PBMs millions of dollars in "fraudulently obtained rebates." Compl. ¶ 226. Count V rests on the same theory, alleging that Defendants profited "directly and indirectly" from those alleged misrepresentations. *Id.* ¶ 232.  Rule 9(b) therefore required Lilly to plead the circumstances of the

20

alleged unjust enrichment with particularity, including "the who, what, when, where, and how" of the alleged fraud. *Pop*, 145 F.4th at 1297.

Missing from the Complaint are these detailed allegations. Lilly does not allege what each Movant specifically gained. As previously reiterated, Lilly does not allege that any unidentified PBM, Health Delegates, or other rebate aggregator transferred a specific rebate payment to any particular Movant; does not identify any specific fact alleging how Lilly's PBM payments for DrugPlace's alleged rebates were passed through; does not allege the dates or amounts of any such payments; and does not allege whether the PBMs or Health Delegates retained any portion of the rebate funds, for example. Those omissions are significant because Counts IV and V seek restitution of the benefit allegedly received and retained by Movants. Lilly alleges only that it paid PBMs and that "Defendants" profited downstream. *Omnipol* is instructive. In applying Rule 9(b), the Eleventh Circuit affirmed dismissal where the complaint did not plead key details about the movement of funds—including when the government paid one entity, when that entity transferred funds to alleged co-conspirators, and when those co-conspirators transferred funds to the defendants. *Omnipol*, 32 F.4th at 1307 n.11, 1308. Here, the Complaint has the same defect. Because Counts IV and V sound in fraud but do not plead with particularity the benefit allegedly directly received and retained by each Movant, both counts should be dismissed under Rule 9(b).

**E.      Lilly's Claims for Unjust Enrichment and Money Had and Received Should Also Be Dismissed Under Rule 12(b)(7) Because the Rebate Aggregator and the PBMs Are Required Parties (Counts IV and V)**

Rule 19 provides an independent basis to dismiss, or at minimum requires joinder of Health Delegates and the PBMs. Lilly seeks restitution, disgorgement, and a constructive trust over rebate funds it alleges were paid to PBMs—not Movants—under Counts IV and V. Lilly's theories depend upon critical non-party involvement of the PBMs and Health Delegates. Under Rule 19(a)(1)(A), a party is required where, in its absence, the court cannot accord complete relief among the existing parties. Fed. R. Civ. P. 19(a)(1)(A). If the absent party is required, "the court must order that the person be made a party." Fed. R. Civ. P. 19(a)(2).  That standard is met here.

Lilly alleges that it paid rebate funds to PBMs, not Movants, the PBMs may have paid unpled amounts to Health Delegates, and somehow Movants received funds, but Lilly lacks visibility into these downstream payments. Compl. ¶¶ 53, 58, 61–62, 226. Yet Lilly seeks restitution of those funds, disgorgement of allegedly unlawful profits, and imposition of a constructive trust. *Id.* ¶¶ 194–95, 230, 234; Prayer for Relief ¶¶ c–d. To determine whether any

21

Movant must restore money, the Court would first have to determine who received the rebate funds, who retained them, and whether any portion was passed through to Movants at all. Those questions cannot be resolved without the entities that allegedly received, allocated, retained, and distributed the funds. *See Fireman v. Travelers Cas. & Sur. Co. of Am.*, No. 10-81564-CIV, 2011 WL 743069, at *4 (S.D. Fla. Feb. 24, 2011) (ordering joinder of a non-party insured because this absent party would not be bound by any judgment and could later contest issues involving the same policy proceeds and recognizing that "all claimants to a fund must be joined to determine the disposition of that fund"); *Biscayne Park, LLC v. Madison Realty Cap., L.P.*, No. 13-20336-CIV, 2013 WL 2243975, at *8 (S.D. Fla. May 21, 2013) (ordering joinder where complete relief could not be afforded because the relevant assets were held by a non-party entity); *see also Tick v. Cohen*, 787 F.2d 1490, 1495 (11th Cir. 1986) (holding absent beneficiaries were required parties because the requested equitable remedies necessarily affected their interests).

