**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| ELI LILLY AND COMPANY,<br><br>        Plaintiff,<br><br>v.<br><br>DRUGPLACE, INC. (FL); DRUGPLACE, INC. (TN); COMMUNITY HEALTH INITIATIVE, INC.; NAKORN WHOLESALERS, LLC; GALAXY MED, LLC D/B/A GALAXY PHARMACY; BRIGHTLINE WHOLESALE LLC; PAUL LEIGHT; KEVIN SINGER; READUS SMITH; JERRY MAYNARD SR.; JERRY MAYNARD JR.; MISHA MAYNARD; EDGAR ENRIQUEZ; LANE MAZEI; and DANIELLE GISCOMBE,<br><br>        Defendants. | Case No. 1:26-CV-23516-FAM |

**DEFENDANTS JERRY MAYNARD SR.'S AND JERRY MAYNARD II'S
<u>MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

# TABLE OF CONTENTS

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ................................................... 1

II.     RELEVANT ALLEGED FACTUAL BACKGROUND ...................................................... 3

     1.   Factual Pleading Regarding Mr. Maynard Sr. ................................................. 4

     2.   Factual Pleading Regarding Mr. Maynard II. .................................................. 4

III.     ARGUMENT ...................................................................................................................... 5

   A.   Lilly Failed To Establish Personal Jurisdiction Over These Defendants. ............................ 5

     1.   Florida's Long-Arm Statute Does Not Cover These Defendants' Alleged Involvement. 5

     2.   Lilly's Pleading Fails To Satisfy The Due Process Clause................................................. 9

   B.   Lilly Fails To Plead A Conspiracy To Commit Fraud........................................................... 11

     1.   Lilly Fails To Plead An Underlying Common Law Fraud. ............................................. 12

     2.   Lilly Fails To Meet Its Pleading Standard For Conspiracy Under Rule 12(b)(6). ......... 13

     3.   Lilly Fails To Meet Its Pleading Standard For Conspiracy Under Rule 9(b). ................ 16

   C.   Lilly's Claims Of Unjust Enrichment and Money Had And Received Must Be Dismissed................................................................................................................................. 17

IV.     CONCLUSION................................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Abraham v. Am. Home Mortg. Serv.*,
   947 F. Supp. 2d 222 (E.D.N.Y. 2013) ................................................................................20

*Alhassid v. Bank of Am., N.A.*,
   60 F. Supp. 3d 1302 (S.D. Fla. 2014) ................................................................................15

*Allerton v. State Dep't of Ins.*,
   635 So. 2d 36 (Fla. Dist. Ct. App. 1994) .............................................................................8

*Am. Dental Ass'n v. Cigna Corp.*,
   605 F.3d 1283 (11th Cir. 2010) .....................................................................................11, 12

*Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*,
   390 F. Supp. 2d (M.D. Fla. 2005).......................................................................................19

*Am. United Life Ins. Co. v. Martinez*,
   480 F.3d 1043 (11th Cir. 2007) ..........................................................................................12

*Apex Toxicology, LLC v. United Healthcare Servs., Inc.*,
   No. 17-61840-CIV, 2020 WL 13551300 (S.D. Fla. Mar. 30, 2020) ...................................12

*Apex Toxicology, LLC v. United HealthCare Svcs., Inc.*,
   No. 17-61840-CIV, 2020 WL 13551299 (S.D. Fla. July 7, 2020) ..................................14, 15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................................11

*Barmapov v. Amuial*,
   986 F.3d 1321 (11th Cir. 2021) ..........................................................................................18

*Bauser v. Porsche Cars N. Am., Inc.*,
   No. 1:23-CV-01054, 2024 WL 2406884 (N.D. Ga. Mar. 25, 2024) ...................................20

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................................11

*Berrocal v. Att'y Gen. of U.S.*,
   136 F.4th 1043 (11th Cir. 2025) .........................................................................................15

*Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.*,
   527 F. Supp. 2d 1355 (M.D. Fla. 2007)...........................................................................3, 13

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
   116 F.3d 1364 (11th Cir. 1997) ........................................................................................12

*Coastal Wellness Centers, Inc. v. Progressive Am. Ins. Co.*,
   309 F. Supp. 3d 1216 (S.D. Fla. 2018) ...............................................................................6

*Condor, S.A. v. Plurinational State of Bolivia*,
   352 So. 3d 921 (Fla. Dist. Ct. App. 2022) ..........................................................................8

*Cordova v. Lehman Bros.*,
   526 F. Supp. 2d 1305 (S.D. Fla. 2007) ...............................................................................8

*Del Valle v. Trivago GMBH*,
   56 F.4th 1265 (11th Cir. 2022) ..........................................................................................10

*Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*,
   593 F.3d 1249 (11th Cir. 2010) .........................................................................................10

*Doe v. Ibanera, LLC*,
   No. 1:25-cv-24118, 2026 WL 2089224 (S.D. Fla. May 21, 2026)......................................12

*Doe v. Thompson*,
   620 So. 2d 1004 (Fla. 1993)..................................................................................................7

*ECB USA, Inc. v. Savencia Cheese USA, LLC*,
   148 F.4th 1332 (11th Cir. 2025) .............................................................................9, 11, 14, 15

*Epoch Int'l Partners, LLP v. Bigfoot, Inc.*,
   587 F. Supp. 3d 1214 (S.D. Fla. 2022) ..............................................................................11

*Feng v. Walsh*,
   No. 19-24138-CIV, 2021 WL 8055449 (S.D. Fla. Dec. 21, 2021)......................................13

*Fla. Fern Growers Ass'n, Inc. v. Concerned Citizens of Putnam Cnty.*,
   616 So. 2d 562 (Fla. Dist. Ct. App. 1993) .........................................................................13

*GVB MD v. Aetna Health Inc.*,
   No. 19-22357-CIV, 2019 WL 6130825 (S.D. Fla. Nov. 19, 2019) .....................................19

*Headley v. Rosenblatt*,
   No. 24-cv-24613, 2025 WL 2623834 (S.D. Fla. Sept. 10, 2025)......................................2, 9

*Honig v. Kornfeld*,
   339 F. Supp. 3d 1323 (S.D. Fla. 2018) ........................................................................14, 15

*Johnson v. Catamaran Health Solutions, LLC*,
   687 F. App'x 825 (11th Cir. 2017) ................................................................................3, 18

iv

*Keegan v. Minahan*,
No. 23-60501-CIV, 2023 WL 3884962 (S.D. Fla. June 7, 2023)...........................................13

*Kelly v. Palmer, Reifler, & Assoc., P.A.*,
681 F. Supp. 2d 1356 (S.D. Fla. 2010) ...................................................................................18

*Kopel v. Kopel*,
117 So. 3d 1147 (Fla. Dist. Ct. App. 2013) ............................................................................18

*Licciardello v. Lovelady*,
544 F.3d 1280 (11th Cir. 2008) ..............................................................................................18

*Louis Vuitton Malletier, S.A. v. Mosseri*,
736 F.3d 1339 (11th Cir. 2013) ................................................................................................5

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)................................................................................................................15

*Magluta v. Samples*,
256 F.3d 1282 (11th Cir. 2001) ..............................................................................................16

*Marine Midland Bank, N.A. v. Miller*,
664 F.2d 899 (2d Cir. 1981)....................................................................................................16

*Marrache v. Bacardi U.S.A., Inc.*,
17 F.4th 1084 (11th Cir. 2021) ...............................................................................................19

*McAndrew v. Lockheed Martin Corp.*,
206 F.3d 1031 (11th Cir. 2000) ..............................................................................................14

*Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*,
288 F.3d 1264 (11th Cir. 2002) ...........................................................................................2, 5

*Mizzaro v. Home Depot, Inc.*,
544 F.3d 1230 (11th Cir. 2008) ..............................................................................................12

*Olson v. Robbie*,
141 So. 3d 636 (Fla. Dist. Ct. App. 2014) ...............................................................................6

*Omnipol, A.S. v. Multinational Def. Servs., LLC*,
32 F.4th 1298 (11th Cir. 2022) ...........................................................................3, 12, 17, 20

*Oviedo v. Ramirez*,
No. 21-cv-23750, 2022 WL 1641865 (S.D. Fla. May 23, 2022)..............................................9

*Parisi v. Kingston*,
314 So. 3d 656 (Fla. Dist. Ct. App. 2021) ...............................................................................8

