**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

ELI LILLY AND COMPANY,

**CASE NO.: 1:26-CV-23516-FAM (EFD)**

Plaintiff,

v.

DRUGPLACE, INC.(FL); DRUGPLACE, INC. (TN); COMMUNITY HEALTH INITIATIVE, INC.; NAKORN WHOLESALERS LLC; GALAXY MED, LLC d/b/a GALAXY PHARMACY; BRIGHTLINE WHOLESALE LLC; KEVIN SINGER; PAUL LEIGHT; READUS SMITH; JERRY MAYNARD SR.; JERRY MAYNARD JR.; MISHA MAYNARD; EDGAR ENRIQUEZ; LANE MAZEI; DANIELLE GISCOMBE,

Defendants.

_______________________________________/

**PLAINTIFF ELI LILLY AND COMPANY'S**
**OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT ....................1

ARGUMENT ....................2

I. Defendants' Motions Should Be Denied as Moot in Light of Lilly's Amended Complaint ....................2

II. Defendants' Motions Are Meritless and Lilly Has Sufficiently Alleged Every Claim Against All Defendants ....................3

A. Lilly's Complaint Sufficiently Alleged Fraud under the Rule 9(b) Pleading Standard ....................3

1. Lilly Sufficiently Alleged The "Who, What, Where, When, and How" of Defendants' Fraud ....................4

2. Lilly Sufficiently Alleged Reliance on Defendants' Misrepresentations ....................7

B. Lilly Sufficiently Alleged Defendants' Civil Conspiracy Under the Rule 9(b) Pleading Standard ....................8

C. Lilly Sufficiently Alleged Its Claims for Unjust Enrichment and Money Had and Received ....................10

D. The Court Has Personal Jurisdiction over Defendants Maynard Sr., Maynard Jr., Enriquez, and Giscombe ....................11

1. The Non-Resident Defendants Conspired with the Florida Defendants ....................11

2. Any Questions Relating to Specific Jurisdiction Are Factual Issues Which Should Be Resolved Through Jurisdictional Discovery ....................13

III. The Amended Complaint's Additional Allegations Further Vitiate Defendants' Dismissal Arguments ....................15

A. The Amended Complaint's Detailed Flow-of-Funds Allegations Foreclose Defendants' "No Direct Benefit" Argument ....................15

B. The Amended Complaint Adds Particularized Allegations of Each Individual Defendant's Role, Eliminating Any "Group Pleading" Objection ....................16

C. The Amended Complaint Alleges Direct Evidence of the Fraud, Eviscerating Defendants' Plausibility Challenges ....................17

D. The Amended Complaint's Further Personal Jurisdiction Allegations Negate Any Purported Jurisdictional Deficiencies ....................18

CONCLUSION ....................19

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adventist Health Sys. Sunbelt Healthcare Corp. v. Weiss*,
No. 6:20-cv-877-Orl-40DCI, 2021 WL 1238321 (M.D. Fla. Feb. 22, 2021)..........................10

*Am. C.L. Union of Fla., Inc. v. City of Sarasota*,
859 F.3d 1337 (11th Cir. 2017) ..........................................................................................14

*Amersham Enters. v. Hakim-Daccach*,
333 So. 3d 289 (Fla. 3d DCA 2022) .....................................................................................11

*Apex Toxicology, LLC v. United HealthCare Servs., Inc.*,
No. 17-61840-CIV-SMITH, 2020 WL 13551299 (S.D. Fla. July 7, 2020)............................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................................................3

*AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*,
608 F. Supp. 2d 1349 (S.D. Fla. 2009) ..........................................................................11, 13

*Benavides v. Tesla, Inc.*,
804 F. Supp. 3d 1242 (S.D. Fla. 2025) ..................................................................................4

*Cincinnati Ins. Co. v. Atlas Healthcare, LLC*,
No. 2:17-CV-1310-TMP, 2019 WL 450854 (N.D. Ala. Feb. 5, 2019) ....................................6

*Clear Spring Prop. & Cas. Co. v. Astonbluwaves LLC*,
No. 22-21854-CIV, 2023 WL 5337523 (S.D. Fla. July 28, 2023) ...........................................2

*Cordell Consultant, Inc. Money Purchase Plan & Tr. v. Abbott*,
561 F. App'x 882 (11th Cir. 2014) ..........................................................................................9

*DeRossett v. Southeast Toyota Dist. Inc.*,
*No*. 17-CV-60415, 2017 WL 7344406 (S.D. Fla. Aug. 18, 2017)..........................................12

*Diamond Resorts U.S. Collection Dev., LLC v. Miller*,
No. 6:20-CV-1668-PGB-LRH, 2022 WL 445508 (M.D. Fla. Jan. 11, 2022) ...........................9

*Donofrio v. Matassini*,
503 So. 2d 1278 (Fla. 2d DCA 1987) .....................................................................................8

*Edgerton v. Sch. Bd. of Miami-Dade Cnty.*,
No. 1:23-CV-24242-DPG, 2024 WL 3696318 (S.D. Fla. July 2, 2024) .................................2

*Energy Source, Inc. v. Gleeko Props., LLC*,
No. 10-21162-CIV, 2011 WL 3236047 (S.D. Fla. July 28, 2011) ....................12

*Fason v. Queenship Publ'g Co.*,
No. 4:06CV483-RH/WCS, 2007 WL 9735377 (N.D. Fla. June 5, 2007) ....................12

*Fed. Deposit Ins. Corp. ex rel. First Nat'l Bank of Nevada v. Lazcano*,
No. 08-21769, 2009 WL 10699886 (S.D. Fla. Jan. 6, 2009) ....................6

*Frida Kahlo Corp. v. Pinedo*,
No. 18-21826-CIV, 2021 WL 4147876 (S.D. Fla. Sept. 13, 2021) ....................12

*Fritz v. Standard Sec. Life Ins. Co. of N.Y.*,
676 F.2d 1356 (11th Cir. 1982) ....................2

*Funez v. CMI Leisure Mgmt., Inc.*,
482 F. Supp. 3d 1252 (S.D. Fla. 2020) ....................14

*Gov't Emps. Ins. Co. v. AFO Imaging, Inc.*,
No. 8:20-cv-2419-VMC-CPT, 2021 WL 734575 (M.D. Fla. Feb. 25, 2021) ....................6

*Gov't Emps. Ins. Co. v. Mas*,
No. 19-21183-CIV, 2020 WL 9604436 (S.D. Fla. Mar. 31, 2020) ....................17

*Indian River Merch. Servs., LLC v. Nolte*,
817 F. Supp. 3d 1335 (S.D. Fla. 2026) ....................13

*Kirwin v. Price Commc'ns Corp.*,
391 F.3d 1323 (11th Cir. 2004) ....................10

*Knieper v. Forest Grp. USA, Inc.*,
No. 4:15-CV-00222-HLM, 2016 WL 9449794 (N.D. Ga. Sept. 12, 2016), *order clarified*, No. 4:15-CV-00222-HLM, 2017 WL 3449601 (N.D. Ga. Jan. 23, 2017) ....................17

*Koch v. Royal Wine Merchants, Ltd.*,
907 F. Supp. 2d 1332 (S.D. Fla. 2012) ....................4, 7

*Licciardello v. Lovelady*,
544 F.3d 1280 (11th Cir. 2008) ....................13

*Lizarazo v. Miami-Dade Cnty.*,
No. 1:16-CV-20558-UU, 2016 WL 11589782 (S.D. Fla. May 17, 2016) ....................2

*Loanflight Lending, LLC v. Wood*,
388 So. 3d 1027 (Fla. 3d DCA 2024) ....................4

