**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

ELI LILLY AND COMPANY,

**CASE NO.: 1:26-CV-23516-FAM (EFD)**

Plaintiff,

v.

DRUGPLACE, INC.(FL); DRUGPLACE, INC. (TN); COMMUNITY HEALTH INITIATIVE, INC.; NAKORN WHOLESALERS LLC; GALAXY MED, LLC d/b/a GALAXY PHARMACY; BRIGHTLINE WHOLESALE LLC; KEVIN SINGER; PAUL LEIGHT; READUS SMITH; JERRY MAYNARD SR.; JERRY MAYNARD JR.; MISHA MAYNARD; EDGAR ENRIQUEZ; LANE MAZEI; DANIELLE GISCOMBE, DANIEL HOFFNER; and TEXAS PHARMACY ENTERPRISE, LLC,

Defendants, and

CHRISTOPHER DEMARCO; DEMARCO LANDSCAPE DESIGN GROUP, LLC; GLOBUS INDUSTRIES, LLC; ROCKAWAY INVESTMENTS, INC.; U.S. HEALTHCARE DISTRIBUTORS, LLC.,

Relief Defendants.
_______________________________________/

**PLAINTIFF ELI LILLY AND COMPANY'S**
**AMENDED OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND STAY OF THIRD-PARTY DISCOVERY**[*]

---

[*] This Amended Opposition to Defendants' Motion for Protective Order and Stay of Third-Party Discovery is substantively identical to the version previously filed at Dkt. No. 124 on August 14, 2026. It is being refiled solely to incorporate additional redactions that Defendants requested after the initial filing was made.

# TABLE OF CONTENTS

Page


PRELIMINARY STATEMENT ....1

BACKGROUND ....4

- A. Defendants Consent to Lilly's Plan to Subpoena Banks and Begin Immediate Discovery ....4
- B. Third-Party Discovery Confirms Lilly's Allegations of Defendants' Massive Fraud ....5
- C. Lilly's Bank Subpoenas ....7
  - 1. Lilly Subpoenas Banks to Find Defendants' Fraudulent Proceeds ....7
  - 2. The Subpoenas Locate 56 Banks at Which Defendants Have Accounts ....7
  - 3. The Subpoenas Seek Basic Account Information ....8
  - 4. The Identifying Information Sent to Banks Is Necessary and Protected ....8
- D. Defendants Receive Notice of the Bank Subpoenas ....9
- E. Defendants File a Motion to Quash in the Southern District of New York and Then This Duplicative Motion ....10

ARGUMENT ....10

I. The Relief Requested Pursuant to Request No. 1 Is Moot ....10

II. Defendants Fail to Show Any Basis to Modify the Stipulated Order and Protective Order (Request Nos. 2 and 4) ....11

III. There is No "Good Cause" to Substantially Limit Lilly's Discovery or Sequester Documents (Request Nos. 2 and 5) ....13

- A. Lilly Has a Compelling Need for the Requested Protected Materials ....14
- B. Defendants' Privacy Concerns Can Be Resolved Through Confidentiality Designations ....16
- C. Defendants' Proposed Protective Order is Overbroad and It Is Not Practical to Limit the Subpoenas in the Manner Requested ....18
  - 1. Request No. 2 ....18
  - 2. Request No. 5 ....19
- D. The Bank Statements Are Not Available from Another Source ....19

CONCLUSION ....20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alcoa, Inc. v. Universal Alloy Corp.*,
No. 1:15-CV-01466-ELR, 2016 WL 9175820 (N.D. Ga. March 2, 2016)....12

*In re Alexander Grant & Co. Litig.*,
820 F.2d 352 (11th Cir. 1987)....14

*Armor Screen Corp. v. Storm Catcher, Inc.*,
No. 07-81091-CIV, 2008 WL 4753358 (S.D. Fla. Oct. 29, 2008)....11

*Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*,
231 F.R.D. 426 (M.D. Fla. Sept. 28, 2005)....17

*Cannata v. Wyndham Worldwide Corp.*,
No. 2:10-CV-00068-PMP, 2011 WL 3794254 (D. Nev. Aug. 25, 2011)....19

*Cipollone v. Liggett Grp., Inc.*,
785 F.2d 1108 (3d Cir. 1986)....16

*Continuum on S. Beach Condo. v. QBE Ins. Corp.*,
338 F.R.D. 668 (S.D. Fla. 2021)....19

*Edmondson v. Velvet Lifestyles, LLC*,
No. 15-24442-CIV, 2016 WL 5682591 (S.D. Fla. Oct. 3, 2016)....16

*Eitzen Chem. (Singapore) Pte, Ltd. v. Carib Petroleum*,
No. 10-23512-CIV-PAS, 2011 WL 4527435 (S.D. Fla. Sept. 28, 2011)....15, 18

*Farnsworth v. Procter & Gamble Co.*,
758 F.2d 1545 (11th Cir. 1985)....14

*Franco v. Franco*,
No. FA87 0240305 S, 1993 WL 328793 (Conn. Super. Ct. Aug. 19, 1993)....13

*Frenkel v. Acunto*,
No. 11-62422-CIV, 2014 WL 4680738 (S.D. Fla. Sept. 19, 2014)....17

*Gabriel v. G2 Secure Staff, LLC*,
225 F. Supp. 3d 1370 (S.D. Fla. 2016)....17

*Gold Coast Prop. Mgmt., Inc. v. Valley Forge Ins. Co.*,
No. 09-60029-CIV, 2010 WL 9871643 (S.D. Fla. Jan. 26, 2010)....16

*Hernandez v. Burrows*,
No. 20-22721-CIV, 2021 WL 5999431 (S.D. Fla. Dec. 20, 2021)........................................13

*McCarthy v. Barnett Bank of Polk Cnty.*,
876 F.2d 89 (11th Cir. 1989) ........................................................................................14

*Meide v. Pulse Evolution Corp.*,
No. 3:18-CV-1037-J-34MCR, 2019 WL 1518959 (M.D. Fla. Apr. 8, 2019).........................19

*Ochoa v. Empresas ICA, S.A.B de C.V.*,
No. 11-23898-CIV, 2012 WL 3260324 (S.D. Fla. Aug. 8, 2012) ..........................................17

*Osio v. Moros*,
No. 21-20706-CIV, 2023 WL 4531264 (S.D. Fla. July 13, 2023) .........................................17

*Peninsula Petroleum Ltd. v. CI Int'l Fuels LLC*,
No. 22-CV-20712, 2023 WL 8476409 (S.D. Fla. Sept. 12, 2023) .........................................13

*Popoli v. Ft. Myers Lodge #1899 Loyal Ord. of Moose, Inc.*,
No. 2:15-CV-311-FTM-29CM, 2015 WL 9031929 (M.D. Fla. Dec. 16, 2015) .....................17

