**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

ELI LILLY AND COMPANY,

Plaintiff,

v.

DRUGPLACE, INC. (FL); DRUGPLACE, INC. (TN); COMMUNITY HEALTH INITIATIVE, INC.; NAKORN WHOLESALERS, LLC; GALAXY MED, LLC D/B/A GALAXY PHARMACY; BRIGHTLINE WHOLESALE LLC; PAUL LEIGHT; KEVIN SINGER; READUS SMITH; JERRY MAYNARD SR.; JERRY MAYNARD JR.; MISHA MAYNARD; EDGAR ENRIQUEZ; LANE MAZEI; DANIELLE GISCOMBE; DANIEL HOFFNER; and TEXAS PHARMACY ENTERPRISE, LLC,

Defendants, and

CHRISTOPHER DEMARCO; DEMARCO LANDSCAPE DESIGN GROUP, LLC; GLOBUS INDUSTRIES, LLC; ROCKAWAY INVESTMENTS INC.; and U.S. HEALTHCARE DISTRIBUTORS LLC,

Relief Defendants.

Case No. 1:26-CV-23516-FAM

**DEFENDANTS DRUGPLACE, INC. (FL), DRUGPLACE, INC. (TN), COMMUNITY HEALTH INITIATIVE, INC., NAKORN WHOLESALERS, LLC, KEVIN SINGER, AND PAUL LEIGHT'S MOTION TO <u>DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. ALLEGED FACTUAL BACKGROUND .......... 3

III. LEGAL STANDARDS .......... 4

A. Rule 12(b)(6) .......... 4

B. Rules 8 and 10 .......... 5

C. Rule 9(b) .......... 5

D. Rule 12(b)(7) and Rule 19 .......... 6

IV. ARGUMENT .......... 6

A. The FAC Remains an Impermissible Shotgun Pleading .......... 6

1. The FAC Improperly Incorporates All Preceding Allegations into Each Count .......... 7

2. The FAC Continues to Engage in Impermissible Group Pleading .......... 7

B. The FAC Fails to Plead Common Law Fraud (Count I) and Negligent Misrepresentation (Count III) Against the Rebate Defendants .......... 9

1. Lilly's Common Law Fraud and Negligent Misrepresentation Claims Fail Because They Do Not Sufficiently Plead Reliance .......... 10

2. Lilly Fails to Satisfy Rule 9(b) On the Other Elements of Its Common Law Fraud and Negligent Misrepresentation Claims .......... 12

C. Lilly Fails to Plead Civil Conspiracy (Count II) Against Movants .......... 14

1. The FAC Cannot Overcome the Intracorporate Conspiracy Doctrine .......... 14

2. Lilly Fails to Plead Any Factual Allegations of an Agreement .......... 16

3. Lilly Fails to Allege that Nakorn or Community Health Knowingly Joined or Assisted the Purported Conspiracy .......... 18

D. Lilly Fails to Plead Unjust Enrichment and Money Had and Received (Counts IV and V) .......... 19

1. Lilly Pleads No Direct Benefit to Any Movant .......... 19

2. Rule 9(b) Independently Requires Dismissal of Counts IV and V .......... 21

3. Count V Is Duplicative of Count IV ........ 22

E. Lilly's Equitable Claims Must Also Be Dismissed Under Rule 12(b)(7) Because the PBMs and Health Delegates Are Required Parties (Counts IV and V) ........ 22

F. Count VI Fails to State a Claim for Florida Civil Theft ........ 23

1. The Shotgun Pleading and Rule 9(b) Defects Apply with Equal Force to Lilly's Civil Theft Claim ........ 23

2. Count VI Does Not Identify the Allegedly Stolen Property or Any Movant-Specific Obtaining or Use with Particularity ........ 24

3. Count VI Does Not Plead Knowledge, Felonious Intent, or an Intent to Deprive or Appropriate ........ 24

V. REQUEST FOR HEARING ........ 25

VI. CONCLUSION ........ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ADT LLC v. Skyline Sec. Mgmt., Inc.*,
No. 24-CV-20758, 2026 WL 575122 (S.D. Fla. Mar. 2, 2026)....21

*Alhassid v. Bank of Am., N.A.*,
60 F. Supp. 3d 1302 (S.D. Fla. 2014)....18

*Almeida v. Amazon.com, Inc.*,
456 F.3d 1316 (11th Cir. 2006)....24

*Am. Dental Ass'n v. Cigna Corp.*,
605 F.3d 1283 (11th Cir. 2010)....5, 12

*Am. United Life Ins. Co. v. Martinez*,
480 F.3d 1043 (11th Cir. 2007)....16, 18

*Ambrosia Coal & Constr. Co. v. Pages Morales*,
482 F.3d 1309 (11th Cir. 2007)....6, 24

*Apex Toxicology, LLC v. United HealthCare Services*,
No. 17-61840-CIV, 2020 WL 13551299 (S.D. Fla. July 7, 2020)....9, 14, 15, 16, 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....4, 5

*Banc of Am. Sec. LLC v. Stott*,
No. 04-81086-CIV, 2005 WL 8156027 (S.D. Fla. Aug. 30, 2005)....14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....4, 5

*Biscayne Park LLC v. Madison Realty Corp., L.P.*,
No. 13-20336-CIV, 2013 WL 2243975 (S.D. Fla. May 21, 2013)....22

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
116 F.3d 1364 (11th Cir. 1997)....5, 14

*Campos v. I.N.S.*,
32 F. Supp. 2d 1337 (S.D. Fla. 1998)....5

*CFLB P'hip, LLC v. Diamond Blue Int'l, Inc.*,
352 So. 3d 357 (Fla. 2d DCA 2022)....21

*City of Miami v. Eli Lilly & Co.*,
No. 1:21-cv-22636-RNS (S.D. Fla. Sept. 27, 2021) .......................................................20

*City of Miami v. Eli Lilly & Co.*,
No. 21-22636-CIV, 2022 WL 198028 (S.D. Fla. Jan. 21, 2022)...........................................20

*Eagletech Commc'ns., Inc. v. Bryn Mawr Investment Group, Inc.*,
79 So. 3d 855 (Fla. 4th DCA 2012) ......................................................................................18

*ECB USA, Inc. v. Savencia Cheese USA, LLC*,
148 F.4th 1332 (11th Cir. 2025) ..................................................................................14, 17, 18

*Feng v. Walsh*,
No. 19-24138-CIV, 2021 WL 8055449 (S.D. Fla. Dec. 21, 2021)...............................9, 10, 17

*Fernau v. Enchante Beauty Prods., Inc.*,
847 F. App'x 612 (11th Cir. 2021).........................................................................................10

*Fireman v. Travelers Cas. & Sur. Co. of Am.*,
No. 10-81564-CIV, 2011 WL 743069 (S.D. Fla. Feb. 24, 2011) ...........................................22

*Frayman v. Douglas Elliman Realty, LLC*,
515 F. Supp. 3d 1262 (S.D. Fla. 2021) ..................................................................................19

*Graham v. Cypress Cap. Grp., Inc.*,
No. 10-81269-CIV, 2011 WL 13227744 (S.D. Fla. July 12, 2011) ................................15, 16

*GVB MD v. Aetna Health Inc.*,
No. 19-22357-CIV, 2019 WL 6130825 (S.D. Fla. Nov. 19, 2019) (Moreno, J.) ....................19

*Herbst v. Am. Orthodontics Corp.*,
No. 23-61262-CV, 2023 WL 7108633 (S.D. Fla. Oct. 10, 2023), *aff'd*, No. 23-13423, 2024 WL 3358520 (11th Cir. July 10, 2024).............................................................6, 7

*Honig v. Kornfeld*,
339 F. Supp. 3d 1323 (S.D. Fla. 2018) ...................................................................14, 17, 18

*Johnson v. Catamaran Health Sols., LLC*,
687 F. App'x 825, 830 (11th Cir. 2017) ...............................................................................21

*Keegan v. Minahan*,
No. 23-60501-CIV, 2023 WL 3884962 (S.D. Fla. June 7, 2023)...........................................12

*Keith v. DeKalb Cnty.*,
749 F.3d 1034 (11th Cir. 2014) ...............................................................................................7

*Lamm v. State St. Bank & Tr.*,
749 F.3d 938 (11th Cir. 2014) .................................................................................................5

*Laterza v. JPMorgan Chase Bank, N.A.*,
221 F. Supp. 3d 1347 (S.D. Fla. 2016) ....................24

*In re Lichtman*,
388 B.R. 396 (Bankr. M.D. Fla. 2008) ....................9

*Magluta v. Samples*,
256 F.3d 1282 (11th Cir. 2001) ....................6, 7, 9

*Magnum Constr. Mgmt., LLC v. WSP USA Solutions, Inc.*,
522 F. Supp. 3d 1202 (S.D. Fla. 2021) ....................7

*Malhotra v. Aggarwal*,
No. 1:17-cv-24407, 2019 WL 1082062 (S.D. Fla. Mar. 6, 2019) ....................24

*Mancinelli v. Davis*,
217 So. 3d 1034 (Fla. Dist. Ct. App. 2017) ....................14

*Med-Stop, Inc. v. Vandutch*,
No. 23-cv-21875, 2025 WL 26731 (S.D. Fla. Jan. 3, 2025)....................24

*Microsoft Corp. v. Big Boy Distrib. LLC*,
589 F. Supp. 2d 1308 (S.D. Fla. 2008) ....................14

*Mirage Yacht, Inc. v. A 2013 Marquis Yachts Recreational Vessel*,
No. 24-21095-CIV, 2025 WL 1047148 (S.D. Fla. Feb. 12, 2025) ....................9, 10

*Omnipol, A.S. v. Multinational Def. Servs., LLC*,
32 F.4th 1298 (11th Cir. 2022) ....................5, 21, 23, 24

