**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| ELI LILLY AND COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>DRUGPLACE, INC. (FL); DRUGPLACE, INC. (TN); COMMUNITY HEALTH INITIATIVE, INC.; NAKORN WHOLESALERS, LLC; GALAXY MED, LLC D/B/A GALAXY PHARMACY; BRIGHTLINE WHOLESALE LLC; PAUL LEIGHT; KEVIN SINGER; READUS SMITH; JERRY MAYNARD SR.; JERRY MAYNARD II; MISHA MAYNARD; EDGAR ENRIQUEZ; LANE MAZEI; DANIELLE GISCOMBE; DANIEL HOFFNER; and TEXAS PHARMACY ENTERPRISE, LLC,<br><br>Defendants, and<br><br>CHRISTOPHER DEMARCO; DEMARCO LANDSCAPE DESIGN GROUP, LLC; GLOBUS INDUSTRIES, LLC; ROCKAWAY INVESTMENTS INC.; U.S. HEALTHCARE DISTRIBUTORS LLC,<br><br>Relief Defendants. | Case No. 1:26-CV-23516-FAM |

**DEFENDANTS JERRY MAYNARD SR.'S AND JERRY MAYNARD II'S**
**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION AND SUMMARY OF ARGUMENT .................................................. 1

II. RELEVANT ALLEGED FACTUAL BACKGROUND .................................................. 3

1. Factual Pleading Regarding Mr. Maynard Sr. .................................................. 4

2. Factual Pleading Regarding Mr. Maynard II. .................................................. 4

III. ARGUMENT .................................................. 5

A. Lilly Failed To Establish Personal Jurisdiction Over These Defendants. .................. 5

1. Florida's Long-Arm Statute Does Not Cover These Defendants' Alleged Involvement. .................................................. 5

2. Lilly's Pleading Fails To Satisfy The Due Process Clause. .................................. 9

3. Lilly's Understanding of Personal Jurisdiction Shortfalls. .................................. 11

4. Lilly Relies on Co-Conspirators to Establish Personal Jurisdiction Here. .......... 11

B. Lilly Fails To Plead A Conspiracy To Commit Fraud. .................................. 12

1. Lilly Fails To Plead An Underlying Common Law Fraud. .................................. 13

2. Lilly Fails To Meet Its Pleading Standard For Conspiracy Under Rule 12(b)(6). .................................................. 14

3. Lilly Fails To Meet Its Pleading Standard For Conspiracy Under Rule 9(b). ..... 16

C. Lilly's Claims Of Unjust Enrichment and Money Had And Received Must Be Dismissed. .................................................. 18

D. Lilly's Claim Of Civil Theft Must Be Dismissed. .................................................. 20

IV. CONCLUSION .................................................. 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham v. Am. Home Mortg. Serv.*,
947 F. Supp. 2d 222 (E.D.N.Y. 2013) ....................19

*Am. United Life Ins. Co. v. Martinez*,
480 F.3d 1043 (11th Cir. 2007) ....................13

*Apex Toxicology, LLC v. United Healthcare Servs., Inc.*,
No. 17-61840-CIV, 2020 WL 13551300 (S.D. Fla. Mar. 30, 2020) ....................13

*Apex Toxicology, LLC v. United HealthCare Svcs., Inc.*,
No. 17-61840-CIV, 2020 WL 13551299 (S.D. Fla. July 7, 2020) ....................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................12

*Barmapov v. Amuial*,
986 F.3d 1321 (11th Cir. 2021) ....................18

*Bauser v. Porsche Cars N. Am., Inc.*,
No. 1:23-CV-01054, 2024 WL 2406884 (N.D. Ga. Mar. 25, 2024) ....................19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................12

*Berrocal v. Att'y Gen. of U.S.*,
136 F.4th 1043 (11th Cir. 2025) ....................16

*Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.*,
527 F. Supp. 2d 1355 (M.D. Fla. 2007)....................2, 14

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
116 F.3d 1364 (11th Cir. 1997) ....................13

*Calder v. Jones*,
465 U.S. 783 (1984)....................10

*Coastal Wellness Centers, Inc. v. Progressive Am. Ins. Co.*,
309 F. Supp. 3d 1216 (S.D. Fla. 2018) ....................6

*Condor, S.A. v. Plurinational State of Bolivia*,
352 So. 3d 921 (Fla. Dist. Ct. App. 2022) ....................12

*Cordova v. Lehman Bros.*,
526 F. Supp. 2d 1305 (S.D. Fla. 2007) *aff'd in rel. part sub nom. Puterman v. Lehman Bros.*, 332 F. App'x 549 (11th Cir. 2009).....16

*Del Valle v. Trivago GMBH*,
56 F.4th 1265 (11th Cir. 2022).....11

*Doe v. Ibanera, LLC*,
No. 1:25-cv-24118, 2026 WL 2089224 (S.D. Fla. May 21, 2026).....13

*Doe v. Thompson*,
620 So. 2d 1004 (Fla. 1993).....7

*ECB USA, Inc. v. Savencia Cheese USA, LLC*,
148 F.4th 1332 (11th Cir. 2025).....9, 13, 14, 15

*Epoch Int'l Partners, LLP v. Bigfoot, Inc.*,
587 F. Supp. 3d 1214 (S.D. Fla. 2022).....12

*Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co.*,
752 So. 2d 582 (Fla. 2000).....12

*Feng v. Walsh*,
No. 19-24138-CIV, 2021 WL 8055449 (S.D. Fla. Dec. 21, 2021).....13

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011).....6

*GVB MD v. Aetna Health Inc.*,
No. 19-22357-CIV, 2019 WL 6130825 (S.D. Fla. Nov. 19, 2019).....19

*Headley v. Rosenblatt*,
No. 24-cv-24613, 2025 WL 2623834 (S.D. Fla. Sept. 10, 2025).....2, 8

*Healy v. Suntrust Service Corp.*,
569 So. 2d 458 (Fla. 5th DCA 1990).....20

*Honig v. Kornfeld*,
339 F. Supp. 3d 1323 (S.D. Fla. 2018).....14, 15

*Johnson v. Catamaran Health Solutions, LLC*,
687 F. App'x 825 (11th Cir. 2017).....3, 18

*Keegan v. Minahan*,
No. 23-60501-CIV, 2023 WL 3884962 (S.D. Fla. June 7, 2023).....13

*Kelly v. Palmer, Reifler, & Assoc., P.A.*,
681 F. Supp. 2d 1356 (S.D. Fla. 2010).....18

*Kopel v. Kopel*,
117 So. 3d 1147 (Fla. Dist. Ct. App. 2013), *rev'd on other grounds*, 229 So. 3d 812 (Fla. 2017)....................18

*Louis Vuitton Malletier, S.A. v. Mosseri*,
736 F.3d 1339 (11th Cir. 2013)....................5, 10

*Magluta v. Samples*,
256 F.3d 1282 (11th Cir. 2001)....................16

*Mansion v. Eli Lilly & Co.*,
No. CV 25-17282, 2026 WL 2546349 (D.N.J. Aug. 28, 2026)....................11

*Marrache v. Bacardi U.S.A., Inc.*,
17 F.4th 1084 (11th Cir. 2021)....................19

*McAndrew v. Lockheed Martin Corp.*,
206 F.3d 1031 (11th Cir. 2000)....................15

*Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*,
288 F.3d 1264 (11th Cir. 2002)....................5

*Melgarejo v. Pycsa Panama, S.A.*,
537 F. App'x 852 (11th Cir. 2013)....................7

*Olson v. Robbie*,
141 So. 3d 636 (Fla. Dist. Ct. App. 2014)....................6

*Omnipol, A.S. v. Multinational Def. Servs., LLC*,
32 F.4th 1298 (11th Cir. 2022).................... *passim*

*Omnipol, a.S. v. Worrell*,
421 F. Supp. 3d 1321 (M.D. Fla. 2019), *aff'd sub nom. Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298 (11th Cir. 2022)....................20

*Oviedo v. Ramirez*,
No. 21-cv-23750, 2022 WL 1641865 (S.D. Fla. May 23, 2022)....................9

*Parisi v. Kingston*,
314 So. 3d 656 (Fla. Dist. Ct. App. 2021)....................12

*Posner v. Essex Ins. Co., Ltd.*,
178 F.3d 1209 (11th Cir. 1999)....................13

*Prof. LED Lighting, Ltd. v. Aadyn Tech., LLC*,
88 F. Supp. 3d 1356 (S.D. Fla. 2015)....................16

*Prohias v. Pfizer, Inc.*,
490 F. Supp. 2d 1228 (S.D. Fla. 2007) ....................19

