**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

ELI LILLY AND COMPANY,

Plaintiff,

v.

DRUGPLACE, INC. (FL), et al.,

Defendants.

Case No. 1:26-CV-23516-FAM

**DEFENDANT EDGAR ENRIQUEZ'S MOTION TO DISMISS**
**PLAINTIFF'S FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ..... 1
RELEVANT ALLEGATIONS ..... 2
MEMORANDUM OF LAW ..... 2
I. ELC Again Fails to Establish Personal Jurisdiction Over Mr. Enriquez ..... 2
A. ELC Fails to Allege Conduct Subject to Florida's Long-Arm Statute ..... 3
B. The Exercise of Personal Jurisdiction over Mr. Enriquez Would Violate the Due Process Clause ..... 9
II. ELC Fails to Plead a Conspiracy to Commit Fraud ..... 10
III. ELC Fails to State a Claim for Unjust Enrichment and Money Had and Received ..... 16
IV. ELC's Civil Theft Claim Fails ..... 18
V. ELC's FAC Remains an Impermissible Shotgun Pleading ..... 19
CONCLUSION ..... 20

**TABLE OF AUTHORITIES**


**Cases** **Page(s)**

*American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010) ........................11, 13, 14

*American United Life Ins. Co. v. Martinez*, 480 F.3d 1043 (11th Cir. 2007)..........................10, 12

*Ames v. Provident Life and Acc. Ins. Co.*, 942 F. Supp. 551 (S.D. Fla. 1994) .............................18

*Apex Toxicology, LLC v. United HealthCare Svcs., Inc.*, No. 17-61840-CIV, 2020 WL 13551299 (S.D. Fla. July 7, 2020)........................................................................... *passim*

*Bristol-Myers Squibb Co. v. Superior court of California, San Francisco Cnty*, 582 U.S. 255, 264 (2017) .........................................................................................6

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364 (11th Cir. 1997) ................10, 19

*Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990) ..........................................................................3

*Condor, S.A. v. Plurinational State of Bolivia*, 352 So. 3d 921 (Fla. 3d DCA 022) .......................8

*Denney v. City of Albany*, 247 F.3d 1172 (11th Cir. 2001) ....................................................14, 15

*DeRossett v. Southeast Toyota Dist. Inc.*, No. 17-CV-60415, 2017 WL 7344406 (S.D. Fla. Aug. 18, 2017)...........................................................................................4, 7

*Doe v. Ibanera, LLC*, No. 1:25-cv-24118, 2026 WL 2089224 (S.D. Fla. May 21, 2026) ..........................................................................................................7, 11

*ECB USA, Inc. v. Savencia Cheese USA, LLC*, 148 F.4th 1332 (11th Cir. 2025)............11, 12, 13

*Estes v. Rodin*, 259 So. 3d 183 (Fla. 3d DCA 2018) ...................................................................10

*Extraordinary Title Services, LLC v. Florida Power & Light Co.*, 1 So. 3d 400 (Fla. 3d DCA 2009) ..........................................................................................16

*Feng v. Walsh*, No. 19-24138-CIV, 2021 WL 8055449 (S.D. Fla. Dec. 21, 2021)................11, 12

*Graham v. Cypress Capital Group Inc.*, No. 10-81269-CIV, 2011 WL 13227744 (S.D. Fla. July 12, 2011)........................................................................................14, 15

*Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348 (S.D. Fla. 2012) ..............................................17

*GVB MD v. Aetna Health Inc.*, No. 19-22357-CIV, 2019 WL 6130825 (S.D. Fla. Nov. 19, 2019).......................................17

*Hard Candy, LLC v. Hard Candy Fitness, LLC*, 106 F. Supp. 3d 1231 (S.D. Fla. 2015) ....................4, 7

*Harkins v. Knipp*, 2025 WL 2217721 (M.D. Fla. Aug. 5, 2025) ....................6

*Headley v. Rosenblatt*, No. 24-24613, 2025 WL 2623834 (S.D. Fla. Sept. 10, 2025) (J. Moreno) ....................3

*Healy v. Suntrust Service Corp.*, 569 So. 2d 458 (Fla. 5th DCA 1990) ....................18

*Hinkle v. Continental Motors, Inc.*, 268 F. Supp. 3d 1312 (M.D. Fla. 2017) ....................7, 9

*Keegan v. Minahan*, No. 23-60501-Civ, 2023 WL 3884962 (S.D. Fla. June 7, 2023) ....................11

*Kelly v. Palmer, Reifler, & Assoc., P.A.*, 681 F. Supp. 2d 1356 (S.D. Fla. 2010) (J. Moreno) ....................16

*Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339 (11th Cir. 2013) ....................3

*Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084 (11th Cir. 2021) ....................17

*Mirage Yacht, Inc. v. A 2013 Marquis Yachts Recreational Vessel*, No. 24-21095-CIV, 2025 WL 1047148 (S.D. Fla. Feb. 12, 2025) ....................11

*N. Am. Sugar Indus., Inc. v. Xinjiang Goldwind Sci. & Tech. Co.*, 124 F.4th 1322, 1339 (11th Cir. 2025) ....................7

*Omnipol, a.S. v Worrell*, 421 F. Supp. 3d 1321 (M.D. Fla. 2019) ....................18, 19

*Oueiss v. Saud*, No. 1:20-cv-25022, 2022 WL 1311114 (S.D. Fla. Mar. 29, 2022) ....................8

*Oviedo v. Ramirez*, No. 21-cv-23750, 2022 WL 1641865 (S.D. Fla. May 23, 2022) ....................3, 4, 5, 9

*Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209 (11th Cir. 1999) ....................7, 8, 9, 11

*Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228 (S.D. Fla. 2007) ....................16

*PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*,
598 F.3d 802 (11th Cir. 2010) ....................................................................................9

*Rensin v. State*,
18 So. 3d 572 (Fla. Dist. Ct. App. 2009) ......................................................................8

*Sevi v. Israel Disc. Bank of New York*,
No. 13-21922-CIV, 2014 WL 12861833 (S.D. Fla. Nov. 24, 2014) ..............................11

*State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*,
278 F. Supp. 3d 1307 (S.D. Fla. 2017) ........................................................................12

*Steel Media Grp. v. Lewis*,
No. 22-cv-21780, 2023 WL 1413043 (S.D. Fla. Jan. 6, 2023), *R. & R. adopted*, No. 22-cv-21780, 2023 WL 1332832 (S.D. Fla. Jan. 31, 2023) ........................16, 17

*In re Takata Airbag Products Liability Litigation*,
396 F. Supp. 3d 1101 (S.D. Fla. 2019) (J. Moreno) ....................................................20

*United Technologies Corp. v. Mazer*,
556 F.3d 1260 (11th Cir. 2009) ....................................................................................8

*Virgilio v. Ryland Group, Inc.*,
No. 608-CV-815, 2009 WL 320857 (M.D. Fla. Feb. 9, 2009) ......................................16

*W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*,
287 F. App'x 81 (11th Cir. 2008) ..................................................................................19

*Weiland v. Palm Beach County Sheriff's Office*,
792 F.3d 1313 (11th Cir. 2015) ..............................................................................19, 20

*Weisman v. Southern Wine & Spirits of America, Inc.*,
297 So.3d 646 (Fla. 4th DCA 2020) ......................................................................12, 14

