**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

ELI LILLY AND COMPANY, **CASE NO.: 1:26-CV-23516-FAM (EFD)**

Plaintiff,

v.

DRUGPLACE, INC. (FL); DRUGPLACE, INC. (TN); COMMUNITY HEALTH INITIATIVE, INC.; NAKORN WHOLESALERS LLC; GALAXY MED, LLC d/b/a GALAXY PHARMACY; BRIGHTLINE WHOLESALE LLC; KEVIN SINGER; PAUL LEIGHT; READUS SMITH; JERRY MAYNARD SR.; JERRY MAYNARD JR.; MISHA MAYNARD; EDGAR ENRIQUEZ; LANE MAZEI; DANIELLE GISCOMBE, DANIEL HOFFNER; and TEXAS PHARMACY ENTERPRISE, LLC,

Defendants, and

CHRISTOPHER DEMARCO; DEMARCO LANDSCAPE DESIGN GROUP, LLC; GLOBUS INDUSTRIES, LLC; ROCKAWAY INVESTMENTS, INC.; U.S. HEALTHCARE DISTRIBUTORS, LLC.,

Relief Defendants.
_______________________________________/

**PLAINTIFF ELI LILLY AND COMPANY'S CONSOLIDATED OPPOSITION TO THE LIABILITY DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..........1

ARGUMENT ..........2

I. Lilly Has Sufficiently Alleged Every Claim Against All Defendants ..........2

A. The FAC Includes Particularized Allegations of Each Individual Defendant's Role, Negating Any "Group Pleading" or "Shotgun Pleading" Objection ..........2

B. The FAC Sufficiently Alleges Fraud Under Rule 9(b) ..........8

1. Lilly Sufficiently Alleges The "Who, What, Where, When, and How" of Defendants' Fraud ..........8

2. Lilly Sufficiently Alleges Reliance on Defendants' Misrepresentations ..........11

C. The FAC Sufficiently Alleges Defendants' Civil Conspiracy Under Rule 9(b) ..........13

1. Lilly Has More Than Adequately Alleged a Conspiracy ..........14

2. Defendants' Conspiracy Defenses Are Meritless ..........16

a. The Intracorporate Conspiracy Doctrine Does Not Apply ..........16

b. The Maynards' and Smith's Conduct Is Part of the Active Conspiracy ..........17

c. The Conspiracy Allegations Against Giscombe, Enriquez, Hoffner, and TPE Are Particularized and Not Susceptible to an "Obvious Alternative Explanation" ..........17

D. The FAC States Claims for Unjust Enrichment and Money Had and Received ..........19

1. Lilly Conferred a Direct Benefit on Defendants ..........20

2. Lilly Has Pled Its Equitable Claims With Sufficient Particularity ..........22

3. Defendants' Remaining Arguments Against Lilly's Equitable Claims Fail ..........23

E. The FAC States a Claim for Civil Theft ..........24

II. Emisar, Ascent, and Health Delegates Are Not Parties Required to Be Joined Under Rule 19(a)....26

A. The Court Can Accord Complete Relief Among the Existing Parties....26

B. The Absent Entities Have No Protected Interest at Stake, and Discovery Addresses Defendants' Evidentiary Concerns....27

III. The Court Has Personal Jurisdiction Over Defendants Maynard Sr., Maynard II, Enriquez, and Giscombe....28

A. The Exercise of Jurisdiction Is Appropriate Under Florida's Long-Arm Statute....28

1. Lilly Adequately Alleges Specific Jurisdiction Under Florida's Long-Arm Statute....28

2. The Corporate Shield Doctrine Does Not Apply to Defendants' Tortious Conduct....31

B. The Exercise of Personal Jurisdiction Over the Non-Resident Defendants Comports with Due Process....32

C. Any Factual Issues Relating to Jurisdiction Should Be Resolved Through Discovery....33

IV. The Court Should Grant Leave to Amend if it Dismisses Any Parties or Claims....35

CONCLUSION....35

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acciard v. Whitney*,
No. 2:07-CV-476-UA-DNF, 2008 WL 5120898 (M.D. Fla. Dec. 4, 2008) ..... 7

*Aceto Corp. v. TherapeuticsMD, Inc.*,
953 F. Supp. 2d 1269 (S.D. Fla. 2013) ..... 23

*ADT LLC v. Skyline Sec. Mgmt., Inc.*,
No. 24-CV-20758, 2026 WL 575122 (S.D. Fla. Mar. 2, 2026) ..... 21

*Adventist Health Sys. Sunbelt Healthcare Corp. v. Weiss*,
No. 6:20-cv-877-Orl-40DCI, 2021 WL 1238321 (M.D. Fla. Feb. 22, 2021) ..... 16

*AFL-CIO v. City of Miami*,
637 F.3d 1178 (11th Cir. 2011) ..... 13

*Alexander v. Trump*,
404 So. 3d 425 (Fla. 4th DCA 2025) ..... 30

*Am. C.L. Union of Fla., Inc. v. City of Sarasota*,
859 F.3d 1337 (11th Cir. 2017) ..... 33

*American Dental Ass'n v. Cigna Corp.*,
605 F.3d 1283 (11th Cir. 2010) ..... 18

*Amersham Enters., Inc. v. Hakim-Daccach*,
333 So. 3d 289 (Fla. 3d DCA 2022) ..... 29

*Andrews v. D'Souza*,
696 F. Supp. 3d 1332 (N.D. Ga. 2023) ..... 19

*Anheuser-Busch, Inc. v. Campbell*,
306 So. 2d 198 (Fla. 1st DCA 1975) ..... 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..... 2, 18

*AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*,
608 F. Supp. 2d 1349 (S.D. Fla. 2009) ..... 29, 31, 32, 33

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..... 2

*Benavides v. Tesla, Inc.*,
804 F. Supp. 3d 1242 (S.D. Fla. 2025) ....................................................................8

*Biscayne Park LLC v. Madison Realty Capital, L.P.*,
No. 13-20336-CIV, 2013 WL 2243975 (S.D. Fla. May 21, 2013)........................................27

*Burgess v. Religious Tech. Ctr., Inc.*,
600 F. App'x 657 (11th Cir. 2015) ........................................................................8

*Butler v. Yusem*,
44 So. 3d 102 (Fla. 2010)..................................................................................8

*Cape, LLC v. Och-Ziff Real Est. Acquisitions LP*,
370 So. 3d 1010 (Fla. 5th DCA 2023)....................................................................20

*Carriuolo v. Gen. Motors LLC*,
72 F. Supp. 3d 1323 (S.D. Fla. 2014) ...................................................................20

*Castillo v. Colmenares*,
No. 21-24221-CIV, 2022 WL 22970964 (S.D. Fla. Apr. 7, 2022).........................................26

*Century Sr. Servs. v. Consumer Health Ben. Ass'n*,
770 F. Supp. 2d 1261 (S.D. Fla. 2011) ..................................................................19

*Cevdet Aksut Ve Ogullari Koll. Sti v. Cavusoglu*,
No. 14-3362 (WJM), 2015 WL 4317750 (D.N.J. July 14, 2015)...........................................10

*Charles v. Fla. Foreclosure Placement Ctr., LLC*,
988 So. 2d 1157 (Fla. 3d DCA 2008).....................................................................16

*Cincinnati Ins. Co. v. Atlas Healthcare, LLC*,
No. 2:17-CV-1310-TMP, 2019 WL 450854 (N.D. Ala. Feb. 5, 2019) ..................................10

*City Commc'ns, Inc. v. DailyTel, Inc.*,
No. 22-CV-81813, 2024 WL 3105929 (S.D. Fla. June 12, 2024), *R&R adopted*, 2024 WL 3103365 (S.D. Fla. June 24, 2024) .........................................................30

*City of Miami v. Eli Lilly & Co.*,
No. 21-22636-CIV, 2022 WL 198028 (S.D. Fla. Jan. 21, 2022)...........................................21

*Coffey v. WCW & Air, Inc.*,
No. 3:17-CV-90-MCR-CJK, 2018 WL 4154256 (N.D. Fla. Aug. 30, 2018)..........................21

*Cordell Consultant, Inc. Money Purchase Plan & Tr. v. Abbott*,
561 F. App'x 882 (11th Cir. 2014) ...................................................................13, 16

*Corsello v. Lincare, Inc.*,
428 F.3d 1008 (11th Cir. 2005) ..........................................................................8

*Denton v. Bd. of Governors for the State Univ. Sys. of Fla.*,
No. 24-10567, 2026 WL 1660092 (11th Cir. June 9, 2026) ....................19

*Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*,
593 F.3d 1249 (11th Cir. 2010) ....................33

*Diamond Resorts U.S. Collection Dev., LLC v. Miller*,
No. 6:20-CV-1668-PGB-LRH, 2022 WL 445508 (M.D. Fla. Jan. 11, 2022) ....................15

*Diversified Mgmt. Sols., Inc. v. Control Sys. Rsch., Inc.*,
No. 15-81062-CIV, 2016 WL 4256916 (S.D. Fla. May 16, 2016) ....................30, 33

*Donofrio v. Matassini*,
503 So. 2d 1278 (Fla. 2d DCA 1987) ....................18

*Dornberger v. Metro. Life Ins. Co.*,
961 F. Supp. 506 (S.D.N.Y. 1997) ....................10

*Durham v. Bus. Mgmt. Assocs.*,
847 F.2d 1505 (11th Cir. 1988) ....................2

*Eaton v. Dorchester Dev., Inc.*,
692 F.2d 727 (11th Cir. 1982) ....................34

*ECB USA, Inc. v. Savencia Cheese USA, LLC*,
148 F.4th 1332 (11th Cir. 2025) ....................16

*Elandia Int'l, Inc. v. Ah Koy*,
690 F. Supp. 2d 1317 (S.D. Fla. 2010) ....................29, 31

*Energy Source, Inc. v. Gleeko Props., LLC*,
No. 10-21162-CIV, 2011 WL 3236047 (S.D. Fla. July 28, 2011) ....................29, 33

*FDIC v. Copenhaver*,
No. 8:13-CV-2037-T-33TBM, 2014 WL 12621202 (M.D. Fla. May 10, 2014),
*R&R adopted sub nom. FDIC v. Mangano*, 2014 WL 12621581 (M.D. Fla.
June 4, 2014) ....................3

*Feng v. Walsh*,
No. 19-24138-CIV, 2021 WL 8055449 (S.D. Fla. Dec. 21, 2021) ....................12, 13

*Fireman v. Travelers Casualty & Surety Co. of America*,
No. 10-81564-CIV, 2011 WL 743069 (S.D. Fla. Feb. 24, 2011) ....................26, 27

*FDIC ex rel. First Nat'l Bank of Nevada v. Lazcano*,
No. 08-21769, 2009 WL 10699886 (S.D. Fla. Jan. 6, 2009) ....................11

*Forbo Flooring, Inc. v. Falcone Glob. Sols., LLC*,
No. 1:19-CV-2876-MHC, 2020 WL 13430056 (N.D. Ga. Oct. 23, 2020)....23

*Frayman v. Douglas Elliman Realty, LLC*,
515 F. Supp. 3d 1262 (S.D. Fla. 2021)....23

*Freeman v. Sharpe Res. Corp.*,
No. 6:12-cv-1584, 2013 WL 2151723 (M.D. Fla. May 16, 2013)....24

*Fried v. Stiefel Labs., Inc.*,
No. 11-CV-20853, 2012 WL 4364300 (S.D. Fla. June 8, 2012)....6

*Funez v. CMI Leisure Mgmt., Inc.*,
482 F. Supp. 3d 1252 (S.D. Fla. 2020)....34

*Garcia v. Kashi Co.*,
43 F. Supp. 3d 1359 (S.D. Fla. 2014)....19

*Gilison v. Flagler Bank*,
303 So. 3d 999 (Fla. 4th DCA 2020)....13

*Gordon v. Omni Equities, Inc.*,
605 So. 2d 538 (Fla. 1st DCA 1992)....25

*Gov't Emps. Ins. Co. v. Kalin*,
No. 8:21-CV-2556-VMC-JSS, 2022 WL 613808 (M.D. Fla. Mar. 2, 2022)....16

*Gov't Emps. Ins. Co. v. Mas*,
No. 19-21183-CIV, 2020 WL 9604436 (S.D. Fla. Mar. 31, 2020)....7

*Grail Semiconductor, Inc. v. Stern*,
No. 12-60976-CIV, 2012 WL 5903817 (S.D. Fla. Nov. 26, 2012)....33

*GVB MD v. Aetna Health Inc.*,
No. 19-22357-CIV, 2019 WL 6130825 (S.D. Fla. Nov. 19, 2019)....21

*Halabi v. Mega Bank*,
No. 25-20902-CIV, 2026 WL 2818314 (S.D. Fla. Sept. 2, 2026), *R&R adopted*, 2026 WL 2814760 (S.D. Fla. Sept. 18, 2026)....13, 17

*Hamilton v. SunTrust Mortg., Inc.*,
6 F. Supp. 3d 1312 (S.D. Fla. 2014)....20

*Hard Candy, LLC v. Hard Candy Fitness, LLC*,
106 F. Supp. 3d 1231 (S.D. Fla. 2015)....28

*Harris v. Nordyne, LLC*,
No. 14-CIV-21884, 2014 WL 12516076 (S.D. Fla. Nov. 14, 2014)....23

*Helix Inv. Mgmt., LP v. Privilege Direct Corp.*,
364 F. Supp. 3d 1343 (M.D. Fla. 2019) ........................................................................27

*Henderson v. Dade Cnty. Police Benev. Ass'n, Inc.*,
No. 14-20321-CIV-MORENO, 2014 WL 3591600 (S.D. Fla. July 18, 2014)........................35

*Higgs v. Costa Crociere S.P.A. Co.*,
969 F.3d 1295 (11th Cir. 2020) ........................................................................35

*Hill v. Morehouse Med. Assocs., Inc.*,
No. 02-14429, 2003 WL 22019936 (11th Cir. Aug. 15, 2003) ........................................22, 23

*Hinkle v. Cirrus Design Corp.*,
775 F. App'x 545 (11th Cir. 2019) ........................................................................28

*Indian River Merch. Servs., LLC v. Nolte*,
817 F. Supp. 3d 1335 (S.D. Fla. 2026) ........................................................................32

*JW Gaming Dev., LLC v. James*,
No. 3:18-CV-02669-WHO, 2018 WL 4853222 (N.D. Cal. Oct. 5, 2018), *aff'd*,
778 F. App'x 545 (9th Cir. 2019) ........................................................................3

*Kirwin v. Price Commc'ns Corp.*,
391 F.3d 1323 (11th Cir. 2004) ........................................................................16

*Koch v. Royal Wine Merchants, Ltd.*,
907 F. Supp. 2d 1332 (S.D. Fla. 2012) ........................................................................11, 14

*LaFreniere v. Craig-Myers*,
264 So. 3d 232 (Fla. 1st DCA 2018) ........................................................................31

*Licciardello v. Lovelady*,
544 F.3d 1280 (11th Cir. 2008) ........................................................................32

*LSM Techs. PTY LTD. v. Sy-Klone Co., LLC*,
No. 3:22-CV-1019-BJD-MCR, 2023 WL 5934386 (M.D. Fla. Aug. 8, 2023) .......................29

*Machtinger v. Inertial Airline Servs., Inc.*,
937 So. 2d 730 (Fla. 3d DCA 2006) ........................................................................32, 33