This is significant because Lilly seeks equitable relief directed at funds that, by its own allegations, were paid to the non-party PBMs and routed through Health Delegates. Any determination regarding restitution, disgorgement, or a constructive trust necessarily requires adjudicating what happened to those funds and whether any portion was retained by entities not before the Court. Discovery cannot solve that problem. Subpoenas may obtain information, but they cannot bind Health Delegates or the PBMs, adjudicate their interests in the funds, or subject them to relief. At minimum, Health Delegates and the PBMs should be joined if feasible before Lilly is allowed to pursue restitution, disgorgement, or a constructive trust over funds allegedly paid into that rebate chain. If the Court finds that is not feasible, then Counts IV and V should be dismissed under Rules 12(b)(7) and 19.

## V.   REQUEST FOR HEARING

Movants respectfully request oral argument on their Motion to Dismiss.  Lilly's Complaint raises serious allegations of fraud against Movants, for which Lilly has not adequately pled its causes of action. Accordingly, Movants seek oral argument so that they may answer the Court's questions on any of the parties' briefings. Movants estimate the total time for oral argument, including their opening argument, Lilly's response, and Movants' reply to be roughly one hour.

## VI.   CONCLUSION

Lilly's Complaint asks the Court to impose liability on downstream parties several steps removed from the rebate payments Lilly made to non-party PBMs, while omitting the entities that

reviewed, validated, received, and allegedly routed those funds. That pleading choice cannot satisfy Rules 8, 9(b), 12(b)(6), 12(b)(7), or 19. Lilly's own allegations confirm that the PBMs—not Movants—submitted the rebate claims to Lilly, warranted or validated the claims, and received the challenged payments. Yet Lilly does not identify the PBMs, does not name Health Delegates as a defendant, and does not plead facts showing how any specific payment moved from those absent entities to any particular Movant. Lilly also has not pled first-party reliance on any Rebate Defendant, has not pled fraud with particularity as to each Movant, has not pled a viable conspiracy, and has not pled that it directly conferred any benefit on any Movant. Those defects are not mere technicalities; they go to the core of Lilly's theory of liability and prevent Movants from receiving fair notice of the claims against them. For these reasons, Movants respectfully request that the Court dismiss the Complaint in its entirety.

Dated: August 7, 2026

Respectfully submitted,

**POLSINELLI PC**

By:    */s/ Henry H. Bolz, IV*
**Henry H. Bolz, IV**
Florida Bar No. 43350
315 S. Biscayne Blvd., Suite 400
Miami, Florida 33131
Telephone: (305) 921-1811
hbolz@polsinelli.com
FLdocketing@polsinelli.com

**Adrienne Frazior** (*pro hac vice*)
Texas Bar No. 24059546
4020 Maple Ave., Suite 300
Dallas, Texas 75219
Telephone: (214) 661-5596
afrazior@polsinelli.com

**Andrew J. Ennis** (*pro hac vice*)
KS Bar No. 22445; MO Bar No. 57713
900 W. 48th Place, Suite 900
Kansas City, Missouri 64112
Telephone: (816) 374-0567
aennis@polsinelli.com

23

**Dayna Staron** (*pro hac vice*)
Illinois Bar No. 6317971
150 N. Riverside Plaza, Suite 3000
Chicago, Illinois 60606
Telephone: (312) 463-6348
dstaron@polsinelli.com

*Counsel for Defendants DrugPlace, Inc.
(FL), DrugPlace, Inc. (TN), Community
Health Initiative, Inc., Nakorn Wholesalers,
LLC, Kevin Singer, and Paul Leight*

24

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document was filed with the clerk of court and has been served upon all counsel of record on August 7, 2026 via the Court's CM/ECF system.

*/s/ Henry H. Bolz, IV*
Henry H. Bolz, IV

25