*Posner v. Essex Ins. Co., Ltd.*,
   178 F.3d 1209 (11th Cir. 1999) .........................................................................................12

*Prof. LED Lighting, Ltd. v. Aadyn Tech., LLC*,
   88 F. Supp. 3d 1356 (S.D. Fla. 2015) ................................................................................16

*Prohias v. Pfizer, Inc.*,
   490 F. Supp. 2d 1228 (S.D. Fla. 2007) ..............................................................................19

*Raimi v. Furlong*,
   702 So. 2d 1273 (Fla. Dist. Ct. App. 1997) ......................................................................14

*Rensin v. State*,
   18 So. 3d 572 (Fla. Dist. Ct. App. 2009) .........................................................................7, 8

*Rowe v. Gary, Williams, Parteni, Watson and Gary, PLLC*,
   723 F. App'x 871 (11th Cir. 2018) .....................................................................................11

*Schrier v. Qatar Islamic Bank*,
   632 F. Supp. 3d 1335 (S.D. Fla. 2022) ..............................................................................10

*Setai Hotel Acquisition, LLC v. Miami Beach Luxury Rentals, Inc.*,
   No. 16-21296-CIV, 2017 WL 3503371 (S.D. Fla. Aug. 15, 2017) ......................................6

*Solomon v. Blue Cross & Blue Shield Ass'n*,
   574 F. Supp. 2d 1288 (S.D. Fla. 2008) ..............................................................................17

*State v. Wyndham Int'l, Inc.*,
   869 So. 2d 592 (Fla. Dist. Ct. App. 2004) ...........................................................................8

*Steel Media Grp. v. Lewis*,
   No. 22-cv-21780, 2023 WL 1413043 (S.D. Fla. Jan. 6, 2023) ...........................................20

*Tippens v. Round Island Plantation LLC*,
   No. 09-CV-14036, 2009 WL 2365347 (S.D. Fla. July 31, 2009) .......................................17

*Touchcom, Inc. v. Bereskin & Parr*,
   574 F.3d 1403 (Fed. Cir. 2009) ..........................................................................................11

*Walter Lorenz Surgical, Inc. v. Teague*,
   721 So. 2d 358 (Fla. Dist. Ct. App. 1998) ...........................................................................8

*Walters v. Fast AC, LLC*,
   60 F.4th 642 (11th Cir. 2023) .............................................................................................15

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
   792 F.3d 1313 (11th Cir. 2015) ......................................................................................16, 18

*Walden v. Fiore*,
    571 U.S. 277 (2014)............................................................................................................10

**Statutes**

Fla. Stat. § 48.193 .................................................................................................................5, 6, 8

**Other Authorities**

Fed. R. Civ. P. 9(b) ...................................................................................................... *passim*

Fed. R. Civ. P. 12(b)(2).................................................................................................. *passim*

Fed. R. Civ. P. 12(b)(6).................................................................................................. *passim*

Fed. R. Evid. 201(b)(2) .................................................................................................................6

Fed. R. Evid. 201(d) .....................................................................................................................6

COGIC DEPARTMENT OF HEALTH, Serial No. 77234434, USPTO (filed July
    20, 2007), https://tmsearch.uspto.gov/search/search-results/77234434 ....................................6

DRUGPLACE, Serial No. 77235468, USPTO (filed July 21, 2007),
    https://.uspto.gov/search/search-results/77235468 ......................................................................6

READYHEALTHCARE SERVICES, Serial No. 7235471, USPTO (filed July 21,
    2007), https://tmsearch.uspto.gov/search/search-results/77235471 ...........................................6

In its complaint filed in this Court (the "Complaint"), Plaintiff Eli Lilly and Company ("Lilly") attempts to weave a web to ensnare defendants Jerry Maynard Sr. ("Mr. Maynard Sr."), Jerry Maynard II ("Mr. Maynard II")[1], and several other defendant individuals and entities (collectively, the "Defendants"). Lilly alleges that this web of wrongdoing supposedly took the form of a sprawling civil conspiracy to commit fraud through the various Defendants executing an alleged fraudulent rebate submission scheme.

Before the Court considers the allegations, the Court must first determine whether personal jurisdiction applies to Mr. Maynard Sr. or Mr. Maynard II. As they are both Tennessee citizens and generally outside this Court's personal jurisdiction, the Complaint must adequately plead personal jurisdiction applies. It plainly does not, which necessarily leads to dismissal under Federal Rule of Civil Procedure 12(b)(2). Beyond the fundamental jurisdictional issue, the holes in the web of the Complaint are too large to stick to Mr. Maynard Sr. or Mr. Maynard II. Each of their roles in any of the alleged conduct is opaque and inadequately pleaded as the factual pleading in the Complaint almost exclusively takes the form of broad, sweeping allegations imputed upon several or all Defendants at the same time. That does not satisfy Federal Rules of Civil Procedure 12(b)(6) and 9(b), which are each a separate, sufficient basis for dismissal. For many of the same reasons, the shotgun-pleading doctrine—as described by the Eleventh Circuit—or the lack of Article III standing are each an independent, sufficient basis for dismissing the claims against Mr. Maynard Sr. and Mr. Maynard II.

Each argument provides an adequate and complete basis for dismissing the claims against Mr. Maynard Sr. and Mr. Maynard II, and the Court should do just that.

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

The rebate-fraud scheme alleged in the Complaint involves DrugPlace, Inc. (FL) and DrugPlace, Inc. (TN) (collectively, "DrugPlace")[2], Community Health Initiative Inc.

---

[1] The Complaint incorrectly refers to Jerry Maynard II as Jerry Maynard, Jr., illustrating how unfamiliar Lilly is with him and his alleged conduct.

[2] As an initial matter, the Complaint almost exclusively refers to the two DrugPlace entities—DrugPlace, Inc. (TN) and DrugPlace, Inc. (FL)—as a collective entity. Even if true that those entities may share certain ownership, employees, and/or business activities, the Complaint's failure to specify which actions were taken by either of those entities undermines the Complaint's pleading in regard to each of the arguments described below.

("Community Health")[3], Nakorn Wholesalers, LLC, Galaxy Med, LLC, Brightline Wholesales LLC, and several alleged owners, principals, and officers of those entities (collectively, the "Defendants"). The claims include: common law fraud (Count I), civil conspiracy to commit fraud (Count II), negligent misrepresentation (Count III), unjust enrichment (Count IV), and money-had-and-received (Count V).

But Lilly alleges woefully little specifically about Mr. Maynard Sr. or Mr. Maynard II and includes them as defendants in only Counts II, IV, and V. Mr. Maynard Sr. is a Bishop for the Church of God in Christ (the "Church" or "COGIC") and a businessman in Nashville, Tennessee. Compl. ¶ 32. Lilly alleges that he supposedly promoted Community Health to Church members and supposedly, in a yet-unspecified manner, participated in the fraudulent scheme in his role at the Church. *Id.* Mr. Maynard II is a Church pastor, businessman, politician, and lawyer in the Nashville area. Compl. ¶ 33. He previously registered trademarks for a couple Defendant entities, and Lilly alleges, incorrectly, that he served as Chairman of the Board for Community Health. *Id.*

Beyond the one paragraph of specific allegations regarding each of them, the Complaint makes broad assertions that group several individual defendants together, which includes naming both of them as one of the "DrugPlace Officers," though Lilly never alleges when either Mr. Maynard Sr. or Mr. Maynard II was employed by or held a position at either DrugPlace entity. Compl. ¶ 38. An example of a factual assertion involving a broad group of Defendants is that Community Health and the individual defendants who reside in Tennessee personally participated in the conspiracy in Florida through businesses operating in Florida. Compl. ¶ 42. These examples of conclusory pleading persist throughout the Complaint and further riddle the conspiratorial web with more holes to the point that it cannot support Lilly's allegations.