*LSM Techs. PTY LTD. v. Sy-Klone Co., LLC*,
No. 3:22-CV-1019-BJD-MCR, 2023 WL 5934386 (M.D. Fla. Aug. 8, 2023) ........................12

*Melton v. Century Arms, Inc.*,
243 F. Supp. 3d 1290 (S.D. Fla. 2017) (Moreno, J.) ..................................................3

*Metrahealth Ins. Co. v. Anclote Psychiatric Hosp., Ltd.*,
No. 96-CV-2547, 1997 WL 728084 (M.D. Fla. Oct. 23, 1997) ..................................6

*Mighty Men of God, Inc. v. World Outreach Church of Murfreesboro Tenn., Inc.*,
102 F. Supp. 3d 1264 (M.D. Fla. 2015)......................................................................12

*Morris v. Deutsche Bank Tr. Co. Americas*,
No. 13-60689-CIV, 2013 WL 12146954 (S.D. Fla. Aug. 28, 2013) ..........................2

*O'Hare v. Town of Gulf Stream*,
No. 13-CV-81053, 2015 WL 12978173 (S.D. Fla. Jan. 22, 2015)..............................2

*Omnipol, A.S. v. Multinational Def. Servs., LLC*,
32 F.4th 1298 (11th Cir. 2022) ....................................................................................3

*Otto Candies, LLC v. Citigroup Inc.*,
137 F.4th 1158 (11th Cir. 2025) ...............................................................................4, 7

*Peach.com, LLC v. Peachly, LLC*,
No. 21-20636-CIV, 2021 WL 7542983 (S.D. Fla. June 16, 2021)...........................13

*Plasticos Vandux De Colombia, S.A. v. Robanda Int'l*,
No. 10-60188-CIV, 2010 WL 5392646 (S.D. Fla. Dec. 21, 2010)..............................6

*Platinum Props. Inv. Network, Inc. v. Sells*,
No. 18-61907-CIV, 2019 WL 2247544 (S.D. Fla. Apr. 11, 2019)...............................7

*Renal Treatment Ctrs-Mid-Atlantic, Inc. v. Franklin Chevrolet-Cadillac-Pontiac-GMC*, No. 608-CV-087, 2009 WL 995564 (S.D. Ga. Apr. 13, 2009)........................................2

*Roche Diagnostics Corp. v. Priority Healthcare Corp.*,
407 F. Supp. 3d 1216 (N.D. Ala. 2019)........................................................................7

*Roche Diagnostics Corp. v. Smith*,
No. 2:17- CV-05552, 2022 WL 4596720 (D.N.J. Sept. 30, 2022)..............................7

*Rosenfeld Gallery, LLC v. Truist Bank*,
719 F. Supp. 3d 1270 (S.D. Fla. 2024) ........................................................................4

*Seagood Trading Corp. v. Jerrico, Inc.*,
924 F.2d 1555 (11th Cir. 1991) ....................................................................................8

*Sevi v. Israel Disc. Bank of New York*,
No. 13-21922-CIV, 2014 WL 12861833 (S.D. Fla. Nov. 24, 2014) ........................................8

*Siegmund v. Xuelian Bian*,
No. 16-62506-CIV, 2018 WL 1611197 (S.D. Fla. Apr. 2, 2018) (Moreno, J.)........................3

*Solyom v. World Wide Child Care Corp.*,
No. 14-80241-CIV, 2015 WL 6167411 (S.D. Fla. Oct. 15, 2015) ........................................10

*State Farm Mut. Auto. Ins. Co. v. Brown*,
No. 16-80793-CIV, 2017 WL 1291995 (S.D. Fla. Mar. 30, 2017) ..........................................7

*State Farm Mut. Auto. Ins. Co. v. LaRocca*,
No. 8:21-CV-2536-SCB-AEP, 2022 WL 1401565 (M.D. Fla. May 3, 2022)..........................6

*State Farm Mut. Auto. Ins. Co. v. Lewin*,
535 F. Supp. 3d 1247 (M.D. Fla. 2021)...................................................................................8

*United States ex rel. Stepe v. RS Compounding LLC*,
325 F.R.D. 699 (M.D. Fla. 2017)...........................................................................................11

*United States v. Gonzalez*,
404 F. App'x 403 (11th Cir. 2010) ...........................................................................................6

*United States v. Pub. Warehousing Co. K.S.C.*,
No. 1:05-CV-2968-TWT, 2017 WL 1021745 (N.D. Ga. Mar. 16, 2017) ...............................3

*United States v. Schwartz*,
541 F.3d 1331 (11th Cir. 2008) ...............................................................................................9

*Vargas v. Citrix Sys., Inc.*,
716 F. Supp. 3d 1295 (S.D. Fla. 2024) ....................................................................................6

*In re Vizcay*,
No. 8:15-MC-122-T-33, 2015 WL 5522011 (M.D. Fla. Sept. 17, 2015)...............................11

**Other Authorities**

Federal Rule of Civil Procedure 9(b).........................................................................................3

Federal Rule of Civil Procedure 15(a)(1)(B) ...............................................................................1

Rest. (Second) of Torts § 533 (1977)...........................................................................................4

Plaintiff Eli Lilly and Company ("Lilly") respectfully submits this opposition ("Opposition") to the motions to dismiss Lilly's Complaint filed by DrugPlace, Inc. (FL), DrugPlace, Inc. (TN) (together "DrugPlace"), Community Health Initiative, Inc., Nakorn Wholesalers, LLC, Galaxy Med, LLC d/b/a Galaxy Pharmacy, Brightline Wholesale LLC, Paul Leight, Kevin Singer, Edgar Enriquez, Lane Mazei, Danielle Giscombe, Readus Smith, Jerry Maynard Sr., and Jerry Maynard Jr. (collectively, "Defendants").[1]

## PRELIMINARY STATEMENT

This is a case about more than $200 million in fraudulent rebate claims that Defendants, a network of interconnected businesses, their owners, employees, affiliates, and beneficiaries, submitted to Lilly. All the evidence gathered in discovery to date confirms Lilly's allegations that Defendants engaged in a massive and brazen fraudulent scheme. [redacted] sworn declarations from church organizations that Defendants falsely asserted were their business partners, and [redacted] all prove that Defendants submitted massive numbers of fraudulent rebate claims falsely representing they had filled nonexistent prescriptions, when in fact they were reselling the medication on the secondary market.

The allegations set forth in Lilly's Complaint (Dkt. No. 1) are easily sufficient to state claims for fraud, conspiracy, and the other causes of action asserted in the Complaint. However, discovery taken since the filing of the complaint has materially advanced Lilly's understanding of the details of Defendants' scheme and has identified new individuals and entities who participated in the Defendants' fraudulent conspiracy and who retain the proceeds of Defendants' fraud. Accordingly, Lilly is amending its complaint as of right, pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), to add new allegations and Defendants, as well as a new cause of action for civil theft that has become ripe since the filing of the original complaint.

Defendants' motions to dismiss (Dkt. Nos. 111, 112, 114, 115, and 116) are superseded by this Amended Complaint and are moot. Regardless, Defendants' arguments are meritless. Their motions should be denied.

[1] Misha Maynard filed an Answer and has not joined any motions to dismiss, so she is not included in the definition of Defendants for purposes of this Opposition.