*Resha v. Tucker*,
670 So. 2d 56 (Fla. 1996)...............................................................................................17

*Shah v. Rodino*,
No. 3:13-cv-00103-JD-CAN (N.D. Ind. Apr. 16, 2013), ECF No. 51 ...................................12

*Sierra Equity Grp. v. White Oak Equity Partners, LLC*,
672 F. Supp. 2d 1369 (S.D. Fla. 2009) .........................................................................15

*United States ex rel. Staggers v. Medtronic, Inc.*,
No. 15-CV-392, 2024 WL 4492022 (D.D.C. Oct. 15, 2024) ................................................12

*United States v. Ford*,
237 F.2d 57 (2d Cir. 1956), *vacated*, 355 U.S. 38 (1957) ......................................................13

*United States v. Hurt*,
No. 3:09-CV-00031-BSM (E.D. Ark. Nov. 17, 2010), ECF No. 208 ....................................12

*United States v. Miller*,
425 U.S. 435 (1976)........................................................................................................17

*Wilson v. Wilson*,
No. M2023-01026-COA-R3-CV, 2024 WL 1577423
(Tenn. Ct. App. Apr. 11, 2024)......................................................................................12

*Wyndham Vacation Ownership, Inc. v. Square One Dev. Grp., Inc.*,
No. 6:20-CV-643-RBD-EJK, 2022 WL 20833658 (M.D. Fla. Jan. 5, 2022)......................5, 15

*Zurich Am. Ins. Co. v. Hardin*,
No. 8:14-cv-775-T-23AAS, 2019 WL 3082608 (M.D. Fla. July 15, 2019) ...................... 15, 18

**Statutes**

Fla. Stat. § 655.059(1) .................................................................................................... 18

Fla. Stat. § 655.059(1)(e) ................................................................................................ 18

**Other Authorities**

Fed. R. Civ. P. 34(b)(2) ................................................................................................... 11

Plaintiff Eli Lilly and Company ("Lilly") respectfully submits this opposition to DrugPlace, Inc. (FL), DrugPlace, Inc. (TN) (together "DrugPlace"), Community Health Initiative, Inc., Nakorn Wholesalers, LLC, Galaxy Med, LLC d/b/a Galaxy Pharmacy, Brightline Wholesale LLC, Paul Leight, Kevin Singer, Edgar Enriquez, Lane Mazei, Danielle Giscombe, Readus Smith, Jerry Maynard Sr., and Jerry Maynard Jr.'s (collectively, "Defendants")[1] motion for a protective order.

**PRELIMINARY STATEMENT**

This is a case about more than $200 million in fraudulent rebate claims that Defendants, a network of interconnected businesses and their owners and beneficiaries, submitted to Lilly. The vast majority of those fraudulent rebate claims were submitted by Defendant DrugPlace, which represented that it had dispensed hundreds of thousands of purported prescriptions of Lilly's diabetes medication Trulicity. But it did not. [redacted]

> **Question**: Ms. Renfro, based on what you know now and what you've seen today, do you believe that DrugPlace Pharmacy was used as a front or a façade to commit fraud?
>
> [redacted]

8/14/2026 Decl. of Geoffrey Potter ("Potter Decl."), Ex. 1 (Renfro Tr.) at 159:10–15.

The basis for Ms. Renfro's testimony was the irreconcilable discrepancy between the rebate claims DrugPlace transmitted to Lilly and the facts within Ms. Renfro's personal knowledge based on her years of experience as DrugPlace's pharmacist. [redacted]

All the evidence gathered in discovery to date confirms that Defendants engaged in a massive and brazen fraudulent scheme. Indeed, the evidence is so overwhelming that Defendants

[1] Misha Maynard did not join Defendants' motion.

have never even attempted to assert a factual defense to Lilly's allegations over nearly three months of litigation. Instead, they have focused their efforts on preventing Lilly from discovering the full extent of the fraud or the location of their fraudulent proceeds. The present motion is Defendants' latest attempt to obstruct Lilly's discovery efforts.

Defendants' central grievance is that Lilly issued a large number of subpoenas to banks in the regions that Defendants do business, in an effort to locate and trace the money that Defendants stole from Lilly through fraud. But following the money is critically relevant to the issues in this case for multiple reasons, as discussed further below: it proves the existence and scope of Defendants' fraudulent conspiracy; it identifies the participants in the fraudulent conspiracy; and it identifies the circuitous journey and current location of assets that could remediate the harm done by the fraud. Furthermore, subpoenaing Defendants' banks is precisely what Lilly told Defendants and the Court that it intended to do, at a June 9, 2026 conference concerning the stipulated expedited discovery order that the parties carefully negotiated and submitted to the Court. Although Lilly also subpoenaed banks at which Defendants do ***not*** have accounts in the course of its efforts to locate Defendants' funds, Defendants have no privacy interests at stake with respect to those subpoenas and no standing to complain about any alleged burden to those banks, none of which are seeking a protective order on their own behalf.

What Defendants are actually concerned about are Lilly's subpoenas to banks at which Defendants ***do*** have accounts. As set forth in Appendix A, Lilly has identified approximately fifty-six banks that possess Defendants' bank records, of which forty-eight have produced documents and eight have yet to do so. The bank records produced to date demonstrate that—just as Lilly alleges in the complaint—Defendants are not prescribing medicine to patients as they claim but rather are reselling them to pharmaceutical distributors on the secondary market. Indeed, the [redacted] This is detailed in the accompanying declaration of William Waldie, an expert forensic accountant and retired FBI

special agent who is in the process of analyzing Defendants' bank records.

Because the challenged subpoenas have already yielded copious evidence of fraud, this is not a motion to halt an "impermissible fishing expedition" as Defendants contend. Dkt. No. 103 (Defs.' Mot. for Protective Order) at 2. Rather, it is an attempt to be freed from the hooks on which Defendants are already ensnared. When they stipulated to expedited third-party discovery, Defendants apparently did not expect that Lilly would be capable of locating and tracing the proceeds of their fraud, which Defendants have carefully hidden by distributing them to dozens of entities and financial institutions. But they also never planned to provide Lilly with this information on their own, a fact which Lilly anticipated and advised the Court at the June 9 hearing. Although Lilly has served targeted document requests and interrogatories, seeking, among other things, Defendants' financial records and identification of any claims-level information supporting Defendants' rebate claims, Defendants have not produced a single shred of information in discovery. They have refused to provide even rudimentary information about their business practices in their responses to interrogatories that were due weeks ago. The fact that Lilly has turned to third-party discovery to successfully locate the financial records and other evidence of Defendants' fraud is hardly grounds for a protective order.