*In re Palm Beach Fin. Partners, L.P.*,
488 B.R. 758 (Bankr. S.D. Fla. 2013)....................17

*Paylor v. Hartford Fire Ins. Co.*,
748 F.3d 1117 (11th Cir. 2014) ....................6, 7

*Platinum Props. Investor Network, Inc. v. Sells*,
No. 1861907-CIV, 2019 WL 2247544 (S.D. Fla. 2019) ....................10

*Pop v. LuliFama.com LLC*,
145 F.4th 1285 (11th Cir. 2025) ....................5

*Prentice v. R.J. Reynolds Tobacco Co.*,
338 So. 3d 831 (Fla. 2022)....................10, 11

*Principal Life Ins. Co. v. Mosberg*,
No. 09-22341-CIV, 2010 WL 473042 (S.D. Fla. Feb. 5, 2010) ....................18

*State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*,
278 F. Supp. 3d 1307 (S.D. Fla. 2017) ....................13

*Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC*,
904 F.3d 1197 (11th Cir. 2018) ....................14, 16

*Tick v. Cohen*,
787 F.2d 1490 (11th Cir. 1986) ....................22

*Tippens v. Round Island Plantation, LLC*,
No. 09-CV-14036, 2009 WL 2365347 (S.D. Fla. July 31, 2009)....................18

*Town of Indian River Shores v. City of Vero Beach*,
622 F. Supp. 3d 1265 (S.D. Fla. 2022) ....................6

*Ultimate Motors, Inc. v. Lionheart Motorcars, LLC*,
No. 19-60917-CIV, 2019 WL 9786489 (S.D. Fla. July 23, 2019) ....................22

*Veltmann v. Walpole Pharmacy, Inc.*,
928 F. Supp. 1161 (M.D. Fla. 1996)....................5

*Vibe Micro, Inc. v. Shabanets*,
878 F.3d 1291 (11th Cir. 2018) ....................6, 7

*Vidales v. StonCor Group, Inc.*,
No. 23-CV-24011-RAR, 2024 WL 167187 (S.D. Fla. Jan. 16, 2024) ....................23

*Weisman v. S. Wine & Spirits of Am., Inc.*,
297 So. 3d 646 (Fla. Dist. Ct. App. 2020) ....................16

*Wilding v. DNC Servs. Corp.*,
941 F.3d 1116 (11th Cir. 2019) ....................10, 11, 12

*Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*,
746 F.3d 1008 (11th Cir. 2014) ....................6

*Ziemba v. Cascade Int'l., Inc.*,
256 F.3d 1194 (11th Cir. 2001) ....................13

**Statutes**

Fla. Stat. § 772.11(1)....................23

Fla. Stat. §§ 812.012(3)–(5), 812.014(1) ....................23

Fla. Stat. § 812.014(1)....................24

**Other Authorities**

Fed. R. Civ. P. 8(a)(2), 10(b) ....................5

Fed. R. Civ. P. 9(b) ....................1, 2, 5, 9, 10, 12, 13, 16, 17, 18, 21, 23, 24

Fed. R. Civ. P. 19(a)(1)(A) ....................22

Fed. R. Civ. P. 19(a)(2) ....................6

Defendants DrugPlace, Inc. (FL), DrugPlace, Inc. (TN) (together with DrugPlace, Inc. (FL), "DrugPlace"), Community Health Initiative, Inc. ("Community Health"), Kevin Singer ("Singer"), Paul Leight ("Leight") (DrugPlace, Community Health, Singer, and Leight are collectively referred to as "Rebate Defendants"), and Nakorn Wholesalers, LLC ("Nakorn," and together with Rebate Defendants, "Movants") respectfully move to dismiss[1] Plaintiff Eli Lilly and Company's ("Lilly") First Amended Complaint and Jury Trial Demand (the "FAC") under Federal Rules of Civil Procedure ("Rules") 8, 9(b), 10, 12(b)(6), 12(b)(7), and 19.

## I. INTRODUCTION

The FAC is longer, not stronger. Lilly has expanded the cast of defendants, added allegations based on post-suit discovery of banks that still fail to cure pleading defects, and included a new claim for civil theft under Florida law. But more allegations do not cure the fundamental flaws warranting dismissal of every count.

At its core, this action is an effort by Lilly to recover rebate payments that it made to non-party pharmacy benefit managers ("PBMs") in reliance on submissions made by those PBMs after their review and validation of the rebate claims. But Lilly has not sued either PBM, which the FAC now identifies as Ascent Health Services ("Ascent") and Emisar Pharma Services ("Emisar"). Nor has Lilly sued Health Delegates, LLC ("Health Delegates"), the rebate aggregator that submitted the claims to those PBMs and may have received rebate funds from the PBMs for Trulicity rebates. Oddly, Lilly seeks to sidestep the companies that directly received its payments, controlled the rebate-submission process, and owed Lilly contractual duties to review and validate each claim as eligible for a rebate before submission. Lilly ignores their involvement to ask this Court to impose fraud liability on downstream parties such as Movants and the other defendants (collectively, "Defendants"). Ascent, Emisar, and Health Delegates remain non-parties, yet are required parties for the Court to accord complete relief under Lilly's theories of unjust enrichment and money had and received.

Lilly's claims against Movants fail because the FAC does not satisfy the heightened pleading standards under Rule 9(b) that govern each of its six counts. The FAC remains an impermissible shotgun pleading built on group pleading. Lilly continues to attribute representations, agreements, benefits, and intent to shifting collective labels such as "DrugPlace

---

[1] Movants have filed an unopposed motion for leave to exceed the applicable page limit, ECF No. 155, which remains pending as of the filing of this Motion.

Entities" or "Fraud Defendants" rather than to any particular Defendant. The allegations of individual Defendants' roles added to the FAC do not cure this defect. Asserting that a party is an owner, manager, or lender, for example, does not identify with particularity the who, what, when, where, and how for each Movant. Rule 9(b) requires more.

Each count also fails for independent reasons. For common law fraud and negligent misrepresentation, the FAC still does not plead first-party reliance by Lilly on any representation made by any Rebate Defendant, because it continues to make clear that Lilly relied upon representations made by the PBMs—not Rebate Defendants—when it made rebate payments to the PBMs. The FAC affirmatively acknowledges that the non-party PBMs reviewed, validated, warranted, and submitted the rebate claims for Trulicity to Lilly; Lilly relied on this review and warranty; and, Lilly paid rebates directly to those PBMs as a result. For Lilly to plead reliance against Rebate Defendants, Florida law requires much more—especially where the FAC also fails to plead with any specificity a false statement made by each Rebate Defendant upon which Lilly relied.

Lilly's civil conspiracy to commit common law fraud claim fares no better. Because Lilly has not pled fraud, there is no viable underlying claim to support conspiracy. Apart from this fatal defect, the FAC makes only conclusory allegations of an agreement, which are insufficient to sustain a conspiracy claim against Movants, and it fails entirely to plead knowing involvement or participation on the part of Community Health and Nakorn. Lilly's allegations of common ownership, control, agency, and affiliation also trigger the intracorporate conspiracy doctrine thereby barring a civil conspiracy claim.

The equitable claims for unjust enrichment and money had and received also fail. Florida law does not allow Lilly to leap from payments to non-parties to the conclusion that every Movant was unjustly enriched. Lilly must plead a direct benefit conferred on each Movant. The FAC alleges no such benefit. Instead, Lilly alleges it paid PBMs, the PBMs operate under separate contracts with Lilly, the PBMs may or may not have paid rebate aggregators under different contracts, and Lilly lacks visibility into whether or how any rebate funds were shared downstream. Those allegations defeat, rather than support, unjust enrichment and money had and received claims against the Movants.

Finally, the new civil theft claim likewise fails because it relies on the same group pleading and Rule 9(b) defects that infect the fraud claims and does not allege facts specific to each Movant

Lilly alleges obtained or used Lilly's property. All of these defects require dismissal of the FAC in its entirety in favor of Movants.

## II. ALLEGED FACTUAL BACKGROUND

Lilly's claims arise from its prescription drug rebate program for Trulicity, a GLP-1 medication which Lilly manufactures. According to the FAC, rebates are conditioned on a manufacturer's medicine receiving a "specified position" on a drug formulary, thereby increasing patient access. ECF No. 142, FAC ¶¶ 72–74, 242. After a rebate-eligible prescription is allegedly dispensed to a covered patient, the PBM submits a rebate claim to the manufacturer, and the manufacturer pays the rebate to the submitting PBM. *Id.* ¶¶ 72, 78, 82. PBMs may consolidate claims and submit them through "one or more layers of intermediaries," including other PBMs and entities known as rebate aggregators. *Id.* ¶¶ 76–77. PBMs operate under separate contracts with their payer or health-plan clients governing whether and how any manufacturer rebates are shared, and rebate aggregators have separate contracts with both the PBMs through which they submit claims and their own clients. *Id.* ¶¶ 75, 77. Lilly alleges that manufacturers generally do not know the terms on which PBMs share rebates with their clients. *Id.* ¶ 75. According to Lilly, PBMs and rebate aggregators control the claims-processing infrastructure and are the primary custodians of the underlying eligibility, utilization, and adjudication data. *Id.* ¶ 80. Lilly acknowledges that PBMs—not manufacturers—typically review and analyze claim-level data to determine rebate eligibility before submission, that Lilly relies on the PBMs' review of the pharmacy information, and that PBMs warrant the accuracy and completeness of submitted claims. *Id.* ¶¶ 78–81. After payment, Lilly reserves the right to audit and review submitted claims but alleges that it lacks independent access to patient- or claim-level information and uses only a portion of the data in the PBMs' possession when conducting those reviews. *Id.* ¶¶ 80–81.