*Rensin v. State*,
18 So. 3d 572 (Fla. Dist. Ct. App. 2009) ....................8

*Rosenthal Toyota, Inc. v. Thorpe*,
824 F.2d 897 (11th Cir. 1987) ....................20

*Rowe v. Gary, Williams, Parteni, Watson and Gary, PLLC*,
723 F. App'x 871 (11th Cir. 2018) ....................10, 11

*Schrier v. Qatar Islamic Bank*,
632 F. Supp. 3d 1335 (S.D. Fla. 2022) ....................11, 12

*Setai Hotel Acquisition, LLC v. Miami Beach Luxury Rentals, Inc.*,
No. 16-21296-CIV, 2017 WL 3503371 (S.D. Fla. Aug. 15, 2017) ....................6

*SkyHop Techs., Inc. v. Narra*,
58 F.4th 1211 (11th Cir. 2023) ....................9

*Solomon v. Blue Cross & Blue Shield Ass'n*,
574 F. Supp. 2d 1288 (S.D. Fla. 2008) ....................17

*State v. Wyndham Int'l, Inc.*,
869 So. 2d 592 (Fla. Dist. Ct. App. 2004) ....................8

*Steel Media Grp. v. Lewis*,
No. 22-cv-21780, 2023 WL 1413043 (S.D. Fla. Jan. 6, 2023), *report and recommendation adopted*, No. 22-cv-21780, 2023 WL 1332832 (S.D. Fla. Jan. 31, 2023) ....................19

*Tippens v. Round Island Plantation LLC*,
No. 09-CV-14036, 2009 WL 2365347 (S.D. Fla. July 31, 2009) ....................17

*United Techs. Corp. v. Mazer*,
556 F.3d 1260 (11th Cir. 2009) ....................20

*Walter Lorenz Surgical, Inc. v. Teague*,
721 So. 2d 358 (Fla. Dist. Ct. App. 1998) ....................8

*Walters v. Fast AC, LLC*,
60 F.4th 642 (11th Cir. 2023) ....................15

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
792 F.3d 1313 (11th Cir. 2015) ....................5, 16, 18

**Statutes**

Fla. Stat. § 607.01401(30) ........ 3

Fla. Stat. § 48.193(1)(a)(1) ........ 5, 6, 7

Fla. Stat. § 48.193(1)(a)(2) ........ 5, 12

Fla. Stat. § 48.193(1)(a)(6) ........ 5, 8

Fla. Stat. § 772.11 ........ 20

Fla. Stat. § 812.014 ........ 20

Tenn. Code § 48-11-201(16) ........ 3

**Other Authorities**

Fed. R. Civ. P. 12(b)(2) ........ 5

Fed. R. Evid. 201(b)(2) ........ 6

Fed. R. Evid. 201(d) ........ 6

In its complaint filed in this Court (the "Complaint"), Plaintiff Eli Lilly and Company ("Lilly") attempts to weave a web to ensnare defendants Jerry Maynard Sr. ("Mr. Maynard Sr."), Jerry Maynard II ("Mr. Maynard II"), and several other individuals and entities.

Despite responding, D.E. 141, to the motions to dismiss, Lilly filed a First Amended Complaint ("FAC"), D.E. 142, before replies in support of the motions to dismiss could be filed. Thus, this Court dismissed the motions to dismiss as moot. D.E. 151. The FAC largely parrots the original Complaint's allegations of a sprawling civil conspiracy to commit fraud through the various Defendants executing an alleged fraudulent rebate submission scheme. Unfortunately for Lilly, the FAC fares no better in regard to Mr. Maynard Sr. and Mr. Maynard II as it fails to address the various shortfalls identified in the prior motion to dismiss, D.E. 116, and as detailed below.

Most importantly, the Court must determine whether personal jurisdiction applies to Mr. Maynard Sr. or Mr. Maynard II as both are outside this Court's general personal jurisdiction. The FAC must adequately plead personal jurisdiction applies, but it does not satisfy Federal Rule of Civil Procedure 12(b)(2). Beyond jurisdiction, Mr. Maynard Sr.'s and Mr. Maynard II's alleged roles are opaque and inadequately pleaded. That does not satisfy Federal Rules of Civil Procedure 12(b)(6) or 9(b). For many of the same reasons, the shotgun-pleading doctrine or the lack of Article III standing are each an independent, sufficient basis for dismissing the claims altogether.

Ultimately, each argument provides an adequate and complete basis for dismissing the claims against Mr. Maynard Sr. and Mr. Maynard II, and the Court should do just that.

## I. <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

The rebate-fraud scheme alleged in the FAC involves DrugPlace, Inc. (FL) and DrugPlace, Inc. (TN) (collectively, "DrugPlace")[1], Community Health Initiative Inc. ("Community Health")[2], Nakorn Wholesalers, LLC, Galaxy Med, LLC, Brightline Wholesales LLC, Texas Pharmacy Enterprise, LLC ("TPE"), and several alleged owners, principals, and officers of those entities (collectively, the "Defendants"). The claims include: common law fraud, civil conspiracy to

---

[1] The FAC almost exclusively refers to the two DrugPlace entities—DrugPlace, Inc. (TN) and DrugPlace, Inc. (FL)—as a collective entity. Even if true that those entities may share certain ownership, employees, and/or business activities, the FAC's fails to specify which actions were taken by either of those entities undermining the FAC's pleading.

[2] The FAC states that "Community Health sometimes did business under the name 'COGIC Department of Health,'" but importantly, Community Health, as detailed in the FAC, is a separate entity than the Church of God in Christ ("COGIC" or the "Church"). FAC ¶ 21; Compl. ¶ 19.

commit fraud, negligent misrepresentation, unjust enrichment, money-had-and-received, and civil theft. But like the Complaint, the FAC alleges little about either Mr. Maynard Sr. or Mr. Maynard II and includes them as defendants in only four counts.

Mr. Maynard Sr. is a Bishop for the Church of God in Christ (the "Church" or "COGIC") and a businessman in Nashville, Tennessee. FAC ¶ 35; Compl. ¶ 32. Lilly alleges that he supposedly promoted Community Health to Church members and supposedly participated in the fraudulent scheme in his role at the Church and due to his relationship with defendants Paul Leight and Kevin Singer. *Id.* Mr. Maynard II is a Church pastor, businessman, politician, and lawyer in the Nashville area. FAC ¶ 36; Compl. ¶ 33. He registered trademarks on behalf of ReadyHealthcare Services Corporation, and Lilly alleges, incorrectly, that he served as Chairman of the Board for Community Health. *Id.* It is also alleged that they attended meetings with Mr. "Singer, and Leight *in Tennessee* at Drugplace offices." FAC ¶¶ 222–23 (emphasis added).

Beyond a few paragraphs regarding them individually—none of which identify acts related to the conspiracy—the FAC makes broad assertions about a group of individual defendants deemed "DrugPlace Officers." FAC ¶ 43; Compl. ¶ 38. That grouping includes both Mr. Maynard Sr. and Mr. Maynard II, though Lilly never alleges when or whether either of them held an officer position at any DrugPlace entity. An example of the bald assertions involving that broad group of Defendants is that non-resident defendants personally participated in the conspiracy, which included acts within Florida. FAC ¶ 61; Compl. ¶ 42. That type of conclusory pleading persists throughout the FAC and riddles the conspiratorial web with too many holes.

Personal jurisdiction is a two-step test in Florida, where both the Florida long-arm statute and the Due Process Clause must be satisfied. *Headley v. Rosenblatt*, No. 24-cv-24613, 2025 WL 2623834, at *2 (S.D. Fla. Sept. 10, 2025) (Moreno, J). Lilly fails to bear its initial burden to establish personal jurisdiction given the lack of any allegations about Mr. Maynard Sr. or Mr. Maynard II participating in, directing, or supervising any activities in or causing any harm in Florida. Thus, the FAC does not satisfy the long-arm statute or satisfy the Due Process Clause.

The issues persist when evaluating the merits of the four counts that include these Defendants in light of Rules 12(b)(6) and 9(b). For the conspiracy claim, the underlying tort is not adequately pleaded, and multiple elements of a conspiracy—an agreement and an overt act—are not adequately pleaded generally or in relation to Mr. Maynard Sr. or Mr. Maynard II. *Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.*, 527 F. Supp. 2d 1355, 1370 (M.D. Fla. 2007). Even

more, Lilly never alleges that it conferred a benefit to Mr. Maynard Sr. or Mr. Maynard II. Since the benefit must be direct for unjust enrichment and money had and received claims and since civil theft requires a defendant to obtain or use Lilly's property, the FAC does not allege those claims' required elements. *Johnson v. Catamaran Health Solutions, LLC*, 687 F. App'x 825, 830 (11th Cir. 2017). Even if the FAC pleads the necessary elements for each claim, the FAC does not satisfy the heightened pleading requirement of Rule 9(b) as each claim is fraud-based. *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1307 n.11 (11th Cir. 2022).