*Ziemba v. Cascade International, Inc.*,
256 F.3d 1194 (11th Cir. 2001) ....................................................................................10

**Statutes**

Fla. Stat. § 812.014 ..........................................................................................................18

Fla. Stat. § 48.193(1)(a) ................................................................................................4, 7

Fla. Stat. § 772.11 .......................................................................................................18, 19

**Other Authorities**

Rule 9(b) ............................................................................................................... *passim*

Rule 12(b)(6)........................................................................................................................ *passim*

Tenn. Comp. R. & Regs. 1140-01-.08 ..............................................................................................14

# INTRODUCTION

Defendant Edgar Enriquez ("Mr. Enriquez") respectfully moves to dismiss the First Amended Complaint [ECF No. 142] ("First Amended Complaint" or "FAC") filed by Plaintiff Eli Lilly and Company ("ELC" or "Plaintiff"). This is the second time ELC has attempted—and failed—to state a viable claim against Mr. Enriquez. Despite having the benefit of the pleading deficiencies outlined in Mr. Enriquez's prior original Motion to Dismiss, and despite a host of additional third-party discovery, ELC's FAC suffers from the same fundamental deficiencies as its predecessor.

ELC's overarching theory is that a sprawling network of pharmacies, wholesalers, and affiliated entities—collectively referred to as "the DrugPlace Conspiracy"—submitted hundreds of thousands of false rebate claims to ELC through third-party intermediaries between 2020-2025, causing ELC, an Indiana corporation, to pay over $200 million in fraudulent rebates for Trulicity that was never actually dispensed to patients. FAC ¶¶ 240–243. Against this backdrop, the FAC asserts four counts against Mr. Enriquez: civil conspiracy to commit fraud (Count II), unjust enrichment (Count IV), money had and received (Count V), and civil theft (Count VI). FAC ¶¶ 113, 261, 274-280, 283-286, 289-298.

Yet the FAC does not allege that Mr. Enriquez personally committed any fraud, received any of ELC's money, or even knew that any purported rebate scheme existed. Instead, ELC relies on the same theory it advanced before—that Mr. Enriquez, as General Manager of Nakorn Wholesalers, LLC ("Nakorn"), managed warehouse operations and transferred medications from DrugPlace to Nakorn. ***That is precisely the conduct one would expect from the general manager of a licensed pharmaceutical wholesaler.*** It does not give rise to liability for conspiracy to commit fraud, equitable relief, or civil theft damages. ELC's amendments do not cure its pleading deficiencies; its newly cited deposition testimony confirms only that Mr. Enriquez performed routine operational logistics in Tennessee. FAC ¶¶ 225–226. ELC's inability to state a claim against Mr. Enriquez is underscored by its financial flows traced in the FAC that establish Mr. Enriquez did not receive **<u>any funds</u>**. *See* FAC ¶¶ 202–204, 216–217, 276.

The FAC should be dismissed with prejudice because: (I) the Court lacks personal jurisdiction over Mr. Enriquez under both Florida's long-arm statute and the Due Process Clause; (II) ELC fails to plead a conspiracy to commit fraud under Rules 9(b) and 12(b)(6); (III) ELC fails

to state a claim for unjust enrichment or money had and received; (IV) ELC's civil theft claim fails; and (V) the FAC remains an impermissible shotgun pleading.

## RELEVANT ALLEGATIONS

ELC alleges that Mr. Enriquez is a citizen of Tennessee who previously resided in Florida. FAC ¶ 38. He is alleged to be the General Manager of Tennessee-based Nakorn, one of the "DrugPlace Entities." *Id.* The FAC's jurisdictional allegations as to Mr. Enriquez are set forth exclusively in paragraph 60, which alleges that Mr. Enriquez "previously worked for DrugPlace" in Florida, was the contact person for the irrelevant "Florida-registered Community Health Initiative," "previously resided in Miami," owned "multiple properties in Miami-Dade County" from "1994 to 2022", and is "believed" to be registered to vote in Miami. FAC ¶ 60.

The FAC's substantive allegations concerning Mr. Enriquez's role are limited to two paragraphs describing routine warehouse logistics duties in Tennessee: transferring medicine between DrugPlace Tennessee and Nakorn, driving delivery vans, and supervising wholesale employees. FAC ¶¶ 225-226. Critically, the FAC's extensive financial tracing—spanning dozens of paragraphs and identifying specific dollar amounts, bank accounts, and recipients—***does not trace a single dollar of ELC's rebate payments to Mr. Enriquez***. FAC ¶¶ 202-204, 216-17, 276.

As to the conspiracy, the FAC alleges in paragraph 264 that "the DrugPlace Defendants' scheme depended upon the participation of all Defendants," and places Mr. Enriquez in a category of individuals who allegedly participated in "knowingly diverting Lilly's medications that DrugPlace and Galaxy purported to dispense to patients to the secondary market for re-sale." FAC ¶ 264(b). The FAC also includes boilerplate allegations that "[e]ach Defendant is indispensable to the DrugPlace Conspiracy's fraudulent rebate scheme" and that "[e]ach individual Defendant is or has been an officer, supervisor, or employee at one or more DrugPlace Entities". FAC ¶¶ 205, 212.

## MEMORANDUM OF LAW

### I. ELC Again Fails to Establish Personal Jurisdiction Over Mr. Enriquez

ELC's First Amended Complaint fails to establish either general or specific personal jurisdiction over Mr. Enriquez, a citizen and resident of Tennessee who has allegedly acted only in Tennessee with no resulting harm materializing in Florida. Despite amending its complaint with

the benefit of various third-party discovery[1], ELC has not alleged a single new Florida contact arising from the conduct at issue in this litigation related to Mr. Enriquez.

"A plaintiff seeking to establish personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (cleaned up). "On a motion to dismiss for lack of personal jurisdiction, where the district court does not conduct an evidentiary hearing, 'the plaintiff must establish a prima facie case of personal jurisdiction over the nonresident defendant.'" *Headley v. Rosenblatt*, No. 24-24613, 2025 WL 2623834, at *1 (S.D. Fla. Sept. 10, 2025) (J. Moreno) (citing *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990)).

"When a defendant challenges personal jurisdiction by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Headley*, 2025 WL 2623834, at * 1. "If the defendant makes a sufficient showing of the inapplicability of the long-arm statute, the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof and not merely reiterate the factual allegations in the complaint." *Oviedo v. Ramirez*, No. 21-cv-23750, 2022 WL 1641865, at *3 (S.D. Fla. May 23, 2022) (holding plaintiff failed to allege personal jurisdiction arising out of defendants' conduct in Florida) (citation omitted). Applying these principles, the court must engage in a two-part analysis. First, "the court must determine whether the applicable state statute governing personal jurisdiction is satisfied." *Oviedo*, 2022 WL 1641865, at *4. Second, if "the requirements of the long-arm statute are satisfied, under either general jurisdiction or specific jurisdiction, then the court must also consider the federal Due Process Clause." *Id.*

### A. ELC Fails to Allege Conduct Subject to Florida's Long-Arm Statute

ELC has again failed to establish personal jurisdiction as to Mr. Enriquez under Florida's long-arm statute for several reasons. Florida's long-arm statute provides "nine statutorily enumerated categories" which "confers jurisdiction over a non-resident defendant if the claim

[1] *See Defendants' Jerry Maynard Sr., Jerry Maynard II, and Edgar Enriquez, Response in Opposition to Plaintiff's Cross-Motion for Partial Reconsideration of the Court's Stay Order*, at 4-6 [ECF No. 137] (detailing ELC's assertion that discovery has provided ELC with "further proof" and that "even if additional factual allegations were needed, [ELC] could easily provide them.").

asserted against the defendant arises from the defendant's forum-related contacts."[2] *Hard Candy, LLC v. Hard Candy Fitness, LLC*, 106 F. Supp. 3d 1231, 1239 (S.D. Fla. 2015). As relevant here, "a non-resident defendant commits a tortious act within Florida ***so long as the act causes injury within Florida*** – even if the defendant committed the act outside the state." *Id.* (emphasis added); *see also* Fla. Stat. § 48.193(1)(a)(2).