*Majd–Pour v. Georgiana Cmty. Hosp., Inc.*,
724 F.2d 901 (11th Cir. 1984) ........................................................................34

*Mansion v. Eli Lilly and Co.*,
No. 25-17282 (MAS) (JBD) (D.N.J. filed Nov. 7, 2025) ...................................................28

*Marrache v. Bacardi U.S.A., Inc.*,
17 F.4th 1084 (11th Cir. 2021) ........................................................................21

*Melton v. Century Arms, Inc.*,
243 F. Supp. 3d 1290 (S.D. Fla. 2017) ....................................................................2

*MerchACT, LLC v. Ronski*,
No. 9:20-cv-82043-WPD, 2022 WL 3682207 (S.D. Fla. Jan. 13, 2022) ..............................20

*MeterLogic, Inc. v. Copier Sols., Inc.*,
126 F. Supp. 2d 1346 (S.D. Fla. 2000) ....................................................................8

*Metrahealth Ins. Co. v. Anclote Psychiatric Hosp., Ltd.*,
No. 96-CV-2547, 1997 WL 728084 (M.D. Fla. Oct. 23, 1997) ............................................3

*Murante v. Pedro Land, Inc.*,
761 F. Supp. 786 (S.D. Fla. 1991) ..........................................................................28

*Needham & Co., LLC v. Access Staffing, LLC*,
No. 15 CIV. 2487 (NRB), 2016 WL 4399288 (S.D.N.Y. Aug. 12, 2016) ..............................3

*New Hampshire Ins. Co. v. Royal Ins. Co.*,
559 So. 2d 102 (Fla. 4th DCA 1990).........................................................................34

*NHB Advisors, Inc. v. Czyzyk*,
95 So. 3d 444 (Fla. 4th DCA 2012)...........................................................29, 30, 31

*Omnipol, A.S. v. Multinational Def. Servs., LLC*,
32 F.4th 1298 (11th Cir. 2022) ...........................................................................8, 22

*Otto Candies, LLC v. Citigroup Inc.*,
137 F.4th 1158 (11th Cir. 2025) .........................................................................8, 11

*Peach.com, LLC v. Peachly, LLC*,
No. 21-20636-CIV, 2021 WL 7542983 (S.D. Fla. June 16, 2021)..........................32, 33, 34

*Phelan v. Lawhon*,
229 So. 3d 853 (Fla. 3d DCA 2017) .........................................................................32

*Planet Bingo, Inc. v. Kerr*,
No. 5:10-cv-315, 2011 WL 845235 (N.D. Fla. Mar. 8, 2011).............................................31

*Plasticos Vandux De Colombia, S.A. v. Robanda Int'l*,
No. 10-60188-CIV, 2010 WL 5392646 (S.D. Fla. Dec. 21, 2010).......................................10

*Platinum Props. Inv. Network, Inc. v. Sells*,
No. 18-CV-61907, 2019 WL 3940153 (S.D. Fla. Aug. 21, 2019) ........................................12

*Posner v. Essex Ins. Co., Ltd.*,
178 F.3d 1209 (11th Cir. 1999) ..............................................................................28

*Prentice v. R.J. Reynolds Tobacco Co.*,
338 So. 3d 831 (Fla. 2022)....................12, 13

*Prou v. Giarla*,
62 F. Supp. 3d 1365 (S.D. Fla. 2014)....................24

*Quail Cruises Ship Mgmt., Ltd. v. Agencia de Viagens CVC Tur Limitada*,
No. 09-23248-CIV, 2011 WL 5057203 (S.D. Fla. Oct. 24, 2011)....................31

*Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*,
119 F.3d 935 (11th Cir. 1997)....................13

*Rioberg Int'l Trade Co., LLC v. Mangels Indus. S.A.*,
No. 6:23-CV-2084-ACC-LHP, 2024 WL 5055406 (M.D. Fla. Sept. 30, 2024),
*R&R adopted,* 2024 WL 5055411 (M.D. Fla. Oct. 17, 2024)....................24

*Roche Diagnostics Corp. v. Priority Healthcare Corp.*,
407 F. Supp. 3d 1216 (N.D. Ala. 2019)....................12, 22, 23

*Roche Diagnostics Corp. v. Priority Healthcare Corp.*,
No. 2:18-CV-01479-KOB, 2020 WL 2309874 (N.D. Ala. May 8, 2020)....................14, 19

*Roche Diagnostics Corp. v. Smith*,
No. 2:17-CV-05552, 2022 WL 4596720 (D.N.J. Sept. 30, 2022)....................12

*Rosen v. TRW, Inc.*,
979 F.2d 191 (11th Cir. 1992)....................35

*Rosenfeld Gallery, LLC v. Truist Bank*,
719 F. Supp. 3d 1270 (S.D. Fla. 2024)....................8

*Sculptchair, Inc. v. Century Arts, Ltd.*,
94 F.3d 623 (11th Cir. 1996)....................33

*Sevi v. Israel Disc. Bank of New York*,
No. 13-21922-CIV, 2014 WL 12861833 (S.D. Fla. Nov. 24, 2014)....................12, 13

*Siegmund v. Xuelian Bian*,
No. 16-62506-CIV, 2018 WL 1611197 (S.D. Fla. Apr. 2, 2018)....................2, 13

*SMC Constr. Se., LLC v. Claypool Holdings LLC*,
No. 6:21-CV-747-WWB-GJK, 2021 WL 9595536 (M.D. Fla. Sept. 1, 2021)....................13

*Solidda Grp., S.A. v. Sharp Elecs. Corp.*,
No. 12-21411-CIV, 2014 WL 12513613 (S.D. Fla. Mar. 6, 2014)....................20

*Solyom v. World Wide Child Care Corp.*,
No. 14-80241-CIV, 2015 WL 6167411 (S.D. Fla. Oct. 15, 2015)....................17

*Special Purpose Accounts Receivable Co-op. Corp. v. Prime One Cap. Co., L.L.C.*, 125 F. Supp. 2d 1093 (S.D. Fla. 2000) ....................31

*State Farm Mut. Auto. Ins. Co. v. Health & Wellness Servs., Inc.*, 389 F. Supp. 3d 1137 (S.D. Fla. 2018) ....................2, 22

*State Farm Mut. Auto. Ins. Co. v. LaRocca*, No. 8:21-CV-2536-SCB-AEP, 2022 WL 1401565 (M.D. Fla. May 3, 2022)....................8, 16

*State Farm Mut. Auto. Ins. Co. v. Lewin*, 535 F. Supp. 3d 1247 (M.D. Fla. 2021)....................18

*State Farm Mut. Auto. Ins. Co. v. Physicians Grp. of Sarasota, L.L.C.*, 9 F. Supp. 3d 1303 (M.D. Fla. 2014)....................22

*State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 427 F. App'x 714 (11th Cir. 2011) (per curiam) ....................23

*Steadman v. Specialized Loan Servicing LLC*, No. 17-81044-CIV, 2018 WL 3413028 (S.D. Fla. Mar. 5, 2018) ....................25

*Steel Media Grp., LLC v. Lewis*, No. 1:22-CV-21780, 2023 WL 1413043 (S.D. Fla. Jan. 6, 2023), *R&R adopted*, 2023 WL 1332832 (S.D. Fla. Jan. 31, 2023) ....................24, 25, 26

*In re Takata Airbag Prods. Liab. Litig.*, 462 F. Supp. 3d 1304 (S.D. Fla. 2020) ....................20

*Tavakoli v. Doronin*, No. 18-21592-CIV, 2019 WL 1242669 (S.D. Fla. Mar. 18, 2019) ....................28

*Taylor v. Moskow*, No. 16-20222-Civ-Scola, 2017 WL 5239503 (S.D. Fla. Jan. 26, 2017), *aff'd*, 717 F. App'x 836 (11th Cir. 2017) ....................29

*Tick v. Cohen*, 787 F.2d 1490 (11th Cir. 1986) ....................27

*Toilet Taxi, Corp. v. Se. Serv. Corp.*, No. 09-61923-CIV, 2010 WL 11505249 (S.D. Fla. July 22, 2010) ....................25

*In re Torcise*, 116 F.3d 860 (11th Cir. 1997) ....................27

*Trudell Med. Int'l v. D R Burton Healthcare LLC*, No. 4:18-CV-9-H-KS, 2020 WL 4372133 (E.D.N.C. Mar. 23, 2020) ....................14

*United States v. Browne*,
505 F.3d 1229 (11th Cir. 2007) ....................14

*United States v. Gonzalez*,
404 F. App'x 403 (11th Cir. 2010) ....................2

*United States v. Pub. Warehousing Co. K.S.C.*,
No. 1:05-CV-2968-TWT, 2017 WL 1021745 (N.D. Ga. Mar. 16, 2017) ....................8

*United States v. Schwartz*,
541 F.3d 1331 (11th Cir. 2008) ....................13, 15

*United States v. Silvestri*,
409 F.3d 1311 (11th Cir. 2005) ....................14

*United Techs. Corp. v. Mazer*,
556 F.3d 1260 (11th Cir. 2009) ....................26, 29

*Valderrama v. Rousseau*,
No. 11-CIV-24637, 2012 WL 12925174 (S.D. Fla. Sept. 18, 2012) ....................15

*Vargas v. Citrix Sys., Inc.*,
716 F. Supp. 3d 1295 (S.D. Fla. 2024) ....................10

*Wachovia Bank N.A. v. Tien*,
658 F. App'x 471 (11th Cir. 2016) ....................24

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
792 F.3d 1313 (11th Cir. 2015) ....................7

*Weinberg v. Adv. Data Processing, Inc.*,
147 F. Supp. 3d 1359 (S.D. Fla. 2015) ....................20

*Wilding v. DNC Servs. Corp.*,
941 F.3d 1116 (11th Cir. 2019) ....................14

*Williams v. Wells Fargo Bank N.A.*,
No. 11-21233-CIV, 2011 WL 4901346 (S.D. Fla. Oct. 14, 2011) ....................20

**Statutes**

Fla. Stat. § 772.11 ....................24, 26

**Other Authorities**

Fed. R. Civ. P. 9(b) ....................2

Fed. R. Civ. P. 15(a)(1) ....................35

Fed. R. Civ. P. 19 .......... 27

Fed. R. Civ. P. 37 .......... 35

Fed. R. Civ. P. 45 .......... 27

Plaintiff Eli Lilly and Company ("Lilly") respectfully submits this opposition ("Opposition") to the motions to dismiss Lilly's First Amended Complaint ("FAC") filed by DrugPlace, Inc. (FL), DrugPlace, Inc. (TN) (together "DrugPlace"), Community Health Initiative, Inc., Nakorn Wholesalers, LLC, Galaxy Med, LLC d/b/a Galaxy Pharmacy, Brightline Wholesale LLC, Paul Leight, Kevin Singer, Edgar Enriquez, Lane Mazei, Danielle Giscombe, Readus Smith, Jerry Maynard Sr., Jerry Maynard II, Daniel Hoffner, and Texas Pharmacy Enterprise, LLC (collectively, "Defendants").[1] *See* Dkt. Nos. 157, 158, 161, 162, 163, 168, 180, and 182.

## PRELIMINARY STATEMENT

Defendants' motions to dismiss are baseless. The FAC, Dkt. No. 201, alleges in great detail, backed by overwhelming evidence, that Defendants conspired to submit more than $200 million worth of fraudulent rebate claims based on fake prescriptions for nonexistent patients. Defendants contend that these allegations, ***taken as true***, do not give rise to a cause of action. Defendants are incorrect. Massive fraud is not permitted by Florida law.

All Defendants' arguments are meritless. The FAC is not a shotgun pleading. It sets forth particularized allegations of each Defendant's specific role in an elaborate fraudulent enterprise. The fact that Defendants worked in concert to effectuate a single scheme is the result of their conspiracy, not any defect in Lilly's highly detailed allegations. Nor can Defendants escape liability because they transmitted their fraudulent rebate claims through intermediary PBMs. It is well established that a party who makes fraudulent misrepresentations is liable where, as here, such statements are foreseeably conveyed to, and relied upon by, other parties. Defendants' invocations of the intracorporate conspiracy doctrine, and some Defendants' contentions that their roles are too minor or that their conduct had an "obvious alternative explanation," are equally unavailing. The FAC alleges a coordinated, multi-party operation involving separate legal entities and individuals with specific roles and personal stakes in the fraud. It plausibly alleges that all Defendants are liable for fraud, conspiracy, and negligent misrepresentation.

Lilly's claims for unjust enrichment and money had and received are equally well supported. The FAC traces more than $150 million in rebate funds from Lilly, through the

---

[1] Defendant Misha Maynard filed an Answer and has not joined any motions to dismiss, so she is not included in the definition of Defendants for purposes of this Opposition. Lilly's opposition to the motions to dismiss filed by Relief Defendants Christopher DeMarco, DeMarco Landscape Design Group, LLC, and Rockaway Investments Inc. will be filed separately on October 9, 2026. *See* Dkt. No. 186.

intermediary chain, to DrugPlace and then to specific individual Defendants and their affiliated entities. And Lilly's civil theft claim is supported by particularized allegations of Defendants' intentional scheme to extract Lilly's funds through fabricated rebate claims. Finally, Lilly properly alleges personal jurisdiction over the non-resident Defendants because they conspired with Florida residents, and repeatedly traveled to Florida to do so. If there is any doubt on this matter, it should be resolved through discovery, not acceptance of Defendants' self-serving declarations.

## ARGUMENT

### I. Lilly Has Sufficiently Alleged Every Claim Against All Defendants

To defeat a motion to dismiss, all that is required is "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For fraud claims, "a party must state with particularity the circumstances constituting fraud or mistake," but "conditions of a person's mind," such as malice, intent, and knowledge may be alleged generally. Fed. R. Civ. P. 9(b); *see also Melton v. Century Arms, Inc.*, 243 F. Supp. 3d 1290, 1297 (S.D. Fla. 2017) (Moreno, J.). In considering fraud claims, courts "must be careful to harmonize the directives of Fed. R. Civ. P. 9(b) with the broader policy of notice pleading" under Rule 8(a). *Siegmund v. Xuelian Bian*, No. 16-62506-CIV, 2018 WL 1611197, at *4 (S.D. Fla. Apr. 2, 2018) (Moreno, J.) (citation omitted). Although pleading the "who, what, when, where, and how" of the alleged fraud is one way to satisfy Rule 9(b), *see* Dkt. No. 158 at 5, the Eleventh Circuit has long recognized that Rule 9(b) may be satisfied by "alternative means," so long as each defendant is on notice of the misconduct charged. *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1512 (11th Cir. 1988). Here, Lilly's allegations of fraud are not only plausible but demonstrably true.