Personal jurisdiction is a two-step test in Florida, where the Florida long-arm statute is evaluated and then, if satisfied, the Due Process Clause is evaluated. *Headley v. Rosenblatt*, No. 24-cv-24613, 2025 WL 2623834, at *2 (S.D. Fla. Sept. 10, 2025) (Moreno, J.); *see Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). Lilly bears the initial burden to establish personal jurisdiction but fails to do so given the lack of any allegations about Mr. Maynard Sr. or Mr. Maynard II participating in, directing, or supervising any activities in or

---

[3] The Complaint states that Community Health "sometimes does business under the name 'COGIC Department of Health,'" but importantly, Community Health, as detailed in the Complaint, is a separate legal entity than the Church of God in Christ ("COGIC" or the "Church"). Compl. ¶ 19.

causing any harm in Florida. As a result, the Complaint does not satisfy the long-arm statute or establish the minimum contacts needed to satisfy the Due Process Clause.

The issues persist when evaluating the merits of the three counts—Counts II, IV, and V— in light of Rules 12(b)(6) and 9(b). For the conspiracy claim, the underlying tort is not adequately pleaded generally, and multiple elements of a conspiracy—an agreement and an overt act—are not adequately pleaded generally or in relation to Mr. Maynard Sr. or Mr. Maynard II. *Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.*, 527 F. Supp. 2d 1355, 1370 (M.D. Fla. 2007). Similarly, Lilly never alleges that it conferred a benefit to Mr. Maynard Sr. or Mr. Maynard II. Since the benefit must be direct for unjust enrichment and money had and received claims, the Complaint does not adequately allege a required element of those claims. *Johnson v. Catamaran Health Solutions, LLC*, 687 F. App'x 825, 830 (11th Cir. 2017). Even if the Complaint pleads the necessary elements for each of the three claims, the Complaint does not satisfy the heightened pleading requirement of Rule 9(b) as each of those claims are fraud-based. *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1307 n.11 (11th Cir. 2022).

For these reasons, the Complaint should be dismissed as to each of these defendants.

## II.   RELEVANT ALLEGED FACTUAL BACKGROUND

While Lilly lists several Defendants in their Complaint, the Complaint fails to provide any level of detailed pleading about many of those Defendants. This is in light of the five claims within the Complaint—common law fraud, civil conspiracy to commit fraud, negligent misrepresentation, unjust enrichment, and money had and received—which require certain factual elements to be pleaded and many of which invoke heightened pleading standards. Compl. ¶¶ 205– 34. Rather than focusing on the generalized scheme described in the Complaint, this motion focuses on Lilly's lacking allegations in regard to Mr. Maynard Sr. and Mr. Maynard II.

Both are listed as defendants in only the civil conspiracy to commit fraud (Count II), unjust enrichment (Count IV), and money had and received claims (Count V). Yet the Complaint provides no factual pleadings to detail their involvement in the alleged scheme, to detail their alleged benefit from the scheme, or to detail how those counts align with their actions. Even in light of the lack of factual pleading, Mr. Maynard Sr. and Mr. Maynard II, along with Community Health and other individual defendants, allegedly "willingly creat[ed] and perpetuat[ed] a sham health plan front to which fraudulent rebates could be attributed." Compl. ¶ 215.

As alleged members of the conspiracy, Mr. Maynard Sr. and Mr. Maynard II supposedly

3

"participate[d] in and conspire[d] in the fraudulent activities at issue in Florida and through businesses operating in Florida." Compl. ¶ 42. Yet the Complaint is completely silent about any touchpoints they had with Florida as part of this conspiracy beyond this one sweeping statement.

Lilly also labels them as "DrugPlace Officers," who along with the "DrugPlace Entities," make up the "DrugPlace Conspiracy." Compl. ¶ 38. And as DrugPlace Officers, the Complaint describes them as "owners and officers of DrugPlace, Nakorn, and Community Health" meaning that they "direct[ed] and control[led] the DrugPlace Entities." Compl. ¶ 179; *see id.* ¶ 172. Yet again, the Complaint is altogether silent about what "officer" position or ownership either Mr. Maynard Sr. or Mr. Maynard II had in DrugPlace or any Drugplace Entity. Nonetheless, the Complaint also claims the proceeds of the fraud flowed to Mr. Maynard Sr. and Mr. Maynard II. Compl. ¶ 179.

### 1. Factual Pleading Regarding Mr. Maynard Sr.

The Complaint first introduces Mr. Maynard Sr. as a "Tennessee citizen residing in Ashland City, Tennessee" who "is a Church bishop and businessman in the Nashville area." Compl. ¶ 32. He allegedly "promoted Community Health to members of the Church" and allegedly "supervised, participated in, conspired to participate in, and benefited from the fraudulent scheme," in his role with the Church.[4] Compl. ¶ 32. Lilly never explains what that promotion entailed or provides any details of what his involvement was with the fraudulent scheme beyond this paragraph.

Lastly, Lilly describes a prior alleged fraud that supposedly involved several entities—*none* of which are party to this suit. Compl. ¶¶ 188, 202. None of those allegations influence the merits and pleadings for the claims here. But notably, Lilly provides more detail about Mr. Maynard Sr.'s alleged involvement in that prior, unrelated fraud than any element of Mr. Maynard Sr.'s supposed involvement in the fraud alleged in this Complaint. *See id.*

### 2. Factual Pleading Regarding Mr. Maynard II.

Mr. Maynard II is also a "Tennessee citizen residing in Nashville, Tennessee. He is a Church pastor, businessman, politician, and attorney in the Nashville area." Compl. ¶ 33. Lilly goes on to state that "he registered the trademarks for DrugPlace, Ready Healthcare Services . . . ,

---

[4] The Complaint says that Mr. Maynard Sr. had a "role at the Church," meaning COGIC or the Church of God in Christ, not the COGIC Department of Health or Community Health as described in footnote 3. Compl. ¶ 32.

and COGIC Department of Health." *Id.* But Lilly incorrectly claims that he "served as the Chairman of the Board for Community Health." *Id.* Lilly then presupposes—with no further support or detail—that he "supervised, participated in, conspired to participate in, and benefited from the fraudulent scheme" as part of "his role at Community Health and as an agent for DrugPlace." *Id.*

Ultimately, the Complaint is silent about what acts either Mr. Maynard Sr. or Mr. Maynard II took to further the conspiracy and silent about how they benefited from the alleged scheme.

## III.    ARGUMENT

### A. Lilly Failed To Establish Personal Jurisdiction Over These Defendants.

As neither Mr. Maynard Sr. nor Mr. Maynard II are residents of Florida, Lilly "bears the initial burden of alleging in the Complaint sufficient facts to make out a prima facie case of jurisdiction," but Lilly does not satisfy that burden.[5] *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (citation modified). As this Court's personal jurisdiction is coextensive with the jurisdiction of Florida state courts, the Complaint must satisfy both Florida's long-arm statute as well as the Due Process Clause. *See Meier ex rel. Meier*, 288 F.3d at 1269. The Complaint satisfies neither. As a result, the Complaint should be dismissed as it has not been established that this Court has personal jurisdiction over Mr. Maynard Sr. or Mr. Maynard II. Fed. R. Civ. P. 12(b)(2).

### 1. Florida's Long-Arm Statute Does Not Cover These Defendants' Alleged Involvement.

Turning first to Florida's long-arm statute, Lilly does not allege any conduct that would satisfy one of the nine categories of conduct within the long-arm statute. *See* Fla. Stat. § 48.193(1)(a). Notable here, neither defendant operated nor conducted a business in the state, Fla. Stat. § 48.193(1)(a)(1), nor did they commit a tortious act via the alleged conspiracy as discussed below, *infra* Section III.B; *see id.* § 48.193(1)(a)(2), and Lilly does not allege it sustained any injuries within Florida, *id.* § 48.193(1)(a)(6).

As described above, the Complaint's allegations regarding Mr. Maynard Sr. are limited and devoid of any action personally attributable to him, particularly in regard to any specific actions that allegedly took place *in Florida*. At most, the Complaint alleges he "promoted Community Health to members of the Church" and that he, Mr. Maynard II, and others helped

---

[5] Lilly never pleads that general jurisdiction applies to Mr. Maynard Sr. or Mr. Maynard II.