## ARGUMENT

### I. Defendants' Motions Should Be Denied as Moot in Light of Lilly's Amended Complaint

"[T]he filing of [an amended complaint]" renders moot any motion to dismiss because that "motion seeks to dismiss a pleading that has since been superseded." *Lizarazo v. Miami-Dade Cnty.*, No. 1:16-CV-20558-UU, 2016 WL 11589782, at *1 (S.D. Fla. May 17, 2016); *see also Fritz v. Standard Sec. Life Ins. Co. of N.Y.*, 676 F.2d 1356, 1358 (11th Cir. 1982) ("[A]n amended complaint supersedes the original complaint"); *Renal Treatment Ctrs-Mid-Atlantic, Inc. v. Franklin Chevrolet-Cadillac-Pontiac-GMC*, No. 608-CV-087, 2009 WL 995564, at *1 (S.D. Ga. Apr. 13, 2009) (noting that a pleading superseded by an amended complaint was "entirely irrelevant," and therefore concluding that the motion to dismiss the original pleading was moot).

Accordingly, courts in this District frequently deny motions to dismiss as moot when complaints are amended after the filing of such a motion. *See e.g.*, *O'Hare v. Town of Gulf Stream*, No. 13-CV-81053, 2015 WL 12978173, at *1 (S.D. Fla. Jan. 22, 2015) (denying motions to dismiss as moot after complaint was amended); *Morris v. Deutsche Bank Tr. Co. Americas*, No. 13-60689-CIV, 2013 WL 12146954, at *1 (S.D. Fla. Aug. 28, 2013) (same); *Edgerton v. Sch. Bd. of Miami-Dade Cnty.*, No. 1:23-CV-24242-DPG, 2024 WL 3696318, at *1 (S.D. Fla. July 2, 2024) (same); *Clear Spring Prop. & Cas. Co. v. Astonbluwaves LLC*, No. 22-21854-CIV, 2023 WL 5337523, at *1 (S.D. Fla. July 28, 2023), *R&R adopted*, No. 22-21854-CV, 2023 WL 5333157 (S.D. Fla. Aug. 18, 2023).

This result is the only sensible outcome here. Defendants' current motions address only the allegations set forth in the original complaint. While Lilly strongly disagrees that those allegations are in any way deficient, it has nevertheless amended its original Complaint as of right within the time set forth by the Federal Rules in order to present the additional facts it has amassed to date regarding Defendants' fraud and to add new Defendants and new causes of action. As discussed in more detail below, several of these amendments address the purported defects set forth in Defendants' motions, including expanded allegations on personal jurisdiction and additional detail about specific Defendants' involvement in the scheme. *See infra* Section III. It would be a waste of time and resources to address Defendants' current motions, knowing that additional relevant allegations have already been pleaded. For the sake of efficiency and judicial economy, those motions should be denied as moot.

## II. Defendants' Motions Are Meritless and Lilly Has Sufficiently Alleged Every Claim Against All Defendants

While the Court need not go further since Defendants' motions are moot, Lilly briefly addresses below why the allegations of fraud and conspiracy are more than sufficient to withstand dismissal.

To defeat a motion to dismiss, all that is required is "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Where a cause of action sounds in fraud, the heightened standard in Federal Rule of Civil Procedure 9(b) applies, and "a party must state with particularity the circumstances constituting fraud or mistake," although "conditions of a person's mind," such as malice, intent, and knowledge may be alleged generally. Fed. R. Civ. P. 9(b); *see also Melton v. Century Arms, Inc.*, 243 F. Supp. 3d 1290, 1297 (S.D. Fla. 2017) (Moreno, J.). "In considering a motion to dismiss for failure to plead fraud with particularity, however, courts must also keep in mind the notice pleading standard set forth in Rule 8(a). Courts 'must be careful to harmonize the directives of Fed. R. Civ. P. 9(b) with the broader policy of notice pleading.'" *Siegmund v. Xuelian Bian*, No. 16-62506-CIV, 2018 WL 1611197, at *4 (S.D. Fla. Apr. 2, 2018) (Moreno, J.) (quoting *SEC v. Physicians Guardian Unit Inv. Trust ex rel. Physicians Guardian, Inc.*, 72 F. Supp. 2d 1342, 1352 (M.D. Fla. 1999)). Here, Lilly's allegations of fraud are far more than plausible; they are indisputably true.

### A. Lilly's Complaint Sufficiently Alleged Fraud under the Rule 9(b) Pleading Standard

Under Florida law, the elements of fraud are "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) the consequent injury by the party acting in reliance on the representation." *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1307 (11th Cir. 2022) (quoting *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010)). "In other words, the plaintiff must allege the who, what, where, when, and how of each element, except scienter, which can be pleaded generally." *United States v. Pub. Warehousing Co. K.S.C.*, No. 1:05-CV-2968-TWT, 2017 WL 1021745, at *3 (N.D. Ga. Mar. 16, 2017) (citing *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005)).[2]

---

[2] The elements of negligent misrepresentation and fraudulent misrepresentation are "identical,"

Notably, "Florida law does not require that the defendant directly communicate any fraudulent misrepresentation to the plaintiff." *Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1189 (11th Cir. 2025) (citation omitted). Rather, a party who makes fraudulent misrepresentations to one party can be held liable where such statements are foreseeably conveyed to, and relied upon by, other parties. *Id.*; *see also Koch v. Royal Wine Merchants, Ltd.*, 907 F. Supp. 2d 1332, 1344–45 (S.D. Fla. 2012) (absence of privity is no bar to allegations of fraud where the maker of a misrepresentation "intends or has reason to expect that its terms will be repeated or its substance communicated to the other, and that it will influence his conduct in the transaction or type of transaction involved" (quoting Rest. (Second) of Torts § 533 (1977))).

**1. Lilly Sufficiently Alleged The "Who, What, Where, When, and How" of Defendants' Fraud**

The facts of Defendants' fraud are well-pled in Lilly's original complaint. DrugPlace, Inc. (FL) and DrugPlace, Inc. TN (two entities acting together under common ownership and officers) serve as the corporate headquarters, exclusive pharmacy and distribution center, and PBM for the Community Health Initiative prescription cost share program, purportedly offered for members of COGIC. Compl. ¶¶ 14–16, 173. The Community Health Initiative was started, operated, and supervised by Readus Smith together with Defendants Leight and Singer, in order to make it appear that DrugPlace was serving a legitimate patient population. *Id.* ¶¶ 19, 27–28, 30, 180. Mirroring

---

except that for negligent misrepresentation (a) "the defendant need not know the statement is false," and (b) "the defendant and the plaintiff must have some kind of relationship such that the defendant owes a duty to the plaintiff to communicate accurate information." *Benavides v. Tesla, Inc.*, 804 F. Supp. 3d 1242, 1311 (S.D. Fla. 2025) (citations omitted) (cleaned up); *see also Loanflight Lending, LLC v. Wood*, 388 So. 3d 1027, 1031 (Fla. 3d DCA 2024). As detailed at length *infra*, because Lilly has sufficiently alleged that the Fraud Defendants generated hundreds of thousands of false rebate claims to Lilly, as well as false health plan documents and formularies to which those false rebate claims could be attributed, and through this conduct, made repeated misrepresentations that Trulicity had been dispensed to patients, when in fact it had not, the Fraud Defendants, at the very least, acted negligently through their failure to exercise reasonable care in verifying the accuracy of the data provided to intermediaries for inclusion in the rebate submissions. Indeed, Defendants at least made these statements recklessly, without regard to their truth or falsity. This conduct was in the Fraud Defendants' sole control and foreseeably created a "broader 'zone of risk'" that posed a threat of harm to Lilly. *See Rosenfeld Gallery, LLC v. Truist Bank*, 719 F. Supp. 3d 1270, 1277 (S.D. Fla. 2024) (citation omitted). As Defendants intended, their thousands of misrepresentations were conveyed to Lilly, through intermediaries, for Lilly to rely on when remitting reimbursements to Defendants. Knowing that, the Fraud Defendants (as defined *infra* at p. 5) owed a duty of care to provide accurate information in their rebate claims—but they did not do so.

this scheme, Galaxy Pharmacy purports to act as the exclusive pharmacy for a prescription cost share program affiliated with NHCLC. *Id.* ¶¶ 23, 147, 173. Lane Mazei is the sole member, Manager, and registered agent of Galaxy. *Id.* ¶¶ 22–23, 36.