Lilly's prior bank subpoenas are already being challenged in a Motion to Quash that Defendants elected to file in the Southern District of New York on July 21, 2026. Moreover, Lilly has already agreed that (1) responses to the challenged subpoenas are stayed pending resolution of the Motion to Quash and (2) financial records obtained via subpoena will be treated as Highly Confidential – Attorneys' Eyes Only. Thus, there are essentially only two live controversies at issue in this motion: Defendants' request for a stay of certain third-party discovery (Request No. 2) and their request for sequestration of bank records related to the individual defendants (Request No. 5). There is no sound basis for these requests, which are obvious attempts to thwart Lilly's ongoing efforts to unravel the financial transactions that constitute Defendants' fraudulent scheme. Defendants expressly agreed to expedited third-party discovery as part of a considered and negotiated compromise with Lilly that they confirmed on the record to the Court. And as detailed in the Waldie Declaration, their bank records contain potent evidence of fraud and money laundering. The Court should not block Lilly's efforts to get to the bottom of Defendants' brazen fraudulent scheme. Defendants' motion should be denied.

## BACKGROUND

### A. Defendants Consent to Lilly's Plan to Subpoena Banks and Begin Immediate Discovery

Shortly after commencing this case, Lilly filed a motion for a temporary restraining order, preliminary injunction, and expedited discovery, supported by numerous declarations and documentary evidence substantiating its allegations that Defendants engaged in a massive fraudulent scheme. Dkt. No. 64. Given that Defendants' fraud was characterized by a series of complicated financial transactions and business dealings with various third parties, Lilly asserted in that motion that discovery into Defendants' finances and their communications with such third parties was critical to the case. Accordingly, Lilly asked that Defendants be required to immediately identify their banks and other financial institutions at which they kept their money.

In advance of the hearing on Lilly's preliminary injunction motion, the parties negotiated a proposed Stipulated Order that included a compromise agreement with respect to Lilly's motion for expedited discovery. Dkt. No. 72. In the stipulation, Lilly agreed to withdraw its request for expedited discovery from ***Defendants***, who refused to provide the financial information that Lilly requested. In exchange, Defendants agreed that Lilly could pursue discovery on an expedited basis from ***third parties*** without notifying Defendants of subpoenas. Specifically, the parties' June 9, 2026 Stipulated Order provided:

> The Parties agree that ***any party may serve non-party subpoenas immediately,*** without need to comply with Rule 45(a)(4) or Local Rule 26.1(h), and that such subpoenas may be made ***returnable within five (5) days***.

*Id*. ¶ 7 (emphasis added).

The Stipulated Order was entered following a hearing, where the exact discovery at issue in this motion was discussed. At the hearing, counsel for Lilly explained at length the need for immediate discovery and expressly disclosed that Lilly intended to subpoena Defendants' banks pursuant to the Stipulated Order. Counsel stated that Lilly would subpoena both "local" and "national banks" for "***account information to show who was involved***," "***so we can see where the money went and who else was involved in [the fraud]***." Dkt. No. 103-2 (6/9/2026 Status Conf. Tr.) at 21:1–2; 31:23–32:1; 32:22–33:17. As counsel further explained, after the banks provide Defendants' records, "you can then look at it and understand because at the end of the day this is a crime. ***This is a scheme about money.***" *Id.* at 32:11–16. Counsel further explained that they had followed this exact bank subpoena process in similar cases involving healthcare fraud

schemes, including ones involving some of the exact Defendants who bring this motion in this case, noting that "we have, in fact, sued some of these Defendants before." *Id.* at 21:5–10.

Lilly's counsel also disclosed that Lilly intended to broadly subpoena non-parties in order to substantiate its claims for relief, without limitation to specific categories of documents. *See id.* at 19:15–20 ("[***A***]***ll the discovery*** in this case to prove our damages ***is done through the nonparties***, and that's why we're anxious to move ahead with the nonparty discovery ***to understand the metes and bounds of this fraud***."). During the conference, the Court confirmed with Defendants' counsel repeatedly that they understood the proposed Stipulated Order and were willing to abide by it. *Id.* at 16:1–5; 28:9–18; 30:6–21 ("THE COURT: Every defendant objects to expedited discovery, but you've convinced these individuals to agree to expedited discovery. Is that right? MR. ENNIS: We've agreed to the specific stipulations in the proposal that we submitted to Your Honor.").

**B. Third-Party Discovery Confirms Lilly's Allegations of Defendants' Massive Fraud**

Since Lilly filed this action, its allegations of fraud have been quickly and decisively confirmed by third parties. After learning of Lilly's complaint, the National Hispanic Christian Leadership Conference ("NHCLC"), one of the church organizations whose prescription drug program Defendants claimed to partner with, submitted a sworn declaration attesting that it was "shocked" to hear of Defendants' assertions, as it has no prescription drug program and no relationship with Defendants. *See* Dkt. No. 44-1 (NHCLC Declaration) ¶¶ 7–8.

Subsequently, Lilly took the deposition of two of Defendant DrugPlace's former employees. Lilly first took the deposition of the former pharmacist-in-charge Allison Supko. Contrary to DrugPlace's representations that it filled hundreds of thousands of Trulicity prescriptions, [redacted] *See* Potter Decl., Ex. 2 (Supko Tr.) at 40:19–22; 63:20–22; 65:1–9. In fact, [redacted] *Id.* at 40:13–18. [redacted] *See id.* at 65:21–24. And she flatly refuted DrugPlace's representations that DrugPlace was the exclusive pharmacy for Community Health Initiative, testifying that had this truly been the case, she would have known it. *Id.* at 141:1–7. [redacted]

[redacted]

At her deposition, Ms. Renfro, another DrugPlace pharmacist, corroborated Ms. Supko's testimony. [redacted] *Id.* at 82:5–9. [redacted] *Id.* at 93:22–94:7. [redacted] *id.* at 125:3–7, that she never heard of [redacted] prescription cost share plan, *id.* at 129:25–130:12; 135:6–8; 160:8–10, [redacted] *id.* at 125:20–24. When shown records purporting to be from 2024 that Defendants had previously offered as evidence of DrugPlace's prescriptions and dispensations of Trulicity, [redacted] *Id.* at 131:10–134:12.

Bank records have further confirmed Lilly's allegations of fraud. The records show that, despite filling miniscule numbers of prescriptions, [redacted] *See, e.g.*, Potter Decl., Exs. 6, 7 (wire transfers).[2] Critically, moreover, [redacted] *See e.g.*, Dkt. No. 1 (Compl.) ¶¶ 4, 64. The [redacted] Waldie Decl. ¶ 7.