Although Lilly previously had a direct rebate agreement with DrugPlace from 2011 to 2015, under which Lilly paid rebates directly to DrugPlace in its role as PBM for Community Health, Lilly did not renew that agreement. *Id.* ¶¶ 85–87, 112. The claims in the FAC instead concern Trulicity rebate submissions made from 2020 through 2025. *Id.* ¶¶ 113-14, 121-27. Lilly claims that DrugPlace did not dispense most or all of the Trulicity reflected in the rebate claims. *Id.* ¶ 184, 208–11. Unlike the parties' former arrangement, the rebate payments at issue were made by Lilly directly to two non-party PBMs—Ascent and Emisar—not to any Movant. *Id.* ¶¶ 73, 78, 276. DrugPlace allegedly submitted rebate claims and prescription data to Health Delegates, a non-

party rebate aggregator; Health Delegates submitted the claims to Ascent from 2020 through September 2023 and to Emisar from October 2023 through 2025; and those PBMs then submitted the claims to Lilly for payment. *Id.* ¶¶ 122–23. Lilly now generally alleges that, except for a pharmacy identification number added by intermediaries, the relevant prescription-level inputs originated with DrugPlace and reached Lilly through the rebate files transmitted by Ascent and Emisar. *Id.* ¶¶ 125–27, 258. The FAC identifies no representative or exemplar Trulicity rebate claim that it received from Ascent or Emisar identifying DrugPlace and zero examples of specific rebate payments it made to Ascent or Emisar for Trulicity rebates that Movants somehow received. Instead, the FAC simply concludes that Ascent or Emisar remitted payments to Health Delegates, which then remitted payments to DrugPlace. *Id.* ¶ 276.

In early 2025, Lilly engaged BlackPoint Consulting Group to conduct an audit of Emisar. *Id.* ¶ 128. Lilly concedes that BlackPoint did not audit DrugPlace, did not have direct access to DrugPlace's underlying prescription records, and limited its analysis to DrugPlace rebate data that Health Delegates had submitted to Emisar for one quarter, Q4 2023. *Id.* ¶¶ 129-30.

Nonetheless, Lilly has not sued Ascent, Emisar, or Health Delegates. Instead, it alleges that the "DrugPlace operation" alone caused Lilly to pay more than $220 million in rebates between 2020 and 2024. *Id.* ¶ 293. The FAC includes six counts brought against shifting collections of Movants and other Defendants and, for the equitable counts, the newly added "Relief Defendants" (defined herein). *Id.* ¶¶ 254-98. As relevant to Movants, Lilly brings claims for common law fraud (Count I) and negligent misrepresentation (Count III) against the Rebate Defendants; and civil conspiracy to commit fraud (Count II), unjust enrichment (Count IV), and money had and received (Count V) and civil theft under Florida Statute Section 772.11 (Count VI) against all Movants. *Id.* Lilly does not bring claims for, nor make any allegations regarding, common law fraud or negligent misrepresentation against Nakorn. Rebate Defendants seek dismissal of Counts I and III, and Movants seek dismissal of Counts II, IV, V, and VI on the grounds that Lilly has failed to state a claim, plead fraud with particularity, or join indispensable parties.

## III. LEGAL STANDARDS

### A. Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible only where

the plaintiff pleads facts allowing the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal,* 556 U.S. at 678. Although a court must liberally construe and accept as true well-pled factual allegations, it need not accept "claims that are internally inconsistent, facts which run counter to facts of which the court can take judicial notice, conclusory allegations, unwarranted deductions, or mere legal conclusions asserted by a party." *Campos v. I.N.S.*, 32 F. Supp. 2d 1337, 1343 (S.D. Fla. 1998). Allegations that are merely consistent with liability are not enough; the complaint must plead facts that raise the right to relief above the speculative level. *Twombly*, 550 U.S. at 555–57.

**B. Rules 8 and 10**

A complaint must also comply with Federal Rules of Civil Procedure 8 and 10. Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief," and Rule 10 requires separate counts for separate claims. Fed. R. Civ. P. 8(a)(2), 10(b). These rules require a complaint to give each defendant fair notice of the claims against it and the grounds on which they rest. *Twombly*, 550 U.S. at 555; *see generally Veltmann v. Walpole Pharmacy, Inc.*, 928 F. Supp. 1161, 1163–64 (M.D. Fla. 1996).

**C. Rule 9(b)**

Claims sounding in fraud, which include all Counts in the First Amended Complaint, must also satisfy Federal Rule of Civil Procedure 9(b). That rule requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Rule 9(b) applies not only to claims labeled "fraud" but also to claims that sound in fraud based on the factual allegations supporting them. *See Pop v. LuliFama.com LLC*, 145 F.4th 1285, 1293 (11th Cir. 2025); *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1307 n.11 (11th Cir. 2022). That includes unjust enrichment claims grounded in fraud, such as Counts IV and V. *See Omnipol*, 32 F.4th at 1307 n.11. It also includes negligent misrepresentation claims under Florida law, like Count III. *See Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 951 (11th Cir. 2014).

To satisfy Rule 9(b), the plaintiff must plead the "who, what, when, where, and how" of the alleged fraud, including: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [p]laintiff; and (4) what the defendants gained by the alleged fraud." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380–81 (11th Cir. 1997)). Where a complaint

names multiple defendants, it must inform each defendant of its alleged participation in the fraud. *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007).

**D. Rule 12(b)(7) and Rule 19**

Rule 12(b)(7) permits dismissal for failure to join a party under Rule 19. Fed. R. Civ. P. 12(b)(7). The Court must first determine whether the absent party is "required" under Rule 19(a). *Town of Indian River Shores v. City of Vero Beach*, 622 F. Supp. 3d 1265, 1271 (S.D. Fla. 2022). If the party is required and joinder is feasible, the Court must order joinder. Fed. R. Civ. P. 19(a)(2). If joinder is not feasible, the Court must determine under Rule 19(b) whether the case may proceed "in equity and good conscience" or must be dismissed. *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1040 (11th Cir. 2014).

## IV. <u>ARGUMENT</u>

The Court should dismiss each of Lilly's claims against Movants for failure to comply with the requisite pleading requirements. Each claim fails because the FAC is a shotgun pleading, fails to plead with the requisite specificity, fails to plead essential elements, and attempts to impose liability on Movants for payments Lilly made to non-party PBMs.

**A. The FAC Remains an Impermissible Shotgun Pleading**

The FAC is an impermissible shotgun pleading for the same reasons the original Complaint was, and the additions in the FAC compound rather than cure those deficiencies. A complaint must provide a short and plain statement of its claim showing it is entitled to relief. Fed. R. Civ. P. 8. Shotgun pleadings violate this requirement. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294 (11th Cir. 2018). Although courts recognize that multiple forms of impermissible pleading tactics can constitute a "shotgun pleading," each bears the same central failure to provide defendants with adequate notice of the claims against them. *Id.* at 1295; *Herbst v. Am. Orthodontics Corp.*, No. 23-61262-CV, 2023 WL 7108633, at *1 (S.D. Fla. Oct. 10, 2023), *aff'd*, No. 23-13423, 2024 WL 3358520 (11th Cir. July 10, 2024). Here, Lilly's FAC is an improper shotgun pleading because it (1) contains multiple counts adopting and incorporating the allegations of all preceding counts, and (2) asserts multiple claims against multiple defendants without specifying which defendant is responsible for which acts or omissions giving rise to the claims. *See Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1126 (11th Cir. 2014) (concluding the complaint is a shotgun pleading "where each count adopts the allegations of all preceding counts") (internal quotations omitted); *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (referring to a complaint as a "quintessential

shotgun pleading" where it, in part, was "replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged"). Shotgun complaints can and should be dismissed on a Rule 12(b)(6) motion. *See Paylor*, 748 F.3d at 1126 ("A defendant served with a shotgun complaint should move the district court to dismiss the complaint pursuant to Rule 12(b)(6)[.]").

**1. The FAC Improperly Incorporates All Preceding Allegations into Each Count**

Incorporating all preceding allegations into each successive count is also a "quintessential" shotgun pleading that the Eleventh Circuit has condemned for decades. *Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1045 n.39 (11th Cir. 2014); *Vibe Micro, Inc. v. Shabanets,* 878 F.3d 1291, 1294–95 (11th Cir. 2018). Indeed, in the Eleventh Circuit's words, the pleading practice is a "mortal sin" for which this Circuit has "little tolerance." *Herbst,* 2023 WL 7108633, at *1; *Vibe Micro,* 878 F.3d at 1295. The FAC commits exactly that error. FAC ¶¶ 254, 261, 267, 274, 283, 289. Even worse, beginning with Count II, each count not only incorporates all preceding paragraphs but also expressly adopts the factual allegations comprising prior causes of action, so that Count VI, civil theft, incorporates fraud, negligent misrepresentation, conspiracy, and two separate equitable theories, without identifying which allegations constitute the alleged statutory theft. *See id.* ¶¶ 289-298. That cumulative incorporation makes it impossible for any Defendant to know what specific conduct, representation, or transfer supports each element of each count asserted against it. *Herbst v. Am. Orthodontics Corp.*, No. 23-61262-CV, 2023 WL 7108633, at *1–2 (S.D. Fla. Oct. 10, 2023). By compounding counts atop each other—when each count already contains interwoven allegations—the FAC wastes judicial resources, stretches the scope of discovery, and wreaks havoc on a later appellate court's docket, among other "unacceptable consequences" the Eleventh Circuit has admonished. *Vibe Micro,* 878 F.3d at 1295. As such, this Court should exercise its inherent authority to dismiss Lilly's shotgun pleading and dismiss the FAC in its entirety. *Id.*

**2. The FAC Continues to Engage in Impermissible Group Pleading**

The FAC should be dismissed as an impermissible shotgun pleading for the additional reason that it fails to distinguish between multiple Defendants or specifically identify the conduct attributable to each Defendant. *Magluta*, 256 F.3d at 1284. This deficiency is especially pronounced when, as here, the claims are grounded in fraud and subject to Rule 9(b)'s particularity requirement. *Magnum Constr. Mgmt., LLC v. WSP USA Solutions, Inc.*, 522 F. Supp. 3d 1202, 1209 (S.D. Fla. 2021).