For these reasons, the FAC should be dismissed as to these Defendants.

## II. RELEVANT ALLEGED FACTUAL BACKGROUND

While Lilly includes many Defendants, the FAC fails to provide detailed pleading about many of those Defendants. Rather than focusing on the generalized scheme described in the FAC, this motion focuses on Lilly's lacking allegations about Mr. Maynard Sr. and Mr. Maynard II.

Both Mr. Maynard Sr. and Mr. Maynard II are listed as defendants in only the civil conspiracy to commit fraud (Count II), unjust enrichment (Count IV), money had and received (Count V), and civil theft (Count VI) claims. Yet the FAC provides no factual pleadings to detail their involvement in the alleged scheme, to detail their alleged benefit from the scheme, or to detail how those counts align with their actions.

Even in light of the lacking factual pleading, Mr. Maynard Sr. and Mr. Maynard II, along with Community Health and other individual defendants, allegedly "willingly creat[ed] and perpetuat[ed] a sham health plan front to which fraudulent rebates could be attributed." FAC ¶ 264. And as alleged members of the conspiracy, Mr. Maynard Sr. and Mr. Maynard II supposedly "personally joined and participated in the DrugPlace Conspiracy, in which multiple overt acts were performed in Florida." FAC ¶ 61. Yet the FAC is completely silent about any touchpoints they had with Florida as part of this conspiracy beyond that statement.

Lilly also labels them as "DrugPlace Officers," who along with the "DrugPlace Entities," make up the "DrugPlace Conspiracy." FAC ¶ 43; Compl. ¶ 38. Yet again, the FAC is altogether silent about what officer position,[3] ownership interest, or employment relationship either Mr. Maynard Sr. or Mr. Maynard II had with any Drugplace Entity. Nonetheless, the FAC claims the proceeds of the fraud flowed to the DrugPlace Officers. FAC ¶ 213; Compl. ¶ 179.

[3] As defined by both Tennessee and Florida law, an officer is an employee, but a director is not an employee or officer. Tenn. Code § 48-11-201(16); Fla. Stat. § 607.01401(30).

**1. Factual Pleading Regarding Mr. Maynard Sr.**

Mr. Maynard Sr. is introduced as a Bishop for the Church of God in Christ (the "Church" or "COGIC") [4] and a businessman in Nashville, Tennessee. FAC ¶ 35; Compl. ¶ 32. Lilly alleges that he supposedly promoted Community Health to Church members and supposedly participated in the fraudulent scheme in his role at the Church and due to his relationship with defendants Paul Leight and Kevin Singer. *Id.* Lilly also claims he was the "Jurisdictional Prelate of the COGIC Department of Health . . . *in 2008*." FAC ¶ 35 (emphasis added). A couple hundred paragraphs later, Lilly changes that claim to be that he "was head of the COGIC Department of Health" and that he supposedly attended meetings with Mr. "Maynard II, Singer, and Leight *in Tennessee* at DrugPlace's location." FAC ¶ 222 (emphasis added). Lilly also claims that Mr. Maynard Sr. "has longstanding ties with Leight, Singer, and their businesses in Florida," including trips to Florida to "discuss Church-related initiatives" with "Leight and Singer." FAC ¶ 56.

Notably, Lilly claims Readus Smith, one of the other DrugPlace Officers, "conceived of the program with Defendants Leight and Singer" and Mr. Maynard Sr. FAC ¶ 219. A few paragraphs later, that morphs into Mr. "Maynard Sr. created the guise of a massive 'prescription cost share program' for COGIC members." FAC ¶ 222.

Lastly, Lilly mentions a prior alleged fraud that supposedly involved other entities—*none* of which are party to this suit. FAC ¶ 237; Compl. ¶¶ 188, 202. That allegation lends no support to the merits and pleadings for the claims here.

**2. Factual Pleading Regarding Mr. Maynard II.**

Mr. Maynard II is a Church pastor, businessman, politician, and lawyer in the Nashville area. FAC ¶ 36; Compl. ¶ 33. He registered trademarks on behalf of ReadyHealthcare Services Corporation, and Lilly alleges, incorrectly, that he served as Chairman of the Board for Community Health. *Id.* It is also alleged that he attended meetings with Mr. "Maynard Sr., Singer, and Leight *in Tennessee* at Drugplace offices." FAC ¶ 223 (emphasis added). Further, Lilly asserts that Mr. Maynard II enjoys vacationing in Florida "at the Fountainebleau [sic] hotel." FAC ¶ 58.

Even though Lilly already attributed the creation of the scheme to Defendants Smith,

---

[4] The FAC seemly uses the Church, COGIC, the COGIC Department of Health, and/or Community Health interchangeably. But COGIC, the Church of God in Christ or the "Church," is a distinct legal entity, wholly sperate from the COGIC Department of Health or Community Health as described in footnote 2. FAC ¶ 21; *see* FAC ¶ 181("Community Health/COGIC").

Leight, and Singer, FAC ¶ 219, Lilly then claims that Mr. "Maynard II created the guise of a massive 'prescription cost share program' for COGIC members." FAC ¶ 223. That is identical to the allegation made regarding Mr. Maynard Sr. the paragraph before, *compare* FAC ¶ 222 *with* FAC ¶ 223, demonstrating that Lilly cannot adequately plead or identify who supposedly created this alleged "massive" program. Thus, Lilly simply guesses that several of the Defendants may have done so. Even so, the FAC is silent about how either Mr. Maynard Sr. or Mr. Maynard II created the program, furthered the conspiracy, or benefited from the alleged scheme.[5]

## III. ARGUMENT

### A. Lilly Failed To Establish Personal Jurisdiction Over These Defendants.

As neither Mr. Maynard Sr. nor Mr. Maynard II are residents of Florida, Lilly "bears the initial burden of alleging in the Complaint sufficient facts to make out a prima facie case of jurisdiction," but Lilly does not satisfy that burden.[6] *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (citation modified). As this Court's personal jurisdiction is coextensive with the jurisdiction of Florida state courts, the FAC must satisfy both Florida's long-arm statute and the Due Process Clause. *See Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). The FAC satisfies neither, leading to dismissal for the lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2).

#### 1. Florida's Long-Arm Statute Does Not Cover These Defendants' Alleged Involvement.

Turning first to Florida's long-arm statute, Lilly does not allege any conduct that would satisfy the long-arm statute. Neither Defendant conducted business in the state, Fla. Stat. § 48.193(1)(a)(1), nor did they commit a tortious act, *infra* Section III.B; *see id.* § 48.193(1)(a)(2), and Lilly does not allege it sustained any injuries within Florida, *id.* § 48.193(1)(a)(6).

As detailed below, the FAC's allegations regarding these Defendants are limited and devoid of any actions personally attributable to either of them, particularly about any specific actions that took place *in Florida*. Mr. Maynard Sr. and Mr. Maynard II are alleged to have

[5] This also constitutes a type of shotgun pleading, which should lead to dismissal. Lilly attributes the creation of the program to several Defendants. FAC ¶¶ 219, 222–23. Yet Lilly never alleges that group of Defendants ever met altogether or communicated altogether to discuss the supposed scheme. Meaning "geographic and temporal realities make plain that all of the defendants could not have participated in" this act. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 n.14 (11th Cir. 2015) (quoting *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001)).

[6] Lilly never pleads that general jurisdiction applies to these Defendants. *See* FAC ¶ 55.

primarily acted on behalf of Community Health, a citizen of Tennessee, or COGIC, a non-Defendant third party that Lilly does not plead is a Florida citizen. FAC ¶¶ 20–21; Compl. ¶¶ 18–19. The lack of Florida citizenship for these entities underscores that the alleged conduct by Mr. Maynard Sr. and Mr. Maynard II never occurred there, Fla. Stat. § 48.193(1)(a)(1), in contrast to Lilly's baseless claim. FAC ¶ 55; *see* Compl. ¶ 42.