*1. ELC Fails to Allege Relevant Florida Contact*

*First*, ELC grounds its personal jurisdiction allegations against Mr. Enriquez based on the "tortious act" category of Florida's long-arm statute. FAC ¶ 61. But ELC alleges no facts as to Mr. Enriquez's conduct in the rebate scheme, much less conduct in, or directed at, Florida. The only specific conduct ELC alleges is between *Nakorn and other purported conspirators outside of Florida* – not actions by Mr. Enriquez individually. FAC ¶ 188-192; *see also DeRossett v. Southeast Toyota Dist. Inc.*, No. 17-CV-60415, 2017 WL 7344406, at *3 (S.D. Fla. Aug. 18, 2017) ("**Unless the agents transact business on their own account and not on behalf of the corporation, the agents are not engaged in business so as to sustain an application of the long-statute to them as individuals.**") (citation omitted) (emphasis added).

To be sure, the only *facts* ELC alleges against Mr. Enriquez individually is that Mr. Enriquez:

| Para. | Allegation |
|---|---|
| ¶¶23, 225 | Was "listed as the contact on Nakorn's Tennessee Department of Health facility license." |
| ¶38 | Is a "Tennessee citizen domiciled in Brentwood, Tennessee." |
| ¶38 | Was Nakorn's "General Manager" who "in that capacity, signed inspection reports conducted by the Tennessee Department of Health Board of Pharmacy." |
| ¶38 | Is "listed as a contact for Community Health and other entities that share DrugPlace's mailing address, and is affiliated with Leight, Singer, and Smith." |
| ¶60 | "previously worked for DrugPlace in Florida and purposefully transacted business in Florida through his communications with and activities on behalf of the Florida-based entities and individuals. He is also the contact person for the Florida-registered Community Health Initiative." |

[2] ELC does not allege general jurisdiction exists as to Mr. Enriquez. Federal courts "must adhere to the statutory constructions offered by the Florida Supreme Court and Florida's District Court of Appeals" when evaluating the reach of "Florida's long-arm statute". *Oviedo*, 2022 WL 1641865, at *4 (citing *Louis Vuitton*, 736 F.3d at 1352).

| | |
|---|---|
| ¶60 | "previously resided in Miami, owned multiple properties in Miami-Dade County from 1994-2022, and is believed to be registered to vote in Miami." |
| ¶225 | "Recruited at least one employee to work at the DrugPlace [Tennessee] pharmacy and was described to be the 'go-to' person for the wholesale business. According to Ms. Renfro [a DrugPlace Tennessee pharmacist], Enriquez was responsible for [ordinary logistical transportation between DrugPlace Tennessee and Nakorn] (full quote redacted as confidential). |
| ¶226 | According to Ms. Supko [a DrugPlace Tennessee pharmacists], Mr. Enriquez "supervised all the wholesale employees at the Nakorn [Tennessee] warehouse. He also frequently communicated and coordinated with Supko regarding her responsibilities as pharmacist-in-charge." |

Despite having had the opportunity to conduct discovery and amend its pleading, ELC has not identified a single forum contact that relates to the alleged fraud scheme at issue in this case. Every alleged contact is historical and bears no connection to the claims:

**Previously worked for DrugPlace in Florida.** The FAC does not allege when Mr. Enriquez worked in Florida, for how long, or what role he held. Nor does the FAC allege that Mr. Enriquez performed any work in Florida in connection with the conduct giving rise to ELC's claims. The FAC elsewhere alleges that Mr. Enriquez is the General Manager of Nakorn—a Tennessee entity—and that all of the relevant conduct occurred in Tennessee. FAC ¶¶ 38, 225–226. Indeed, the deposition testimony cited in the FAC places Enriquez's activities squarely in Tennessee: transferring medication between DrugPlace's Tennessee facility and the Nakorn warehouse and driving vans to deliver medications after they were purchased. FAC ¶ 225. Indeed, Mr. Enriquez's attached Declaration details the fact that he has not lived in Florida during the relevant period, has not conducted any business on behalf of Nakorn or individually in Florida related to the rebate scheme, and has only traveled to Florida approximately one time per year to visit his mother for her birthday. *See* **Exhibit 1** at ¶¶ 3-6; *see also Oviedo*, 2022 WL 1641865, at *3 ("If the defendant makes a sufficient showing of the inapplicability of the long-arm statute, the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint.").

**Contact for Community Health Initiative.** ELC alleges Community Health Initiative Inc. ("Community Health") is a Tennessee corporation with its principal place of business in Tennessee. FAC ¶ 20. Without any factual support, ELC alleges that Mr. Enriquez was also a "contact person for the Florida-registered Community Health Initiative." FAC ¶ 60. Notably, there is no Florida-registered "Community Health Initiative" associated with Mr. Enriquez. Corporate

records from the Florida Department of State reveal five named entities with variations of "Community Health Initiative", none of which are associated with Mr. Enriquez. *See* **Exhibit 2-6**; *see also* Request for Judicial Notice [ECF No. 164].

But even if there was a Florida-registered "Community Health Initiative", ELC's alleged rebate scheme stems from Community Health's purported *Tennessee* conduct, not the conduct of some other unidentified entity in Florida. *See* FAC ¶ 151-152, 155; *see also Bristol-Myers Squibb Co. v. Superior court of California, San Francisco Cnty*, 582 U.S. 255, 264 (2017) (noting specific jurisdictions requires "an affiliation between the forum and the underlying controversy, principally, an activity or occurrence that takes place in the forum State and is therefore subject to the State's regulation. When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's **unconnected activities** in the State.") (internal citations omitted) (emphasis added).

**<u>Previously resided and owned properties in Miami-Dade County from 1994 to 2022.</u>**

The Supreme Court has consistently held that jurisdiction must arise from the defendant's forum-related activities that gave rise to the plaintiff's claims—not from unrelated past contacts. *See Bristol-Myers Squibb Co.*, 582 U.S. at 264 ("When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's **unconnected activities** in the State.") (emphasis added). The FAC confirms that Mr. Enriquez is now a citizen of Tennessee. FAC ¶ 38. That he once lived in Miami in the early 2000s and once owned property there has no bearing on whether this Court can exercise jurisdiction over claims arising from his management of a Tennessee warehouse between 2020 and 2025. *See* **Exhibit 1** at ¶ 4 (detailing sale of Florida rental properties five to seven years ago).