#### A. The FAC Includes Particularized Allegations of Each Individual Defendant's Role, Negating Any "Group Pleading" or "Shotgun Pleading" Objection

Far from being an "impermissible shotgun pleading" (Dkt. No. 158 at 6–9; Dkt. No. 168 at 19–20; Dkt. No. 163 at 18 n.15), the FAC provides detailed, individualized allegations for each Defendant. The FAC uses "collective terms" like DrugPlace Entities or Fraud Defendants because, as alleged in detail, Defendants acted collectively to defraud Lilly. Importantly, "all knowing participants in a fraudulent scheme are legally liable for the actions of an individual who acts to carry out the scheme." *United States v. Gonzalez*, 404 F. App'x 403, 405 (11th Cir. 2010); *accord State Farm Mut. Auto. Ins. Co. v. Health & Wellness Servs., Inc.*, 389 F. Supp. 3d 1137, 1147 (S.D. Fla. 2018). Thus, Lilly does not need to know the precise actions that each Defendant perpetrated;

such a standard would make it practically impossible to hold any individual responsible for participation in a secretive fraudulent scheme. Lilly must only provide "sufficiently detailed descriptions of many of the misrepresentations made by [other] defendant[s] with whom [the defendant] is affiliated so as to allege that there is adequate evidence to connect him to the scheme." *Metrahealth Ins. Co. v. Anclote Psychiatric Hosp., Ltd.*, No. 96-CV-2547, 1997 WL 728084, at *3 (M.D. Fla. Oct. 23, 1997).[2] Lilly easily meets this standard. Moreover, Lilly's claims against the individual Defendants are not based strictly on their roles as principals or officers: Lilly alleges that the individual Defendants were "personally" involved in and benefited from the fraudulent schemes. FAC ¶¶ 33–35, 61, 257, 291. This renders them personally liable. *FDIC v. Copenhaver*, No. 8:13-CV-2037-T-33TBM, 2014 WL 12621202, at *6 (M.D. Fla. May 10, 2014) (under Florida law, "individual officers of a corporation 'may be held personally liable for their tortious acts, even if such acts were committed . . . as corporate officers'" (citation omitted)), *R&R adopted sub nom. FDIC v. Mangano*, 2014 WL 12621581 (M.D. Fla. June 4, 2014).

**Paul Leight** and **Kevin Singer** "developed the scheme's structure and bankrolled the operation." FAC ¶ 215. Together, they directed the submission of rebate claims through the DrugPlace Entities (as defined in the FAC at ¶ 29), managed the DrugPlace Conspiracy's (as defined in the FAC at ¶ 43) relationships with the rebate aggregator, PBMs, and secondary wholesalers, and siphoned hundreds of millions of dollars for themselves through a network of accounts they controlled. *Id.* ¶¶ 214–17. They "directed the submission of rebate claims through the DrugPlace Entities," *id.*, making false statements about the medication being dispensed to patients, *id.* ¶ 243. The FAC alleges hundreds of thousands of false rebate claims containing fake patient identification numbers, fake dispensing dates, and false quantities—all of which Singer and Leight oversaw. *Id.* ¶¶ 125–27, 145–53, 240–42. The FAC further alleges that "Singer serv[ed] as the primary operational liaison with pharmaceutical manufacturers and managing staff on a day-to-day basis." *Id.* ¶ 215. Both Defendants personally received hundreds of millions of dollars from

[2] *See also JW Gaming Dev., LLC v. James*, No. 3:18-CV-02669-WHO, 2018 WL 4853222, at *5 (N.D. Cal. Oct. 5, 2018) (Rule 9(b) does not require "allegations of specific falsities by each defendant" so long as the plaintiff "identif[ies] each one's role in the scheme"), *aff'd*, 778 F. App'x 545 (9th Cir. 2019); *Needham & Co., LLC v. Access Staffing, LLC*, No. 15 CIV. 2487 (NRB), 2016 WL 4399288, at *15 (S.D.N.Y. Aug. 12, 2016) (Rule 9(b) satisfied where "[t]he Complaint clearly links [individual defendants] to the conduct of [the corporate defendant]," and so the defendants' "demanded details of each individual's conduct are not required here").

the scheme and layered and concealed those proceeds through a complicated series of transactions across a network of entities they controlled. *Id.* ¶¶ 202–04, 216–17. Singer specifically instructed a pharmacist to withhold information from Lilly's auditors, "stall and run out the clock," and deliberately provide false information. *Id.* ¶ 110. These are particularized allegations establishing scienter, direction, and personal involvement.

**DrugPlace** "purported to act as the exclusive pharmacy and PBM for the Community Health prescription cost share program affiliated with the Church." *Id.* ¶ 207. DrugPlace purchased medication from pharmaceutical wholesalers for the purported purpose of filling prescriptions for the cost share program but instead sold most of it on the secondary market, falsely representing it was dispensed to patients. *Id.* ¶¶ 208–09. The FAC details the prescription-level data fields contained in each fraudulent claim submitted by DrugPlace—including the unique prescription identification number, the date of the purported dispense, the quantity and days' supply, and the pharmacy identification number—all of which originated with DrugPlace and were transmitted substantively intact to Lilly. *Id.* ¶¶ 125–27; *infra* Section I.B.1. Former DrugPlace pharmacists testified that DrugPlace filled only a handful of Trulicity prescriptions per month, in direct contradiction to the hundreds of thousands of claims submitted. FAC ¶¶ 147–48.

**Community Health** operated a sham prescription cost share program for Church members whose prescriptions were supposedly filled by DrugPlace. *E.g.*, *id.* ¶¶ 21, 135, 150–53, 154–60. Defendants argue that Lilly neither relied on nor identified the false statements made by Community Health. Dkt. No. 158 at 13. But the FAC explains that fraudulent documents were "printed on the Community Health Initiative letterhead, with a Community Health logo," which is sufficient to identify Community Health as the author. FAC ¶ 155. Community Health is referenced on DrugPlace's website and is the owner of the registered trademark for "DrugPlace." *Id.* ¶ 21. The FAC further details how Community Health was critical to the fraud, by setting up fraudulent formularies and allowing DrugPlace to submit fraudulent rebates. *Id.* ¶¶ 157–59, 164–69. And the FAC sufficiently pleads reliance, as detailed below, *infra* Section I.B.2.

**Readus Smith** "conceived of the program with Defendants Leight and Singer," and "coordinated with the other DrugPlace Defendants to use the program to make it seem like the DrugPlace Entities were serving a legitimate patient base of Church members." FAC ¶ 219. He created and served as CEO of Community Health, personally participated in a past Lilly audit during which he made multiple false representations, and used his position "to deter Lilly from

asking questions and obstruct its investigation, and to insulate the scheme from scrutiny." *Id.* ¶¶ 34, 219; *see also id.* ¶¶ 97–104. Smith argues that the allegations against him are stale and that his associations with COGIC, Community Health, and others do not establish participation in fraud. Dkt. No. 161 at 2–7. But the FAC alleges Smith's role in the fraud in detail, explaining that Smith created Community Health and "conceived of the program with Defendants Leight and Singer." FAC ¶ 219. The FAC also explains the importance of his role as a faith leader, lending "ecclesiastical legitimacy to the scheme" and making it seem like the DrugPlace Entities were serving "a legitimate patient base of Church members and to ensure the appearance of a legitimate faith-based benefit plan." *Id.* Moreover, Smith's fraudulent conduct on behalf of Community Health in 2015, *id.* ¶¶ 97–104, is not "stale"; rather, it is direct evidence of his participation in the fraudulent scheme. Smith's suggestion that he has withdrawn from the conspiracy is a factual defense, not a basis for dismissal on the pleadings.

**Daniel Hoffner** managed and participated in DrugPlace's operations in multiple capacities as Office Manager and Director of Purchasing. Hoffner argues that the FAC identifies no "representative claim tied to Hoffner," and the only allegation about him relates to documents authored in 2025, after the rebate payments were made. Dkt. No. 180 at 10. But the FAC alleges that Hoffner, who has worked at DrugPlace since at least 2015, managed DrugPlace's rebate businesses, including by participating in "discussions regarding DrugPlace's rebate submissions with both the DrugPlace rebate aggregator and Lilly," "prepared false prescription cost share program[s]," and was in "charge of purchasing wholesale medications on behalf of DrugPlace," among other allegations. FAC ¶ 42. The FAC further alleges that Hoffner "supervised and coordinated Nakorn and Brightline's resales of medication to secondary distributors"—the very resales that generated the false premise for Defendants' rebate claims. *Id*. And he authored fake documents designed "to deceive third parties into believing that DrugPlace's rebate claims were legitimate," which is at minimum evidence of participation in the cover-up. *Id.* ¶ 42. The metadata confirming Hoffner's authorship, *id.* ¶ 159, is direct evidence of his knowing participation, as is his participation in the 2015 audit, *id.* ¶¶ 97–104.

**Galaxy,** which submitted false rebate claims based on misrepresentations that it sold Trulicity to patients, argues that Lilly does not provide "*any* claim-level data, audit findings, or specific transactional information related to the Galaxy Operation." Dkt. No. 162 at 6. That is untrue: the FAC alleges in detail that Galaxy submitted false rebate claims to Health Delegates,

which in turn submitted them to Emisar, before reaching Lilly. FAC ¶¶ 175–77. The FAC further alleges that these claims exhibited the same anomalies as DrugPlace's claims, confirming that the Galaxy Operation (as defined in the FAC at ¶ 182) was running the identical scheme. *Id.* ¶ 177. The FAC also describes the genuine NHCLC's sworn statement that it had no knowledge of Galaxy's purported NHCLC program and that the operation was fabricated, providing further confirmation of the fraud. *Id.* ¶ 183.

**TPE**, managed by Singer, Leight, and a Singer-owned entity, received the rebate payments for Galaxy's fraudulent claims and distributed them to other Defendants. *Id.* ¶¶ 26, 179; *see infra* Section I.C.2.c.

**Lane Mazei** "operated the wholesale distribution infrastructure through which diverted pharmaceuticals were channeled into secondary markets while DrugPlace and Galaxy simultaneously submitted rebate claims for those same products." FAC ¶ 220. As sole manager of both Galaxy and wholesaler **Brightline**, Mazei was the signatory or proposed signatory on agreements relating to both entities' rebate and resale businesses, and he conducted Galaxy business from DrugPlace's Florida headquarters. *Id.* ¶¶ 220, 39–40. Mazei argues that Lilly "states no specific facts regarding Mr. Mazei's conduct in furtherance of the fraud," and that the claims against him are based solely on his ownership interests in Galaxy and Brightline. Dkt. No. 162 at 8–9. But managing closely held businesses that engaged in massive fraud is sufficient to state a claim against an individual. *See, e.g.*, *Fried v. Stiefel Labs., Inc.*, No. 11-CV-20853, 2012 WL 4364300, at *7–8 (S.D. Fla. June 8, 2012) (Rule 9(b) satisfied where each individual defendant allegedly participated in a common fraud scheme, and the existence of a "close-knit, family control group ma[de] it exceedingly difficult for [plaintiff] to determine, especially prior to conducting any discovery, what fraudulent conduct is attributable to which of the [Individual] Defendants").

**Jerry Maynard Sr.** was "the Jurisdictional Prelate of the COGIC Department of Health" who "partnered with the Fraud Defendants to lead and promote the Community Health Initiative" and, in that capacity, "created the guise of a massive 'prescription cost share program' for COGIC members, enabling the Fraud Defendants to perpetuate their rebate scheme." FAC ¶¶ 35, 222. **Jerry Maynard II**, in his role as Chairman of the Board of Community Health, "created the guise of a massive 'prescription cost share program' for COGIC members." *Id.* ¶ 223. Both Maynards attended meetings with Singer and Leight at the DrugPlace offices in Florida. *Id.* ¶¶ 222–23.

**Edgar Enriquez**, as General Manager of wholesaler **Nakorn**, oversaw the warehouse

operations through which Nakorn diverted medications into the secondary market. *Id.* ¶¶ 225–26. Former DrugPlace pharmacist Laura Renfro testified that Enriquez was responsible for transferring medicine between DrugPlace and Nakorn, and former DrugPlace pharmacist Allison Supko confirmed that Enriquez supervised all the wholesale employees at the Nakorn warehouse and frequently coordinated with her regarding pharmacy operations. *Id.* Enriquez is also listed as a contact for Community Health and has long been affiliated with Leight, Singer, and Smith. *Id.* ¶ 38.

**Danielle Giscombe** served as a primary representative for Brightline and as the pharmacy technician at Galaxy—the pharmacy that purportedly dispensed thousands of units of Trulicity to NHCLC members under a program that NHCLC has confirmed never existed. *Id.* ¶¶ 28, 41, 220, 227. The fact that Giscombe worked for both the pharmacy submitting the fraudulent rebate claims and the wholesaler through which diverted medications were channeled into the secondary market makes clear that she was aware of the scheme. *See id.* ¶¶ 182, 227.

These are only selections of the allegations setting forth Defendants' roles in the scheme. Far from the undifferentiated "group pleading" that Defendants describe, the FAC identifies each Defendant's specific function within a coordinated, multi-party operation, and does so with a level of factual detail well beyond what Rule 9(b) requires. *See, e.g.*, *Gov't Emps. Ins. Co. v. Mas*, No. 19-21183-CIV, 2020 WL 9604436, at *10 (S.D. Fla. Mar. 31, 2020) (rejecting defendants' "group pleading" challenge because "while [plaintiff] has lumped the Defendants together in certain portions of [the complaint], this does not negate the fact that [plaintiff] has still alleged specific instances of conduct sufficient to inform each Defendant of its individual role in the alleged scheme"); *Acciard v. Whitney*, No. 2:07-CV-476-UA-DNF, 2008 WL 5120898, at *7 (M.D. Fla. Dec. 4, 2008) (rejecting argument that defendants were improperly "lumped together" because complaint alleged different roles held by different defendants and groups of defendants). The FAC pleads ample particularized facts against each Defendant and is a far cry from the kind of "shotgun pleading" that Defendants argue is forbidden under Eleventh Circuit case law. Dkt. No. 158 at 7.[3]

[3] The Eleventh Circuit has criticized shotgun pleadings that fail "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). Here, however, Defendants cannot reasonably argue that the FAC fails to put them on notice of the claims against them and the factual allegations that support those claims, given the detailed factual allegations throughout

**B. The FAC Sufficiently Alleges Fraud Under Rule 9(b)**

Under Florida law, the elements of fraud are "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) the consequent injury by the party acting in reliance on the representation." *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1307 (11th Cir. 2022) (quoting *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010)). "[T]he plaintiff must allege the who, what, where, when, and how of each element, except scienter, which can be pleaded generally." *United States v. Pub. Warehousing Co. K.S.C.*, No. 1:05-CV-2968-TWT, 2017 WL 1021745, at *3 (N.D. Ga. Mar. 16, 2017) (citing *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005)).[4] Notably, "Florida law does not require that the defendant directly communicate any fraudulent misrepresentation to the plaintiff." *Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1189 (11th Cir. 2025) (citation omitted). Moreover, allegations of "systemic fraud" can be "representative" rather than encyclopedic. *State Farm Mut. Auto. Ins. Co. v. LaRocca*, No. 8:21-CV-2536-SCB-AEP, 2022 WL 1401565, at *9 (M.D. Fla. May 3, 2022) (Rule 9(b) satisfied where allegations "did not identify each allegedly fraudulent claim and each defendant's specific misrepresentations" because complaint provided "multiple representative examples of systemic fraud"); *accord MeterLogic, Inc. v. Copier Sols., Inc.*, 126 F. Supp. 2d 1346, 1360–61 (S.D. Fla. 2000); *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 662–63 (11th Cir. 2015) ("prolonged multi-act schemes"). Lilly's fraud claims fully comply with Rule 9(b).

**1. Lilly Sufficiently Alleges The "Who, What, Where, When, and How" of Defendants' Fraud**

Defendants contend that Lilly has not sufficiently alleged how they were involved in any

---

the FAC, the restatement of relevant facts in each count, and the FAC's organization into clearly delineated subsections. *See id.* at 1324–25 (finding complaint that was organized by clear subsections with counts that restated relevant facts sufficient to give defendants notice). Indeed, Defendants' motions to dismiss recite and dispute the specific conduct attributed to them in detail, demonstrating that they understand precisely what is alleged against them.