Community Health "creat[e] and perpetuat[e] a sham health plan front." Compl. ¶¶ 32, 215. But the Complaint acknowledges that Community Health "is a business corporation organized under the laws of the State of Tennessee with its principal place of business . . . in Nashville, Tennessee . . . [and] is therefore a citizen of Tennessee." Compl. ¶ 18. The same is true of the "COGIC Department of Health" which "was originally located [in] . . . Nashville, Tennessee." Compl. ¶ 19. And Lilly never pleads that COGIC, who Lilly chose not to include as a Defendant, is incorporated in Florida, headquartered in Florida, or operates in Florida. None of these entities are incorporated in or operated out of Florida underscoring the alleged conduct by Mr. Maynard Sr. and Mr. Maynard II never occurred in the state, Fla. Stat. § 48.193(1)(a)(1), in contrast to Lilly's baseless claim that Mr. Maynard Sr. "personally participate[d] in and conspire[d] in the fraudulent activities at issue in Florida and through businesses operating in Florida," Compl. ¶ 42.

Similarly for the allegations specific to Mr. Maynard II, none of his alleged conduct took place in Florida. Even if true that he served as "Chairman of the Board for Community Health," Compl. ¶ 33—though not true—Community Health "was originally formed as ReadyHealthcare Services Corporation and was originally located at 4300 Clarksville Pike, Nashville, *Tennessee*," Compl. ¶ 19 (emphasis added). Lilly never pleads that Community Health is incorporated in, headquartered in, or operated in Florida. *Id.* But even if he had attended "board meetings in Florida, this is insufficient, without more, to establish general jurisdiction over [a defendant]." *Olson v. Robbie*, 141 So. 3d 636, 641 (Fla. Dist. Ct. App. 2014).

On the other hand, it is true that Mr. Maynard II submitted the trademark registration filings for "DRUGPLACE,"[6] "READYHEALTHCARE SERVICES,"[7] and "COGIC DEPARTMENT OF HEALTH."[8] Compl. ¶ 33. Notably, the timing of the trademark filings[9] removes them from

---

[6] DRUGPLACE, Serial No. 77235468, USPTO (filed July 21, 2007), https://tmsearch.uspto.gov/search/search-results/77235468. Attached as Exhibit 1.

[7] READYHEALTHCARE SERVICES, Serial No. 7235471, USPTO (filed July 21, 2007), https://tmsearch.uspto.gov/search/ search-results/77235471. Attached as Exhibit 2.

[8] COGIC DEPARTMENT OF HEALTH, Serial No. 77234434, USPTO (filed July 20, 2007), https://tmsearch.uspto.gov/search/search-results/77234434. Attached as Exhibit 3.

[9] While the trademark filings are outside the Complaint, "[t]he Court may take judicial notice of government publications and website materials," even for a motion to dismiss as detailed in Jerry Maynard II's Motion for Judicial Notice, D.E. 113, which included these three trademark filings as Exhibits A-C. *Coastal Wellness Centers, Inc. v. Progressive Am. Ins. Co.*, 309 F. Supp. 3d 1216, 1220 n.4 (S.D. Fla. 2018) (citations omitted); Fed. R. Evid. 201(b)(2), (d); *see also Setai Hotel*

the conspiracy as Mr. Maynard filed the trademarks in 2007. Even more, the DRUGPLACE and READYHEALTHCARE SERVICES trademarks were deemed "Dead" "Abandoned" in 2008, and the COGIC DEPARTMENT OF HEALTH trademark was considered "Dead" "Cancelled" in 2014, meaning none of those trademarks could have, nor are the alleged to have, contributed to the conspiracy from 2020 to 2025. The trademark registration filings also rebut the assertion that Mr. Maynard II was "an agent of DrugPlace" as a function of filing these trademarks, Compl. ¶ 33, as ReadyHealthcare Services Corporation (located at 4300 Clarksville Pike, Nashville, *Tennessee*)—not DrugPlace—is the owner of the trademarks, *supra* footnote 6–8.

In an effort to seemingly establish personal jurisdiction in Florida, Lilly sweepingly describes them and other individual defendants as "DrugPlace Officers" who "direct[ed] and control[led] the DrugPlace Entities, including devising, implementing, and enforcing policies and business practices that enable the other Defendants to carry out the fraud," since some DrugPlace Entities are domiciled in Florida. Compl. ¶ 179. Yet Lilly fails to describe either defendants' position, title, association with, or responsibilities at any DrugPlace Entity, materially undercutting that claim.

Even if Lilly had adequately alleged either of them to be an officer of a DrugPlace Entity, which it did not, that invokes the "corporate shield" doctrine. *Doe v. Thompson*, 620 So. 2d 1004, 1006 (Fla. 1993). In short, "it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer." *Id.* (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 902 (2d Cir. 1981)). Here, Lilly fails to plead any action Mr. Maynard Sr. or Mr. Maynard II took outside of their alleged DrugPlace Officer roles, so if those actions are the extent of their contact with Florida, personal jurisdiction does not extend to either of them.

In response, Lilly may claim that Mr. Maynard Sr. and Mr. Maynard II were "nonresident corporate officer[s] [who] . . . directed 'fraud or other intentional misconduct,'" which is an exception to the corporate shield doctrine. *Rensin v. State*, 18 So. 3d 572, 575 (Fla. Dist. Ct. App. 2009) (quoting *Doe*, 620 So. 2d at 1006 n.1). But that argument would be misaligned with the Complaint since that exception applies only when "the nonresident corporate officer *personally and intentionally* engaged in the tortious conduct and the specific conduct of the nonresident

---

*Acquisition, LLC v. Miami Beach Luxury Rentals, Inc.*, No. 16-21296-CIV, 2017 WL 3503371, at *7 n.2 (S.D. Fla. Aug. 15, 2017) ("The Court takes judicial notice of the USPTO file history").

corporate officer was calculated to inflict a direct injury *upon a resident of Florida*." *Id.* at 576 (emphasis added). And neither of those criteria are met here.

Nowhere does the Complaint allege that either of them personally or intentionally engaged in any specific tortious conduct, meaning the corporate shield doctrine would apply. And, accordingly, this Court should dismiss for a lack of personal jurisdiction since the Complaint is "devoid of any evidence" that a corporate officer was a "primary participant" in an alleged scheme. *State v. Wyndham Int'l, Inc.*, 869 So. 2d 592, 599 (Fla. Dist. Ct. App. 2004). Similarly, the alleged conspiracy is "impermissibly vague and conclusory as to [Mr. Maynard Sr.'s and Mr. Maynard II]'s involvement and participation in this conspiracy." *Condor, S.A. v. Plurinational State of Bolivia*, 352 So. 3d 921, 927 (Fla. Dist. Ct. App. 2022). Even if the conspiracy is adequately alleged regarding other Defendants, the Court should "decline to apply the co-conspirator theory to extend jurisdiction over nonresidents if the plaintiff fails to plead with specificity any facts supporting the existence of the conspiracy and provides nothing more than vague and conclusory allegations." *Parisi v. Kingston*, 314 So. 3d 656, 661 (Fla. Dist. Ct. App. 2021). For both reasons, the alleged tortious conduct cannot be imputed on Mr. Maynard Sr. or Mr. Maynard II to establish personal jurisdiction, *see* Fla. Stat. § 48.193(1)(a)(2), since a "claim for civil conspiracy must contain, positive and specific allegations" that are not present here in regard to either of them, *Condor*, 352 So. 3d at 927 (quoting *Parisi*, 314 So. 3d at 661).

Further, Lilly is incorporated in and has its principal place of business in Indiana; it is a resident of Indiana. Compl. ¶ 12. The harm was not "calculated to inflict a direct injury upon a resident of Florida" further demonstrating that the corporate shield doctrine applies if Mr. Maynard Sr. or Mr. Maynard II are deemed to be DrugPlace Officers as alleged.[10] *Rensin*, 18 So. 3d at 576. The fact that Lilly is not a resident of Florida also demonstrates that Florida was not the site of the alleged harm to Lilly. *See* Fla. Stat. § 48.193(1)(a)(6)*.* Since the inquiry is "whether [defendant] has engaged in acts or omissions that injured [plaintiff] in Florida," Lilly's complaint cannot establish personal jurisdiction under the long-arm statute. *Walter Lorenz Surgical, Inc. v. Teague*, 721 So. 2d 358, 360 (Fla. Dist. Ct. App. 1998) (citing *Allerton v. State Dep't of Ins.*, 635 So. 2d 36, 40 (Fla. Dist. Ct. App. 1994) ("It is well-established that the commission of a tort for purposes of establishing long-arm jurisdiction . . . requires that the place of *injury* be within Florida.")).

---

[10] Again, both Mr. Maynard Sr. and Mr. Maynard II reject the allegation that they are DrugPlace Officers in all contexts of the Complaint.