Lilly's complaint details how DrugPlace, Community Health, Galaxy, and individual Defendants Leight, Singer, Smith, and Mazei (collectively, the "Fraud Defendants") knowingly and intentionally generated and submitted hundreds of thousands of false rebate claims to Lilly, obscured their identities through a chain of intermediaries, and created and distributed false health plan documents and formularies to which those false rebate claims could be attributed. *Id.* ¶¶ 64, 91–92, 99–104, 120–27, 135–41, 147–53, 154, 171–80, 206. Through these hundreds of thousands of false statements, the Fraud Defendants repeatedly misrepresented, over the course of years, that they had dispensed Lilly medicine—specifically, Trulicity—to patients, when in fact they had not. In their rebate claims, the Fraud Defendants made numerous specific false representations about the details of each purported transaction, including submitting fake identification numbers associated with nonexistent patients' prescriptions, fake dates on which the medicine was dispensed to the nonexistent patient, false representations about the quantity and supply amount dispensed, and false statements about the amounts that the patient and health plan paid. *Id.* ¶¶ 103–04, 206. These specific representations were all false. *Id.* ¶¶ 4, 110, 206. In fact, Defendants did not dispense Trulicity to COGIC patients at anywhere near the volume they purported; instead, they sold it to other businesses on the secondary market. *Id.* ¶¶ 4, 10, 64, 95, 141, 154–70, 175–77. Through this scheme, Defendants profited hundreds of millions of dollars, all to the detriment of Lilly. *Id.* ¶¶ 7, 92, 95, 172, 191, 194.

In addition to the thousands of individual misrepresentations contained in their rebate submissions, the Fraud Defendants knowingly and intentionally created Community Health/DrugPlace and NHCLC/Galaxy prescription cost share program documents and formularies, which were shams and generated to further the fraudulent rebate scheme. *Id.* ¶¶ 5, 120–27, 135–41, 147–53. The Community Health formularies are printed on COGIC Department of Health letterhead and purport to be approved by the COGIC Department of Health (headed by Defendants Readus Smith and Jerry Maynard Sr.). *Id.* ¶¶ 19, 135. Individually and collectively, these documents represented the existence and availability of a legitimate cost share program and medications for hundreds of thousands of eligible members. But as alleged in the Complaint, no such program exists. *Id.* ¶¶ 5, 7, 119–34, 142–46. These misrepresentations are also false

statements constituting fraud, upon which Defendants intended Lilly to rely. *Id*. ¶¶ 135–41, 206–09.

Lilly's Complaint more than sufficiently apprises Defendants of what representations it contends were fraudulent and by whom they were made. That is all that is required. *See, e.g.*, *Cincinnati Ins. Co. v. Atlas Healthcare, LLC*, No. 2:17-CV-1310-TMP, 2019 WL 450854, at *2 (N.D. Ala. Feb. 5, 2019) (denying motion for partial judgment on the pleadings where allegations of when defendant made the representations and the type of statement defendant made to plaintiff that was allegedly fraudulent were "sufficient to apprise [defendant] what representations [plaintiff] contends were fraudulent"); *Fed. Deposit Ins. Corp. ex rel. First Nat'l Bank of Nevada v. Lazcano*, No. 08-21769, 2009 WL 10699886, at *3 (S.D. Fla. Jan. 6, 2009) (denying motion to dismiss where allegations were sufficiently detailed despite plaintiff's failure to identify loan documents with misrepresentations and time and place of closing); *Plasticos Vandux De Colombia, S.A. v. Robanda Int'l*, No. 10-60188-CIV, 2010 WL 5392646, at *3 (S.D. Fla. Dec. 21, 2010) (denying motion to dismiss where plaintiffs have "pleaded a clear, specific, and detailed set of factual circumstances which give rise to a natural and logical inference that the Defendants acted with the intent to deceive"); *Gov't Emps. Ins. Co. v. AFO Imaging, Inc.*, No. 8:20-cv-2419-VMC-CPT, 2021 WL 734575, at *8, 10–11 (M.D. Fla. Feb. 25, 2021) (Rule 9(b) satisfied where plaintiffs provided examples of fraudulent bills specifying the alleged misrepresentations even though the scheme occurred over several years); *State Farm Mut. Auto. Ins. Co. v. LaRocca*, No. 8:21-CV-2536-SCB-AEP, 2022 WL 1401565, at *9 (M.D. Fla. May 3, 2022) (Rule 9(b) satisfied even if the allegations "did not identify each allegedly fraudulent claim and each defendant's specific misrepresentations" because complaint still provided "multiple representative examples of systemic fraud."); *Vargas v. Citrix Sys., Inc.*, 716 F. Supp. 3d 1295, 1310 (S.D. Fla. 2024) (denying motion to dismiss in part where complaint detailed the benefits that defendants stood to gain from their fraud and explained how the statements and omissions were misleading).

Furthermore, Lilly is not required to plead what each individual Defendant misrepresented or gained from the fraud because "all knowing participants in a fraudulent scheme are legally liable for the actions of an individual who acts to carry out the scheme." *United States v. Gonzalez*, 404 F. App'x 403, 405 (11th Cir. 2010). Lilly need only provide "sufficiently detailed descriptions of the misrepresentations made by [other] defendant[s] with whom [the defendant] is affiliated so as to allege that there is adequate evidence to connect him to the scheme." *Metrahealth Ins. Co. v.*

*Anclote Psychiatric Hosp., Ltd.*, No. 96-CV-2547, 1997 WL 728084, at *3 (M.D. Fla. Oct. 23, 1997) ("Personal involvement is not required after a defendant involves himself in a fraudulent scheme; he may be liable for the acts of his co-schemers"). Where, as here, Defendants are acting in concert to "unjustly obtain benefits, each can be held to have been unjustly enriched by virtue of the benefit derived from the scheme, even if the benefit was not conferred on them directly." *State Farm Mut. Auto. Ins. Co. v. Brown*, No. 16-80793-CIV, 2017 WL 1291995, at *7 (S.D. Fla. Mar. 30, 2017).

### 2. Lilly Sufficiently Alleged Reliance on Defendants' Misrepresentations

The Fraud Defendants knew, and intended, that the misrepresentations would be transmitted to Lilly through a chain of intermediaries—first from Health Delegates to either PBM-1 or PBM-2, and then from PBM-1 or PBM-2 to Lilly. Compl. ¶¶ 92, 95, 100–04, 108–09, 206–07, 209. Indeed, they used this chain to make it significantly harder for Lilly to detect their fraud. *Id*. ¶¶ 8–9, 99, 101, 199. Because Lilly is the only entity that pays rebates for Trulicity, the only purpose of submitting a rebate claim for Trulicity is for the information to reach Lilly in the hope that a rebate will be paid. *Id*. ¶¶ 52–53, 58, 62, 206, 207. The law is clear that such false statements constitute fraud even when they are transmitted to the intended recipient indirectly. *See, e.g.*, *Otto Candies*, 137 F.4th at 1189; *Platinum Props. Inv. Network, Inc. v. Sells*, No. 18-61907-CIV, 2019 WL 2247544, at *10 (S.D. Fla. Apr. 11, 2019) ("absence of privity [is] no bar to charges of fraud"); *Koch*, 907 F. Supp. 2d at 1345 (denying dismissal of fraud claim against importer of counterfeit wine based on plaintiff's reliance on counterfeit labels affixed to bottles sold to him via third-party resellers). Any other result would reward Defendants for their misconduct.