As Lilly predicted, the evidence confirming Defendants' fraud has come exclusively from third parties. Defendants, despite being served with numerous discovery requests, have refused to provide even a shred of information to Lilly. For example, Defendants' responses and objections

[2] In the interest of limiting the number of exhibits submitted in connection with its Opposition Brief, Lilly has attached a sample of bank statements reflecting such transactions. [redacted] Lilly would be glad to provide a full set of statements at the Court's request.

to Lilly's interrogatories, which sought obviously material information including basic substantiation for Defendants' fraudulent rebate claims, categorically refused to provide ***any*** of the requested information and lodged the same baseless objections to every request. *See* Potter Decl., Ex. 5 (Defs.' Interrog. Resps.). Indeed, Defendants have never once asserted—not even in this motion—that they have any intention of producing evidence of their fraudulent scheme.

### C. Lilly's Bank Subpoenas

#### 1. Lilly Subpoenas Banks to Find Defendants' Fraudulent Proceeds

As noted, Lilly's initial expedited discovery motion sought financial information from Defendants. In particular, Lilly's May 22 proposed order sought: "Since January 1, 2020, ***all bank, investment, brokerage, cryptocurrency, and other financial accounts that any Movant has held, has controlled, is or was a beneficiary of, or has had signatory authority for***, as well as the current balances thereof." Dkt. No. 31-1 (emphasis added). After Defendants refused to provide this information and the parties instead negotiated the June 9 Stipulated Order providing for discovery from third parties, Lilly served subpoenas on numerous local and national banks and financial institutions located in the regions that Defendants do business, in an effort to discover the proceeds of Defendants' massive fraud. The subpoenas were issued consistent with the Federal Rules of Civil Procedure and the negotiated Stipulated Order.

#### 2. The Subpoenas Locate 56 Banks at Which Defendants Have Accounts

The majority of the banks subpoenaed by Lilly disclosed that they did not have responsive documents. Another group of banks did not respond to the subpoenas but were not identified in the documents of any of the banks that did respond. As Lilly represented to the United States District Court for the Southern District of New York in connection with its opposition to Defendants' motion to quash, it is not pursuing subpoenas against these two groups of banks.

The remaining banks and financial institutions—those with responsive documents—are identified in Appendix A to this memorandum. *See* Appendix A (listing financial institutions that have produced responsive documents or indicated that they possess responsive documents). This list identifies fifty-six financial institutions.[3] *Id.* Forty-eight of them have already produced

[3] Since Lilly filed its opposition to the Motion to Quash in the Southern District of New York, one additional bank that had not previously responded to Lilly's subpoena or been identified in other bank records produced records. Lilly had not taken any steps to enforce this subpoena since agreeing to stay responses to the challenged subpoenas pending resolution of the Motion to Quash.

documents, meaning that there are only eight subpoenas still outstanding. *Id.* Defendants are well aware that, at most, only fifty-six institutions are at issue; indeed, they knew which banks they used before Lilly ever served any subpoenas. Yet, they still ask the Court to stay *all* the subpoenas, the majority of which possess none of Defendants' documents and for which any stay would be moot. *See* Defs.' Mot. for Protective Order ("Mot. for PO") at 8.

**3. The Subpoenas Seek Basic Account Information**

As is common for bank subpoenas, the document requests sent to each subpoenaed bank sought information sufficient to identify all accounts owned or controlled by or benefitting any Defendant, and information about transactions to or from such accounts. Additionally, Lilly requested information sufficient to show who accessed Defendants' accounts online or by phone, as this information shows who controls the accounts. As stated on the record of the June 9 hearing, Lilly needs this information to locate the proceeds of Defendants' fraud, uncover evidence of Defendants' laundering or dissipation of such proceeds, and identify additional players in Defendants' fraudulent scheme.

With respect to The Clearing House Payments Company (CHIPS), Lilly requested all CHIPS payment messages to be able to identify Defendants' large value domestic and international transactions. Lilly has legitimate concerns that Defendants have or will move assets abroad, particularly given their abrupt closing of their businesses after learning of Lilly's allegations. As the largest private sector USD clearing and settlement network in the world, The Clearing House Payments Company's CHIPS payment messages would reveal whether such dissipation has occurred, including the amount of any transaction and the sending and receiving banks of the funds.

**4. The Identifying Information Sent to Banks Is Necessary and Protected**

Lilly included personal identifiers to ensure that its requests were narrowly tailored to obtain only Defendants' account information. Account holders can have, and some of Defendants do have, common names, and without limiting information such as tax identification numbers, the subpoenas would have been at risk of accessing an unintended non-party's account information. For example, it is not practical to seek Defendant Kevin Singer's financial information without providing identifying information beyond Mr. Singer's name, as there are many other Kevin Singers in the United States.

Prior to the service of the subpoenas, the Court approved a HIPAA Confidentiality and

Protective Order. A copy of the Protective Order was provided to each bank so that they could produce responsive documents under the appropriate designation. In addition to the protections afforded by the order, financial institutions have independent privacy obligations, consistent with the fact that they routinely possess similar identifying information for their account holders. Banks with responsive documents sent their productions via secured means including password protected or encrypted documents and file-sharing sites. Lilly has also agreed that all Defendants' banking records received from financial or similar institutions are presumptively "Highly Confidential – Attorneys' Eyes Only" under the Protective Order, and has reproduced the records received to date to Defendants with that designation.

**D. Defendants Receive Notice of the Bank Subpoenas**

Consistent with the widespread policy of notifying account holders of civil subpoenas, multiple banks notified Defendants, beginning no later than June 17, 2026, of Lilly's subpoenas. Potter Decl., Ex. 3 (June 17, 2026 correspondence). Defendants still complained to Lilly that Lilly had not provided notice. *Id.* Lilly promptly responded that it would provide documents produced pursuant to subpoenas but that consistent with the Stipulated Order, it had not and would not comply with the notice requirement of Rule 45(a)(4).

Over two weeks later, on July 3, 2026, Defendants moved to clarify that notice was required one business day after the service of subpoenas. Dkt. No. 81. On July 7, the Court issued an order clarifying that Lilly was to provide Defendants notice of document subpoenas within one business day of service. Dkt. No. 83. That same afternoon, Lilly produced to Defendants' counsel the non-party subpoenas it had served to date via a secure transfer link. That production provided an unredacted copy of the Schedule A (identical for each financial institution) and the federal subpoena form for each subpoena that was issued, which stated the subpoena recipient, date of service, return date, and place of compliance (the exact same information Defendants seek to compel Lilly to provide again*, see* Mot. for PO at 9 (Request No. 1(c))). Since the July 7 Order, Lilly has consistently produced such non-party subpoena materials to Defendants within one business day of service.