The FAC perpetuates the original Complaint's reliance on shifting collective labels. Throughout its nearly 300 paragraphs, the FAC repeatedly groups various Defendants together without distinguishing between their actions, using collective terms such as "DrugPlace Defendants," "DrugPlace Entities," "DrugPlace Officers," "DrugPlace Conspiracy," "Fraud Defendants," "Relief Defendants," and "Defendants." *See, e.g.*, FAC ¶¶ 1–12, 14–15, 23, 26, 29, 33, 39, 43–45, 48–50, 52, 54–57, 61–63, 84, 96, 109, 116, 145, 148, 150–151, 178, 183, 185, 187, 189, 193, 195–196, 201–202, 204–206, 211–216, 219, 221–223, 228–230, 239, 241, 244–246, 250–253, 255–260, 262–266, 268–273, 275–276, 278–282, 284–288, 290–297. Describing a person who is grouped into these defined sets of Defendants as an "owner," "manager," "lender," or "participant" does not substitute for pleading each element of Lilly's causes of action with the plausibility and particularity required against that Defendant.

To make matters worse, the FAC uses these collective labels inconsistently. For example, the FAC groups together Defendants DrugPlace, Community Health, Nakorn, Galaxy, and Brightline as the "DrugPlace Entities;" Defendants Leight, Singer, Smith, Jerry Maynard Sr., Jerry Maynard Jr.,[2] Misha Maynard, Enriquez, Mazei, Giscombe and Hoffner as the "DrugPlace Officers;" and then both groups together as the "DrugPlace Conspiracy" or the "DrugPlace Defendants." *See* FAC ¶¶ 29, 43. Those terms, however, are not used in the paragraphs that expressly set forth each count. *Id.* ¶¶ 254-298. Instead, those groups are then reorganized under an entirely new title of "Fraud Defendants" for Counts I and III, which include only *some* of the defendants from varying groupings (DrugPlace, Galaxy, Community Health, Leight, Singer, Smith, Mazei, and Hoffner), *see id.* ¶¶ 255, 268, groups all DrugPlace Defendants together for Count II, *see id.* ¶ 262, and lumps all DrugPlace Defendants and a new category of "Relief Defendants" together for Counts IV and V, *see id.* ¶¶ 275, 280. A new category in the FAC, the "Relief Defendants," is folded into the equitable claims without any defendant-specific allegation beyond the conclusory assertion that "the role of these entities in Defendants' fraudulent scheme, if any, is unknown to Lilly." FAC ¶ 229. Lastly, Count VI is pled against the DrugPlace Defendants, except Misha Maynard. *Id.* ¶ 291. As pled, neither the Movants nor the Court can assess the nature of each Defendant's alleged participation in the scheme because the pleading fails to sufficiently distinguish the seventeen Defendants.

---

[2] Lilly names this Defendant as Jerry Maryand Jr., but his correct name is Jerry Marynard II.

Grouping together these parties—which include different entities with different locations and operations in conjunction with different individuals working for different entities under different roles—is a haphazard pleading that fails to plead fraud with the plausibility and particularity required under Rules 12(b)(6) and 9(b). *See Magluta*, 256 F.3d at 1284 (concluding the shotgun complaint "makes no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of"); *Apex Toxicology, LLC v. United HealthCare Services*, No. 17-61840-CIV, 2020 WL 13551299, at *3–5 (S.D. Fla. July 7, 2020) (dismissing a claim for failure to inform each defendant of the nature of its alleged participation in the fraud and for shotgun pleading). The group pleading tactics that Lilly uses across all causes of action warrant dismissal of the FAC in its entirety.

**B. The FAC Fails to Plead Common Law Fraud (Count I) and Negligent Misrepresentation (Count III) Against the Rebate Defendants**

Lilly's claims for common law fraud and negligent misrepresentation against the Rebate Defendants also fail because Lilly does not sufficiently plead that it relied on any representation by each Rebate Defendant, much less with the particularity Rule 9(b) requires. To plead common law fraud under Florida law, a plaintiff must set forth the following: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Mirage Yacht, Inc. v. A 2013 Marquis Yachts Recreational Vessel*, No. 24-21095-CIV, 2025 WL 1047148, at *15 (S.D. Fla. Feb. 12, 2025), report and recommendation adopted, No. 24-21095-CV, 2025 WL 798360 (S.D. Fla. Mar. 13, 2025); *see also Feng v. Walsh*, No. 19-24138-CIV, 2021 WL 8055449, at *10 (S.D. Fla. Dec. 21, 2021), report and recommendation adopted, No. 1:19-CV-24138, 2022 WL 669198 (S.D. Fla. Mar. 7, 2022). "Common law fraud and negligent misrepresentation involve more or less the same elements of proof." *In re Lichtman*, 388 B.R. 396, 409 (Bankr. M.D. Fla. 2008). The minor difference between the two is that, for negligent misrepresentation, the plaintiff must plead that "the defendant failed to ascertain the truth or falsity of his or her representation." *Id.* In alleging common law fraud or negligent misrepresentation, Lilly must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see supra* Section III.C (noting that Rule 9(b)'s heightened pleading standard applies to Lilly's common law fraud and negligent

misrepresentation claims). Lilly's conclusory allegations fall well short of meeting these pleading standards.

### 1. Lilly's Common Law Fraud and Negligent Misrepresentation Claims Fail Because They Do Not Sufficiently Plead Reliance

To state a claim for fraud and negligent misrepresentation against the Rebate Defendants, Lilly must plead that it acted in reliance on representations made by the Rebate Defendants. *See Mirage Yacht*, 2025 WL 1047148, at *15. Indeed, "first-party reliance is the centerpiece of a fraud claim." *Feng*, 2021 WL 8055449, at *10 (quoting *Platinum Props. Investor Network, Inc. v. Sells*, No. 1861907-CIV, 2019 WL 2247544, at *11 (S.D. Fla. 2019)). Therefore, the object of Lilly's reliance must have been a representation by each of the Rebate Defendants, not another party. *See Prentice v. R.J. Reynolds Tobacco Co.*, 338 So. 3d 831, 838 (Fla. 2022); *Fernau v. Enchante Beauty Prods., Inc.*, 847 F. App'x 612, 621 (11th Cir. 2021) (The plaintiff's actions must be "based on that specific misrepresentation" by the defendant.). It is not enough for Lilly to conclude that it relied upon some of DrugPlace's data. *See Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1128 (11th Cir. 2019) ("A bare allegation of reliance on alleged misrepresentations, bereft of any additional detail, will not suffice under Rule 9(b)."). Because Lilly fails to allege that it acted in reliance on any representation made by any of the Rebate Defendants, or plead any particularized details regarding which specific statements Lilly relied upon, who made those statements, when they were made, or how Lilly relied upon such statements, Lilly's claims for fraud and negligent misrepresentation must be dismissed.

While the FAC now attempts to allege that certain data originating with DrugPlace eventually reached Lilly (*see* FAC ¶¶ 122, 123, 126, 258), such allegations do not cure Lilly's failure to plead reliance. Though Lilly pleads that it made rebate payments to the PBMs based upon statements made by the Rebate Defendants, Lilly's allegations continue to show that what Lilly actually relied upon were representations by those PBMs—Ascent and Emisar—not any of the Rebate Defendants. *E.g., id.* ¶¶ 258, 265, 272 ("Pursuant to its contracts with PBMs, Lilly relied on the PBMs to review and validate pharmacy claim-level information when determining whether to pay the rebate claims."); ¶ 80 ("Lilly relies on the claims data submitted by PBMs and rebate aggregators, which are the primary custodians of the underlying eligibility, utilization, and adjudication data that determine rebate eligibility."); ¶ 81 ("[W]hen entering rebate agreements, it is Lilly's reasonable commercial practice—indeed, a necessity—to place responsibility for the review and accuracy of the data squarely on the parties that process and submit the data."); ¶ 81

(It is the PBMs' responsibility to "ensur[e] that rebate claims meet certain eligibility criteria specified in the contracts between manufacturers and PBMs."); ¶ 81 ("Lilly compensates PBMs to administer the rebate-claims processing infrastructure, use the various sources of data to verify that claims meet the specified eligibility requirements, and submit only eligible claims (which must meet a number of conditions that Lilly does not have the ability to verify) to Lilly for payment."); ¶ 81 ("PBMs warrant the accuracy and completeness of submitted claims."); ¶ 118 ("[I]t is Lilly's commercial practice to allocate responsibility for the review and accuracy of rebate data to the parties that submit and process it, in particular PBMs."). Lilly's affirmative and numerous assertions that it relied directly on the PBMs' representations that the claims were eligible for rebate precludes any claim that Lilly instead relied on any of the Rebate Defendants.