Turning first to Mr. Maynard Sr.'s alleged role as "Jurisdictional Prelate of the COGIC Department of Health," that role is never alleged to include activity in Florida related to the alleged scheme. FAC ¶ 35. To be sure, Mr. Maynard Sr. traveled to "Florida seven times for church and COGIC ministry-related activities, and to meet with Defendants Leight and/or Singer to discuss community initiatives." FAC ¶ 57. But Lilly never connects any of those trips to the alleged scheme. *Id.*

Turning next to Mr. Maynard II, he enjoys vacationing in Florida and "describe[ed] Miami as his 'home away from home'" on social media. FAC ¶ 58. Lilly does not connect any of those vacations to the claims. Lilly's emphasis on these trips appears to be an attempt to say he is "essentially at home in the forum State," but that applies to general jurisdiction, which Lilly does not allege. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation omitted); *see also* The Wizard of Oz (Metro-Goldwyn-Mayer 1939) ("There's no place like home"). Even if true that he served as "Chairman of the Board for Community Health," FAC ¶ 36; Compl. ¶ 33—though not true—Community Health was located in *Tennessee*, FAC ¶ 21; Compl. ¶ 19. And even if he attended "board meetings in Florida, this is insufficient, without more." *Olson v. Robbie*, 141 So. 3d 636, 641 (Fla. Dist. Ct. App. 2014).

On the other hand, it is true that Mr. Maynard II submitted trademark registration filings for "DRUGPLACE,"[7] "READYHEALTHCARE SERVICES,"[8] and "COGIC DEPARTMENT OF HEALTH."[9] FAC ¶ 36; Compl. ¶ 33. Notably, the timing of the trademark filings in 2007[10]

---

[7] DRUGPLACE, Serial No. 77235468, USPTO (filed July 21, 2007), https://tmsearch.uspto.gov/search/search-results/77235468. Attached as Exhibit 1.

[8] READYHEALTHCARE SERVICES, Serial No. 7235471, USPTO (filed July 21, 2007), https://tmsearch.uspto.gov/search/ search-results/77235471. Attached as Exhibit 2.

[9] COGIC DEPARTMENT OF HEALTH, Serial No. 77234434, USPTO (filed July 20, 2007), https://tmsearch.uspto.gov/search/search-results/77234434. Attached as Exhibit 3.

[10] "The Court may take judicial notice of government publications and website materials," even for a motion to dismiss as detailed in Jerry Maynard II's Motion for Judicial Notice. *Coastal*

removes them from the conspiracy. Even more, those trademarks were deemed "Dead" "Abandoned" in 2008 or considered "Dead" "Cancelled" in 2014. So those trademarks could not have contributed to the conspiracy, which Lilly does not allege. The trademark registration filings also rebut that Mr. Maynard II was a DrugPlace agent due to filing these trademarks, FAC ¶ 36; Compl. ¶ 33, as ReadyHealthcare Services Corporation owned of the trademarks, *supra* note 7–9.

These alleged actions, primarily taken on behalf of non-Florida-based entities, are at most "occasional and insignificant business operations . . . [and] do[ ] not establish the sort of 'general course of business activity' necessary for personal jurisdiction under Fla. Stat. 48.193(1)(a)(1)." *Melgarejo v. Pycsa Panama, S.A.*, 537 F. App'x 852, 860 (11th Cir. 2013) (citation omitted). Even if true that these Defendants "created the guise of a massive 'prescription cost share program'," which it is not, there is no allegation that took place in Florida. FAC ¶¶ 222–23.

In an effort to seemingly establish personal jurisdiction in Florida, Lilly sweepingly describes them as "DrugPlace Officers" who "direct[ed] and control[led] the DrugPlace Entities . . . to carry out the fraud." FAC ¶ 213; Compl. ¶ 179. Lilly's evident aim is to bootstrap personal jurisdiction over all Defendants from the fact that some DrugPlace Entities and Officers are domiciled in Florida. Yet Lilly fails to describe either Mr. Maynard Sr.'s or Mr. Maynard II's position, title, or responsibilities at any DrugPlace Entity, materially undercutting Lilly's strategy.

Even if Lilly had adequately alleged either of them to be an officer of a DrugPlace Entity, which it did not, that invokes the "corporate shield" doctrine. *Doe v. Thompson*, 620 So. 2d 1004, 1006 (Fla. 1993). In short, "it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed . . . for the benefit of his employer." *Id.* (citation omitted). Here, Lilly fails to plead any action Mr. Maynard Sr. or Mr. Maynard II took outside of their alleged DrugPlace Officer roles, so personal jurisdiction does not exist. In other words, Lilly cannot plead imaginary affiliation with DrugPlace entities for these Defendants to create jurisdiction since a defendant "is not by virtue of his position subject to personal jurisdiction" when the actions "are not alleged to have been taken outside his [corporate] duties." *Thompson*, 620 So. 2d at 1006.

---

*Wellness Centers, Inc. v. Progressive Am. Ins. Co.*, 309 F. Supp. 3d 1216, 1220 n.4 (S.D. Fla. 2018) (citations omitted); Fed. R. Evid. 201(b)(2), (d); *see also Setai Hotel Acquisition, LLC v. Miami Beach Luxury Rentals, Inc.*, No. 16-21296-CIV, 2017 WL 3503371, at *7 n.2 (S.D. Fla. Aug. 15, 2017) ("The Court takes judicial notice of the USPTO file history").

In response, Lilly may claim that Mr. Maynard Sr. and Mr. Maynard II were "nonresident corporate officer[s] [who] . . . directed 'fraud or other intentional misconduct,'" which is an exception to the corporate shield doctrine. *Rensin v. State*, 18 So. 3d 572, 575 (Fla. Dist. Ct. App. 2009) (quoting *Doe*, 620 So. 2d at 1006 n.1). But that idea is misaligned with what is alleged here since that exception applies only if "the nonresident corporate officer *personally and intentionally* engaged in the tortious conduct and the specific conduct of the nonresident corporate officer was calculated to inflict a direct injury *upon a resident of Florida*." *Id.* at 576 (emphasis added). Nowhere does the FAC allege that either Mr. Maynard Sr. or Mr. Maynard II personally or intentionally engaged in any specific tortious conduct, meaning the corporate shield doctrine would apply. And, accordingly, there is a lack of personal jurisdiction since the FAC is "devoid of any evidence" that they acted as corporate officers and "primary participant[s]" in an alleged scheme. *State v. Wyndham Int'l, Inc.*, 869 So. 2d 592, 599 (Fla. Dist. Ct. App. 2004).

Further, Lilly is incorporated in and has its principal place of business in Indiana; it is a citizen of Indiana. FAC ¶ 13. The harm was not "calculated to inflict a direct injury upon a resident of Florida," demonstrating that the corporate shield doctrine applies if Mr. Maynard Sr. or Mr. Maynard II are deemed to be DrugPlace Officers.[11] *Rensin*, 18 So. 3d at 576. The fact that Lilly is not a resident of Florida also demonstrates that Florida was not the site of the alleged harm to Lilly. *See* Fla. Stat. § 48.193(1)(a)(6). Since the inquiry is "whether [defendant] has engaged in acts or omissions that injured [plaintiff] in Florida," Lilly's FAC cannot establish personal jurisdiction under the long-arm statute. *Walter Lorenz Surgical, Inc. v. Teague*, 721 So. 2d 358, 360 (Fla. Dist. Ct. App. 1998) (citation omitted).

Even if Lilly made a prima facie showing of personal jurisdiction under the long-arm statute, "a defendant [can] challenge[ ] personal jurisdiction by submitting affidavit evidence in support of its position, [and] the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Headley*, 2025 WL 2623834, at *1 (Moreno, J.) (citation modified) (citation omitted). To that effect, Mr. Maynard Sr. submits an affidavit (Ex. 4) detailing that the FAC incorrectly describes his connections with Florida and the DrugPlace Entities. Mr. Maynard II also submits an affidavit (Ex. 5) detailing that the FAC incorrectly describes his connections with Florida and the DrugPlace Entities. Florida's long-arm statute does not apply to either.

[11] Mr. Maynard Sr. and Mr. Maynard II reject the claim that they are DrugPlace Officers in all contexts.

When the burden shifts back to Lilly, it must "substantiate the jurisdictional allegations in the Complaint by affidavits or other competent proof and not merely reiterate the factual allegations in the Complaint." *Oviedo v. Ramirez*, No. 21-cv-23750, 2022 WL 1641865, at *3 (S.D. Fla. May 23, 2022). Lilly will be unable to do so.[12]

**2. Lilly's Pleading Fails To Satisfy The Due Process Clause.**

Personal jurisdiction must also comport with the Fourteenth Amendment's Due Process Clause. *See, e.g., ECB USA, Inc. v. Savencia Cheese USA, LLC*, 148 F.4th 1332, 1342 (11th Cir. 2025). But Lilly does not plead any facts supporting that due process applies to either Mr. Maynard Sr. or Mr. Maynard II for this Court to exercise personal jurisdiction over them in Florida.