**<u>Registration to vote in Miami</u>.** The use of "believed" underscores the speculative nature of this allegation. ELC does not even allege this as a fact. But even if true, voter registration—without more—does not establish the *minimum contacts* necessary for specific jurisdiction, especially when the claims have nothing to do with voting or political activity in Florida. *See Bristol-Myers Squibb Co.*, 582 U.S. at 264; *see also Harkins v. Knipp*, 2025 WL 2217721, at *3 (M.D. Fla. Aug. 5, 2025) (holding bare reference to alleged voter registration was insufficient to carry burden of establishing domicile for diversity jurisdiction purposes). In any event, ELC's allegation is expressly rebutted by Mr. Enriquez's Declaration. *See* **Exhibit 1** at ¶ 5.

<u>*2. ELC Fails to Allege A Threshold Florida Injury*</u>

*Second*, ELC has not alleged any injury *in Florida* as a result of the purported rebate scheme. *See Hard Candy, LLC*, 106 F. Supp. 3d at 1239. ELC alleges between "2020 and 2024, DrugPlace and the Galaxy Operation together caused [ELC] to pay ***over $200 million*** in rebates, corresponding to purported prescriptions for hundreds of thousands of boxes of Trulicity." FAC ¶ 240. (emphasis added). ELC's purported injury was not suffered in Florida but rather in Indiana – where ELC has alleged it is incorporated and principally operates. FAC ¶ 13; *see also Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1219 (11th Cir. 1999) (affirming dismissal of claims based on lack of personal jurisdiction where plaintiff alleged injury to business incorporated in Bermuda with its principal place of business in Bermuda or Pennsylvania and where plaintiff did not allege injury to business interest in Florida); *Hinkle v. Continental Motors, Inc.*, 268 F. Supp. 3d 1312, 1322-1323 (M.D. Fla. 2017) ("It is a well-established principle that [under Section 48.193(1)(a), Florida Statute] the phrase 'arising from' **requires that the place of injury be within Florida**.") (emphasis added) (citation omitted); *DeRossett*, 2017 WL 7344406, at *3 n. 5 (noting the "committing tortious act" subsection did not apply because "Plaintiff was a resident of Georgia at all relevant times, and therefore, any injury to Plaintiff occurred in Georgia.").

<u>*3. ELC's Co-Conspirator Jurisdiction Theory Continues to Fail*</u>

*Third*, ELC's attempt to establish personal jurisdiction over Mr. Enriquez under a co-conspirator theory continues to fail. *See Doe v. Ibanera, LLC*, No. 1:25-cv-24118, 2026 WL 2089224, at *12 (S.D. Fla. May 21, 2026) (citing *N. Am. Sugar Indus., Inc. v. Xinjiang Goldwind Sci. & Tech. Co.*, 124 F.4th 1322, 1339 (11th Cir. 2025) (holding that Florida's long-arm statute confers personal jurisdiction over nonresident alleged conspirators even if none of them personally acted in Florida, so long as any co-conspirator committed an act in Florida in furtherance of the conspiracy)).

The Eleventh Circuit has noted that:

> At least one court in Florida has adopted the following five-part test governing personal jurisdiction over a non-resident conspirator: (1) the existence of an actionable conspiracy; (2) the defendant's membership in the conspiracy; (3) the occurrence of a substantial act or substantial effect in furtherance of the conspiracy in the forum state; (4) the defendant's actual or constructive knowledge of the act in the forum state or that the act outside the state would have an effect in the state; and (5) the conspiracy conduct's direct or foreseeable cause of the act or effect.

*Posner*, 178 F.3d at 1217. But in order to establish co-conspirator personal jurisdiction there must be "clear, positive, and specific allegations" of the non-resident defendant's "participation in the conspiracy." *Condor, S.A. v. Plurinational State of Bolivia*, 352 So. 3d 921, 927 (Fla. 3d DCA 2022) ("Because Bolivia's amended complaint failed to sufficiently allege Condor's participation in the conspiracy, the trial court erred in extending the long-arm statute to Condor under the co-conspirator theory.").

The Complaint does not satisfy any of these elements. The Complaint does not allege: (i) a specific agreement joined by Mr. Enriquez related to the rebate scheme; (ii) any conduct by Mr. Enriquez, or any other Defendant, directed at Florida regarding the rebate scheme; (iii) any substantial act or effect in furtherance of the alleged conspiracy in Florida; (iv) any conduct by Mr. Enriquez that directly or foreseeably caused an act or effect in Florida; and (v) any actual or constructive knowledge by Mr. Enriquez of the rebate scheme, let alone that it would have a foreseeable effect in Florida. *See Oueiss v. Saud*, No. 1:20-cv-25022, 2022 WL 1311114, at *18 (S.D. Fla. Mar. 29, 2022) (granting motion to dismiss for lack of personal jurisdiction in civil conspiracy against non-resident defendant where there was no indication that defendant "was aware of any act in furtherance of the Conspiracy that took place or would take place in Florida."); *see also Rensin v. State*, 18 So. 3d 572, 574 (Fla. Dist. Ct. App. 2009) (holding under the corporate shield doctrine that "acts of [a] corporate employee performed in [his] corporate capacity do not form the basis for jurisdiction over [the] corporate employee in his individual capacity.") (citation omitted).

ELC merely alleges that Mr. Enriquez "supervised, participated in, conspired to participate in, and benefited from" the alleged rebate scheme. FAC ¶ 38. The Eleventh Circuit requires more than conclusory allegations that a defendant was part of a conspiracy. *See United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1281–82 (11th Cir. 2009) ("UTC has alleged nothing that clearly connected APM to a conspiracy made or carried out in Florida…any conspiracy-based exercise of personal jurisdiction must be founded on conduct committed in Florida by others that can be attributed to APM as a co-conspirator."); *Posner*, 178 F.3d at 1217 (dismissing claim because plaintiff failed to plead actionable conspiracy against non-resident conspirator).

**B. The Exercise of Personal Jurisdiction over Mr. Enriquez Would Violate the Due Process Clause**

Because ELC has failed to establish jurisdiction under Florida's long-arm statute, the Court need not reach the due process inquiry. *See Oviedo*, 2022 WL 1641865, at *10; *Hinkle*, 268 F. Supp. 3d at 1327. But even if the Court were to find ELC has established jurisdiction under Florida's long-arm statute, the Court's exercise of personal jurisdiction would violate the 14th Amendment's Due Process Clause. In order to subject Mr. Enriquez to personal jurisdiction, this Court must find that Mr. Enriquez had sufficient "minimum contacts" in Florida and that exercising jurisdiction would not "offend traditional notions of fair play and substantial justice." *Posner*, 178 F.3d at 1220.

The minimum contacts analysis follows a three-part test: (i) the contacts must be related to plaintiff's cause of action; (ii) the contacts must involve some act by which the defendant purposefully avails himself to the privileges of conducting activities within the forum; and (iii) the defendant's contacts with the forum must be such that the defendant should reasonably anticipate being haled into court there. *Id.* The "fair play and substantial justice" prong considers: (i) the burden of the defendant defending suit in Florida; (ii) Florida's interest in adjudicating the suit; (iii) plaintiff's interest in obtaining effective relief; (iv) the interests of the interstate judicial system; and (v) the interests of the states in furthering shared substantive policies. *Id.* at 1221.