[4] The elements of negligent misrepresentation and fraudulent misrepresentation are "identical," except that for negligent misrepresentation "the defendant need not know the statement is false" and must "owe[] a duty to the plaintiff to communicate accurate information." *Benavides v. Tesla, Inc.*, 804 F. Supp. 3d 1242, 1311 (S.D. Fla. 2025) (cleaned up). For the same reasons the FAC sufficiently pleads fraud, it sufficiently pleads negligent misrepresentation. Defendants' conduct was in the Fraud Defendants' (as defined in the FAC at ¶ 255) sole control and foreseeably created a "broader 'zone of risk'" that posed a threat of harm to Lilly. *See Rosenfeld Gallery, LLC v. Truist Bank*, 719 F. Supp. 3d 1270, 1277 (S.D. Fla. 2024) (citation omitted).

fraudulent activity or what that activity was. *See* Dkt. No. 158 at 12–14; Dkt. No. 161 at 2–7; Dkt. No. 162 at 5–11; Dkt. No. 163 at 13; Dkt. No. 180 at 10–11. Lilly's allegations against each Defendant are more than adequately pleaded as detailed above. With respect to what the fraudulent activity was, the FAC alleges in great detail how DrugPlace, Community Health, Galaxy, and individual Defendants Leight, Singer, Smith, Mazei, and Hoffner (collectively, the "Fraud Defendants") knowingly and intentionally generated and submitted hundreds of thousands of false rebate claims to Lilly for Trulicity. FAC ¶¶ 84, 113–14, 121–27, 146–53, 154–74, 201–04, 206–21. Each rebate claim made numerous specific false representations about the purported dispensation and utilization of Trulicity, including submitting fake identification numbers associated with nonexistent prescriptions, fake dates on which the medicine was dispensed to the nonexistent patient, false representations about the quantity and supply amount dispensed, and false statements about the amounts that the patient and health plan paid. *Id.* ¶¶ 126–27, 255. Through this scheme, Defendants profited by hundreds of millions of dollars, all to the detriment of Lilly. *Id.* ¶¶ 7, 114, 117, 205, 240, 243. Thus, the FAC alleges *who* made the misrepresentations (the Fraud Defendants), *what* was misrepresented (that Trulicity had been dispensed to patients), *when* (hundreds of thousands of rebate claims from 2020 through 2025), *where* (through intermediaries, from DrugPlace in Florida and Tennessee and Galaxy in Texas and Florida to Lilly in Indiana), and *how* (by submitting fabricated prescription-level data through a chain of intermediaries designed to obscure the fraud's origins). *See* FAC ¶¶ 121–27, 175–77, 255.

In addition to the thousands of individual misrepresentations in their rebate submissions, the Fraud Defendants created fake Community Health/DrugPlace and NHCLC/Galaxy prescription cost share program documents and formularies, which were shams generated to further the fraudulent rebate scheme. *Id.* ¶¶ 5, 142–49, 157–63, 168–73. The Community Health formularies are printed on COGIC Department of Health letterhead and purport to be approved by the COGIC Department of Health (headed by Defendants Smith and Maynard Sr.). *Id.* ¶¶ 21, 155. Individually and collectively, these documents represented the existence of a legitimate cost share program with hundreds of thousands of eligible members. But no such program exists. *Id.* ¶¶ 5, 7, 145–60, 164–67. These misrepresentations are also false statements constituting fraud, upon which Defendants intended Lilly to rely. *Id.* ¶¶ 157–63, 255–58.

The FAC alleges copious evidence corroborating the falsity of these representations, including sworn testimony from DrugPlace's own pharmacists confirming that Defendants' rebate

claims and prescription cost share programs were made up out of whole cloth. *Id.* ¶¶ 147–48, 151–52. After reviewing Lilly's complaint, COGIC also publicly announced that it has "no knowledge" of the acts alleged, and had "not knowingly participated in, authorized, or condoned" any of it. *Id.* ¶ 153. Similarly, NHCLC declared under oath that it was "shocked" to hear of Defendants' assertions, that it has no prescription drug program and no relationship with Defendants, and that it had never operated or been affiliated with any such pharmacy program. *Id.* ¶ 183.

Moreover, bank records show that Defendants sold more than four and a half billion dollars' worth of prescription medication to secondary market wholesalers between 2019 and 2026, confirming that they were reselling the medicine they claimed to be dispensing to patients. *Id.* ¶ 201. Defendants "layered and concealed their fraudulent proceeds through a complicated series of transactions that have all the hallmarks of fraud, siphoning nearly a billion dollars to accounts controlled by individual defendants Paul Leight and Kevin Singer." *Id.* ¶ 202. These allegations illustrate how Defendants carried out and profited from their fraudulent rebate scheme.

The FAC's extraordinarily detailed and well-founded allegations are more than sufficient to apprise Defendants of what representations Lilly contends were fraudulent and by whom they were made. *See, e.g.*, *Cincinnati Ins. Co. v. Atlas Healthcare, LLC*, No. 2:17-CV-1310-TMP, 2019 WL 450854, at *2 (N.D. Ala. Feb. 5, 2019) (allegations describing when defendant made representations and the types of fraudulent statements were "sufficient to apprise [defendant] what representations [plaintiff] contends were fraudulent"); *Plasticos Vandux De Colombia, S.A. v. Robanda Int'l*, No. 10-60188-CIV, 2010 WL 5392646, at *3 (S.D. Fla. Dec. 21, 2010) (denying motion to dismiss where plaintiffs "pleaded a clear, specific, and detailed set of factual circumstances which give rise to a natural and logical inference that the Defendants acted with the intent to deceive"); *Vargas v. Citrix Sys., Inc.*, 716 F. Supp. 3d 1295, 1310 (S.D. Fla. 2024) (denying motion to dismiss in relevant part where complaint detailed the benefits that defendants stood to gain from their fraud and explained how the statements and omissions were misleading).[5]

[5] *See also Cevdet Aksut Ve Ogullari Koll. Sti v. Cavusoglu*, No. 14-3362 (WJM), 2015 WL 4317750, at *9 (D.N.J. July 14, 2015) (Rule 9(b) satisfied for individual corporate principals' substantive RICO liability when plaintiff alleged "shell corporation" scheme to profit from falsified invoices, elude judgments, then create new corporations, where the plaintiff "cannot be expected to know exactly what roles [the individual defendants] played" without discovery); *Dornberger v. Metro. Life Ins. Co.*, 961 F. Supp. 506, 529 (S.D.N.Y. 1997) (allegation that individual defendants "knowingly managed, operated, maintained and conducted the illegal

### 2. Lilly Sufficiently Alleges Reliance on Defendants' Misrepresentations

The allegations in the FAC also clearly establish that Lilly relied on Defendants' misrepresentations. With each false rebate claim, the Fraud Defendants submitted fake patient utilization and prescription information misrepresenting that the Trulicity in question had been dispensed to patients, which is a precondition to rebate payment. FAC ¶¶ 4, 6–7, 8, 78, 82, 113–17, 121, 146–48, 176–77, 255–56. As a result, Lilly relied on the fake patient utilization and prescription data every time it paid rebates on Defendants' fraudulent claims. *Id.* ¶¶ 78, 121–23, 125–27, 255–56. Such allegations are more than sufficient to establish reliance.

The FAC establishes that Defendants' misrepresentations were directed to and intended for Lilly, despite being transmitted through intermediaries. Defendants' arguments to the contrary misconstrue Lilly's allegations and the governing law. *E.g.*, Dkt. No. 158 at 10–12; Dkt. No. 168 at 11; Dkt. No. 163 at 13; Dkt. No. 162 at 7; Dkt. No. 180 at 8–9. When the Fraud Defendants prepared and submitted their false rebate claims and the fake supporting patient utilization and prescription data, they knew and intended that they would be transmitted to Lilly through a chain of intermediaries (from Health Delegates to either Ascent or Emisar and then to Lilly). FAC ¶¶ 78, 114, 117, 121–23, 125–27, 255–58. Indeed, Defendants used this chain to make it significantly harder for Lilly to detect their fraud. *Id.* ¶¶ 85, 121, 248–50, 257–58. Because Lilly is the only entity that pays rebates for Trulicity, Defendants clearly intended for their misrepresentations to reach and influence Lilly to pay the rebates they claimed. *Id.* ¶¶ 206–07, 258, 265.

The law is clear that false statements transmitted through intermediaries constitute fraud. *See, e.g.*, *Otto Candies*, 137 F.4th at 1188 ("[F]or fraudulent misrepresentations, liability extends to 'those whom [the speaker] has reason to expect it to reach and influence.'" (citation omitted)); *see also, e.g.*, *id.* at 1189–93 (defendant bank's misrepresentations to third-party intermediaries who in turn disseminated that information to plaintiffs constituted fraud where bank recognized that the misrepresentations would be transmitted to them through said third parties); *Koch v. Royal Wine Merchants, Ltd.*, 907 F. Supp. 2d 1332, 1344–45 (S.D. Fla. 2012) (denying dismissal of fraud

---

fraudulent activities of the" enterprise was *alone* sufficient to satisfy Rule 9(b) because complaint "thoroughly described the precise activities of the [enterprise] which are alleged to have been unlawful," defendants were "put on adequate notice of the nature of [the] claims against them"); *FDIC ex rel. First Nat'l Bank of Nevada v. Lazcano*, No. 08-21769, 2009 WL 10699886, at *3 (S.D. Fla. Jan. 6, 2009) (allegations sufficient to survive motion to dismiss even though complaint did not identify loan documents with misrepresentations and time and place of closing).

claim against importer of counterfeit wine based on plaintiff's reliance on counterfeit labels affixed to bottles sold to him via third-party resellers). Any other rule would legalize fraudulent conduct.

Defendants argue that Florida does not recognize so-called "third-party" reliance. *See* Dkt. No. 158 at 10–12; Dkt. No. 168 at 11. But Lilly does not allege that it relied on misrepresentations that Defendants made to others that were not intended to reach Lilly. *Cf. Sevi v. Israel Disc. Bank of New York*, No. 13-21922-CIV, 2014 WL 12861833, at *12 (S.D. Fla. Nov. 24, 2014). Lilly alleges direct reliance on Defendants' misrepresentations, which were made for the purpose of inducing *Lilly's* reliance. Indeed, the FAC specifically alleges that prescription-level data fields that reached Lilly originated with DrugPlace and were transmitted substantively intact through the intermediary chain. FAC ¶¶ 125–27, 258. *See Platinum Props. Inv. Network, Inc. v. Sells*, No. 18-CV-61907, 2019 WL 3940153, at *3 (S.D. Fla. Aug. 21, 2019) (explaining that there are "well-established circumstances in which a plaintiff can properly plead a claim for fraudulent or negligent misrepresentation through indirect reliance," providing that the "party claiming injury based on the misrepresentation is the same party who relies on said misrepresentation").

Nor does the intermediaries' independent processing role defeat Lilly's reliance. As the Florida Supreme Court explained in a case Defendants cite throughout their briefs, Florida law requires only that a plaintiff "entered a transaction in whole *or in part* because of the defendant's fraudulent conduct." *Prentice v. R.J. Reynolds Tobacco Co.*, 338 So. 3d 831, 838 (Fla. 2022) (emphasis added). Lilly plainly did so here. The purpose of Defendants' fraud was to transmit fraudulent patient utilization data and prescription records through intermediaries to Lilly. This data was transmitted substantially unchanged through the intermediary chain to Lilly, inducing Lilly to pay rebates on claims that were fake. Courts have consistently held that this intermediary structure does not defeat reliance. *See Roche Diagnostics Corp. v. Priority Healthcare Corp.*, 407 F. Supp. 3d 1216, 1246–47 (N.D. Ala. 2019) (reliance sufficiently pleaded where manufacturer relied on false information that defendant pharmacies submitted through PBMs and insurers who independently processed the claims); *Roche Diagnostics Corp. v. Smith*, No. 2:17-CV-05552, 2022 WL 4596720, at *15 (D.N.J. Sept. 30, 2022) (same, where defendants submitted false statements to intermediary PBMs who in turn submitted them to manufacturers).

The cases Defendants cite are materially different. *Feng v. Walsh*'s statement that "first-party reliance is an element of a common-law fraud claim" is not inconsistent with Lilly's allegations because Lilly *does* allege first-party reliance; Lilly relied on Defendants'

misrepresentations. *See* No. 19-24138-CIV, 2021 WL 8055449, at *10 (S.D. Fla. Dec. 21, 2021). In *Sevi*, the defendant's statements "were not made for the purpose of inducing [p]laintiff to rely on them," and plaintiff "did not and cannot allege that he relied—reasonably or otherwise"—on those statements. *Sevi*, 2014 WL 12861833, at *12. Here, by contrast, Defendants' false rebate claims and fabricated patient data were created for the sole purpose of inducing Lilly to rely on them and issue payment. And in *Prentice*, the Florida Supreme Court addressed a fundamentally different issue: whether, in the context of reviewing a jury instruction, a plaintiff could prevail on a fraud claim by proving reliance on concealed or omitted information. *See Prentice*, 338 So. 3d at 838–41. Here, Lilly does not allege fraud by omission or concealment. Rather, Lilly alleges reliance on hundreds of thousands of express misrepresentations that Defendants created and transmitted to cause Lilly to pay rebates.

**C. The FAC Sufficiently Alleges Defendants' Civil Conspiracy Under Rule 9(b)**

Under Florida law, a civil conspiracy claim requires: "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Cordell Consultant, Inc. Money Purchase Plan & Tr. v. Abbott*, 561 F. App'x 882, 886 (11th Cir. 2014). Although Rule 9(b)'s heightened pleading standard applies to conspiracy claims sounding in fraud, Rule 9(b) must be harmonized with the "short and plain" notice requirements of Rule 8. *Siegmund*, 2018 WL 1611197, at *4; *SMC Constr. Se., LLC v. Claypool Holdings LLC*, No. 6:21-CV-747-WWB-GJK, 2021 WL 9595536, at *1 (M.D. Fla. Sept. 1, 2021).

Courts in this Circuit have long recognized that the agreement element of conspiracy "is rarely susceptible of direct proof and 'may be inferred from the conduct of the participants.'" *Halabi v. Mega Bank*, No. 25-20902-CIV, 2026 WL 2818314, at *11 (S.D. Fla. Sept. 2, 2026) (quoting *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 950 (11th Cir. 1997)), *R&R adopted*, No. 25-CV-20902-JB, 2026 WL 2814760 (S.D. Fla. Sept. 18, 2026). This inference may arise "from the relationship of the parties, their overt acts and concert of action, and the totality of their conduct." *United States v. Schwartz*, 541 F.3d 1331, 1361 (11th Cir. 2008); *AFL-CIO v. City of Miami*, 637 F.3d 1178, 1192 (11th Cir. 2011) (same); *Gilison v. Flagler Bank*, 303 So. 3d 999, 1004 (Fla. 4th DCA 2020) (finding complaint sufficiently alleged civil conspiracy

by alleging that the parties assisted in the fraud and had at least an implied agreement to do so).[6] Lilly's conspiracy allegations are more than sufficient.