Even if Lilly's Complaint made a prima facie showing of personal jurisdiction under the long-arm statute, "a defendant [can] challenge[ ] personal jurisdiction by submitting affidavit evidence in support of its position, [and] the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Headley*, 2025 WL 2623834, at *1 (Moreno, J.) (citation modified) (citation omitted). To that effect, Mr. Maynard Sr. submits an affidavit (Ex. 4) detailing that he has never lived in Florida, never been an owner, director, or officer for any DrugPlace Entities, and never traveled to Florida for any activities related to any of the allegations in the Complaint. Mr. Maynard II also submits an affidavit (Ex. 5) detailing that he has never lived in Florida, has never promoted, administered, participated in, or furthered any scheme or conduct as alleged in the Complaint, and has never traveled to Florida in any capacity for Community Health or DrugPlace. Thus, Florida's long-arm statute does not apply to either of their conduct.

When the burden shifts back to Lilly, they must "substantiate the jurisdictional allegations in the Complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the Complaint." *Oviedo v. Ramirez*, No. 21-cv-23750, 2022 WL 1641865, at *3 (S.D. Fla. May 23, 2022). Lilly will be unable to do so.[11]

### 2. Lilly's Pleading Fails To Satisfy The Due Process Clause.

Even if the Complaint satisfied Florida's long-arm statute, personal jurisdiction must comport with the Fourteenth Amendment's Due Process Clause. *See, e.g., ECB USA, Inc. v. Savencia Cheese USA, LLC*, 148 F.4th 1332, 1342 (11th Cir. 2025). To do so, the Court must determine that Mr. Maynard Sr. and Mr. Maynard II had the necessary "minimum contacts" to establish personal jurisdiction in Florida. But Lilly does not plead any facts supporting that either Mr. Maynard Sr. or Mr. Maynard II had the minimum contacts necessary for this Court to exercise personal jurisdiction over them.

---

[11] That is demonstrated by Lilly's own briefing elsewhere in this case. When seeking a temporary restraining order, Lilly's memorandum of law provided one broad sentence of allegations against Mr. Maynard Sr. and Mr. Maynard II—that they, along with other individual defendants, "created and perpetuated a sham prescription cost share program to which fraudulent rebates could be attributed." D.E. 31 at p. 13. Following Defendants' response highlighting the lacking allegations regarding Mr. Maynard Sr., Mr. Maynard II, and others, Lilly's reply claimed that the "contention that [it] d[id] not provide sufficient detail about the roles these individuals played in their scheme underscores the need for expedited discovery." D.E. 65 at p. 3. Put simply, Lilly acknowledges that discovery is needed to establish personal jurisdiction applies to Mr. Maynard Sr. and Mr. Maynard II as personal jurisdiction is not sufficiently pleaded in the Complaint.

The three-part test for minimum contacts requires: (1) Lilly's claims to arise out of or relate to the defendant's contacts with Florida; (2) defendant to have "purposefully availed" himself to the privilege of conducting activities within the forum state; and (3) the Court's exercise of personal jurisdiction aligns with traditional notions of "fair play and substantial justice." *Id.* at 1341 (quoting *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1275 (11th Cir. 2022)). Lilly "bears the burden of establishing the first two requirements, and then the burden shifts to the defendant to establish that [the Court's] exercise of jurisdiction would offend principles of fair play and substantial justice." *Id.* (citing *Louis Vuitton*, 736 F.3d at 1355). Lilly does not meet their burden.

As described above, Lilly has not alleged that any specific conduct by Mr. Maynard Sr. or Mr. Maynard II furthered the alleged conspiracy beyond overly broad statements that lack any specificity of working with Community Health or ReadyHealthcare Services, the predecessor to Community Health. Even more, Lilly has not alleged that any of their conduct took place in Florida. Thus, Lilly must rely on their alleged connection to the conspiracy to establish the minimum contacts with Florida, but that is not sufficient here. "[T]he Supreme Court has been quite clear," due process is based on the defendant's "*own affiliation* with the State, not based on the random fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State." *Schrier v. Qatar Islamic Bank*, 632 F. Supp. 3d 1335, 1367 (S.D. Fla. 2022) (internal quotations omitted) (quoting *Walden v. Fiore*, 571 U.S. 277, 286 (2014)). At the same time, Lilly does not allege that any of their actions were "aimed at the forum state, and caused harm that the defendant should have anticipated would be suffered in the forum state," since Lilly is an Indiana resident. *Del Valle*, 56 F.4th at 1276 (citing *Licciardello v. Lovelady*, 544 F.3d 1280, 1285–88 (11th Cir. 2008)). Lilly does not allege that Mr. Maynard Sr. or Mr. Maynard II "*himself* create[d] [contacts] with the forum" either due to the alleged conspiracy or due to the impact of the alleged tort, so the Complaint does not demonstrate that Lilly has met its burden of satisfying the first two-parts of the Due Process Clause test. *Schrier*, 632 F. Supp. 3d at 1367 (quoting *Walden*, 571 U.S. at 284).

Even if Lilly did meet its burden under the first two parts of the Due Process Clause test, the traditional notions of fair play and substantial justice—the third part of the test—should lead this Court to not exercise personal jurisdiction over Mr. Maynard Sr. or Mr. Maynard II. The four factors for this part of the test are: "the burden of the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, and

the shared interest of the several states in furthering fundamental substantive social policies." *Rowe v. Gary, Williams, Parteni, Watson and Gary, PLLC*, 723 F. App'x 871, 876 (11th Cir. 2018) (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1274 (11th Cir. 2010)). As the "lion's share of the conduct alleged occurred outside of [the forum state]," Tennessee "would have a significantly stronger interest in adjudicating a dispute . . . in its courts." *Id.* (citing *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1417–18 (Fed. Cir. 2009)). And the "burden would be excessive on" both Mr. Maynard Sr. and Mr. Maynard II as out-of-state defendants. *Id.* at 877. Thus, the first two factors for evaluating traditional notions of fair play and substantial justice—burden of the defendant and the forum State's interest—show that this Court "exercising jurisdiction over [these defendants] would violate the Due Process Clause." *Id.*

If either the long-arm statute or the Due Process Clause are not satisfied, the Court must dismiss the Complaint as to Mr. Maynard Sr. and Mr. Maynard II due to lacking personal jurisdiction under Rule 12(b)(2). Here, neither part of the two-part test has been satisfied, which is why Lilly eagerly seeks broad discovery in an effort to find *any* evidence to establish personal jurisdiction, which it admittedly failed to identify before filing the Complaint.

## B. Lilly Fails To Plead A Conspiracy To Commit Fraud.

Lilly's claims fail to satisfy Federal Rules of Civil Procedure 12(b)(6) and 9(b) as to Mr. Maynard Sr. and Mr. Maynard II. Failing to satisfy either rule dooms the relevant claims discussed below. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] complaint attacked by a 12(b)(6) motion to dismiss . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009) ("It is true that Rule 9(b) requires particularity when pleading 'fraud or mistake'").

More broadly, for a complaint "[t]o survive a [Rule 12(b)(6)] motion to dismiss, 'factual allegations must be enough to raise a right to relief above the speculative level' and must be sufficient 'to state a claim for relief that is plausible on its face.'" *Epoch Int'l Partners, LLP v. Bigfoot, Inc.*, 587 F. Supp. 3d 1214, 1218 (S.D. Fla. 2022) (quoting *Twombly*, 550 U.S. at 555). Meaning "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *ECB USA*, 148 F.4th at 1347 (quoting *Iqbal*, 556 U.S. at 678). And importantly, "courts may infer from the factual allegations in the Complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290

11

(11th Cir. 2010) (citations omitted) (cleaned up). This rule applies to all of Lilly's claims against Mr. Maynard Sr. and Mr. Maynard II.

As for Rule 9(b), "where a conspiracy claim alleges that two or more parties agreed to commit fraud, the plaintiff must also plead this act with specificity." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1065 (11th Cir. 2007). Thus, the Complaint must identify "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380–81 (11th Cir. 1997). As a shorthand, the Eleventh Circuit has explained Rule 9(b) to require the plaintiff to "identify[] the who, what, when, where, and how of the fraud alleged." *Omnipol, A.S.*, 32 F.4th at 1307 (citing *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008)).