Defendants' argument that Florida does not recognize so called "third-party" reliance misses the mark. Lilly has not alleged its reliance on representations that were never made to Lilly, or which Lilly only came to learn of through third-party conduct that unforeseeably affected Lilly. On the contrary, Lilly alleges *direct* reliance on *Defendants'* misrepresentations, made *to* Lilly, which were passed first through two intermediaries, and made for the very purpose of inducing *Lilly's* reliance. The mere presence of the intermediaries does not defeat Lilly's direct reliance—as multiple courts have concluded in rejecting similar motions brought in similar contexts. *See Roche Diagnostics Corp. v. Priority Healthcare Corp.*, 407 F. Supp. 3d 1216, 1246–47 (N.D. Ala. 2019) (claims for healthcare fraud sufficiently pleaded where manufacturer relied on false information that defendant pharmacies submitted through PBMs and insurers); *Roche*

*Diagnostics Corp. v. Smith*, No. 2:17- CV-05552, 2022 WL 4596720, at *15 (D.N.J. Sept. 30, 2022) (claims for healthcare fraud sufficiently pleaded where defendants submitted false statements to intermediary PBMs, who in turn submitted such false statements to manufacturers, which were relied on in issuing millions of dollars in rebates). The sole case Defendants cite in support of their argument to the contrary is nothing like this one. *See* Dkt. No. 115 at 9 (citing *Sevi v. Israel Disc. Bank of New York*, No. 13-21922-CIV, 2014 WL 12861833 (S.D. Fla. Nov. 24, 2014)). In *Sevi*, the court held the plaintiff had not alleged fraud where the statements defendants made to a third party "were not made for the purpose of inducing [p]laintiff to rely on them," and plaintiff "did not and cannot allege that he relied—reasonably or otherwise"—on those statements. *Sevi*, 2014 WL 12861833, at *12. Here, by contrast, Lilly has alleged that Defendants falsely represented they dispensed Trulicity specifically to cause Lilly to issue rebate payments, and that Lilly reasonably relied on those representations in making those payments.

For these reasons, Lilly has sufficiently pled all the elements of fraud.

### B. Lilly Sufficiently Alleged Defendants' Civil Conspiracy Under the Rule 9(b) Pleading Standard

Lilly also adequately alleges that all of the Defendants each agreed and conspired among one another to (among other things) operate a scheme to defraud Lilly. The common purpose and objective of the conspiracy was to profit by fraudulently extracting rebate payments from Lilly for Trulicity that was never dispensed, while reselling the medicine on the secondary market. Compl. ¶¶ 64, 171–80, 213–15. This scheme necessarily required the careful coordination and interdependence of the various Defendant entities and individuals, and their agreement to conspire will be inferred from facts and circumstances suggesting its existence. *See Seagood Trading Corp. v. Jerrico, Inc.*, 924 F.2d 1555, 1573 (11th Cir. 1991); *Donofrio v. Matassini*, 503 So. 2d 1278, 1281 (Fla. 2d DCA 1987). As the Eleventh Circuit has acknowledged, "it is only in rare cases that a plaintiff can establish the existence of a conspiracy by showing an explicit agreement; most conspiracies are inferred from the behavior of the alleged conspirators." *Seagood Trading*, 924 F.2d at 1573. Moreover, "[e]ach coconspirator need not act to further a conspiracy; each need only know of the scheme and assist in it in some way to be held responsible for all of the acts of his coconspirators." *State Farm Mut. Auto. Ins. Co. v. Lewin*, 535 F. Supp. 3d 1247, 1266 (M.D. Fla. 2021) (internal quotations and citations omitted).

As detailed in the complaint, Defendants came together to form and operate their sham businesses for the ***sole*** purpose of carrying out their fraud. They did so through a coordinated,

mutually beneficial operation with close ties—including common ownership and officers, and often, common facilities or addresses amongst Defendants. Compl. ¶¶ 13, 16, 19, 21, 23, 25, 29, 172, 178–80. *See United States v. Schwartz*, 541 F.3d 1331, 1361 (11th Cir. 2008) (a conspiracy can be inferred "from the relationship of the parties, their overt acts and concert of action, and the totality of their conduct"). The individual Defendants, as the owners, officers, employees, and associates of DrugPlace, Galaxy, Nakorn, Brightline, and Community Health, direct and control the DrugPlace Conspiracy, including devising, implementing, and enforcing policies and business practices that enable the other Defendants to carry out the fraud. Compl. ¶¶ 27–38, 171–80. The rebate payments ultimately received by DrugPlace and the Galaxy Operation (as defined in the Complaint at ¶ 153) through the fraudulent rebate claims, and the proceeds of the prescription resales on the secondary market received by Nakorn and Brightline, flowed from these entities back to Leight, Singer, Smith, Enriquez, the Maynards, Mazei, Giscombe and others, directly or indirectly. *Id.* ¶¶ 179, 195.

Defendants' scheme depended upon the agreement and participation of all the conspirators: Community Health and individual Defendants Smith, Jerry Maynard Sr., and Jerry Maynard Jr. willingly created and perpetuated a sham health plan front to which fraudulent rebates could be attributed, *id.* ¶¶ 180, 215; Nakorn, Brightline, and individual Defendants Enriquez and Giscombe knowingly diverted Lilly's medications that DrugPlace and Galaxy purported to dispense to patients to the secondary market for re-sale, *id.* ¶¶ 176, 215; and DrugPlace, Galaxy, and individual Defendants Leight, Singer, and Mazei knowingly submitted or caused to be submitted, through intermediaries, and received payment in connection with, fraudulent rebate claims to Lilly for medications that were never dispensed to and utilized by DrugPlace or Galaxy patients, *id.* ¶¶ 174–76, 215.

These allegations are sufficient at this stage to show Defendants' conspiracy to commit the fraudulent rebate scheme. *See, e.g.*, *Diamond Resorts U.S. Collection Dev., LLC v. Miller*, No. 6:20-CV-1668-PGB-LRH, 2022 WL 445508, at *7 (M.D. Fla. Jan. 11, 2022) (civil conspiracy claim sufficiently pled with allegations that defendant (1) worked with other defendants (2) to commit torts against plaintiffs and (3) assisted in specific aspects of the scheme to facilitate the conspiracy); *Cordell Consultant, Inc. Money Purchase Plan & Tr. v. Abbott*, 561 F. App'x 882, 886 (11th Cir. 2014) (allegations sufficiently particularized and support reasonable inferences of agreement and an overt act conspiracy where complaint stated that two defendants conceived of

fraud, and other two defendants helped implement fraud by preparing and submitting false documents).

Defendants also argue that the intracorporate conspiracy doctrine bars Lilly from pleading conspiracy, *see* Dkt. No. 115 at 13, but that doctrine has no application here. The intracorporate conspiracy doctrine provides that "a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *Kirwin v. Price Commc'ns Corp.*, 391 F.3d 1323, 1326 (11th Cir. 2004); *see also Apex Toxicology, LLC v. United HealthCare Servs., Inc.*, No. 17-61840-CIV-SMITH, 2020 WL 13551299, at *7 (S.D. Fla. July 7, 2020) (finding that plaintiff cannot meet first element of conspiracy claim where alleged conspirators were one company, and its employees, owners, and affiliates); *Adventist Health Sys. Sunbelt Healthcare Corp. v. Weiss*, No. 6:20-cv-877-Orl-40DCI, 2021 WL 1238321, at *6 (M.D. Fla. Feb. 22, 2021) ("The intracorporate conspiracy doctrine applies only to agreement[s] between or among agents of the same legal entity . . . . the doctrine does not bar allegations of a conspiracy between two separate entities.").