On July 17, Lilly submitted a response to Defendants' motion for clarification, correcting various mischaracterizations in Defendants' Motion and explaining that although it did not seek reconsideration of the Court's July 7 Order, its actions prior to July 7 were in full compliance with the Stipulated Order. Dkt. No. 91. Defendants have not responded to Lilly's submission.

### E. Defendants File a Motion to Quash in the Southern District of New York and Then This Duplicative Motion

On July 21, Defendants filed a Motion to Quash in the Southern District of New York, making arguments that are essentially identical to those in the present motion. *See* Case No. 26-mc-00362-RA-GWG, Dkt. No. 1. Lilly attached copies of its opposition to that motion in its August 3, 2026 Notice of Related Discovery Motion. Dkt. No. 104.

Before the Motion to Quash was fully briefed, Defendants notified Lilly of their intent to file a motion for protective order in this Court. Their correspondence set forth various requested grounds for relief that were identical to the relief requested in the Motion to Quash. Potter Decl., Ex. 4 (July 30, 2026 correspondence). Lilly and Defendants conferred that afternoon on Defendants' proposed motion. Lilly was willing to compromise with Defendants for several requests. For example, Lilly agreed to treat all financial records received from banking or other financial institutions regarding Defendants' accounts as "Highly Confidential – Attorneys' Eyes Only," since these records were the only ones at the crux of Defendants' privacy objections.[4] *Id.* Lilly also agreed that it had no objection to Defendants' notifying the subpoenaed financial institutions who had not yet produced documents to request that they withhold any productions pending a decision on the motion to quash (as Lilly understood it had already done). Lilly also agreed that Defendants could include in such correspondence that Lilly had no objection to the request. Defendants filed their motion on July 31.

## ARGUMENT

### I. The Relief Requested Pursuant to Request No. 1 Is Moot

Request No. 1 asks that the Court: (a) stay compliance with all subpoenas that Lilly has served seeking financial information; (b) require Lilly to notify each subpoena recipient that compliance is stayed; and (c) require Lilly to identify every subpoena and submit specific information in list format to Defendants. *See* Mot. for PO at 9. Each of these requests is moot and, to the extent not moot, should be denied.

First, Defendants have already notified the banks at issue of this dispute, and Lilly does not object to a stay of compliance with respect to any of the outstanding subpoenas listed in Appendix

---

[4] Lilly did not agree to the precise modification to the protective order Defendants seek due to its overbreadth and vagueness, but did agree to a modification providing that financial records, such as bank statements, produced by any bank or other financial institution <u>for the accounts of Defendants and their employees, affiliates, and agents</u> are presumed "Highly Confidential – Attorneys' Eyes Only."

A while the Southern District of New York decides Defendants' pending Motion to Quash. As Defendants themselves acknowledge, "Lilly agreed to stay compliance with certain subpoenas while [Defendants'] Motion to Quash is pending." Mot. for PO at 10. There is no basis to issue any orders with respect to these subpoenas or require Lilly to send unnecessary additional notifications to subpoena recipients.

Second, Lilly has already produced all subpoenas it served to financial institutions to Defendants,[5] and has continued to produce subpoenas within one business day of service consistent with the Court's July 7 Order. Each production contains (1) the subpoena recipient, (2) the date of service, (3) the date of compliance, and (4) the place of compliance. Lilly is not required to reproduce that same information in the format requested by Defendants. *See* Fed. R. Civ. P. 34(b)(2); *see also Armor Screen Corp. v. Storm Catcher, Inc.*, No. 07-81091-CIV, 2008 WL 4753358, at *2 (S.D. Fla. Oct. 29, 2008). Doing so would require Lilly to create work product that it does not maintain in the ordinary course, which would be duplicative and highly burdensome.

Third, as Defendants acknowledge, the vast majority of the subpoenaed banks have already provided their responses at this point. *See* Appendix A (setting forth the status of the challenged subpoenas). As described in Appendix A, there are only eight outstanding subpoenas that are even potentially subject to this motion. A request to stay compliance with subpoenas that have already been complied with, or require notice with respect to such subpoenas, is entirely moot.

## II. Defendants Fail to Show Any Basis to Modify the Stipulated Order and Protective Order (Request Nos. 2 and 4)

Defendants' motion ignores the fact that they have already agreed to an existing Stipulated Order regarding expedited discovery. The Stipulated Order provides that "discovery may commence immediately," with no limitation on when, from whom, and of what kind. Dkt. No. 72. Defendants, in seeking to stay third-party discovery (Request No. 2) and require preservice notice of third-party subpoenas (Request No. 4) seek to modify the Stipulated Order. *See* Mot. for PO at 9–10. Defendants do not come close to meeting the standard for doing so.

In "determining whether good cause exists to modify a scheduling or case management

[5] In its July 7, 2026 production, Lilly inadvertently omitted a reissued version of one subpoena, served on Bessemer Trust Company of Florida. The original subpoena issued to the parent bank, the Bessemer Trust Company, was included in the production. Lilly produced to Movants the reissued subpoena to the subsidiary Bessemer Trust Company of Florida as soon as it received notice of the unintentional omission. The production also unintentionally omitted the Wells Fargo Schedule A that was served on the bank in connection with the subpoena. That schedule was identical to the other Schedules A that Defendants received on this date.

order . . . courts have examined whether the request was prompted by a material change in circumstances that was not reasonably foreseeable." *United States ex rel. Staggers v. Medtronic, Inc.*, No. 15-CV-392 (TSC/GMH), 2024 WL 4492022, at *6 (D.D.C. Oct. 15, 2024) (collecting cases). Nothing unforeseeable has occurred since the Stipulated Order was entered. To the contrary, the discovery Defendants complain of was not only anticipated at the time of the Stipulated Order, it was expressly discussed on the record before the Stipulated Order was entered. *See supra* at 4–5. Lilly's subpoenas of Defendants' banks were completely foreseeable.

To be sure, the fact that Lilly was able to ***locate*** Defendants' banks by serving a large number of subpoenas may have come as a surprise to Defendants, who appear to have hoped they could avoid liability by stonewalling discovery.[6] But Defendants' mistaken belief that evidence of their fraud would be impossible to find is hardly a basis to modify a stipulated court order. *See, e.g.*, *Alcoa, Inc. v. Universal Alloy Corp.*, No. 1:15-CV-01466-ELR, 2016 WL 9175820, at *1–2 (N.D. Ga. March 2, 2016) (denying modification where "there is no indication that anything has changed" and the party "could have foreseen" the challenged disclosure).