Lilly tries to bridge this gap by adding allegations that some of DrugPlace's data reached Lilly through the chain of intermediaries, (*see* FAC ¶¶ 122, 123, 126, 258), and concluding that DrugPlace's statements to Health Delegates ultimately caused claims to reach Lilly through the PBMs (*id.* ¶ 258). But this does not equate to actionable reliance; under Florida law, "the object of a plaintiff's reliance [must be] a representation *by the defendant*." *Prentice*, 338 So. 3d at 838; *see also Wilding*, 941 F.3d at 1128 (emphasis added). Lilly's own allegations show that the "object" of its reliance was the warranty and representation by the PBMs that submitted claims were accurate, complete, and eligible for rebate. *See, e.g., FAC* ¶¶ 81, 118, 258, 265. Under the FAC, Health Delegates, Emisar, and Ascent were not passive conduits—they were intervening actors that played independent, material roles in the rebate claim process. They processed, aggregated, reviewed, independently validated, and submitted claims pursuant to their own contracts and responsibilities. *See id.* ¶¶ 77–81, 123, 124. Even accepting as true for sake of argument that the eligibility of the claims for rebate was misrepresented, the PBMs made that misrepresentation to Lilly. If Lilly's consequent injury was the payment of rebates for ineligible claims, those payments were made, according to Lilly, to the PBMs because the PBMs verified them or were supposed to have verified them prior to submission. Lilly's theory against the Rebate Defendants requires collapsing several independent commercial relationships to connect an alleged statement by DrugPlace to an action by Lilly.

This is not a case of indirect first-party reliance. Lilly does not allege that Ascent or Emisar, which did not receive a single representation directly from Rebate Defendants, merely regurgitated some statement from DrugPlace. Rather, Lilly expressly identifies statements by the PBMs—i.e.,

verifications that rebate claims were accurate and eligible—as the objects of Lilly's reliance. According to the FAC, Lilly paid the rebates because Ascent and Emisar represented they were eligible. Lilly cannot state a claim for common law fraud or negligent misrepresentation against Rebate Defendants where the FAC affirmatively pleads that Lilly acted in reliance upon representations made by non-parties.

And even if Lilly had alleged it relied on representations made by any of the Rebate Defendants, Rule 9(b) requires much more. The FAC must allege with particularity "the manner in which" Lilly relied on each Rebate Defendants' statements. *Wilding*, 941 F.3d at 1128. Here, Lilly has not identified which of the Rebate Defendants' alleged representations Lilly relied upon nor the manner in which Lilly relied on each statement. To plead reliance with particularity against the Rebate Defendants, Lilly must do more than generally claim that the rebate claims included some of DrugPlace's data. Lilly's apparent desire to avoid litigation against Health Delegates, Emisar, and Ascent does not make its fraud claims against the Rebate Defendants any more viable. Counts I and III should be dismissed in favor of the Rebate Defendants because Lilly has not alleged first-party reliance with the plausibility or particularity required under Rules 9(b) and 12(b)(6).

**2. Lilly Fails to Satisfy Rule 9(b) On the Other Elements of Its Common Law Fraud and Negligent Misrepresentation Claims**

In addition to Lilly's failure to plead reliance, Lilly also fails to identify in any way which of the Rebate Defendants made which statements, where and when such statements were made, who had knowledge of the falsity of any specific statement, or how each Rebate Defendant was allegedly involved in the fraudulent activity. Rule 9(b) requires these allegations, which are missing from the FAC. *See supra* Section III.C; *Am. Dental*, 605 F.3d at 1291.

Specifically, the FAC fails to distinguish which Rebate Defendant(s) engaged in which allegedly fraudulent acts. Instead, Counts I and III routinely refer to "Fraud Defendants" and attribute every alleged false statement and resulting injury to that group as a whole. A complaint that does not allege which defendants were responsible for which statements fails to satisfy Rule 9(b)'s pleading requirements. *See Keegan v. Minahan*, No. 23-60501-CIV, 2023 WL 3884962, at *4–5 (S.D. Fla. June 7, 2023) (dismissing the plaintiff's common law fraud claim because plaintiff "vaguely attribute[d] the alleged fraudulent statements and omissions to all three of the defendants simultaneously"). For DrugPlace, the FAC never once identifies any representative false claim that Lilly received containing the purportedly false data that Lilly alleges DrugPlace submitted to

Health Delegates—despite Lilly's repeated conclusions it received fraudulent rebate claims. Nor does the FAC connect any specific representation Lilly relied upon to a specific payment made.

The pleading failures are even more pronounced for Community Health, Leight, and Singer. For Community Health, there is not a single allegation regarding any false statement it made that Lilly relied on. Lilly's allegations regarding documents that provide information on Community Health's prescription cost share program do not remedy this pleading deficiency. *See* FAC ¶ 155–160. The FAC never alleges Community Health made these documents nor that they were created with the intent to induce reliance. Indeed, Lilly acknowledges it did not rely on these documents because they were procured by Lilly in connection with an audit in 2025, one year *after* Lilly alleges it paid the rebate claims at issue in this case. *Id.* ¶¶ 128, 155, 240, 293.

Nor does Lilly distinguish between representations made by Leight and Singer. *See* FAC ¶ 257. Rather, Lilly seeks to tie them (and other individual Defendants) to the fraud claims by making conclusory allegations that they were "personally involved in and approved of the fraudulent schemes" or were "owners, officers, and/or employees" of DrugPlace and Community Health. *See id.* ¶¶ 15, 31–33, 213, 214–17, 257. That is insufficient to plead common law fraud and negligent misrepresentation against Leight and Singer. *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1322 (S.D. Fla. 2017) (dismissing a common law fraud claim against the individual defendants because there were no allegations that they "involved themselves in the scheme in any way other than through their ownership interests in the entity defendants"). There continue to be no specific allegations about what false statements Leight and Singer made in the 2020 to 2024 timeframe when Lilly allegedly paid the rebate claims at issue, when and where Leight or Singer made the false statements, or how they made the false statements. There are no specific allegations of whether Lilly even relied on any misrepresentation by Leight and Singer or that they intended to induce reliance. The only allegations regarding what Singer said to Lilly relate to an irrelevant audit of DrugPlace in 2015 that is unconnected to the rebate claims at issue. FAC ¶¶ 89, 95, 97. Instead of correcting these pleading deficiencies, the FAC simply alleges various money transfers to or from Leight and Singer. *E.g.*, *id.* ¶ 11, 12, 47–50, 202–204. That does not plead any of the elements of common law fraud or negligent misrepresentation for Leight and Singer. The FAC therefore does not alert each Rebate Defendant of the precise misconduct that constitutes common law fraud and negligent misrepresentation, and Counts I and III should be dismissed under Rule 9(b). *Ziemba v. Cascade*

*Int'l., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) ("The particularity rule serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged'") (internal citations omitted).

**C. Lilly Fails to Plead Civil Conspiracy (Count II) Against Movants**

Lilly's failure to plead common law fraud also defeats its claim against Movants for civil conspiracy to commit fraud, because conspiracy is not an independent cause of action. *See Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1345 (S.D. Fla. 2018). Nonetheless, Lilly's conspiracy claim independently fails due to its own pleading defects. To plead civil conspiracy under Florida law, Lilly must allege (1) an agreement between two or more parties, (2) to do an unlawful act, (3) an overt act to further that conspiracy, and (4) damage to Lilly. *ECB USA, Inc. v. Savencia Cheese USA, LLC*, 148 F.4th 1332, 1347 (11th Cir. 2025); *Apex*, 2020 WL 13551299, at *2. Rule 9(b)'s heightened pleading standard also applies to claims alleging a conspiracy to defraud. *Banc of Am. Sec. LLC v. Stott*, No. 04-81086-CIV, 2005 WL 8156027, at *5 (S.D. Fla. Aug. 30, 2005) (citing *Brooks*, 116 F.3d at 1371). Therefore, although Count II for conspiracy to commit fraud necessarily fails along with Lilly's common law fraud claim, Lilly inadequately pleads civil conspiracy for the separate reasons that (1) the intracorporate conspiracy doctrine bars Lilly from pleading conspiracy against Movants; (2) Lilly pleads only conclusory allegations of an agreement; and (3) as to Community Health, Nakorn, Leight, and Singer, in particular, Lilly fails to plead that each knowingly joined or assisted in the alleged rebate conspiracy starting in 2020.

**1. The FAC Cannot Overcome the Intracorporate Conspiracy Doctrine**

Lilly's civil conspiracy claim fails under the intracorporate conspiracy doctrine. Under this doctrine, acts of agents acting for the corporation are attributed to the corporation itself and, thus, a single legal entity and its agents cannot conspire with itself. *Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1213 (11th Cir. 2018). The FAC is littered with allegations of agency amongst the individual conspiracy Defendants and entity conspiracy Defendants. *See, e.g.*, FAC ¶¶ 31, 32, 36, 38, 39, 41, 42, 212, 213. While Florida courts recognize the "personal stake" exception to this doctrine, where an agent who "acted 'in their personal interests, wholly and separately from the corporation'" may be liable for civil conspiracy, Lilly does not plead that any Movant acted wholly and separately from other conspiracy Defendants. *Mancinelli v. Davis*, 217 So. 3d 1034, 1037 (Fla. Dist. Ct. App. 2017) (quoting *Microsoft Corp. v.*

*Big Boy Distrib. LLC*, 589 F. Supp. 2d 1308, 1323 (S.D. Fla. 2008)). Lilly's civil conspiracy claim therefore falls squarely within the intracorporate conspiracy doctrine.