The three-part due process test requires: (1) Lilly's claims arise out of or relate to the defendant's contacts *with Florida*; (2) defendant to have "purposefully availed" himself to the forum state; and (3) the exercise of personal jurisdiction aligns with traditional notions of "fair play and substantial justice." *Id.* at 1341 (quoting *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1275 (11th Cir. 2022)). Lilly "bears the burden of establishing the first two requirements, and then the burden shifts to the defendant." *Id.* (citation omitted). Lilly does not meet their burden.

Lilly clearly fails to satisfy the first prong since no claims arise out of or relate to Mr. Maynard Sr.'s or Mr. Maynard II's contact with Florida, and Lilly does not allege "a strong 'relationship among the defendant, the forum, and the litigation.'" *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1229 (11th Cir. 2023) (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 365 (2021) (personal jurisdiction exists when a defendant "systematically served [state] . . . and injured [plaintiffs] in those States."). Lilly does not connect any of the very limited Florida touchpoints for Mr. Maynard Sr. or Mr. Maynard II to the alleged claims or any injury.

Likewise, Lilly fails to satisfy the second prong by not adequately alleging that these Defendants "purposefully availed" to Florida. Under the "effects test," a nonresident defendant's tort supports jurisdiction only when it: "(1) was intentional; (2) was **aimed at the forum state**;

---

[12] When seeking a temporary restraining order, Lilly's memorandum of law provided one broad sentence of allegations against Mr. Maynard Sr. and Mr. Maynard II—that a group of individual defendants, "created and perpetuated a sham prescription cost share program to which fraudulent rebates could be attributed." D.E. 31 at p. 13. Lilly's reply claimed that the "contention that [it] d[id] not provide sufficient detail about the roles these individuals played in their scheme underscores the need for expedited discovery." D.E. 65 at p. 3. Put simply, Lilly acknowledges that discovery is needed to establish personal jurisdiction as it is not sufficiently pleaded.

and (3) **caused harm** that the defendants should have anticipated would be suffered **in the forum state**." *Louis Vuitton*, 736 F.3d at 1356 (cleaned up) (emphasis added) (quoting *Licciardello v. Lovelady*, 544 F.3d 1280, 1286 (11th Cir. 2008)); *see Calder v. Jones*, 465 U.S. 783, 789 (1984). As mentioned, Lilly never alleges that it suffered harm in the forum state, and the Defendants could not have anticipated harm being suffered in Florida because Lilly is an Indiana citizen.

The other test for purposeful availment is the traditional "minimum contacts" test, which asks if a defendant's "contacts: (1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Louis Vuitton*, 736 F.3d at 1357 (citing *S.E.C. v. Carrillo*, 115 F.3d 1540, 1542 (11th Cir. 1997)). Lilly never once alleges that Mr. Maynard II's vacations to Florida are related to the causes of action or that the vacations involved him purposefully availing himself to the privileges of doing business in Florida, and that would be a novel holding of law. Similarly, Mr. Maynard Sr.'s trips to Florida "for church and COGIC ministry-related activities," FAC ¶ 57, e.g., ministry and charity events, are not alleged to relate to Lilly's claims because COGIC has "'no knowledge' of the acts described in the complaint and did not 'knowingly participate[] in, authorize[], or condone[] any of the alleged fraudulent activity,'" FAC ¶ 153. In other words, Lilly makes clear that actions taken on behalf of COGIC would not be actions taken in furtherance of the conspiracy. And Lilly makes no connections between Mr. Maynard Sr.'s meetings with "Leight and/or Singer to discuss community initiatives" and the causes of action. FAC ¶ 57. Thus, under either test, Lilly does not plead that these Defendants purposefully availed themselves Florida.

At the same time, the traditional notions of fair play and substantial justice—the third part of the test—should also lead this Court to not exercise personal jurisdiction over these Defendants. The four factors for this part of the test are: "the burden of the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, and the shared interest of the several states in furthering fundamental substantive social policies." *Rowe v. Gary, Williams, Parteni, Watson and Gary, PLLC*, 723 F. App'x 871, 876 (11th Cir. 2018) (citation omitted). As the "lion's share of the conduct alleged occurred outside of [the forum state]," Tennessee "would have a significantly stronger interest in adjudicating a dispute . . . in its courts." *Id.* (citation omitted). And the "burden would be excessive on" both Mr. Maynard Sr. and Mr. Maynard II as out-of-state defendants. *Id.* at 877. So the first two factors of traditional notions

of fair play and substantial justice—burden of the defendant and the forum State's interest—show that "exercising jurisdiction over [here] would violate the Due Process Clause." *Id.*

**3. Lilly's Understanding of Personal Jurisdiction Shortfalls.**

These arguments are not novel to Lilly as it just made similar arguments before the United States District Court in the District of New Jersey. Specifically, Lilly's motion to dismiss argued that the plaintiff's "injuries ha[d] no connection to New Jersey" and "the plaintiff's claims d[id] not arise from [forum state] contacts." *Mansion v. Eli Lilly & Co.*, No. CV 25-17282, 2026 WL 2546349 (D.N.J. Aug. 28, 2026), D.E. 13-1 at 8–9. In its reply, Lilly made much of plaintiff's failure to assert that "an injury [ ] occurred *in New Jersey*" and that "a connection between the forum and the specific claims" is needed. *Id.*, D.E. 19 at 3. That court agreed and highlighted that "the injury and underlying conduct" occurring outside the forum state could not support specific personal jurisdiction. *Id.* at *5 (D.N.J. Aug. 28, 2026), Slip Op. at 10.

Just as that case lacked the necessary jurisdictional touchpoints with New Jersey, this case lacks the necessary jurisdictional touchpoints with Florida: Lilly never alleges that the relevant Trulicity or the subsequent rebates passed through Florida. Not once does Lilly allege that the Trulicity touched Florida, whether in manufacturing, distribution, transferring, or resale. *See, e.g.,* FAC ¶ 210; FAC ¶¶ 196–200 (observing activities at DrugPlace (TN)); FAC ¶ 24 (Galaxy is in Texas); FAC ¶ 211; FAC ¶ 22 (Nakorn is in Tennessee); FAC ¶ (Brightline is in Texas); FAC ¶¶ 188–90. Lilly also never alleges that rebates touched Florida as the FAC is silent about which DrugPlace entity submitted those rebates and silent about the location of Health Delegates, Ascent Health Services ("Ascent"), or Emisar Pharma Services ("Emisar"), the relevant PBMs.

**4. Lilly Relies on Co-Conspirators to Establish Personal Jurisdiction Here.**

Due to these shortcomings, Lilly relies on these Defendants' alleged connection to the conspiracy to establish the minimum contacts, but that is not sufficient here. "[T]he Supreme Court has been quite clear," due process is based on the defendant's "*own affiliation* with the State." *Schrier v. Qatar Islamic Bank*, 632 F. Supp. 3d 1335, 1367 (S.D. Fla. 2022) (internal quotations omitted) (quoting *Walden v. Fiore*, 571 U.S. 277, 286 (2014)). Lilly also does not allege that any of these Defendants' alleged actions were "aimed at the forum state, and caused harm . . . in the forum state," since Lilly is an Indiana citizen. *Del Valle*, 56 F.4th at 1276 (citing *Licciardello*, 544 F.3d at 1285–88). Lilly does not allege that Mr. Maynard Sr. or Mr. Maynard II "*himself* create[d] [contacts] with the forum" either due to the alleged conspiracy or due to the impact of the alleged

tort, so the FAC does not demonstrate that Lilly met its burden under the Due Process Clause test. *Schrier*, 632 F. Supp. 3d at 1367 (quoting *Walden*, 571 U.S. at 284).

As for the long arm statute, the Florida Supreme Court explained, "[a]s long as [the defendant] **and** the other conspirators sought to use the benefits afforded by Florida law to participate in (and profit from) [the scheme] **in this state**, then they should have been prepared to follow Florida law governing their [ ] activities." *Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co.*, 752 So. 2d 582, 586 (Fla. 2000) (emphasis added). This articulates a requirement on all of the conspirators to individually avail themselves to doing business in Florida related to the scheme, and Lilly has not alleged that to be the case for Mr. Maynard Sr. or Mr. Maynard II.

Similarly, the alleged conspiracy is "impermissibly vague and conclusory as to" Mr. Maynard Sr.'s and Mr. Maynard II's. *Condor, S.A. v. Plurinational State of Bolivia*, 352 So. 3d 921, 927 (Fla. Dist. Ct. App. 2022). Thus, the Court should "decline to apply the co-conspirator theory to extend jurisdiction over nonresidents if the plaintiff fails to plead with specificity any facts supporting the existence of the conspiracy and provides nothing more than vague and conclusory allegations." *Parisi v. Kingston*, 314 So. 3d 656, 661 (Fla. Dist. Ct. App. 2021). Ultimately, the alleged tortious conduct cannot be imputed on these Defendants to establish personal jurisdiction, *see* Fla. Stat. § 48.193(1)(a)(2), since a "claim for civil conspiracy must contain, positive and specific allegations" that are not present here in regard to either of them, *Condor*, 352 So. 3d at 927 (quoting *Parisi*, 314 So. 3d at 661).