Exercising personal jurisdiction against Mr. Enriquez would run afoul of both the minimum contacts and fair play inquiry. First, ELC has not alleged any conduct by Mr. Enriquez in Florida. In fact, ELC has not alleged any conduct by Mr. Enriquez at all that can plausibly support ELC's claims. ELC's only factual allegation against Mr. Enriquez is that as Nakorn's general manager, he "signed inspection reports conducted by the Tennessee Department of Health Board of Pharmacy." FAC ¶ 38. ELC does not allege that signing "inspection reports" by Nakorn's Tennessee regulator was in any way a part of the rebate scheme theory it advances. Moreover, ELC's allegation that Mr. Enriquez was the "contact person for the Florida-registered Community Health Initiative" is disconnected from ELC's allegations against Community Health, a different Tennessee entity. FAC ¶ 60. All of ELC's allegations related to the rebate scheme against Mr. Enriquez are strictly limited to *Tennessee* conduct, not Florida. *See* Sec. I.A.1. Because Mr. Enriquez's alleged conduct was wholly disconnected from Florida, he could not "reasonably anticipate" being haled into a Florida court. *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*,

598 F.3d 802, 812 (11th Cir. 2010) (finding no "purposeful availment" even where plaintiff alleged negotiations took place "in part in Florida.").

For these same reasons, Florida has no interest in adjudicating this suit and there is no substantive Florida policy involved. Undoubtedly, ELC's claims are more appropriately connected to Tennessee, not Florida. Lastly, Mr. Enriquez is a Tennessee citizen, *see* FAC ¶ 38, and defending this suit in Florida based on non-Florida conduct would be an undue burden that undermines "fair play and substantial justice." *See Estes v. Rodin*, 259 So. 3d 183, 198 (Fla. 3d DCA 2018) ("While Florida may have a strong interest in affording its residents a forum to obtain relief from intentional torts and it would be more convenient for Appellants to litigate in Florida, the burden on Appellees to litigate in Florida outweighs these factors."). Accordingly, the First Amended Complaint should be dismissed as to Enriquez for lack of personal jurisdiction.

## II. <u>ELC Fails to Plead a Conspiracy to Commit Fraud</u>

Even if the Court determines it has personal jurisdiction over Mr. Enriquez, Count II should be dismissed for failure to state a claim under Federal Rules of Civil Procedure 9(b) and 12(b)(6). Count II alleges that "the DrugPlace Defendants"—a group encompassing more than twenty entities and individuals, including Mr. Enriquez—"unlawfully, knowingly, and willfully combined, conspired, confederated and agreed together to defraud Lilly." FAC ¶ 262. But a civil conspiracy claim requires far more than a conclusory assertion of agreement.

### A. ELC Fails to Meet its Pleading Standard Under Rule 9(b) and 12(b)(6).

**<u>Rule 9(b)</u>** requires a plaintiff to plead the details of the allegedly fraudulent acts, including the precise statements, the time and place of the statements, the person responsible for them, the manner in which they misled the plaintiff, and what the defendants obtained as a consequence. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997). Rule 9(b) serves the important function of alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior. *Ziemba v. Cascade International, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001). Conclusory allegations of conspiracy to commit fraud do not satisfy Rule 9(b). *American United Life Ins. Co. v. Martinez*, 480 F. 3d 1043, 1067 (11th Cir. 2007) ("where a conspiracy claim alleges that two or more parties agreed to commit fraud, the plaintiffs must plead this act with specificity.").

**<u>Rule 12(b)(6)</u>** "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action, allegations must rise beyond a speculative level to state a claim to

relief that is plausible on its face." *ECB USA, Inc. v. Savencia Cheese USA, LLC*, 148 F.4th 1332, 1347-48 (11th Cir. 2025) (citation omitted). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (cleaned up). Importantly, "courts may infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *American Dental Ass'n v. Cigna Corp*., 605 F.3d 1283, 1290 (11th Cir. 2010). Here, ELC's conspiracy to commit fraud claim fails both Rule 9(b) and Rule 12(b)(6).

*1. ELC's Common Law Fraud Claim Fails*

"Under Florida law, an actionable conspiracy requires an actionable underlying tort or wrong." *Posner*, 178 F.3d at 1217; *Ibanera LLC*, 2026 WL 2089224, at *12. Here, ELC's conspiracy claim against Mr. Enriquez is predicated on common law fraud. *See* FAC ¶¶ 254-266. To state a claim for common law fraud under Florida law, a plaintiff must set forth the following: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Mirage Yacht, Inc. v. A 2013 Marquis Yachts Recreational Vessel*, No. 24-21095-CIV, 2025 WL 1047148, at *15 (S.D. Fla. Feb. 12, 2025).

Mr. Enriquez joins and incorporates by reference DrugPlace's arguments as to why ELC's common law fraud claim fails. *See* ECF No. 158. Crucially, ELC has not alleged that it relied on *any defendant's* representation and instead that purported representations were laundered through two intermediary levels of non-parties before reaching ELC. FAC ¶¶ 121-123. *See Feng v. Walsh*, No. 19-24138-CIV, 2021 WL 8055449, at *10 (S.D. Fla. Dec. 21, 2021) ("[F]irst-party reliance is an element of a common-law fraud claim."); *Sevi v. Israel Disc. Bank of New York*, No. 13-21922-CIV, 2014 WL 12861833, at *12 (S.D. Fla. Nov. 24, 2014) ("Plaintiff cites no authority for the proposition that a Florida common law fraud claim can rest on (1) a defendant's alleged misrepresentation to a third party and/or (2) a third party's reliance on a defendant's alleged misrepresentation. Accordingly, Count V is dismissed with prejudice.").

Likewise, ELC's common law fraud allegations fail to satisfy the Rule 9(b) pleading standard because they do not delineate which of the Defendants, if any, actually made any representations to the "third-party aggregators" and "third-party PBMs". *See Keegan v. Minahan*, No. 23-60501-Civ, 2023 WL 3884962, at *4 (S.D. Fla. June 7, 2023) (dismissing the plaintiff's

common law fraud claim because plaintiff "vaguely attribute[d] the alleged fraudulent statements and omissions to all three of the defendants simultaneously"); *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1322 (S.D. Fla. 2017) (dismissing a common law fraud claim against the individual defendants because there were no allegations that they "involved themselves in the scheme in any way other than through their ownership interests in the entity defendants"). Here, ELC does not identify a single submitted rebate claim tied to any conduct by Mr. Enriquez.

*2. ELC's Conspiracy to Commit Common Law Fraud Claim Fails*

Not only does ELC fail to allege the underlying common law fraud claim, ELC also fails to allege the fraudulent conspiracy under Rules 9(b) and 12(b)(6). *See American United Life Ins. Co.*, 480 F. 3d at 1067 ("where a conspiracy claim alleges that two or more parties agreed to commit fraud, the plaintiffs must plead this act with specificity.").

"Under Florida law, the elements of a civil conspiracy claim are: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *See Feng v. Walsh*, No. 19-24138-CIV, 2021 WL 8055449, at *11 (S.D. Fla. Dec. 21, 2021) (citation omitted). Under Florida law, a conspiracy requires "a meeting of two independent minds intent on one purpose." *Weisman v. Southern Wine & Spirits of America, Inc.*, 297 So.3d 646, 652 (Fla. 4th DCA 2020).