### 1. Lilly Has More Than Adequately Alleged a Conspiracy

Defendants wrongly assume that Lilly needs to plead direct evidence of a conspiracy. In fact, courts may infer participation from Defendants' conduct and "circumstantial evidence of a scheme," including where the allegations show that each defendant knew of and participated in the fraudulent enterprise. *United States v. Silvestri*, 409 F.3d 1311, 1328 (11th Cir. 2005) (citation omitted); *United States v. Browne*, 505 F.3d 1229, 1264 (11th Cir. 2007); *see also Koch*, 907 F. Supp. 2d at 1346–47; *Anheuser-Busch, Inc. v. Campbell*, 306 So. 2d 198, 199–200 (Fla. 1st DCA 1975); *Roche Diagnostics Corp. v. Priority Healthcare Corp.*, No. 2:18-CV-01479-KOB, 2020 WL 2309874, at *17 (N.D. Ala. May 8, 2020).

The inferences and evidence drawn from Lilly's FAC easily satisfy Rule 9(b). Far from the conclusory "labels and conclusions" Defendants describe, the FAC alleges a coordinated, multi-party operation in which:

- DrugPlace, Galaxy, and individual Defendants Leight, Singer, Mazei, and Hoffner knowingly submitted or caused to be submitted, through intermediaries, fraudulent rebate claims to Lilly for medications that were never dispensed to patients, and received payment in connection with those claims; TPE also received the fraudulent rebate payments for claims submitted by Galaxy. FAC ¶¶ 174–76, 179, 215.
- Community Health and individual Defendants Smith, Jerry Maynard Sr., and Jerry Maynard II willingly created and perpetuated a sham health plan to which fraudulent rebates could be attributed. *Id.* ¶¶ 180, 215, 219, 222–23.[7]
- Nakorn, Brightline, and individual Defendants Enriquez, Giscombe, and Hoffner knowingly diverted Lilly's medications that DrugPlace and Galaxy purported to

[6] *See also Trudell Med. Int'l v. D R Burton Healthcare LLC*, No. 4:18-CV-9-H-KS, 2020 WL 4372133, at *2 (E.D.N.C. Mar. 23, 2020) (inferring conspiracy based on allegations that defendants were affiliated corporate entities with some common employees, officers, or ownership).

[7] The argument that Lilly lacks standing to assert its claims against Defendants Maynard Sr. and Maynard II due to a lack of traceability fails for similar reasons. Dkt. No. 163 at 15–16, 20 n.16. "[E]ven harms that flow indirectly from the action in question can be said to be 'fairly traceable' to that action for standing purposes." *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1125 (11th Cir. 2019). The FAC easily clears that bar: without the Community Health infrastructure that Maynard Sr. and Maynard II built and maintained, there would have been no program to attribute fraudulent rebates to, and no injury to Lilly. FAC ¶¶ 21, 35–36, 222–23, 264. Nor does the fact that the Maynards began promoting Community Health in 2008 insulate them from liability. The FAC alleges an ongoing conspiracy in which the Maynards "willingly creat[ed] and perpetuat[ed] a sham health plan front to which fraudulent rebates could be attributed." *Id.* ¶ 264.

dispense to patients to the secondary market for resale. *Id.* ¶¶ 176, 215, 225–27.

- The proceeds of the conspiracy—hundreds of millions of dollars—flowed from these entities back to Leight, Singer, Smith, Enriquez, the Maynards, Mazei, Giscombe, TPE, Hoffner and others, directly or indirectly. *Id.* ¶¶ 179, 195, 201–04, 276.

Each of these categories of conduct—fabricating and submitting false claims, creating the sham programs to which claims were attributed, diverting medication to the secondary market, and receiving and distributing the proceeds—was essential to the scheme's operation. No single Defendant could have carried out the fraud alone. The interlocking nature of these roles, combined with the common ownership, overlapping addresses, and financial interconnections among Defendants, supports a powerful inference of an agreement. *See Valderrama v. Rousseau*, No. 11-CIV-24637, 2012 WL 12925174, at *7 (S.D. Fla. Sept. 18, 2012) ("Civil conspiracy can be inferred 'from the relationship of the parties, their overt acts and concert of action, and the totality of their conduct.'" (quoting *Schwartz*, 541 F.3d at 1361)).

These Defendants came together to form and operate their sham businesses for the sole purpose of carrying out their fraud. FAC ¶¶ 257, 264. They did so through the above coordinated, mutually beneficial operation with close ties, including common ownership and officers, and often, common facilities or addresses. *Id.* ¶¶ 14, 18, 21–23, 25–27, 29, 178–82. The individual Defendants, as the owners, officers, employees, and associates of DrugPlace, Galaxy, Nakorn, Brightline, and Community Health, directed and controlled the conspiracy, including devising, implementing, and enforcing policies and business practices that enabled the other Defendants to carry out the fraud. *Id.* ¶¶ 212–21. The rebate payments ultimately received by DrugPlace and the Galaxy Operation (as defined in the FAC at ¶ 182) through the fraudulent rebate claims, and the proceeds of the prescription resales on the secondary market received by Nakorn and Brightline, flowed from these entities back to Leight, Singer, Smith, Enriquez, the Maynards, Mazei, Giscombe, Hoffner, TPE, and others, directly or indirectly. *Id.* ¶¶ 202, 213, 276, 293.

Lilly's FAC identifies each Defendant's specific role in, knowledge of, and connection to the conspiracy. *Supra* Section I.A. Just as these allegations meet the standards for establishing individual liability, they meet—and indeed exceed—the requirements for pleading conspiracy under Florida law and Rule 9(b). *See, e.g.*, *Diamond Resorts U.S. Collection Dev., LLC v. Miller*, No. 6:20-CV-1668-PGB-LRH, 2022 WL 445508, at *7 (M.D. Fla. Jan. 11, 2022) (civil conspiracy claim sufficiently pled with allegations that defendant (1) worked with other defendants (2) to

commit torts against plaintiffs and (3) assisted in specific aspects of the scheme); *Cordell Consultant*, 561 F. App'x at 886 (allegations sufficiently particularized where complaint stated that two defendants conceived of fraud and other defendants helped implement it by preparing and submitting false documents); *LaRocca*, 2022 WL 1401565, at *11 (conspiracy sufficiently pled where complaint alleged each defendant agreed to and acted in furtherance of fraudulent scheme).[8]

**2. Defendants' Conspiracy Defenses Are Meritless**

a. The Intracorporate Conspiracy Doctrine Does Not Apply

The DrugPlace Defendants, the Maynards, and Enriquez invoke the intracorporate conspiracy doctrine, which provides that "a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *Kirwin v. Price Commc'ns Corp.*, 391 F.3d 1323, 1326 (11th Cir. 2004). This doctrine has no application here. Lilly does not allege a conspiracy that takes place within a corporation. The alleged conspiracy is between separate individuals and discrete legal entities, operating independently of each other as a matter of corporate form, yet intentionally interconnected in order to perpetuate the conspiracy. FAC ¶¶ 13–43, 171–80, 213–15. The FAC specifically alleges that the entity Defendants "are independent legal entities," "hold unique company registrations in their respective states of incorporation," and "file separate tax returns." *Id.* ¶ 30. This forecloses reliance on the intracorporate conspiracy doctrine. *See Adventist Health Sys. Sunbelt Healthcare Corp. v. Weiss*, No. 6:20-cv-877-Orl-40DCI, 2021 WL 1238321, at *6 (M.D. Fla. Feb. 22, 2021) (rejecting

---

[8] *See also Gov't Emps. Ins. Co. v. Kalin*, No. 8:21-CV-2556-VMC-JSS, 2022 WL 613808, at *3 (M.D. Fla. Mar. 2, 2022) (conspiracy sufficiently pled where defendant in position of oversight "knew of, agreed to and acted in furtherance of the common and overall objective"); *Charles v. Fla. Foreclosure Placement Ctr., LLC*, 988 So. 2d 1157, 1160 (Fla. 3d DCA 2008) (conspiracy sufficiently pled where participants in sham transaction "acted in concert" and "pocketed" the proceeds). Multiple Defendants rely heavily on *ECB USA, Inc. v. Savencia Cheese USA, LLC*, 148 F.4th 1332 (11th Cir. 2025), but that case is readily distinguishable. In *ECB USA*, the Eleventh Circuit affirmed dismissal because the allegations against Savencia Cheese amounted to nothing more than the bare assertion that Savencia "acted in furtherance of the conspiracy" and that its "participation" was "required" for the conspiracy to succeed. *Id.* at 1347. The court faulted the complaint for "restat[ing] the language of a Florida conspiracy claim" without any specific allegations as to how the defendant participated. *Id.* at 1347–48. As reflected above, Lilly has done much more than merely recite the elements of a conspiracy claim: the FAC sets forth particularized allegations of each Defendant's specific role, knowledge, and conduct within a detailed, interlocking scheme, supported by, among other things, sworn testimony, fraudulent documents, business records, and financial records.

intracorporate conspiracy defense for conspiracy involving multiple corporations and their employees because doctrine "does not bar allegations of a conspiracy between two separate entities"); *Solyom v. World Wide Child Care Corp.*, No. 14-80241-CIV, 2015 WL 6167411, at *2 (S.D. Fla. Oct. 15, 2015) (undisputed evidence that corporate defendants are separate legal entities, operating independently, "does not support reliance [] on intra corporate conspiracy doctrine").

b. <u>The Maynards' and Smith's Conduct Is Part of the Active Conspiracy</u>

The Maynards contend that their alleged conduct "removes them from the conspiracy" or is too remote to contribute to it. Dkt. No. 163 at 6–7. This argument fails. The FAC alleges that the Maynards created and perpetuated the sham prescription cost share program, which enabled the entire fraud. FAC ¶¶ 222–23, 264. Community Health was not peripheral to the conspiracy; it was the cover story for the fraudulent scheme. The Maynards' meetings with Singer and Leight at DrugPlace's Florida and Tennessee offices, *id.* ¶¶ 56–57, 222–23, combined with their leadership roles in the entity at the center of the scheme, support a reasonable inference of their knowing participation. *See Halabi*, 2026 WL 2818314, at *11. Moreover, the Maynards' argument that their conduct amounts to nothing more than lawful church-related activity is contradicted by the FAC's allegations that they created and perpetuated a sham program that COGIC itself has disavowed. FAC ¶¶ 153, 222–23. And creating and maintaining Community Health constitutes a series of overt acts in furtherance of the conspiracy.

Similarly, Smith's argument that the allegations against him predate the rebate scheme and rest on mere "association" is also unavailing. Just as the allegations against Smith are sufficient to state claims against him for fraud (*supra* Section I.A) they also establish his liability for conspiracy, as his role in the fraudulent scheme involved coordination and agreement with other Defendants.

c. <u>The Conspiracy Allegations Against Giscombe, Enriquez, Hoffner, and TPE Are Particularized and Not Susceptible to an "Obvious Alternative Explanation"</u>

Defendants Giscombe, Enriquez, and TPE argue that the allegations against them individually are not sufficiently particularized to withstand dismissal. Giscombe argues that the only substantive allegation against her is a "single allegation" that she "knowingly diverted" Lilly's medications. Dkt. No. 157 at 15–16 (cleaned up). She further contends that even this allegation is insufficient because "the fraud Lilly alleges is not the resale of the medication; it is

the submission of rebates associated with resold medication." *Id.* at 16. But a co-conspirator need not personally submit the fraudulent claims to be liable; she need only know of the scheme and contribute to it. *Donofrio v. Matassini*, 503 So. 2d 1278, 1281 (Fla. 2d DCA 1987); *State Farm Mut. Auto. Ins. Co. v. Lewin*, 535 F. Supp. 3d 1247, 1266 (M.D. Fla. 2021). Giscombe's knowing diversion of medications—which DrugPlace and Galaxy simultaneously claimed to be dispensing to patients—is an essential element of the scheme without which the fraudulent rebate submissions could not succeed, because the scheme would otherwise lose money. Giscombe's argument is akin to a getaway driver arguing she was not part of the conspiracy to rob the bank, as it was not a car-driving conspiracy.

Enriquez contends that his conduct amounts to nothing more than "routine operational logistics." Dkt. No. 168 at 1–2. But as the General Manager of Nakorn, Enriquez oversaw the warehouse operations through which diverted medications were channeled into the secondary market. FAC ¶¶ 225–26. The FAC also alleges Enriquez's connections with the other co-conspirators, noting his "affiliat[ion] with Leight, Singer, and Smith," *id.* ¶ 38, that he previously worked for DrugPlace in Florida, and that he is listed as a contact for Community Health, the entity to which fraudulent prescriptions were attributed. *Id.*

TPE argues that the FAC alleges no facts showing TPE's knowledge of or agreement to participate in the alleged fraud, and that merely receiving downstream payments does not plead conspiracy. Dkt. No. 182 at 7–10. But the FAC alleges far more than passive receipt of funds. TPE is managed by the architects of the scheme. FAC ¶ 26. TPE is a signatory to the agreement between TPE, DrugPlace, and Health Delegates relating to rebate submissions for both DrugPlace and Galaxy. *Id.* TPE directly received the fraudulently obtained rebate payments for claims associated with Galaxy and distributed those funds to other Defendants. *Id.* ¶¶ 26, 179. And TPE is a creditor to Mazei with a security interest in his ownership stake in Galaxy—cementing its financial integration into the Galaxy Operation. *Id.* ¶¶ 26, 40. These allegations establish that TPE was a deliberate financial instrument of the conspiracy, managed by the scheme's principals and contractually embedded in the rebate submission infrastructure.

Enriquez, Giscombe, Hoffner, and Mazei contend that their conduct is susceptible to an "obvious alternative explanation" of lawful business activity. But this doctrine, drawn from *Iqbal* and applied in the Eleventh Circuit in *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010), does not apply where, as here, the complaint plausibly alleges knowing

participation in a fraudulent scheme. As discussed above, the FAC describes a comprehensive fraudulent operation in which each Defendant served a specific function. The notion that Defendants were innocently going about their business, oblivious to the fabrication of hundreds of thousands of prescriptions, strains credulity and does not support dismissal. *See, e.g.*, *Andrews v. D'Souza*, 696 F. Supp. 3d 1332, 1350 (N.D. Ga. 2023) (rejecting an "obvious, alternative explanation" as "unpersuasive at [the] pleading stage," particularly in light of requirement that court take allegations as true when considering a motion to dismiss); *Denton v. Bd. of Governors for the State Univ. Sys. of Fla.*, No. 24-10567, 2026 WL 1660092, at *21 (11th Cir. June 9, 2026) (motives turn on factual issues that cannot be resolved at the motion-to-dismiss stage); *Roche Diagnostics Corp.*, 2020 WL 2309874, at *19 (for similar scheme, "inferences from [Defendants'] conduct" and "circumstantial evidence of a scheme" that provides "evidence that each defendant necessarily must have known that the others were also conspiring to participate in the same enterprise" is sufficient to survive a motion to dismiss).