None of Lilly's claims survive either standard with regard to either defendant.

### 1. Lilly Fails To Plead An Underlying Common Law Fraud.

Before turning to the pleading requirements of the conspiracy to commit fraud claim (Count II), it is important to note that "an actionable conspiracy requires an actionable underlying tort or wrong." *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1217 (11th Cir. 1999) (citation omitted). Even so, Lilly does not include Mr. Maynard Sr. or Mr. Maynard II as defendants to the common law fraud claim (Count I), but that is precisely the underlying tort for the alleged conspiracy to commit fraud. Compl. ¶ 206. And if Lilly has not adequately pleaded the underlying tort, the related conspiracy claim must fail as well. *See Posner*, 178 F.3d at 1217 (citations omitted) ("[Plaintiff] stumbles on the first element of this test: he does not allege an actionable conspiracy. Under Florida law, an actionable conspiracy requires an actionable underlying tort or wrong."); *see, e.g., Doe v. Ibanera, LLC*, No. 1:25-cv-24118, 2026 WL 2089224, at *12 (S.D. Fla. May 21, 2026) ("Whether the Court may exercise personal jurisdiction over [defendant] under a conspiracy theory turns largely on whether Plaintiff, in fact, states a claim for conspiracy under the [underlying tort]."); *Apex Toxicology, LLC v. United Healthcare Servs., Inc.*, No. 17-61840-CIV, 2020 WL 13551300, at *6 (S.D. Fla. Mar. 30, 2020) [hereinafter *Apex I*] (citation omitted) ("Civil conspiracy is not an independent cause of action").

Mr. Maynard Sr. and Mr. Maynard II join and incorporate by reference DrugPlace's arguments in its motion regarding why Lilly's common law fraud claim must fail. (D.E. 115). In

12

an effort to avoid rehashing those arguments in full, this motion highlights only two arguments from that motion. First, Lilly does not allege first-party reliance regarding the rebates from 2020 to 2025 since PBMs—not Defendants—submitted the rebates. Compl. ¶ 99 ("a series of intermediaries [submitted rebates] to Lilly"). Since "first-party reliance is an element of common-law fraud," that causes the claim to fail under Rule 12(b)(6). *Feng v. Walsh*, No. 19-24138-CIV, 2021 WL 8055449, at \*10 (S.D. Fla. Dec. 21, 2021) (citation omitted). Second, Lilly consistently does not satisfy the who, what, when, where, and how as shown by the Complaint's inability to identify which Defendants made certain statements as part of the alleged common law fraud, as "vaguely attribut[ing] the alleged fraudulent statements and omissions to all [ ] of the defendants simultaneously" will cause the Complaint to trip over the heightened pleading standard of Rule 9(b). *Keegan v. Minahan*, No. 23-60501-CIV, 2023 WL 3884962, at \*4 (S.D. Fla. June 7, 2023).

If the Court dismisses the common law fraud claim, the related conspiracy claim must fall.

### 2. Lilly Fails To Meet Its Pleading Standard For Conspiracy Under Rule 12(b)(6).

Even if Lilly adequately pled the underlying fraud claim, the related conspiracy claim has Rule 12(b)(6) and Rule 9(b) problems of its own, so Count II must be dismissed.

Turning first to the elements of the claim "[u]nder Florida law, a cause of action for civil conspiracy requires: (1) an agreement between two or more parties; (2) to perform an unlawful act; (3) the doing of some overt act in pursuance of the conspiracy, and (4) damage to plaintiff as a result of the acts done under the conspiracy." *Bray & Gillespie Mgmt.*, 527 F. Supp. 2d at 1370 (citing *Fla. Fern Growers Ass'n, Inc. v. Concerned Citizens of Putnam Cnty.*, 616 So. 2d 562, 565 (Fla. Dist. Ct. App. 1993)).

The Court needs to look no further than the first element—an agreement between two or more parties—to find that the Complaint does not satisfy Rule 12(b)(6), as no agreement involving Mr. Maynard Sr. or Mr. Maynard II with each other or with any Defendants is adequately alleged. To be sure, the Complaint mentions many agreements in detail, but those agreements are between insurance plan beneficiaries and the insurance plans, Compl. ¶ 49, PBMs and drug manufacturers, *id.* ¶ 52, PBMs and their health plan clients, *id.* ¶ 55, PBMs and drug manufacturers, *id.* ¶ 61, Lilly and DrugPlace, *id.* ¶¶ 67–69, 198, Singer and Lilly, *id.* ¶¶ 75, 81, physicians and Community Health, *id.* ¶ 80, and Jarrod Shirly and South Pointe Wholesale, Inc., *id.* ¶ 189.

Conversely, the only two mentions of any sort of agreement between Defendants lack details. Lilly first alleges that "[e]ach individual Defendant is or has been an officer, supervisor,

13

or employee at one or more DrugPlace Entities. As such, they were personally involved in running the DrugPlace Conspiracy, and they *agreed* to participate in and engaged in overt acts in pursuit of its objectives." Compl. ¶ 178 (emphasis added). And the second mention of any agreement is that "Defendants unlawfully, knowingly, and willfully combined, conspired, confederated and *agreed* together to defraud Lilly. All Defendants adopted the goal of furthering and facilitating this conspiracy." Compl. ¶ 213 (emphasis added). Again, Lilly fails to plead any details regarding these agreements between Defendants, particularly with respect to Mr. Maynard Sr. or Mr. Maynard II.

Those kinds of conclusory allegations that an agreement existed among Defendants without any details are not adequate to satisfy Rule 12(b)(6). *Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1345 (S.D. Fla. 2018). And the Eleventh Circuit's instruction on that kind of pleading is clear, this Court should understand Lilly's broad statements "[a]lleging that the parties 'agreed' and 'acted in furtherance' of the conspiracy [as] restat[ing] the language of a Florida conspiracy claim," not adequately pleading the claim. *ECB USA*, 148 F.4th at 1347 (citing *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. Dist. Ct. App. 1997)). This Court should heed that instruction and find that Lilly has not alleged an agreement existed among the Defendants, let alone any agreement allegedly involving Mr. Maynard Sr. or Mr. Maynard II.

Even if Lilly had satisfactorily pled that an agreement existed, the intracorporate conspiracy doctrine also prevents Lilly from succeeding. Traditionally understood, the intracorporate conspiracy doctrine explains that "a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000). At first glance, that appears to cause an issue here as Defendants include several entities and a handful of individuals. But not so. An entity "cannot conspire with its employees, *owners*, and *affiliates*" since the "'doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy.'" *Apex Toxicology, LLC v. United HealthCare Svcs., Inc.*, No. 17-61840-CIV, 2020 WL 13551299, at *7 (S.D. Fla. July 7, 2020) [hereinafter *Apex II*] (emphasis added) (quoting *McAndrew*, 206 F.3d at 1036). Mr. Maynard Sr. and Mr. Maynard II are alleged to be DrugPlace Officers, meaning they are one of the "owners and officers of DrugPlace, Nakorn, and Community Health," and that employment, ownership, or affiliate relationship with the DrugPlace Entities prevents the application of the conspiracy claim to them. Compl. ¶ 179.

14

The third element—an overt act in pursuance of the conspiracy—is also not alleged as to Mr. Maynard Sr. or Mr. Maynard II since the Complaint does not identify a single, individualized act by either defendant to further the alleged conspiracy as detailed above. In turn, Lilly may argue that Mr. Maynard Sr. and Mr. Maynard II as "conspirator[s] need only know of the scheme and assist in it in some way to be held responsible for all of the acts of his coconspirators." *Honig*, 339 F. Supp. 3d at 1345 (citation omitted). But Lilly does not even adequately allege the requisite knowledge or assistance as "allegations that the co-conspirators were 'engaged in the same scheme,' alone, are insufficient to state a claim for civil conspiracy." *Id.* (quoting *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1319 (S.D. Fla. 2014)). When understood in light of the Eleventh Circuit's instruction in *ECB USA*, Lilly's conspiracy claim against Mr. Maynard Sr. and Mr. Maynard II should be dismissed for simply reciting the elements in a nonspecific way. 148 F.4th at 1347; *see also Apex II*, 2020 WL 13551299, at *5.