Here, by contrast, Lilly alleges a conspiracy between separate individuals and discrete legal entities, operating independently of each other as a matter of corporate form, yet intentionally interconnected in order to perpetuate the conspiracy. Compl. ¶¶ 13–38, 171–80, 213–15. Lilly also alleges that DrugPlace and the Galaxy Operation are part of one DrugPlace Conspiracy and conspired together to cause Lilly to pay over $200 million in rebates. *Id.* ¶¶ 171–80, 191. The fact that the named entities and individuals are also related and connected through the conspiracy does not trigger the intracorporate conspiracy doctrine. *See Solyom v. World Wide Child Care Corp*., No. 14-80241-CIV, 2015 WL 6167411, at *2 (S.D. Fla. Oct. 15, 2015) (undisputed evidence that corporate defendants are separate legal entities, operating independently of each other "does not support . . reliance on intracorporate conspiracy doctrine"); *see also Adventist Health Sys. Sunbelt Healthcare Corp*., 2021 WL 1238321, at *6 ("By definition, a conspiracy involves a combination in which every member of the scheme becomes the agent of every other member for purposes of carrying out the object of the agreement. Clearly the intra-corporate conspiracy doctrine . . . does not stretch that far.").

### C. Lilly Sufficiently Alleged Its Claims for Unjust Enrichment and Money Had and Received

Because it has sufficiently alleged that Defendants operated a scheme to fraudulently obtain contractually defined rebates to Lilly's detriment, Lilly can also establish the elements of

its remaining claims for negligent misrepresentation (detailed *supra* at p.1, n. 1), unjust enrichment, and money had and received.

With regard to Lilly's claims for unjust enrichment and money had and received, Defendants' argument that Lilly has not pled a "direct benefit" to Defendants in order to sustain its claims defies credibility. Defendants' false representations have caused Lilly to wrongfully pay hundreds of millions of dollars in rebate payments for Lilly medicines, and Lilly has alleged that those dollars "flow" to Defendants. Compl. ¶¶ 179, 194–95, 226–30. Defendants did not engage in a multi-million-dollar fraudulent scheme simply so that Lilly would pay unrelated third parties and Defendants would never collect a dollar of those payments. To say the least, that is an implausible reading of the allegations, and the fact that Defendants did in fact receive massive sums is clearly inferred from the nature of the scheme and specifically alleged in the Complaint.

Defendants have no right in law or equity to retain such proceeds of their fraudulent and unlawful schemes. *See In re Vizcay*, No. 8:15-MC-122-T-33, 2015 WL 5522011, at *1 (M.D. Fla. Sept. 17, 2015) (recounting jury verdict awarding damages for unjust enrichment in fraud action where insurer alleged that healthcare clinics had fraudulent billing practices and failed to comply with applicable licensing requirements); *United States ex rel. Stepe v. RS Compounding LLC*, 325 F.R.D. 699, 710 (M.D. Fla. 2017) (finding unjust enrichment claim viable where defendant used false statements to obtain larger reimbursements through health insurance program than were actually owed).

### D. The Court Has Personal Jurisdiction over Defendants Maynard Sr., Maynard Jr., Enriquez, and Giscombe

#### 1. The Non-Resident Defendants Conspired with the Florida Defendants

Lilly's Complaint alleges that all Defendants are liable for "personally participat[ing] in and conspir[ing] in the fraudulent activities at issue in Florida and through businesses operating in Florida." Under Florida's long-arm statute, specific jurisdiction over non-residents is appropriate through the civil conspiracy claim. Florida law construes the state's long-arm statute to reach all of the alleged participants in a civil conspiracy, at least one act in furtherance of which is committed in Florida. *See AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1354 (S.D. Fla. 2009). Therefore, Florida courts may exercise personal jurisdiction over parties to a Florida civil conspiracy even if the alleged civil conspirator otherwise has no connection to the state. *Id.*; *see also Amersham Enters. v. Hakim-Daccach*, 333 So. 3d 289, 297 (Fla. 3d DCA 2022) ("Because [plaintiff] independently alleged the commission of overt acts in

Florida in furtherance of that agreement, 'all of the [alleged] conspirators are subject to the jurisdiction of Florida through its long-arm statute.'") (citation omitted); *LSM Techs. PTY LTD. v. Sy-Klone Co., LLC*, No. 3:22-CV-1019-BJD-MCR, 2023 WL 5934386, at *17 (M.D. Fla. Aug. 8, 2023) ("Although a plaintiff 'must do more than simply allege a conspiracy in a conclusory fashion for a court to exercise personal jurisdiction over a non-resident defendant based on the actions of co-conspirators,' the 'allegations need not rise to the level to survive a motion to dismiss under Rule 12(b)(6),' but rather 'the factual allegations must at least make out a colorable, factually supported claim.'" (quoting *Taylor v. Moskow*, No. 16-20222-Civ-Scola, 2017 WL 5239503, at *4 (S.D. Fla. Jan. 26, 2017), *aff'd*, 717 F. App'x 836 (11th Cir. 2017) (per curiam))); *Energy Source, Inc. v. Gleeko Props., LLC*, No. 10-21162-CIV, 2011 WL 3236047, at *6 (S.D. Fla. July 28, 2011) (finding the complaint as a whole sufficiently alleged that defendants formed a civil conspiracy, at least some acts in furtherance of which were carried out in Florida, and Florida's long-arm statute thus reached all participants in the conspiracy, even those not otherwise connected to Florida).

Where a non-resident defendant's Florida-based activities are sufficient, plaintiff's injury need not have occurred in Florida for jurisdiction to be proper under the long-arm statute. *See Fason v. Queenship Publ'g Co.*, No. 4:06CV483-RH/WCS, 2007 WL 9735377, at *3 (N.D. Fla. June 5, 2007) (describing jurisdiction as appropriate either where activities are sufficient in Florida *or* where injury occurred in Florida); *Mighty Men of God, Inc. v. World Outreach Church of Murfreesboro Tennessee, Inc.*, 102 F. Supp. 3d 1264, 1271 (M.D. Fla. 2015) (same); *DeRossett v. Southeast Toyota Dist. Inc.*, *No*. 17-CV-60415, 2017 WL 7344406, at *3 n.5 (S.D. Fla. Aug. 18, 2017) (same); *Frida Kahlo Corp. v. Pinedo*, No. 18-21826-CIV, 2021 WL 4147876, at *3 (S.D. Fla. Sept. 13, 2021) ("This long-arm jurisdiction even extends to defendants who committed their tortious acts outside the state if their acts cause injury in Florida."). While certain Defendants rely on a contrary district court decision to argue Florida's long-arm statute requires the injury to have occurred in Florida (Dkt. No. 137 at 5) (*citing Hinkle v. Continental Motors, Inc*., 268 F. Supp. 3d 1312, 1322-1323 (M.D. Fla. 2017)), they neglect to disclose that the Eleventh Circuit rejected that construction of the statute on appeal in that very case. *See* 775 F. App'x. 545, 551 n.3 (11th Cir. 2019) (rejecting district court's "limited reading" of case law as requiring "that the 'place of injury' must be in Florida to show specific personal jurisdiction," which "would appear to render superfluous many of the Florida contacts listed in the long-arm statute").

As detailed at length in Lilly's Complaint and above, all Defendants formed and participated in the conspiracy to defraud Lilly. Compl. ¶¶ 13, 171–80, 213–15. Many acts in furtherance of the conspiracy were carried out in Florida, and many of the co-conspirators are Florida residents. *Id.* ¶¶ 14–16, 27–30, 36, 42, 150, 152. The DrugPlace corporate headquarters is incorporated in Florida with a Fort Lauderdale mailing address, and Nakorn, Galaxy, and Brightline all list Florida mailing addresses and have sole members who are Florida residents. *Id.* ¶¶ 14–16, 20, 22, 24. Defendants Singer, Leight, Smith, and Mazei are Florida residents who directed, supervised, and carried out the scheme from Florida. *Id.* ¶¶ 27–28, 30, 36, 180.