Subpoenaing banks located in particular geographical areas is a longstanding discovery practice that is often the only effective tool for locating money that is being concealed. *See, e.g.*, *Wilson v. Wilson*, No. M2023-01026-COA-R3-CV, 2024 WL 1577423, at *1 (Tenn. Ct. App. Apr. 11, 2024) (party subpoenaing "every bank" in the county to obtain financial records after opposing party claimed he had no records); Tr. of Mots. Hrg. at 26-27, *Shah v. Rodino*, No. 3:13-cv-00103-JD-CAN (N.D. Ind. Apr. 16, 2013), ECF No. 51 ("[W]e went out and subpoenaed every bank and financial institution in Elkhart County and a couple of other states where we thought he might have some other bank accounts"); Trial Tr. vol. 2 at 107, *United States v. Hurt*, No. 3:09-CV-00031-BSM (E.D. Ark. Nov. 17, 2010), ECF No. 208 (noting that the government had to subpoena "every

[6]As just one example of their stonewalling, DrugPlace, Inc. (FL), DrugPlace, Inc. (TN), Community Health Initiative Inc., Nakorn Wholesalers, Singer, and Leight have, in response to Lilly's targeted interrogatories, all served nearly identical objections, consisting of prefatory, general objections, followed by a single, uniform non-answer: "Considering these objections, [Defendant] requests to meet and confer regarding this Interrogatory." Not a single interrogatory received a substantive response.

When the parties met to discuss these non-responses, well prior to the Court's August 10 Order (Dkt. No. 119), defense counsel refused to commit to providing interrogatory responses. They have now made clear, citing the August 10 Order, that they have no intention of providing any party discovery for an indefinite period of time. The remaining Defendants have also consistently refused to provide any discovery responses or produce any documents, and also have stated that they have no plans to do so in the near future, again citing the August 10 Order.

bank in Arkansas"); *Franco v. Franco*, No. FA87 0240305 S, 1993 WL 328793, at *1 (Conn. Super. Ct. Aug. 19, 1993) (discussing defendant's subpoenaing of "every bank that he could think of in the State of Connecticut" to discover plaintiff's bank accounts, including the accounts of plaintiff's parents); *United States v. Ford*, 237 F.2d 57, 59 (2d Cir. 1956) (noting that investigation checked "every bank in Rochester" for accounts of the defendant), *vacated*, 355 U.S. 38 (1957) (vacated on other grounds). Defendants cite no case in which this practice was found to establish good cause for a protective order, particularly in the absence of any motion by the banks in question.

Here, none of the banks that received subpoenas have challenged them. This is not surprising, since banks have subpoena compliance departments that routinely process subpoenas as part of the ordinary course of business, and Lilly has paid fees to cover the banks' costs of compliance. Thus, Defendants' complaints about the quantity of bank subpoenas that Lilly served is a red herring and provides no basis for a protective order. Moreover, Defendants lack standing to challenge the subpoenas issued to the banks at which they have no accounts, as they have no personal interest in any of those banks' records. *Hernandez v. Burrows*, No. 20-22721-CIV, 2021 WL 5999431, at *3 (S.D. Fla. Dec. 20, 2021) ("[A] party does not have standing to challenge discovery propounded to a non-party, unless the party has a personal right or privilege concerning the subject matter of the documents or information sought"); *see Peninsula Petroleum Ltd. v. CI Int'l Fuels LLC*, No. 22-CV-20712, 2023 WL 8476409, at *2 (S.D. Fla. Sept. 12, 2023).

As for the subpoenas issued to the banks where Defendants ***do*** have accounts, those subpoenas are precisely what Lilly told Defendants to expect. And, as discussed below, these subpoenas have yielded massive evidence of fraud just as Lilly predicted. *Infra* at 14–16. Defendants are sophisticated parties represented by experienced counsel. They negotiated the Stipulated Order with full knowledge of Lilly's intent to immediately seek discovery from Defendants and third parties, including financial institutions. The fact that Defendants' banks have been subpoenaed provides no basis whatsoever to modify the Stipulated Order and stay third-party discovery.

## III. There is No "Good Cause" to Substantially Limit Lilly's Discovery or Sequester Documents (Request Nos. 2 and 5)

Defendants seek to block further discovery of financial information of Defendants and any other third-party discovery that does not ***expressly*** relate to Lilly, Trulicity, rebate claims for Trulicity, Health Delegates, the unnamed PBMs' alleged rebate proceeds for Trulicity, or alleged

resale proceeds of Trulicity (Request No. 2). Mot. for PO at 9. They also seek to sequester all financial records received in response to any subpoena (Request No. 5) (together, the "Protected Materials"). Mot. for PO at 10. Even if this discovery had not already been permitted by the Stipulated Order—which Defendants fail to show good cause to modify—Defendants could not establish good cause for the protective order they seek.

"The Federal Rules of Civil Procedure strongly favor full discovery whenever possible." *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985). Good cause exists for a protective order only where the Court determines that the balance of the need for the requested information is outweighed by the burden of producing the information. *McCarthy v. Barnett Bank of Polk Cnty.*, 876 F.2d 89, 91 (11th Cir. 1989). Courts in this Circuit will also consider (1) the severity and the likelihood of the perceived harm; (2) the precision with which the order is drawn; (3) the availability of a less onerous alternative; and (4) the duration of the order. *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987).

Applying these factors demonstrates that Defendants have failed to carry their burden. Lilly's need for discovery is urgent and compelling. The harm alleged by Defendants is nonexistent and speculative. Defendants' requested protective order can be addressed through less restrictive alternatives and as drafted, is overly broad, indefinite, and impossible to administer. And there are readily available, less onerous alternatives that would protect Defendants' alleged privacy interests, many of which Lilly has already agreed to, which would also permit Lilly's legitimate discovery to proceed.

### A. Lilly Has a Compelling Need for the Requested Protected Materials

As the above makes clear, the complexity of Defendants' fraud makes Lilly's need for the Protected Materials highly compelling, as Lilly explained to Defendants and the Court at the June 9 conference, and prior thereto in its memorandum in support of its Motion for Preliminary Injunction. Although Lilly has already amassed significant evidence that Defendants engaged in fraud, bank and other financial records are necessary to provide insight into the full extent of the fraud, who was involved, where the proceeds of the fraud have been transferred, and where they are now located. Indeed, the heart of Defendants' fraudulent scheme is an extraordinarily complicated web of financial transactions that are structured to hide the fraud. Discovery of the financial documents recording those transactions is essential to this case.