As to DrugPlace, Lilly makes the following assertions and characterizations in the FAC: Leight is the co-owner and President; Singer is co-owner, Vice President, Secretary, and Director; Jerry Maynard Jr. is "an agent for DrugPlace;" Daniel Hoffner was the Office Manager and Director of Purchasing; Edgar Enriquez previously worked at DrugPlace; Lane Mazei works for DrugPlace in its headquarters; and DrugPlace Inc. (FL) and DrugPlace Inc. (TN) "operated as one company." FAC ¶¶ 18, 31, 32, 36, 38, 39, 42. Regarding Nakorn, Lilly alleges that Singer is the sole member and submitted applications for Nakorn's licenses, Edgar Enriquez is the General Manager, and Hoffner supervised and coordinated resales of medication to secondary distributors. *Id.* ¶¶ 32, 38, 42. For Galaxy, Lilly alleges that Leight and Singer are investors, Lane Mazei is the Manager, and Danielle Giscombe is a pharmacy technician. *Id.* ¶¶ 31, 32, 39, 41, 178. As to Community Health, Lilly asserts that Readus C. Smith III is the CEO, Jerry Maynard Jr. was the Chairman of its board, and Misha Maynard was Vice President of Operations. *Id.* ¶¶ 34, 36, 37. Lilly also asserts Community Health "is the owner of registered trademarks for 'DrugPlace.'" *Id.* ¶ 21. Regarding Brightline, Lilly alleges that Lane Mazei is its Manager and Organizer, Danielle Giscombe is its Pharmaceutical Wholesale Manager, and Hoffner supervised and coordinated resales of medication to secondary distributors. *Id.* ¶¶ 39, 41, 42. The FAC also provides that "[e]ach individual Defendant is or has been an officer, supervisor, or employee at one or more DrugPlace Entities," (*id.* ¶ 212), and "[t]he DrugPlace Officers—Leight, Singer, Smith, Enriquez, Jerry Maynard Sr., Jerry Maynard Jr., Misha Maynard, Mazei, Giscombe, and Hoffner—as the owners, officers, and employees of DrugPlace, Nakorn, Galaxy, Brightline, Texas Pharmacy Enterprise, LLC, and Community Health, directed and controlled the DrugPlace Entities" (*id.* ¶ 213). The individual conspiracy Defendants were thus acting as agents at all relevant times for the entity conspiracy Defendants such that they could not have conspired together to commit fraud.

The intracorporate conspiracy doctrine also extends beyond a corporation and its agents to company affiliates. *See Apex*, 2020 WL 13551299, at *8 (dismissing with prejudice plaintiff's civil conspiracy claim because the intracorporate conspiracy doctrine precluded plaintiff from alleging a company, its owners, and affiliated entities conspired); *Graham v. Cypress Cap. Grp., Inc.*, No. 10-81269-CIV, 2011 WL 13227744, at *6 (S.D. Fla. July 12, 2011) (concluding the conspiracy claim fails against two entities where one is "repeatedly alleged throughout the Complaint to be

an affiliated corporation and 'sub-adviser' or agent to" the other). Lilly repeatedly alleges a variety of affiliations among Defendants, including that: Defendant Enriquez "is affiliated with Leight, Singer, and Smith" (FAC ¶ 38); "DrugPlace Inc. (FL) and DrugPlace Inc. (TN) operated as one company" (*id.* ¶ 18); Galaxy is affiliated with DrugPlace and its owners and principals," *i.e.* Leight and Singer (*id.* ¶ 178); "DrugPlace, in conjunction with affiliates including Nakorn and Brightline" (*id.* ¶ 117); "Galaxy is closely affiliated with secondary wholesaler, Defendant Brightline" (*id.* ¶ 181); "The DrugPlace Entities acted together under common ownership and officers" (*id.* ¶ 206); DrugPlace and Nakorn together and Galaxy and Brightline together are "commonly owned" companies (*id.* ¶ 211); "Defendants…are a group of interrelated entities ….[and] these entities share overlapping ownership, control, and addresses" (*id.* ¶ 2). These allegations, combined with Lilly's collective referral to these companies as the "DrugPlace Entities" (*id.* ¶ 29), and together with the "DrugPlace Officers," the "DrugPlace Conspiracy" (*id.* ¶ 43), show that the entity conspiracy defendants were operating as affiliates at all relevant times.

Adding allegations that the entities "are independent legal entities" and that they "hold unique company registrations in their respective states of incorporation" and "file separate tax returns" (*id.* ¶ 30) is not enough to overcome application of the intracorporate conspiracy doctrine. Lilly's labeling of these defendants as independent entities is merely conclusory in the face of numerous allegations that the entities operated as one. Where a conspiracy requires an agreement between "independent minds," allegations that the entities share common ownership, are interrelated with overlapping control, are affiliated, and generally operated as one outweigh one allegation added in the FAC in an attempt to avoid foreclosure by the intracorporate conspiracy doctrine. *See generally Weisman v. S. Wine & Spirits of Am., Inc.*, 297 So. 3d 646, 652 (Fla. Dist. Ct. App. 2020). An agreement to conspire reflects a "meeting of the minds between two or more persons," and allegations showing the entities did not operate independently precludes a finding that they conspired together. *See Apex*, 2020 WL 13551299, at *7. The Court should dismiss Count II for failure to plead conspiracy. *E.g.*, *Sun Life*, 904 F.3d at 1213 (dismissing plaintiff's fraud conspiracy claim for failure to plausibly allege defendants are independent entities and individuals); *Apex*, 2020 WL 13551299, at *7; *Graham*, 2011 WL 13227744, at *6.

**2. Lilly Fails to Plead Any Factual Allegations of an Agreement**

Lilly's conspiracy claim also fails because it does not plead an agreement to commit fraud, much less one with the specificity Rule 9(b) requires. *See Am. United Life Ins. Co. v. Martinez*,

480 F.3d 1043, 1067–68 (11th Cir. 2007) (upholding dismissal of civil conspiracy claim where plaintiff did not plead an agreement to commit fraud with specificity); *In re Palm Beach Fin. Partners, L.P.*, 488 B.R. 758, 777 (Bankr. S.D. Fla. 2013) (A plaintiff must plead "the required who, what, where, when, how of the alleged conspiracy."). Allegations that defendants "were engaged in the same 'scheme'" are insufficient to state a claim for civil conspiracy or meet Rule 9(b). *See Apex*, 2020 WL 13551299, at *2. Nor do allegations of parallel conduct or conclusory or speculative allegations of an agreement at some unspecified point in time. *See Honig*, 339 F. Supp. 3d at 1345. Here, the FAC includes nothing more than conclusory allegations of a scheme involving Movants, which is insufficient to state a claim for civil conspiracy.

Other than vague allegations about the relationship between DrugPlace, Community Health, and Nakorn or common ownership amongst the entities, there are no specific allegations of an agreement to conspire. *See* FAC ¶¶ 206–213. Merely alleging a connection between parties is not enough to state a claim for civil conspiracy to commit fraud. *Feng*, 2021 WL 8055449 at *12. As the Eleventh Circuit noted in *ECB USA, Inc.*, a plaintiff must do more than allege that the defendants "agreed" to and "acted in furtherance" of the conspiracy or were "required" for the conspiracy to succeed. 148 F.4th at 1347. In upholding the District Court's dismissal, the Eleventh Circuit concluded such allegations simply restated the elements of a conspiracy claim. *Id.* at 1347–48. The plaintiff's allegation that the conspiracy required a defendant's participation did not remedy the pleading failures; as the court explained such "assumes that the necessity of one party to a conspiracy's success proves that party's participation," which would transform civil conspiracy claims into strict liability offenses. *Id.* at 1347. Lilly's allegations about the involvement of Nakorn and Community Health similarly amount to claims merely that a conspiracy required their participation. *See, e.g.*, FAC ¶ 206 (alleging "common ownership" and "interconnected roles"); ¶ 210 ("Because [DrugPlace and Galaxy] lack the required license to sell medicines, DrugPlace and Galaxy instead transfer the medication to their commonly owned wholesaler affiliates."). Lilly fails to allege any agreement to conspire between DrugPlace, Community Health, Nakorn, and any other Defendant.

Lilly's new allegations regarding Singer and Leight also fail to repair the deficiencies to plead civil conspiracy in the original complaint. *See* FAC ¶¶ 214–221. Singer's and Leight's ownership interest in or managerial involvement in any corporate Defendant does not prove knowledge of or participation in a conspiracy. And allegations that they "directed" or "developed"

a scheme are merely conclusory without any facts about overt acts taken by either Singer or Leight or statements made by them demonstrating an agreement to commit fraud. *See* FAC ¶¶ 215–216.

For all Movants, the FAC fails to identify the who, what, where, when, and how of an agreement required under Rule 9(b). *See Am. United Life Ins. Co.*, 480 F.3d at 1067–68 ("[W]here a conspiracy claim alleges that two or more parties agreed to commit fraud, the plaintiffs must plead this act with specificity."). There are no allegations about when each Movant joined an agreement to defraud Lilly; or what was said or communicated evidencing their assent; or which Movants reached an agreement with other Movants; or any meeting, communication, or transaction in which Movants agreed that false rebate claims would be submitted to Lilly. Instead, Lilly's allegations that Movants conspired to commit fraud are the same conclusory allegations that have time and again been rejected by courts. *See, e.g.*, *ECB USA, Inc.*, 148 F.4th at 1347–48; *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1068 (11th Cir. 2007) (upholding dismissal of the civil conspiracy claims because the complaint "provided only conclusory statements" of an agreement to commit fraud); *Honig*, 339 F. Supp. 3d at 1345 (dismissing plaintiffs' civil conspiracy claim because Plaintiffs alleged merely conclusory allegations that defendants "reached and entered into an express or tacit agreement" or "agreed to join in and participated in the … civil conspiracy"); *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1319–20 (S.D. Fla. 2014) ("Certainly to satisfy the heightened pleading standard for conspiracy claims based in fraud, Plaintiffs must at least show some evidence of agreement between the defendants." (internal quotation omitted)). Because Lilly fails to sufficiently plead any agreement among each, or any, of the Movants, its civil conspiracy claim must be dismissed.