If either the long-arm statute or the Due Process Clause are not satisfied, the Court must dismiss the FAC as to Mr. Maynard Sr. and Mr. Maynard II due to lacking personal jurisdiction under Rule 12(b)(2). Here, neither part of the two-part test has been satisfied.

### B. Lilly Fails To Plead A Conspiracy To Commit Fraud.

Lilly's claims fail to satisfy Federal Rules of Civil Procedure 12(b)(6) and 9(b) as to Mr. Maynard Sr. and Mr. Maynard II, which is fatal to Lilly's relevant claims. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009).

For a complaint "[t]o survive a [Rule 12(b)(6)] motion to dismiss, 'factual allegations must be enough to raise a right to relief above the speculative level' and must be sufficient 'to state a claim for relief that is plausible on its face.'" *Epoch Int'l Partners, LLP v. Bigfoot, Inc.*, 587 F. Supp. 3d 1214, 1218 (S.D. Fla. 2022) (quoting *Twombly*, 550 U.S. at 555). Meaning "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions." *ECB USA*, 148 F.4th at 1347 (quoting *Iqbal*, 556 U.S. at 678). This rule applies to all of Lilly's claims against Mr. Maynard Sr. and Mr. Maynard II.

As for Rule 9(b), "where a conspiracy claim alleges that two or more parties agreed to commit fraud, the plaintiff must also plead this act with specificity." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1065 (11th Cir. 2007). As a shorthand, the Eleventh Circuit has explained Rule 9(b) to require the plaintiff to "identify[] the who, what, when, where, and how of the fraud alleged." *Omnipol, A.S.*, 32 F.4th at 1307 (citation omitted); *see Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380–81 (11th Cir. 1997).

None of Lilly's claims survive either standard with regard to these Defendants.

**1. Lilly Fails To Plead An Underlying Common Law Fraud.**

Before turning to the pleading requirements of the conspiracy to commit fraud claim (Count II), it is important to note that "an actionable conspiracy requires an actionable underlying tort or wrong." *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1217 (11th Cir. 1999) (citation omitted). Even so, Lilly does not include Mr. Maynard Sr. or Mr. Maynard II as defendants to the common law fraud claim (Count I). FAC ¶ 255; Compl. ¶ 206. And if Lilly has not adequately pleaded the underlying tort, the related conspiracy claim must fail. *See Posner*, 178 F.3d at 1217 (citations omitted); *see, e.g., Doe v. Ibanera, LLC*, No. 1:25-cv-24118, 2026 WL 2089224, at *12 (S.D. Fla. May 21, 2026); *Apex Toxicology, LLC v. United Healthcare Servs., Inc.*, No. 17-61840-CIV, 2020 WL 13551300, at *6 (S.D. Fla. Mar. 30, 2020) [hereinafter *Apex I*] (citation omitted).

Mr. Maynard Sr. and Mr. Maynard II join and incorporate by reference DrugPlace's arguments in its renewed motion regarding why Lilly's common law fraud claim must fail. D.E. 158. To avoid rehashing those arguments in full, this motion highlights only two arguments from that motion. First, Lilly does not allege first-party reliance regarding the rebates from 2020 to 2025 since PBMs—not Defendants—submitted the rebates. *See* FAC ¶¶ 121–26; Compl. ¶ 99. Since "first-party reliance is an element of common-law fraud," that causes the claim to fail under Rule 12(b)(6). *Feng v. Walsh*, No. 19-24138-CIV, 2021 WL 8055449, at *10 (S.D. Fla. Dec. 21, 2021) (citation omitted). Second, Lilly consistently does not satisfy the who, what, when, where, and how as shown by the FAC's inability to identify which Defendants made certain statements as part of the alleged common law fraud, and "vaguely attribut[ing] the alleged fraudulent statements and omissions to all [ ] of the defendants simultaneously" will cause the FAC to trip over Rule 9(b). *Keegan v. Minahan*, No. 23-60501-CIV, 2023 WL 3884962, at *4 (S.D. Fla. June 7, 2023).

If the Court dismisses the common law fraud claim, the related conspiracy claim must fail.

**2. Lilly Fails To Meet Its Pleading Standard For Conspiracy Under Rule 12(b)(6).**

Even if the underlying fraud claim is adequately plead, the related conspiracy claim has Rule 12(b)(6) and Rule 9(b) problems of its own. "Under Florida law, a cause of action for civil conspiracy requires: (1) an agreement between two or more parties; (2) to perform an unlawful act; (3) the doing of some overt act in pursuance of the conspiracy, and (4) damage to plaintiff as a result of the acts done under the conspiracy." *Bray & Gillespie Mgmt.*, 527 F. Supp. 2d at 1370.

The Court needs to look no further than the first element—an agreement between two or more parties—to find that the FAC does not satisfy Rule 12(b)(6). No agreement involving Mr. Maynard Sr. or Mr. Maynard II with each other or with any Defendants is adequately alleged. The only two vague mentions of any agreement between Defendants lack details. Lilly first alleges that the individual Defendants "agreed to participate in and engaged in overt acts in pursuit of its objectives." FAC ¶ 212; Compl. ¶ 178. And Lilly mentions that Defendants "agreed together to defraud Lilly." FAC ¶ 262; Compl. ¶ 213. Lilly pleads no other details about these agreements, particularly with respect to Mr. Maynard Sr. or Mr. Maynard II. To be sure, the FAC mentions many agreements in detail, [13] but not among the Defendants.

Those kinds of conclusory allegations that an agreement existed among Defendants without any details are not adequate to satisfy Rule 12(b)(6). *Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1345 (S.D. Fla. 2018). And the Eleventh Circuit's instruction on that kind of pleading is clear, this Court should understand Lilly's broad statements "[a]lleging that the parties 'agreed' and 'acted in furtherance' of the conspiracy [as] restat[ing] the language of a Florida conspiracy claim," not adequately pleading the claim. *ECB USA*, 148 F.4th at 1347 (citing *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. Dist. Ct. App. 1997)). This Court should heed that instruction and find that Lilly has not alleged an agreement existed among the Defendants.

Even accepting Lilly's characterization arguendo, the intracorporate conspiracy doctrine prevents Lilly from succeeding on the conspiracy claim. That doctrine explains that "a corporation

---

[13] Those other agreements are between insurance plan beneficiaries and the insurance plans, FAC ¶ 69; Compl. ¶ 49, PBMs and drug manufacturers, FAC ¶ 72; Compl. ¶ 52, PBMs and their health plan clients, FAC ¶ 92; Compl. ¶ 55, Lilly and PBMs, FAC ¶ 81; Compl. ¶ 61, Lilly and DrugPlace, FAC ¶¶ 87–89, 247; Compl. ¶¶ 67–69, 198, Singer and Lilly, FAC ¶¶ 95, 101; Compl. ¶¶ 75, 81, physicians and Community Health, FAC ¶ 100; Compl. ¶ 80, Jarrod Shirly and South Pointe Wholesale, Inc., FAC ¶ 238; Compl. ¶ 189, TPE, DrugPlace, and Health Delegates, FAC ¶ 26.

cannot conspire with its employees, and its employees . . . cannot conspire among themselves." *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000). At first glance, that appears to cause an issue here as Defendants include several entities and a handful of individuals. But not so. An entity "cannot conspire with its . . . affiliates" since the "'acts of corporate agents are attributed to the corporation itself, thereby negating . . . the formation of a conspiracy.'" *Apex Toxicology, LLC v. United HealthCare Svcs., Inc.*, No. 17-61840-CIV, 2020 WL 13551299, at *7 (S.D. Fla. July 7, 2020) [hereinafter *Apex II*] (quoting *McAndrew*, 206 F.3d at 1036). Mr. Maynard Sr. and Mr. Maynard II are alleged to be DrugPlace Officers, meaning that affiliate relationship prevents the application of the conspiracy claim to them. FAC ¶ 213; *see* Compl. ¶ 179.