"**Moreover, mere evidence of knowledge of the crime or association with conspirators is insufficient.**" *Feng*, 2021 WL 8055449, at * 11 (citation omitted) (emphasis added). "**The Conspirator need only know of the scheme and assist in it in some way to be held responsible for all of the acts of his coconspirators. However, allegations that the co-conspirators were engaged in the same 'scheme,' alone, are insufficient to state a claim for civil conspiracy**." *See Apex Toxicology, LLC v. United HealthCare Svcs., Inc.*, No. 17-61840-CIV, 2020 WL 13551299, at *2 (S.D. Fla. July 7, 2020) (emphasis added) (citation omitted).

The Eleventh Circuit's decision in *ECB USA, Inc. v. Savencia Cheese USA, LLC* is on all fours here. 148 F.4th 1332, 1347-48 (11th Cir. 2025). In *ECB USA, Inc.*, Appellant ECB USA alleged Appellee Savencia Cheese participated in a fraud conspiracy. 148 F.4th at 1347. ECB USA's conspiracy allegations against Savencia Cheese consisted of:

- "each of the [sellers] and Savencia Cheese acted in *furtherance of* the conspiracy;

- "[t]he [sellers'] Conspiracy also required the participation of Savencia Cheese to undermine valuable rights to discounts provided to [the buyers] in the Stock Purchase Agreement";
- and "[i]n the months before June 30, 2014, the [sellers] and their co-conspirators *agreed* to implement the [sellers'] Conspiracy."

*Id.* The Eleventh Circuit held these allegations were merely recitations of Florida's conspiracy elements and that the allegations contained no facts evidencing how Savencia Cheese participated. *Id.* As in *ECB USA, Inc.*, ELC here merely recites the elements of conspiracy as to Mr. Enriquez without any facts evidencing how Mr. Enriquez individually participated or agreed to participate in the rebate scheme. *See* FAC. ¶ 38 ("Enriquez supervised, participated in, conspired to participate in, and benefited from the fraudulent scheme described below."); FAC ¶ 61 ("Enriquez…personally joined and participated in the DrugPlace Conspiracy…"); FAC ¶ 213 (grouping allegations that the "'DrugPlace Officers' devis[ed], implement[ed], and enforce[ed] policies and business practices that enabled the other Defendants to carry out the fraud. The proceeds of Defendants' fraud flowed to the DrugPlace Officers and others."); FAC ¶ 264 ("Nakorn, Brightline, and individual Defendants Enriquez, Giscombe, and Hoffner knowingly diverting Lilly's medications that DrugPlace and Galaxy purported to dispense to patients to the secondary market for re-sale.").

As in *ECB USA, Inc.*, ELC's conspiracy claim against Mr. Enriquez must be dismissed based on these conclusory and formulaic allegations devoid of any factual support detailing *how* Mr. Enriquez knew of, and individually assisted in, the rebate scheme. *ECB USA, Inc.*, 148 F.4th at 1347; *Apex Toxicology, LLC*, 2020 WL 13551299, at *5 ("United's use of the word 'conspired' alone does not satisfy the specificity requirement of Rule 9(b)."). *See* Section I.A.1 Chart (detailing extent of factual allegations against Mr. Enriquez describing ordinary, Tennessee-based warehouse manager duties).

Additionally, the obvious alternative explanation for Mr. Enriquez's alleged conduct on behalf of Nakorn militates against an inference that Mr. Enriquez participated in a conspiracy. *See American Dental Ass'n*, 605 F.3d at 1290. Namely, Tennessee law required *Nakorn* to undergo such inspection under its regulatory framework for pharmaceutical wholesalers – wholesalers that ELC itself alleges it lawfully uses "throughout the country" to distribute its products. FAC ¶ 119 ("Lilly sells its medicines to a limited number of wholesalers, who distribute a variety of pharmaceuticals sources from multiple manufacturers to pharmacies throughout the country.");

*see also* Tenn. Comp. R. & Regs. 1140-01-.08 ("No pharmacy practice site, manufacturer, outsourcing facility, oxygen supplier or wholesaler/distributor may open within the state of Tennessee until a license has been obtained; and such license will not be issued until an inspection by an authorized representative of the board has been made.").

The obvious alternative explanation of lawful business activity is even more compelling here where ELC fails to explain how Mr. Enriquez's alleged conduct of signing required inspection reports under Tennessee law or any other alleged conduct contributed to or is in any way connected to the rebate scheme. Accordingly, ELC's conspiracy claim against Mr. Enriquez must be dismissed. *American Dental Ass'n*, 605 F.3d at 1290 ("The alternative inferences that could be drawn from the facts—namely, that the arrests were likely lawful and justified by a nondiscriminatory intent to detain aliens who were illegally present in the United States and who had potential connections to those who committed terrorist acts—were at least equally compelling. Accordingly, the Court ruled that Iqbal's complaint must be dismissed.").

**B. The Intracorporate Conspiracy Doctrine Independently Bars the Claim**

"The intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy." *See Denney v. City of Albany*, 247 F. 3d 1172, 1190 (11th Cir. 2001) (citation omitted); *see also Weisman*, 297 So. 3d at 652 ("Where corporate agents are acting within the scope of their employment, their actions are attributed to the corporation itself…") (citation omitted). The intracorporate conspiracy doctrine extends to parent companies and their subsidiaries and affiliates. *See Apex Toxicology, LLC*, 2020 WL 13551299, at *8 ("to the extent United's civil conspiracy claim is based on Apex and its owners and affiliates' scheme to defraud commercial insurers, the claim fails by application of the intracorporate conspiracy doctrine and must be dismissed.").

Here, ELC again alleges no factual conduct as to Mr. Enriquez that is outside of his scope of employment. Rather, the only conduct ELC alleges during the relevant period of its rebate scheme was that Mr. Enriquez, as *Nakorn*'s general manager, "signed inspection reports conducted by the Tennessee Department of Health Board of Pharmacy" and oversaw warehouse employees and operations. FAC ¶¶ 23, 38, 225-226. ELC's allegation regarding Mr. Enriquez's conduct as Nakorn's employee is insufficient and requires dismissal with prejudice. *See Graham v. Cypress Capital Group Inc.*, No. 10-81269-CIV, 2011 WL 13227744, at *6 (S.D. Fla. July 12, 2011) ("the

conspiracy claim is subject to dismissal with prejudice as against the individual Defendants Hoyt and O'Brien since as agents and officers of CCG and the Trust Company they cannot conspire with CCG and the Trust Company in the absence of allegations of a personal stake in the activities that are separate and distinct from the corporation's interest. As such, Hoyt and O'Brien are dismissed with prejudice from this count."). To be sure, the only factual conduct ELC alleges is between *Nakorn and other purported conspirators* – not Mr. Enriquez. FAC ¶¶ 188-192; *See Denney*, 247 F. 3d at 1190 ("under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves.") (citation omitted).