### D. The FAC States Claims for Unjust Enrichment and Money Had and Received

Because it has sufficiently alleged that Defendants operated a scheme to fraudulently obtain contractually defined rebates to Lilly's detriment, Lilly establishes the elements of its remaining claims for negligent misrepresentation (detailed *supra* Section I.B), unjust enrichment, and money had and received. Under Florida law, claims for unjust enrichment and money had and received require: "(1) that the plaintiff has conferred a benefit on the defendant, who has knowledge of the benefit; (2) that the defendant voluntarily accepted and retained the benefit conferred, and (3) that the circumstances are such that it would be inequitable for the defendants to retain the benefit without paying the value of it to the plaintiff." *Century Sr. Servs. v. Consumer Health Ben. Ass'n*, 770 F. Supp. 2d 1261, 1266–67 (S.D. Fla. 2011) (citation omitted); *see Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1390–91 (S.D. Fla. 2014) ("In Florida, a claim for money had and received is treated the same (and requires the same showing) as a claim for unjust enrichment or restitution."). Here, the FAC alleges that, because of Defendants' fraudulent schemes, Lilly conferred on Defendants a benefit of more than $200 million in rebate payments, which Defendants knowingly and voluntarily accepted. FAC ¶¶ 276, 293. The FAC traces these funds from Lilly through the intermediary chain to DrugPlace, and then to specific individual Defendants and their affiliated entities. *Id.* ¶¶ 202–04, 216–17, 276–79. Lilly has also alleged that it would be inequitable for Defendants to retain this benefit, since it was obtained fraudulently at Lilly's

expense. *Id.* ¶¶ 275–80. These allegations are clearly sufficient.

**1. Lilly Conferred a Direct Benefit on Defendants**

Defendants' argument that Lilly's equitable claims fail because Lilly paid rebates to Defendants through non-party PBMs is contrary to the law. *See* Dkt. No. 158 at 19–21; Dkt. No. 162 at 16–17; Dkt. No. 163 at 18–19; Dkt. No. 168 at 17; Dkt. No. 182 at 9–11. It is well established that "[t]he 'direct benefit' element of an unjust enrichment claim may be satisfied where a benefit is conferred through an intermediary." *Weinberg v. Adv. Data Processing, Inc.*, 147 F. Supp. 3d 1359, 1368–69 (S.D. Fla. 2015); *see also In re Takata Airbag Prods. Liab. Litig.*, 462 F. Supp. 3d 1304, 1328 (S.D. Fla. 2020) (Moreno, J.) ("As this Court previously explained, '[a] plaintiff may confer a direct benefit through indirect contact with a defendant through an intermediary.'" (citation omitted)). Indeed, courts in this District routinely deny motions to dismiss unjust enrichment and/or money had and received claims where the plaintiff alleges that it paid funds to a defendant through a third-party intermediary. *See, e.g.*, *Weinberg*, 147 F. Supp. 3d at 1368–69 (denying motion to dismiss unjust enrichment claim where plaintiff paid defendant through an intermediary and collecting cases); *Williams v. Wells Fargo Bank N.A.*, No. 11-21233-CIV, 2011 WL 4901346, at *5 (S.D. Fla. Oct. 14, 2011) (plaintiffs properly pleaded unjust enrichment by alleging defendants "received kickbacks and/or commissions" derived from insurance premiums paid to third-parties by plaintiffs).[9] They recognize that "[i]t would not serve the principles of justice and equity to preclude an unjust enrichment claim merely because the 'benefit' passed through an intermediary before being conferred on a defendant." *Carriuolo v. Gen. Motors LLC*, 72 F. Supp. 3d 1323, 1326 (S.D. Fla. 2014) (quoting *Hamilton v. SunTrust Mortg., Inc.*, 6 F. Supp. 3d 1312, 1317 (S.D. Fla. 2014)).

The FAC alleges that Defendants ***intentionally*** used intermediaries to extract Lilly's money and perpetuate a massive fraudulent scheme. FAC ¶¶ 1–8, 117–27, 275–80. The PBMs and Health Delegates did not independently decide to confer a benefit on Defendants. They processed

[9] *See also Solidda Grp., S.A. v. Sharp Elecs. Corp.*, No. 12-21411-CIV, 2014 WL 12513613, at *3 (S.D. Fla. Mar. 6, 2014) (unjust enrichment claim not barred simply because subject funds passed through third parties before arriving with defendants); *Takata Airbag Prods. Liab. Litig.*, 462 F. Supp. 3d at 1328 (similar); *MerchACT, LLC v. Ronski*, No. 9:20-cv-82043-WPD, 2022 WL 3682207, at *8 (S.D. Fla. Jan. 13, 2022); *see also Cape, LLC v. Och-Ziff Real Est. Acquisitions LP*, 370 So. 3d 1010, 1016–17 (Fla. 5th DCA 2023) (plaintiffs adequately stated unjust enrichment claim where benefit passed through intermediary before being conferred on defendants).

the false data that Defendants manufactured; Lilly paid rebate funds to the intermediary PBMs based on Defendants' fraudulent submissions; and those funds were then conveyed back to Defendants. FAC ¶¶ 72, 82, 276. That is unjust enrichment. *See Coffey v. WCW & Air, Inc.*, No. 3:17-CV-90-MCR-CJK, 2018 WL 4154256, at *9 (N.D. Fla. Aug. 30, 2018) ("The Eleventh Circuit has found that a plaintiff may have conferred a 'direct benefit' on a defendant through an intermediary . . . where the defendant directly profited from and involved in depriving the plaintiff of the benefit at issue." (citing *Cimaglia v. Moore*, 724 F. App'x 695, 699 (11th Cir. 2018))).

Here, moreover, the FAC's financial tracing confirms that Lilly's funds traveled through the intermediary pipeline and reached Defendants. Between 2020 and 2025, the DrugPlace operation caused Lilly to pay more than $200 million in rebates to Ascent and Emisar, which remitted a portion of these funds to Health Delegates, which in turn remitted at least $150 million to DrugPlace in connection with the DrugPlace operation's Trulicity rebate claims. FAC ¶¶ 276, 293. From there, the FAC traces specific downstream disbursements: Singer and Leight received substantial transfers from DrugPlace, including funds routed through identified bank accounts and affiliated entities, that they then transferred to third-party co-conspirators and/or spent on millions of dollars' worth of real estate and luxury cars. *Id.* ¶¶ 202–04, 216–17, 276–79. For TPE, the FAC specifically alleges that TPE "directly received the fraudulently obtained rebate payments for claims associated with Galaxy" and that part of these funds were "swept into Leight-controlled accounts." *Id.* ¶¶ 26, 179. These are not the vague, conclusory allegations of downstream benefit that doomed the claims in the cases that Defendants rely on;[10] nor are they commercial transactions that Lilly seeks to unwind.[11] The FAC contains particularized allegations of identified funds

[10] *Cf. City of Miami v. Eli Lilly & Co.*, No. 21-22636-CIV, 2022 WL 198028, at *8–9 (S.D. Fla. Jan. 21, 2022) (no identified flow of benefit to drug manufacturers named as defendants); *GVB MD v. Aetna Health Inc.*, No. 19-22357-CIV, 2019 WL 6130825, at *6 (S.D. Fla. Nov. 19, 2019) (Moreno, J.) (healthcare provider failed to state unjust enrichment claim against insurance carrier for value of unpaid medical treatments provided to carrier's members because "the benefits of healthcare treatment flow to patients, not insurance companies").

[11] *Cf. Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1102 (11th Cir. 2021) (noting in dicta that plaintiffs had also failed to allege that they conferred a direct benefit to the manufacturer since they purchased the alcohol in question from a retailer, not the manufacturer); *ADT LLC v. Skyline Sec. Mgmt., Inc.*, No. 24-CV-20758, 2026 WL 575122, at *27–29 (S.D. Fla. Mar. 2, 2026) (dismissing unjust enrichment claim where plaintiff alleged corporate defendant profited off accounts it purchased from entity that had engaged in deceptive business practices because the allegations "describe[d] a third-party transaction, not the direct flow of an intermediary").

flowing from Lilly's payments through the pipeline to specific Defendants.

Defendants fault Lilly for not tracing a specific dollar amount on a specific date to each individual Defendant. *See, e.g.*, Dkt. No. 158 at 20; Dkt. No. 161 at 8–9; Dkt. No. 157 at 18–19. But that level of granularity is not required at the pleading stage, particularly where the specific factual information at issue—here, the precise allocation of fraudulently obtained funds among co-conspirators—"is peculiarly within the defendant's knowledge or control." *Roche Diagnostics Corp.*, 407 F. Supp. 3d at 1252 (quoting *Hill v. Morehouse Med. Assocs., Inc.*, No. 02-14429, 2003 WL 22019936, at *3 (11th Cir. Aug. 15, 2003)). The FAC establishes the pipeline, traces the aggregate flow, and identifies the recipients at each stage. That more than satisfies Lilly's burden to plead a plausible entitlement to relief. The defendant-specific allocation of those funds is a matter for discovery, not a barrier to the courthouse door. *See Health & Wellness Servs., Inc.*, 389 F. Supp. 3d at 1148 (declining to dismiss unjust enrichment claim against clinic doctor where plaintiff stated in its complaint that its payments to the clinic were "distributed" to clinic Medical Directors through an insurance fraud scheme).

Finally, Defendants Giscombe, Smith, and Enriquez argue that they have not received *any* money from the rebate scheme. Dkt. No. 157 at 18–19; Dkt. No. 161 at 8; Dkt. No. 168 at 19. But Lilly does not need to show that each co-conspirator received funds to allege a direct benefit. As the court explained in a similar medical fraud case: "It can be reasonably inferred that individuals intimately involved with the organization and operation of the entity that directly received a benefit have benefitted themselves so as to support a claim for unjust enrichment against them 'in their individual capacities.'" *State Farm Mut. Auto. Ins. Co. v. Physicians Grp. of Sarasota, L.L.C.*, 9 F. Supp. 3d 1303, 1312 (M.D. Fla. 2014).

### 2. Lilly Has Pled Its Equitable Claims With Sufficient Particularity

Defendants move to dismiss Lilly's unjust enrichment and money had and received claims for failure to meet Rule 9(b)'s heightened pleading requirements. According to Defendants, because Lilly's equitable claims "are grounded in the same allegedly fraudulent conduct, Rule 9(b) requires Lilly to plead with particularity 'the who, what, when, where, and how' of the alleged unjust enrichment for each [Defendant]." Dkt. No. 158 at 21 (quoting *Omnipol, A.S.*, 32 F.4th at 1307 n.11); *see also* Dkt. No. 163 at 19; Dkt. No. 162 at 16; Dkt. No. 157 at 18. The FAC includes ample factual allegations to satisfy Rule 9(b) requirements, including detailed allegations describing how the ill-gotten funds flowed to Defendants. *Supra* Sections I.B–I.C. Moreover, as

noted above, "Rule 9(b) is relaxed 'when specific factual information about the fraud is peculiarly within the defendant's knowledge or control.'" *Roche Diagnostics Corp.*, 407 F. Supp. 3d at 1252 (quoting *Hill*, 2003 WL 22019936, at *3) (denying motion to dismiss unjust enrichment and money had and received claims).[12]

### 3. Defendants' Remaining Arguments Against Lilly's Equitable Claims Fail

Defendants make a handful of additional arguments that also fail to support dismissal of Lilly's unjust enrichment and money had and received claims. First, Defendants argue that Lilly's unjust enrichment and money had and received claims are improperly "duplicative" of each other. Dkt. No. 158 at 22; Dkt. No. 182 at 11. But Rule 8(d)(2)–(3) expressly permits alternative pleading, and courts in this Circuit have permitted plaintiffs to advance alternative unjust enrichment and money had and received claims at the pleading stage. *E.g.*, *Frayman v. Douglas Elliman Realty, LLC*, 515 F. Supp. 3d 1262, 1287–88 (S.D. Fla. 2021); *Forbo Flooring, Inc. v. Falcone Glob. Sols., LLC*, No. 1:19-CV-2876-MHC, 2020 WL 13430056, at *5 (N.D. Ga. Oct. 23, 2020).

Second, some Defendants argue that Lilly has failed to plead that it lacks an adequate legal remedy. *See* Dkt. No. 163 at 19; Dkt. No. 168 at 16; Dkt. No. 180 at 15. But Lilly plainly alleges that its harm is "impossible to adequately remedy by money damages." FAC ¶ 245. Moreover, courts in this Circuit have held that "[a] plaintiff may maintain an unjust enrichment claim in the alternative to its legal claims." *Aceto Corp. v. TherapeuticsMD, Inc.*, 953 F. Supp. 2d 1269, 1287 (S.D. Fla. 2013); *see also State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 427 F. App'x 714, 722 (11th Cir. 2011) (per curiam) (explaining that while "[i]t is generally true that equitable remedies are not available under Florida law when adequate legal remedies exist . . . , that rule does not apply to unjust enrichment claims" (internal citation omitted)), *rev'd in part on other grounds*, *State Farm Mut. Auto. Ins. Co. v. Williams*, 824 F.3d 1311 (11th Cir. 2014). Furthermore, even assuming, *arguendo*, that Lilly cannot ultimately recover under both a fraud theory (for example) and an unjust enrichment theory, "Defendant[s'] argument" to dismiss Lilly's unjust enrichment claim "is premature, and cannot result in dismissal at this juncture." *Harris v.*

---

[12] Defendants' similar argument that Lilly must identify with particularity the stolen property to succeed on its civil theft claim fails for the same reason. *See* Dkt. No. 158 at 24. The FAC contains detailed financial tracing allegations; Lilly is not required to demonstrate more at the pleading stage, particularly when it is Defendants who have knowledge about this information. *See, e.g.*, *Roche Diagnostics Corp.*, 407 F. Supp. 3d at 1252.

*Nordyne, LLC*, No. 14-CIV-21884, 2014 WL 12516076, at *8 (S.D. Fla. Nov. 14, 2014) (collecting cases).

**E. The FAC States a Claim for Civil Theft**

Under Fla. Stat. § 772.11, "[a]ny person who proves by clear and convincing evidence that he or she has been injured in any fashion by reason of any violation of" Florida's theft statutes "has a cause of action for threefold the actual damages sustained and, in any such action, is entitled to" damages. In practice, "[c]ivil theft is essentially a conversion in which the defendant acted with criminal intent." *Freeman v. Sharpe Res. Corp.*, No. 6:12-cv-1584, 2013 WL 2151723, at *12 (M.D. Fla. May 16, 2013); *see also Prou v. Giarla*, 62 F. Supp. 3d 1365, 1381 (S.D. Fla. 2014). "[T]he plaintiff must allege that the defendant knowingly obtained or used, or endeavored to obtain or use the plaintiff's property with intent to either temporarily or permanently (1) deprive the plaintiff of his right to or a benefit from the property or (2) appropriate the property to the defendant's own use or to the use of any person not entitled to the property." *Freeman*, 2013 WL 2151723, at *12. Lilly's allegations amply satisfy these requirements. FAC ¶¶ 2, 240–43; *supra* Section I.A.

Defendants' argument that Lilly has failed to plead felonious intent fails for multiple reasons. *See, e.g.*, Dkt. No. 158 at 24–25; Dkt. No. 162 at 15–16; Dkt. No. 161 at 9–10; Dkt. No. 163 at 20. First, "Florida law does not require the pleading of an element of felonious intent in order to state a civil theft claim." *Rioberg Int'l Trade Co., LLC v. Mangels Indus. S.A.*, No. 6:23-CV-2084-ACC-LHP, 2024 WL 5055406, at *3 (M.D. Fla. Sept. 30, 2024) (collecting cases), *R&R adopted,* No. 6:23-CV-2084-ACC-LHP, 2024 WL 5055411 (M.D. Fla. Oct. 17, 2024); *Steel Media Grp., LLC v. Lewis*, No. 1:22-CV-21780, 2023 WL 1413043, at *12 (S.D. Fla. Jan. 6, 2023) (noting that the words "felonious intent" need not be pleaded), *R&R adopted*, No. 1:22-CV-21780-JLK, 2023 WL 1332832 (S.D. Fla. Jan. 31, 2023).