An Article III standing issue for a lack of traceability may also exist in Lilly's Complaint regarding Mr. Maynard Sr. and Mr. Maynard II for similar reasons, which would apply to the three claims that Lilly asserts against them. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Lilly "must at least demonstrate *factual* causation between [its] injuries and the defendant's misconduct." *Walters v. Fast AC, LLC*, 60 F.4th 642, 650 (11th Cir. 2023). Here, Lilly only claims that Mr. Maynard Sr. "promoted Community Health to members of the Church," Compl. ¶ 32, and that Mr. Maynard II served on the Community Health board and filed trademarks, Compl. ¶ 33. But the fraudulent scheme was—in Lilly's own words—"DrugPlace submit[ting], through intermediaries, fraudulent rebate claims to Lilly for hundreds of millions of dollars." Compl. ¶ 95. Thus, promoting Community Health to Church members, serving on Community Health's board, or filing trademarks in no way relates to the creation or submission of fraudulent rebates, meaning their conduct is not factually connected to any of Lilly's alleged harm. And Lilly underscores its potential "fail[ure] to establish traceability when [Lilly] complain[s] of actions performed by an independent third-party rather than the named defendants," *Berrocal v. Att'y Gen. of U.S.*, 136 F.4th 1043, 1050 (11th Cir. 2025), since the "multi-step chain of intermediaries"—the PBMs—"submitted [rebate claims] to Lilly" rather than Defendants. Compl. ¶ 8.

Any of these arguments—the first element not being adequately pleaded, the application of the intracorporate doctrine, or the third element not being adequately pleaded—cause Lilly's allegations to run afoul of Rule 12(b)(6) and possibly demonstrate a lack of standing.

15

### 3. Lilly Fails To Meet Its Pleading Standard For Conspiracy Under Rule 9(b).

To adhere to Rule 9(b), a complaint should not "obscure[ ] the roles the separate [ ] defendants individually played in the alleged fraud, [or] fail[ ] to provide them fair notice of their alleged misconduct as required by Rule 9(b)." *Prof. LED Lighting, Ltd. v. Aadyn Tech., LLC*, 88 F. Supp. 3d 1356, 1374 (S.D. Fla. 2015). Yet that is exactly what Lilly did in its Complaint.

Overwhelmingly, the Complaint groups the Defendants—for example, DrugPlace Entities and DrugPlace Officers—making it difficult to understand what actions the Complaint attributes to any single Defendant.[12] *Cordova v. Lehman Bros.*, 526 F. Supp. 2d 1305, 1313 (S.D. Fla. 2007) *aff'd in rel. part sub nom. Puterman v. Lehman Bros.*, 332 F. App'x 549 (11th Cir. 2009). It is important to analyze the single individualized paragraph about these defendants.

The Complaint limits Mr. Maynard Sr.'s involvement to allegedly "promot[ing] Community Health to members of the Church" and "[i]n his role at the Church, supervised, participated in, conspired to participate in, and benefited from the fraudulent scheme." Compl. ¶ 32. That is the only allegation pleaded about Mr. Maynard Sr., and it does not satisfy Rule 9(b). The Complaint never identifies who Mr. Maynard Sr. promoted Community Health to beyond "members of the Church," what he said about Community Health to those people, when those communications were made, where those communications occurred, and how he made those promotions. *See Omnipol, A.S.*, 32 F.4th at 1307. That cannot be enough to survive Rule 9(b) scrutiny. Similarly, it does not explain how he participated in, conspired to participate in, or benefited from the scheme *in his role at the Church*. *Id.* In particular, the Church—the Church of God in Christ—is never alleged to have directed, conspired, or benefited from the alleged scheme, so it would be impossible for him to have done so in his role at the Church. Further, "promot[ing] Community Health to members of the Church" is not fraudulent, conspiratorial, or otherwise unlawful. Compl. ¶ 32. And Lilly's failure to plead that this "promotion" to Church members was

---

[12] For many of the same reasons, the Complaint should be dismissed for shotgun pleading since it committed "the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions," which mean the pleading "fail[s] to one degree or another . . . to give the defendants adequate notice of the claims against them." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). This is further exemplified by the Complaint being "replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the [many] defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of." *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001).

conducted in an unlawful way also demonstrates Lilly's failure to adequately plead under Rule 9(b) as the conspiracy claim requires an "unlawful act or [ ] a lawful act by unlawful means" for the second element of the claim. *Tippens v. Round Island Plantation LLC*, No. 09-CV-14036, 2009 WL 2365347, at *4 (S.D. Fla. July 31, 2009).

And Mr. Maynard II's alleged involvement is limited to serving on the Community Health board and filing trademark registrations. Compl. ¶ 33. For the same reasons as Mr. Maynard Sr., Rule 9(b) is not satisfied as to Mr. Maynard II. Even if accepted as true, serving on a board or providing limited legal representation almost 20 years before the alleged conspiracy does not explain the who, what, when, where, or how of the alleged conspiracy nor does it demonstrate an unlawful act or a lawful act by unlawful means. *Omnipol, A.S.*, 32 F.4th at 1307. The baselessness of the alleged connection between Mr. Maynard II and the conspiracy is clearly illustrated by Lilly's failure to include any other Community Health board member as a Defendant or any other outside counsel to any DrugPlace Entity as a Defendant.

Even if the Court determines that the broad pleadings about a group of Defendants can be applied to Mr. Maynard Sr. and Mr. Maynard II, the Complaint fares no better. For example, the claim that they, along with other Defendants, "create[ed] and petuat[ed] a sham health plan front" is equally vague. Compl. ¶ 215. The Complaint provides no detail of the agreement to create such a health plan front, e.g. "[t]he Complaint contains no date when an agreement took place" to perpetuate those alleged acts meaning that there is no "when" to satisfy Rule 9(b). *Solomon v. Blue Cross & Blue Shield Ass'n*, 574 F. Supp. 2d 1288, 1292 (S.D. Fla. 2008) (Moreno, J.).

The civil conspiracy claim falls flat in light of both Rule 12(b)(6) and Rule 9(b) challenges, and Lilly's decision to group Defendants throughout the Complaint in an effort to skirt the pleading standards should not be rewarded. On these bases, the Court should dismiss Count II as to Mr. Maynard Sr. and Mr. Maynard II.

### C.  Lilly's Claims Of Unjust Enrichment and Money Had And Received Must Be Dismissed.

The claims for unjust enrichment (Count IV) and money had and received (Count V) are remarkably similar claims.[13] Florida law understands these claims as the same theory of recovery

---

[13] These claims also demonstrate another error of shotgun pleading by Lilly, meaning the Court should dismiss all claims. The Complaint "contain[s] multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and

with identical elements. *Kelly v. Palmer, Reifler, & Assoc., P.A.*, 681 F. Supp. 2d 1356, 1384 (S.D. Fla. 2010) (Moreno, J.) (adopting a report and recommendation that states "unjust enrichment[ ] and an action for money had and received are different names for the same cause of action").

These claims have three elements: "(1) plaintiff conferred a benefit on the defendant; (2) defendant voluntarily accepted and retained the benefit; and (3) it would be inequitable for defendant to retain the benefit without paying the value of the benefit to plaintiff." *Catamaran Health Solutions*, 687 F. App'x at 830. And that benefit must be direct. *Id.* As detailed above, Rule 12(b)(6) requires Lilly to adequately plead each element for these claims to survive a motion to dismiss, and Lilly falls short on each element here. In fact, Lilly does not allege a direct benefit occurred for any Defendant, let alone Mr. Maynard Sr. and Mr. Maynard II, since "Lilly [paid] PBMs millions of dollars in fraudulently obtained rebates," not the Defendants. Compl. ¶ 226.

Even so, at no time does the Complaint allege Mr. Maynard Sr. or Mr. Maynard II received, accepted, or retained any benefit directly from Lilly, only that the "proceeds of Defendants' fraud flow to Leight, Singer, Smith, Enriquez, Jerry Maynard Sr., Jerry Maynard Jr., Misha Maynard, Mazei, Giscombe and others." *See* Compl. ¶ 179. Even if true—which it is not—that funds eventually flowed to Mr. Maynard Sr. or Mr. Maynard II from any of the DrugPlace Entities because of the alleged fraud, that does not satisfy the directness requirement for these claims. A "defendant ultimately retain[ing] at least a portion of the payments" from a plaintiff does not cause a payment to be direct when the plaintiff initially paid an affiliate company of a defendant. *Catamaran Health Solutions*, 687 F. App'x at 830; *see also Kopel v. Kopel*, 117 So. 3d 1147, 1152–53 (Fla. Dist. Ct. App. 2013) (holding a plaintiff's payment of approximately $1.8 million into two corporations in which the defendant had two-thirds ownership stakes constituted an "indirect" benefit to the defendant that could not support an unjust enrichment claim), *rev'd on other grounds*, 229 So. 3d 812 (Fla. 2017).