Given the conspiracy's significant and substantial connections to Florida and the intentional torts alleged against the nonresident Defendants, Defendants Maynard Sr., Maynard Jr, Enriquez, and Giscombe all had "fair warning" of suit in Florida, such that jurisdiction comports with Due Process. *See Indian River Merch. Servs., LLC v. Nolte*, 817 F. Supp. 3d 1335, 1338 (S.D. Fla. 2026) ("[A]cts of a co-conspirator performed in a forum state in furtherance of a conspiracy create sufficient minimum contacts to establish personal jurisdiction over a remote co-conspirator, even when that co-conspirator had no other direct contacts with the forum state.") (citation omitted); *AXA Equitable Life Ins. Co.*, 608 F. Supp. 2d at 1355 (jurisdiction comported with due process where amended complaint alleged that Defendants participated in a conspiracy to cause plaintiff to issue life insurance policies based on fraudulent applications, and many of the co-conspirators and several of the named insured were Florida residents); *Licciardello v. Lovelady*, 544 F.3d 1280, 1285 (11th Cir. 2008) ("Intentional torts . . . may support the exercise of personal jurisdiction over the nonresident defendant who has no other contacts with the forum.").

### 2. Any Questions Relating to Specific Jurisdiction Are Factual Issues Which Should Be Resolved Through Jurisdictional Discovery

Maynard Sr., Maynard Jr., Enriquez, and Giscombe have contested that they are subject to personal jurisdiction in this Court, and have each submitted declarations asserting facts that they claim demonstrate a lack of personal jurisdiction. Dkt. Nos. 116-4, 116-5, 114-1, 111-2. Although Lilly's allegations are sufficient to establish personal jurisdiction over these Defendants under Florida's long arm statute, Lilly is also seeking additional jurisdictional discovery to probe the factual basis for Defendants' self-serving declarations. *See* Dkt. No. 123 (Lilly's cross-motion for jurisdictional discovery). These declarations are precisely the type of one-sided submissions that jurisdictional discovery is designed to test. *See Peach.com, LLC v. Peachly, LLC*, No. 21-20636-CIV, 2021 WL 7542983, at *3 (S.D. Fla. June 16, 2021) (where defendant's declaration seeks to

create dispute over jurisdiction, plaintiff "should be afforded . . . discovery").

Indeed, the Maynards', Enriquez's, and Giscombe's declarations raise more questions than answers regarding their contacts with the forum. For example, Maynard Sr. admits in the declaration that he met with Defendants Paul Leight and/or Kevin Singer—the owners of Defendants DrugPlace and Nakorn, and the individuals at the fulcrum of the scheme—at their office in Florida an estimated ***ten times*** in the last six years. Dkt. No. 116-4 ¶ 9. Although Maynard Sr. vaguely insists that they discussed matters "wholly unrelated to the allegations in or subject matters of this case," *id.*, Lilly is entitled to test that assertion through cross-examination and document discovery. Similarly, Maynard Sr. carefully denies being an "owner, director, or officer" of any DrugPlace entity, *see id.* ¶ 6, but is noticeably silent about his other involvement in the scheme, including Lilly's allegations that he created and perpetuated a sham healthcare program to which the fraudulent rebate claims at issue could be attributed, *see* Dkt. No. 1 ¶ 215.

Similarly, Maynard Jr. vaguely denies "travel[ing] to Florida to promote, administer, participate in, or further" the alleged scheme, Dkt. No. 116-5 ¶ 6, but does not contest that he was Chairman of the Board of Community Health Initiative—the fictional church-aligned health program Defendants used to legitimize their fake rebate claims—and registered trademarks for DrugPlace entities, *see* Dkt. Nos. 113, -1, -2, -3. Giscombe also denies traveling to Florida or conducting any business in Florida "in the course of [her] duties at Brightline and Galaxy," but does not contest that she was the Pharmaceutical Wholesale Manager and pharmacy technician at the entities central to the Galaxy scheme. Dkt. No. 111-2 ¶¶ 3, 7. Maynard Jr.'s and Giscombe's roles in operating Community Health and Brightline and Galaxy, respectively, to facilitate the fraud is highly relevant to his jurisdictional challenge, given that Florida's long-arm statute reaches all participants—even out-of-state participants—in a civil conspiracy.

Enriquez denies conducting "business on behalf of Nakorn" in Florida, but other witnesses have reported that he worked with Kevin Singer in Florida before moving out of the state. Moreover, Enriquez is listed as a contact for Community Health and other entities that operated in Florida. The inconsistencies between Enriquez's declaration and these facts create genuine issues that warrant jurisdictional discovery. *See Am. C.L. Union of Fla., Inc. v. City of Sarasota*, 859 F.3d 1337, 1341 (11th Cir. 2017) (parties have a "qualified right" to jurisdictional discovery when facts regarding jurisdiction are "genuinely in dispute"); *see also Funez v. CMI Leisure Mgmt., Inc.*, 482 F. Supp. 3d 1252, 1255 (S.D. Fla. 2020) (recognizing defendant's "conclusory" assertion that

it never conducted business in Florida through an agent could not be taken at "face value," and ordering limited jurisdictional discovery).

The facts put at issue in these submissions entitle Lilly to additional discovery so that it may ensure the Court that jurisdiction is not only proper over these Defendants as co-conspirators to a Florida-based scheme, but also that Defendants' specific contacts have also purposefully availed them of suit in Florida.

## III. The Amended Complaint's Additional Allegations Further Vitiate Defendants' Dismissal Arguments

Defendants' arguments, which fail as to the original complaint for the reasons discussed above, are further refuted by the substantial new allegations—drawn from post-suit discovery and forensic accounting—in the Amended Complaint.

### A. The Amended Complaint's Detailed Flow-of-Funds Allegations Foreclose Defendants' "No Direct Benefit" Argument

Defendants argue that Lilly failed to allege a "direct benefit" conferred on each Defendant sufficient to sustain its unjust enrichment and money had and received claims. *See* Dkt. No. 115 at 18–20; Dkt. No. 112 at 18–19. The DrugPlace Defendants went so far as to argue that because Lilly paid rebates to PBMs—not directly to Defendants—Lilly could not trace any benefit downstream. *See* Dkt. No. 115 at 19 (arguing Lilly "does not identify any specific payment from Plaintiff to the PBMs or from the PBMs to Health Delegates or the Moving Defendants predicated on a fraudulent rebate claim"). The Galaxy Defendants similarly contended that the Complaint "does not identify any money actually paid to them as a result of the Galaxy or DrugPlace Operations." Dkt. No. 112 at 19.

Lilly's original Complaint made clear that a direct benefit was conferred on Defendants, *see supra* Section II(C), and its new allegations now describe in detail how the ill-gotten funds flowed to Defendants. [redacted] Am. Compl. ¶ 276. In addition, [redacted] *Id.* ¶ 179. [redacted] *Id.* [redacted] *Id.* ¶ 276. [redacted]

[redacted] *Id.* ¶ 203. [redacted] *Id.* ¶¶ 201–04. These are the precise "specific fact[s] alleging how Lilly's PBM payments for DrugPlace's alleged rebates were passed through" that Defendants claimed were missing. Dkt. No. 115 at 21. They are now pled in granular detail.