In recognition of this point, courts routinely require the production of financial information

and banking records where such documents are relevant to uncovering evidence of complex financial conspiracies. *See Sierra Equity Grp. v. White Oak Equity Partners, LLC*, 672 F. Supp. 2d 1369, 1370–71 (S.D. Fla. 2009) (finding defendant failed to satisfy burden of showing good cause to protect bank records from disclosure in fraud case arising from defendants' alleged misuse and diversion of funds; "bank account records sought are highly relevant to this action and reasonably calculated to lead to the discovery of admissible evidence in that such records may shed light on how the funds given White Oak were used and whether they were used for purposes consistent with the terms of the subscription agreement"); *Eitzen Chem. (Singapore) Pte, Ltd. v. Carib Petroleum*, No. 10-23512-CIV-PAS, 2011 WL 4527435, at *3 (S.D. Fla. Sept. 28, 2011) (denying request for protective order in fraud/smuggling case; "[t]he bank records reasonably could lead to admissible evidence"); *Wyndham Vacation Ownership, Inc. v. Square One Dev. Grp., Inc.*, No. 6:20-CV-643-RBD-EJK, 2022 WL 20833658 (M.D. Fla. Jan. 5, 2022) (no good cause for protective order in case involving bank fraud; "the requested documents are relevant to the claims in the Fifth Amended Complaint, and Plaintiffs thus have an interest in receiving these documents that outweighs any interest in keeping them confidential"); *Zurich Am. Ins. Co. v. Hardin*, No. 8:14-cv-775-T-23AAS, 2019 WL 3082608, at *3 (M.D. Fla. July 15, 2019) (denying motion for protective order because "financial statements, tax returns, bank records, and credit card statements are relevant to [plaintiff's] claim").

Indeed, the bank records produced to date have already been highly relevant, confirming the nature of Defendants' fraudulent scheme, beginning to illuminate the pathways through which money flowed among the Defendants, and identifying numerous additional entities that received millions of dollars in proceeds that originated from DrugPlace's bank accounts. Waldie Decl. ¶¶ 6–7. Specifically, the [redacted][7] These records confirm the truth of Lilly's core allegations about the nature and scope of Defendants' fraudulent scheme. They show that rather than dispensing large volumes of prescription medicines as its high volumes of rebate claims indicate, [redacted]

[7] For example, Potter Declaration Exhibit 8 (UCB_000788) shows that over [redacted] flowed in and out of a single DrugPlace account in December 2024 alone, including [redacted]

[redacted] ¶ 7. This is exactly the scheme that Lilly described in the complaint. *E.g.*, Compl. ¶¶ 4, 64, 91–104, 154–70.

The [redacted] Waldie Decl. ¶¶ 9, 38. [redacted] *Id.* ¶¶ 14, 39–40. [redacted] As Mr. Waldie explains in his declaration, these transactions have all the hallmarks of efforts to conceal and launder the proceeds of fraud. *Id.* ¶¶ 8, 15. Although Mr. Waldie has been able to conduct an extensive analysis with the records produced so far, the outstanding subpoenas raise important questions that cannot be answered without completing financial discovery. *Id.* ¶¶ 48–54. For example, [redacted] *Id.* ¶ 53. Yet American Express has yet to respond to Lilly's outstanding subpoenas. If the present motion were granted, the fate of that money may never be determined.

As Lilly informed this Court at the June 9 hearing, "This is a scheme about money." 6/9/2026 Status Conf. Tr. at 32:11–16. Without the bank records, Lilly cannot trace the proceeds of Defendants' fraud, identify all conspirators, or recover the proceeds of Defendants' scheme. Waldie Decl. ¶¶ 48–54.

### B. Defendants' Privacy Concerns Can Be Resolved Through Confidentiality Designations

Defendants' concerns about privacy pale in comparison to the critical need to trace Defendants' fraud. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, are insufficient to establish "good cause" which justifies a protective order. *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1122 n.18 (3d Cir. 1986). When a party alleges harm that would result from disclosure of certain information, "the harm must be significant, not a mere trifle." *Gold Coast Prop. Mgmt., Inc. v. Valley Forge Ins. Co.*, No. 09-60029-CIV, 2010 WL 9871643, at *2 (S.D. Fla. Jan. 26, 2010) (internal citations omitted); *see also Edmondson v. Velvet Lifestyles, LLC*, No. 15-24442-CIV, 2016 WL 5682591, at *8 (S.D. Fla. Oct. 3, 2016). The Federal

Rules require "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429–30 (M.D. Fla. Sept. 28, 2005). Defendants fail to provide any justification for their requested relief, which means that they cannot bear their burden to show good cause. *Id.*

*First*, the United States Supreme Court has determined that bank customers have no reasonable expectation of privacy in the financial records kept by their banks. *United States v. Miller*, 425 U.S. 435, 440–41 (1976). And multiple courts have found that "the right to privacy enshrined in Florida's constitution does not apply in a scenario such as this one, where the right is not invoked by a natural person and the disclosure is not sought pursuant to governmental action but rather through a subpoena issued by a private party." *Osio v. Moros*, No. 21-20706-CIV, 2023 WL 4531264, at *4 (S.D. Fla. July 13, 2023); *see also Frenkel v. Acunto*, No. 11-62422-CIV, 2014 WL 4680738, at *4 (S.D. Fla. Sept. 19, 2014) (refusing to extend the right of privacy under Florida's Constitution to non-parties objecting to subpoena); *Gabriel v. G2 Secure Staff, LLC*, 225 F. Supp. 3d 1370, 1372 (S.D. Fla. 2016) (noting that Article I, Section 23 does not "automatically protect a Plaintiff from discovery into her relevant financial transactions in civil litigation"); *Resha v. Tucker*, 670 So. 2d 56, 58 (Fla. 1996) ("The language of th[e] constitutional provision clearly provides that it applies only to government action."). In any event, the majority of Defendants here are corporate entities, not natural persons, and have no privacy right under the Florida Constitution in the first place.

*Second*, to the extent there is a cognizable and protectable interest in financial information, "Florida's constitutional and statutory protection of personal financial and banking records . . . is not absolute." *Osio*, 2023 WL 4531264, at *4. Courts in this District consistently deny motions for protective orders and permit financial records to be disclosed pursuant to a subpoena, *id.* (collecting cases), because "[a] party's finances, if relevant to the disputed issues of the underlying action, are not excepted from discovery." *Ochoa v. Empresas ICA, S.A.B de C.V.*, No. 11-23898-CIV, 2012 WL 3260324, at *6 (S.D. Fla. Aug. 8, 2012); *Popoli v. Ft. Myers Lodge #1899 Loyal Ord. of Moose, Inc.*, No. 2:15-CV-311-FTM-29CM, 2015 WL 9031929, at *4 (M.D. Fla. Dec. 16, 2015) (finding defendant failed to show good cause for protective order and upholding subpoena despite claims that Florida law establishes right to privacy). Florida law itself explicitly provides that financial records of a financial institution "shall be made available for inspection and examination" in certain enumerated circumstances, including "pursuant to a subpoena issued in

accordance with state or federal law." Fla. Stat. § 655.059(1), (1)(e).