#### 3. Lilly Fails to Allege that Nakorn or Community Health Knowingly Joined or Assisted the Purported Conspiracy

Although an alleged conspirator need not personally commit the overt act that directly injured the plaintiff, Lilly must plead facts that each Defendant plausibly knew of and assisted the alleged scheme. *Tippens v. Round Island Plantation, LLC*, No. 09-CV-14036, 2009 WL 2365347, at *5 (S.D. Fla. July 31, 2009) (dismissing conspiracy claim where plaintiff failed to plead facts that the defendants joined the conspiracy and knew of and assisted the alleged conspiracy); *Principal Life Ins. Co. v. Mosberg*, No. 09-22341-CIV, 2010 WL 473042, at *6 (S.D. Fla. Feb. 5, 2010) (same); *see also Eagletech Commc'ns., Inc. v. Bryn Mawr Investment Group, Inc.*, 79 So. 3d 855, 863 (Fla. 4th DCA 2012) (affirming dismissal where the complaint supplied no details of

the alleged agreement and merely speculated that defendants participated because they ultimately received benefits). Lilly pleads no such facts for Nakorn or Community Health.

The vast majority of allegations referencing Community Health relate to the irrelevant 2015 audit. The only other allegation which attributes any action to Community Health asserts "there is no credible reason why DrugPlace and Community Health would limit their formulary in this way." FAC ¶ 135. The rest of the allegations simply speculate how DrugPlace failed to provide credible reasons that Community Health's prescription cost share program could cover the Trulicity prescriptions and take issue with "the Community Health/DrugPlace formularies". *Id.* ¶¶ 154–160, 164-169. That does not plead an overt act in furtherance of the alleged rebate fraud claims nor knowledge and assistance by Community Health.

Allegations related to Nakorn's knowledge of any scheme are similarly lacking. Lilly alleges only that DrugPlace transfers Trulicity to Nakorn. *Id.* ¶¶ 184, 190, 210, 211. But Lilly never alleges any involvement by Nakorn in any rebate submission—let alone knowledge and assistance with such. The absent allegations that Nakorn or Community Health knowingly participated in any conspiracy, combined with the clear lack of any particularized allegations about how, when, where, and what either defendant did to assist in the alleged conspiracy requires, at minimum, dismissal of the civil conspiracy claim against Nakorn and Community Health.

### D. Lilly Fails to Plead Unjust Enrichment and Money Had and Received (Counts IV and V)

Lilly's unjust enrichment and money had and received claims fail for the same fundamental reasons they failed in the original Complaint: Lilly paid the PBMs, not any Movant, and the FAC still fails to plead any direct benefit conferred on any particular Movant. The FAC's new allegations do not cure these deficiencies.

#### 1. Lilly Fails to Plead Any Direct Benefit to Any Movant

Both unjust enrichment and money had and received require allegations that Lilly directly conferred a benefit on each Movant, that the Movant knew of the benefit, and that the Movant retained it under circumstances making retention inequitable. *GVB MD v. Aetna Health Inc.*, No. 19-22357-CIV, 2019 WL 6130825, at *6 (S.D. Fla. Nov. 19, 2019) (Moreno, J.); *Frayman v. Douglas Elliman Realty, LLC*, 515 F. Supp. 3d 1262, 1287 (S.D. Fla. 2021).

The FAC still does not plead that Lilly conferred any direct benefit on any Movant. The FAC repeatedly acknowledges that Lilly paid rebates directly to Ascent and Emisar—not to Movants. FAC ¶¶ 73, 80-81, 276. The FAC further alleges that PBMs may or may not share the

rebate payments they received from manufacturers like Lilly to their downstream health plan or rebate aggregator clients, each PBM has separate contracts governing such payments to downstream clients, each rebate aggregator also has separate contracts with its downstream clients regarding payments, and that manufacturers "typically do not have visibility into" those downstream arrangements. FAC ¶¶ 75, 77. The FAC never once alleges that Lilly paid any Movant any rebate money. It does not even contain any allegations that Lilly paid Ascent or Emisar any specific amount on a specific date for the purported Trulicity rebate claims, that Ascent or Emisar then transferred any specific amount of those funds to Health Delegates on a specific date, or that Health Delegates transferred any specific amount to any Movant on a specific date of the funds it received. The FAC merely adds allegations of various money transfers from Health Delegates to DrugPlace to conclude those are for Lilly rebates and transfers from DrugPlace to Leight and Singer. But this does nothing to tie those funds to a direct benefit Lilly conferred to each Movant by paying a PBM.

This Court's decision in *City of Miami v. Eli Lilly & Co.*, No. 21-22636-CIV, 2022 WL 198028 (S.D. Fla. Jan. 21, 2022) forecloses Lilly's theory here. Lilly joined with other drug manufacturers in arguing that Florida law does not permit liability for unjust enrichment or money had and received where the alleged benefit did not come directly from the plaintiff; specifically, they argued that the City's claims failed because the manufacturers received no payments from the City and the City had no direct relationship with the manufacturers. Defs.' Mot. to Dismiss 22–23, ECF No. 60, *City of Miami v. Eli Lilly & Co.*, No. 1:21-cv-22636-RNS (S.D. Fla. Sept. 27, 2021). Judge Scola accepted that position and dismissed both equitable claims against Lilly and the other manufacturer defendants because the City had not "directly conferred a benefit" on them. *City of Miami*, 2022 WL 198028, at *8–9. The court focused on the City's allegations "that it contracted with insurance companies and the PBM Defendants, which then had separate relationships with the Manufacturer Defendants." *Id.* at *9. The *City of Miami* analysis is indistinguishable from the chain of relationships the FAC describes: Lilly contracted with PBMs, PBMs contracted with Health Delegates, and Health Delegates contracted with its clients. *See id.* at *8–9. Lilly cannot take the opposite position here.

Indeed, Florida law also does not treat every downstream economic benefit as a benefit directly conferred by the plaintiff. Although a benefit may pass through an intermediary and remain direct in certain limited circumstances, the complaint must allege that the plaintiff's benefit

actually flowed through the intermediary to the defendant, rather than reaching the defendant through a separate third-party transaction. *See ADT LLC v. Skyline Sec. Mgmt., Inc.*, No. 24-CV-20758, 2026 WL 575122, at *27–29 (S.D. Fla. Mar. 2, 2026). After surveying caselaw, the Court in *ADT* concluded that "[b]enefits that pass between 'corporate entities that . . . are considered distinct from the persons (or . . . companies) that comprise them' – even in the case of 'related entities' – are too far removed to be considered direct." *Id.* at *28 (quoting *CFLB P'hip, LLC v. Diamond Blue Int'l, Inc.*, 352 So. 3d 357, 360 (Fla. 2d DCA 2022)). That is precisely what Lilly has alleged here: it paid rebates to Emisar or Ascent, which allegedly paid Health Delegates—each a distinct corporate entity from Movants. FAC ¶ 276.

The Eleventh Circuit agrees. In *Johnson v. Catamaran Health Sols., LLC*, plaintiffs paid membership fees to an insurance broker, which allegedly used those payments to pay premiums to an insurance company. 687 F. App'x 825, 830 (11th Cir. 2017). Even assuming the insurance company retained part of the plaintiffs' payments, the Eleventh Circuit held the benefit was "at best" indirect and affirmed dismissal of the unjust enrichment claim against the insurance company. *Id.* Here, Lilly alleges it paid Ascent and/or Emisar, not Movants, and Movants somehow benefitted downstream through Health Delegates. That is the same posture that the Eleventh Circuit rejected in *Johnson*. Because Counts IV and V do not plead a direct benefit conferred by Lilly on any Movant, both counts should be dismissed.

**2. Rule 9(b) Independently Requires Dismissal of Counts IV and V**

Counts IV and V expressly sound in fraud and Rule 9(b) applies. The FAC alleges that Defendants "misrepresented," "caused to be misrepresented," or "conspired to misrepresent" that Trulicity was dispensed to patients, and that those misrepresentations caused Lilly to pay hundreds of millions of dollars in "fraudulently obtained rebates." FAC ¶¶ 275–284. Because both counts are grounded in the same allegedly fraudulent conduct, Rule 9(b) requires Lilly to plead with particularity "the who, what, when, where, and how" of the alleged unjust enrichment for each Movant. *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1307 n.11 (11th Cir. 2022). The FAC pleads none of these required details. It does not allege the specifics of what each Movant gained, when the relevant transfer occurred, what amount, if any, flowed from the PBMs through Health Delegates to each particular Defendant, or whether the PBMs or Health Delegates retained any portion of the funds. *See Omnipol*, 32 F.4th at 1308. These omissions are dispositive

because Counts IV and V seek restitution and disgorgement of the benefit allegedly received and retained by each Movant.

**3. Count V Is Duplicative of Count IV**

Courts in this District regularly dismiss money-had-and-received claims that are asserted alongside unjust enrichment claims and rest on the same alleged funds, conduct, and requested restitution. *Ultimate Motors, Inc. v. Lionheart Motorcars, LLC*, No. 19-60917-CIV, 2019 WL 9786489, at *5 (S.D. Fla. July 23, 2019). Count V rests on the identical theory and seeks identical relief as Count IV. The Court should dismiss Count V as duplicative.

**E. Lilly's Equitable Claims Must Also Be Dismissed Under Rule 12(b)(7) Because the PBMs and Health Delegates Are Required Parties (Counts IV and V)**

Now that the FAC identifies the PBMs by name, the Rule 19 deficiency is even starker. Lilly has identified the required parties Ascent, Emisar, and Health Delegates, yet chose not to join them when amending the complaint.