The third element—an overt act in pursuance of the conspiracy—is also not alleged as to Mr. Maynard Sr. or Mr. Maynard II since the FAC does not identify a single, individualized act by either defendant to further the alleged conspiracy. In turn, Lilly may argue that Mr. Maynard Sr. and Mr. Maynard II as "conspirator[s] need only know of the scheme and assist in it in some way to be held responsible." *Honig*, 339 F. Supp. 3d at 1345 (citation omitted). But Lilly does not even adequately allege the requisite knowledge or assistance as "allegations that the co-conspirators were 'engaged in the same scheme,' alone, are insufficient to state a claim for civil conspiracy." *Id.* (citation omitted). When understood in light of the Eleventh Circuit's instruction in *ECB USA*, Lilly's conspiracy claim against Mr. Maynard Sr. and Mr. Maynard II should be dismissed for simply reciting the elements in a nonspecific way. 148 F.4th at 1347.

An Article III standing issue for a lack of traceability also exists regarding Mr. Maynard Sr. and Mr. Maynard II, which would apply to the four claims asserted against them. Lilly "must at least demonstrate *factual* causation between [its] injuries and the defendant's misconduct." *Walters v. Fast AC, LLC*, 60 F.4th 642, 650 (11th Cir. 2023). Here, Lilly's limited, relevant allegations are that Mr. Maynard Sr. promoted Community Health in 2008, 12 years before the alleged conspiracy, and traveled to Florida to speak about community initiatives, FAC ¶¶ 35, 55–56, and that Mr. Maynard II served on the Community Health board, filed trademarks, and vacationed in Florida, FAC ¶¶ 36, 57. But the fraudulent scheme was "DrugPlace submit[ting], through intermediaries, fraudulent rebate claims to Lilly for hundreds of millions of dollars." FAC ¶ 117; Compl. ¶ 95. Promoting Community Health, serving on Community Health's board, filing trademarks, or limited trips to Florida for limited purposes in no way relates to the creation or submission of fraudulent rebates. So that alleged conduct is not factually connected to any of

Lilly's alleged harm. And Lilly underscores its potential "fail[ure] to establish traceability when [Lilly] complain[s] of actions performed by an independent third-party rather than the named defendants," *Berrocal v. Att'y Gen. of U.S.*, 136 F.4th 1043, 1050 (11th Cir. 2025), since "the PBMs"—not the Defendants—submitted [rebate claims] to Lilly." FAC ¶ 123; *see* Compl. ¶ 8.

Any of these arguments—the first element not being adequately pleaded, the application of the intracorporate doctrine, or the third element not being adequately pleaded—cause Lilly's allegations to run afoul of Rule 12(b)(6) and possibly demonstrate a lack of standing.

**3. Lilly Fails To Meet Its Pleading Standard For Conspiracy Under Rule 9(b).**

To adhere to Rule 9(b), a complaint should not "obscure[ ] the roles the separate [ ] defendants individually played in the alleged fraud, [or] fail[ ] to provide them fair notice of their alleged misconduct as required by Rule 9(b)." *Prof. LED Lighting, Ltd. v. Aadyn Tech., LLC*, 88 F. Supp. 3d 1356, 1374 (S.D. Fla. 2015). Yet that is exactly what Lilly did in its FAC. Overwhelmingly, the FAC groups the Defendants—for example, DrugPlace Entities and DrugPlace Officers—making it difficult to understand what actions the FAC attributes to any single Defendant.[14] *Cordova v. Lehman Bros.*, 526 F. Supp. 2d 1305, 1313 (S.D. Fla. 2007) *aff'd in rel. part sub nom. Puterman v. Lehman Bros.*, 332 F. App'x 549 (11th Cir. 2009). It is important to analyze the few individualized paragraphs about these defendants.

The FAC limits Mr. Maynard Sr.'s involvement to "lead[ing] and promot[ing] the Community Health Initiative in 2008." FAC ¶ 35; *see* Compl. ¶ 32. The FAC never identifies who Mr. Maynard Sr. promoted Community Health to, what he said about Community Health to those people, where those communications specifically occurred, how he made those promotions, or how any of those actions in 2008 connect to the alleged conspiracy in 2020 to 2025. *See Omnipol, A.S.*, 32 F.4th at 1307. That cannot be enough to survive Rule 9(b) scrutiny. Similarly, it does not explain how he participated in, conspired to participate in, or benefited from the scheme *in his role at the Church*. *Id.* The Church of God in Christ is never alleged to have directed, conspired, or benefited from the alleged scheme, so it would be impossible for him to have done so in his role

[14] For many of the same reasons, the FAC should be dismissed for shotgun pleading since it committed "the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions," which mean the pleading "fail[s] to one degree or another . . . to give the defendants adequate notice of the claims against them." *Weiland*, 792 F.3d at 1323; *see Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001).

at the Church. And the lack of pleading that he acted in an unlawful way also demonstrates Lilly's failure to adequately plead under Rule 9(b) as the conspiracy claim requires an "unlawful act or [ ] a lawful act by unlawful means" for the second element of the claim, *Tippens v. Round Island Plantation LLC*, No. 09-CV-14036, 2009 WL 2365347, at *4 (S.D. Fla. July 31, 2009).

And Mr. Maynard II's limited involvement included supposedly serving on the Community Health board and filing trademark registrations. FAC ¶ 35; Compl. ¶ 33. For the same reasons as Mr. Maynard Sr., Rule 9(b) is not satisfied as to Mr. Maynard II. Even if accepted as true, serving on a board or providing limited legal representation almost 20 years before the alleged conspiracy does not explain the who, what, when, where, or how of the alleged conspiracy nor does it demonstrate an unlawful act or a lawful act by unlawful means. *Omnipol, A.S.*, 32 F.4th at 1307. The baselessness of the alleged connection between Mr. Maynard II and the conspiracy is clearly illustrated by Lilly's failure to include any other Community Health board member as a Defendant or any other outside counsel to any DrugPlace Entity as a Defendant.

The trips to Florida by these Defendants fare no better. *See* FAC ¶¶ 56–58. Lilly never alleges any of those trips relate to the alleged fraud in the first instance, demonstrating that it cannot describe the "how" charity golf tournaments or trips to a favorite hotel contributed to the alleged conspiracy. The alleged meetings in Tennessee with these Defendants, Singer, and Leight equally fall short of the Rule 9(b) standard as Lilly never states when the meetings occurred, what was discussed, or how the meetings related to the alleged conspiracy. *See* FAC ¶¶ 222–23.

Likewise, the allegation that either Mr. Maynard Sr. or Mr. Maynard II "created the guise of a massive 'prescription cost share program'" fails to satisfy Rule 9(b), in addition to violating the corporate shield doctrine. FAC ¶¶ 222–23. Lilly changes course throughout the FAC about who created this "guise." Lilly also does not plead when these Defendants supposedly created the program, where creating the program took place, or how the guise was communicated between Defendants. Put simply, this allegation appears to be an attempt to skirt the corporate shield doctrine to establish personal jurisdiction, while still not satisfying Rule 9(b).

The broad pleadings about a group of Defendants also fall short. For example, the claim that the Defendants, "create[ed] and perpetuat[ed] a sham health plan front" is overly vague. FAC ¶ 264; Compl. ¶ 215. The FAC provides no detail of the agreement to create such a health plan front, e.g. "[t]he Complaint contains no date when an agreement took place" to perpetuate those alleged acts meaning that there is no "when" to satisfy Rule 9(b). *Solomon v. Blue Cross & Blue*

*Shield Ass'n*, 574 F. Supp. 2d 1288, 1292 (S.D. Fla. 2008) (Moreno, J.).

The civil conspiracy claim falls flat in light of both Rule 12(b)(6) and Rule 9(b) challenges, and Lilly's grouping of Defendants throughout the FAC to skirt the pleading standards should not be rewarded. The Court should dismiss Count II as to Mr. Maynard Sr. and Mr. Maynard II.

### C. <u>Lilly's Claims Of Unjust Enrichment and Money Had And Received Must Be Dismissed.</u>

The claims for unjust enrichment (Count IV) and money had and received (Count V) are understood as claims under the same theory of recovery with identical elements.[15] *Kelly v. Palmer, Reifler, & Assoc., P.A.*, 681 F. Supp. 2d 1356, 1384 (S.D. Fla. 2010) (Moreno, J.).

These claims have three elements: "(1) plaintiff conferred a [direct] benefit on the defendant; (2) defendant voluntarily accepted and retained the benefit; and (3) it would be inequitable for defendant to retain the benefit without paying the value of the benefit to plaintiff." *Catamaran Health Solutions*, 687 F. App'x at 830. Rule 12(b)(6) requires Lilly to adequately plead each element for these claims to survive a motion to dismiss, and Lilly falls short on each element here. In fact, Lilly does not allege a direct benefit for any Defendant, let alone these Defendants, since "Lilly [paid] PBMs," not the Defendants. FAC ¶ 275; Compl. ¶ 226.