The allegation that *Nakorn* purportedly conspired with other named defendants does not save ELC's conspiracy claim against Mr. Enriquez because ELC alleges these other named defendants were "agents" and/or "affiliates" of the "DrugPlace Entities." FAC ¶ 54 (alleging conduct was "on behalf of and as agents of the DrugPlace Entities (DrugPlace, Community Health, Nakorn, Galaxy, TPE, and Brightline)."); FAC ¶ 206 ("The DrugPlace Entities act together under common ownership and officers…"); FAC ¶ 84 ("DrugPlace and its affiliates and business partners have, over the course of years, knowingly caused submission of hundreds of thousands of fraudulent rebate claims…"); FAC ¶ 178 ("Further investigation confirmed that Galaxy is affiliated with DrugPlace and its owners and principals."); FAC ¶ 181 ("Like DrugPlace, Galaxy is closely affiliated with…Defendant Brightline."); FAC ¶ 213 ("The DrugPlace Officers—Leight, Singer, Smith, Enriquez, Jerry Maynard Sr., Jerry Maynard II, Misha Maynard, Mazei, Giscombe, and Hoffner—as the owners and officers of DrugPlace, Nakorn, Galaxy, Brightline, TPE, and Community Health, directed and controlled the DrugPlace Entities…"). Because ELC alleges the "DrugPlace Entities" were affiliates and agents of each other in various capacities, including Mr. Enriquez's role as general manager of Nakorn, the intracorporate conspiracy doctrine bars ELC's claim. *See Graham*, 2011 WL 13227744, at *6; *see also Apex Toxicology, LLC*, 2020 WL 13551299, at *8.

## III. <u>ELC Fails to State a Claim for Unjust Enrichment and Money Had and Received</u>

Counts IV and V, brought against "All DrugPlace Defendants and Relief Defendants," allege that Mr. Enriquez was unjustly enriched by, and received money belonging to, ELC.[3] Both claims fail for the same fundamental reason: the FAC does not allege that Enriquez received *any* benefit or payment from ELC's funds. This deficiency is particularly glaring given the FAC's exhaustive financial tracing, which identifies specific dollar amounts, bank accounts, and recipients—none of which include Enriquez.

To state a claim for unjust enrichment under Florida law, a plaintiff must allege that it: (i) conferred a benefit on the defendant, who has knowledge thereof; (ii) the defendant voluntarily accepts and retains the conferred benefit; and (iii) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff. *See Extraordinary Title Services, LLC v. Florida Power & Light Co.*, 1 So. 3d 400, 404 (Fla. 3d DCA 2009) (affirming dismissal of unjust enrichment claim against parent company where plaintiff only paid, and only received benefits from, affiliate company and thus had not conferred a direct benefit to parent company). It is also "well settled in Florida that unjust enrichment is an equitable remedy and is, therefore, not available where there is an adequate legal remedy. Thus, to properly state a claim for unjust enrichment, a party must allege that no adequate legal remedy exists." *Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1236-37 (S.D. Fla. 2007) (citation omitted).

First, ELC fails to plead it lacks an adequate legal remedy—which is required to state an equitable unjust enrichment claim. *See Steel Media Grp. v. Lewis*, No. 22-cv-21780, 2023 WL 1413043, at *9–11 (S.D. Fla. Jan. 6, 2023), *R. & R. adopted*, No. 22-cv-21780, 2023 WL 1332832 (S.D. Fla. Jan. 31, 2023). Here, ELC alleges that its harm is "practically impossible to stop without a permanent, court-ordered injunction, and impossible to adequately remedy by money damages." FAC ¶ 245.

[3] Additionally, because the money-had-and-received claim is duplicative of unjust enrichment, it should be dismissed with prejudice. *See Virgilio v. Ryland Group, Inc.*, No. 608-CV-815, 2009 WL 320857, at *6 (M.D. Fla. Feb. 9, 2009) (dismissing with prejudice money-had-and-received claim based on redundant unjust enrichment claim); *see also See Kelly v. Palmer, Reifler, & Assoc., P.A.*, 681 F. Supp. 2d 1356, 1384 (S.D. Fla. 2010) (J. Moreno) (holding under Florida law that unjust enrichment and money had and received claims require the same elements).

However, ELC also alleges that Nakorn and other Defendants are no longer in business. FAC ¶ 23 ("Like DrugPlace, Nakorn submitted a request to close its facility with the Tennessee Department of Health and to surrender its wholesaler license with the Kentucky Board of Pharmacy in January 2026."). And ELC's unjust enrichment claim seeks "disgorgement and restitution in the amount by which the DrugPlace Defendants and Relief Defendants were unjustly enriched…". FAC ¶ 280. ELC pleads other legal remedies in Counts I, III, and VI (including treble damages) – seeking the same money damages as in Counts IV and V – but fails to plead that those remedies are inadequate. *Steel Media Grp.*, 2023 WL 1413043, at *10 ("Plaintiff fails to allege, either in connection with its unjust enrichment claim or anywhere in the Complaint, that no adequate remedy at law is available."). As such, dismissal of Counts IV and V is warranted. *Id.* at 10–11; *Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1356–57 (S.D. Fla. 2012) (dismissing unjust enrichment claim pled in the alternative because plaintiff sought "recovery for the exact same wrongful conduct as in her FDUTPA claim.").

Counts IV and V also require dismissal with prejudice because ELC has failed to allege that it rendered a direct benefit to Mr. Enriquez. *See Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1102 (11th Cir. 2021) ("Marrache failed to allege that he and the other class members conferred a direct benefit to Bacardi…At most, Marrache has alleged that he and the other class members conferred an indirect benefit to Bacardi [through purchases from Winn-Dixie] and, as such, cannot satisfy the first element of an unjust enrichment claim against Bacardi.").

As in *Marrache*, ELC alleges it paid rebates to third-party PBMs based on rebate claims submitted through intermediary third-party rebate aggregators. FAC ¶¶ 118-127, 274-288. ELC does not allege that it paid Mr. Enriquez – or even Nakorn for that matter – anything directly. ELC does not even allege that any third-party paid Mr. Enriquez. In short, ELC does not identify any specific benefit conferred on Mr. Enriquez by ELC directly. The conclusory assertion that proceeds of the alleged fraud "flowed" to all of the Defendants, including Mr. Enriquez, through a series of third-parties and intermediaries does not satisfy the "direct benefit" element. FAC ¶ 213; *see also Marrache*, 17 F.4th at 1102; *GVB MD v. Aetna Health Inc.*, No. 19-22357-CIV, 2019 WL 6130825, at *6 (S.D. Fla. Nov. 19, 2019) (J. Moreno) ("Importantly, the Florida Supreme Court has ruled the plaintiff must directly confer the benefit to the defendant.") (citation omitted). Because ELC has not alleged a conferred *direct* benefit to Mr. Enriquez and has not alleged an

inadequate remedy at law (as demonstrated by its alternative claims), ELC's unjust enrichment and money-had-and-received claims must be dismissed with prejudice.