Second, the FAC clearly pleads sufficient facts to demonstrate Defendants' intent, which "may be shown by circumstantial evidence." *Wachovia Bank N.A. v. Tien*, 658 F. App'x 471, 475 (11th Cir. 2016). The circumstantial evidence here creates a strong inference that Defendants "inten[ded] to deprive [Lilly] of its property." *Steel Media Grp., LLC*, 2023 WL 1413043, at *12 (citing *Wachovia Bank N.A.*, 658 F. App'x at 475). Defendants orchestrated a complex fraudulent scheme to extract rebate payments from Lilly; there is no other reason why Defendants would have submitted hundreds of thousands of rebate claims if not to deprive Lilly of its property (i.e., the

rebate funds). *Id.* (felonious intent properly alleged where "Defendants made deliberately false representations to Plaintiff, with the intent to deprive Plaintiff of its property, and, according to the Complaint, without any intention of providing Plaintiff with the goods promised in exchange for Plaintiff's property"); *Toilet Taxi, Corp. v. Se. Serv. Corp.*, No. 09-61923-CIV, 2010 WL 11505249, at *2 (S.D. Fla. July 22, 2010) (plaintiff stated civil theft claim by alleging defendant "knowingly obtained [its] property," "with the intent to permanently deprive the [plaintiff] of its right to the property" and with knowledge that it had no legal right to the services); *see also, e.g.*, *Gordon v. Omni Equities, Inc.*, 605 So. 2d 538, 541 (Fla. 1st DCA 1992); *Steadman v. Specialized Loan Servicing LLC*, No. 17-81044-CIV, 2018 WL 3413028, at *2 (S.D. Fla. Mar. 5, 2018).

Moreover, the FAC alleges that Defendants coordinated to submit rebate claims to obscure the fact that only one entity "was responsible for large volumes of rebates for just a single drug, Trulicity," "enabl[ing] DrugPlace to avoid Lilly's scrutiny" over the suspicious rebates. FAC ¶ 124. Evidence from BlackPoint's third-party audit shows that Defendants used sham patient prescriptions for the mass quantity of rebates they sought from Lilly, including the fact that each of the tens of thousands of prescriptions was solely for Trulicity, for the same quantity and supply of Trulicity, and that each dispense was coded as a first fill, not a refill. *Id.* ¶¶ 128–33. DrugPlace's pharmacists confirmed that the mass quantities of identical prescriptions were not possible, given the small number of patients actually taking Trulicity, and were unaware of the pharmacy's connection with COGIC. *Id.* ¶¶ 146–53. The massive numbers of Trulicity medications were then resold on secondary markets. *Id.* ¶¶ 185–200.

The FAC has also sufficiently alleged the intent of other individual Defendants. For example, the Maynards "created the guise of a massive 'prescription cost share program' . . . enabling the Fraud Defendants to perpetuate their rebate scheme." *Id.* ¶¶ 222–23. Defendant Enriquez was responsible for taking the Lilly medication that arrived at DrugPlace to Nakorn to eventually be resold on the secondary market as opposed to providing it to actual patients requiring the medication. *Id.* ¶ 225. Giscombe also helped to distribute the Trulicity medication to be resold and worked as a pharmacy technician for a company that was not actually distributing Trulicity medication to patients despite false claims that it was. *Id.* ¶ 227. In addition, Smith "coordinated with the other DrugPlace Defendants to use the program to make it seem like the DrugPlace Entities were serving a legitimate patient base of Church members and to ensure the appearance of a legitimate faith-based benefit plan" and deliberately misled and obstructed Lilly when it began

questioning the legitimacy of the program. *Id.* ¶ 219. As intent often must be inferred from other facts alleged, these statements are more than sufficient to supply the requisite allegations of felonious intent. *See Steel Media Grp., LLC*, 2023 WL 1413043, at *12.

Finally, Enriquez argues the civil theft claim impermissibly "bootstraps" the conspiracy count. Dkt. No. 168 at 18–19. Lilly's civil theft claim is an independent statutory claim under Fla. Stat. § 772.11 based on Defendants' knowing and intentional defrauding of over $200 million of Lilly's money through theft. Overlap in conduct between the conspiracy claim and civil theft claim does not render the theft count duplicative. The Eleventh Circuit allows civil theft claims to proceed alongside claims for conspiracy where each requires proof of distinct elements. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1270, 1274 (11th Cir. 2009) (finding plaintiff sufficiently pled claim for relief on counts of unjust enrichment, civil theft, conversion, and conspiracy).

## II. Emisar, Ascent, and Health Delegates Are Not Parties Required to Be Joined Under Rule 19(a)

Defendants contend that Emisar, Ascent, and Health Delegates must be joined to resolve questions about the receipt, allocation, and distribution of rebate funds. They are wrong. Defendants bear the burden of establishing that an absent party is required under Rule 19(a), *Castillo v. Colmenares*, No. 21-24221-CIV, 2022 WL 22970964, at *4 (S.D. Fla. Apr. 7, 2022), and they have not met it. Their argument conflates an evidentiary need—obtaining information about fund flows—with a Rule 19 need—the inability to fashion complete relief. Those are different concepts, governed by different provisions of the Federal Rules.

### A. The Court Can Accord Complete Relief Among the Existing Parties

Rule 19(a)(1)(A) asks whether the Court can "accord complete relief among existing parties"—whether the relief Lilly seeks against *Defendants* can be granted in full. *Castillo*, 2022 WL 22970964, at *4. It can. This action seeks disgorgement and restitution of funds in *Defendants'* possession and treble damages resulting from Defendants' fraud. The FAC alleges that Health Delegates remitted more than $150 million in rebate proceeds to DrugPlace and its affiliates, which then distributed those funds among the named Defendants and Relief Defendants. FAC ¶ 276. The Court can determine Defendants' liability, calculate damages from evidence obtained through ordinary discovery, and enter judgment ordering Defendants to disgorge the proceeds of their fraud. No aspect of that relief requires the absent entities' participation as parties.

Defendants' three cited authorities confirm rather than undermine this conclusion. In *Fireman v. Travelers Casualty & Surety Co. of America*, the court ordered joinder because the

non-party claimed an independent right to the same insurance proceeds the plaintiff sought, making it a rival claimant to a common fund. No. 10-81564-CIV, 2011 WL 743069, at *3–4 (S.D. Fla. Feb. 24, 2011); *see id.* at *4 (citing *In re Torcise*, 116 F.3d 860 (11th Cir. 1997)). Emisar, Ascent, and Health Delegates assert no claim to the funds in Defendants' hands. They are conduits, not competing claimants. In *Biscayne Park LLC v. Madison Realty Capital, L.P.*, joinder was required because the assets the plaintiff sought were *held by the non-party*. No. 13-20336-CIV, 2013 WL 2243975, at *8 (S.D. Fla. May 21, 2013). Here, the funds Lilly seeks are held by Defendants, not by any absent entity. Whether the PBMs or Health Delegates retained a portion of the overall rebate payments is a question of damages calculation, not of complete relief. *See Helix Inv. Mgmt., LP v. Privilege Direct Corp.*, 364 F. Supp. 3d 1343, 1352 (M.D. Fla. 2019). And *Tick v. Cohen* held that trust beneficiaries were required parties because equitable remedies would necessarily affect their interests in the trust corpus. 787 F.2d 1490, 1494–95 (11th Cir. 1986). The PBMs and Health Delegates are not trust beneficiaries with vested rights; they are commercial intermediaries under separate contracts. A judgment against Defendants would not adjudicate their rights, require them to pay anything, or bind them in any way.

### B. The Absent Entities Have No Protected Interest at Stake, and Discovery Addresses Defendants' Evidentiary Concerns

Defendants have not shown that the absent entities "claim[] an interest relating to the subject of the action" that would be impaired by this litigation. Fed. R. Civ. P. 19(a)(1)(B)(i). A judgment requiring Defendants to return fraudulently obtained funds would not affect any right of the PBMs or Health Delegates, because those entities assert no claim to the proceeds in Defendants' hands. Nor have Defendants identified a "substantial risk" of "double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a)(1)(B)(ii).

Defendants' remaining argument, that joinder is necessary because third-party discovery "cannot bind those entities to any judgment [or] adjudicate their rights," Dkt. No. 158 at 23, misapprehends Lilly's claims. This action seeks no relief against the PBMs or Health Delegates. It does not ask the Court to bind those entities, order them to pay, or subject them to a constructive trust. Because Lilly's claims target the proceeds in Defendants' hands, the absent entities are relevant only as sources of evidence, and discovery, not joinder, is the Federal Rules' mechanism for obtaining evidence from non-parties. *See* Fed. R. Civ. P. 45. Indeed, the FAC's detailed allegations tracing approximately $150 million in transfers from Health Delegates to DrugPlace and its affiliates, FAC ¶ 276, were derived from the very third-party banking records Defendants

claim require joinder to obtain. Rule 19 is not a substitute for the discovery rules. Defendants' motion under Rule 12(b)(7) should be denied.

## III. The Court Has Personal Jurisdiction Over Defendants Maynard Sr., Maynard II, Enriquez, and Giscombe

### A. The Exercise of Jurisdiction Is Appropriate Under Florida's Long-Arm Statute

On a motion to dismiss, the Court is to accept well-pleaded jurisdictional allegations as true and, where Defendants' declarations conflict with the FAC, construe all reasonable inferences in Lilly's favor. *See Murante v. Pedro Land, Inc.*, 761 F. Supp. 786, 787 (S.D. Fla. 1991) (internal citations omitted).

#### 1. Lilly Adequately Alleges Specific Jurisdiction Under Florida's Long-Arm Statute

The non-resident Defendants argue that because Lilly is an Indiana corporation, its injury was not suffered in Florida, and therefore Florida's long-arm statute does not reach them. Dkt. No. 163 at 8; Dkt. No. 168 at 7. But "Florida's long-arm statute only requires a plaintiff's place of injury be Florida if the tortious act was committed *outside* the state." *Tavakoli v. Doronin*, No. 18-21592-CIV, 2019 WL 1242669, at *8 (S.D. Fla. Mar. 18, 2019).[13] Defendants rely on irrelevant cases that required injury in the state because the tortious conduct occurred entirely outside the state. *Cf. Hard Candy, LLC v. Hard Candy Fitness, LLC*, 106 F. Supp. 3d 1231, 1239 (S.D. Fla. 2015) (describing allegations that fall under the "carrying on a business" and "committing a tortious act" provisions of the long-arm statute, but not the "causing injury . . . within this state" provision); *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1216–17 (11th Cir. 1999) (considering tortious acts outside the state that cause injury in Florida).[14]

The FAC provides detailed factual allegations regarding each non-resident Defendant's involvement in the Florida-based conspiracy. The law in Florida is clear that where a plaintiff has alleged a civil conspiracy among defendants to commit tortious acts, and any member of that conspiracy committed a tortious act in Florida in furtherance of the conspiracy, then all of the

[13] As the Eleventh Circuit has noted, reading Florida's long-arm statute to require the "place of injury" to be in Florida "would appear to render superfluous many of the Florida contacts listed in the long-arm statute." *Hinkle v. Cirrus Design Corp.*, 775 F. App'x 545, 548 n.3 (11th Cir. 2019).

[14] Defendants' reliance on *Mansion v. Eli Lilly and Co.*, No. 25-17282 (MAS) (JBD) (D.N.J. filed Nov. 7, 2025), is misplaced. That case involved New Jersey's long-arm statute, which is distinct from Florida's long-arm statute.

conspirators are subject to the jurisdiction of Florida through its long-arm statute—regardless of whether the non-resident defendant has any independent connection to the state. *NHB Advisors, Inc. v. Czyzyk*, 95 So. 3d 444, 448 (Fla. 4th DCA 2012); *see also Elandia Int'l, Inc. v. Ah Koy*, 690 F. Supp. 2d 1317, 1330 (S.D. Fla. 2010) ("If an individual successfully alleges that any member of a conspiracy committed tortious acts in Florida in furtherance of the conspiracy, then all of the conspirators are subject to personal jurisdiction in Florida."); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1354 (S.D. Fla. 2009) ("Florida courts may exercise personal jurisdiction over parties to a Florida civil conspiracy even if the alleged civil conspirator otherwise has no connection to the state."); *Amersham Enters., Inc. v. Hakim-Daccach*, 333 So. 3d 289, 297 (Fla. 3d DCA 2022) ("Because [plaintiff] independently alleged the commission of overt acts in Florida in furtherance of that agreement, 'all of the [alleged] conspirators are subject to the jurisdiction of Florida through its long-arm statute.'" (citation omitted)); *Energy Source, Inc. v. Gleeko Props., LLC*, No. 10-21162-CIV, 2011 WL 3236047, at *6 (S.D. Fla. July 28, 2011) (finding complaint as a whole sufficiently alleged that defendants formed a civil conspiracy, at least some acts in furtherance of which were carried out in Florida, and Florida's long-arm statute thus reached all participants in the conspiracy, even those not otherwise connected to Florida).

Although Lilly adequately alleges conspiracy as discussed above, the allegations of conspiracy required to support long-arm jurisdiction need not "rise to the level to survive a motion to dismiss under Rule 12(b)(6)." *LSM Techs. PTY LTD. v. Sy-Klone Co., LLC*, No. 3:22-CV-1019-BJD-MCR, 2023 WL 5934386, at *17 n.4 (M.D. Fla. Aug. 8, 2023). Rather, "the factual allegations must at least make out a colorable, factually supported claim." *Id.* (quoting *Taylor v. Moskow*, No. 16-20222-Civ-Scola, 2017 WL 5239503, at *4 (S.D. Fla. Jan. 26, 2017), *aff'd*, 717 F. App'x 836 (11th Cir. 2017) (per curiam)). Thus, a court may decline to exercise conspiracy-based jurisdiction only where a plaintiff "fails to plead with specificity any facts supporting the existence of the conspiracy and provides nothing more than vague and conclusory allegations." *NHB Advisors*, 95 So. 3d at 448. That is emphatically not the case here.

Lilly has alleged a detailed, multi-party conspiracy carried out in substantial part from Florida. *Cf. United Techs. Corp.*, 556 F.3d at 1282–83 (no conspiracy-based personal jurisdiction where conspiracy and underlying tort occurred in Connecticut). Multiple Defendants are Florida residents. The DrugPlace corporate headquarters is in Florida with a Fort Lauderdale mailing address, and Nakorn, Galaxy, and Brightline all list Florida mailing addresses and have sole

members who are Florida residents. FAC ¶¶ 16–18, 22, 27. Defendants Singer, Leight, Smith, and Mazei are Florida residents who carried out the scheme from Florida, with Mazei submitting or directing the submission of Galaxy's rebate claims from DrugPlace's corporate headquarters in Florida. *Id.* ¶¶ 31–32, 34, 39, 54, 178, 220. Numerous overt acts in furtherance of the conspiracy were performed in Florida: the DrugPlace corporate headquarters were located in Florida; Florida-based co-conspirators directed the submission of fraudulent rebate claims and the resale of medication on the secondary market in Florida; and hundreds of millions of dollars in fraudulent proceeds flowed through entities headquartered at Florida addresses. *Id.* ¶¶ 16–18, 26, 46–50, 54, 117, 203, 215.