---

the last count to be a combination of the entire complaint," which is "[t]he most common type" of shotgun pleading. *Weiland*, 792 F.3d at 1322. In effect, the "complaint indiscriminately incorporates and repeats [204] numbered paragraphs of factual allegations—spanning [57] pages—into [five] counts, without any effort to connect or separate which of those [204] factual allegations relate to a particular count." *Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021). Due to the shotgun pleading, "these [five] counts include factual allegations that are immaterial to the underlying causes of action." *Id.* Mr. Maynard Sr. and Mr. Maynard II join and incorporate by reference DrugPlace's arguments in its motion regarding Lilly's shotgun pleading.

18

But any funds flowing to Mr. Maynard Sr. or Mr. Maynard II would be even further removed than these examples as Lilly never alleges that they are owners or officers of any DrugPlace Entity or any PBM mentioned in the Complaint. Instead, Mr. Maynard Sr.'s "role at the Church" is what supposedly led to him "benefit[ing] from the fraudulent scheme." Compl. ¶ 32. And Lilly never alleges that the Church received any payment from Lilly, meaning that the flow of alleged fraudulent funds must have been from Lilly to a PBM to a DrugPlace Entity to the Church to Mr. Maynard Sr. *See* Compl. ¶¶ 56–63, 100–104, 193–194. And Mr. Maynard II's "role at Community Health and as an agent for DrugPlace," is what supposedly led to him "benefit[ing] from the fraudulent scheme." Compl. ¶ 33. But again, Lilly does not allege it made payments to Community Health, and Mr. Maynard II filing trademarks—almost two decades prior to the alleged conspiracy—on behalf of Ready Healthcare Service, the predecessor to Community Health, does not make him an agent of DrugPlace as those are separate entities.

The multiple steps between Lilly and Mr. Maynard Sr. or Mr. Maynard II remove any doubt that a benefit from Lilly flowed directly to them. *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1102 (11th Cir. 2021); *see GVB MD v. Aetna Health Inc.*, No. 19-22357-CIV, 2019 WL 6130825, at *6 (S.D. Fla. Nov. 19, 2019) (Moreno, J.) ("Importantly, the Florida Supreme Court has ruled the plaintiff must directly confer the benefit to the defendant.") (citation omitted). This alone should lead the Court to dismiss these claims as the first and second elements of the claims—Lilly conferring a direct benefit to Mr. Maynard Sr. or Mr. Maynard II and those defendants accepting and retaining the benefit—are not satisfied.

Even more, "[u]njust enrichment is an equitable doctrine," as indicated by the third element—a defendant retaining a benefit would be *inequitable* without paying for it. *Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1235 (S.D. Fla. 2007). If a plaintiff "do[es] not plead that [it] lack[s] an adequate legal remedy," it does not "'properly state a claim for unjust enrichment.'" *Id.* (quoting *Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005)). The Complaint makes that mistake here.

While true that Lilly states that the harm it faces is "impossible to adequately remedy by money damages," that is not alleged specifically to these claims. Compl. ¶ 196. Further, regarding Mr. Maynard Sr.'s and Mr. Maynard II's conduct, Lilly "fails to allege, either in connection with its unjust enrichment claim or anywhere in the Complaint, that no adequate remedy at law is available" to address any harm caused by them. *Steel Media Grp. v. Lewis*, No. 22-cv-21780,

19

2023 WL 1413043, at *10 (S.D. Fla. Jan. 6, 2023), *report and recommendation adopted*, No. 22-cv-21780, 2023 WL 1332832 (S.D. Fla. Jan. 31, 2023). Put differently, a plaintiff seeking an equitable remedy is not equivalent to pleading that no adequate remedy at law is available. And Lilly does just that—it seeks an equitable remedy against Mr. Maynard Sr. and Mr. Maynard II without stating that a legal remedy would be inadequate. That pleading failure acts as another independent basis for dismissal.

Lastly, "[b]ecause [Lilly's] claims . . . 'sound in fraud,' they are also subject to Rule 9(b)'s requirements." *Omnipol, A.S.*, 32 F.4th at 1307 n.11 (citing *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1127 (11th Cir. 2019)); *see Steel Media Grp.*, 2023 WL 1413043, at *9. The heightened pleading requirement of Rule 9(b) applies to "fraud-based claims," like unjust enrichment and money had and received, to ensure the Complaint includes the necessary particularity of the alleged fraudulent activity. *Bauser v. Porsche Cars N. Am., Inc.*, No. 1:23-CV-01054, 2024 WL 2406884, at *12 (N.D. Ga. Mar. 25, 2024); *see also Abraham v. Am. Home Mortg. Serv.*, 947 F. Supp. 2d 222, 230 (E.D.N.Y. 2013) (collecting cases). As detailed above, *supra* Section III.B.3, the allegations involving Mr. Maynard Sr. and Mr. Maynard II consistently fall short of that heightened standard.

Both claims of unjust enrichment and money had and received fall short when scrutinized under Rule 12(b)(6) and Rule 9(b) due to the lack of a direct benefit and the existence of a legal remedy. So the Court should dismiss both Counts IV and V as to these defendants.

## IV.   CONCLUSION

For the foregoing reasons, this Court should dismiss Lilly's claims against both Mr. Maynard Sr. and Mr. Maynard II under Rule 12(b)(2) because Lilly failed to establish this Court's jurisdiction over these defendants. Lilly's three claims against these defendants also fall short in light of Rule 12(b)(6) and the heightened pleading requirement of Rule 9(b) for fraud-based claims. Even more, the shotgun-pleading doctrine and the potential lack of Article III standing provide other alternative grounds for a dismissal of these defendants. Thus, this Court should dismiss Lilly's claims against Mr. Maynard Sr. and Mr. Maynard II with prejudice, or in the alternative, without prejudice requiring Lilly to amend its Complaint to remedy its pleading shortfalls.

## REQUEST FOR HEARING

These defendants respectfully request, pursuant to Local Rule 7.1(b)(2), that a hearing be scheduled as to the issues raised in this Motion. A hearing would allow the parties to more fully clarify and explain their arguments in relation to each Defendant. These defendants estimate that the time required for the hearing would not exceed 60 minutes.

Dated: August 7, 2026

Respectfully submitted,

By: /s/ *Andrew F. Solinger*
Andrew F. Solinger, TN BPR # 036943
(Admitted *Pro Hac Vice*)
Symphony Place
150 Third Avenue South
Suite 2800
Nashville, Tennessee 37201
Tel: (615) 850-8062
Fax: (615) 244-6804
Email: andrew.solinger@hklaw.com

Wifredo A. Ferrer, FL Bar # 887005
Holland & Knight LLP
701 Brickell Ave.
Suite 3000
Miami, Florida 33131
Tel: (305) 789-7780
Fax: (305) 789-7799
Email: Wifredo.Ferrer@hklaw.com

*Attorneys for Defendant Jerry Maynard Sr.*

By: /s/ *Henry Leventis*
Henry C. Leventis, TN BPR # 038306
(Admitted *Pro Hac Vice*)
Symphony Place
150 Third Avenue South
Suite 2800
Nashville, Tennessee 37201
Tel: (615) 850-6110
Fax: (615) 244-6804
Email: henry.leventis@hklaw.com

21

Ross C. Hildabrand, TN BPR # 040269
(Admitted *Pro Hac Vice*)
Symphony Place
150 Third Avenue South
Suite 2800
Nashville, Tennessee 37201
Tel: (615) 850-6069
Fax: (615) 244-6804
Email: ross.hildabrand@hklaw.com

Wifredo A. Ferrer, FL Bar # 887005
Holland & Knight LLP
701 Brickell Ave.
Suite 3000
Miami, Florida 33131
Tel: (305) 789-7780
Fax: (305) 789-7799
Email: Wifredo.Ferrer@hklaw.com

*Attorneys for Defendant Jerry Maynard II*

22