**B. The Amended Complaint Adds Particularized Allegations of Each Individual Defendant's Role, Eliminating Any "Group Pleading" Objection**

Defendants also challenged supposed "group pleading" in the Complaint, which they claimed did not specify "which defendant is responsible for which acts." *See* Dkt. No. 115 at 6–8; Dkt. No. 112 at 5–11; Dkt. No. 114 at 2–3; Dkt. No. 116 at 4–5.

The Amended Complaint leaves no doubt as to the role each Defendant played in perpetrating and benefitting from the fraudulent rebate scheme, providing additional, individualized allegations for each Defendant. For example, Leight and Singer are alleged to have "developed the scheme's structure and bankrolled the operation," with Singer serving as "the primary operational liaison with pharmaceutical manufacturers and managing staff on a day-to-day basis." Am. Compl. ¶ 215. Mazei "operated the wholesale distribution infrastructure through which diverted pharmaceuticals were channeled into secondary markets while DrugPlace and GalaxyMed simultaneously submitted rebate claims for those same products." *Id.* ¶ 220. Smith "conceived of the program with Defendants Leight and Singer", and "coordinated with the other DrugPlace Defendants to use the program to make it seem like the DrugPlace Entities were serving a legitimate patient base of Church members." *Id.* ¶ 219. Maynard Sr. is alleged to have been "the Jurisdictional Prelate of the COGIC Department of Health" who "partnered with the Fraud Defendants to start the Community Health Initiative" and, in that capacity, "created the guise of a massive 'prescription cost share program' for COGIC members, enabling the Fraud Defendants to perpetuate their rebate scheme." *Id.* ¶¶ 35, 222. Maynard Jr., in his role as Chairman of the Board of Community Health, similarly, "created the guise of a massive 'prescription cost share program' for COGIC members." *Id.* ¶ 223. Both Maynards are now alleged to have attended meetings with Singer and Leight at the DrugPlace offices. *Id.* ¶¶ 222–23. Giscombe is also alleged to be a primary representative for Brightline who also served as the pharmacy technician at Galaxy—the very pharmacy that purportedly dispensed thousands of units of Trulicity to NHCLC members under a program that NHCLC itself has confirmed does not and has never existed. *Id.* ¶¶ 28, 220,

227. These are only a selection of the allegations setting forth Defendants' roles in the scheme.

Coupled with the original Complaint's allegations, these additional, particularized allegations of each Defendant's specific role far exceed what Rule 9(b) requires. *See, e.g.*, *Gov't Emps. Ins. Co. v. Mas*, No. 19-21183-CIV, 2020 WL 9604436, at *10 (S.D. Fla. Mar. 31, 2020) (rejecting defendants' "group pleading" challenge because "while [plaintiff] has lumped the Defendants together in certain portions of [the complaint], this does not negate the fact that [plaintiff] has still alleged specific instances of conduct sufficient to inform each Defendant of its individual role in the alleged scheme")*; Knieper v. Forest Grp. USA, Inc.*, No. 4:15-CV-00222-HLM, 2016 WL 9449794, at *3 (N.D. Ga. Sept. 12, 2016), *order clarified*, No. 4:15-CV-00222-HLM, 2017 WL 3449601 (N.D. Ga. Jan. 23, 2017) (same where "the paragraphs within the claims allow the Court to discern which allegations are levied against which Defendant and what actions each Defendant took in order to accomplish the legal wrong").

### C. The Amended Complaint Alleges Direct Evidence of the Fraud, Eviscerating Defendants' Plausibility Challenges

Defendants also contended that Lilly did not sufficiently explain how they were involved in any fraudulent activity or what that activity was. *See* Dkt. No. 115 at 11; Dkt. No. 112 at 18.

The Amended Complaint eviscerates this argument. [redacted] Allison Supko, DrugPlace's former pharmacist-in-charge from 2022 to 2026, testified under oath [redacted] Am. Compl. ¶ 147. [redacted] *Id.* Another former pharmacist, Laura Renfro, [redacted]. ¶ 148.

[redacted] the purported prescription cost share programs were illegitimate and illusory. Supko testified that she had never heard that DrugPlace was affiliated with a Church of God in Christ formulary, had never heard of any formularies or prescription cost share programs associated with Community Health, and had never heard of any relationship between DrugPlace and COGIC. Am. Compl. ¶ 151. When shown DrugPlace's representations that it was the exclusive pharmacy for Community Health Initiative, she flatly refuted it—testifying that as pharmacist-in-charge, she would have known if such a relationship

existed. *Id.* [redacted] *Id.* Renfro likewise testified [redacted] *Id.* ¶ 152. After reviewing Lilly's initial complaint, COGIC also publicly announced that it has "no knowledge" of the acts alleged, and had "not knowingly participated in, authorized, or condoned" any of it. *Id.* ¶ 153.

The Galaxy Operation has similarly been exposed as a fake. NHCLC—the church organization that Galaxy's operation claimed to partner with—declared under oath that it was "shocked" to hear of Defendants' assertions, that it has no prescription drug program and no relationship with Defendants, and that it had never operated or been affiliated with any such pharmacy program. Am. Compl. ¶ 183.

Even beyond the pharmacist testimony and the supposed church partners' disavowals of these programs, [redacted]—confirming that they were reselling the very medicine they claimed to be dispensing to patients. Am. Compl. ¶ 201. The Amended Complaint further alleges that Defendants [redacted] *Id.* ¶ 202. These allegations illustrate in stark detail how Defendants carried out and profited from their fraudulent rebate scheme, and leave no plausible innocent explanation.

**D. The Amended Complaint's Further Personal Jurisdiction Allegations Negate Any Purported Jurisdictional Deficiencies**

While jurisdictional discovery is warranted because the Maynards, Enriquez, and Giscombe raised jurisdictional challenges, the Amended Complaint alleges further evidence demonstrating their ample contacts to Florida. It provides detailed factual allegations regarding each non-resident Defendant's involvement in the Florida-based conspiracy (*see supra* Section III), and contacts to the state. The new evidence of their contacts includes Maynard Sr. and Jr.'s frequent trips to Florida (which Maynard Jr. considers his "home away from home"), including for COGIC business, Am. Compl. ¶¶ 56–58, the Maynards' meetings with Florida-based Defendants, *id.* ¶¶ 222–23, Enriquez's consistent property ownership in Florida and prior work for DrugPlace

in Florida, *id.* ¶ 60, and Giscombe's close working relationship with Lane Mazei, a Florida resident, *id.* ¶ 59.

**CONCLUSION**

For the reasons discussed above, Defendants' Motions to Dismiss have been mooted by Lilly's amended complaint and in any event fail on the merits. The Motions should therefore be denied.

DATED: August 28, 2026

**STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.**

*/s/ Jay B. Shapiro*
Jay B. Shapiro, Esq. (FBN 776361)
Email: jshapiro@stearnsweaver.com
Veronica L. de Zayas, Esq. (FBN 91284)
Email: vdezayas@stearnsweaver.com
Ryan M. Wolis, Esq. (FBN 1019034)
Email: rwolis@stearnsweaver.com
150 W. Flagler St., Suite 2200, Miami, FL 33130
Telephone: 305-789-3200

**PATTERSON BELKNAP WEBB & TYLER LLP**

*/s/ Geoffrey Potter*
Geoffrey Potter, Esq. (Admitted *PHV*)
Email: gpotter@pbwt.com
Aron Fischer, Esq. (Admitted *PHV*)
Email: afischer@pbwt.com
Joshua Kipnees, Esq. (Admitted *PHV*)
Email: jkipnees@pbwt.com
1133 Avenue of the Americas, New York, NY 10036
Telephone: 212-336-2000

*Attorneys for Plaintiff Eli Lilly and Company*