*Finally*, every subpoenaed financial institution was provided a copy of the existing protective order and the opportunity to designate materials pursuant to it. Adding the "Highly Confidential—Attorneys' Eyes Only" designation is sufficient to cure any remaining concern, and the Court need not stay the subpoenas or grant the other sweeping relief Defendants request. *See Zurich Am. Ins. Co.*, 2019 WL 3082608, at *3 ("To the extent the defendants have confidentiality concerns, the court entered an Agreed Protective Order under which the defendants can designate the records as 'Confidential Information.'"); *Eitzen Chem.*, 2011 WL 4527435, at *3 ("[W]ith regard to Defendants' privacy expectations, the undersigned finds that a stipulated confidentiality agreement, entered into by the parties, that restricts review of the banking records to 'attorneys' eyes only' and those of necessary legal assistants, would address these issues while providing Plaintiffs the discovery to which they are entitled."). Lilly has offered precisely this accommodation.

**C. Defendants' Proposed Protective Order is Overbroad and It Is Not Practical to Limit the Subpoenas in the Manner Requested**

**1. Request No. 2**

Defendants argue that Lilly's subpoenas are "overreaching" and that "[p]roper discovery can be limited to accounts and transactions involving Lilly, Trulicity, rebate claims for Trulicity, Health Delegates, the unnamed PBMs' alleged rebate proceeds for Trulicity, or alleged resale proceeds of Trulicity." Mot. for PO at 7, 9. This argument is unreasonable for several independent reasons.

First, it would be prohibitively burdensome to expect banks, who routinely comply with subpoenas for account information without hiring counsel, to conduct a tailored review of bank statements before producing them. Banks produce account records as part of their ordinary business operations; they are not in a position to review individual transactions for relevance to specific pharmaceutical fraud claims.

Second, as Mr. Waldie details in his declaration, because the very essence of Defendants' scheme is to conceal their fraud in the guise of legitimate transactions, there is no practical way to identify in advance which specific transactions are relevant to the fraud. Waldie Decl. ¶ 12. The conspirators and other linked individuals and entities number in the dozens, and each is likely to have multiple, if not many, accounts, and will have distributed funds to still further accounts. In such a wide-ranging conspiracy, there is no way to further tailor the categories of information

sought.

Third, the vast majority of the records received to date do not explicitly reference "Lilly" or "Trulicity" or "rebate claims." *Id.* They don't list the names of the "unnamed PBMs" or state that transactions are for the "resale proceeds of Trulicity." There is no reasonable way to trace Defendants' fraudulent proceeds through targeted document requests identified in advance. The money can only be followed by analyzing Defendants' entire bank statements.

**2. Request No. 5**

Defendants' sequestration request is again completely unjustified. The demand that Lilly "sequester records already received . . . and prohibit their use" would cripple Lilly's ability to trace Defendants' fraudulent activity. Waldie Decl. ¶ 21. As detailed in the Waldie declaration, Lilly is in the process of using these records to analyze transaction patterns, identify the flow of funds, and trace the proceeds of fraud. Sequestering these records and prohibiting their use is an extraordinary remedy for a nonexistent harm that would defeat the purpose of the Stipulated Order and be contrary to the policy of the Federal Rules of Civil Procedure.

Defendants' cited cases do not support the broad relief they request. *Cannata v. Wyndham Worldwide Corp.*, No. 2:10-CV-00068-PMP, 2011 WL 3794254, at *5 (D. Nev. Aug. 25, 2011), concerned subpoenas to employers requesting information irrelevant to a sexual harassment and discrimination case, not bank records directly relevant to tracing the proceeds of a massive fraud. *Continuum on S. Beach Condo. v. QBE Ins. Corp.*, 338 F.R.D. 668, 671 (S.D. Fla. 2021), concerned overbroad and irrelevant subpoenas in a hurricane damage case where the information sought could be "easily obtained [by plaintiff]" through other means. *Meide v. Pulse Evolution Corp.*, No. 3:18-CV-1037-J-34MCR, 2019 WL 1518959, at *8 (M.D. Fla. Apr. 8, 2019), involved a declaration about harassment and reputation-harming dissemination of false information—circumstances entirely absent here.

None of these cases involved anything resembling the present situation: a massive fraud scheme where bank records are the only means to trace hundreds of millions of dollars in stolen proceeds through a deliberately opaque network of entities and accounts. Defendants cite no cases nor do they offer a rationale to support the broad relief they actually request—sequestering all financial records and staying all related discovery.

**D. The Bank Statements Are Not Available from Another Source**

The final factor for "good cause" weighs heavily in Lilly's favor. The bank records are

simply not available from any alternative source. Defendants' refusal to participate in discovery makes the bank subpoenas not merely appropriate but necessary. On July 28, 2026, Defendants served their responses and objections to Lilly's interrogatories, in which they categorically refused to provide ***any*** information about their fraudulent scheme and lodged the same baseless objections to every request. Defendants have since taken the position that they are not required to produce any further discovery, or even to meet and confer, prior to the hearing on their motions to dismiss. Based on this position, they have failed even to respond to Lilly's document requests, responses to which were due on August 12. Having refused to provide any information through ordinary party discovery, Defendants cannot now complain that Lilly has sought it from third parties.

## CONCLUSION

As explained above and in the accompanying exhibits and declaration of Lilly's expert forensic accountant William Waldie, the discovery that Defendants are seeking to thwart demonstrates that they are liable for a massive fraud and are actively seeking to conceal the proceeds of that fraud. The present motion is a desperate attempt to halt Lilly's ongoing efforts to hold Defendants accountable for that fraud. Defendants fail to establish any basis for a protective order against discovery that is highly relevant and was expressly authorized by a stipulated Court order just over two months ago. Their motion should be denied.

DATED: August 14, 2026

**STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.**

*/s/ Jay B. Shapiro*
Jay B. Shapiro, Esq. (FBN 776361)
Email: jshapiro@stearnsweaver.com
Veronica L. de Zayas, Esq. (FBN 91284)
Email: vdezayas@stearnsweaver.com
Ryan M. Wolis, Esq. (FBN 1019034)
Email: rwolis@stearnsweaver.com
150 W. Flagler St., Suite 2200, Miami, FL 33130
Telephone: 305-789-3200

and

**PATTERSON BELKNAP WEBB & TYLER LLP**

*/s/ Geoffrey Potter*
Geoffrey Potter, Esq. (Admitted *PHV*)
Email: gpotter@pbwt.com
Aron Fischer, Esq. (Admitted *PHV*)
Email: afischer@pbwt.com
Joshua Kipnees, Esq. (Admitted *PHV*)
Email: jkipnees@pbwt.com
1133 Avenue of the Americas, New York, NY 10036
Telephone: 212-336-2000

*Attorneys for Plaintiff Eli Lilly and Company*