Rule 19(a)(1)(A) requires joinder of a party in whose absence "the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). That standard is satisfied here. Lilly seeks restitution, disgorgement, and a constructive trust over rebate funds that, by Lilly's own allegations, were paid to Ascent and Emisar, then routed (in unpleaded amounts) through Health Delegates, before reaching any Defendant. FAC ¶¶ 73, 80–81, 276, 284. To determine whether any Movant must restore money, the Court must first determine who received the Trulicity rebate funds, who retained them, what amounts were passed through each intermediary, and whether any portion of those specific funds actually reached the Movant in question. Those questions cannot be resolved without the entities—Ascent, Emisar, and Health Delegates—that actually received, allocated, retained, and distributed the funds. *See Fireman v. Travelers Cas. & Sur. Co. of Am.*, No. 10-81564-CIV, 2011 WL 743069, at *4 (S.D. Fla. Feb. 24, 2011) (ordering joinder of a non-party insured because this absent party would not be bound by any judgment and could later contest issues involving the same policy proceeds and recognizing that "all claimants to a fund must be joined to determine the disposition of that fund"); *Biscayne Park LLC v. Madison Realty Corp., L.P.*, No. 13-20336-CIV, 2013 WL 2243975, at *8 (S.D. Fla. May 21, 2013) (ordering joinder where complete relief could not be afforded because the relevant assets were held by a non-party entity); *Tick v. Cohen*, 787 F.2d 1490, 1495 (11th Cir. 1986) (holding absent beneficiaries were required parties because the requested equitable remedies necessarily affected their interests).

That Lilly has now named Ascent and Emisar in addition to Health Delegates in the FAC but has elected not to join them as parties does not solve the problem. Third-party discovery can obtain information, but it cannot bind those entities to any judgment, adjudicate their rights to the funds they retain, or subject them to any order of restitution, disgorgement, or constructive trust. If joinder of Ascent, Emisar, and Health Delegates is feasible, the Court should order it. If it is not feasible, Counts IV and V must be dismissed under Rules 12(b)(7) and 19.

### F. Count VI Fails to State a Claim for Florida Civil Theft

Count VI for civil theft under Section 772.11 of the Florida Statutes ("Section 772.11") is the only new substantive count in the FAC, and it fails for multiple independent reasons. Section 772.11 does not create a free-standing tort untethered to a criminal theft violation. Rather, it provides a civil remedy to a person injured "by reason of" a violation of the criminal theft statutes enumerated in Chapter 812 of the Florida Statutes. Fla. Stat. § 772.11(1). Thus, as to each Movant separately, Lilly must sufficiently allege facts showing that the Movant knowingly obtained, used, or endeavored to obtain or use Lilly's property with "felonious intent," temporarily or permanently, to deprive Lilly of a right to or benefit from the property or to appropriate the property to an unauthorized use. *See* Fla. Stat. §§ 812.012(3)–(5), 812.014(1); *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1307–08 (11th Cir. 2022); *Vidales v. StonCor Group, Inc.*, No. 23-CV-24011-RAR, 2024 WL 167187 (S.D. Fla. Jan. 16, 2024). Count VI does not identify which Movant obtained or used which of Lilly's funds paid for Trulicity rebates, or facts supporting the required knowledge and felonious intent. Although Section 772.11 ultimately requires proof by clear and convincing evidence, Count VI does not satisfy even Rules 8, 12(b)(6), and 9(b).

#### 1. The Shotgun Pleading and Rule 9(b) Defects Apply with Equal Force to Lilly's Civil Theft Claim

Count VI begins by incorporating "all preceding paragraphs," thereby sweeping in all five prior counts, all paragraphs of factual allegations, all collective labels, and all the Rule 9(b) deficiencies that pervade the FAC. FAC ¶ 289. Because Count VI is expressly premised on the alleged fraudulent rebate scheme, Rule 9(b) applies. *Omnipol*, 32 F.4th at 1307 n.11. The FAC must thus identify with particularity the who, what, when, where, and how for each Movant for each element aside from intent. Instead, Count VI asserts theft collectively against the "DrugPlace Defendants" without identifying any defendant-specific act of obtaining or using Lilly's property.

That is fatal under both the shotgun-pleading doctrine and Rule 9(b). *See Ambrosia Coal*, 482 F.3d at 1317.

**2. Count VI Does Not Identify the Allegedly Stolen Property or Any Movant-Specific Obtaining or Use with Particularity**

Even setting aside the group-pleading failure, civil theft under Florida law requires a defendant to obtain or use, or endeavor to obtain or use, the specific property at issue. Fla. Stat. § 812.014(1). Count VI does not identify that property with the required particularity. Its conclusion that Movants obtained "Lilly's property" is insufficient. FAC ¶ 295. The FAC alleges Lilly paid the Trulicity rebates to Ascent and Emisar, not to any Movant. FAC ¶¶ 73, 80–81. As detailed throughout this motion, the FAC does not identify a transfer of those funds from the PBMs or even Health Delegates to any particular Movant in any specific amount or on any specific date. It only alleges once that Health Delegates paid money to DrugPlace, concluding those were Lilly rebate funds. FAC ¶ 276.

These omissions are fatal under *Omnipol*. There, the Eleventh Circuit rejected a civil-theft claim where the complaint alleged that funds initially received by another entity were later transferred to defendants through unidentified transactions at unknown times. *See* 32 F.4th at 1308. The FAC makes the same unsupported leap here: it alleges that Lilly paid Ascent and Emisar and then concludes, without pleading the intervening transactions, that all Movants obtained Lilly's property. The FAC fails to state a civil theft claim under Rules 12(b)(6) and 9(b).

**3. Count VI Does Not Plead Knowledge, Felonious Intent, or an Intent to Deprive or Appropriate**

Section 812.014 requires actual knowledge and criminal intent. The FAC must allege facts supporting a plausible inference that each Movant knew it was obtaining or using Lilly's property without authorization and, at that time, specifically intended to steal it. *See Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1326–28 (11th Cir. 2006); *Malhotra v. Aggarwal*, No. 1:17-cv-24407, 2019 WL 1082062, at *2 (S.D. Fla. Mar. 6, 2019).

The FAC fails to plead intent for several reasons. Mere participation in a commercial relationship, receipt of revenue, or an alleged desire to profit does not establish an intent to steal. Nor does the subsequent retention of money establish that the Movant possessed felonious intent when the property was obtained. *See Malhotra*, 2019 WL 1082062, at *2; *Laterza v. JPMorgan Chase Bank, N.A.*, 221 F. Supp. 3d 1347, 1353 (S.D. Fla. 2016); *Med-Stop, Inc. v. Vandutch*, No. 23-cv-21875, 2025 WL 26731, at *8 (S.D. Fla. Jan. 3, 2025). Further, Count VI does not identify

any particular property for which a Movant intended either to deprive Lilly of a right to or benefit from the property or to appropriate the property to an unauthorized use. Its formulaic recitation that Movants acted with the statutorily required intent, FAC ¶ 295, is a legal conclusion unsupported by facts specific to any Movant. Count VI should therefore be dismissed as to each Movant.

## V. REQUEST FOR HEARING

Movants respectfully request oral argument on their Motion to Dismiss. Lilly's First Amended Complaint raises serious allegations of fraud against Movants, for which Lilly has not adequately pled its causes of action. Accordingly, Movants seek oral argument so that they may answer the Court's questions on any of the parties' briefings. Movants estimate the total time for oral argument, including their opening argument, Lilly's response, and Movants' reply to be roughly one hour.

## VI. CONCLUSION

The FAC is simply a longer version of the same fundamentally deficient original complaint. Despite naming seventeen Defendants plus five Relief Defendants, adding a new claim for civil theft, and layering on additional allegations from post-suit discovery of financial institutions, the FAC still does not allege the elements of any cause of action as to any particular Defendant with the particularity and plausibility that Rules 9(b) and 12(b)(6) require. The FAC remains a shotgun pleading built on group allegations. The common law fraud and negligent misrepresentation claims cannot overcome the multi-step chain of independent commercial actors between Movants and Lilly. The equitable claims lack any allegations of a direct benefit and depend on absent, required parties now only identified by name in the FAC's allegations. The new civil theft claim fails the pleading requirements applicable to fraud and omits allegations specific to each Movant regarding obtaining or using rebate funds.

For these reasons, Movants respectfully request that the Court dismiss Counts I and II in favor of DrugPlace FL, DrugPlace TN, Community Health, Leight, and Singer and dismiss Counts II, IV, V, and VI in favor of all Movants.

Respectfully submitted,

By:/s/ *Michelle Bernstein*
**Michelle Bernstein**
Florida Bar No. 1030736
315 S. Biscayne Blvd., Suite 400
Miami, Florida 33131
Telephone: (305) 921-1811
Mbernstein@polsinelli.com

**Henry H. Bolz, IV**
Florida Bar No. 43350
315 S. Biscayne Blvd., Suite 400
Miami, Florida 33131
Telephone: (305) 921-1811
hbolz@polsinelli.com
FLdocketing@polsinelli.com

**Adrienne Frazior** (*pro hac vice*)
Texas Bar No. 24059546
4020 Maple Ave., Suite 300
Dallas, Texas 75219
Telephone: (214) 661-5596
afrazior@polsinelli.com

**Andrew J. Ennis** (*pro hac vice*)
Kansas Bar No. 22445, MO Bar No. 57713
900 W. 48th Place, Suite 900
Kansas City, Missouri 64112
Telephone: (816) 374-0567
aennis@polsinelli.com

**Dayna Staron** (*pro hac vice*)
Illinois Bar No. 6317971
150 N. Riverside Plaza, Suite 3000
Chicago, Illinois 60606
Telephone: (312) 463-6348
dstaron@polsinelli.com

*Attorneys for Movants DrugPlace, Inc. (FL); DrugPlace, Inc. (TN); Community Health Initiative, Inc.; Nakorn Wholesalers, LLC; Paul Leight; and Kevin Singer*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document was filed with the clerk of court and has been served upon all counsel of record on September 11, 2026 via the Court's CM/ECF system.

/s/ *Michelle Bernstein*
Michelle Bernstein