Even so, at no time does the FAC allege Mr. Maynard Sr. or Mr. Maynard II received, accepted, or retained any benefit directly from Lilly, only that "[t]he proceeds of Defendants' fraud flow to the DrugPlace Officers and others." FAC ¶ 213; *see* Compl. ¶ 179. Even if true—which it is not—that fraudulently obtained funds eventually flowed to these Defendants from any of the DrugPlace Entities, that is not direct as a payment to an affiliate does not create directness. *Catamaran Health Solutions*, 687 F. App'x at 830; *see also Kopel v. Kopel*, 117 So. 3d 1147, 1152–53 (Fla. Dist. Ct. App. 2013), *rev'd on other grounds*, 229 So. 3d 812 (Fla. 2017).

But any funds flowing to Mr. Maynard Sr. or Mr. Maynard II would be even more removed than these examples as Lilly never alleges that they are owners or officers of any DrugPlace Entity or any PBM. Instead, Lilly simply asserts that these Defendants "benefited from the fraudulent

---

[15] These claims, along with the civil theft claim, are shotgun pleading by Lilly. In the FAC, "each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland*, 792 F.3d at 1322. The FAC "indiscriminately incorporates and repeats [298] numbered paragraphs of factual allegations—spanning [85] pages—into [six] counts." *Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021). Defendants join and incorporate by reference DrugPlace's shotgun-pleading arguments.

scheme." FAC ¶¶ 35–36; Compl. ¶¶ 32–33. Lilly admits that it "paid rebates to Ascent or Emisar," not the Church, Community Health, or these Defendants. FAC ¶ 276. Thus, the flow of alleged fraudulent funds must gone from Lilly to Ascent/Emisar to Health Delegates to DrugPlace to Community Health or the Church and then to these Defendants. FAC ¶ 276. Lilly claims that it can even trace the transfer of rebate funds away from DrugPlace to the Relief Defendants, but Lilly makes no such traceability argument with regard to Mr. Maynard Sr. or Mr. Maynard II. FAC ¶ 281; *see Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1102 (11th Cir. 2021); *see also GVB MD v. Aetna Health Inc.*, No. 19-22357-CIV, 2019 WL 6130825, at *6 (S.D. Fla. Nov. 19, 2019) (Moreno, J.). This alone should lead the Court to dismiss these claims because the first and second elements of the claims are not satisfied.

Even more, "[u]njust enrichment is an equitable doctrine"—a defendant retaining a benefit would be *inequitable* without paying for it. *Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1235 (S.D. Fla. 2007). If a plaintiff "do[es] not plead that [it] lack[s] an adequate legal remedy," it does not "properly state a claim for unjust enrichment." *Id.* (citation omitted). That happens here.

While true that Lilly states that the harm it faces is "impossible to adequately remedy by money damages," that is not alleged specifically to these claims. FAC ¶ 245; Compl. ¶ 196. Further, regarding Mr. Maynard Sr.'s and Mr. Maynard II's conduct, Lilly "fails to allege . . . that no adequate remedy at law is available" to address any harm caused by them. *Steel Media Grp. v. Lewis*, No. 22-cv-21780, 2023 WL 1413043, at *10 (S.D. Fla. Jan. 6, 2023), *report and recommendation adopted*, No. 22-cv-21780, 2023 WL 1332832 (S.D. Fla. Jan. 31, 2023). That pleading failure acts as another independent basis for dismissal.

Lastly, because the claims "'sound in fraud,' they are also subject to Rule 9(b)'s requirements." *Omnipol, A.S.*, 32 F.4th at 1307 n.11 (citation omitted). The heightened pleading requirement of Rule 9(b) applies to "fraud-based claims," like unjust enrichment, money had and received, and civil theft, to ensure the FAC includes the necessary particularity of the alleged fraudulent activity. *Bauser v. Porsche Cars N. Am., Inc.*, No. 1:23-CV-01054, 2024 WL 2406884, at *12 (N.D. Ga. Mar. 25, 2024); *see also Abraham v. Am. Home Mortg. Serv.*, 947 F. Supp. 2d 222, 230 (E.D.N.Y. 2013) (collecting cases). As detailed above, the allegations involving Mr. Maynard Sr. and Mr. Maynard II consistently fall short of that heightened standard.

Both claims of unjust enrichment and money had and received fall short for these Defendants under Rule 12(b)(6) and Rule 9(b). Accordingly, the Court should dismiss both counts.

### D. Lilly's Claim Of Civil Theft Must Be Dismissed.

In the FAC, Lilly raises a civil theft claim against nearly all of the Defendants under Florida Statute § 772.11. FAC ¶¶ 289–98. A civil theft claim "must allege the defendant (1) knowingly (2) obtained or used, or endeavored to obtain or use, the plaintiff's property with (3) 'felonious intent' (4) . . . to (a) deprive the plaintiff of the right or benefit of the property, or (b) appropriate the property to the defendant's own use or the use of another." *Omnipol, A.S.*, 32 F.4th at 1307–08. And "just as with the fraud claim," it must "state a claim under Rule 9(b)." *Id.* at 1308.

Most glaringly, Lilly never claims that Mr. Maynard Sr. or Mr. Maynard II "obtained or used, or endeavored to obtain or use" Lilly's property beyond Lilly reciting that element regarding all Defendants, besides one, in its claim. *Id.* at 1308; *see* FAC ¶¶ 293–95. While alleged that DrugPlace received funds and then used the Relief Defendants to hide those funds, Lilly directs no such allegation at these Defendants. *See* FAC ¶¶ 202–204, 216–217, 276, 293; *see Omnipol, a.S. v. Worrell*, 421 F. Supp. 3d 1321 (M.D. Fla. 2019), *aff'd sub nom. Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298 (11th Cir. 2022).

At the same time, Lilly never alleges that Mr. Maynard Sr. or Mr. Maynard II had the prerequisite "knowingly" intent to obtain or use Lilly's property. Fla. Stat. § 812.014. A defendant's "knowing" intent may be shown by accepting money with no intent to deliver the purchased item, *Rosenthal Toyota, Inc. v. Thorpe*, 824 F.2d 897, 902 (11th Cir. 1987), or purchasing obviously stolen information, *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009). Those examples are inapposite of the alleged facts. Lilly never alleges these Defendants received *anything* from Lilly, let alone *knowingly*. *Healy v. Suntrust Service Corp*., 569 So. 2d 458, 460 (Fla. 5th DCA 1990); *see Omnipol, a.S.*, 421 F. Supp. 3d at 1346–47.

By failing to adequately plead multiple elements, the civil theft claim should be dismissed under Rule 12(b)(6) in addition to falling well short of the Rule 9(b) standard, leading to dismissal.

## IV. CONCLUSION

For the foregoing reasons, Lilly's claims against both Mr. Maynard Sr. and Mr. Maynard II do not satisfy Rules 12(b)(2), 12(b)(6), and Rule 9(b).[16] This Court should therefore dismiss Lilly's claims against Mr. Maynard Sr. and Mr. Maynard II with prejudice, or in the alternative, without prejudice requiring Lilly to amend its FAC to remedy its pleading shortfalls.

---

[16] The shotgun-pleading doctrine and the potential lack of Article III standing provide other alternative grounds for the dismissal of these Defendants.

Dated: September 11, 2026

Respectfully submitted,

By: /s/ *Wifredo Ferrer*
Wifredo A. Ferrer, FL Bar # 887005
Holland & Knight LLP
701 Brickell Ave.
Suite 3000
Miami, Florida 33131
Tel: (305) 789-7780
Fax: (305) 789-7799
Email: Wifredo.Ferrer@hklaw.com

Henry C. Leventis, TN BPR # 038306
(Admitted *Pro Hac Vice*)
Symphony Place
150 Third Avenue South
Suite 2800
Nashville, Tennessee 37201
Tel: (615) 850-6110
Fax: (615) 244-6804
Email: henry.leventis@hklaw.com

Andrew F. Solinger, TN BPR # 036943
(Admitted *Pro Hac Vice*)
Symphony Place
150 Third Avenue South
Suite 2800
Nashville, Tennessee 37201
Tel: (615) 850-8062
Fax: (615) 244-6804
Email: andrew.solinger@hklaw.com

Ross C. Hildabrand, TN BPR # 040269
(Admitted *Pro Hac Vice*)
Symphony Place
150 Third Avenue South
Suite 2800
Nashville, Tennessee 37201
Tel: (615) 850-6069
Fax: (615) 244-6804
Email: ross.hildabrand@hklaw.com

*Attorneys for Defendants Jerry Maynard Sr. & Jerry Maynard II*