## IV. ELC's Civil Theft Claim Fails

Count VI is a new claim for civil theft under Florida Statute § 772.11, brought against "the DrugPlace Defendants, Except Misha Maynard." FAC ¶¶ 289–298. The claim fails as to Mr. Enriquez for multiple independent reasons. To state a claim under § 772.11, Florida Statutes, a plaintiff must allege "the defendant: (1) knowingly (2) obtained or used, or endeavored to obtain or use, the plaintiff's property with (3) 'felonious intent' (4) either temporarily or permanently to (a) deprive the plaintiff of the right or benefit of the property, or (b) appropriate the property to the defendant's own use or the use of another." *Omnipol, a.S. v Worrell*, 421 F. Supp. 3d 1321, 1346 (M.D. Fla. 2019). When civil theft claims sound in fraud, they are subject to Rule 9(b)'s heightened pleading standard. *Id.*

**First, the FAC does not allege criminal intent.** Civil theft under § 772.11 incorporates the elements of criminal theft under Florida law, including the requirement that the defendant "knowingly" obtained or used the plaintiff's property with "felonious intent." *See Ames v. Provident Life and Acc. Ins. Co.*, 942 F. Supp. 551, 560-61 (S.D. Fla. 1994) ("In order to prove civil theft, it is necessary to show not only that the defendant obtained or endeavored to obtain the plaintiff's property, but that he did so with the felonious intent to commit a theft."). "Felonious intent" requires actual knowledge on the part of the defendant to commit a theft. *Healy v. Suntrust Service Corp.*, 569 So. 2d 458, 460 (Fla. 5th DCA 1990) ("Theft is a specific intent crime, requiring actual knowledge on the part of the defendant."). The FAC does not allege that Mr. Enriquez knew about the rebate claims, knew that the rebate claims were fraudulent, and let alone that he possessed the specific criminal intent to steal ELC's money. *See Omnipol, a.S.*, 421 F. Supp. 3d at 1346-47 (allegation that defendant "knew" of "unlawful scheme" insufficient under Rule 12(b)(6) and Rule 9(b) to satisfy knowledge and intent element of civil theft). The FAC's own allegations describe Mr. Enriquez as a warehouse manager who transferred medications, signed state-required inspection records, and supervised employees—not a knowing participant in fraud. FAC ¶¶ 23, 38, 225–226.

**Second, the FAC does not allege that Enriquez obtained or exercised control over any of ELC's property.** Civil theft requires that the defendant "obtains or uses, or endeavors to obtain or to use," the victim's property. Fla. Stat. § 812.014. Here, the property at issue is ELC's rebate

payments—money that the FAC traces through a complex chain of financial intermediaries to other defendants and their affiliated entities, **but not a single dollar to Mr. Enriquez**. FAC ¶¶ 202–204, 216–217, 276, 293. A civil theft claim cannot stand where the defendant never possessed, controlled, or benefited from the allegedly stolen property. *See Omnipol, a.S.*, 421 F. Supp. 3d at 1347 (dismissing civil theft claim where plaintiffs failed to identify any money received by defendants belonging to plaintiffs).

**Lastly, ELC cannot bootstrap a civil theft claim onto its conspiracy theory.** Section 772.11 creates a statutory cause of action for *theft*—it is not a vehicle for extending liability to every person who is alleged to have participated in a conspiracy, regardless of their connection to the stolen property. The statute requires that each defendant individually "obtains or uses" the plaintiff's property. *See Omnipol, a.S.*, 421 F. Supp. 3d at 1347 (dismissing civil theft claim where plaintiffs' imprecise, group pleading was insufficient to establish individual defendants' possession of monies). The FAC alleges that Mr. Enriquez transferred medications—physical product—between facilities in Tennessee. FAC ¶¶ 23, 38, 225–226. It does not allege that he obtained, used, or had any control over ELC's *money*. FAC ¶¶ 202–204, 216–217, 276, 293. Because the AC fails to allege that Mr. Enriquez knowingly obtained or used ELC's property with criminal intent, Count VI must be dismissed with prejudice as to Mr. Enriquez.

## V. ELC's FAC Remains an Impermissible Shotgun Pleading

As with ELC's original Complaint, the FAC continues to adopt "the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *See Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015); FAC at Counts I-VI. This wholesale incorporation by reference forces Mr. Enriquez to parse hundreds of paragraphs—the vast majority of which have nothing to do with him—to identify which allegations, if any, state a claim against him.

Additionally, the FAC continues to assert "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions" (referred to herein as the "Group Pleading"). *Weiland*, 792 F.3d at 1323. The Group Pleading issue is part and parcel of ELC's failure to meet Rule 9(b)'s heightened pleading standard discussed in Section II.A, above. *See Brooks*, 116 F.3d at 1381 ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'") (citation omitted); *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008)

("[G]eneralized allegations 'lumping' multiple defendants together are insufficient."); *Apex Toxicology, LLC*, 2020 WL 13551299, at *3-4 ("in a case involving multiple defendants the complaint must not lump together all the defendants because the complaint should inform each defendant of the nature of his alleged participation in the fraud."); *In re Takata Airbag Products Liability Litigation*, 396 F. Supp. 3d 1101, 1162 (S.D. Fla. 2019) (J. Moreno) (noting plaintiffs' specificity problem was compounded by plaintiffs imprecise lumping of defendants).

The FAC spans 86 pages and 298 paragraphs. It names twenty-two defendants and relief defendants—ranging from alleged masterminds of a $200 million fraud scheme to a warehouse manager who drove delivery vans. Yet the FAC treats all of these defendants identically, lumping them together under the umbrella term "the DrugPlace Defendants" without differentiating their respective roles, knowledge, or culpability. *In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d at 1162 ("This means that in a case involving multiple defendants, the complaint should inform each defendant of the nature of his alleged participation in the fraud.") (internal citation omitted).

For example, the conspiracy count alleges that "the DrugPlace Defendants" conspired together—but never specifies what Mr. Enriquez allegedly agreed to, what overt act he allegedly committed in furtherance of the conspiracy (as distinct from his routine job duties), or how his supervision of wholesale employees constituted conspiratorial conduct. *Apex Toxicology, LLC*, 2020 WL 13551299, at *3-4 ("in a case involving multiple defendants the complaint must not lump together all the defendants because the complaint should inform each defendant of the nature of his alleged participation in the fraud."). The FAC's failure to provide Enriquez with "adequate notice of the claims against [him] and the grounds upon which each claim rests" is an independent basis for dismissal. *Weiland*, 792 F.3d at 1323.

## CONCLUSION

ELC has again failed to establish this Court's jurisdiction over Mr. Enriquez. ELC has also failed, for a second time, to plead common law fraud and conspiracy under Rules 12(b)(6) and 9(b)'s heightened pleading standard. The First Amended Complaint remains an impermissible shotgun pleading and is barred by the intracorporate conspiracy doctrine. ELC has not alleged a direct benefit or inadequate remedy at law in support of its equitable claims. Relatedly, ELC fails to allege the basic elements of civil theft against Mr. Enriquez. Accordingly, the Court should dismiss ELC's claims against Mr. Enriquez with prejudice.

Dated: September 14, 2026.[4]

Respectfully submitted,

/s/ *Henry A. Moreno*

Jessica R. Sievert (Fla. Bar No. 55839)
Jessica.Sievert@hklaw.com
Holland & Knight LLP
50 North Laura Street, Suite 3900
Jacksonville, FL 32202
Telephone: 904-353-2000

Henry A. Moreno (Fla. Bar No. 1031432)
Henry.Moreno@hklaw.com
Holland & Knight LLP
777 South Flagler Drive
Suite 1900—West Tower
West Palm Beach, FL 33401
Telephone: 561-650-8332

*Attorneys for Defendant Edgar Enriquez*

[4] Undersigned counsel attempted to file the Motion to Dismiss on Friday, September 11, 2026 at approximately 6:50 p.m., immediately after filing Mr. Enriquez's Request for Judicial Notice, but CM/ECF for the Southern District of Florida subsequently crashed and was unavailable throughout the remainder of the day. Out of an abundance of caution, on September 11, 2026, undersigned counsel served unfiled copy of this Motion to Dismiss via email to counsel of record.
.