As detailed at length, *supra* Section I.C, Lilly's FAC ties each of the non-resident Defendants to this Florida-based conspiracy with far more than conclusory allegations that readily meet the requirements at this stage. *See, e.g.*, *NHB Advisors*, 95 So. 3d at 448 ("Regardless of whether [defendant] personally committed any tortious acts within the state of Florida, the plaintiff alleged with sufficient specificity that [defendant] took part in a conspiracy where other principals committed tortious acts in Florida"); *Diversified Mgmt. Sols., Inc. v. Control Sys. Rsch., Inc.*, No. 15-81062-CIV, 2016 WL 4256916, at *15 (S.D. Fla. May 16, 2016) (finding that "because CSR, as a co-conspirator of WX, performed acts in furtherance of the conspiracy in Florida, personal jurisdiction over WX as a co-conspirator is permitted under Florida's long arm statute"); *Alexander v. Trump*, 404 So. 3d 425, 427 (Fla. 4th DCA 2025) (operative pleading sufficiently pled conspiracy for jurisdictional purposes).

Defendants attempt to escape jurisdiction by fragmenting Lilly's allegations and insisting that the non-resident Defendants' actions occurred outside Florida. Giscombe argues that she "did not transact business in Florida," that her duties were confined to Texas, and that her contacts reduce to communications with a Florida resident. Dkt. No. 157 at 7–10. The Maynards argue their trips to Florida were personal or church-related and unconnected to the scheme. *See* Dkt. No. 163 at 5–11. Enriquez contends he merely performed routine warehouse duties in Tennessee. Dkt. No. 168 at 2–9. But this parsing misapprehends the nature of conspiracy-based jurisdiction. The entire point of the co-conspirator jurisdiction doctrine is that "all conspirators' actions in Florida in furtherance of the conspiracy are imputable to the Foreign Defendants." *City Commc'ns, Inc. v. DailyTel, Inc.*, No. 22-CV-81813, 2024 WL 3105929, at *5 (S.D. Fla. June 12, 2024), *R&R adopted*, 2024 WL 3103365 (S.D. Fla. June 24, 2024). Each non-resident Defendant need not have

personally set foot in Florida or participated in every Florida-based tort to be subject to jurisdiction here—that is the law's design. *AXA Equitable Life*, 608 F. Supp. 2d at 1354.

### 2. The Corporate Shield Doctrine Does Not Apply to Defendants' Tortious Conduct

Giscombe, the Maynards, and Enriquez's invocation of the "corporate shield doctrine" is equally unavailing. That doctrine provides that "personal jurisdiction cannot be exercised over a non-resident corporate employee sued individually for acts performed in a corporate capacity." *LaFreniere v. Craig-Myers*, 264 So. 3d 232, 237 (Fla. 1st DCA 2018). More specifically, it prohibits jurisdiction over an individual if the individual's "***only relevant contacts*** with the forum are acts performed for the benefit of the individual's employer." *Elandia Int'l, Inc.*, 690 F. Supp. 2d at 1332. That is not the case here. As explained above, the contacts of the Florida resident co-conspirators are imputed to the non-Florida conspirators, and those Defendants' contacts extend to a range of tortious behavior occurring inside the forum and stretching well beyond acts performed solely for the benefit of an individual's employer.[15] Put another way, these Defendants conspired with those other than their employers, and for that reason they cannot claim the protection of this doctrine.

Moreover, "a corporate officer who commits fraud or other intentional misconduct outside of Florida is not protected by the corporate shield doctrine." *NHB Advisors*, 95 So. 3d at 449 n.2 (citation omitted); *accord Planet Bingo, Inc. v. Kerr*, No. 5:10-cv-315, 2011 WL 845235, at *5 (N.D. Fla. Mar. 8, 2011) ("[T]he corporate shield doctrine does not apply where, as Plaintiff has alleged in this case, an individual defendant commits or participates in a tort."); *Special Purpose Accounts Receivable Co-op. Corp. v. Prime One Cap. Co., L.L.C.*, 125 F. Supp. 2d 1093, 1104 (S.D. Fla. 2000) ("Florida courts uniformly hold that if an officer, director, or agent commits or participates in a tort, whether or not his actions are by authority of the corporation or in furtherance of the corporate business, that individual will be liable to third persons injured by his actions."). Lilly alleges precisely that: each non-resident Defendant personally and intentionally participated in and facilitated a fraudulent conspiracy—not merely performed routine corporate duties. The corporate shield doctrine does not extend to such tortfeasors. *Quail Cruises Ship Mgmt., Ltd. v. Agencia de Viagens CVC Tur Limitada*, No. 09-23248-CIV, 2011 WL 5057203, at *8 (S.D. Fla.

---

[15] The Maynards "reject the claim that they are DrugPlace Officers in all contexts." Dkt. No. 163 at 8 n.11. They cannot disclaim any corporate role and simultaneously seek shelter behind one.

Oct. 24, 2011); *Phelan v. Lawhon*, 229 So. 3d 853, 859 (Fla. 3d DCA 2017).

### B. The Exercise of Personal Jurisdiction Over the Non-Resident Defendants Comports with Due Process

The exercise of personal jurisdiction over Maynard Sr., Maynard II, Enriquez, and Giscombe also satisfies the Due Process Clause of the Fourteenth Amendment. Given the conspiracy's significant and substantial connections to Florida and the intentional torts alleged against the non-resident Defendants, each had "fair warning" of suit in Florida. *AXA Equitable Life*, 608 F. Supp. 2d at 1355 (jurisdiction comported with due process where complaint alleged that defendants participated in a conspiracy to cause plaintiff to issue life insurance policies based on fraudulent applications, and many of the co-conspirators and several of the named insureds were Florida residents); *Machtinger v. Inertial Airline Servs., Inc*., 937 So. 2d 730, 736 (Fla. 3d DCA 2006) ("Directing a conspiracy toward Florida establishes sufficient minimum contacts to satisfy due process."); *Indian River Merch. Servs., LLC v. Nolte*, 817 F. Supp. 3d 1335, 1338 (S.D. Fla. 2026) ("[A]cts of a co-conspirator performed in a forum state in furtherance of a conspiracy create sufficient minimum contacts to establish personal jurisdiction over a remote co-conspirator, even when that co-conspirator had no other direct contacts with the forum state.") (citation omitted); *Licciardello v. Lovelady*, 544 F.3d 1280, 1285 (11th Cir. 2008) ("Intentional torts . . . may support the exercise of personal jurisdiction over the nonresident defendant who has no other contacts with the forum."). As a result, the exercise of personal jurisdiction is consistent with due process *even without* further conduct in Florida by Defendants.

The Maynards and Enriquez had constitutionally sufficient contacts with Florida. Maynard Sr. admits to meeting with co-conspirators Singer and Leight at their offices in Florida on approximately ten occasions over six years. Dkt. No. 163-4 ¶¶ 9–10. The FAC further alleges frequent trips to Florida by both Maynards, including Maynard II's characterization of Florida as his "home away from home." FAC ¶¶ 56–58. These contacts, coupled with their alleged roles in creating the sham health plan that was the backbone of the conspiracy, more than satisfy due process. The Maynards' attempts to cast their Florida visits as purely personal or church-related are contested factual assertions that this Court should not rely on prior to discovery. *See Peach.com, LLC v. Peachly, LLC*, No. 21-20636-CIV, 2021 WL 7542983, at *3 (S.D. Fla. June 16, 2021); *see infra* Section III.C (on jurisdictional discovery).

The FAC also alleges that Enriquez previously worked for DrugPlace in Florida, maintained consistent property ownership in Florida, and is listed as a contact for Community

Health and other entities that operated in Florida. FAC ¶¶ 38, 60, 225. He was also General Manager of Nakorn—an entity integral to the conspiracy's operations, with a mailing address in Florida. *Id.* ¶¶ 22–23. Similarly, as the pharmacy technician at Galaxy and as Brightline's Pharmaceutical Wholesale Manager, Giscombe coordinated directly with Florida-based co-conspirator Mazei. *Id.* ¶¶ 28, 41, 181, 227. These contacts further support that Defendants purposefully availed themselves of the forum, in addition to being part of the conspiracy. *See Diversified Mgmt Sols., Inc*., 2016 WL 4256916, at *15 (defendant purposefully availed itself of jurisdiction where the bulk of the conspiracy took place in Florida); *see also Energy Source, Inc*., 2011 WL 3236047, at *6 (finding defendants "purposely directed" their activities at Florida where two co-conspirators were Florida residents); *Machtinger*, 937 So. 2d at 736 ("Directing a conspiracy toward Florida establishes sufficient minimum contacts to satisfy due process."); *AXA Equitable Life Ins. Co*., 608 F. Supp. 2d at 1355 (non-resident defendants "purposely directed" their activities at Florida because they participated in a conspiracy with Florida residents).

Defendants also fail to show that they face any "especially onerous" burdens from litigating in this forum rising to "constitutional magnitude." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1274 (11th Cir. 2010). The generalized assertions that litigation in Florida is burdensome are insufficient to show that the forum's exercise of jurisdiction offends due process. *See Grail Semiconductor, Inc. v. Stern*, No. 12-60976-CIV, 2012 WL 5903817, at *5 (S.D. Fla. Nov. 26, 2012); *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 632 (11th Cir. 1996) (recognizing that "modern methods of transportation and communication have significantly ameliorated" any burden). Florida has a significant interest in resolving this dispute, as many of the conspirators and their entities are based in Florida, and the tortious conduct emanated from the state. *Energy Source, Inc.*, 2011 WL 3236047, at *7.

### C. Any Factual Issues Relating to Jurisdiction Should Be Resolved Through Discovery

Even if the Court were to conclude that additional evidence is needed to establish jurisdiction, the appropriate remedy would be discovery, not dismissal. Each non-resident Defendant has submitted declarations asserting facts that purportedly demonstrate a lack of personal jurisdiction. These declarations are precisely the type of one-sided submissions that jurisdictional discovery is designed to test. *See Peach.com*, 2021 WL 7542983, at *3 (plaintiff "should be afforded . . . discovery" where defendant's declaration seeks to create dispute over jurisdiction); *Am. C.L. Union of Fla., Inc. v. City of Sarasota*, 859 F.3d 1337, 1341 (11th Cir. 2017)

(parties have a "qualified right" to jurisdictional discovery when facts regarding jurisdiction are "genuinely in dispute"); *Funez v. CMI Leisure Mgmt., Inc.*, 482 F. Supp. 3d 1252, 1255 (S.D. Fla. 2020) (recognizing defendant's "conclusory" assertion that it never conducted business in Florida could not be taken at "face value," and ordering limited jurisdictional discovery).

These declarations are a transparent attempt[16] to contradict the substantive facts alleged in the FAC, and raise many more questions than they answer. For example, Maynard Sr. admits meeting with Singer and Leight in Florida approximately ten times but disputes the subject matter of those meetings. Dkt. No. 163-4 ¶ 10. He carefully denies being an "owner, director, or officer" of any DrugPlace entity but says nothing about his alleged role in creating and perpetuating the sham health care program. *Id.* ¶¶ 6, 7. Maynard II, Giscombe, and Enriquez offer conclusory denials that leave their alleged roles and contacts unaddressed. Dkt. No. 163-5 ¶¶ 9–12; Dkt. No. 157-1 ¶ 7; Dkt. No. 168-1 ¶¶ 6, 7, 9.

The inconsistencies between these self-serving declarations and the factual record warrant discovery before resolving the question of jurisdiction at this stage. *See Peach.com, LLC*, 2021 WL 7542983, at *2 ("[a] plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum."); *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 731 (11th Cir. 1982) ("[t]he rules entitle a plaintiff to elicit material through discovery before a claim may be dismissed for lack of jurisdiction"); *Majd–Pour v. Georgiana Cmty. Hosp., Inc.*, 724 F.2d 901, 903 (11th Cir. 1984) ("Although the plaintiff bears the burden of proving the court's jurisdiction, the plaintiff should be given the opportunity to discover facts that would support his allegations of jurisdiction"). And indeed, Lilly has already sought such discovery through document requests and interrogatories. However, the Maynard/Enriquez Defendants, in default of their discovery obligations, have not even responded to Lilly's document requests and interrogatories, let alone produced any documents or provide substantive responses, and Lilly has moved to compel such documents and responses. This unjustifiable refusal to participate in discovery warrants striking these self-serving declarations, and an adverse inference should be drawn from the Maynard/Enriquez Defendants' obstructionist conduct. *See, e.g.*, *New Hampshire Ins. Co. v. Royal Ins. Co.*, 559 So. 2d 102, 103 (Fla. 4th DCA 1990) ("[W]here a party fails to

---

[16] Notably, the non-resident Defendants have refused to engage in discovery thus far. *See infra*; *see also* Dkt. No. 192 at 3–4.

produce evidence within his control, an adverse inference may be drawn that the withheld evidence would be unfavorable to the party failing to produce it."); *Higgs v. Costa Crociere S.P.A. Co.*, 969 F.3d 1295, 1306–07 (11th Cir. 2020) (upholding the district court's "permissive adverse-inference instruction" based on defendant's violating court orders related to discovery and delaying disclosure of information and noting that the court could even have "prohibit[ed] the disobedient party from supporting or opposing designated claims or defenses"); Fed. R. Civ. P. 37(b)(2)(A)(i), (ii) ("If a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may . . . direct[] that the matters embraced in the order or other designated facts be taken as established for purposes of the action").

**IV. The Court Should Grant Leave to Amend if it Dismisses Any Parties or Claims**

As Lilly has shown above, Defendants' motions fail in their entirety, and no parties or claims should be dismissed. Should the Court disagree, however, any dismissal should be with leave to amend, which shall be "freely given." Fed. R. Civ. P. 15(a)(1); see *Rosen v. TRW, Inc.*, 979 F.2d 191, 194 (11th Cir. 1992); *see also, e.g.*, *Henderson v. Dade Cnty. Police Benev. Ass'n, Inc.*, No. 14-20321-CIV-MORENO, 2014 WL 3591600, at *1 (S.D. Fla. July 18, 2014) (granting leave to amend). Given ongoing discovery and the nature of Lilly's allegations, dismissal with prejudice would be wholly inappropriate here.

**CONCLUSION**

For the reasons discussed above, Defendants' Motions to Dismiss fail on the merits. The Motions should therefore be denied. If any portion of the motions is granted, which Lilly contends it should not be, Lilly respectfully requests leave to file a Second Amended Complaint.

DATED: October 2, 2026

**STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.**

*/s/ Jay B. Shapiro*
Jay B. Shapiro, Esq. (FBN 776361)
Email: jshapiro@stearnsweaver.com
Veronica L. de Zayas, Esq. (FBN 91284)
Email: vdezayas@stearnsweaver.com
Ryan M. Wolis, Esq. (FBN 1019034)
Email: rwolis@stearnsweaver.com
150 W. Flagler St., Suite 2200, Miami, FL 33130
Telephone: 305-789-3200

**PATTERSON BELKNAP WEBB & TYLER LLP**

*/s/ Geoffrey Potter*
Geoffrey Potter, Esq. (Admitted *PHV*)
Email: gpotter@pbwt.com
Aron Fischer, Esq. (Admitted *PHV*)
Email: afischer@pbwt.com
Joshua Kipnees, Esq. (Admitted *PHV*)
Email: jkipnees@pbwt.com
1133 Avenue of the Americas, New York, NY 10036
Telephone: 212-336-2000

*Attorneys for Plaintiff Eli Lilly and Company*